# 24-3161

# United States Court of Appeals for the District of Columbia

THE UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROMAN STERLINGOV,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA
Hon. Randolph D. Moss
United States District Court Case 1-21-cr-00399-RDM-1

## APPENDIX
## Volume VI of XVII (Pages Appx2201 - Appx2640)

TOR EKELAND, ESQ.
TOR EKELAND LAW PLLC
*Attorneys for Defendant-Appellant*
30 Wall Street, 8th Floor
New York, New York 10005
(718) 737-7264
tor@torekeland.com

MARC FERNICH, ESQ.
LAW OFFICE OF MARC FERNICH
*Attorneys for Defendant-Appellant*
800 Third Avenue, 20th Floor
New York, New York 10022
(212) 446-2346
maf@fernichlaw.com

MAKSIM NEMTSEV, ESQ.
MAKSIM NEMTSEV PC
*Attorneys for Defendant-Appellant*
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700
max@mnpc.law

AARON DANIEL, ESQ.
ASYMMETRIC LEGAL
*Attorneys for Defendant-Appellant*
11900 Biscayne Blvd, Suite 400
Miami, Florida 33181
(305) 979-9296
aaron@asymmetric.legal

*(See Inside Cover for Additional Counsel)*

3914


ELECTRONIC PARALEGAL

—————————————————

AMY C. COLLINS, ESQ.
THE LAW OFFICE OF
   AMY C. COLLINS
*Attorneys for Defendant-Appellant*
888 17th Street, NW, Suite 1200
Washington DC 20006
(228) 424-0609
amy@amyccollinslaw.com

—————————————————

# TABLE OF CONTENTS

District Court Docket – US v. Sterlingov, 21-CR-00399-RDM .............Appx001

Protective Order of Governing Discovery of Hon. Randolph D. Moss,
Dated September 17, 2021 (ECF Doc. No. 18) ......................................Appx074

Preliminary Order of Forfeiture of Hon. Randolph D. Moss,
Dated November 4, 2024 (ECF Doc. No. 336) ......................................Appx079

Order of Forfeiture of Hon. Randolph D. Moss,
Dated November 14, 2024 (ECF Doc. No. 338) ....................................Appx085

Judgment in a Criminal Case of Hon. Randolph D. Moss,
Dated November 13, 2024 (ECF Doc. No. 340) ....................................Appx091

Transcript of Motion Hearing, Dated January 13, 2023
(ECF Doc. No. 114) ...............................................................................Appx099

Transcript of Motion Hearing, Dated January 31, 2023
(ECF Doc. No. 115) ...............................................................................Appx190

Transcript of Motions Hearing, Dated June 16, 2023
(ECF Doc. No. 223) ...............................................................................Appx345

Transcript of Motions Hearing, Dated June 23, 2023
(ECF Doc. No. 224) ...............................................................................Appx501

Transcript of Motions Hearing, Dated July 19, 2023
(ECF Doc. No. 225) ...............................................................................Appx682

Transcript of Continued Motions Hearing, Dated July 20, 2023
(ECF Doc. No. 226) ...............................................................................Appx895

Transcript of Motions Hearing, Dated August 22, 2023
(ECF Doc. No. 228) .............................................................................Appx1040

Transcript of Continued Motions Hearing, Dated August 23, 2023
(ECF Doc. No. 229) .............................................................................Appx1266

Transcript of Motions Hearing, Dated August 29, 2023
(ECF Doc. No. 231) .............................................................................Appx1466

Transcript of Pretrial Conference, Dated September 7, 2023
(ECF Doc. No. 232) ......................................................Appx1524

Transcript of Pretrial Conference, Dated September 8, 2023
(ECF Doc. No. 233) ......................................................Appx1741

Transcript of Pretrial Conference, Dated September 13, 2023
(ECF Doc. No. 234) ......................................................Appx1861

Transcript of Pretrial Conference, Dated September 15, 2023
(ECF Doc. No. 235) ......................................................Appx1999

Transcript of Pretrial Conference, Dated September 18, 2023
(ECF Doc. No. 236) ......................................................Appx2141

Transcript of Pretrial Conference, Dated September 21, 2023
(ECF Doc. No. 237) ......................................................Appx2235

Transcript of Motion Conference, Dated November 13, 2023
(ECF Doc. No. 238) ......................................................Appx2302

Transcript of Jury Trial, Dated February 12, 2024
(ECF Doc. No. 276) ......................................................Appx2350

Transcript of Jury Trial, Dated February 13, 2024
(ECF Doc. No. 277) ......................................................Appx2620

Transcript of Jury Trial, Dated February 13, 2024
(ECF Doc. No. 277) ......................................................Appx2688

Transcript of Jury Trial, Dated February 14, 2024
(ECF Doc. No. 278) ......................................................Appx2825

Transcript of Jury Trial, Dated February 14, 2024
(ECF Doc. No. 327) ......................................................Appx2948

Transcript of Jury Trial, Dated February 15, 2024
(ECF Doc. No. 279) ......................................................Appx3074

Transcript of Jury Trial, Dated February 15, 2024
(ECF Doc. No. 279) ......................................................Appx3189

Transcript of Jury Trial, Dated February 20, 2024
(ECF Doc. No. 280) ...........................................................Appx3331

Transcript of Jury Trial, Dated February 20, 2024
(ECF Doc. No. 280) ...........................................................Appx3446

Transcript of Jury Trial, Dated February 21, 2024
(ECF Doc. No. 281) ...........................................................Appx3572

Transcript of Jury Trial, Dated February 21, 2024
(ECF Doc. No. 328) ...........................................................Appx3697

Transcript of Jury Trial, Dated February 22, 2024
(ECF Doc. No. 282) ...........................................................Appx3858

Transcript of Jury Trial, Dated February 22, 2024
(ECF Doc. No. 282) ...........................................................Appx3982

Transcript of Jury Trial, Dated February 23, 2024
(ECF Doc. No. 329) ...........................................................Appx4122

Transcript of Jury Trial, Dated February 26, 2024
(ECF Doc. No. 283) ...........................................................Appx4251

Transcript of Jury Trial, Dated February 26, 2024
(ECF Doc. No. 283) ...........................................................Appx4394

Transcript of Jury Trial, Dated February 27, 2024
(ECF Doc. No. 284) ...........................................................Appx4419

Transcript of Jury Trial, Dated February 27, 2024
(ECF Doc. No. 330) ...........................................................Appx4550

Transcript of Jury Trial, Dated February 28, 2024
(ECF Doc. No. 285) ...........................................................Appx4581

Transcript of Jury Trial, Dated February 28, 2024
(ECF Doc. No. 285) ...........................................................Appx4698

Transcript of Jury Trial, Dated February 29, 2024
(ECF Doc. No. 285) ...........................................................Appx4836

Transcript of Jury Trial, Dated February 29, 2024
(ECF Doc. No. 286) ............................................................Appx4955

Transcript of Jury Trial, Dated February 29, 2024
(ECF Doc. No. 331) ............................................................Appx5074

Transcript of Jury Trial, Dated March 1, 2024
(ECF Doc. No. 287) ............................................................Appx5198

Transcript of Jury Trial, Dated March 1, 2024
(ECF Doc. No. 332) ............................................................Appx5344

Transcript of Jury Trial, Dated March 4, 2024
(ECF Doc. No. 288) ............................................................Appx5359

Transcript of Jury Trial, Dated March 4, 2024
(ECF Doc. No. 288) ............................................................Appx5496

Transcript of Jury Trial, Dated March 5, 2024
(ECF Doc. No. 289) ............................................................Appx5621

Transcript of Jury Trial, Dated March 5, 2024
(ECF Doc. No. 333) ............................................................Appx5762

Transcript of Jury Trial, Dated March 6, 2024
(ECF Doc. No. 290) ............................................................Appx5900

Transcript of Jury Trial, Dated March 6, 2024
(ECF Doc. No. 334) ............................................................Appx6004

Transcript of Jury Trial, Dated March 7, 2024
(ECF Doc. No. 291) ............................................................Appx6087

Transcript of Jury Trial, Dated March 7, 2024
(ECF Doc. No. 291) ............................................................Appx6190

Transcript of Jury Trial, Dated March 11, 2024
(ECF Doc. No. 292) ............................................................Appx6324

Transcript of Jury Trial, Dated March 12, 2024
(ECF Doc. No. 293) ............................................................Appx6344

Virtual Asset Analysis Expert Report of Luke Scholl,
Dated December 8, 2022................................................................Appx6400

Expert Report #1 of Elizabeth Bisbee (Nov. 2022).....................Appx6465

Expert Report #2 of Elizabeth Bisbee (Dec. 2022) .....................Appx6493

Expert Report #3 of Elizabeth Bisbee (Jul. 2023)......................Appx6522

CS-Mazars Expert Report - Device Review Summary,
Dated May 5, 2023 .......................................................................Appx6529

CS-Mazars Expert Report - IP Overlap Analysis,
Dated November 9, 2022 ...............................................................Appx6532

CS-Mazars Expert Report - IP Graph Data Excel File..............Appx6539

Criminal Complaint, Dated April 26, 2021 (ECF Doc. No. 1) .............Appx6542

Arrest Warrant, Dated April 26, 2021 (ECF Doc. No. 5).....................Appx6556

Indictment, Filed June 14, 2021 (ECF Doc. No. 8) .............................Appx6557

Superseding Indictment, Filed July 18, 2022 (ECF Doc. No. 43) .......Appx6561

Defendant's Supporting Memorandum of Law,
Dated August 1, 2022 (ECF Doc. No. 46) ...........................................Appx6567

Attachment to Memorandum of Law -
Proposed Order of Hon. Randolph D. Moss Granting Defendant's
Motion to Dismiss (ECF Doc. No. 46-1) ....................................Appx6585

Attachment to Memorandum of Law -
Defendant's Notice of Motion to Dismiss, Dated August 1, 2022
(ECF Doc. No. 46-2) ....................................................................Appx6586

Government's Opposition to Motion, Filed August 29, 2022
(ECF Doc. No. 52) ...............................................................................Appx6589

Defendant's Reply to Government's Opposition to Motion,
Dated September 7, 2022 (ECF Doc. No. 57) .......................................Appx6623

Exhibit A to Defendant's Reply -
Second Declaration of Eric Garland, Dated September 7, 2022
(ECF Doc. No. 57-1) ......................................................................Appx6635

Defendant's Motions in *Limine*, Dated October 24, 2022
(ECF Doc. No. 59) ..........................................................................Appx6644

Exhibit A to Motions in *Limine* -
Letter from Tor Ekeland to Christopher B. Brown and
C. Alden Pelker, Dated September 23, 2022, with Exhibit A
(ECF Doc. No. 59-1) ......................................................................Appx6664

Defendant's Opposition to the Government's Motions in *Limine*,
Dated November 7, 2022 (ECF Doc. No. 68) ........................................Appx6680

Memorandum Opinion and Order of Hon. Randolph D. Moss,
Dated March 6, 2023 (ECF Doc. No. 116) ...........................................Appx6689

Notice of Bill of Particulars for Forfeiture, Filed May 17, 2023
(ECF Doc. No. 119) ........................................................................Appx6709

Defendant's Notice of Intent to Present Expert Testimony,
Dated July 7, 2023 (ECF Doc. No. 145)...............................................Appx6711

Exhibit A to Notice of Intent -
Summary of Qualifications and Expected Testimony for
Dr. Francisco Cabanas (ECF Doc. No. 145-1) ...........................Appx6716

Exhibit B to Notice of Intent -
Summary of Qualifications and Expected Testimony for
Dr. Itiel Dror (ECF Doc. No. 145-2) .........................................Appx6725

Exhibit C to Notice of Intent -
Summary of Qualifications and Expected Testimony for
Jeffrey Fischbach (ECF Doc. No. 145-3)....................................Appx6731

Exhibit D to Notice of Intent -
Summary of Qualifications and Expected Testimony for
Jonelle Still (ECF Doc. No. 145-4) ............................................Appx6737

Exhibit E to Notice of Intent -
Summary of Qualifications and Expected Testimony for
J.W. Verret (ECF Doc. No. 145-5)................................................Appx6741

Supplemental Summary of Qualifications and Expected
Testimony for Jonelle Still, Dated August 7, 2023
(ECF Doc. No. 157) ....................................................................Appx6756

Notice of Expert Report for Defense Expert Jonelle Still of
Ciphertrace, Dated August 8, 2023 (ECF Doc. No. 159) .....................Appx6761

Attachment to Notice of Expert Report -
Defense Expert Report of Jonelle Still, Dated August 7, 2023
(ECF Doc. No. 159-1) .................................................................Appx6764

Exhibit A to Notice of Expert Report -
Data Credibility in Cryptocurrency Investigations of  Ciphertrace
(ECF Doc. No. 159-2) .................................................................Appx6805

Exhibit B to Notice of Expert Report -
Article Titled "Bitcoin: A Peer-to-Peer Electronic Cash System"
(ECF Doc. No. 159-3) .................................................................Appx6822

Notice of Bill of Particulars, Filed August 28, 2023
(ECF Doc. No. 173) ....................................................................Appx6832

Defense Response to Government's Motion to Admit Certain
Exhibits, Dated September 4, 2023 (ECF Doc. No. 177) .....................Appx6834

Notice of Source Code Expert Bryan Bishop Regarding Independent
Analysis of Chainalysis Reactor Source Code and Request for
Production of Chainalysis Reactor Source Code and Relevant
Related Brady Material, Dated September 5, 2023
(ECF Doc. No. 179) ....................................................................Appx6843

Chainalysis' Notice in Response to the Court's Request Regarding
Protective Order, Dated September 12, 2023
(ECF Doc. No. 195) ....................................................................Appx6860

Exhibit A to Notice in Response -
[Proposed] Heuristic Information Protective Order of
Hon. Randolph D. Moss (ECF Doc. No. 195-1)............................Appx6862

Exhibit B to Notice in Response -
[Proposed] Heuristic Information Protective Order to Jonelle Still
of Hon. Randolph D. Moss (ECF Doc. No. 195-2).......................Appx6869

Heuristic Information Protective Order to Jonelle Still of Hon.
Randolph D. Moss, Dated September 13, 2023 (ECF Doc. No. 196)...Appx6877

Notice Regarding Court's Proposed Protective Order Governing
Review of Chainalysis' Proprietary Information,
Dated September 20, 2023 (ECF Doc. No. 199) ..................................Appx6884

Notice Regarding Ciphertrace Expert Testimony and Review of
Latest Chainalysis Production, Dated September 22, 2023
(ECF Doc. No. 205) ...............................................................Appx6888

Government's Response to September 18, 2023 Minute Order
Regarding Defendant's Access to Sensitive Heuristics Information
Provided by Chainalysis, Filed September 22, 2023
(ECF Doc. No. 206) ...............................................................Appx6892

Defendant's Opposition to Government's Response to
September 18, 2023, Minute Order Regarding Defendant's Access
to Sensitive Heuristics Information Provided by Chainalysis,
Dated September 29, 2023 (ECF Doc. No. 207) ..................................Appx6901

Memorandum Opinion and Order of Hon. Randolph D. Moss,
Dated November 4, 2023 (ECF Doc. No. 210) ....................................Appx6912

Memorandum Opinion and Order of Hon. Randolph D. Moss,
Dated November 30, 2023 (ECF Doc. No. 213) ..................................Appx6930

Defendant's Motion to Exclude any Testimony About Deepweb
Marketplaces, Dated February 8, 2024 (ECF Doc. No. 247)..............Appx6942

Attachment to Motion to Exclude -
[Proposed] Order of Hon. Randolph D. Moss
(ECF Doc. No. 247-2) ...............................................................Appx6950

Memorandum Opinion and Order of Hon. Randolph D. Moss,
Dated February 29, 2024 (ECF Doc. No. 259)......................................Appx6951

Final Jury Instructions and Charges, Filed March 7, 2024
(ECF Doc. No. 265) .............................................................................Appx6982

Government's Motion for Preliminary Order of Forfeiture,
Filed June 7, 2024 (ECF Doc. No. 297)................................................Appx7061

      Attachment to Motion for Preliminary Order of Forfeiture -
      Proposed Preliminary Order of Forfeiture Hon.
      Randolph D. Moss (ECF Doc. No. 297-1)....................................Appx7072

Defendant's Opposition to Government's Motion for Preliminary
Order of Forfeiture, Dated June 21, 2021 (ECF Doc. No. 305) ...........Appx7078

      Exhibit A to Defendant's Opposition -
      Article Titled "Chainalysis: Most Mixed Bitcoin Not Used
      For Illicit Purposes", Dated August 26, 2019
      (ECF Doc. No. 305-1) .................................................................Appx7095

      Exhibit B to Defendant's Opposition -
      Blockchain Address Search Result from Blockchain.com
      (ECF Doc. No. 305-2) .................................................................Appx7107

Government's Memorandum in Aid of Sentencing,
Filed August 1, 2024 (ECF Doc. No. 314)............................................Appx7112

Sentencing Memorandum on behalf of Roman Sterlingov,
Dated August 15, 2024 (ECF Doc. No. 321) ........................................Appx7157

Memorandum Opinion of Hon. Randolph D. Moss,
Dated November 4, 2024 (ECF Doc. No. 337) .....................................Appx7194

Defendant's Notice of Appeal, Dated November 19, 2024
(ECF Doc. No. 343) .............................................................................Appx7214

Memorandum for All Department Employees from The Deputy
Attorney General, Subjecting "Ending Regulation by Prosecution",
Dated April 7, 2025..............................................................................Appx7217

**Trial Exhibits:**

Trial Exhibit 601 -
Darknet Market Vendor Transaction Summary
(Document in Evidence and to be Produced Upon Request Due
to Volume) ..........................................................................................Appx7221

Trial Exhibit 624..................................................................................Appx7222

Trial Exhibit 625..................................................................................Appx7223

Trial Exhibit 626..................................................................................Appx7224

Trial Exhibit 627..................................................................................Appx7225

Trial Exhibit 628(A).............................................................................Appx7226

Trial Exhibit 628(B).............................................................................Appx7227

Trial Exhibit 629..................................................................................Appx7229

Trial Exhibit 630(A).............................................................................Appx7230

Trial Exhibit 630(B).............................................................................Appx7244

Trial Exhibit 631..................................................................................Appx7247

Trial Exhibit 632..................................................................................Appx7248

Trial Exhibit 633..................................................................................Appx7252

Defense Exhibit 138 -
The-Message-Game, Written by Ice White .........................................Appx7253

Defense Exhibit 139 -
Extracted Page from The-Message-Game, Written by Ice White ......Appx7413

Government Exhibit 721 and Defense Exhibit 143 -
Boox Chat .............................................................................................Appx7414

Exhibit B to Fischbach Declaration -
Declaration of Jeffrey M. Fischbach, for Defendant, Dated August 14, 2024,
with Attachment
(ECF Doc. No. 321-2) ...............................................................Appx7415

So I --

THE COURT: So why don't we -- I would like you to walk me through that. I also want you to send this email to Mr. Torres. And so maybe the thing to do is take a break now, let you send that email to Mr. Torres and come back and I'd like you to put on the record exactly what the conflicts are and also represent to me that they are available in February.

MR. EKELAND: Certainly, Your Honor. And I think I can -- well, let me double check, but I think I can make that. But in terms of sending an email to Mr. Torres so I am clear on what the Court would like me to ask him to do. Do you want me to ask him to dial into this court at 3:30 or should I ask him if is he free for a call right now and --

THE COURT: If he has offered to talk to you, why don't you start with that and see where things stand.

MR. EKELAND: So I will see if I can get him on the phone at 3:30 and see if I can talk to him. What time should we come back, Your Honor?

THE COURT: You probably only needs 10 minutes or so to -- take a 15-minute break and come back at 20 of.

MR. EKELAND: Okay. Thank you.

(Recess taken at 3:25 p.m.)

THE COURT: Just one more thing I wanted to add for clarifying the record is I think that Mr. Ekeland a number of times referred to the Court suggesting a continuance last

week, earlier this week. And just to be clear, I didn't suggest a continuance. I asked the defense whether the defense was asking for a continuance. The defense said, absolutely not. I said, make sure you confer with your client. The defense came back and said, well, we are not asking for a continuance, but we want to reserve our right to argue on appeal that we didn't have enough time to prepare. I said, you don't get it both ways. You have to do one or the other. The defense conferred further and the defense came back and requested the continuance, so I just wanted to make sure the record was clear on that.

All right. Mr. Ekeland, what do you have to update us to?

MR. EKELAND: So I just got off the phone with Daniel Hoffman and Brooke Pietrzak. Mr. Hoffman I think is a product lawyer at Mastercard. And Ms. Pietrzak is from the litigation department. They are contacting their outside counsel which they are happy to have talk with the Court. They asked if that could be done on this Thursday. I said I would ask the Court --

THE COURT: On Thursday?

MR. EKELAND: Yes.

THE COURT: I think we can probably arrange that. What time?

MR. EKELAND: They are I think open all day. I

didn't ask.

THE COURT:  So you have a time that works.  Are you requesting that we do this live or by Zoom.  How do want to do that?

MR. EKELAND:  I told them it would be by Zoom.

THE COURT:  I will leave that up to you.

MR. EKELAND:  I think they would probably prefer Zoom.  I will double check and email the Court back.

THE COURT:  Is that okay with you, Mr. Sterlingov, by Zoom?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

MR. EKELAND:  And, Your Honor, just for the record, I don't know what outside counsel and -- outside counsel might want to appear live.

THE COURT:  That is fine.  If you want to change it to in person, that is fine with me as well.

So I think Mr. Sterlingov is at facility where they don't do Zoom.  So I think we need to have at least all of us here in person and then if counsel for Mastercard wants to appear by Zoom, I don't have an objection as long as that is okay by Mr. Sterlingov.

MR. EKELAND:  Okay.  That was my assumption, Your Honor, we would be here in person.

THE COURT:  So what time should we do this?  I am

turning to the deputy clerk.

THE COURTROOM DEPUTY: At 10:00 a.m., Your Honor. Are they local?

MR. EKELAND: I think they are in Miami, but I don't know where their outside counsel is. I am going to find out tonight.

THE COURT: Let's put it down for 10:00 a.m. If they want to move to change it, they can.

All right. And then you want to give me the summary of the availability of each of your witnesses for both October and February?

MR. EKELAND: Sure. I am told Ms. Still -- and Mr. Hassard has more information. Ms. Still is available in February. I have her October and November scheduling.

THE COURT: What is that?

MR. EKELAND: October 2nd to 3rd, she is doing counterterrorism finance training in Brussels. October 7th through 11th, she is in Latvia I am assuming doing some kind of law enforcement training. October 9th through the 23rd, it says she is doing an MIIS prep. I don't know what the MIIS stands for. October 10th, the 11th, there is some overlap here with Latvia. She is doing an Interpol training in Erlangen, Germany. So I guess the October 9th through the 23rd is the prep that she is doing while she is doing these other trainings. October 12th through the 18th, she is

scheduled to be in Athens and Cypress. October 17th through the 18th, it says CTCE. I don't know what that stands for. October 18th through the 23rd, she is in Dubai -- Dubai, Mastercard. October 23rd, it just said MIIS semester begins prep from October 9th. October 24th through the 25th, she is in Barcelona. October 26th through 28th is says Europool. October 30th from November 4th she is scheduled to be in Hong Kong. And November it says November 4th through the 10th she is scheduled to be in Belgrade. Sometime in -- it looks like there is an overlap here around the 9th or the 10th she has got India with a question mark. November 13th through the 17th, she is back in Dubai. November 20th through 24th, it just says CEPOL. That is C-E-P-O-L. And then it says November 27th to December 2nd, Europool. And then she just has some notes here that just said London workshop, TBD, November, December. And then Cambridge, TBD, November, December. And she just also just said that the 4th quarter is the busiest quarter of their year.

THE COURT: What about February?

MR. EKELAND: I'm sorry. What?

February she has told us she is available.

THE COURT: March?

MR. EKELAND: Do we know about March?

We will check on March.

THE COURT: It is not clear to me you are going to

be to the defense case before the end of February.

MR. HASSARD:  We got the dates for February.

MR. EKELAND:  We will check on March right now.

THE COURT:  While you are checking on that, I have to say, I don't understand how she thought she could have testified at trial.  Because you wouldn't have gotten to the defense case October 2nd anyway with the prior trial calendar. And she is unavailable through all of October.  So it sounds like she either made plans before I made a decision about actually changing the trial, because I indicated the February date was just tentative.  But she couldn't have testified at trial given this schedule.

MR. EKELAND:  I don't know -- she sent this today, so she may have based on the Court order I think on Friday or was that over the weekend with the setting the February trial date, I don't know.  I would have to ask her about that.

MR. BROWN:  Your Honor, I mean, number 1, yes, we would have been in trial in early October.  But also any of these business trips anyone else from CipherTrace can do a training, can attend a conference.  These are not events where she personally needs to attend.  If this case is important to her, then she should make time for this case.  If she is the expert witness for Mr. Sterlingov, then she should make time for Mr. Sterlingov for this case.

THE COURT:  Yeah.  I don't know with the schedule

also how she is going to do analysis that she wants to do as well. So you are checking, Mr. Hassard, about March?

MR. HASSARD: I just sent a message.

THE COURT: All right. Next witness.

MR. EKELAND: Let me find -- I am trying to find Mr. Fischbach. Mr. Fischbach is in trial in Kansas from October 16th to November 10th. And then he says he has another trial in California the following --

THE COURT: What does that mean?

What does that mean? He is someone who does forensic analysis. Is he sitting through the entire trial?

MR. EKELAND: Yeah, he generally does, because he often testifies as a rebuttal witness. And he also works as a consult. He has a very, very busy schedule. I think the trial in Kansas City is ST v. Chandler, C-H-A-N-D-L-E-R. And he says it has been on deck for a couple of years. And he is generally very busy. And then he says after November 10, he has got another trial in California the following week. And that he is still -- you know, he is doing his pretrial work. And, you know, October for the Kansas City, Missouri case.

MR. BROWN: Your Honor, this morning, Mr. Fischbach was in trial in Missouri and this afternoon he is in trial in Kansas City.

MR. EKELAND: It is Kansas City, Missouri, I think is what the reference is to, which I think borders both

states.

THE COURT: What is his availability in February? In March?

MR. HASSARD: He is available in February. The only serious conflict he has is on February 23rd, but he can work around it. As for March, I am waiting to hear back. I sent that message out.

THE COURT: All right. I don't think there is much point having this conversation unless we know what the availability of the witness is in March, because if we start on February 12th, we are probably not going to start the defense case until March.

MR. EKELAND: We did -- in our rush, we just asked people -- we said the trial date would start potentially February 12th and asked people's available in February. So we can ask them all for March and just get back to the Court on that.

THE COURT: Why don't I do this? Why don't I direct that you file a written statement with the availability of all of your witnesses in October and early November, and in February and through mid March, mid February through mid March with specificity about their availability. And I will direct that you file that by 5:00 p.m. tomorrow, because I have to schedule my other case that you were all sitting in on Wednesday. And so they need to know whether they are going in

October or not.

All right.  Anything else for today?

MR. EKELAND:  If we -- can we address other issues on Thursday or is the -- the defense would just to like discuss some stuff that may be need to be discussed under seal and just in relation to the government's noticed witnesses that we just think might be better to have a conversation with before trial.

THE COURT:  We can do that today.  If we need to seal the courtroom, we can do so.

MR. EKELAND:  Okay.

THE COURT:  Let me say, why don't we save that for last?  Is there anything else or is that the only issue you want to raise?

MR. EKELAND:  I think we -- do we still have some outstanding motions in limine on -- I think on some 404(b) stuff; right?  I think there is an outstanding motion in limine.

MR. BROWN:  Your Honor, we are happy to address Mr. Ekeland's -- if this is a new thing that he wants to bring up.  There is one outstanding -- the government's 404(b) notice, which was fully briefed up.

THE COURT:  Yeah.

MR. BROWN:  And we can address that now or later.  But, again, it is a 404(b) notice.

THE COURT:  I read that some time ago.  I haven't reread it in the past couple of days, but I did read that previously.

We don't we go ahead and put that one off, so I can refresh my recollection and read it again before we take that one up.  And we can take that on Thursday.  Okay.  Anything else then, other than the matter we need to seal the courtroom for.

MR. EKELAND:  I don't think so.  Let me just double check, Your Honor.

No.  I think besides the 404(b) and the witnesses, I think that is it for the moment.

THE COURT:  Okay.  Let's go ahead and seal the courtroom.

(Proceedings sealed by order of Judge Moss.)

















███████  ██

██████  █████████████████████

██████  ████

(End of sealed proceedings.)

THE COURT: So we are now back on the public record.

All right. Go ahead.

MR. EKELAND: So the government witness -- noticed some witnesses that we have potential 702 concern on. And we are not -- I am hedging a little bit because I want to make sure I didn't -- that the research is correct. But there is a Sarah Krulikowski who we believe is an economist at Georgetown. And a Sergi Miroff who is a professor as far as we can tell of cryptography.

MR. BROWN: Your Honor, these are translators.

MR. EKELAND: They are translators. So they are coming in --

MR. BROWN: If Mr. Ekeland had mentioned this to us, we could have told him.

MR. EKELAND: So that is going down. And then that solved that question. And then Alexandra Comolli and Steven Santell?

MR. BROWN: Your Honor, this just seems like --

THE COURT: Not the best use of the Court's time. What's that?

MR. BROWN: Your Honor, this seems like pretrial

discovery Mr. Ekeland is just asking for --

MR. EKELAND:  I just don't recognize them as any fact witness, so I am concerned.  I just want to make sure that we deal with this now.

THE COURT:  I will make it clear, if they were not noticed as expert witnesses, they cannot offer expert testimony.

MR. EKELAND:  All right.

THE COURT:  Anything else then?

MR. EKELAND:  No, that is it, Your Honor.

THE COURT:  All right.  I will see you all back here on Thursday then.

THE COURTROOM DEPUTY:  All rise.

(Proceedings concluded at 4:31 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 24th day of October, 2023.

_____
Sherry Lindsay, RPR
Official Court Reporter

MR. BROWN: [56]  3/4 3/9 3/14 3/21 4/1 4/14 4/18 5/16 5/19 6/1 6/21 7/4 7/12 7/21 7/24 8/6 8/18 9/2 11/4 11/7 11/19 15/13 15/25 16/2 16/6 16/17 17/3 17/8 17/12 17/22 18/10 19/3 19/8 19/15 20/4 21/6 21/8 21/10 52/22 53/5 58/15 60/4 66/17 67/21 69/19 69/24 70/16 70/21 73/1 73/22 76/9 79/3 79/14 79/17 79/22 79/25
MR. EKELAND: [111]
MR. HASSARD: [3]  66/2 67/3 68/4
MS. PELKER: [12]  26/20 27/20 29/4 36/9 38/14 41/22 43/24 44/12 45/2 45/21 46/4 49/12
THE COURT: [166]
THE COURTROOM DEPUTY: [2]  64/2 80/13
THE DEFENDANT: [1]  63/11

**$**

$90,000 [1]  10/17

**.**

.5 [1]  35/16

**1**

10 [3]  40/12 61/19 67/17
10 percent [2]  46/16 46/18
100 percent [1]  28/5
10005 [1]  2/5
10:00 a.m [2]  64/2 64/7
10th [4]  64/21 65/8 65/10 67/7
114 [2]  42/19 42/24
118 [1]  45/25
11th [2]  64/18 64/21
12.7 [2]  35/13 35/15
124-5 [2]  3/12 12/13
12th [3]  64/25 68/11 68/15
1301 [1]  1/20
13th [1]  65/11
14 [3]  43/7 43/7 45/12
145-1 [3]  23/8 23/16 30/21
15 [1]  46/16
15 kilograms [1]  46/18
15-minute [1]  61/20
16 [1]  11/23
16th [1]  67/7
17th [2]  65/1 65/12
18 [1]  1/5
18th [3]  64/25 65/2 65/3
1:49 [1]  1/6
1EuDR [1]  17/13

**2**

20 [3]  30/24 36/14 61/20
20001 [1]  2/10
20005 [1]  1/20
2013 [1]  8/13
2016 [1]  34/22
2017 [2]  8/15 10/3
2018 [1]  8/16
2020 [1]  34/22
2023 [2]  1/5 81/11
20530 [2]  1/14 1/17
20th [1]  65/12
21-399 [1]  1/4
23rd [5]  64/19 64/24 65/3 65/4 68/5
24th [3]  65/5 65/12 81/11
25th [1]  65/5
26 [2]  43/7 43/11
26th [1]  65/6
27 [1]  34/23
27th [1]  65/14
28 [1]  43/15
28th [1]  65/6
29 [4]  43/7 43/11 43/16 45/5
2nd [3]  64/16 65/14 66/7

**3**

30 [1]  2/4
30th [1]  65/7
333 [1]  2/9
399 [1]  1/4
3:25 [1]  61/22
3:30 [3]  60/17 61/12 61/17
3rd [1]  64/16

**4**

401 [2]  44/13 45/16
403 [3]  36/4 44/13 45/16
404 [4]  69/16 69/21 69/25 70/11
41 [1]  46/10
4:31 [1]  80/14
4th [3]  65/7 65/8 65/17

**5**

5.1527 [1]  1/16
55 [2]  40/25 41/5
5:00 p.m [1]  68/23

**6**

601 [1]  1/16
6710 [1]  2/9
6th [1]  13/23

**7**

702 [1]  79/8
7th [1]  64/17

**8**

8th [1]  2/5

**9**

950 [1]  1/13
9th [4]  64/19 64/23 65/5 65/10

**A**

a.m [2]  64/2 64/7
ability [3]  16/7 45/16 58/2
able [15]  6/17 6/25 10/1 10/5 10/11 10/18 10/21 10/25 16/13 17/14 18/14 29/14 31/23 34/1 49/8
about [70]  3/21 3/22 3/22 4/2 7/18 10/21 13/14 14/9 16/3 16/14 18/4 18/24 19/24 22/20 23/22 25/5 25/11 28/24 28/24 31/16 31/16 31/17 32/11 32/12 32/13 32/14 33/14 33/24 34/1 34/19 34/24 35/12 35/22 36/11 39/20 40/5 40/9 42/13 42/22 43/10 44/7 44/15 45/3 45/13 45/13 46/5 46/12 46/20 47/4 48/10 48/19 49/25 50/1 51/12 52/7 52/14 52/18 54/8 56/12 57/5 57/8 57/17 58/24 60/12 65/19 65/23 66/9 66/16 67/2 68/22
above [1]  81/6
above-entitled [1]  81/6
absent [2]  20/3 37/23
absolute [1]  26/18
absolutely [3]  49/14 49/18 62/4
abstract [2]  32/11 40/9
access [2]  54/8 54/9
according [1]  10/1
account [31]  5/9 5/24 5/25 6/2 6/9 6/9 6/22 7/22 7/25 8/1 8/2 9/4 9/8 9/13 9/14 9/15 9/18 10/9 11/3 11/5 13/16 13/18 13/25 15/16 17/24 18/18 48/1 48/24 49/4 49/14 50/24
accountant [2]  16/21 18/19
accounting [9]  10/2 14/2 14/3 18/11 18/12 18/15 18/25 27/1 27/1
accounts [39]  4/23 4/23 4/25 5/20 5/23 6/3 6/4 6/6 6/7 7/1 7/5 7/10 8/3 8/9 8/12 8/14 8/20 8/21 8/21 8/22 8/23 8/25 9/4 9/5 9/6 9/9 9/11 10/8 10/12 10/14 10/15 10/23 12/20 12/21 12/22 48/11 48/13 48/22 48/23

accurate [1]  28/5
achieved [1]  26/19
acknowledged [1]  55/5
across [2]  4/22 28/8
acrylic [1]  46/17
action [5]  1/3 34/16 36/17 36/23 37/9
activity [3]  5/13 7/5 7/7
actual [1]  19/4
actually [12]  5/24 20/5 35/15 37/24 38/12 51/5 51/6 51/13 55/10 55/15 56/3 66/10
add [3]  15/19 58/15 61/23
additional [3]  55/14 56/24 56/24
address [15]  4/7 6/15 10/25 11/13 11/15 17/13 17/14 17/17 42/15 45/1 53/8 55/20 69/3 69/19 69/24
addresses [7]  6/13 6/14 9/19 16/10 21/17 27/3 33/5
adequately [1]  51/10
adjudicate [1]  54/3
adjust [1]  59/12
adjusted [3]  9/13 9/18 9/25
adjustments [2]  14/1 14/2
admittedly [1]  20/22
advanced [1]  16/8
advantage [1]  56/20
after [4]  54/12 56/10 59/15 67/17
afternoon [2]  1/7 67/22
again [8]  14/23 19/5 37/6 45/13 51/12 52/21 69/25 70/5
age [1]  25/1
ago [2]  24/2 70/1
agree [2]  14/20 46/8
agreed [3]  13/21 55/9 59/2
ahead [8]  23/3 27/24 32/19 33/1 60/10 70/4 70/13 79/6
air [1]  54/6
Akemashite [2]  47/1 47/25
Alexandra [1]  79/20
algorithm [3]  26/21 26/22 27/7
algorithms [1]  31/4
all [52]  3/2 4/12 6/22 7/3 9/1 11/6 11/20 15/22 20/7 21/3 21/7 23/1 23/3 26/8 27/4 32/15 36/8 37/16 38/7 38/13 39/5 39/19 41/2 44/19 44/25 52/11 52/17 52/17 52/22 54/10 54/21 55/21 56/2 56/17 57/25 60/23 62/12 62/25 63/19 64/9 66/8 67/4 68/8 68/16 68/19 68/24 69/2 79/6 80/8 80/11 80/11 80/13
alleged [1]  12/3
alleging [1]  47/25
allow [5]  20/21 21/13 21/18 35/19 57/13
allowed [1]  32/10
along [2]  55/21 56/2
already [5]  9/14 21/3 41/13 45/8 59/15
also [32]  3/15 8/11 10/14 10/21 15/5 15/19 15/20 19/21 26/4 26/11 28/8 34/25 37/8 38/18 41/4 44/1 45/12 47/18 47/21 48/1 51/11 53/19 57/25 58/24 60/1 60/19 61/3 61/7 65/17 66/18 67/1 67/13
Although [1]  44/17
am [61]  15/5 20/14 20/19 20/21 20/25 21/1 21/4 21/13 21/18 21/21 23/16 23/23 24/10 24/25 25/1 27/25 28/1 28/18 29/5 29/17 30/8 32/14 32/15 34/7 35/10 35/19 35/21 36/9 36/25 37/16 38/13 41/3 41/8 42/3 42/6 42/7 42/15 42/23 44/1 47/5 50/6 51/8 52/1 57/2 58/5 58/10 59/11 59/22 59/23 59/24 60/7 60/18 61/10 63/25 64/5 64/12 64/18 67/5 68/6 79/9 80/3
ambiguity [1]  48/4
ambiguous [2]  47/12 47/20
amendments [1]  41/23
AMERICA [3]  1/3 17/25 18/1

**A**

among [1]   52/11
amount [4]   9/7 13/18 13/19 27/17
amounts [2]   8/10 39/8
analogous [1]   26/25
analysis [30]   3/23 4/11 8/19 9/2
  10/25 11/8 15/12 17/18 20/14
  21/14 25/25 26/2 26/24 30/3 30/20
  31/1 31/4 31/17 31/20 31/24 32/5
  34/12 34/15 36/12 42/15 45/24
  46/5 55/16 67/1 67/11
analytic [1]   16/21
analyzed [1]   5/21
another [10]   9/4 9/8 17/5 21/19
  38/24 48/1 54/12 60/13 67/8 67/18
answer [2]   38/6 41/15
answering [1]   25/10
anticipate [3]   41/13 41/15 46/24
any [40]   4/13 15/1 15/3 21/18
  22/1 22/17 23/24 24/1 25/15 25/16
  25/18 25/25 29/10 31/20 32/8
  32/15 33/20 34/9 35/23 36/12 38/4
  38/9 39/5 39/11 39/20 40/21 40/22
  43/24 44/16 44/16 48/4 49/6 49/17
  52/5 52/14 55/14 56/7 56/11 66/18
  80/2
anybody [1]   24/15
anyone [11]   24/17 24/25 25/3
  25/20 38/5 43/14 49/15 57/23
  59/10 59/12 66/19
anything [28]   11/18 21/7 22/2
  22/18 24/11 31/15 31/17 32/11
  32/12 32/12 32/14 34/24 35/6
  36/11 36/22 36/24 37/8 38/5 39/9
  39/20 40/1 42/9 46/5 52/20 69/2
  69/13 70/6 80/9
anyway [2]   56/16 66/7
appeal [2]   50/20 62/7
appear [5]   9/21 9/24 15/10 63/15
  63/21
APPEARANCES [3]   1/11 1/22 2/1
appeared [3]   9/23 11/9 11/10
appears [1]   14/17
applicable [1]   28/8
application [3]   18/2 19/17 40/17
applied [7]   20/25 29/18 31/12
  34/25 35/16 35/24 37/18
apply [4]   20/23 26/21 26/21 41/9
applying [4]   19/2 24/11 35/13
  40/21
appreciate [1]   50/4
approach [2]   3/6 51/22
appropriate [5]   38/18 45/20 51/11
  55/24 59/25
are [126]
area [3]   18/14 24/13 45/10
areas [1]   24/4
argue [3]   19/24 33/14 62/7
argued [1]   32/4
arguendo [1]   14/6
arguing [1]   13/22
argument [5]   3/15 12/25 38/6 38/8
  38/21
arguments [2]   38/4 54/2
arose [1]   9/6
around [4]   25/1 39/25 65/10 68/6
arrange [1]   62/23
arrive [1]   31/5
as [122]
ask [17]   13/10 26/15 30/5 34/9
  37/8 39/19 43/22 46/12 53/11
  60/18 61/11 61/12 61/12 62/20
  63/1 66/16 68/16
asked [9]   13/13 54/14 54/15 57/8
  57/17 62/2 62/19 68/13 68/15
asking [8]   22/23 37/6 37/7 60/7
  60/14 62/3 62/6 80/1
aspect [1]   39/4
asserted [1]   25/23
asserting [1]   51/4
assertion [1]   47/12

asset [3]   36/16 38/17 38/20
assist [3]   4/20 12/14 12/18
assuming [2]   14/6 64/18
assumption [1]   63/23
assumptions [1]   27/13
assure [1]   21/23
astronomy [1]   31/1
Athens [1]   65/1
attached [1]   16/22
attempt [2]   24/20 46/25
attend [2]   66/20 66/21
attributable [2]   6/5 6/12
attribute [1]   17/2
attributed [1]   7/1
attributes [1]   46/23
attribution [4]   17/10 21/18 21/20
  27/8
August [1]   15/25
availability [5]   64/10 68/2 68/10
  68/19 68/22
available [11]   10/4 22/12 22/20
  53/13 57/17 57/21 61/7 64/13
  65/21 68/4 68/15
Ave [2]   1/13 1/20
Avenue [1]   2/9
away [2]   20/22 39/10

**B**

back [27]   9/17 19/6 21/12 22/14
  22/16 40/2 41/2 47/14 51/25 54/21
  55/17 57/3 57/16 60/6 60/8 60/11
  61/5 61/18 61/20 62/5 62/10 63/8
  65/12 68/6 68/16 79/5 80/11
backwards [3]   55/13 56/23 58/25
balance [2]   8/19 8/23
bank [17]   6/8 10/8 10/9 10/9
  10/12 10/14 10/23 11/1 11/2 11/5
  13/16 13/17 13/17 15/15 17/25
  18/1 18/18
Bankruptcy [1]   2/8
banks [2]   4/25 12/22
Barcelona [1]   65/6
based [15]   18/16 18/17 19/10
  21/14 26/16 26/17 28/18 34/18
  34/20 37/9 40/3 42/23 51/4 53/5
  66/14
bases [1]   15/3
basis [9]   8/15 11/1 12/5 13/6
  13/11 14/15 15/22 19/8 38/19
be [95]
bearing [1]   34/9
became [1]   10/4
because [30]   6/7 24/19 27/2 28/3
  30/8 34/5 34/14 35/5 42/19 43/2
  47/24 48/5 48/23 50/19 53/2 53/8
  53/16 55/12 57/1 57/1 57/21 59/2
  59/2 59/14 66/6 66/10 67/12 68/10
  68/23 79/9
becomes [1]   33/14
becoming [1]   58/12
been [22]   13/15 14/10 14/18 24/15
  24/24 25/7 25/9 31/12 34/2 34/5
  34/7 40/23 47/9 51/10 55/12 55/14
  55/22 56/4 56/18 58/17 66/18
  67/16
before [10]   1/9 23/7 47/16 50/24
  54/15 58/21 66/1 66/9 69/8 70/5
beginning [2]   25/8 25/9
begins [1]   65/4
behind [1]   58/21
being [22]   4/3 4/4 4/4 12/2 12/3
  13/9 13/9 15/11 15/11 16/12 17/9
  17/14 19/22 19/23 19/23 20/7 30/2
  36/2 37/18 45/19 45/20 56/19
Belgrade [1]   65/9
believe [14]   6/22 13/22 13/25
  14/18 15/25 25/5 28/15 31/3 35/18
  39/3 42/19 44/1 54/13 79/11
believes [1]   26/13
bench [3]   42/4 42/5 42/8
bending [1]   58/24
bent [1]   56/23

besides [3]   24/17 24/17 70/11
best [2]   56/22 79/23
bet [1]   30/8
better [2]   44/6 69/7
between [8]   9/9 10/19 24/9 25/12
  33/24 34/22 42/13 57/6
beyond [2]   52/4 56/6
bias [4]   23/20 31/2 34/12 34/12
big [3]   23/23 35/3 35/4
biggest [1]   23/22
Bisbee [7]   25/15 28/13 29/11
  29/13 29/14 34/3 34/5
Bisbee's [3]   28/2 29/5 33/3
bit [11]   3/11 20/10 21/11 21/15
  24/12 27/5 27/23 40/8 51/6 56/20
  79/9
Bitcoin [79]   3/16 7/4 7/9 7/16
  8/1 8/4 8/9 8/10 8/11 8/11 8/13
  8/15 8/19 8/23 8/24 9/3 9/5 9/7
  9/10 9/12 9/13 10/4 11/11 11/13
  11/13 11/15 11/15 11/16 13/24
  14/18 14/19 14/22 16/10 16/12
  16/18 17/1 17/2 17/10 18/13 21/18
  21/20 23/21 24/1 24/3 24/8 24/18
  25/4 25/5 25/8 25/13 32/13 34/1
  34/8 34/13 34/22 39/8 43/15 44/8
  44/14 44/15 45/15 46/23 47/3 47/4
  47/22 48/2 49/2 49/3 49/4 49/5
  49/9 49/12 50/3 50/4 50/13 50/23
  51/4 51/15 51/16
Bitcoins [3]   4/9 9/22 9/25
BitPay [3]   6/7 6/7 6/8
black [1]   29/9
block [19]   16/9 16/20 17/15 17/18
  26/24 32/7 39/2 39/5 39/7 39/14
  39/22 39/24 42/9 42/14 43/12
  43/18 45/7 45/24 46/1
blue [1]   17/13
board [2]   28/8 38/25
borders [1]   67/25
both [14]   8/9 8/24 18/17 20/15
  21/5 21/23 23/19 25/24 41/9 41/15
  41/20 62/8 64/10 67/25
bottom [4]   3/11 9/19 14/17 21/5
box [2]   14/12 29/10
break [5]   59/21 60/10 60/25 61/4
  61/20
briefed [1]   69/22
bring [1]   69/20
bringing [1]   28/20
brings [1]   53/10
BRODIE [1]   1/15
broken [5]   7/16 8/3 8/12 10/10
  16/19
Brooke [1]   62/15
Brooklyn [1]   2/5
BROWN [7]   1/15 11/24 13/25 14/11
  15/5 23/1 59/16
Brussels [1]   64/17
BTCE [1]   10/3
build [1]   50/24
busiest [1]   65/18
business [3]   49/24 50/9 66/19
busy [3]   53/17 67/14 67/17
buy [1]   46/16
buying [1]   34/8

**C**

C-E-P-O-L [1]   65/13
C-H-A-N-D-L-E-R [1]   67/15
Cabanas [20]   21/25 23/4 23/4
  23/12 23/18 23/23 24/14 26/1 28/6
  28/21 29/18 30/16 32/20 37/16
  38/25 42/8 45/24 49/13 49/19 50/1
Cabanas' [1]   36/15
Cabanas's [1]   33/8
calculation [2]   19/4 19/6
calendar [2]   57/13 66/7
California [2]   67/8 67/18
call [9]   4/7 20/14 41/16 44/6
  44/11 46/14 60/15 61/13
called [4]   22/7 22/12 47/1 48/2

**C**

calling [2] 44/14 51/18
calls [2] 43/17 45/7
Cambridge [1] 65/16
came [4] 8/1 59/1 62/5 62/9
can [71] 3/9 6/15 8/13 13/10
16/11 16/14 17/1 17/4 17/4 17/6
17/9 19/13 19/22 19/24 20/4 21/23
23/13 26/2 26/4 26/14 27/7 27/8
27/9 29/18 29/24 30/14 31/19
31/20 31/22 32/9 32/18 32/22
34/21 39/16 40/9 40/10 43/16
44/15 45/19 45/19 46/4 46/13
47/16 49/15 51/14 51/21 51/25
56/22 58/22 59/5 59/6 59/21 60/16
60/22 61/9 61/9 61/16 61/17 62/23
64/8 66/19 66/20 68/5 68/16 69/3
69/9 69/10 69/24 70/4 70/6 79/13
can't [8] 20/11 35/22 37/17 37/23
47/14 47/20 53/10 54/11
cannot [2] 25/25 80/6
capable [1] 55/16
car [1] 24/24
cards [2] 10/16 10/18
cars [2] 25/2 25/2
case [30] 4/7 20/3 24/19 44/16
50/7 50/19 56/8 56/11 56/12 56/13
56/15 56/23 57/3 57/14 57/16 58/8
58/10 58/12 59/7 59/11 59/13
59/17 66/1 66/7 66/21 66/22 66/24
67/20 68/12 68/24
cash [1] 5/7
cast [1] 58/9
category [1] 6/6
CATHERINE [1] 1/12
cautioning [1] 59/12
Ccips [1] 1/19
central [1] 51/3
CEPOL [1] 65/13
certain [8] 6/11 9/20 10/24 11/8
17/2 43/14 47/22 53/9
certainly [10] 4/1 20/4 23/24
29/10 35/22 36/4 36/11 48/18
52/19 61/8
certainty [2] 26/18 27/16
certify [1] 81/4
chain [22] 16/9 16/20 17/15 17/18
26/24 32/7 39/2 39/5 39/7 39/14
39/22 39/24 42/9 42/15 43/13
43/16 43/17 43/18 45/6 45/7 45/24
46/1
Chainalysis [29] 16/20 23/21
24/11 25/22 25/23 26/5 29/25 30/2
31/19 32/11 33/4 33/15 35/3 39/1
39/2 39/5 39/15 39/23 40/10 40/21
42/9 42/14 46/1 54/5 55/9 55/13
55/17 56/2 58/19
Chainalysis' [1] 25/13
challenge [1] 53/3
chance [2] 39/19 41/5
Chandler [1] 67/15
change [3] 56/12 63/16 64/8
changes [1] 59/11
changing [1] 66/10
chart [15] 5/15 7/14 8/6 8/18
9/12 12/3 13/4 13/19 14/4 14/17
37/16 37/17 37/18 37/20 37/20
charts [8] 3/6 5/18 5/20 9/5 12/6
13/9 15/20 18/5
chasing [1] 42/9
chat [3] 48/20 48/23 51/1
check [9] 22/4 22/4 52/23 60/23
61/9 63/8 65/24 66/3 70/10
checking [2] 66/4 67/2
chemistry [1] 30/25
choice [5] 34/4 57/6 57/6 57/8
57/10
CHRISTOPHER [1] 1/15
CipherTrace [9] 22/3 22/19 35/2
56/9 58/2 58/16 58/19 58/20 66/19
CipherTrace's [1] 58/1

circle [1] 25/7
circuit [1] 3/10
circumstances [4] 36/3 38/7 54/18
58/11
cited [1] 38/10
Citibank [2] 17/25 17/25
City [4] 67/15 67/20 67/23 67/24
claim [1] 26/5
claiming [1] 53/13
clarify [4] 8/20 26/2 33/8 33/16
clarifying [1] 61/24
clear [20] 4/5 13/3 13/8 15/1
20/13 36/22 41/25 45/4 49/20 55/3
55/22 56/1 56/6 57/11 57/22 61/10
62/1 62/11 65/25 80/5
clearly [1] 57/8
clerk [1] 64/1
clever [1] 34/4
click [2] 16/9 17/19
client [2] 54/9 62/5
cluster [2] 17/10 33/6
clustering [4] 25/13 26/16 32/21
32/23
code [9] 31/10 31/14 46/21 54/23
55/11 55/12 55/16 55/21 56/4
CoinJoin [1] 48/19
collection [1] 7/5
COLUMBIA [1] 1/1
column [1] 6/1
come [10] 17/16 21/12 24/22 51/22
58/21 59/19 60/11 61/5 61/18
61/20
comes [3] 12/7 20/24 45/17
coming [3] 9/5 28/23 79/16
common [8] 16/5 16/5 18/7 18/7
19/25 43/10 45/23 50/2
commonly [2] 18/20 19/20
communications [2] 4/20 5/10
community [2] 39/3 50/3
Comolli [1] 79/20
compared [2] 5/7 10/13
compelling [1] 59/14
competence [2] 18/14 18/21
complaints [1] 54/8
completely [4] 11/14 35/9 56/1
56/6
comply [1] 54/19
computer [1] 11/9
concern [13] 14/5 14/11 20/16
22/13 22/24 23/22 23/23 24/13
28/20 28/24 45/4 59/16 79/8
concerned [5] 53/5 53/19 53/24
54/7 80/3
concerns [4] 22/15 44/13 45/12
56/10
conclude [1] 37/23
concluded [1] 80/14
conclusion [1] 42/8
conclusions [1] 26/14
confer [1] 62/4
conference [3] 1/9 60/15 66/20
conferred [1] 62/9
confirmations [1] 5/10
conflict [1] 68/5
conflicts [4] 53/12 53/15 57/19
61/6
confusion [2] 28/3 28/24
connection [1] 6/20
considered [1] 57/9
consistency [1] 4/8
consistent [3] 4/3 4/4 41/22
consistently [1] 19/2
constitutes [1] 81/5
Constitution [1] 2/9
consult [1] 67/14
contacting [1] 62/17
contained [1] 5/11
context [2] 18/13 47/7
continuance [9] 56/25 57/3 60/12
60/20 61/25 62/2 62/3 62/6 62/10
continue [1] 59/17
CONTINUED [2] 1/22 2/1

continues [1] 3/17
control [3] 9/3 9/15 43/14
controlled [2] 9/18 13/25
convenient [1] 53/17
conversation [3] 53/6 68/9 69/7
conversations [1] 47/4
convinced [1] 23/24
convincing [1] 60/1
copies [1] 3/6
core [1] 18/14
correct [2] 79/10 81/5
correctly [3] 25/6 30/23 37/1
correlate [1] 11/10
cost [1] 49/8
could [19] 4/15 7/21 16/9 31/16
33/23 35/1 37/15 38/12 47/19
47/21 50/24 52/23 54/23 55/22
60/14 60/25 62/19 66/5 79/18
couldn't [2] 57/24 66/11
counsel [9] 29/12 29/12 54/4
58/12 62/18 63/14 63/14 63/20
64/5
counted [1] 9/14
counter [1] 27/16
counterterrorism [1] 64/17
counting [2] 9/12 9/16
couple [3] 9/22 67/16 70/2
course [4] 46/24 55/2 55/3 55/6
court [38] 1/1 2/7 2/8 4/5 4/15
8/20 11/24 14/21 25/24 33/11
36/14 38/22 40/9 42/1 47/20 53/8
54/3 54/20 54/21 56/14 57/1 58/21
59/2 59/14 59/20 60/8 60/19 60/24
61/11 61/12 61/25 62/18 62/20
63/8 66/14 68/16 81/4 81/14
Court's [5] 3/5 22/13 22/15 22/24
79/23
courtroom [3] 69/10 70/7 70/14
Courts [1] 2/8
covered [1] 58/17
covers [1] 24/12
create [1] 56/4
created [2] 55/20 55/20
credentials [1] 49/14
criminal [3] 1/3 11/23 50/18
critical [1] 23/18
criticism [1] 58/19
criticize [1] 18/24
CRM [1] 1/18
cross [5] 29/7 29/12 30/6 35/17
59/6
cross-examination [3] 29/7 29/12
59/6
crossing [1] 45/10
crucial [1] 30/15
crypto [3] 24/15 34/3 58/18
cryptocurrencies [2] 28/9 28/10
cryptocurrency [8] 4/24 5/3 5/5
12/21 15/16 24/7 43/17 45/7
cryptography [1] 79/13
CTCE [1] 65/2
culture [9] 47/24 48/5 48/7 48/10
48/14 48/17 50/17 50/18 50/22
curious [1] 41/8
currency [2] 4/24 43/15
currently [1] 24/2
customer [2] 18/16 18/16
customers [4] 11/11 11/12 11/14
14/13
cybercrimes [1] 16/22
Cypress [1] 65/1

**D**

danger [1] 9/11
Daniel [2] 60/7 62/15
dark [2] 4/3 50/20
data [2] 9/20 31/22
date [6] 17/16 52/25 52/25 66/11
66/16 68/14
Dated [1] 81/11
dates [1] 66/2
Daubert [7] 26/9 39/18 42/19

**D**

Daubert... [4]   42/24 49/13 52/14 54/2
day [3]   57/14 62/25 81/11
days [2]   57/23 70/2
DC [5]   1/5 1/14 1/17 1/20 2/10
deadline [2]   59/1 59/2
deadlines [3]   54/6 59/8 59/13
deal [2]   23/25 80/4
debit [2]   10/16 10/17
December [3]   65/14 65/16 65/17
December 2nd [1]   65/14
decide [3]   50/14 58/8 60/2
decision [3]   41/4 60/12 66/9
decisions [1]   42/5
deck [1]   67/16
declarations [1]   28/2
defendant [3]   1/7 2/3 54/14
defendant's [1]   5/11
defense [62]   3/7 3/15 4/2 4/6 4/7 11/21 15/1 18/24 20/12 20/24 21/3 29/2 29/12 29/12 29/19 29/22 30/3 40/24 44/1 44/13 45/4 46/19 48/6 49/15 49/16 49/18 49/19 53/10 53/11 53/20 53/23 54/1 54/7 54/23 55/11 55/15 55/18 56/4 56/6 56/14 56/14 56/15 56/17 56/22 57/15 57/16 58/17 58/25 59/3 59/3 59/4 59/8 62/2 62/3 62/3 62/5 62/9 62/9 66/1 66/7 68/12 69/4
defense's [3]   29/6 54/19 55/21
defining [1]   38/19
definition [2]   38/17 38/17
definitions [2]   19/13 38/16
delta [1]   10/19
delve [1]   17/4
denominated [1]   8/10
denoted [1]   7/8
deny [1]   59/22
department [2]   1/13 62/17
depending [2]   29/9 45/18
deposit [2]   8/2 8/2
deposited [3]   8/12 8/14 8/15
deposits [3]   5/4 11/2 13/18
Dept [1]   1/19
deputy [1]   64/1
derived [2]   36/24 37/3
described [1]   3/23
description [1]   31/14
detail [2]   10/10 12/2
detailed [4]   5/9 12/9 31/12 31/14
details [2]   11/8 60/25
determination [2]   47/17 51/9
determinations [1]   27/8
determine [1]   27/7
deterministic [15]   25/24 26/6 26/13 26/17 26/20 26/23 27/6 27/12 27/23 28/1 28/19 28/25 29/8 33/4 33/13
developed [1]   39/21
dial [3]   60/14 60/16 61/12
did [11]   10/1 13/6 15/24 19/4 24/11 28/13 44/22 44/23 52/22 68/13 70/2
didn't [17]   30/22 31/15 31/17 35/22 41/15 44/23 48/13 52/13 52/14 55/18 56/5 56/9 59/3 62/1 62/7 63/1 79/10
difference [4]   24/9 25/11 35/3 35/5
differences [1]   33/24
different [9]   4/8 29/15 29/15 29/17 29/19 30/13 35/23 36/1 48/6
difficult [2]   33/14 48/6
digital [1]   43/15
direct [5]   4/9 29/10 43/14 68/18 68/22
directions [1]   54/20
disagreement [1]   52/11
disagrees [1]   40/25
disallow [1]   36/6

discerning [1]   15/17
disclose [1]   41/14
disclosed [13]   14/14 18/6 18/10 18/22 19/4 19/5 19/8 20/22 20/23 39/9 41/18 51/10 52/6
disclosing [1]   43/25
disclosure [21]   3/11 11/22 12/9 12/13 13/1 13/8 14/24 15/6 16/19 16/25 23/7 36/15 40/7 41/11 42/22 42/25 43/6 49/20 53/9 55/19 56/10
disclosures [7]   16/24 20/12 41/13 41/19 43/2 53/23 54/1
discourse [1]   25/8
discovery [4]   15/25 54/9 54/10 80/1
discuss [5]   10/11 22/18 49/5 51/6 69/5
discussed [2]   57/9 69/5
discussion [4]   3/10 4/2 4/6 45/22
discussions [1]   25/5
disparate [1]   29/8
displays [1]   8/6
disputes [1]   54/3
distinction [1]   42/13
DISTRICT [4]   1/1 1/1 1/10 2/8
do [60]   3/2 4/12 5/14 5/17 15/15 15/15 21/21 21/25 22/17 23/11 30/6 31/23 32/16 34/13 34/15 39/9 40/25 42/20 42/21 44/6 44/10 46/19 50/16 54/16 54/17 56/2 56/5 56/13 56/16 56/20 57/2 58/6 58/7 58/7 58/8 58/10 59/6 59/7 59/14 59/16 60/2 60/7 61/4 61/11 61/11 62/8 62/12 63/3 63/3 63/3 63/19 63/25 65/23 66/19 67/1 67/1 68/18 69/9 69/10 69/15
docket [2]   23/8 23/16
document [5]   12/13 23/15 30/21 35/18 56/5
documented [2]   36/16 40/7
does [17]   4/6 15/9 16/17 16/23 24/6 32/24 37/25 39/17 40/3 41/20 46/1 49/8 49/20 67/9 67/10 67/10 67/12
does have [1]   16/17
doesn't [10]   11/22 34/24 35/6 35/11 39/4 39/9 39/11 40/18 44/3 53/21
doing [16]   34/24 35/11 35/16 37/19 39/16 41/12 44/24 49/17 55/16 64/16 64/18 64/20 64/22 64/24 64/24 67/19
DOJ [2]   1/15 1/18
DOJ-CRM [1]   1/18
DOJ-USAO [1]   1/15
dollar [3]   8/15 8/24 9/6
don't [80]   3/17 12/24 14/18 15/1 17/5 19/10 20/9 21/1 21/2 22/1 23/3 25/15 25/18 25/18 26/7 26/8 27/10 29/10 30/7 31/9 31/10 32/1 32/3 32/11 32/12 32/12 32/14 34/9 34/14 36/2 37/3 37/15 38/9 39/3 39/20 40/1 40/21 43/1 43/24 44/1 44/18 45/17 47/6 48/25 49/10 49/16 49/19 50/13 50/17 50/25 51/2 52/13 52/20 55/14 56/9 57/1 57/19 60/10 60/11 60/16 61/2 61/15 62/8 63/14 63/19 63/21 64/4 64/20 65/2 66/5 66/16 66/25 68/8 68/18 68/18 69/12 70/4 70/9 80/2
done [16]   25/18 29/16 31/19 42/18 44/3 44/7 44/14 44/15 44/20 45/3 45/14 45/18 45/19 45/20 46/4 62/19
door [2]   4/6 41/1
double [5]   9/11 9/16 61/9 63/8 70/9
doubt [1]   56/7
down [5]   10/3 10/10 12/16 64/7 79/19
dozen [1]   30/9

Dr. [19]   23/4 23/12 23/18 23/23 24/14 26/1 28/6 28/21 29/18 30/16 32/20 33/8 36/15 38/25 42/8 45/24 49/13 49/19 50/1
Dr. Cabanas [17]   23/4 23/12 23/18 23/23 24/14 26/1 28/6 28/21 29/18 30/16 32/20 38/25 42/8 45/24 49/13 49/19 50/1
Dr. Cabanas' [1]   36/15
Dr. Cabanas's [1]   33/8
drawn [2]   20/17 26/14
drew [1]   45/10
driving [2]   24/24 25/2
drug [3]   46/14 46/15 46/17
Dubai [3]   65/3 65/3 65/12
during [1]   22/9

**E**

each [6]   6/14 7/1 8/9 27/5 27/22 64/10
earlier [3]   13/15 60/22 62/1
early [6]   4/4 8/13 45/14 51/6 66/18 68/20
ECF [1]   3/12
economist [1]   79/11
effectiveness [1]   33/15
either [15]   6/2 6/13 6/23 6/25 8/1 13/8 25/17 29/19 49/20 52/4 52/24 52/25 56/11 59/9 66/9
EKELAND [14]   2/3 2/4 11/20 16/4 22/1 27/6 53/20 55/5 57/21 60/5 61/24 62/12 79/17 80/1
Ekeland's [2]   18/4 69/20
electronics [1]   5/11
element [1]   55/8
elicit [3]   3/18 29/10 36/16
else [13]   11/18 21/7 24/25 25/3 30/1 49/15 50/15 52/20 66/19 69/2 69/13 70/7 80/9
else's [1]   25/21
email [9]   6/13 6/14 6/14 22/4 60/6 61/3 61/5 61/10 63/8
emailed [1]   60/8
emails [2]   5/11 22/14
emerging [1]   35/8
end [4]   21/15 59/21 66/1 79/4
endeavor [1]   26/4
ending [1]   59/19
endless [1]   54/8
enforcement [1]   64/19
engaged [2]   34/7 44/7
engaging [1]   18/15
engineered [1]   39/25
enjoyed [1]   58/16
enough [2]   15/4 62/7
ensure [1]   56/20
enter [1]   55/24
entire [3]   14/4 38/9 67/11
entirely [1]   30/23
entities [2]   37/19 39/24
entitled [1]   81/6
entity [2]   33/5 50/12
entries [1]   6/11
entry [1]   6/11
envelope [1]   19/6
equally [1]   20/25
equivalent [1]   8/24
Erlangen [1]   64/23
error [41]   23/19 23/20 24/10 24/10 25/12 25/12 25/25 26/2 26/4 28/7 29/24 30/3 30/13 30/14 30/15 30/15 31/20 31/22 32/17 32/22 32/24 33/10 33/17 33/25 33/25 34/12 34/16 34/17 40/6 40/13 40/14 40/14 40/14 40/15 40/16 40/16 40/18 40/18 42/12 42/13 42/14
errors [5]   30/20 31/2 31/2 32/6 32/6
escapes [1]   22/8
essence [1]   56/5
essential [2]   55/8 58/12

**E**

essentially [5]   3/22 7/8 7/12 17/23 18/2
estate [1]   24/4
Europool [2]   65/6 65/14
eve [1]   56/11
even [13]   13/3 19/9 21/3 24/9 25/2 28/17 29/18 32/4 33/25 45/11 50/24 50/25 52/12
event [1]   56/11
events [1]   66/20
ever [3]   15/23 19/5 26/9
every [6]   13/10 27/12 37/14 53/8 59/17 59/20
everybody [1]   16/24
everyone [5]   26/8 46/17 51/16 51/17 58/9
everyone's [1]   25/1
everything [5]   21/2 30/1 37/7 39/16 42/6
evidence [5]   12/7 13/15 14/6 52/5 55/15
exact [1]   29/6
exactly [8]   7/1 7/22 20/12 31/15 35/23 36/9 54/24 61/6
examination [3]   29/7 29/12 59/6
example [6]   6/18 7/20 13/23 46/14 47/10 47/12
Excel [1]   15/21
except [1]   19/6
exchange [2]   7/17 49/6
exchanges [5]   4/24 7/16 7/20 12/21 49/7
excluded [3]   36/8 37/8 37/10
excuse [4]   8/8 29/22 32/13 46/24
excuses [1]   60/3
exercise [1]   18/15
exercised [1]   43/14
exist [2]   55/18 56/5
exotic [1]   50/21
expands [1]   54/6
expect [2]   19/19 51/4
expected [1]   4/18
expedite [1]   58/2
expenditures [7]   5/6 10/7 10/13 10/13 10/14 10/20 10/24
experience [17]   16/21 18/11 18/12 19/10 19/14 19/16 19/18 25/17 30/24 37/21 39/5 40/4 40/11 45/11 45/14 48/8 51/24
experienced [1]   28/9
experimental [1]   30/25
expert [64]   12/5 13/2 14/19 16/15 16/25 17/4 17/5 17/7 17/9 17/20 18/2 18/3 18/6 18/11 19/9 19/13 19/17 20/10 20/11 25/2 28/7 30/16 30/18 30/19 32/5 34/10 34/11 36/7 36/18 36/18 36/24 36/25 37/15 38/9 38/12 41/1 41/7 42/2 42/9 42/18 43/21 43/25 44/2 44/4 45/5 46/6 46/15 47/5 51/11 51/13 51/19 52/4 54/1 55/1 55/1 55/15 55/22 58/21 59/1 59/2 59/3 66/23 80/6 80/6
expertise [18]   16/18 16/18 18/18 23/24 23/25 24/10 24/23 32/7 33/21 35/25 37/22 38/12 39/12 39/17 39/21 40/4 40/22 45/11
experts [14]   21/4 25/14 41/16 42/6 46/14 53/9 53/21 53/23 57/17 57/19 57/21 59/5 59/5 60/23
explain [15]   4/22 7/1 10/1 12/19 29/14 32/21 36/15 43/8 43/12 43/13 43/15 43/16 45/6 47/22 55/23
explained [2]   22/13 22/13
explaining [2]   22/15 55/1
explanation [2]   20/3 57/15
explorer [3]   16/10 17/15 17/19
expressing [2]   22/24 25/19
expression [1]   50/3

expressly [1]   20/23
extend [1]   59/2
extended [2]   58/25 58/25
extension [2]   59/15 59/15
extensions [1]   59/8
extensive [1]   45/15
extent [9]   4/1 4/5 10/22 16/23 21/16 38/14 41/10 42/11 44/13
extraordinary [1]   58/11
extremely [1]   53/24

**F**

facility [1]   63/18
fact [24]   12/24 14/5 16/11 17/21 17/23 24/1 30/2 37/21 39/10 40/22 44/2 44/6 44/11 44/16 45/2 50/10 51/12 51/15 51/19 51/22 53/19 54/17 57/18 80/3
facts [3]   12/7 20/18 50/7
factual [4]   3/22 12/6 18/2 21/16
factually [1]   20/5
failure [2]   54/19 54/19
fair [3]   15/4 41/20 56/21
fairly [1]   23/23
fake [1]   11/17
far [5]   17/6 32/9 34/21 40/10 79/12
fast [1]   54/25
FATF [6]   37/13 38/2 38/15 38/18 38/20 38/22
fault [1]   56/17
favors [1]   49/17
fear [1]   50/20
features [1]   47/22
February [28]   52/25 53/7 53/25 54/15 57/3 57/7 57/7 57/16 58/8 60/2 60/22 61/7 64/11 64/14 65/19 65/21 66/1 66/2 66/10 66/15 68/2 68/4 68/5 68/11 68/15 68/15 68/21 68/21
February 12th [2]   68/11 68/15
February 23rd [1]   68/5
Federal [1]   11/23
feel [2]   13/1 52/1
few [2]   56/25 57/12
field [7]   6/13 24/6 33/21 37/22 38/12 40/22 42/10
fields [4]   24/5 25/16 25/18 30/25
figure [1]   39/23
figured [1]   39/25
figures [1]   24/19
file [3]   59/10 68/19 68/23
filing [1]   53/12
filings [1]   58/17
final [3]   11/7 18/5 58/23
finance [1]   64/17
financial [21]   3/22 4/10 4/19 4/25 5/2 5/12 5/21 10/15 10/16 12/1 12/22 13/5 13/12 15/3 15/8 15/10 15/14 34/16 36/16 36/23 37/9
find [4]   54/25 64/5 67/5 67/5
findings [5]   5/1 11/25 13/3 13/4 15/7
fine [7]   16/14 36/9 38/23 49/15 59/25 63/16 63/17
finish [1]   43/4
first [5]   3/3 5/19 18/7 26/8 52/22
Fischbach [3]   67/6 67/6 67/21
five [2]   20/6 21/21
Floor [1]   2/5
flow [3]   4/22 5/7 12/19
focused [1]   10/7
Fog [11]   11/15 11/16 14/18 16/12 17/1 17/2 17/10 21/18 21/20 23/21 51/15
folks [1]   59/24
following [4]   29/17 44/8 67/8 67/18
force [4]   34/16 36/17 36/23 37/10
foregoing [1]   81/5

forensic [15]   10/2 14/3 14/16 15/3 16/21 18/11 18/15 18/19 18/25 20/14 21/14 26/25 27/1 35/8 67/10
forensics [5]   13/12 20/13 26/11 43/18 45/7
foreseeable [1]   41/19
form [1]   31/4
forms [1]   15/22
formulate [1]   3/19
forth [1]   5/8
forthcoming [1]   42/16
fortune [1]   41/24
forum [12]   24/18 25/4 25/5 47/3 48/20 48/23 49/5 49/7 49/13 51/1 51/5 52/8
forward [6]   30/2 53/1 53/11 53/19 54/12 59/22
found [4]   11/9 26/19 35/21 36/1
foundation [4]   6/16 13/14 14/7 16/7
frankly [5]   31/13 44/5 54/20 55/14 59/17
free [4]   49/12 59/10 60/7 61/13
Friday [2]   60/19 66/14
front [5]   4/17 20/9 21/2 23/14 34/20
fully [3]   12/3 12/4 69/22
function [3]   39/13 39/15 46/2
functions [1]   47/23
fundamental [1]   25/7
funds [3]   4/22 12/20 17/2
further [6]   22/1 22/2 54/6 54/23 59/13 62/9

**G**

game [1]   59/19
gander [1]   19/1
gang [2]   46/15 47/7
gangs [1]   46/15
gave [1]   18/5
Geiger [1]   27/16
general [4]   14/10 32/16 38/2 42/12
generally [2]   67/12 67/17
generated [3]   35/13 35/15 35/15
Georgetown [1]   79/12
Germany [1]   64/23
get [16]   13/22 14/9 27/13 33/23 36/21 41/2 41/25 49/4 52/23 53/2 58/3 58/3 60/22 61/16 62/8 68/16
gets [4]   26/22 44/1 45/23 56/21
getting [5]   18/24 28/1 28/18 42/23 54/9
giant [1]   20/22
gigantic [1]   51/2
give [9]   21/5 41/3 41/4 44/19 47/10 47/11 47/15 51/3 64/9
given [8]   13/9 37/21 42/4 42/5 42/7 59/11 59/20 66/12
giving [2]   21/4 34/17
Glave [18]   3/3 3/14 4/18 4/20 5/1 5/12 5/20 6/17 6/25 9/5 11/25 12/18 13/2 14/18 16/13 18/6 21/8 21/13
Glave's [10]   3/10 5/5 5/8 6/23 6/24 8/19 9/2 11/8 15/21 16/7
Gmail.com [1]   6/18
go [23]   9/17 23/3 23/11 27/14 27/24 29/24 32/19 33/1 37/5 40/2 42/24 47/14 53/10 53/11 53/18 57/7 57/12 59/18 60/10 60/22 70/4 70/13 79/6
goes [1]   33/6
going [62]   3/18 12/4 12/5 14/5 14/24 16/25 18/24 20/19 20/21 21/13 21/18 21/19 21/21 22/20 24/16 24/20 28/3 28/4 30/5 32/25 33/11 34/1 35/19 36/5 36/20 36/22 37/8 39/15 42/1 42/15 44/12 46/11 46/13 46/21 46/25 47/2 49/19 50/4 50/13 51/9 52/1 52/3 53/6 53/7

**G**

**going... [18]**   57/3 57/7 57/7
57/12 58/6 59/13 59/18 59/18
59/19 59/25 60/1 60/3 64/5 65/25
67/1 68/11 68/25 79/19
**golden [1]**   41/10
**good [5]**   18/25 19/1 32/16 41/24
57/15
**goose [1]**   19/1
**got [15]**   4/17 12/16 31/14 48/8
52/11 52/12 56/16 58/4 60/6 60/9
60/25 62/14 65/11 66/2 67/18
**gotten [1]**   66/6
**government [36]**   17/6 18/23 20/21
21/19 22/18 24/5 24/16 24/20
25/12 25/22 26/8 26/13 26/15
26/23 27/15 29/4 35/14 35/17
35/18 36/17 36/19 36/22 41/1 41/4
44/12 46/14 46/23 46/25 47/11
47/19 47/25 51/4 52/21 52/24
53/24 79/7
**government's [7]**   23/20 26/10
26/15 33/12 43/22 69/6 69/21
**Gox [3]**   7/20 7/24 49/6
**granted [1]**   59/15
**graphed [1]**   8/9
**gravely [1]**   58/12
**great [2]**   10/10 23/25
**greater [3]**   20/16 37/24 37/24
**green [1]**   17/17
**grounding [1]**   44/16
**grounds [1]**   45/17
**group [2]**   38/25 39/23
**grouped [1]**   33/6
**groups [1]**   40/17
**guess [7]**   20/18 23/4 33/19 50/6
51/8 52/1 64/23

**H**

**had [21]**   7/25 10/23 22/7 35/23
38/16 39/18 39/19 39/21 44/21
44/24 47/22 48/1 52/12 55/15
56/12 56/12 56/14 57/9 57/19
60/23 79/17
**hadn't [1]**   60/23
**handed [1]**   33/2
**happen [2]**   47/4 53/17
**happened [1]**   56/9
**happening [3]**   29/9 50/19 50/21
**happy [8]**   16/7 44/10 51/21 51/22
57/12 60/18 62/18 69/19
**hard [5]**   20/14 20/18 28/19 29/11
51/9
**harder [1]**   40/8
**harm [1]**   45/18
**has [78]**   9/5 13/15 14/18 14/21
15/23 16/17 16/18 16/21 19/5
21/14 23/4 23/24 24/4 24/5 24/11
24/14 25/7 25/9 25/16 25/17 25/18
25/19 25/22 26/1 26/6 26/9 28/6
30/2 30/24 31/12 31/19 32/6 33/20
34/2 34/5 34/7 34/9 35/24 37/21
37/24 38/10 38/12 38/19 40/11
40/15 40/22 40/23 42/18 44/3 44/7
44/14 44/20 45/3 45/14 45/25 46/4
48/8 51/2 51/10 51/13 52/24 53/23
58/9 58/16 58/18 59/15 59/20
60/13 61/14 64/13 65/10 65/15
65/21 67/7 67/14 67/16 67/18 68/5
**hasn't [1]**   17/6
**HASSARD [3]**   2/3 64/13 67/2
**have [124]**
**haven't [4]**   14/10 31/9 38/8 70/1
**having [4]**   33/9 40/17 54/14 68/9
**Hawking [2]**   33/24 33/25
**he [143]**
**he is [1]**   32/4
**he's [1]**   47/9
**head [4]**   20/12 28/15 47/15 47/21
**hear [3]**   28/3 30/9 68/6
**heard [10]**   21/11 22/2 22/14 22/16

23/2 27/11 27/11 41/5 42/1 52/21
**hearing [4]**   39/18 49/13 52/15
54/4
**hearings [1]**   54/2
**heart [1]**   56/12
**hedging [1]**   79/9
**held [5]**   4/23 8/22 8/23 8/25
12/21
**help [6]**   26/2 26/3 40/18 50/7
51/6 54/23
**helpful [11]**   28/10 33/16 35/5
38/15 42/20 47/8 48/3 48/9 50/16
51/3 55/11
**helping [2]**   28/11 47/8
**helps [2]**   40/17 50/14
**her [44]**   3/11 3/18 3/22 3/22 4/7
4/9 4/10 4/19 5/1 9/21 10/25
11/25 12/5 12/8 12/9 12/13 13/2
13/3 13/4 13/7 13/7 14/25 15/12
16/12 16/19 17/7 18/12 18/13
18/18 18/21 19/10 19/16 19/18
21/13 21/19 22/8 28/14 28/22
28/23 28/25 29/1 64/14 66/16
66/22
**here [38]**   6/6 11/24 12/8 13/16
13/19 14/4 16/25 18/8 18/22 19/22
19/23 19/23 20/5 20/11 25/1 26/23
28/20 29/19 32/9 33/7 33/24 38/8
38/8 39/18 41/10 43/3 46/20 48/6
49/18 52/10 58/5 60/2 63/20 63/24
64/22 65/10 65/15 80/11
**heroin [1]**   46/18
**heuristic [1]**   31/3
**heuristics [6]**   26/17 27/14 29/7
31/12 54/9 55/17
**high [2]**   34/14 42/12
**him [28]**   24/13 24/21 34/11 35/17
35/19 39/18 39/19 40/25 41/7
42/17 42/17 43/20 43/25 44/3 44/6
44/11 52/7 56/24 57/8 60/8 60/9
60/18 61/11 61/12 61/13 61/16
61/17 79/18
**himself [2]**   11/16 55/5
**his [48]**   3/16 5/7 6/3 6/5 6/15
7/25 8/3 8/14 8/20 9/23 9/24
10/12 10/14 10/15 10/19 10/19
11/4 23/7 24/3 24/12 33/15 34/23
36/10 36/12 36/18 36/24 37/5
37/20 38/15 40/1 40/3 40/4 40/7
42/19 42/23 42/24 43/6 45/10
45/13 46/2 49/14 52/4 56/22 57/9
57/11 59/3 67/19 68/2
**his disclosure [1]**   40/7
**historically [1]**   47/3
**history [4]**   4/21 12/15 12/19
59/11
**hobbyist [1]**   24/6
**Hoffman [2]**   62/15 62/15
**hold [2]**   50/5 59/24
**holding [1]**   16/24
**honestly [1]**   29/17
**Hong [3]**   18/17 20/7 65/7
**Honor [65]**   3/4 3/5 3/9 4/14 5/16
5/19 6/1 6/21 11/4 11/19 11/21
12/17 13/21 14/6 15/13 15/19 16/6
16/17 17/3 17/8 18/10 19/3 19/15
20/4 21/6 23/6 24/14 26/20 27/21
27/25 33/2 33/22 35/7 36/5 37/1
38/1 38/14 38/24 40/3 40/24 41/21
41/25 43/24 44/10 44/12 45/21
49/12 52/19 52/22 53/18 58/15
60/4 61/8 61/18 63/13 63/24 64/2
66/17 67/21 69/19 70/10 79/14
79/22 79/25 80/10
**HONORABLE [1]**   1/9
**hope [1]**   28/18
**hops [1]**   17/12
**how [48]**   5/2 7/1 9/12 9/15 9/19
10/1 10/2 12/1 12/24 13/4 13/6
14/2 15/7 15/13 15/15 15/15 17/1
21/4 21/22 27/9 29/17 29/24 30/12
31/15 32/3 34/9 35/13 39/14 39/23

43/12 43/13 43/15 44/1 44/15
45/18 47/12 47/23 47/23 50/13
50/21 51/24 52/11 54/24 54/24
58/4 63/3 66/5 67/1

**I**

**I wanted [1]**   41/25
**I'd [2]**   47/14 61/5
**I'm [8]**   5/16 12/17 31/7 48/16
48/20 51/15 59/20 65/20
**idea [3]**   35/23 44/24 49/18
**identification [1]**   50/11
**identified [1]**   34/21
**identifiers [1]**   6/5
**identifies [1]**   33/4
**identify [3]**   6/4 26/4 53/23
**identifying [2]**   6/19 23/19
**ill [1]**   58/12
**illicit [1]**   34/22
**imagine [2]**   46/13 55/6
**imagined [1]**   33/5
**immovable [1]**   52/24
**importance [8]**   22/24 23/19 26/3
28/5 31/21 31/23 33/9 33/16
**important [9]**   29/23 30/4 30/11
30/12 33/8 33/18 40/6 58/7 66/21
**impossible [1]**   43/13
**inappropriate [1]**   45/19
**include [1]**   5/8
**including [8]**   4/23 5/2 8/3 10/15
12/1 12/20 13/4 15/7
**inclusive [1]**   10/22
**income [5]**   5/7 10/6 10/7 10/19
10/24
**incoming [5]**   8/8 9/13 9/14 11/11
17/15
**inconsistencies [1]**   9/20
**inconsistency [1]**   4/8
**independent [3]**   20/17 37/21 38/19
**India [1]**   65/11
**indicate [1]**   35/22
**indicated [1]**   66/10
**indicative [3]**   43/10 45/23 58/5
**individual [2]**   7/17 53/14
**individuals [1]**   18/9
**inference [2]**   20/17 44/19
**inferences [1]**   15/11
**inflows [9]**   7/6 7/9 7/15 7/15
9/10 10/10 10/12 11/2 11/5
**inform [1]**   29/16
**information [7]**   7/13 8/7 54/23
55/10 56/24 58/3 64/13
**inside [1]**   29/9
**insofar [1]**   26/20
**instance [4]**   7/24 14/11 34/16
49/22
**institution [2]**   5/21 5/22
**institutions [2]**   5/1 12/23
**instructed [1]**   60/24
**intend [2]**   3/17 29/10
**intends [1]**   47/11
**intention [1]**   6/21
**intentionally [1]**   34/6
**interest [2]**   54/13 54/22
**interfere [1]**   60/1
**internal [2]**   30/3 31/21
**internet [1]**   22/12
**Interpol [1]**   64/22
**interpretation [6]**   12/2 12/9
12/11 13/7 13/11 13/20
**interpretations [2]**   14/25 15/2
**interpreted [5]**   5/2 12/1 13/5
15/8 15/14
**interpreting [1]**   46/22
**introduce [1]**   46/25
**introduced [4]**   6/22 6/24 13/15
40/16
**investigation [2]**   23/21 25/13
**investigatory [1]**   18/11
**investor [1]**   4/4
**invoice [6]**   17/13 17/14 19/22
20/1 20/3 20/6

**I**

**invoices [7]** 11/8 11/10 11/17 18/17 20/6 20/7 21/21
**involved [2]** 25/9 48/7
**IRS [1]** 16/22
**is [560]**
**is a [1]** 34/4
**isn't [5]** 28/11 29/13 33/9 33/18 35/5
**issue [11]** 9/6 10/3 19/21 21/11 22/25 33/7 38/2 42/1 46/9 53/9 69/13
**issues [4]** 9/22 30/16 40/5 69/3
**it [245]**
**item [1]** 45/5
**its [7]** 24/11 31/9 31/20 36/12 54/19 58/21 59/4

**J**

**January [1]** 10/23
**JEFFREY [1]** 1/18
**Jennifer [1]** 22/8
**joint [1]** 16/5
**JUDGE [2]** 1/10 70/15
**judgment [1]** 21/22
**jumps [1]** 15/11
**June [1]** 54/21
**jury [24]** 4/20 5/3 12/18 19/24 26/3 26/3 28/3 28/10 28/24 29/23 30/11 33/8 33/16 35/4 40/6 47/8 48/3 48/7 48/9 49/17 50/7 50/14 50/17 51/7
**just [94]**
**JUSTICE [2]** 1/13 1/19
**justify [1]** 58/22

**K**

**Kansas [5]** 67/6 67/15 67/20 67/23 67/24
**ken [1]** 52/4
**kept [4]** 31/21 48/15 48/18 56/13
**key [4]** 44/22 44/22 44/23 52/23
**keys [3]** 43/12 43/15 48/18
**kidding [1]** 30/8
**Killdozer [1]** 48/2
**kilograms [1]** 46/18
**kind [4]** 10/18 25/25 39/2 64/18
**knew [1]** 44/25
**know [72]** 4/2 4/2 4/5 9/9 10/17 12/24 13/10 13/16 14/3 15/17 17/24 19/24 20/6 20/17 20/19 22/1 25/15 28/8 28/17 30/13 31/10 31/24 32/11 32/12 32/12 32/14 32/16 33/7 34/2 35/14 36/2 37/3 37/16 38/9 39/14 39/20 40/7 43/13 44/22 44/23 46/16 47/6 49/10 49/11 50/1 50/4 50/12 50/13 50/18 51/15 51/17 51/24 52/13 53/9 56/9 57/19 57/25 58/11 58/24 60/21 63/14 64/5 64/20 65/2 65/23 66/13 66/16 66/25 67/19 67/20 68/9 68/25
**knowing [2]** 26/3 33/17
**knowledge [8]** 24/8 25/16 33/10 34/14 35/20 37/21 39/12 40/11
**known [3]** 5/23 10/19 10/19
**knows [3]** 25/11 25/25 35/23
**Kong [3]** 18/17 20/7 65/8
**Kraken [1]** 8/4
**Krulikowski [1]** 79/11

**L**

**lack [1]** 13/1
**laid [1]** 6/16
**language [3]** 29/6 46/22 48/5
**large [4]** 8/13 32/21 32/23 40/17
**largely [1]** 24/6
**larger [2]** 27/2 42/3
**last [4]** 14/11 54/4 61/25 69/13
**later [3]** 60/7 60/14 69/24
**Latvia [2]** 64/18 64/22

**law [2]** 2/4 64/19
**Lawrence [2]** 22/10 22/11
**lawyer [3]** 22/20 60/14 62/16
**lawyers [2]** 56/22 57/10
**lay [1]** 16/7
**lead [4]** 27/15 29/8 45/5 53/2
**least [3]** 27/10 30/9 63/19
**leave [1]** 63/6
**leaving [1]** 41/3
**ledger [1]** 39/7
**leeway [2]** 21/4 21/5
**left [1]** 22/9
**legendary [1]** 24/18
**leniency [1]** 56/19
**lenient [1]** 56/18
**let [14]** 15/4 15/4 22/4 34/19 43/4 43/19 43/22 45/16 46/12 61/5 61/9 67/5 69/12 70/9
**let's [4]** 24/22 58/16 64/7 70/13
**level [4]** 10/11 10/12 34/14 42/12
**lies [1]** 56/17
**light [2]** 54/17 57/4
**like [37]** 6/8 7/21 18/7 20/5 20/12 21/10 23/6 23/10 27/1 27/4 29/23 29/25 39/4 40/1 42/17 43/15 44/18 47/6 47/22 49/6 49/23 51/25 53/8 53/14 53/16 54/6 54/11 57/23 58/13 61/2 61/6 61/11 65/9 66/9 69/4 79/22 79/25
**limine [2]** 69/16 69/18
**limited [4]** 12/6 22/21 22/23 35/20
**LINDSAY [3]** 2/7 81/4 81/13
**line [4]** 9/18 13/17 21/5 45/10
**link [1]** 24/21
**listed [6]** 3/19 7/5 8/21 17/14 17/17 34/17
**listen [1]** 54/20
**listening [2]** 35/10 49/17
**listing [1]** 53/12
**lists [1]** 5/21
**literally [1]** 16/10
**litigation [2]** 54/5 62/17
**little [9]** 3/10 21/11 21/15 27/5 27/23 40/8 51/6 56/20 79/9
**live [2]** 63/3 63/15
**local [4]** 8/4 9/22 9/25 64/3
**logistical [1]** 53/2
**London [1]** 65/15
**long [5]** 22/21 22/22 26/21 53/24 63/21
**longer [7]** 10/4 21/2 24/15 24/24 34/3 34/5 58/22
**look [17]** 9/17 11/4 13/17 14/23 17/15 20/12 24/25 26/7 34/23 37/5 40/2 42/25 43/1 43/6 47/14 55/2 60/20
**looked [2]** 35/21 37/17
**looking [11]** 3/11 9/9 11/2 17/12 17/18 20/15 34/15 35/21 43/5 45/5 55/23
**looks [1]** 65/9
**lot [5]** 42/4 45/18 50/19 53/16 58/16
**lots [1]** 47/6
**Luke [1]** 36/18
**lunch [2]** 22/9 60/24

**M**

**made [12]** 15/11 15/11 16/24 20/13 41/19 53/16 55/3 56/10 57/6 57/10 66/9 66/9
**main [2]** 18/22 47/3
**maintained [1]** 7/19
**maintains [1]** 29/22
**make [23]** 19/1 20/20 20/24 22/19 27/8 38/6 44/3 47/16 51/9 53/23 56/3 57/8 57/24 59/5 60/12 61/9 62/4 62/10 66/22 66/23 79/9 80/3 80/5
**making [6]** 3/18 14/1 14/2 17/19 18/9 59/25

**manner [1]** 21/23
**many [1]** 26/11
**March [12]** 65/22 65/23 65/24 66/3 67/2 68/3 68/6 68/10 68/12 68/16 68/21 68/21
**margin [1]** 45/8
**mark [1]** 65/11
**market [1]** 4/3
**Mastercard [4]** 22/19 62/16 63/20 65/4
**match [1]** 17/16
**matching [1]** 17/25
**material [1]** 27/18
**mathematical [3]** 30/20 31/1 32/5
**mathematics [2]** 24/4 24/8
**matter [5]** 16/11 19/25 36/1 70/7 81/6
**may [15]** 3/5 3/15 4/7 16/13 18/21 22/4 24/8 24/23 27/5 31/18 38/10 53/20 57/18 66/14 69/5
**maybe [13]** 3/9 22/24 24/9 26/14 28/22 28/25 35/4 44/5 44/8 48/7 48/11 60/20 61/4
**me [59]** 4/17 5/14 5/17 8/8 15/4 20/9 21/2 21/16 22/4 22/8 22/20 23/6 23/10 23/11 23/14 23/14 27/4 29/22 32/5 32/13 34/19 34/20 35/1 35/1 35/3 35/6 35/11 36/4 37/24 38/6 41/9 42/21 43/4 43/19 43/22 46/12 46/12 46/24 47/10 47/11 49/15 57/11 57/13 57/21 59/10 60/1 60/7 60/14 61/3 61/7 61/9 61/11 61/12 63/17 64/9 65/25 67/5 69/12 70/9
**mean [16]** 13/10 13/13 15/9 19/3 26/11 32/3 34/7 34/8 35/20 43/18 44/18 50/8 58/11 66/17 67/9 67/10
**meaning [1]** 15/17
**meaningful [1]** 39/20
**means [4]** 15/6 19/24 25/2 46/18
**meant [2]** 26/23 29/14
**measured [1]** 36/3
**measuring [1]** 37/19
**meet [1]** 11/22
**members [1]** 48/7
**mentioned [2]** 54/5 79/17
**message [2]** 67/3 68/7
**methodologies [6]** 18/3 19/17 27/2 35/24 35/25 37/18
**methodology [6]** 25/23 31/12 33/4 34/23 35/13 35/16
**methods [1]** 18/25
**Miami [1]** 64/4
**MICHAEL [1]** 2/3
**mid [3]** 68/21 68/21 68/21
**middle [4]** 3/24 4/15 12/12 12/14
**might [9]** 7/22 20/14 27/16 27/17 40/20 57/23 59/12 63/14 69/7
**MIIS [3]** 64/20 64/20 65/4
**mind [2]** 37/3 37/4
**minute [2]** 43/1 61/20
**minutes [2]** 40/12 61/19
**Miroff [1]** 79/12
**misrepresentation [1]** 57/20
**missing [2]** 9/24 12/8
**Missouri [3]** 67/20 67/22 67/24
**mitigate [2]** 32/22 32/24
**model [2]** 40/15 40/19
**moment [2]** 20/10 70/12
**Monero [8]** 38/25 39/1 39/6 39/9 39/13 39/15 39/21 39/23
**months [2]** 39/25 50/24
**Moon [4]** 49/23 50/2 50/12 51/17
**more [23]** 6/10 7/21 15/23 19/5 21/11 21/16 25/2 25/20 26/16 26/25 31/13 32/2 32/10 36/4 37/22 52/2 52/6 55/11 56/3 56/18 60/3 61/23 64/13
**morning [3]** 22/15 53/6 67/21
**MOSS [2]** 1/9 70/15
**most [1]** 58/10
**motion [3]** 59/10 59/23 69/17

**M**

motions [1]   69/16
mouth [1]   30/9
move [5]   53/1 54/12 54/25 58/14 64/8
moved [1]   9/3
moving [3]   58/10 58/13 59/22
Mr [2]   5/6 16/4
Mr. [85]
Mr. Brown [6]   11/24 13/25 14/11 15/5 23/1 59/16
Mr. Cabanas [3]   21/25 23/4 37/16
Mr. Ekeland [11]   11/20 22/1 27/6 53/20 55/5 57/21 60/5 61/24 62/12 79/17 80/1
Mr. Ekeland's [2]   18/4 69/20
Mr. Fischbach [3]   67/6 67/6 67/21
Mr. Hassard [2]   64/13 67/2
Mr. Hoffman [1]   62/15
Mr. Scholl [6]   16/14 36/10 36/24 37/7 38/15 38/19
Mr. Scholl's [4]   36/7 36/8 36/25 37/9
Mr. Sterlingov [23]   6/15 7/2 7/19 7/25 10/4 10/7 10/22 11/12 11/16 24/17 24/20 46/23 47/2 47/25 50/14 56/21 57/4 60/21 63/9 63/18 63/22 66/23 66/24
Mr. Sterlingov's [16]   3/15 4/21 4/23 5/3 5/12 6/12 6/19 7/9 8/19 9/10 10/8 11/9 12/15 12/19 12/20 49/23
Mr. Torres [5]   22/8 22/15 61/4 61/5 61/10
Mr. Verret [2]   15/23 19/5
Mr. Verret's [1]   14/22
Ms [2]   11/8 29/13
Ms. [49]   3/3 3/10 3/14 4/18 4/20 5/1 5/5 5/8 5/12 5/20 6/17 6/23 6/24 6/25 8/19 9/2 9/5 11/25 12/18 13/2 14/18 15/21 16/7 16/13 18/6 21/8 21/13 22/8 22/10 22/11 22/11 25/14 25/15 28/2 28/13 29/3 29/5 29/11 29/14 33/3 34/3 34/5 37/12 52/12 53/21 59/1 62/16 64/12 64/13
Ms. Bisbee [6]   25/15 28/13 29/11 29/14 34/3 34/5
Ms. Bisbee's [3]   28/2 29/5 33/3
Ms. Glave [18]   3/3 3/14 4/18 4/20 5/1 5/12 5/20 6/17 6/25 9/5 11/25 12/18 13/2 14/18 16/13 18/6 21/8 21/13
Ms. Glave's [9]   3/10 5/5 5/8 6/23 6/24 8/19 9/2 15/21 16/7
Ms. Jennifer [1]   22/8
Ms. Lawrence [2]   22/10 22/11
Ms. Pelker [2]   29/3 52/12
Ms. Pelker's [1]   37/12
Ms. Pietrzak [1]   62/16
Ms. Still [5]   25/14 53/21 59/1 64/12 64/13
Ms. Torres [1]   22/11
Mt [3]   7/20 7/24 49/6
much [8]   12/25 15/23 21/4 26/25 27/1 52/2 60/25 68/8
multiple [1]   6/9
my [24]   20/11 20/19 22/4 23/22 24/13 28/15 38/6 39/6 42/8 44/22 44/23 45/9 47/4 47/5 47/15 47/21 49/3 50/22 51/23 56/19 57/13 63/23 68/24 70/5
mysterious [1]   50/18

**N**

N.W [1]   1/16
Nakamoto's [1]   25/7
name [7]   6/3 6/15 6/19 7/25 22/8 49/23 50/9
named [2]   50/9 51/16
names [1]   50/11

nature [3]   21/16 33/20 44/20
necessarily [2]   43/9 58/5
necessary [2]   21/1 56/15
need [24]   19/1 20/19 20/24 47/16 50/23 52/2 52/6 54/25 54/25 55/1 55/2 55/4 55/4 55/22 55/22 56/7 59/7 59/10 59/13 63/19 68/25 69/5 69/9 70/7
needed [3]   50/23 55/23 60/20
needs [5]   34/14 35/4 39/14 61/19 66/21
negative [2]   7/7 7/7
net [6]   4/3 8/22 9/10 10/12 10/13 50/21
never [3]   31/19 45/25 59/19
never-ending [1]   59/19
new [10]   1/20 53/10 53/21 53/23 53/23 53/25 54/2 54/8 56/5 69/20
newly [1]   35/8
next [11]   1/22 7/3 7/4 7/12 8/6 8/18 9/2 10/6 12/25 45/8 67/4
night [1]   57/5
no [31]   1/4 10/4 12/2 15/16 22/22 23/13 23/13 25/1 25/20 27/20 28/16 30/2 31/21 32/7 35/10 35/10 37/21 40/11 44/24 45/8 48/20 49/18 50/10 50/10 52/5 52/24 55/19 58/22 60/3 70/11 80/10
noise [2]   23/20 31/2
nominal [2]   8/10 8/24
none [2]   57/16 57/20
Nordea [2]   10/9 11/4
not [121]
note [5]   5/6 29/4 36/6 42/23 54/16
notes [1]   65/15
nothing [1]   32/7
notice [4]   15/1 47/19 69/22 69/25
noticed [7]   4/10 14/10 14/18 31/25 69/6 79/7 80/6
noting [1]   5/4
notions [1]   29/23
November [12]   64/14 65/7 65/8 65/8 65/11 65/12 65/14 65/16 65/16 67/7 67/17 68/20
November 10 [1]   67/17
November 10th [1]   67/7
November 13th [1]   65/11
November 27th [1]   65/14
November 4th [2]   65/7 65/8
now [18]   4/13 15/9 21/25 41/14 42/8 47/10 53/22 54/10 57/7 57/25 58/20 59/8 61/4 61/13 66/3 69/24 79/5 80/4
nowhere [1]   13/8
number [11]   8/13 12/13 22/7 23/17 27/2 27/3 32/21 32/23 43/6 61/24 66/17
numbered [2]   23/11 23/17
numbers [1]   22/12
numerous [1]   46/25
NW [3]   1/13 1/20 2/9
NY [1]   2/5

**O**

object [1]   45/16
objection [4]   22/17 22/22 37/6 63/21
obligation [1]   55/19
obligations [1]   54/19
obstacles [1]   52/24
obtaining [1]   54/22
obvious [1]   55/7
obviously [2]   30/4 59/4
obviously that [1]   30/4
occurred [1]   18/8
October [27]   52/25 53/7 53/13 57/14 64/10 64/14 64/16 64/17 64/19 64/21 64/23 64/25 65/1 65/3 65/4 65/5 65/5 65/6 65/7 66/7 66/8 66/18 67/7 67/20 68/20 69/1 81/11

October 10th [1]   64/21
October 12th [1]   64/25
October 16th [1]   67/7
October 17th [1]   65/1
October 18th [1]   65/3
October 23rd [1]   65/4
October 24th [1]   65/5
October 26th [1]   65/6
October 2nd [2]   64/16 66/7
October 30th [1]   65/7
October 7th [1]   64/17
October 9th [3]   64/19 64/23 65/5
off [9]   20/11 28/15 43/16 43/17 45/6 47/15 47/21 62/14 70/4
offer [14]   20/21 21/19 32/10 40/9 40/12 40/25 41/6 41/16 42/11 42/12 42/17 44/17 52/21 80/6
offered [4]   17/7 17/9 21/15 61/14
offering [3]   32/15 34/11 51/23
offers [1]   46/19
Official [3]   2/8 81/4 81/14
often [1]   67/13
oh [2]   5/19 28/4
okay [35]   3/8 3/20 3/25 4/12 4/17 6/16 7/3 7/11 7/23 8/5 11/18 15/4 16/1 20/14 21/9 21/25 36/19 36/21 43/22 44/9 45/15 46/8 50/12 52/16 57/6 60/18 60/21 61/21 63/9 63/12 63/22 63/23 69/11 70/6 70/13
Omedetou [2]   47/1 48/1
once [1]   51/12
one [32]   9/3 9/6 9/8 9/22 11/23 13/10 16/10 17/1 17/19 18/16 18/16 18/23 19/6 19/12 19/22 20/5 20/20 31/22 35/2 35/2 43/20 47/3 47/15 48/17 52/25 54/11 58/19 61/23 62/8 69/21 70/4 70/6
one-sided [1]   58/19
only [13]   16/22 32/4 32/9 45/25 47/24 48/4 53/6 56/25 57/4 59/1 61/19 68/4 69/13
open [6]   4/6 6/9 40/20 41/1 41/3 62/25
opened [3]   6/3 6/4 57/13
opens [1]   4/2
operated [1]   51/24
operator [1]   4/3
opine [3]   14/9 16/25 46/7
opinion [16]   12/4 13/2 14/14 16/4 18/3 19/10 20/17 21/2 25/20 25/21 34/17 42/1 42/3 42/7 42/16 51/23
opinions [4]   3/18 3/19 12/5 52/4
opportunity [1]   60/23
opposite [1]   46/20
order [10]   29/16 31/23 39/13 49/4 55/5 55/7 55/25 56/7 66/14 70/15
origin [2]   16/12 20/8
originating [1]   4/9
other [31]   4/25 6/17 6/19 8/3 8/10 10/3 10/14 10/23 10/23 12/22 13/15 16/20 20/2 24/5 27/5 27/22 38/9 39/10 39/23 40/22 43/20 44/25 46/9 49/6 50/22 58/13 62/9 64/25 68/24 69/3 70/7
others [2]   8/4 25/15
otherwise [1]   41/18
ought [2]   18/23 41/9
our [13]   6/21 14/5 15/25 17/22 19/8 37/6 38/21 45/4 58/2 60/1 60/23 62/6 68/13
out [29]   4/22 7/16 8/3 8/9 8/12 11/16 12/20 16/19 18/13 18/18 20/7 21/22 22/18 22/22 22/23 30/9 39/23 39/25 53/21 53/22 53/25 54/5 54/6 57/18 59/3 60/8 60/9 64/5 68/7
outcomes [1]   29/9
outflows [2]   7/6 7/10
outside [5]   18/12 62/17 63/14 63/14 64/5
outstanding [3]   69/16 69/17 69/21
over [18]   7/5 7/10 7/15 8/12 8/23

**O**

over... **[13]** 8/25 9/11 10/17 30/24 32/21 32/23 43/14 55/2 55/3 56/23 58/25 60/24 66/15
overlap **[2]** 64/21 65/10
overstatement **[1]** 57/25
own **[1]** 36/12
owner **[3]** 5/24 5/25 6/2
ownership **[2]** 43/10 45/23

**P**

p.m **[4]** 1/6 61/22 68/23 80/14
page **[30]** 1/22 3/11 3/17 3/24 4/16 5/19 7/3 7/4 7/12 7/13 7/14 8/6 8/18 9/2 10/6 11/7 12/12 13/22 13/23 14/11 15/18 18/5 23/15 27/21 30/21 33/3 34/23 42/19 42/24 45/25
pages **[1]** 13/10
paid **[4]** 19/22 19/23 19/23 20/7
paper **[1]** 34/16
papers **[1]** 28/17
parade **[1]** 54/8
paragraph **[12]** 3/17 3/19 3/23 4/16 11/24 14/14 23/17 30/21 32/20 36/14 41/6 46/10
paragraphs **[5]** 23/11 23/14 23/17 43/7 43/11
parenthesis **[1]** 7/8
part **[5]** 9/21 39/1 46/2 48/5 49/15
participate **[1]** 58/22
participated **[1]** 39/22
particular **[9]** 7/20 10/16 16/3 21/17 25/16 25/17 39/8 39/11 57/23
particularly **[8]** 24/7 37/20 40/5 43/6 43/7 58/17 58/20 59/14
parties **[1]** 19/24
passed **[1]** 53/24
past **[3]** 27/5 27/22 70/2
pay **[6]** 47/23 48/24 48/25 49/2 49/3 52/12
paying **[5]** 11/12 11/16 18/17 20/1 20/2
payments **[1]** 11/11
PayPal **[1]** 10/15
PEARLMAN **[1]** 1/18
peer **[13]** 28/16 42/18 42/18 43/11 43/11 43/19 43/19 43/25 43/25 44/2 44/2 44/3 44/3
peer-reviewed **[1]** 28/16
PELKER **[3]** 1/12 29/3 52/12
Pelker's **[1]** 37/12
Pennsylvania **[1]** 1/13
people **[12]** 20/2 39/3 46/21 48/11 48/13 48/21 49/5 49/7 50/3 50/3 50/25 68/14
people's **[3]** 50/20 60/25 68/15
percent **[3]** 28/5 46/16 46/18
perhaps **[5]** 24/17 30/7 56/18 56/19 57/5
permission **[1]** 3/5
person **[4]** 50/12 63/17 63/20 63/24
personality **[2]** 6/5 6/12
personally **[1]** 66/21
pertained **[1]** 11/10
pervade **[1]** 30/14
PhD **[3]** 23/5 26/1 28/6
phone **[2]** 61/17 62/14
phrase **[5]** 28/18 29/1 30/9 49/25 50/1
phrases **[1]** 49/22
physical **[1]** 30/25
physicist **[2]** 24/3 29/18
physics **[6]** 26/1 26/10 26/25 28/6 30/19 30/25
Pietrzak **[2]** 62/15 62/16
pivot **[1]** 15/21
places **[1]** 47/3

Plaintiff **[2]** 1/4 1/12
plan **[1]** 21/12
planning **[1]** 36/11
plans **[2]** 53/15 66/9
play **[3]** 14/4 21/22 27/3
playing **[2]** 20/20 21/23
PLLC **[1]** 2/4
point **[19]** 18/4 18/22 20/19 21/10 23/14 24/24 33/1 34/23 35/7 38/24 40/25 41/12 42/21 44/18 53/18 56/16 59/9 59/24 68/9
pointing **[2]** 21/17 37/17
points **[1]** 43/6
Policy **[1]** 38/25
portions **[1]** 38/11
position **[5]** 11/22 17/22 26/12 47/2 56/21
positive **[1]** 7/7
possible **[1]** 56/22
possibly **[3]** 37/15 53/10 59/21
post **[1]** 49/8
posted **[1]** 47/23
posting **[1]** 51/18
postpone **[1]** 58/8
posts **[2]** 47/1 47/11
potential **[1]** 79/8
potentially **[4]** 9/11 29/8 44/15 68/14
practical **[1]** 45/11
preceding **[1]** 3/23
precise **[1]** 27/18
precisely **[3]** 26/16 52/7 57/20
precision **[1]** 27/9
preclude **[3]** 28/22 29/1 33/11
prefer **[1]** 63/7
preference **[1]** 57/11
prejudicial **[2]** 36/4 37/22
prep **[3]** 64/20 64/24 65/5
prepaid **[3]** 10/15 10/16 10/17
prepare **[1]** 62/7
prepared **[4]** 53/1 54/7 54/12 55/24
present **[1]** 20/18
presented **[2]** 7/13 58/18
press **[1]** 58/18
presumably **[1]** 20/23
pretrial **[3]** 1/9 67/19 79/25
pretty **[2]** 20/13 24/25
previous **[4]** 7/13 7/14 8/7 9/4
previously **[2]** 3/6 70/3
price **[1]** 5/5
primarily **[1]** 10/8
primary **[1]** 25/5
principle **[2]** 14/16 24/13
principles **[7]** 10/2 13/12 14/2 14/4 15/3 29/15 30/1
prior **[3]** 6/23 59/3 66/7
privacy **[3]** 39/3 48/14 48/18
private **[4]** 43/12 44/22 44/23 48/18
probably **[9]** 24/15 24/24 33/23 45/15 46/19 61/19 62/23 63/7 68/11
probative **[2]** 36/4 37/22
problem **[3]** 31/18 33/19 40/19
problems **[2]** 43/17 45/6
procedure **[2]** 11/23 40/15
proceed **[1]** 23/7
proceeded **[1]** 23/7
proceedings **[4]** 70/15 79/4 80/14 81/6
proceeds **[1]** 3/16
process **[2]** 58/22 59/9
produce **[2]** 15/24 25/25
produced **[4]** 3/7 15/20 15/20 15/23
product **[2]** 54/18 62/16
professor **[1]** 79/12
proffer **[2]** 52/2 52/6
proffered **[1]** 36/17
profits **[1]** 3/16
profoundly **[1]** 54/7

program **[6]** 27/13 27/14 31/3 31/8 31/15 54/24
programs **[1]** 29/24
prominently **[1]** 24/19
proper **[1]** 47/17
properly **[3]** 52/6 59/4 59/22
proportion **[1]** 34/21
protective **[4]** 55/5 55/7 55/25 56/7
provide **[2]** 55/9 56/24
provided **[4]** 55/10 55/13 55/18 59/8
proximity **[3]** 43/8 45/22 46/5
public **[7]** 39/7 43/12 44/21 44/22 45/1 54/13 79/5
publicity **[1]** 58/16
pulling **[1]** 29/5
purchases **[1]** 5/6
pure **[2]** 28/11 46/18
purposes **[3]** 4/9 20/18 58/7
push **[2]** 57/3 57/16
put **[12]** 13/19 24/5 24/16 30/2 49/16 53/14 53/14 56/22 58/4 61/6 64/7 70/4
puts **[1]** 15/1
putting **[2]** 11/15 47/19
puzzled **[1]** 58/1

**Q**

qualified **[3]** 17/6 19/9 46/7
quantify **[1]** 5/12
quantifying **[1]** 23/19
quarter **[2]** 65/17 65/18
question **[13]** 13/6 13/11 13/14 14/1 15/8 17/20 25/11 30/5 32/9 41/3 45/23 65/11 79/20
questions **[3]** 16/3 39/19 48/4
quick **[1]** 22/5
quite **[9]** 15/5 20/10 24/12 30/22 30/23 31/13 54/20 55/14 59/16
quote **[3]** 13/24 33/2 38/17
quote/unquote **[1]** 13/24
quoted **[1]** 40/23

**R**

radiation **[1]** 27/17
radio **[1]** 31/1
raise **[5]** 43/20 46/9 54/8 56/10 69/14
raised **[2]** 16/4 54/17
RANDOLPH **[1]** 1/9
random **[15]** 23/20 24/10 25/12 30/15 30/20 31/2 32/5 32/22 33/25 34/12 40/5 40/14 40/16 40/18 42/13
rapidly **[1]** 50/4
rate **[5]** 25/25 30/3 32/17 49/10 49/11
rates **[8]** 26/4 30/15 31/20 31/22 33/10 33/17 34/16 34/17
rather **[1]** 51/13
reach **[2]** 22/23 60/8
reaching **[2]** 22/18 22/22
reaction **[1]** 39/1
reactor **[9]** 25/23 29/25 32/8 32/12 33/15 39/2 39/15 40/10 54/24
read **[21]** 4/15 5/2 11/24 12/1 13/4 13/6 14/15 15/7 15/9 15/14 15/15 15/15 23/11 30/22 32/2 38/9 43/24 57/21 70/1 70/2 70/5
reading **[4]** 13/7 17/23 23/7 55/12
readings **[2]** 14/25 15/2
real **[3]** 24/4 28/3 44/16
really **[14]** 3/21 3/23 4/10 13/5 13/20 18/1 19/9 22/5 43/2 46/6 49/19 51/12 52/4 57/14
realm **[2]** 18/12 46/6
reason **[9]** 23/13 25/15 28/20 37/20 40/21 41/13 56/18 56/23 59/14
reasons **[3]** 14/21 53/10 54/10

**R**

**rebut [1]** 3/15
**rebuttal [6]** 4/7 41/1 41/7 41/11 41/16 67/13
**recall [2]** 25/6 39/20
**received [2]** 57/15 57/22
**Recess [1]** 61/22
**recognize [1]** 80/2
**recollection [1]** 70/5
**reconciled [2]** 9/20 10/2
**record [12]** 5/25 15/19 53/11 54/16 58/4 58/7 61/6 61/24 62/11 63/13 79/5 81/6
**records [5]** 4/19 5/9 6/22 6/24 9/25
**refer [1]** 36/14
**reference [2]** 3/14 67/25
**referenced [5]** 36/7 36/10 36/17 36/23 38/15
**referencing [1]** 53/20
**referred [1]** 61/25
**referring [2]** 8/21 43/19
**refresh [1]** 70/5
**regard [1]** 56/6
**regarding [2]** 4/19 12/6
**registered [2]** 5/25 6/18
**rejected [2]** 14/22 14/23
**related [5]** 4/19 5/10 23/24 39/12 42/6
**relating [1]** 24/8
**relation [3]** 25/8 26/5 69/6
**relevant [9]** 5/9 33/21 34/13 38/12 40/4 44/16 47/24 48/8 52/13
**reliance [2]** 36/13 37/20
**reluctantly [1]** 60/21
**rely [7]** 36/20 36/22 37/15 37/23 38/5 38/13 47/11
**remain [1]** 59/9
**remained [1]** 58/1
**remember [2]** 20/11 40/1
**render [2]** 27/16 27/18
**rendering [1]** 18/3
**repeated [1]** 55/2
**repeatedly [1]** 59/7
**report [31]** 28/14 28/23 29/5 33/3 34/20 35/5 35/20 35/21 36/1 36/6 36/6 36/7 36/10 36/13 36/18 36/24 36/25 37/5 37/9 37/10 37/14 37/23 38/2 38/6 38/9 38/10 38/11 38/15 38/16 38/18 38/20
**Reporter [4]** 2/7 2/8 81/4 81/14
**reports [2]** 20/11 59/1
**represent [1]** 61/7
**representation [1]** 37/12
**represented [1]** 56/14
**request [4]** 22/19 55/8 55/21 60/12
**requested [2]** 56/25 62/10
**requesting [1]** 63/3
**requirements [1]** 11/22
**requiring [1]** 41/11
**reread [1]** 70/2
**research [1]** 79/10
**reserve [6]** 21/21 38/4 38/21 41/16 45/16 62/6
**respect [30]** 16/5 16/6 20/13 21/3 21/13 21/15 21/20 21/21 24/1 24/7 24/9 25/11 26/18 27/16 27/18 27/23 32/7 32/8 32/8 35/25 37/12 37/13 39/22 41/11 43/23 45/10 45/12 46/22 55/19 58/6
**respond [2]** 15/5 35/14
**response [3]** 29/6 41/18 58/1
**responses [1]** 57/22
**responsibility [1]** 59/4
**result [2]** 27/13 56/1
**results [2]** 26/18 26/22
**returns [2]** 18/1 18/1
**reveal [1]** 31/14
**review [2]** 24/12 54/11
**reviewed [1]** 28/16

**rich [1]** 58/20
**right [35]** 3/2 4/12 7/3 7/22 9/1 11/6 11/20 13/22 14/8 14/20 16/16 17/2 17/11 19/7 21/7 23/1 23/3 29/21 52/17 52/17 53/4 53/22 58/23 61/13 62/6 62/12 64/9 66/3 67/4 68/8 69/2 69/17 79/6 80/8 80/11
**rights [1]** 41/16
**rise [2]** 44/19 80/13
**risk [2]** 28/3 52/3
**role [1]** 51/3
**rolling [1]** 57/2
**ROMAN [4]** 1/6 5/24 6/3 6/6
**Romania [1]** 50/8
**room [9]** 2/9 24/16 24/17 24/25 25/1 25/3 27/10 27/17 27/19
**roughly [1]** 12/13
**round [1]** 54/2
**routine [1]** 50/22
**RPR [1]** 81/13
**rule [5]** 11/23 20/24 41/10 41/23 58/6
**rules [4]** 18/23 19/2 20/20 21/24
**rulings [1]** 42/4
**run [1]** 27/12
**rush [1]** 68/13

**S**

**said [30]** 14/12 14/12 21/1 21/3 26/9 26/11 28/16 31/21 36/19 38/22 47/20 48/21 49/1 52/13 54/22 54/25 57/1 57/6 57/9 57/16 60/21 62/3 62/4 62/5 62/8 62/19 65/4 65/15 65/17 68/14
**sales [4]** 3/16 5/4 9/23 9/24
**same [26]** 7/13 8/3 11/13 14/21 17/23 18/18 20/8 20/24 21/5 21/24 26/21 26/22 26/22 26/24 27/8 27/13 27/15 27/20 29/25 33/5 38/6 38/7 38/7 38/7 39/7 43/9
**sample [1]** 40/17
**Santell [1]** 79/21
**Sarah [1]** 79/11
**sat [1]** 38/8
**Satoshi [1]** 25/6
**save [1]** 69/12
**say [40]** 9/13 18/13 18/14 18/19 19/19 23/4 23/22 24/20 27/11 27/11 32/25 34/4 34/7 34/8 34/23 34/24 36/1 40/12 42/1 46/12 46/13 46/15 46/16 48/10 49/15 49/19 51/9 51/14 51/20 52/3 52/7 55/10 57/20 58/16 58/23 59/17 59/20 59/25 66/5 69/12
**saying [20]** 13/16 14/15 14/16 22/22 27/15 28/23 28/25 33/12 35/11 37/13 37/13 38/13 42/7 47/6 48/1 51/23 53/17 59/22 59/23 60/8
**says [24]** 5/24 6/2 12/12 12/14 13/24 14/24 15/6 17/24 23/18 29/12 32/20 33/3 36/15 44/7 60/11 64/20 65/2 65/6 65/8 65/13 65/13 67/7 67/16 67/17
**scale [1]** 27/2
**schedule [5]** 60/24 66/12 66/25 67/14 68/24
**scheduled [3]** 65/1 65/7 65/9
**schedules [1]** 60/25
**scheduling [5]** 21/11 22/2 52/18 58/6 64/14
**Scholl [7]** 16/14 36/10 36/18 36/24 37/7 38/15 38/19
**Scholl's [4]** 36/7 36/8 36/25 37/9
**science [9]** 26/9 26/24 28/4 28/11 28/13 28/19 29/11 29/18 35/8
**scientific [15]** 25/24 26/4 26/6 26/12 27/15 27/23 28/1 28/17 28/17 28/19 28/25 30/1 33/9 33/13 33/18
**scientist [1]** 28/6
**scope [2]** 36/16 42/2

**seal [4]** 69/5 69/10 70/7 70/13
**sealed [2]** 70/15 79/4
**second [2]** 6/1 23/16
**section [1]** 38/16
**see [23]** 8/13 15/1 17/15 18/15 19/11 19/19 21/22 31/15 31/17 32/3 34/9 39/16 40/21 44/18 45/17 45/19 45/20 55/14 60/16 61/15 61/16 61/17 80/11
**seek [2]** 53/21 59/12
**seem [3]** 16/23 24/6 41/20
**seemed [1]** 53/20
**seems [7]** 41/9 53/8 53/16 54/7 54/11 79/22 79/25
**seen [6]** 18/20 19/20 31/9 31/11 31/11 31/13
**selling [1]** 34/8
**semester [1]** 65/4
**send [3]** 60/14 61/3 61/5
**sending [1]** 61/10
**sense [7]** 19/25 26/9 26/10 26/17 27/7 27/12 39/16
**sent [5]** 22/14 22/14 66/13 67/3 68/6
**sentence [1]** 13/1
**separate [5]** 9/18 16/13 18/8 18/17 24/24
**separately [1]** 24/22
**September [1]** 1/5
**Sergi [1]** 79/12
**serious [1]** 68/5
**server [2]** 50/8 50/11
**services [1]** 10/16
**serving [1]** 39/21
**SESSION [1]** 1/7
**set [8]** 5/8 18/23 20/20 21/24 25/6 53/25 54/5 60/16
**setting [1]** 66/15
**share [5]** 45/9 48/11 48/13 49/14 59/16
**shared [1]** 48/21
**she [84]**
**SHERRY [3]** 2/7 81/4 81/13
**shifted [1]** 9/14
**shirts [1]** 46/16
**short [3]** 3/10 13/8 58/10
**should [22]** 8/20 14/23 23/4 26/7 26/15 28/22 29/1 29/14 32/2 32/10 33/5 36/7 41/1 52/17 53/22 55/10 56/19 61/12 61/17 63/25 66/22 66/23
**show [6]** 8/1 10/18 20/18 35/1 35/3 39/11
**showing [3]** 21/17 37/24 59/25
**shown [3]** 9/5 12/2 12/3
**shows [12]** 5/20 7/6 7/6 7/8 7/15 8/8 9/2 9/12 13/18 34/21 34/23 36/2
**shuffled [1]** 9/8
**side [2]** 44/25 59/10
**sided [1]** 58/19
**sides [6]** 20/2 20/15 21/23 41/9 41/16 41/20
**sign [2]** 55/4 55/7
**significant [1]** 9/7
**similar [2]** 43/9 45/12
**simple [1]** 50/25
**simply [5]** 9/7 9/8 13/14 15/9 51/14
**since [2]** 25/8 47/8
**single [1]** 37/14
**sits [1]** 38/25
**sitting [4]** 38/8 52/10 67/11 68/24
**six [1]** 39/25
**skill [1]** 39/12
**slang [1]** 47/6
**slow [1]** 12/16
**so [103]**
**software [3]** 26/5 39/3 43/9
**solved [1]** 79/20
**some [39]** 6/17 6/19 9/23 10/14

**S**

**some... [35]** 10/15 11/10 15/10 15/17 18/3 20/3 21/10 22/19 24/8 24/23 31/4 35/24 36/1 36/2 37/23 40/17 44/3 44/14 46/21 50/18 51/14 53/2 53/18 56/5 57/19 57/19 57/22 64/18 64/21 65/15 69/5 69/15 69/16 70/1 79/8
**somebody [8]** 19/13 24/2 45/14 47/1 50/11 50/15 51/5 55/22
**somehow [2]** 26/6 53/21
**someone [5]** 25/19 44/14 44/20 56/12 67/10
**something [23]** 6/14 16/9 17/18 18/19 19/15 19/16 19/18 19/19 25/20 30/3 31/19 37/2 37/15 40/20 41/14 41/17 47/20 47/21 55/18 55/20 55/20 58/13 60/22
**Sometime [1]** 65/9
**sometimes [1]** 46/14
**somewhat [1]** 57/5
**somewhere [1]** 36/1
**soon [4]** 40/20 57/17 57/21 60/9
**sophisticated [3]** 16/8 17/17 26/11
**sorry [8]** 5/16 12/17 31/7 48/16 48/20 51/15 59/20 65/20
**sort [18]** 8/22 9/9 9/15 10/1 10/10 18/3 19/17 33/7 34/6 35/1 36/12 44/16 47/6 49/17 50/18 51/19 54/6 58/18
**sounds [2]** 27/4 66/8
**source [8]** 11/14 31/10 31/13 55/11 55/12 55/16 55/21 56/4
**sources [4]** 10/19 10/23 10/24 11/1
**space [7]** 24/15 25/9 34/3 34/5 34/6 34/13 40/23
**spacial [1]** 43/8
**sparse [1]** 14/24
**spatial [2]** 45/22 46/5
**specialized [1]** 31/1
**specialty [1]** 26/1
**specific [2]** 18/24 53/12
**specifically [1]** 45/3
**specificity [2]** 16/19 68/22
**specifics [1]** 32/9
**speed [1]** 56/13
**speedy [2]** 54/14 54/14
**spending [2]** 5/7 10/17
**spreadsheets [1]** 15/22
**ST [1]** 67/15
**stand [4]** 36/12 52/3 58/21 61/15
**standard [1]** 59/24
**standardless [2]** 35/9 35/12
**stands [2]** 64/21 65/2
**start [6]** 20/16 40/19 61/15 68/10 68/11 68/14
**starting [4]** 4/15 23/10 23/16 23/17
**starts [1]** 40/20
**stated [1]** 13/25
**statement [7]** 13/16 13/18 15/1 15/15 15/16 55/1 68/19
**statements [7]** 5/2 12/1 12/6 13/5 15/8 15/10 15/14
**states [5]** 1/1 1/3 1/10 11/25 68/1
**statistical [9]** 26/2 28/7 31/4 31/17 31/20 31/24 32/22 32/24 34/12
**statistics [8]** 31/3 31/6 31/8 31/16 32/6 32/16 40/13 42/12
**status [1]** 24/18
**step [1]** 20/22
**Stephen [2]** 33/23 33/25
**steps [1]** 58/2
**STERLINGOV [27]** 1/6 5/24 6/3 6/6 6/15 7/2 7/19 7/25 10/4 10/7 10/22 11/12 11/16 24/17 24/20 46/23 47/2 47/25 50/14 56/21 57/4

60/21 63/9 63/18 63/22 66/23 66/24
**Sterlingov's [17]** 3/15 4/21 4/23 5/3 5/6 5/12 6/12 6/19 7/9 8/19 9/10 10/8 11/9 12/15 12/19 12/20 49/23
**Steven [1]** 79/20
**stick [1]** 43/3
**still [13]** 25/10 25/14 29/17 33/14 49/18 51/8 53/21 57/11 59/1 64/12 64/13 67/19 69/15
**stone [1]** 58/9
**stop [1]** 43/19
**straightforward [1]** 51/1
**Street [2]** 1/16 2/4
**strikes [3]** 21/16 34/25 36/3
**struggling [1]** 51/8
**studied [5]** 25/19 39/24 40/12 51/14 52/5
**studies [1]** 35/24
**study [3]** 36/17 36/23 39/23
**stuff [4]** 47/19 60/20 69/5 69/17
**subject [1]** 29/25
**submit [2]** 38/1 40/3
**substance [1]** 22/18
**sufficient [1]** 49/21
**suggest [1]** 62/2
**suggested [1]** 60/19
**suggesting [4]** 26/24 29/7 29/20 61/25
**Suite [1]** 1/16
**summarize [4]** 5/1 11/25 13/3 15/6
**summary [11]** 3/6 5/20 7/4 10/6 10/11 12/3 12/7 12/24 13/24 15/20 64/9
**summer [2]** 55/3 55/3
**supplemental [1]** 28/2
**supported [1]** 59/23
**suppose [7]** 15/8 41/8 41/15 44/5 45/15 45/17 46/19
**supposed [2]** 12/5 35/14
**supposedly [1]** 18/16
**sure [16]** 15/5 19/1 20/20 20/25 20/25 24/10 24/25 36/9 44/1 50/6 59/5 62/4 62/11 64/12 79/10 80/3
**Sweden [2]** 10/9 13/17
**sympathetic [2]** 54/22 58/18
**synonymous [1]** 38/20
**system [3]** 9/10 25/12 30/14
**systemic [15]** 23/19 24/9 29/23 30/14 30/20 31/2 32/6 32/24 33/25 34/12 40/5 40/14 40/14 40/18 42/14

**T**

**table [14]** 7/6 7/14 7/14 8/7 8/8 8/8 8/22 9/3 9/4 9/17 9/19 10/6 11/7 13/24
**tables [3]** 8/7 9/17 15/21
**take [14]** 3/2 14/5 18/13 24/23 27/14 43/1 43/18 47/2 52/3 60/10 61/4 61/20 70/5 70/6
**taken [4]** 10/3 40/25 56/19 61/22
**takes [1]** 11/21
**taking [3]** 13/14 39/10 58/2
**talk [21]** 22/20 24/18 25/4 25/5 44/14 45/13 46/23 47/3 47/22 48/2 49/3 49/9 49/12 50/23 50/24 51/5 51/16 52/17 61/14 61/17 62/18
**talking [11]** 3/21 27/5 27/22 35/12 42/22 43/10 46/20 46/21 48/19 51/12 58/24
**task [4]** 34/16 36/17 36/23 37/10
**TBD [2]** 65/15 65/16
**techniques [2]** 32/22 32/24
**technology [1]** 23/25
**tell [13]** 17/6 27/9 32/10 34/1 34/21 35/6 35/11 35/22 37/17 40/11 46/12 60/11 79/13
**telling [2]** 32/15 37/16
**temperature [1]** 27/18
**temporal [3]** 43/8 45/22 46/5

**ten [1]** 53/10
**tentative [1]** 66/11
**term [3]** 7/22 34/6 38/19
**terms [5]** 8/9 15/13 16/2 51/14 61/10
**terribly [1]** 35/5
**testified [5]** 10/23 45/24 49/13 66/6 66/11
**testifies [1]** 67/13
**testify [26]** 4/18 6/18 10/5 10/21 16/13 16/14 17/4 17/9 19/13 19/22 20/5 21/14 23/18 31/19 31/20 31/23 33/24 34/20 36/11 40/4 44/21 45/13 46/4 52/14 59/5 59/7
**testifying [3]** 12/4 14/25 33/12
**testimony [47]** 3/10 3/22 4/10 5/6 5/8 6/23 6/23 6/25 6/25 9/21 14/22 16/11 17/5 17/21 17/23 20/10 20/21 24/12 28/24 29/11 32/11 32/15 33/8 33/16 33/20 36/8 37/10 40/1 40/3 40/9 40/12 41/12 41/14 41/17 41/18 42/2 42/13 45/2 45/5 46/6 51/2 51/11 51/12 51/13 51/19 51/22 80/7
**testing [1]** 34/25
**than [23]** 15/23 19/5 24/15 24/25 25/2 25/20 29/17 29/19 31/13 34/3 34/5 36/4 37/22 37/25 39/10 40/22 48/7 51/13 55/11 56/3 56/19 58/13 70/7
**Thank [1]** 61/21
**that [540]**
**their [14]** 15/3 25/23 26/5 26/12 29/16 31/22 49/16 50/11 53/13 54/9 62/17 64/5 65/18 68/22
**them [16]** 13/6 21/4 22/21 22/23 22/23 23/14 28/11 33/14 44/4 47/8 49/4 53/14 57/22 63/5 68/16 80/2
**themselves [3]** 6/24 29/7 51/18
**then [42]** 11/7 12/7 12/24 12/25 14/16 18/25 20/23 23/3 33/14 35/3 36/3 36/21 38/1 38/3 41/24 43/20 45/5 49/4 51/25 55/9 55/12 56/25 57/1 57/4 57/17 60/11 60/19 60/20 63/20 64/9 65/13 65/14 65/16 66/22 66/23 67/7 67/17 70/7 79/19 79/20 80/9 80/12
**theories [1]** 4/8
**there [85]**
**therefore [1]** 33/5
**thermometer [2]** 27/9 27/17
**these [24]** 5/23 6/14 6/22 7/1 7/15 7/18 7/19 13/10 15/22 17/12 27/1 33/17 35/2 35/2 35/23 39/2 40/4 51/14 53/15 53/16 64/24 66/19 66/20 79/14
**they [63]** 6/4 14/9 16/24 18/17 20/1 24/21 25/25 28/3 28/4 29/16 31/21 31/21 35/14 35/16 36/19 39/24 44/17 44/19 46/15 47/1 47/18 48/1 50/17 50/20 51/18 53/10 53/12 53/17 54/10 54/11 55/2 55/19 55/20 55/23 55/23 56/12 56/13 57/22 57/23 57/24 58/22 59/5 59/7 59/9 59/10 59/13 61/7 62/17 62/18 62/19 62/25 63/7 63/18 64/3 64/4 64/8 64/8 68/25 68/25 79/15 79/15 80/5 80/6
**thing [13]** 8/3 32/4 38/11 39/11 43/20 44/6 50/22 51/19 54/12 58/23 61/4 61/23 69/20
**things [8]** 21/22 29/15 29/24 31/22 52/3 52/5 56/3 61/15
**think [134]**
**thinks [2]** 41/9 50/12
**this [140]**
**those [28]** 3/18 3/19 4/9 5/9 6/2 8/9 8/12 8/21 8/22 8/23 8/25 9/3 9/5 9/6 10/10 10/13 11/12 14/12 15/2 18/9 25/16 25/17 28/4 32/14 32/15 39/19 43/24 54/3
**though [6]** 19/12 24/6 39/6 45/21

**T**

**though... [2]** 52/1 59/23
**thought [8]** 46/11 48/13 48/14 48/17 48/21 48/25 57/12 66/5
**three [1]** 20/6
**through [28]** 4/13 5/3 5/14 5/17 6/12 16/9 16/11 20/15 32/2 42/25 43/7 43/11 61/3 64/18 64/19 64/23 64/25 65/1 65/3 65/5 65/6 65/8 65/11 65/12 66/8 67/11 68/21 68/21
**throughout [1]** 30/10
**Thursday [5]** 62/19 62/21 69/4 70/6 80/12
**tied [3]** 6/5 6/11 6/15
**time [26]** 5/5 7/5 7/10 7/16 8/12 8/23 8/25 9/11 17/16 27/12 41/19 53/2 53/8 53/22 56/24 57/1 59/19 61/17 62/7 62/24 63/2 63/25 66/22 66/23 70/1 79/23
**times [3]** 26/12 30/9 61/25
**today [6]** 52/10 54/18 58/5 66/13 69/2 69/9
**together [2]** 11/15 33/6
**told [6]** 13/9 32/3 63/5 64/12 65/21 79/18
**tomorrow [1]** 68/23
**tonight [1]** 64/6
**too [3]** 41/5 52/2 57/25
**took [2]** 13/19 57/4
**tools [1]** 16/21
**top [6]** 13/24 20/11 28/15 30/21 47/15 47/21
**topics [2]** 32/14 32/15
**TOR [2]** 2/3 2/4
**Torres [7]** 22/8 22/11 22/15 60/7 61/4 61/5 61/10
**total [2]** 7/9 7/10
**totally [1]** 29/13
**touch [1]** 52/23
**touched [1]** 43/5
**tough [1]** 59/23
**trace [3]** 14/17 16/8 46/1
**tracers [1]** 39/14
**tracing [29]** 14/19 14/22 16/4 16/6 16/15 16/18 17/7 21/15 23/25 23/25 25/13 25/14 25/18 25/19 26/16 26/16 32/8 32/13 34/1 34/7 34/10 34/15 39/2 39/10 39/11 39/12 39/22 43/18 45/7
**track [1]** 5/12
**traded [1]** 24/2
**trades [1]** 24/2
**trading [3]** 5/4 7/7 34/8
**traditional [2]** 4/25 12/22
**trained [1]** 16/20
**training [7]** 19/14 19/18 24/3 64/17 64/19 64/22 66/20
**trainings [1]** 64/25
**transaction [11]** 4/21 5/8 5/10 6/10 6/11 9/24 12/15 12/19 39/8 44/24 44/25
**transactions [21]** 6/10 14/12 16/5 17/2 17/16 18/7 18/9 20/15 20/16 27/3 32/22 32/23 34/22 42/18 44/8 44/14 44/15 44/20 44/21 45/3 46/2
**transcript [6]** 1/9 42/19 42/24 42/24 45/25 81/5
**transfer [1]** 17/24
**transferred [2]** 9/8 43/16
**transfers [10]** 9/19 13/25 36/16 43/11 43/17 43/19 43/25 44/2 44/3 45/6
**translated [1]** 47/13
**translators [2]** 79/14 79/15
**transparent [1]** 56/3
**trial [38]** 13/15 20/19 28/23 30/10 30/16 45/17 52/25 52/25 53/6 53/7 53/22 53/25 54/13 54/14 54/15 54/15 56/11 56/21 57/2 57/13 58/3 59/18 60/2 66/6 66/7

66/10 66/12 66/15 66/18 67/6 67/8 67/11 67/15 67/18 67/22 67/22 68/14 69/8
**tries [1]** 53/8
**trips [1]** 66/19
**true [6]** 6/15 7/25 16/19 29/13 57/18 81/5
**truly [1]** 45/2
**try [2]** 57/13 58/2
**trying [5]** 24/21 45/4 50/20 55/12 67/5
**turn [3]** 21/25 23/3 59/17
**turned [1]** 57/18
**turning [1]** 64/1
**two [15]** 8/7 10/18 11/14 14/12 14/13 16/10 16/10 17/12 18/7 18/8 18/15 20/1 21/17 22/14 40/13
**tying [2]** 40/10 42/14
**type [5]** 17/7 17/17 27/15 38/11 55/16
**types [2]** 30/13 40/13
**typically [1]** 19/25

**U**

**U.S [2]** 1/13 2/8
**Ukraine [2]** 18/16 20/6
**ultimate [1]** 16/12
**unanticipated [1]** 41/12
**unavailable [1]** 66/8
**undefined [1]** 34/6
**under [6]** 6/1 10/22 11/23 36/3 36/4 69/5
**underestimate [1]** 9/23
**underlying [1]** 15/21
**understand [21]** 6/8 15/7 21/6 26/3 26/13 28/11 29/23 30/12 33/1 35/4 37/25 40/7 47/8 48/4 50/7 50/10 50/17 51/7 54/24 58/9 66/5
**understanding [11]** 4/21 12/15 12/18 33/17 36/25 37/25 39/6 47/5 47/5 49/3 50/23
**understands [1]** 46/17
**understood [4]** 40/24 47/18 52/9 56/15
**unfair [1]** 44/19
**unhappily [1]** 57/5
**unhelpful [1]** 35/1
**unique [1]** 6/6
**unit [1]** 16/22
**UNITED [3]** 1/1 1/3 1/10
**universe [1]** 30/1
**unless [2]** 35/14 68/9
**unquote [1]** 13/24
**unrelated [5]** 11/11 11/12 11/14 14/13 20/1
**unreliable [2]** 35/1 37/14
**unscientific [1]** 29/13
**until [2]** 56/10 68/12
**unusual [3]** 11/13 14/13 14/15
**unwilling [1]** 58/20
**up [17]** 3/2 4/2 17/15 17/18 17/25 25/6 29/5 45/17 49/16 50/13 53/10 56/13 57/13 63/6 69/21 69/22 70/6
**update [1]** 62/12
**updates [1]** 22/1
**upon [1]** 47/11
**urge [1]** 53/1
**us [11]** 1/19 13/3 18/5 27/9 34/1 56/16 60/11 62/13 63/19 65/21 79/17
**USAO [1]** 1/15
**use [10]** 6/4 6/9 6/12 27/5 27/7 27/9 28/13 35/20 43/8 79/23
**used [3]** 28/18 38/16 45/25
**user [4]** 24/18 45/15 47/9 51/5
**uses [1]** 50/11
**using [13]** 11/16 13/12 14/3 27/6 27/25 29/1 31/4 31/6 31/8 31/16 31/17 32/23 33/3
**usually [1]** 19/11

**V**

**vaguely [1]** 11/25
**valuable [2]** 8/14 25/20
**value [5]** 8/11 8/24 8/25 9/6 50/13
**variation [1]** 34/24
**variations [1]** 36/2
**variety [1]** 7/9
**various [3]** 4/23 7/16 12/21
**veering [1]** 46/6
**Verret [2]** 15/23 19/5
**Verret's [1]** 14/22
**version [1]** 45/9
**versus [2]** 4/4 51/19
**very [16]** 13/8 14/24 27/1 29/16 29/19 29/24 29/24 33/14 48/6 50/22 53/5 53/16 57/15 67/14 67/14 67/17
**vet [1]** 59/4
**view [7]** 4/19 26/10 26/15 26/25 43/22 45/9 58/19
**virtual [4]** 4/24 12/21 38/17 38/20
**virtually [1]** 51/17
**voicemails [1]** 22/9
**volunteered [1]** 56/2
**VPN [2]** 49/23 50/8
**vs [1]** 1/5

**W**

**waiting [1]** 68/6
**walk [6]** 4/12 5/3 5/14 5/17 16/11 61/3
**walking [1]** 20/15
**Wall [1]** 2/4
**wallet [2]** 7/22 43/9
**wallets [3]** 4/24 7/19 12/22
**want [30]** 3/2 4/12 5/14 5/17 21/25 23/11 40/8 42/11 42/21 43/2 43/20 44/6 44/17 44/18 46/16 54/16 56/20 59/12 60/21 61/3 61/11 62/6 63/3 63/15 63/16 64/8 64/9 69/14 79/9 80/3
**wanted [6]** 41/25 46/9 52/7 56/13 61/23 62/10
**wants [12]** 34/19 38/5 40/11 44/21 45/13 49/15 51/20 52/21 57/15 63/20 67/1 69/20
**warm [1]** 27/9
**was [85]**
**Washington [5]** 1/5 1/14 1/17 1/20 2/10
**wasn't [3]** 8/14 37/13 57/18
**way [16]** 6/8 7/18 26/22 26/24 27/8 29/19 39/7 40/17 45/19 45/20 46/21 51/14 51/23 52/5 54/21 57/13
**ways [3]** 14/9 44/8 62/8
**we [149]**
**we'll [2]** 21/22 24/23
**we're [1]** 13/9
**Wednesday [1]** 68/25
**week [4]** 56/25 62/1 62/1 67/18
**weekend [1]** 66/15
**weeks [1]** 57/12
**welcome [3]** 33/13 35/17 38/4
**welcomes [1]** 29/2
**well [33]** 4/5 5/4 5/9 5/18 12/14 13/6 14/13 22/8 23/3 24/7 25/24 30/7 30/12 31/9 31/18 32/18 34/23 36/8 37/2 37/10 41/8 41/10 41/23 49/22 50/16 57/1 57/6 57/25 60/21 61/9 62/5 63/17 67/2
**were [27]** 3/16 7/19 9/22 11/8 11/12 18/8 22/12 34/17 34/22 35/24 35/24 37/18 37/19 39/24 42/1 46/11 51/18 52/6 53/15 55/17 55/23 56/10 57/17 57/21 57/23 68/24 80/5
**weren't [1]** 56/13
**what [136]**

**W**

**What's [1]**  79/24
**whatever [3]**  29/9 37/11 47/11
**when [17]**  10/3 15/6 15/24 18/14
 20/1 20/16 20/24 32/16 40/15
 44/23 46/15 50/21 53/15 55/9 56/2
 57/12 60/19
**where [30]**  5/23 6/2 6/8 6/17 6/24
 10/16 12/3 13/1 13/9 17/24 18/8
 18/8 19/22 31/1 33/3 36/10 36/15
 40/18 41/6 42/21 46/13 47/4 54/21
 55/14 55/21 57/24 61/15 63/18
 64/5 66/20
**whether [22]**  17/20 18/6 19/21
 19/25 20/25 24/23 32/10 33/20
 34/9 35/12 40/9 45/22 47/17 50/14
 51/10 51/10 51/11 51/13 51/14
 52/13 62/2 68/25
**which [37]**  3/17 3/23 6/2 8/21
 10/9 11/10 11/13 15/22 17/13 19/5
 20/21 21/23 23/8 23/23 24/18
 27/14 28/7 28/8 29/16 29/25 33/4
 36/1 40/10 41/10 41/19 42/18 47/1
 47/12 48/18 49/23 55/6 55/10
 56/22 59/19 62/18 67/25 69/22
**while [5]**  28/16 32/21 39/21 64/24
 66/4
**who [31]**  17/9 19/13 20/2 22/13
 24/2 34/24 35/11 35/12 35/15
 35/15 38/5 38/12 43/14 44/14
 44/20 44/24 45/14 50/3 51/5 51/17
 54/14 54/15 55/15 55/22 55/24
 57/19 59/5 59/12 67/10 79/11
 79/12
**whole [7]**  30/14 38/2 41/12 45/18
 48/14 48/17 54/2
**whom [1]**  36/3
**why [25]**  13/13 14/15 20/3 23/3
 30/12 33/17 33/18 35/4 43/1 50/6
 53/10 54/11 55/23 56/9 57/15 58/1
 58/22 60/10 60/11 60/16 61/2
 61/14 68/18 68/18 69/12
**will [64]**  4/20 4/21 5/1 5/3 5/6
 5/8 5/12 6/17 6/22 6/25 9/25 10/5
 10/11 10/18 10/21 10/24 11/25
 12/14 12/18 12/19 13/2 15/6 20/23
 21/5 23/18 30/8 31/14 32/21 33/16
 36/15 36/21 38/6 41/2 41/2 41/3
 41/4 43/8 43/12 43/13 43/15 43/16
 45/6 45/16 46/14 46/15 47/19
 48/10 53/25 54/1 57/7 58/23 59/24
 60/1 60/3 60/9 60/12 61/16 63/6
 63/8 65/24 66/3 68/22 80/5 80/11
**willing [1]**  59/6
**wire [1]**  17/24
**withdrawals [1]**  5/4
**within [6]**  18/13 18/18 18/21
 19/16 19/16 19/18
**without [5]**  36/12 42/14 44/15
 51/23 59/25
**withstand [1]**  59/6
**witness [13]**  4/7 6/17 21/20 41/11
 44/7 44/11 51/15 66/23 67/4 67/13
 68/10 79/7 80/3
**witnesses [11]**  33/12 46/19 52/23
 53/13 53/17 64/10 68/20 69/6
 70/11 79/8 80/6
**witnesses' [1]**  53/15
**wonder [2]**  19/21 51/11
**word [4]**  27/6 28/1 28/13 37/14
**words [4]**  8/10 15/9 28/4 34/4
**work [10]**  29/16 43/12 46/2 53/21
 55/13 55/14 56/6 59/3 67/19 68/5
**worked [2]**  24/4 54/24
**working [7]**  21/1 29/5 39/14 39/24
 42/3 42/6 55/17
**works [3]**  31/15 63/2 67/13
**workshop [1]**  65/15
**world [4]**  20/2 46/13 46/17 55/6
**worth [2]**  10/17 52/10
**would [63]**  6/9 6/16 8/1 9/15 9/20

 15/19 16/7 17/22 18/18 19/19
 21/10 23/6 23/10 25/19 28/10 29/4
 29/8 36/6 36/12 37/5 40/2 41/17
 42/17 42/20 46/6 46/7 47/7 47/8
 47/12 48/3 49/14 49/25 50/6 50/16
 51/1 51/3 53/1 53/1 53/11 53/14
 55/4 55/11 55/13 55/24 56/3 56/7
 56/15 57/13 57/23 58/9 58/15
 59/22 60/8 61/2 61/11 62/20 63/5
 63/7 63/24 66/16 66/18 68/14 69/4
**wouldn't [3]**  55/6 55/6 66/6
**writing [2]**  53/14 53/15
**written [1]**  68/19
**wrong [3]**  28/19 29/24 31/16
**wrote [1]**  45/8

**Y**

**yeah [6]**  7/24 21/12 46/3 66/25
 67/12 69/23
**year [3]**  10/12 10/12 65/18
**years [5]**  10/18 24/2 30/24 51/16
 67/16
**Yep [3]**  3/13 8/17 23/9
**yes [24]**  3/4 4/14 5/19 6/21 11/4
 12/17 17/3 17/8 19/3 19/15 20/4
 21/6 22/6 27/21 41/21 45/21 52/22
 58/15 59/17 60/4 60/6 62/22 63/11
 66/17
**Yet [1]**  25/24
**York [1]**  1/20
**you [201]**
**your [79]**  3/4 3/5 3/9 4/14 5/16
 5/19 6/1 6/21 11/4 11/19 11/21
 12/17 13/21 14/6 15/6 15/13 15/19
 16/6 16/17 17/3 17/8 18/10 19/3
 19/15 20/4 21/6 23/6 24/14 26/20
 27/21 27/25 30/9 33/2 33/22 35/7
 36/5 37/1 38/1 38/14 38/24 40/3
 40/15 40/15 40/24 41/19 41/21
 41/25 43/24 44/10 44/12 44/18
 45/9 45/16 45/21 48/18 49/12
 50/24 52/19 52/22 53/18 58/15
 59/16 60/4 61/8 61/18 62/4 63/13
 63/23 64/2 64/10 66/17 67/21
 68/20 69/19 70/10 79/14 79/22
 79/25 80/10
**yourself [2]**  48/15 48/19

**Z**

**Zoom [6]**  63/3 63/5 63/8 63/10
 63/19 63/21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.

ROMAN STERLINGOV,

      Defendant.

_____/

Criminal Action
No. 1: 21-399

Washington, DC
September 21, 2023

4:05 p.m.

AFTERNOON SESSION

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    CATHERINE PELKER
                    U.S. DEPARTMENT OF JUSTICE
                    950 Pennsylvania Ave NW
                    Washington, DC 20530

                    CHRISTOPHER BRODIE BROWN
                    DOJ-USAO
                    601 D Street, N.W.
                    Suite 5.1527
                    Washington, DC 20530

For the Defendant:    TOR EKELAND
                    MICHAEL HASSARD
                    TOR EKELAND LAW PLLC
                    30 Wall Street
                    8th Floor
                    Brooklyn, NY 10005

Court Reporter:       SHERRY LINDSAY
                    Official Court Reporter
                    U.S. District & Bankruptcy Courts
                    333 Constitution Avenue, NW
                    Room 6710
                    Washington, DC 20001

P R O C E E D I N G S

THE COURT: All right. So I think the question before us at this point is just whether we can commence had a trial on Tuesday, October 10th and then run from there until November 3rd, which is a Friday, which gives us one day less than four weeks. Give me one second here.

I am just checking to see how hard a stop it is on November 3rd. I am scheduled to start another trial on November 6th. And I don't have any reason to think that trial is not going. So it would be a hard stop on the 3rd. Obviously, if the jury was deliberating while I am in the other trial, that wouldn't be a problem and I can balance those other efforts.

As far as I can tell, the only real conflict that we have with starting on October 10th is whether Mr. Fischbach will be available to testify. Obviously, his testimony wouldn't be required until sometime probably in late October or conceivably in early November, but probably late October. And I appreciate, Mr. Fischbach, your making yourself available. I know that there is another case in Missouri that you have going on, so we wanted to get your input on your schedule and if there is some way we can make this work.

MR. FISCHBACH: Yes, Your Honor, nice to see you. You can hear me okay?

THE COURT: I can hear you fine. Thank you.

MR. FISCHBACH: Yeah, I think it is Kansas. But I have got to be honest, once I am in Kansas City, I get a little confused with the difference of one side of the water or the other.

THE COURT: Kansas City, let's leave it at that then.

MR. FISCHBACH: Kansas City. So that case is set to run -- it begins on the 16th of October. Typically with this attorney and he put it on the calendar, he will want me to come up about a week ahead of that to prepare -- to help him prepare. And then typically sit through the government's case at counsel table -- near counsel table. And then the defense case starts on -- right now, we are estimating we start on the 6th, which I am hoping it starts by the 6th or before the 6th because I have got another trial that starts in California on the 13th of November.

THE COURT: I guess the question for you -- is this a situation where you are going to need to be there every day for trial or could you break away for a day or two to come here for the trial in this case?

MR. FISCHBACH: It is a situation where it is spontaneous that I could help them, because we don't know what the schedule looks like for trial. I don't have any ability to tell you that. I have been precontracted for the entirety of the trial and have been paid up front for it. So at this time, I am not in a position to commit to not being there. But it is

certainly possible, you know, things can change on a dime in court.

THE COURT: Right. Have you heard anything about whether there is any possibility of a continuance in that case or not?

MR. FISCHBACH: Specifically to the contrary. That case has already been continued for years. It is apparently a very big case out there. And I have been told it is not moving at all, no matter what happens.

THE COURT: All right. And then if the Court begins the trial here on November 27th and runs through December 22nd, will you be available for that?

MR. FISCHBACH: The only issue I have specifically with that is that we have personal commitments. I had promised my wife that -- I have worked -- every single month I have been out of town for at least 2023, that I would finish out December actually going to see family. So it certainly gets in the way of that, but --

THE COURT: We would -- if we did that, I think we would be taking off no later than after December 22nd, because we are going to have jurors who are going to want to take the week off as well at the end of December.

MR. FISCHBACH: Yeah. I have got the first -- it is only hopeful, because obviously everything else could continue -- since I am expecting everything else to be done no

later than the end of November, we have got our first away set for December 4th.

THE COURT: I'm sorry. You missed -- I missed some words you said. Can you say that again?

MR. FISCHBACH: I got the first thing on the calendar is December 4th where we would be going away. I am -- I am being hesitant with all of this because I know that the one thing in my schedule that always could change, as much as my wife has somehow stuck with me almost 30 years through this, one thing I hate to do is to make her fall victim to it. But that is one time that certainly would have some chance of being possibly if I could bring her with me.

THE COURT: Again here, you know, I mean, I think I have to defer to others on this. But certainly my impression is that your presence here would only be required for a day or two, based on what I have had. I wouldn't expect your testimony to last any longer than that. So if you were with your wife somewhere, you might have to get on a plane and fly here and fly back. Is that something that would be workable?

MR. FISCHBACH: Part of that -- I am a little out of the loop on this. Part of that is going to depend on Court or counsel. Last time I was there in your presence, I understood this was covered by CJA. Right now my understanding is it might not be covered at all. So it is really going to be dependent on those funds to be able to do that. It certainly

is possible.

THE COURT: That is -- Mr. Sterlingov made a decision he didn't want to proceed under CJA anymore. So there are no CJA funds. You would have to obtain funding from Mr. Sterlingov or whatever defense fund has put together for him.

MR. FISCHBACH: So right now one of the reasons that it has been so difficult to put this on the calendar to put to anything other than days that I have previously committed to and I understand it was under CJA -- part of the difficulty in holding dates is because at this point -- and I am loathe to say this in open court, but I don't think there are any secrets here. I actually haven't been paid going forward in the case anyway. So it certainly would be a burden, seeing as I am still waiting on CJA funds from several months of work from San Francisco, but again it is certainly possible.

THE COURT: I mean, that is an issue between you and the defendant and the defense counsel. Mr. Sterlingov, as I said, made a decision not to proceed under CJA, so there are no CJA funds available. I am not privy to whatever relationships you have with defendant and defense counsel with respect to compensation and whether you are prepared to proceed without compensation in covering some or all of your expenses. I don't know whether the defense can cover some of your expenses. That is outside of my bailiwick. I think that is an issue that

relates not only to whether the trial proceeds in October, November, or any other time. You have to get here. And if you are not paid, you have to make a decision about whether you want to do it or not. And that is not my business.

MR. FISCHBACH: Yeah. My greater concern is making sure that I am not going deeply of the pocket, at least until CJA funds from prior cases catch up. But as you said, that is something that defense counsel will have to catch me up on. Again, part of the issue here for me is that this was a case I prepared for, which I already thought would be complete at this point.

THE COURT: I'm sorry. Say that again. I missed something you said again there. You broke up.

MR. FISCHBACH: I think -- I am not looking at my calendar, but this was a case I expected to be finishing up somewhere around now. And so I don't -- I haven't had a chance to catch up with counsel on what events have changed in terms of funding the case.

THE COURT: Fair enough. And, I mean, it was the defendant who actually asked the Court to postpone the case, so that is what happened. Here, I am just trying to figure out how we proceed in light of that. And I suppose it is important for me to know whether you remain prepared to appear as an expert witness in the case and under what circumstances. Because the last thing in the world I want to do is to schedule

the trial at a time that is not everyone else's preference to accommodate your schedule and have you say, well, I am not doing it anyway, because I am not going to pay out of pocket to fly out there or no one is paying for my hotel room or whatever else it might be or I am foregoing salary that I would be earning somewhere else where I don't think I am going to get paid here. That is not my business. The only thing which is my business is, I don't want to be in a situation in which we schedule around your availability and then it turns out you are not prepared to proceed.

MR. FISCHBACH: Sure. I will certainly tell you right now and I always presume I am on the record, especially while I am speaking with the Court. At this moment, I don't feel prepared only because I understand a lot of things have happened that I just haven't had a chance -- I just literally got out of trial myself. I haven't had a chance to catch up with anything. I do feel a little concerned about catching up for December, seeing as I am coming right out of a long November trial. So I want to be honest about the concern.

I was previously asked about February and March, which I do feel comfortable with and had let them know that was a time that was available on my calendar. Quite frankly, I am a little bit more confident I will understand the case better at that point. But I also will be very honest with the Court, I don't know that is impossible by December.

THE COURT: I'm sorry. Say that again.

MR. FISCHBACH: I said, I just want to be honest with the Court, I don't known that it is impossible to be ready by December. But I do have certain concerns seeing as I will be going back to back in trials. And I, quite frankly, have fallen out of the loop just while I have been in these last two trials.

THE COURT: What about my prior question about the funding issues and whether you are prepared to be a witness either in December or February or March in the case? Because as I said, I don't want to schedule around your availability and then have you say, I have got clients who are paying me. And I really can't take time off from the paying work to go do this. And I don't have a view one way or the other on that other than just to say, I need to know the answer as to whether you are going to be available for trial and actually willing to participate in trial in December and February or March, if I am going to make a scheduling decision based on that.

MR. FISCHBACH: Your Honor, one of the reasons February and March, I was able to give a very quick, easy answer is that falls into a different calendar year. And I always allocate a certain amount of time for pro bono work. And I am beyond it for this particular year. So if I have to do pro bono work, at least I can make it a part of that time. I haven't agreed to do any other pro bono work yet for 2024.

For 2023, the only way I could do this is if I could be assured I have got those funds coming. Because we are still awaiting right now on funds. And, quite frankly, the account is thinner than we like it to be.

THE COURT: When you talk about funds coming, are you talking about the funds from San Francisco or funds from the defense fund in this case?

MR. FISCHBACH: Both. At this point, seeing how much time we took going well beyond what we thought we would pro bono in San Francisco, it wasn't expected to be pro bono, it should be paid. I am accepting that right now as all of the pro bono time I have left. If I can get December work and my wife is aware of this and it pays, we are probably going to take it. Because we had a 6-figure, about $100,000 CJA case that appears it is going to be unpaid. So, yeah, we are quite honestly trying to make sure that we have got money before we are late on mortgage payments.

But, again, I always allocate several weeks for pro bono work per year. That starts fresh for 2024, so I don't see that problem by then. And I fully expect that the account will be topped off through billing by February.

THE COURT: All right. Is there anything that either the government or the defense would like me to ask Mr. Fischbach? You are welcome to ask the questions yourself if you have anything else you want to ask about availability.

MS. PELKER: I think it is less of a question for Mr. Fischbach and more one for defense counsel and possibly a follow-up for counsel in this Kansas case. It would be in the government's experience, highly unusual for a defense cell phone witness to sit at counsel table for a month-long trial, for the entirety of trial. And that appears to be what is being suggested here. I just have a hard time believing that Mr. Fischbach is truly unavailable to fly out for any one- to two-day period in October and November. And the government is happy to be flexible on the timing there within reason.

Is the Kansas case actually sitting five days a week? We could have Mr. Fischbach come in on Friday.

THE COURT: Do you know that? Are they sitting five days a week, Mr. Fischbach?

MR. FISCHBACH: That is at least how I have got it on my calendar. I would like to address that because I feel that was very much directed at me. The Court could pull transcripts or I'd be happy to provide transcripts. I sat for two weeks straight in San Francisco in federal court before Judge Breyer at counsel table every single day, five days a week as well as preparing all weekend and providing things to the Court over the weekend. I may be a very unusual witness. There probably aren't a lot of witnesses that have done this for over three decades either. I very, very often sit at counsel table. That is not unusual at all. And with this particular attorney, not

at all unusual for him, because he has got the funds, which is why he is a fantastic attorney to be able to work for. He has --

THE COURTROOM DEPUTY: Mr. Fischbach, you are frozen.

Mr. Fischbach, are you there?

MS. PELKER: Your Honor, just while we are trying to get Mr. Fischbach back on the line, the government doesn't -- neither want to concern itself with the defendant's choice of how to move forward with funding. And perhaps there is an inquiry that should take place out of the government's presence. But the various representations of the different defense experts and the defense's representations as they are doing their fundraising and the information coming in from the fundraising, just simply don't seem to add up or be consistent about the defense making statements saying they have gone so far deep into debt, are about to be evicted therefore need all of the donations, are getting what appeared to be sizable donations, could also be a commingling in an IOLTA account.

And the government is not trying to make any sort of assertions here, but things just are not adding up with the defense experts then saying that a lot of them are doing it pro bono or are expecting to get paid and haven't been paid.

THE COURT: I think you are right, that is probably a conversation that if I have it, I ought to have it ex parte with the defense.

Any luck with Mr. Fischbach?

THE COURTROOM DEPUTY: I'm getting him back on. He is on on here, but some kind of way the Zoom on this -- so the courtroom can have it connected.

THE COURT: All right.

(Pause.)

THE COURTROOM DEPUTY: Mr. Fischbach, can you hear me?

MR. FISCHBACH: Yes, I do. Thank you.

THE COURTROOM DEPUTY: I apologize. I don't know what happened.

THE COURT: So, Mr. Fischbach, we did lose you partway through what you were saying. But I think the point that would be helpful for me to hear a little bit more about -- is your testimony in the case in Kansas City just about telephone location data? What is the nature of the testimony that you are giving there or the breadth of it?

MR. FISCHBACH: Largely about cellular location data, yes. But it is a part of my practice always -- and quite honestly, I guess I am humbled to know that the DOJ in DC isn't that familiar with testimony. It is pretty typical for me to be a part of the defense case during the government's case. And it is very typical for me to sit at counsel table, because witnesses who are speaking about that technology, in this particular case cell phone -- and there goes mine -- that it is

very typical for them to be effectively speaking over counsel. So in that case, I sit at counsel table to what would amount to an interpreter and to assist defense counsel in their cross-examination of those witnesses, something I think would have been useful in this case. I just don't know that they have the budget.

THE COURT: So I understand that. And, look, I know nothing about the case in Kansas City, other than it is a murder trial and this is the third trial in that case. But I can imagine a case in which there is a day or two or three of testimony relating to the cellular location where you would need to be sitting beside counsel to help them understand it, to help them craft cross-examination questions and so forth and also to be prepared yourself for the testimony that you are going to give on the same subject in the defense case.

And I understand also that you may not know when that is going to happen in the case. And you don't know, as you sit here today, what order the State of Kansas is going to put on its evidence in that case. But are you suggesting as well that you would be and you need to be there throughout the case so when there is testimony from alleged or purported, you know, testimony from custodian of records relating to bank accounts, whatever else it might be in the case, do you need to be there for that as well?

MR. FISCHBACH: A great deal of what I do is

strategic litigation. So that is typically how the attorneys come to use me over the last 25 years, 25-ish. So it wouldn't surprise me. All I know is he asked me to be available and this is somebody who I have three other cases right now, who very much makes up for my ability to do pro bono cases. So when someone like that asks me for it and I know that I can be paid for all of that time, I certainly like to make myself available. But I agree with you 100 percent, there will undoubtedly be some period of time where I call up my family and say, guess what, it doesn't look like they will need me for next four days and I go home.

THE COURT: I guess the question is if we did that and had some flexibility in this case, as hard as it might be on you, instead of flying home could you fly here?

MR. FISCHBACH: Possibly so. The problem is I just don't know if and when that will occur, if at all. And, of course, I can't speak to counsel. But I don't know how much of this case they are going to want me to be monitoring as part of the government's case, which quite honestly seems likely, but it wasn't something specifically discussed.

THE COURT: It wasn't clear to me whether you were prepared to do that on a pro bono basis or not to sit through this case. This case, we are talking about a month-long case here.

MR. FISCHBACH: Yeah. Thank goodness there is Zoom

in the courtroom.

THE COURT:  There is not.  There will not be during trial.

MR. FISCHBACH:  Well, then that could certainly be -- I would say it would be unlikely.  I certainly can't afford at least right now to be there every day.  And I don't know how much of it got on the record before I got cut off.  But I did, in fact, spend two weeks in San Francisco for that purpose.  So by February, it would be something I would like to be able to be back in the position to do.  And if so, I don't have any other cases that have asked for that time yet pro bono.

THE COURT:  All right.  Anything else that the defense thinks I should ask about?

MR. EKELAND:  No, Your Honor.

THE COURT:  Does the defense think it would make sense for me to ask the government to step out to talk about some of these funding issues now?  Is that something you think would be helpful?  Because only to the extent that it relates to the availability of Mr. Fischbach.  And as I said, the last thing I want to do is postpone the trial or schedule around his calendar and then for him to say, you know, I can't afford to do this.  And so, for example if I move the case to December over October, I wouldn't want to be in a situation in which he says, look it is the end of my pro bono year and I am not getting paid, so I am not going to do it.  So it could be

helpful, but I will defer to you as to whether you want to get into that or not.

I need to know whether he is really going to be here or not.

MR. EKELAND: If I am understanding Mr. Fischbach correctly, he is saying that he would be willing to do the case pro bono in February. Of course, we are -- I haven't had a chance to speak with him, because he has been so busy, about this and everything that happened with the scheduling. And we are going to look for funds to pay him. But I don't know, honestly, if we are going to be able to raise that money for October or November. Mr. Fischbach is somebody I have worked with for years and who has sat through other trials of mine.

And if I am understanding him correctly, he is saying that he could come and would be willing to work pro bono in February if I was unable to raise the funds. So, I mean, that is, obviously, what we would prefer to do, to have him available for the entire trial like we have worked together before. And then, you know, if I was able to pay him, I would, if I am understanding him correctly.

THE COURT: The problem I am having is this is still very uncertain and unclear to the Court. Where you are asking me to postpone the trial a significant period of time and Mr. Sterlingov is incarcerated. And we have already postponed the trial once from last January. You are asking me to

postpone it. And you are saying, we are hopeful we might be able to possibly raise the funds to be able to pay him to be here through the whole trial in February. And that would be ideal if we can do it, but I don't know really whether we can do it or not. And I don't really know whether we could raise the funds for December for him to be here or not, probably not for him to sit through the whole trial. But maybe at least to pay his expenses, but I don't really know.

That is what I am trying to pin down. I don't think it is fair in light of the public interest and the government for me to say I am going to push the case to February, because there is uncertainty and because you haven't had a chance to talk with Mr. Fischbach about whether he is available or not.

MR. EKELAND: Mr. Sterlingov has expressed a desire to me to have Mr. Fischbach present for the trial. And if I am understanding Mr. Fischbach correctly, he is saying he is willing to be present in February for the entirety of the trial.

THE COURT: I did not understand that. If he is willing to say that me to now, that regardless of whether he is paid or not, on a pro bono basis, he is willing to sit here through the entire trial in February, I'd like to know that. Because that is not what I heard him saying. I heard him saying maybe, probably not if he is not getting paid to do the whole thing. But, you know, he would certainly be here to

testify, but whether he would sit through the whole trial, I didn't hear him say that. But maybe he is prepared to be here for a month in February and March on a pro bono basis. And maybe I need to ask him that question.

Mr. Fischbach.

MR. FISCHBACH: Yes. I'm sorry. I wasn't sure if you were asking the question.

Yeah, for the month of February or March, at least at this point, because they are not otherwise allocated, I certainly can hold aside time for it. I can't honestly tell you any time when it is pro bono that I can be in a particular case every single day or more logically I could be there, but I may not be physically in the courtroom at every moment, if somebody needs some consultation that is paying during that time. But, yes, I can make pro bono time in February, March, as long as I am not deeply out of pocket.

THE COURT: That is the problem I am still having here. There is a lot of still uncertainty about this. Yes, you can do it, but you can't promise me you would be there the whole time, but maybe depending on other demands and depending on whether you would be out of pocket or not. And I just -- I really -- I am at the point, quite frankly, where I am -- and this is not directed at you, Mr. Fischbach, but where I am getting pretty fed up. Because I am being led along, not by you, Mr. Fischbach, by representations to the Court that are

made without people having done their homework and asking for continuances, not doing what the Court is instructing with respect to scheduling and then just assuming, well, okay, Judge, just reschedule it then to some other time.

And I think the government raises a fair point that if I reschedule it for February, I am still concerned that I have people who are dancing around a lot. And what I am asking for now and I am happy give you time, Mr. Fischbach, to talk with Mr. Ekeland. But I need certainty now if I am going to make decisions with how we are going to proceed with this case, I am done with maybe, I am not sure. I will not consider any arguments of that type at this point. I have just had enough, frankly. Again, that is not directed at you, Mr. Fischbach, because you are new to this issue. But you haven't been privy to the discussions we have been having over the past months, in this case, where months and months of discussions about access to evidence and experts who are unwilling to look at it. And I am told they will not look at it under any circumstances. And then I get them on the phone and they say, oh, yeah, we'll look at it. I need certainty if I am going to make decisions. And that is where the Court is at this point.

So if you want some time to confer with Mr. Ekeland, that is fine. I would have hoped that when I 3 or 4, 5, 6, 7 times requested the defense to talk to their experts and check on their availability that they would have asked those

questions, but I need to know. And I need certainty and then I will make a decision. And when I have complete certainty, I will hold people to their word to me on pain of contempt.

MR. EKELAND: Your Honor, may we have 10 minutes to call Mr. Fischbach?

THE COURT: If you want to step into the hall and do that, you are welcome to do that. Okay. I will step off the bench.

MR. EKELAND: Thank you, Your Honor.

(Recess taken at 4:38 p.m.)

THE COURT: All right, Mr. Ekeland.

MR. EKELAND: Yes, Your Honor. So I spoke with Mr. Fischbach and I am going to briefly tell you my understanding and he can affirm or deny.

THE COURT: Okay.

MR. EKELAND: He is willing to commit to February, March to definitely testifying, to committing to testifying and being here for critical days where we need him in terms of witness testimony that we think he needs to hear and generally consult what -- he would be present in DC and then what he would just like to be able to do on days where maybe we don't -- he is not -- his presence isn't critical in the courtroom in ways that won't interfere with the trial, he just may want to step off and work on another matter. But not in a way that would affect his testimony or his presence when the

defense needed him.

THE COURT: Okay. And what about December?

MR. EKELAND: I think his position on December is the same as before. He has told his wife that they would take time off. I don't think anything has changed on that. We didn't really discuss that. We discussed November and him coming off of the trials. And we mainly just discussed February and March, Your Honor.

THE COURT: And the issue that I guess I am still unsure about -- I am unsure about a lot of this, but I am particularly unsure about whether we are really in a position in which we can go in October and whether Mr. Fischbach is really needed or will actually even be there every day during the relevant days in October. And I understand that it may be somewhat outside of his control. And I would be happy to call the judge out there and get her take, if you the parties think it would be helpful on -- you know, on the schedule in that case. But, you know, if it turns out that Mr. Fischbach is going to be at home for two weeks or whatever it might be and it is just a matter that he doesn't know that now, because he doesn't know what the schedule in the case is, we can find out what the schedule in the case is going to be to try and address that. So that is at least one significant question I still have.

And I understand that Mr. Fischbach was paid to be

there throughout the trial. And, obviously, I am not going to require that he be here if it is going to be inconsistent with his responsibilities there or undermine in any way the defense in that case. But it is just a little hard to believe that he is going to be needed throughout the trial, given the nature and the focus of his testimony. And it seems fairly discrete and focused and not -- he is not going to be presumably helping to choose the jury. He is not going to be crafting closing arguments. He is not going to be presumably advising on cross-examination of percipient witnesses. And so I -- I would imagine, but I could be wrong about this. There are going to be substantial periods of time where he is either out in the hall doing what he was talking about here, working on other cases or he is going to be at home. What I'd rather not have happen here is have us put this case off because Mr. Fischbach isn't available in October to have Mr. Fischbach then sitting at home when we were actually hoping he would be testifying here. If we can know that now, I would just as soon know that.

Mr. Fischbach, is that something that is possible or am I mistaken about what your role is in that case there?

MR. FISCHBACH: Yeah. I hate to tell the judge when he is mistaken, but in this case I don't think you will be insulted. I do typically assist with both opening and closing, especially with attorneys I have been working with for a long time. And I will put Mr. Ekeland on the spot in my

reflections, the last time we were in federal court, I helped him with his closing. So that is not atypical for me. In San Francisco I actually did the bulk of the selection of the jury. I was there that ahead of time.

THE COURT: You -- I'm sorry. This is a little bewildering to me. I am actually friends with Judge Breyer. I would be happy to have a conversation with him about this. It is bewildering to me saying you were involved in choosing the jury in that case.

MR. FISCHBACH: I would actually very much appreciate it if you could call Judge Breyer and remind him there is a CJA form waiting for his signature. He will tell you that I was there -- as a matter of fact he put it on record that I had been there since jury selection and did sit at counsel table. I was effectively in that case though, obviously, not legally cocounsel.

THE COURT: I'd certainly hope not legally, because you would have some criminal liability for that, if you were.

MR. FISCHBACH: In fact, it was a joke while they were there, this might be the first case of ineffective assistance of non-counsel had I screwed anything up. I am actually quite proud of the jury that I picked.

THE COURT: All right. Ms. Pelker.

MR. FISCHBACH: Please, if you would, ask Judge Breyer. I think --

THE COURT: The real question I guess is are you going to be involved in choosing the jury in Kansas City? I am going to call the judge there. Are you going to be involved in choosing the jury there and what role will you play?

MR. FISCHBACH: I don't think the judge would know if I was or wasn't. But with this particular attorney, I doubt it. He has that very well -- typically -- so that is not my general approach with him. But what I do know is that every hour that I can justify being paid and charging him, whether it is simply to watch the trial, if that is what he desires or to help him as often will happen where what -- where he will have one of his assistants effectively transcribing the trial to me wherever I am, that is money that I really at this moment, because of Judge Breyer's case do need to try to collect. We --

THE COURT: I thought you told me you were paid in advance. I'm sorry. I thought you told me you were paid in advance for that case.

MR. FISCHBACH: I am. But I have to return everything that I don't earn. It is part of a retainer.

THE COURT: Ms. Pelker.

MS. PELKER: Your Honor, I think that we have managed to resolve any of the defense objections to the October 10th trial date. And starting October 10th going the next month, aside from Mr. Fischbach's availability. Trial is going to go

for a month.  The government is happy to be flexible on the exact timing of Mr. Fischbach's testimony and that we haven't heard a clear articulation that Mr. Fischbach is unavailable or that his availability the month following October 10th is going to be materially different than what his availability would have been if we had been in trial right now.

And it doesn't sound to the government at least, as though Mr. Fischbach and defense counsel in this case had had an agreement that Mr. Fischbach was going to be sitting at counsel table or sitting for the entirety of trial, given that we would be in trial right now and that there is no need to postpone an October 10th trial date an additional four months based on speculations about potential availability or nonavailability.

THE COURT:  All right.  I mean, I suppose what I heard in part here is that the unavailability is that he could be earning money taking notes, even if he is not necessary to defense in that case, but he would like to use as much of the retainer there as he can.

MS. PELKER:  Again, the government is not concerning itself with how Mr. Fischbach is earning funds for other cases, but would point out that he had committed to doing this case. Is it is not clear to the government whether he thought he was going to be paid out of CJA funds for what would have been trial right now.

THE COURT: Right.

MS. PELKER: Or what the payment structure would be for February. But that doesn't seem to impact the availability question. And that it really is just whether Mr. Fischbach is going to have a day sometime over the course of the month from October 10th following the month -- the month following that.

THE COURT: I suppose the other possibility here is that I went back and reviewed the Daubert rulings, my conclusions with respect to what Mr. Fischbach will be allowed to testify to in this case. And it is hard for me to believe it would take more than a day including the direct, the cross and any redirect in this case. And if I can determine -- and maybe we just need to ask, if they are not sitting on Fridays in Kansas City, that would be a simple answer, we'll sit here on a Friday to do this. I don't know. Mr. Fischbach, is that something you can determine just with an email to counsel asking if they are sitting on Fridays?

MR. FISCHBACH: I could certainly ask him that. The bigger question is whether or not he needs me on Fridays in terms of preparing for Monday.

THE COURT: But you can do that on Saturday and Sunday, if you needed to.

MR. FISCHBACH: And, again, looking back to San Francisco, I worked on the days we were dark, including a Monday and a Friday that were both dark and Saturday, Sunday.

It is just not unusual, once I am in trial, I am dedicated very much to that time. But I will certainly ask -- I will certainly ask counsel if he sees a period of time that he won't need me during the case.

THE COURT: I would appreciate that, if you can do that, including whether they are sitting on Fridays or if there is some other period of time where he thinks he is not going to need you. I guess that I need that information and then I can make a decision about what to do. Does the government have a view or a preference between December or February? It seems to me there are -- it is earlier, but there are some greater risks with the November and December timeframe with just juror availability.

MS. PELKER: The government spoke with our witnesses. We can make December work. I think the government has the same concerns that it is going to be very difficult to get a jury who will be able to be sat from the Monday after Thanksgiving until the Friday before Christmas with everything happening in that time. It doesn't give any room for issue or error.

THE COURT: This is what I am going to do. I would love to get it done in the November, December timeframe. I think that -- my goal here is to avoid any further difficulties, scheduling problems, hurdles in this case and to be completely definitive about what we are doing. And I just worry the November to December period may raise some problems.

And so I am going to have to decide between starting on October 10th and starting on February 12th, with respect to the trial.

I will note with respect to, you know, Mr. Fischbach's availability that the defense was saying to me, I think a day before we were going to start trial, yes, we want to go to trial starting in September. So I would presume the defense was ready at that point in time. And they told me they were ready to go to trial starting in September. I assume that, frankly, the same issues with respect to Mr. Fischbach's pro bono budget for the year were present there that are present now.

But I will have to decide between the October date I think and the February date and -- to make that decision I do just need to know whether Mr. Fischbach is going to have any availability during the trial in Kansas City in any period of time when he is not needed there either on a Friday or whether there is just some other portion of the case that doesn't have anything to do with his expert testimony in the case. And I appreciate the fact that he is somebody who has a lot of appearance with criminal trials. And he may be somebody who defense counsel would like to bounce things off of or get his reactions to, things unless he was actually retained to be a jury consultant or retained to consult on issues relating to other witnesses, that are not giving testimony relating to

cellular location, I guess I am not putting a lot of weight on that.

But I do need to know whether based on his obligations in that case and also making sure that he is not doing anything that would interfere with the right of the defendant in that case to have a fair trial, whether there are some days when he is not available.

So, Mr. Fischbach, if you could send an email or a text, whatever is appropriate to the attorney who has retained you in that case. Tell the attorney that there is a judge who very much would like to be able to go to trial in October and early November here. And say that the judge has asked you to inquire of him whether there is some period of time in the Kansas City trial when your presence will not be needed.

MR. FISCHBACH: Yes, Your Honor. While you were speaking, I fired off a quick text message to him.

THE COURT: Great.

MR. FISCHBACH: I am waiting for his response.

Just for clarification, I know he is going to ask me -- I don't know the flight time between DC and Kansas City. I have never done that. Am I -- since you said there won't be Zoom during the trial. I am presuming and actually I know from counsel, they want me there in person. So it seems as though I am asking for more than a day if I understand the flight time.

THE COURT: I don't know. I am just like anyone else

here I can look it up right now. I am happy to take a look. My guess --

MS. PELKER: Our paralegal is indicating that it is about a 3-hour flight direct.

THE COURT: About a 3-hour flight. I guess the question is how often there are flights and whether there are flights that you could take a flight out on a Thursday evening at 5:00 p.m. and be here by 8:00 and then testify. And presumably I mean I'd hope that you could do a fair amount of your prep perhaps by Zoom or the telephone or even, frankly, now before you start the case in Kansas City with Mr. Ekeland. If you need to sit down with him, you can come and do that now or he can go to you now. But let's see.

MR. FISCHBACH: Part of the concern that I think we are not directly addressing is that I am presuming, although I don't know until a case happens that a good deal of my testimony will be in rebuttal. And so one of the things I need to make sure that I am prepared for is that I have either personally witnessed or at least very well read transcripts of the government's witnesses in relation to my testimony.

THE COURT: That is --

MR. FISCHBACH: That is always my concern. I want to make sure the Court knows I am not personably comfortable with a condensed timeline. But, again, that is up to counsel if they feel like it represents their client. That is not my

decision.

THE COURT: So I completely understand that desire of yours and I completely support it. And I think that you should be able to do that. And I guess I would be willing to talk to the parties about whether there is a way in which we could allow you to view particular government witnesses, if you are not here, by Zoom. And whether there were a way to do that. There is prohibition on broadcasting criminal proceedings in federal court. I would have to make sure it was not in violation of that. There may be a way to do that to make sure if you can't actually be here personally, you could actually see the testimony.

MS. PELKER: Your Honor, I believe the government is ordering the daily rough transcripts and so defense counsel would be perfectly able to share them with Mr. Fischbach for his review of the relevant government witnesses, if that would assist.

THE COURT: So I am just looking at flights online. And I see a flight leaving at 4:55 p.m. from Kansas City arriving in DC at 8:15. And it looks to me like, just on Southwest, there are many flights every day one, two, three, four -- it looks like -- just the page I am looking at shows 14 flights a day just on Southwest. So I think that travel shouldn't be too much of an issue. But I understand your point. And I do think we would have to make arrangements and

do it in such a way that you would have the availability to observe and review the testimony that you would be responding to.

MR. FISCHBACH: I think at least for -- based on my experience with Mr. Ekeland, I think it would be significant to be able to view that live, assuming I have the time to do it. Only because, otherwise, I don't have ability to assist him with cross, unless there was some agreement between the parties that cross wasn't going to occur until the following day.

MS. PELKER: Is Mr. Fischbach -- this may be a question between Mr. Fischbach and defense counsel. To the extent they are talking about one particular witness and I think it would probably be Ms. Mazars de Mazarin, this would be pertinent cross for, we could likely time it so that we would do a direct and then the cross would be the next day. My only hesitation is that we are already on a compressed timeframe. And if we are having her -- we are putting her on in the morning and then we are holding things over to assist with cross -- but the government is absolutely happy to try and work with defense counsel and the Court to facilitate this kind of working out.

MR. EKELAND: Your Honor --

THE COURT: Yes.

MR. EKELAND: We just don't anticipate that with Ms. Mazars de Mazarin. The government has also I believe

noticed -- I don't know if they are going to call him is it St. Michael John also as an expert. Also the government is calling three cooperating witnesses that I anticipate Mr. Fischbach would be enormously helpful if he could listen to their testimony because they are being brought in to talk about mixers and the Tor network and any number of things. So I just -- I don't -- the defense doesn't just think it is just Ms. Mazars, although it includes her. I think the value of Mr. Fischbach -- and, you know, we have worked together for years is just having him here to see -- particularly in a case like this, which is so highly technical, I mean, I just -- I think his presence for the defense is --

THE COURT: So I would agree with you if Mr. Fischbach was the technical expert on these issues in a way that you didn't have anybody else. And I think given the nature of the devices that were in Mr. Sterlingov's possession, it is clear that he has some technical expertise and can be of some assistance to you as your client is sitting next to you. You, obviously, have a great deal of experience and knowledge in this field. And you have others who know a great deal about technology. And so if this were -- if this were cellular phone tracking using particular technology, I get it. But if it is like how Tor works -- I would be surprised if -- you can correct me on this, I would be surprised if Mr. Fischbach knew mere about that than you do, Mr. Ekeland.

MR. EKELAND: I have learned quite a good deal from him. And that is the reason I have been working with him for years and I find his advice invaluable. And I think there is a reason he is willing to come in on February and March, you know, on a pro bono basis to work on this case. And I -- I don't know what to say to that. I think his knowledge goes beyond this characterization of him as some sort of solely a cell phone, mobile phone expert.

THE COURT: I am not suggesting that. What I am saying though is that to the extent that he is being offered as an expert on Tor and related issues, it is not some unique knowledge that he has. And I understand you might have a wonderful paralegal who worked with you on every case and you say, I'd love to have the paralegal with me. The Sixth Amendment doesn't go that far. So the question is, is there something that interferes with your ability to put on an effective defense. We put the trial off on your request. And I understand that you would prefer to have Mr. Fischbach, you know, at your side the entire trial -- if it turns out he is not willing to do that because it is financially too tough on him, it is not going to violate Mr. Sterlingov's Sixth Amendment rights, he is not going to have an ineffective assistance of counsel claim because Mr. Fischbach decides he can't be there to bounce ideas off of, to share experience over the years with you as you are putting on your defense. And the

question is whether he has some area of technical experience that someone else doesn't have so not having him there, with respect to the cooperating witnesses, puts Mr. Sterlingov at a disadvantage in a manner that violates his Sixth Amendment rights. And that I am finding it hard to get my head around. And I do understand and I am sympathetic to the notion that if there is testimony that Mr. Fischbach is going to be offering in the case that he needs to hear that testimony and he might, in fact, have questions relating to cross-examination on that testimony, that he would want you to ask in ways that might, among other things, better help set up his rebuttal testimony. And he is going to want you to avoid a record in some way with respect to what the witness' testimony is so he can come back and explain why he disagrees in some respect.

I am on board with that. I think you are pushing this a little far. And you have probably gathered a little bit of incredulity by the Court on the notion that Mr. Fischbach is essentially Perry Mason and that he is -- you know, I am not demeaning his abilities in any way, but he is an expert witness in this case. He is not part of the defense team more broadly. And Mr. Sterlingov is well represented by experienced counsel in the case. And he is -- and Mr. Fischbach is an expert on a fairly limited set of questions at this point. And I think that is what I want to be focusing on.

MR. EKELAND: Your Honor, it is hard to -- I just

don't know what the cooperating witnesses, the extent of what they will by testifying to, so it is hard to ascertain that.

THE COURT: All right. Mr. Fischbach, have you gotten any response to your text message yet?

MR. FISCHBACH: Let me double check. I had my phone silenced.

No, I have not received anything from him yet.

THE COURT: All right. Well, it is 5:15 and I guess what I will ask is, Mr. Fischbach, as soon as you hear something, if you can let Mr. Ekeland know if you can then promptly file with the Court, Mr. Ekeland, a notice letting me know what the answers are from the attorney in this case. If you can let me know who the attorney is and with some precision what he said in response to Mr. Fischbach's questions, the closer you can get to giving me his exact words, I would appreciate it, because I think we have had some mistranslation issues here. And I want to make sure we are avoiding those issues. And then I will issue an order.

Ms. Pelker.

MS. PELKER: Your Honor, the government would just suggest that the Court had previously raised the possibility of Your Honor reaching out to the judge in Kansas to get a better sense of the trial schedule.

THE COURT: Yeah.

MS. PELKER: And the judge may have a better sense

of -- than the defense attorney in that case of exactly what the judge's plans are. And that may be an expedient way to get an answer as well.

THE COURT: So why don't I get the response from Mr. Ekeland and I will consider whether it makes sense for me to reach out to the judge in that case as well and to get her input. So I will do that. And I will just issue an order.

But let me, just while we are all here, because I will do this on the record. I will just enter a minute order. But while we are here, I want to make sure that Mr. Sterlingov, who is the one who is sitting in jail, that it is, in fact, his preference to wait until February 12th and that he understands his rights under the Speedy Trial Act and wants to waive those rights and that he is requesting that I postpone the trial until February 12th.

THE DEFENDANT: Your Honor, I understand that we have decided to postpone the trial from the original date, partly due to my request.

THE COURT: Right.

THE DEFENDANT: You did find a very quick date in October as I had asked you and I do appreciate that. And it is not my preference to wait until February. But it seems that, you know, the circumstances are just leaving me really no choice, because I don't want to go to trial without the experts that I am being told that we need. So, yes, I am okay with

postponing the trial until February.

THE COURT: If Mr. Fischbach is available for a few days during the October trial, is that what you would like to do, if he can be here?

THE DEFENDANT: In that case, I would still like to go in February, because it is my understanding from how the facts have been presented to me that he will not be able to effectively provide his expertise in just one or two days. I have heard him today as well and I don't know how these things usually go, but when I hear that he is going to be in another trial that is also going to take weeks --

THE COURT: Right.

THE DEFENDANT: -- and we are asking him to fly for 6 hours every Friday to give some testimony and -- it just sounds like it would be really hard like practically for him to do and still be focused on both cases. And as I understand, my counsel will also want to prep him. There is other work involved than just his testimony for like one or two days.

THE COURT: That is true.

THE DEFENDANT: So just the way I understand these things, I don't know if this is correct, but in that case I'd like him to go -- I would like us to go in February.

THE COURT: Okay. Have you had an opportunity to confer with Mr. Ekeland about the Speedy Trial Act and your rights under the Speedy Trial Act?

THE DEFENDANT: Yes.

THE COURT: And are you prepared to waive time between now and February 20, 2024 under the Speedy Trial Act?

THE DEFENDANT: Yes, Your Honor. Can I just --

THE COURT: Go ahead, please.

THE DEFENDANT: I would also like to add some something about the jail situation.

THE COURT: Yes.

THE DEFENDANT: This also goes back to -- I do appreciate that you -- it sounds like you have been talking to the marshals and have been somewhat instrumental in them moving me between the different locations. I just want to make it clear that nobody here are making up issues about the jail. It has been really hard to prepare for this trial. The first two jails where they kept me, Northern Neck, has provided a hard drive after a long time. It was hard to use, because they had like a 10-year-old computer where all of the files didn't open. They had to drive me for two hours every day to the court. There have been a lot of issues with Northern Neck.

THE COURT: Right.

THE DEFENDANT: There have been a lot of issues with Rappahannock Jail. Perhaps I don't need to go into all of the details. It is my understand that the current location, Alexandria is actually a better jail that actually follows most federal standards, as I understand them, which the other jails

actually did not. I have had a lot of conversations about that. So my understanding is that Alexandria jail is not going to -- is not going to prevent my preparing for this case, if we can resolve the hard drive issue, which I believe is not yet resolved. But I believe that you said that the marshals told you they will be able to provide it there.

THE COURT: Yes.

THE DEFENDANT: So if those issues are resolved, it should be fine.

THE COURT: But one thing -- I do apologize for interrupting -- but I want to make sure you are aware of and I have not spoken to the Marshals Service about this and I don't want to speak for him in any way and I don't know what they will do. But I do know that the jail in Alexandria, as you know, is a much smaller jail. And it has real capacity problems, because there are a lot of folks who want to be there, particularly when they are on trial in this court. If we postpone the trial until February, I don't know this, but it is possible that you will get moved somewhere else. Because they will have to free up some of the space in that jail for someone who needs to be in this courthouse. If that happens, and it may be that Mr. Ekeland should at least let the Marshals Service know that if there are other considerations. In other words, I can imagine a world -- I don't know whether this would be the case or not. You know, I just make suggestions to the

Marshals Service. They determine the stuff. It is not in my jurisdiction. They could decide, for example, to send you to a jail that is closer to New York where Mr. Ekeland and Mr. Hassard are located and maybe that would make life easier getting in touch with you there. I just don't know. I don't want you to make your decision on the assumption that you are going to stay in the Alexandria jail, because I don't know whether that is true or not.

THE DEFENDANT: That is understandable. And this was the last thing that I wanted to mention, is that some location like Alexandria, like I said, I don't think they would cause any additional problems in me preparing the case --

THE COURT: Right.

THE DEFENDANT: -- given an assumption that I would have some time there before the trial, because every time they move you, there is a period of time where a lot of facilities are just not available.

THE COURT: Right.

THE DEFENDANT: I did not have access to any phone for like six days. I did not have access to attorney phones for eight days.

THE COURT: Yeah.

THE DEFENDANT: I did not have access to like shower and basic necessities and any of my files or any of the hard drive right after they moved me.

THE COURT:  Right.

THE DEFENDANT:  So I --

THE COURT:  I understand.

THE DEFENDANT:  I don't know if you can do anything about it, but it is just my concern, because with the original trial date, they had moved me just one day before the trial.

THE COURT:  Right.

THE DEFENDANT:  And like I said, for a week, I didn't have access to anything.  So I am wondering, if we would have kept the original date, you know, if we didn't have any of the other issues, how would I be able to get to trial and get a -- you know, have a fair chance at participating?  It wouldn't be possible, I would say.

THE COURT:  I do -- I mean, I appreciate your concerns and I think they are fair concerns that you are raising.  What I would encourage Mr. Ekeland and Mr. Hassard to do, if things are working well right now at the Alexandria jail, I would encourage them to do as much of the prep as they can with you there now.  Because I just don't know if and when you might get moved in ways that could involve some disruption.  So I encourage them to take advantage of this time.  And there has been many, many months, obviously, before we reach the approach to trial.  I don't know everything that happened during that period of time.  But hopefully they can get you the hard drive right away and they can do whatever prep they need

to do.

As soon as the briefing is done, I will decide the question about your access to the latest production. And I just need the briefing from the parties on that. And if there are issues, as I hope you understand, I will address them to the extent I can as they come up.

The other thing I wanted to make sure that you understood though as well is even if I were to push the trial date back to February 12th, I want you to make sure that you understand that the government has represented to the Court and Mr. Ekeland has represented to the Court, no new experts at this point. So this time is not going to be used looking for new experts or seeking to offer any new experts in the case. I just want to make sure that you understand that and you understood when Mr. Ekeland made that representation to the Court.

THE DEFENDANT: I understand that.

THE COURT: All right. All right.

THE DEFENDANT: So with regards to -- thank you for everything you said about the marshals and the jail. And just that last part that if you have any control over that, if they have to move me, could you please make sure they don't move me a day before trial, whenever they move me back or --

THE COURT: I can say something to the Marshal Service about it now. They don't even tell me when they are

moving you.  I hear about it from others, so I don't even get advanced word, unless I have had a discussion previously where I have asked that something be done.  But I am happy to mention that to the marshal.  And, quite frankly I think it is probably a pretty good practice for everybody who is going to trial to try to provide some time for the reasons you have identified.  So I am happy to mention that.

So what I am going to do is -- I haven't made my decision yet about the trial date.  And I want to hear directly from Mr. Fischbach.  And I may reach out to the judge in Kansas City, if need be.  And I will make a decision.  But I am, in the light of Mr. Sterlingov's request that I push the trial back to February 12th, and the fact that he's represented he understands his right under the Speedy Trial Act and all of the representations that have been made to me with respect to the time the defense needs to prepare, I am going to exclude time between now and February 12, 2024 under the interest of justice exception to the Speedy Trial Act.  And the Court concludes that would serve the interest of justice and those interests outweigh the best interest of the public and the defendant in a speedy trial.  In particular, as of today, we are not in a position in which I know that the witnesses are going to be available and that Mr. Sterlingov is going to be in a position in which he can put on his case if we start in October.  And given the additional time that the defense has requested and

given the fact that there is this additional material that the defense needs to review that hopefully an expert will be able to review promptly. And given the representations that have been made to me with respect to the current availability of defense counsel, the Court concludes that it is in the interest of justice to continue the matter until February 12th, 2024. And that those interests outweigh the best interest of the public and the defendant in the speedy trial. So the Court concludes that the continuance does serve the interest of the public and that interest outweighs the best interest of the public and the defendant in a speedy trial. And so I will exclude time between now and February 12, 2024.

But if I conclude that consistent with Mr. Sterlingov's rights to put on a full defense in the case it is possible to move the case up to the October 10th date, I will do that. But at least on the record as it currently stands, I am not yet persuaded that it is possible to do that. As I said, things may change in a way that allow me to do that, in particular. If I learn that there is any way in which Mr. Fischbach can be available for the critical portions of this case in which he needs to either hear testimony or to present testimony himself.

MS. PELKER: And, Your Honor, I think the government has made its position on the October 10th date clear, we don't want to belabor it. But just to note that we do need to issue

subpoenas for witnesses and writ people in, so as much lead time as we possibly can on a trial date.

THE COURT: I hope I can enter an order on this tomorrow.

So, Mr. Fischbach, is that -- you know how responsive the attorney is. Do you think you are going to hear something back in the next several hours?

MR. FISCHBACH: To be very honest, I doubt that I will. He tends to work pretty late, but I do expect I will probably hear from him overnight.

THE COURT: Okay. If you hear from him overnight, get it to Mr. Ekeland. Mr. Ekeland, I am going to direct that by noon tomorrow, you file something, even if it is to say that Mr. Fischbach hasn't heard anything. And my goal is to be able to issue an order by the end of the day tomorrow. Because I know people need to make plans. And there are witnesses who need to plan for travel. And everyone has schedules. And so I think I need to decide which of the two dates we are going with at the end of day.

MR. EKELAND: Yes, Your Honor.

MS. PELKER: Your Honor had previously indicated you would be issuing a minute order regarding the protective order terms. We are working on coming up with arrangements for Ms. Still to be able to do her review as early as hopefully Monday or Tuesday.

THE COURT: Great.

MS. PELKER: Chainalysis counsel has expressed concerns about any amendments that would seek to -- and I don't think this was the Court's intention -- seek to undercut or remove any of the protections from the new protective order. And they just want to look at that minute order. And so the sooner that can be entered, we just want to have some leeway to be able to ensure that any issues can be worked out.

THE COURT: Let me read to the parties what I am proposing. And I had one question, which you can perhaps clarify for me. Minute order: "This order clarifies that the original protective order entered in this case, docket 18, applies to each and every individual who has viewed or will view sensitive information provided by Chainalysis; each and every individual must personally sign attachment A attached to docket 18. The Court further clarifies what it has always understood to be true: Any individual who receives sensitive information, 1, may not disclose that information to any other person who is not subject to the protective order at docket 18 and who has not also signed attachment A, and, 2, may not use that information for any purpose other than in connection with this case."

And the question I had for you was, was the reference to sensitive information, the right category? Because I think there were maybe two categories under the protective order. I

just wanted to make sure I was referring to the right category under docket 18.

MS. PELKER:  Your Honor, I believe that is not restricted to sensitive information.  Any information provided under the protective order cannot be used for any purpose other than the defense of this case.  But I think that the issue here still is that the propriety information from Chainalysis that came over in the last batch has -- and warrants and I don't think anyone is disagreeing, warrants additional protections beyond what is in the standard protective order at docket 18 for just sensitive information, which is still really fairly broad.  Whereas the new propriety information was intended to just be --

THE COURT:  Fair enough.  So what if I add a sentence.  I am going to hand my computer back to my clerk so she can add the sentence or two.  But what if I were to add a sentence or two that says, The Court further understands, based on -- further understands -- understands that, at the request of counsel for CipherTrace and counsel for Chainalysis, that the material produced by the government on, insert date, will be viewed by Ms. Still (And any other CipherTrace employee working with her who signs attachment A and abides by the conditions herein) at a neutral location to be agreed upon by the parties, shall not be removed from that location and shall not be downloaded on any computers or servers other than those

mutually agreed upon by the parties.

Does that address the concern do you think?

MS. PELKER: I think so, Your Honor. And then again I can --

THE COURT: Mr. Ekeland, is that okay with you?

MR. EKELAND: Yes. I just -- that is my understanding. I just want to make sure it doesn't -- I am a little tired at the end of the day. It doesn't apply to the copy I think I downloaded or Mr. Hassard downloaded from the government, which we are not planning on circulating anywhere. I want to make sure I don't inadvertently get --

THE COURT: What I am talking about is just the disclosure to CipherTrace or to CipherTrace employees.

MR. EKELAND: Then we are okay with what the Court just read.

THE COURT: Okay.

MS. PELKER: I believe the other protective order that the defense did sign with the Court's modifications would still control what was disclosed to the defense.

THE COURT: Correct.

MS. PELKER: Your Honor, I'd just suggest making it explicit here that the restriction on use -- that the material cannot be used by Ms. Still or anyone else at CipherTrace for any purpose other than defense of --

THE COURT: That is -- I think that is what the first

sentence said already. Again, I can read that to you. I think that is what -- maybe it was the second sentence. But what I previously said was the Court further clarifies what it has always understood to be true: Any individual who receives sensitive information -- and I will just change that to say, receives information pursuant to the protective order, may not disclose that information to any other person who is not subject to the protective order and who has not also signed attachment A; and may not use that information for any purpose other than in connection with this case.

MS. PELKER: And, Your Honor, I think our only other suggestion could be to add in potentially a sentence at the end of the discussion specific to CipherTrace, explicitly noting that Ms. Still or anyone else working with her may not discuss any of the materials with anyone else other than defense counsel. Because otherwise it does appear to leave open the possibility of Ms. Still discussing the information, albeit not sharing the actual substance -- not the material itself with any of the other defense experts in the case.

THE COURT: I think that it is --

MS. PELKER: To the extent that the defense has other experts who have signed an agreement for the other materials. But if Ms. Still were to review these materials and then want to go and talk about what she saw with the other expert --

THE COURT: I see what you are saying.

MS. PELKER: -- that absent leave of the Court, that would be improper. The prohibition on Ms. Still discussing what she sees with anyone else absent leave from the Court.

THE COURT: Okay. Mr. Ekeland? Because I think concern is that the others may not be subject to the same terms or conditions.

MR. EKELAND: Well --

THE COURT: I would be open to it, if you came back to me and said there was another expert who wanted to agree to the same terms and conditions.

MR. EKELAND: I think that might be the easiest solution. Everybody has signed the protective order. And I think that if for some -- I don't know what -- if for some reason Ms. Still needs to discuss this with other experts, they will --

THE COURT: Let me say this -- I think that any of your other experts -- maybe not. I can't remember the second protective order. I was wondering if any of the other experts signed the second protective order, but I can't remember if it was limited to CipherTrace.

MS. PELKER: No. There was the original one that had non-compete language that was then --

THE COURT: I am talking about --

MS. PELKER: It is specifically drafted for Ms. Still. And there were concerns about the specific experts

the defense had put forward as experts who may not --
Mr. Laurent and potentially others who the defense may have
consulted with who appear to be -- have interests very adverse
to Chainalysis.

THE COURT: So for present purposes, why don't I just
include something, but with the understanding, Mr. Ekeland,
that you are welcome to come back to me if anyone needs to look
at something and we figure out how to handle it. But I will
add a sentence at the end, it is further ordered that those who
have received -- or will receive access to the material
disclosed by the government on, insert date, shall not disclose
that information to anyone who is not a signatory to the
protective order at docket, insert the second protective order.
So, for example, they can disclose it to Mr. Ekeland without
prior leave of the Court.

MS. PELKER: Could it perhaps be shall not disclose
or discuss that information to the extent that there may be a
difference between disclosure of the actual --

THE COURT: I'm sorry. Say it again. I am not
hearing you.

MS. PELKER: I'm sorry. Could it possibly disclose
or discuss that information?

THE COURT: That is fine.

Mr. Ekeland, is that acceptable? And just come back
to me if there is an issue.

MR. EKELAND: I think that is the best thing to do. And I -- I -- Ms. Still -- nobody has looked at this information. And I don't think that the Court has changed anything that we discussed this morning. But, obviously, Mr. J will take a look at this and let us know if there are any issues.

THE COURT: I think this is essentially what I discussed with him this morning, so I think we are good. And this doesn't relate to, I think, CipherTrace concerns more -- the last sentence deals with the other experts. And I think some of them it is probably not going to be a problem having them sign, if they need to, a fairly restrictive protective order because they are just not -- they don't compete in a relevant space, so I don't see that being a big problem.

Anything else before we adjourn?

MS. PELKER: No, thank you, Your Honor.

MR. EKELAND: I just have one quick thing. It will just take a second. In the government's filing last night, they said that we filed Ms. Still's expert report on the docket. And I would just like to clarify for the record that we only did that after we first emailed it to the Court and the government in an email. And then the Court informed us and asked us to file it on the docket, which we then did. I just wanted to clarify that for the record, Your Honor.

THE COURT: Let me -- I guess the question is whether

I should order that docket be sealed.

MS. PELKER: Your Honor, it has been so widely circulated and quoted, I think that is kind of out of the bag. The government would note that the supplemental report from Ms. Still, to the extent that there is additional analysis of these new heuristics, we would ask because that is potentially sensitive that not be docketed.

MR. EKELAND: And on that point, no objection from the defense on that.

THE COURT: But I will order that then. I am going to order that any supplemental reports by the government or by the defense relating to the materials that were produced most recently by the government shall be under seal.

MR. EKELAND: Your Honor, will you be -- I can't remember what the due date is for the supplemental expert report. I am just wondering if the Court could look at the due date based on what happened today in terms of --

THE COURT: I think the due dates are what they are at this point. But if you want to file a motion in light of where we are requesting that be amended, you can do so. And, quite frankly, how much additional time the Court can provide will turn in part on what trial date we come up with.

MR. EKELAND: Understood, Your Honor. Thank you.

THE COURT: Anything else before we adjourn?

MS. PELKER: No, Your Honor.

THE COURT: My thanks to the court staff who stayed later than they should have. So thank you. All right. Have a good evening.

(Proceedings concluded at 5:46 p.m.)

# C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 24th day of October, 2023.

Sherry Lindsay, RPR
Official Court Reporter

**MR. EKELAND: [22]** 16/14 17/5 18/14 21/4 21/9 21/12 21/16 22/3 33/22 33/24 35/1 36/25 47/20 50/6 50/14 52/7 52/11 54/1 54/17 55/8 55/14 55/23
**MR. FISCHBACH: [39]** 2/23 3/1 3/6 3/20 4/6 4/13 4/23 5/5 5/20 6/7 7/5 7/14 8/11 9/2 9/19 10/8 11/15 13/9 13/18 14/25 15/15 15/25 16/4 19/6 23/21 24/10 24/19 24/24 25/5 25/19 27/18 27/23 30/15 30/18 31/14 31/22 33/4 37/5 47/8
**MS. PELKER: [28]** 11/1 12/6 25/22 26/20 27/2 28/14 31/3 32/13 33/10 37/20 37/25 46/23 47/21 48/2 49/3 50/3 50/17 50/21 51/11 51/21 52/1 52/21 52/24 53/16 53/21 54/16 55/2 55/25
**THE COURT: [105]**
**THE COURTROOM DEPUTY: [4]** 12/4 13/2 13/7 13/10
**THE DEFENDANT: [20]** 38/16 38/20 39/5 39/13 39/20 40/1 40/4 40/6 40/9 40/21 41/8 42/9 42/14 42/19 42/23 43/2 43/4 43/8 44/17 44/19

**$**

**$100,000 [1]** 10/14

**1**

**10 [1]** 21/4
**10-year-old [1]** 40/17
**100 percent [1]** 15/8
**10005 [1]** 1/21
**10th [10]** 2/4 2/15 25/23 25/24 26/4 26/12 27/6 29/2 46/15 46/24
**12 [2]** 45/17 46/12
**12th [6]** 29/2 38/12 38/15 44/9 45/13 46/6
**13th [1]** 3/15
**14 [1]** 32/22
**16th [1]** 3/7
**18 [5]** 48/12 48/16 48/19 49/2 49/10

**2**

**20 [1]** 40/3
**20001 [1]** 1/24
**2023 [4]** 1/5 4/16 10/1 57/10
**2024 [6]** 9/25 10/19 40/3 45/17 46/6 46/12
**20530 [2]** 1/14 1/17
**21 [1]** 1/5
**21-399 [1]** 1/4
**22nd [2]** 4/11 4/20
**24th [1]** 57/10
**25 [1]** 15/2
**25-ish [1]** 15/2
**27th [1]** 4/11

**3**

**3-hour [2]** 31/4 31/5
**30 [2]** 1/20 5/9
**333 [1]** 1/23
**399 [1]** 1/4
**3rd [3]** 2/5 2/8 2/10

**4**

**4:05 [1]** 1/6
**4:38 [1]** 21/10
**4:55 p.m [1]** 32/19
**4th [2]** 5/2 5/6

**5**

**5.1527 [1]** 1/16
**5:00 p.m [1]** 31/8
**5:15 and [1]** 37/8
**5:46 [1]** 56/4

**6**

**6-figure [1]** 10/14
**601 [1]** 1/16
**6710 [1]** 1/24
**6th [4]** 2/9 3/13 3/13 3/13

**8**

**8:00 [1]** 31/8
**8:15 [1]** 32/20
**8th [1]** 1/20

**9**

**950 [1]** 1/13

**A**

**abides [1]** 49/22
**abilities [1]** 36/19
**ability [4]** 3/22 15/5 33/7 35/16
**able [21]** 5/25 9/20 12/2 16/9 17/11 17/19 18/2 18/2 21/21 28/17 30/11 32/4 32/15 33/6 39/7 41/6 43/11 46/2 47/14 47/24 48/8
**about [60]**
**above [1]** 57/5
**above-entitled [1]** 57/5
**absent [2]** 52/1 52/3
**absolutely [1]** 33/19
**acceptable [1]** 53/24
**accepting [1]** 10/11
**access [7]** 20/16 42/19 42/20 42/23 43/9 44/3 53/10
**accommodate [1]** 8/2
**account [3]** 10/3 10/20 12/18
**accounts [1]** 14/22
**Act [6]** 38/13 39/24 39/25 40/3 45/14 45/18
**Action [1]** 1/3
**actual [2]** 51/18 53/18
**actually [18]** 4/17 6/13 7/20 9/16 11/11 22/13 23/17 24/3 24/6 24/10 24/22 29/23 30/22 32/11 32/11 40/24 40/24 41/1
**add [7]** 12/14 40/6 49/14 49/16 49/16 51/12 53/9
**adding [1]** 12/20
**additional [7]** 26/12 42/12 45/25 46/1 49/9 55/5 55/21
**address [4]** 11/16 22/22 44/5 50/2
**addressing [1]** 31/15
**adjourn [2]** 54/15 55/24
**advance [2]** 25/17 25/18
**advanced [1]** 45/2
**advantage [1]** 43/21
**adverse [1]** 53/3
**advice [1]** 35/3
**advising [1]** 23/9
**affect [1]** 21/25
**affirm [1]** 21/14
**afford [2]** 16/5 16/21
**after [5]** 4/20 28/17 40/16 42/25 54/21
**AFTERNOON [1]** 1/7
**again [15]** 5/4 5/13 6/16 7/9 7/12 7/13 9/1 10/18 20/13 26/20 27/23 31/24 50/3 51/1 53/19
**agree [3]** 15/8 34/13 52/9
**agreed [3]** 9/25 49/23 50/1
**agreement [3]** 26/9 33/8 51/22
**ahead [3]** 3/9 24/4 40/5
**albeit [1]** 51/17
**Alexandria [6]** 40/24 41/2 41/14 42/7 42/11 43/17
**all [29]** 2/2 4/9 4/10 5/7 5/24 6/23 10/11 10/22 11/21 11/25 12/1 12/16 13/5 15/3 15/7 15/16 16/12 21/11 24/23 26/15 37/3 37/8 38/8 40/17 40/22 44/18 44/18 45/14 56/2
**alleged [1]** 14/21
**allocate [2]** 9/22 10/18
**allocated [1]** 19/9

**allow [2]** 32/6 46/18
**allowed [1]** 27/9
**almost [1]** 5/9
**along [1]** 19/24
**already [5]** 4/7 7/10 17/24 33/16 51/1
**also [14]** 8/24 12/18 14/14 14/16 30/4 33/25 34/2 34/2 39/11 39/17 40/6 40/9 48/20 51/8
**although [2]** 31/15 34/8
**always [8]** 5/8 8/12 9/22 10/18 13/19 31/22 48/16 51/4
**am [102]**
**amended [1]** 55/20
**Amendment [3]** 35/15 35/22 36/4
**amendments [1]** 48/3
**AMERICA [1]** 1/3
**among [1]** 36/11
**amount [3]** 9/22 14/2 31/9
**analysis [1]** 55/5
**another [6]** 2/8 2/20 3/14 21/24 39/10 52/9
**answer [4]** 9/15 9/21 27/14 38/3
**answers [1]** 37/12
**anticipate [2]** 33/24 34/3
**any [53]** 2/9 3/22 4/4 5/17 6/12 7/2 9/25 11/8 12/19 13/1 16/10 19/11 20/11 20/18 23/3 25/23 27/12 28/19 28/22 29/15 29/16 34/6 36/19 37/4 41/13 42/12 42/19 42/24 42/24 43/10 44/13 44/21 46/19 48/3 48/5 48/8 48/17 48/18 48/21 49/4 49/5 49/21 49/25 50/24 51/4 51/7 51/9 51/15 51/19 52/16 52/18 54/5 55/11
**anybody [1]** 34/15
**anymore [1]** 6/3
**anyone [8]** 30/25 49/9 50/23 51/14 51/15 52/3 53/7 53/12
**anything [17]** 4/3 6/9 8/17 10/22 10/25 16/12 22/5 24/21 29/19 30/5 37/7 43/4 43/9 47/14 54/4 54/15 55/24
**anyway [2]** 6/14 8/3
**anywhere [1]** 50/10
**apologize [2]** 13/10 41/10
**apparently [1]** 4/7
**appear [3]** 7/23 51/16 53/3
**appearance [1]** 29/21
**APPEARANCES [1]** 1/11
**appeared [1]** 12/17
**appears [2]** 10/15 11/6
**applies [1]** 48/13
**apply [1]** 50/8
**appreciate [8]** 2/19 24/10 28/5 29/20 37/16 38/21 40/10 43/14
**approach [2]** 25/8 43/23
**appropriate [1]** 30/9
**are [115]**
**area [1]** 36/1
**aren't [1]** 11/23
**arguments [2]** 20/12 23/9
**around [6]** 7/16 8/9 9/11 16/20 20/7 36/5
**arrangements [2]** 32/25 47/23
**arriving [1]** 32/20
**articulation [1]** 26/3
**as [64]**
**ascertain [1]** 37/2
**aside [2]** 19/10 25/25
**ask [15]** 10/23 10/24 10/25 16/13 16/16 19/4 24/24 27/13 27/18 28/2 28/3 30/19 36/10 37/9 55/6
**asked [9]** 7/20 8/20 15/3 16/11 20/25 30/12 38/21 45/3 54/23
**asking [8]** 17/22 17/25 19/7 20/1 20/7 27/17 30/24 39/13
**asks [1]** 15/6
**assertions [1]** 12/20
**assist [5]** 14/3 23/23 32/17 33/7 33/18
**assistance [3]** 24/21 34/18 35/23

**A**

**assistants [1]** 25/12
**assume [1]** 29/9
**assuming [2]** 20/3 33/6
**assumption [2]** 42/6 42/14
**assured [1]** 10/1
**attached [1]** 48/15
**attachment [4]** 48/15 48/20 49/22 51/9
**attorney [11]** 3/8 11/25 12/2 25/6 30/9 30/10 37/12 37/13 38/1 42/20 47/6
**attorneys [2]** 15/1 23/24
**atypical [1]** 24/2
**availability [15]** 8/9 9/11 10/25 16/19 20/25 25/25 26/4 26/5 26/13 27/3 28/13 29/5 29/16 33/1 46/4
**available [16]** 2/16 2/19 4/12 6/20 8/22 9/16 15/3 15/8 17/18 18/13 23/16 30/7 39/2 42/17 45/23 46/20
**Ave [1]** 1/13
**Avenue [1]** 1/23
**avoid [2]** 28/22 36/12
**avoiding [1]** 37/17
**awaiting [1]** 10/2
**aware [2]** 10/13 41/11
**away [4]** 3/18 5/1 5/6 43/25

**B**

**back [18]** 5/19 9/5 9/5 12/7 13/2 16/10 27/8 27/23 36/13 40/9 44/9 44/23 45/13 47/7 49/15 52/8 53/7 53/24
**bag [1]** 55/3
**bailiwick [1]** 6/25
**balance [1]** 2/12
**bank [1]** 14/22
**Bankruptcy [1]** 1/23
**based [7]** 5/16 9/18 26/13 30/3 33/4 49/17 55/17
**basic [1]** 42/24
**basis [4]** 15/22 18/21 19/3 35/5
**batch [1]** 49/8
**be [201]**
**because [48]** 3/14 3/21 4/20 4/24 5/7 6/11 7/25 8/3 8/14 9/10 10/2 10/14 11/16 12/1 13/23 16/18 17/8 18/11 18/12 18/23 19/9 19/24 20/14 22/20 23/15 24/17 25/14 33/7 34/5 35/20 35/23 37/16 38/8 38/24 39/6 40/16 41/16 41/19 42/7 42/15 43/5 43/19 47/15 48/24 51/16 52/4 54/13 55/6
**been [29]** 3/23 3/24 4/7 4/8 4/15 6/8 6/13 9/6 12/22 14/5 17/8 20/14 20/15 23/24 24/14 26/6 26/6 26/24 35/2 39/7 40/10 40/11 40/14 40/19 40/21 43/22 45/15 46/4 55/2
**before [17]** 1/9 2/3 3/13 10/16 11/19 16/7 17/19 22/4 28/18 29/6 31/11 42/15 43/6 43/22 44/23 54/15 55/24
**begins [2]** 3/7 4/10
**being [11]** 3/25 5/7 5/11 11/7 19/24 21/18 25/9 34/5 35/10 38/25 54/14
**belabor [1]** 46/25
**believe [8]** 23/4 27/10 32/13 33/25 41/4 41/5 49/3 50/17
**believing [1]** 11/7
**bench [1]** 21/8
**beside [1]** 14/12
**best [4]** 45/20 46/7 46/10 54/1
**better [5]** 8/23 36/11 37/22 37/25 40/24
**between [12]** 6/17 28/10 29/1 29/13 30/20 33/8 33/11 40/3 40/12 45/17 46/12 53/18
**bewildering [2]** 24/6 24/8
**beyond [4]** 9/23 10/9 35/7 49/10

**big [2]** 4/8 54/14
**bigger [1]** 27/19
**billing [1]** 10/21
**bit [3]** 8/23 13/14 36/16
**board [1]** 36/15
**bono [20]** 9/22 9/24 9/25 10/10 10/10 10/12 10/19 12/22 15/5 15/22 16/11 16/24 17/7 17/15 18/21 19/3 19/11 19/15 29/11 35/5
**both [4]** 10/8 23/23 27/25 39/16
**bounce [2]** 29/22 35/24
**breadth [1]** 13/17
**break [1]** 3/18
**Breyer [4]** 11/19 24/6 24/11 24/25
**Breyer's [1]** 25/14
**briefing [2]** 44/2 44/4
**briefly [1]** 21/13
**bring [1]** 5/12
**broad [1]** 49/12
**broadcasting [1]** 32/8
**broadly [1]** 36/20
**BRODIE [1]** 1/15
**broke [1]** 7/13
**Brooklyn [1]** 1/21
**brought [1]** 34/5
**BROWN [1]** 1/15
**budget [2]** 14/6 29/11
**bulk [1]** 24/3
**burden [1]** 6/14
**business [3]** 7/4 8/7 8/8
**busy [1]** 17/8

**C**

**calendar [8]** 3/8 5/5 6/8 7/15 8/22 9/21 11/16 16/21
**California [1]** 3/14
**call [6]** 15/9 21/5 22/15 24/11 25/3 34/1
**calling [1]** 34/3
**came [2]** 49/8 52/8
**can [66]**
**can't [11]** 9/13 15/17 16/5 16/21 19/10 19/19 32/11 35/24 52/17 52/19 55/14
**cannot [2]** 49/5 50/23
**capacity [1]** 41/15
**case [96]**
**cases [7]** 7/7 15/4 15/5 16/11 23/14 26/21 39/16
**catch [4]** 7/7 7/8 7/17 8/16
**catching [1]** 8/17
**categories [1]** 48/25
**category [2]** 48/24 49/1
**CATHERINE [1]** 1/12
**cause [1]** 42/11
**cell [3]** 11/4 13/25 35/8
**cellular [4]** 13/18 14/11 30/1 34/21
**certain [2]** 9/4 9/22
**certainly [17]** 4/1 4/17 5/11 5/14 5/25 6/14 6/16 8/11 15/7 16/4 16/5 18/25 19/10 24/17 27/18 28/2 28/3
**certainty [4]** 20/9 20/20 21/1 21/2
**certify [1]** 57/3
**Chainalysis [5]** 48/2 48/14 49/7 49/19 53/4
**chance [7]** 5/11 7/16 8/15 8/16 17/8 18/12 43/12
**change [4]** 4/1 5/8 46/18 51/5
**changed [3]** 7/17 22/5 54/3
**characterization [1]** 35/7
**charging [1]** 25/9
**check [2]** 20/24 37/5
**checking [1]** 2/7
**choice [2]** 12/8 38/24
**choose [1]** 23/8
**choosing [3]** 24/8 25/2 25/4
**Christmas [1]** 28/18
**CHRISTOPHER [1]** 1/15
**CipherTrace [8]** 49/19 49/21 50/13

50/13 50/23 51/13 52/20 54/9
**circulated [1]** 55/3
**circulating [1]** 50/10
**circumstances [3]** 7/24 20/18 38/23
**City [13]** 3/2 3/5 3/6 13/15 14/8 25/2 27/14 29/16 30/14 30/20 31/11 32/19 45/11
**CJA [11]** 5/23 6/3 6/4 6/10 6/15 6/19 6/20 7/7 10/14 24/11 26/24
**claim [1]** 35/23
**clarification [1]** 30/19
**clarifies [3]** 48/11 48/16 51/3
**clarify [3]** 48/11 54/20 54/24
**clear [6]** 15/21 26/3 26/23 34/17 40/13 46/24
**clerk [1]** 49/15
**client [2]** 31/25 34/18
**clients [1]** 9/12
**closer [2]** 37/15 42/3
**closing [3]** 23/8 23/23 24/2
**cocounsel [1]** 24/16
**collect [1]** 25/14
**COLUMBIA [1]** 1/1
**come [12]** 3/8 3/18 11/12 15/2 17/15 31/12 35/4 36/13 44/6 53/7 53/24 55/22
**comfortable [2]** 8/21 31/23
**coming [6]** 8/18 10/2 10/5 12/13 22/6 47/23
**commence [1]** 2/3
**commingling [1]** 12/18
**commit [2]** 3/25 21/16
**commitments [1]** 4/14
**committed [2]** 6/9 26/22
**committing [1]** 21/17
**compensation [2]** 6/22 6/23
**compete [2]** 52/22 54/13
**complete [2]** 7/10 21/2
**completely [3]** 28/24 32/2 32/3
**compressed [1]** 33/16
**computer [2]** 40/17 49/15
**computers [1]** 49/25
**conceivably [1]** 2/18
**concern [8]** 7/5 8/19 12/8 31/14 31/22 43/5 50/2 52/5
**concerned [2]** 8/17 20/6
**concerning [1]** 26/20
**concerns [7]** 9/4 28/16 43/15 43/15 48/3 52/25 54/9
**conclude [1]** 46/13
**concluded [1]** 56/4
**concludes [3]** 45/18 46/5 46/9
**conclusions [1]** 27/9
**condensed [1]** 31/24
**conditions [3]** 49/23 52/6 52/10
**confer [2]** 20/22 39/24
**CONFERENCE [1]** 1/9
**confident [1]** 8/23
**conflict [1]** 2/14
**confused [1]** 3/3
**connected [1]** 13/4
**connection [2]** 48/21 51/10
**consider [2]** 20/11 38/5
**considerations [1]** 41/23
**consistent [2]** 12/14 46/13
**constitutes [1]** 57/4
**Constitution [1]** 1/23
**consult [2]** 21/20 29/24
**consultant [1]** 29/24
**consultation [1]** 19/14
**consulted [1]** 53/3
**contempt [1]** 21/3
**continuance [2]** 4/4 46/9
**continuances [1]** 20/2
**continue [2]** 4/25 46/6
**continued [1]** 4/7
**contrary [1]** 4/6
**control [3]** 22/15 44/21 50/19
**conversation [2]** 12/24 24/7
**conversations [1]** 41/1
**cooperating [3]** 34/3 36/3 37/1

**C**

copy [1]  50/9
correct [4]  34/24 39/21 50/20 57/4
correctly [4]  17/6 17/14 17/20 18/16
could [34]  3/18 3/21 4/24 5/8 5/12 10/1 10/1 11/12 11/17 12/18 15/14 16/4 16/25 17/15 18/5 19/12 23/11 24/11 26/16 27/18 30/8 31/7 31/9 32/5 32/11 33/14 34/4 42/2 43/20 44/22 51/12 53/16 53/21 55/16
counsel [38]  3/11 3/11 5/22 6/18 6/21 7/8 7/17 11/2 11/3 11/5 11/20 11/24 13/23 14/1 14/2 14/3 14/12 15/17 24/14 24/21 26/8 26/10 27/16 28/3 29/22 30/23 31/24 32/14 33/11 33/20 35/23 36/21 39/17 46/5 48/2 49/19 49/19 51/16
course [3]  15/17 17/7 27/5
court [48]  1/1 1/22 1/22 4/2 4/10 5/21 6/12 7/20 8/13 8/24 9/3 11/17 11/19 11/21 17/22 19/25 20/2 20/21 24/1 31/23 32/9 33/20 36/17 37/11 37/21 40/18 41/17 44/10 44/11 44/16 45/18 46/5 46/8 48/16 49/17 50/14 51/3 52/1 52/3 53/15 54/3 54/21 54/22 55/16 55/21 56/1 57/3 57/13
Court's [2]  48/4 50/18
courthouse [1]  41/21
courtroom [4]  13/4 16/1 19/13 21/23
Courts [1]  1/23
cover [1]  6/24
covered [2]  5/23 5/24
covering [1]  6/23
craft [1]  14/13
crafting [1]  23/8
criminal [4]  1/3 24/18 29/21 32/8
critical [3]  21/18 21/22 46/20
cross [10]  14/4 14/13 23/10 27/11 33/8 33/9 33/14 33/15 33/19 36/9
cross-examination [4]  14/4 14/13 23/10 36/9
current [2]  40/23 46/4
currently [1]  46/16
custodian [1]  14/22
cut [1]  16/7

**D**

daily [1]  32/14
dancing [1]  20/7
dark [2]  27/24 27/25
data [2]  13/16 13/18
date [18]  25/24 26/12 29/13 29/14 38/17 38/20 43/6 43/10 44/9 45/9 46/15 46/24 47/2 49/20 53/11 55/15 55/17 55/22
Dated [1]  57/10
dates [3]  6/11 47/18 55/18
Daubert [1]  27/8
day [25]  2/5 3/17 3/18 5/15 11/9 11/20 14/10 16/6 19/12 22/13 27/5 27/11 29/6 30/24 32/21 32/23 33/9 33/15 40/18 43/6 44/23 47/15 47/19 50/8 57/10
days [15]  6/9 11/11 11/14 11/20 15/11 21/18 21/21 22/14 27/24 30/7 39/3 39/8 39/18 42/20 42/21
DC [8]  1/5 1/14 1/17 1/24 13/20 21/20 30/20 32/20
de [2]  33/13 33/25
deal [5]  14/25 31/16 34/19 34/20 35/1
deals [1]  54/10
debt [1]  12/16
decades [1]  11/24
December [21]  4/11 4/16 4/20 4/22

5/2 5/6 8/18 8/25 9/4 9/10 9/17 10/12 16/22 18/6 22/2 22/3 28/10 28/12 28/15 28/21 28/25
December 4th [2]  5/2 5/6
decide [5]  29/1 29/13 42/2 44/2 47/18
decided [1]  38/17
decides [1]  35/23
decision [11]  6/2 6/19 7/3 9/18 21/2 28/9 29/14 32/1 42/6 45/9 45/11
decisions [2]  20/10 20/20
dedicated [1]  28/1
deep [1]  12/16
deeply [2]  7/6 19/16
defendant [9]  1/7 1/18 6/18 6/21 7/20 30/6 45/20 46/8 46/11
defendant's [1]  12/8
defense [53]  3/11 6/5 6/18 6/21 6/24 7/8 10/7 10/23 11/2 11/4 12/12 12/15 12/21 12/25 13/22 14/3 14/15 16/13 16/15 20/24 22/1 23/3 25/23 26/8 26/18 29/5 29/8 29/22 32/14 33/11 33/20 34/7 34/12 35/17 35/25 36/20 38/1 45/16 45/25 46/2 46/5 46/14 49/6 50/18 50/19 50/24 51/15 51/19 51/21 53/1 53/2 55/9 55/12
defense's [1]  12/12
defer [2]  5/14 17/1
definitely [1]  21/17
definitive [1]  28/24
deliberating [1]  2/11
demands [1]  19/20
demeaning [1]  36/19
deny [1]  21/14
DEPARTMENT [1]  1/13
depend [1]  5/21
dependent [1]  5/25
depending [2]  19/20 19/20
desire [2]  18/14 32/2
desires [1]  25/10
details [1]  40/23
determine [3]  27/12 27/16 42/1
devices [1]  34/16
did [15]  4/19 13/12 15/12 16/7 18/19 24/3 24/14 38/20 41/1 42/19 42/20 42/23 50/18 54/21 54/23
didn't [7]  6/3 19/2 22/5 34/15 40/17 43/8 43/10
difference [2]  3/3 53/18
different [4]  9/21 12/11 26/5 40/12
difficult [2]  6/8 28/16
difficulties [1]  28/23
difficulty [1]  6/10
dime [1]  4/1
direct [4]  27/11 31/4 33/15 47/12
directed [3]  11/17 19/23 20/13
directly [2]  31/15 45/9
disadvantage [1]  36/4
disagreeing [1]  49/9
disagrees [1]  36/14
disclose [6]  48/18 51/7 53/11 53/14 53/16 53/21
disclosed [2]  50/19 53/11
disclosure [2]  50/13 53/18
discrete [1]  23/6
discuss [5]  22/6 51/14 52/14 53/17 53/22
discussed [5]  15/20 22/6 22/7 54/4 54/8
discussing [2]  51/17 52/2
discussion [2]  45/2 51/13
discussions [2]  20/15 20/16
disruption [1]  43/20
DISTRICT [4]  1/1 1/1 1/10 1/23
do [79]
docket [9]  48/12 48/16 48/19 49/2 49/10 53/13 54/20 54/23 55/1
docketed [1]  55/7
does [5]  16/15 28/9 46/9 50/2

51/16
doesn't [14]  12/7 15/10 22/20 22/21 26/7 27/3 28/19 29/18 34/7 35/15 36/2 50/7 50/8 54/9
doing [8]  8/3 12/13 12/21 20/2 23/13 26/22 28/24 30/5
DOJ [2]  1/15 13/20
DOJ-USAO [1]  1/15
don't [70]
donations [2]  12/17 12/18
done [8]  4/25 11/23 20/1 20/11 28/21 30/21 44/2 45/3
double [1]  37/5
doubt [2]  25/6 47/8
down [2]  18/9 31/12
downloaded [3]  49/25 50/9 50/9
drafted [1]  52/24
drive [5]  40/16 40/18 41/4 42/25 43/25
due [4]  38/18 55/15 55/16 55/18
during [9]  13/22 16/2 19/14 22/13 28/4 29/16 30/22 39/3 43/24

**E**

each [2]  48/13 48/14
earlier [1]  28/11
early [3]  2/18 30/12 47/24
earn [1]  25/20
earning [3]  8/6 26/17 26/21
easier [1]  42/4
easiest [1]  52/11
easy [1]  9/20
effective [1]  35/17
effectively [4]  14/1 24/15 25/12 39/8
efforts [1]  2/13
eight [1]  42/21
either [7]  9/10 10/22 11/24 23/12 29/17 31/18 46/21
EKELAND [25]  1/18 1/19 20/9 20/22 21/11 23/25 31/11 33/5 34/25 37/10 37/11 38/5 39/24 41/22 42/3 43/16 44/11 44/15 47/12 47/12 50/5 52/4 53/6 53/14 53/24
else [17]  4/24 4/25 8/5 8/6 10/25 14/23 16/12 30/25 34/15 36/2 41/19 50/23 51/14 51/15 52/3 54/15 55/24
else's [1]  8/1
email [3]  27/16 30/8 54/22
emailed [1]  54/21
employee [1]  49/21
employees [1]  50/13
encourage [3]  43/16 43/18 43/21
end [8]  4/22 5/1 16/24 47/15 47/19 50/8 51/12 53/9
enormously [1]  34/4
enough [3]  7/19 20/12 49/14
ensure [1]  48/8
enter [2]  38/9 47/3
entered [2]  48/7 48/12
entire [3]  17/18 18/22 35/19
entirety [4]  3/23 11/6 18/17 26/10
entitled [1]  57/5
error [1]  28/19
especially [2]  8/12 23/24
essentially [2]  36/18 54/7
estimating [1]  3/12
even [7]  22/13 26/17 31/10 44/8 44/25 45/1 47/13
evening [2]  31/7 56/3
events [1]  7/17
every [15]  3/17 4/15 11/20 16/6 19/12 19/13 22/13 25/8 32/21 35/13 39/14 40/18 42/15 48/13 48/15
everybody [2]  45/5 52/12
everyone [2]  8/1 47/17
everything [7]  4/24 4/25 17/9 25/20 28/18 43/23 44/20
evicted [1]  12/16

## E

evidence [2]   14/19 20/17
ex [1]   12/24
exact [2]   26/2 37/15
exactly [1]   38/1
examination [4]   14/4 14/13 23/10
  36/9
example [3]   16/22 42/2 53/14
exception [1]   45/18
exclude [2]   45/16 46/12
expect [3]   5/16 10/20 47/9
expected [2]   7/15 10/10
expecting [2]   4/25 12/22
expedient [1]   38/2
expenses [3]   6/23 6/24 18/8
experience [5]   11/4 33/5 34/19
  35/24 36/1
experienced [1]   36/21
expert [13]   7/24 29/19 34/2 34/14
  35/8 35/11 36/19 36/22 46/2 51/24
  52/9 54/19 55/15
expertise [2]   34/17 39/8
experts [16]   12/12 12/21 20/17
  20/24 38/24 44/11 44/13 44/13
  51/19 51/22 52/14 52/17 52/18
  52/25 53/1 54/10
explain [1]   36/14
explicit [1]   50/22
explicitly [1]   51/13
expressed [2]   18/14 48/2
extent [8]   16/18 33/12 35/10 37/1
  44/6 51/21 53/17 55/5

## F

facilitate [1]   33/20
facilities [1]   42/16
fact [8]   16/8 24/13 24/19 29/20
  36/9 38/11 45/13 46/1
facts [1]   39/7
fair [8]   7/19 18/10 20/5 30/6
  31/9 43/12 43/15 49/14
fairly [4]   23/6 36/23 49/11 54/12
fall [1]   5/10
fallen [1]   9/6
falls [1]   9/21
familiar [1]   13/21
family [2]   4/17 15/9
fantastic [1]   12/2
far [4]   2/14 12/16 35/15 36/16
February [36]   8/20 9/10 9/17 9/20
  10/21 16/9 17/7 17/16 18/3 18/11
  18/17 18/22 19/3 19/8 19/15 20/6
  21/16 22/7 27/3 28/10 29/2 29/14
  35/4 38/12 38/15 38/22 39/1 39/6
  39/22 40/3 41/18 44/9 45/13 45/17
  46/6 46/12
February 12 [1]   46/12
February 12th [6]   29/2 38/12
  38/15 44/9 45/13 46/6
February 20 [1]   40/3
fed [1]   19/24
federal [4]   11/19 24/1 32/9 40/25
feel [5]   8/14 8/17 8/21 11/16
  31/25
few [1]   39/2
field [1]   34/20
figure [3]   7/21 10/14 53/8
file [4]   37/11 47/13 54/23 55/19
filed [1]   54/19
files [2]   40/17 42/24
filing [1]   54/18
financially [1]   35/20
find [3]   22/21 35/3 38/20
finding [1]   36/5
fine [4]   2/25 20/23 41/9 53/23
finish [1]   4/16
finishing [1]   7/15
fired [1]   30/16
first [7]   4/23 5/1 5/5 24/20
  40/14 50/25 54/21
Fischbach [60]

Fischbach's [5]   25/25 26/2 29/5
  29/10 37/14
five [3]   11/11 11/13 11/20
flexibility [1]   15/13
flexible [2]   11/10 26/1
flight [6]   30/20 30/24 31/4 31/5
  31/7 32/1
flights [5]   31/6 31/7 32/18 32/21
  32/23
Floor [1]   1/20
fly [6]   5/18 5/19 8/4 11/8 15/14
  39/13
flying [1]   15/14
focus [1]   23/6
focused [2]   23/7 39/16
focusing [1]   36/24
folks [1]   41/16
follow [1]   11/3
follow-up [1]   11/3
following [4]   26/4 27/6 27/6 33/9
follows [1]   40/24
foregoing [2]   8/5 57/4
form [1]   24/12
forth [1]   14/13
forward [3]   6/13 12/9 53/1
four [4]   2/6 15/11 26/12 32/22
Francisco [7]   6/16 10/6 10/10
  11/19 16/8 24/3 27/24
frankly [9]   8/22 9/5 10/3 19/22
  20/13 29/10 31/10 45/4 55/21
free [1]   41/20
fresh [1]   10/19
Friday [7]   2/5 11/12 27/15 27/25
  28/18 29/17 39/14
Fridays [4]   27/13 27/17 27/19
  28/6
friends [1]   24/6
front [1]   3/24
frozen [1]   12/4
full [1]   46/14
fully [1]   10/20
fund [2]   6/5 10/7
funding [5]   6/4 7/18 9/9 12/9
  16/17
fundraising [2]   12/13 12/14
funds [17]   5/25 6/4 6/15 6/20 7/7
  10/2 10/3 10/5 10/6 10/6 12/1
  17/10 17/16 18/2 18/6 26/21 26/24
further [6]   28/22 48/16 49/17
  49/18 51/3 53/9

## G

gathered [1]   36/16
general [1]   25/8
generally [1]   21/19
get [29]   2/21 3/2 5/18 7/2 8/6
  10/12 12/7 12/22 17/1 20/19 22/16
  28/16 28/21 29/22 34/22 36/5
  37/15 37/22 38/2 38/4 38/6 41/19
  43/11 43/11 43/20 43/24 45/1
  47/12 50/11
gets [1]   4/17
getting [6]   12/17 13/2 16/25
  18/24 19/24 42/5
give [6]   2/6 9/20 14/15 20/8
  28/19 39/14
given [7]   23/5 26/10 34/15 42/14
  45/25 46/1 46/3
gives [1]   2/5
giving [3]   13/17 29/25 37/15
go [17]   9/13 15/11 22/12 25/25
  29/7 29/9 30/11 31/13 35/15 38/24
  39/6 39/10 39/22 39/22 40/5 40/22
  51/24
goal [2]   28/22 47/14
goes [3]   13/25 35/6 40/9
going [81]
gone [1]   12/15
good [5]   31/16 35/1 45/5 54/8
  56/3
goodness [1]   15/25
got [13]   3/2 3/14 4/23 5/1 5/5

8/16 9/12 10/2 10/16 11/15 12/1
  16/7 16/7
gotten [1]   37/4
government [30]   10/23 11/9 12/7
  12/19 16/16 18/10 20/5 26/1 26/7
  26/20 26/23 28/9 28/14 28/15 32/6
  32/13 32/16 33/19 33/25 34/2
  37/20 44/10 46/23 49/20 50/10
  53/11 54/22 55/4 55/11 55/13
government doesn't [1]   12/7
government's [7]   3/10 11/4 12/10
  13/22 15/19 31/20 54/18
great [5]   14/25 30/17 34/19 34/20
  48/1
greater [2]   7/5 28/11
guess [13]   3/16 13/20 15/10 15/12
  22/9 25/1 28/8 30/1 31/2 31/5
  32/4 37/8 54/25

## H

had [33]   2/3 4/14 5/16 7/16 8/15
  8/16 8/21 10/14 15/13 17/7 18/12
  20/12 24/13 24/21 26/6 26/8 26/8
  26/22 37/5 37/16 37/21 38/21
  39/23 40/16 40/18 41/1 43/6 45/2
  47/21 48/10 48/23 52/21 53/1
hall [2]   21/6 23/13
hand [1]   49/15
handle [1]   53/8
happen [3]   14/17 23/15 25/11
happened [6]   7/21 8/15 13/11 17/9
  43/23 55/17
happening [1]   28/18
happens [3]   4/9 31/16 41/21
happy [10]   11/10 11/18 20/8 22/15
  24/7 26/1 31/1 33/19 45/3 45/7
hard [16]   2/7 2/10 11/7 15/13
  23/4 27/10 36/5 36/25 37/2 39/15
  40/14 40/15 40/16 41/4 42/24
  43/25
has [41]   4/7 5/9 6/5 6/8 12/1
  12/3 17/8 17/13 18/14 22/4 22/5
  25/7 28/15 29/20 30/9 30/12 33/25
  34/17 35/12 36/1 40/14 40/15
  41/15 43/22 44/10 44/11 45/25
  46/24 47/17 48/2 48/13 48/16
  48/20 49/8 51/3 51/8 51/21 52/12
  54/2 54/3 55/2
hasn't [1]   47/14
HASSARD [4]   1/19 42/4 43/16 50/9
hate [2]   5/10 23/21
have [143]
haven't [11]   6/13 7/16 8/15 8/16
  9/25 12/22 17/7 18/12 20/14 26/2
  45/8
having [8]   17/21 19/17 20/1 20/15
  33/17 34/10 36/2 54/11
he [99]
he's [1]   45/13
head [1]   36/5
hear [15]   2/24 2/25 13/7 13/14
  19/2 21/19 36/8 37/9 39/10 45/1
  45/9 46/21 47/6 47/10 47/11
heard [7]   4/3 18/23 18/23 26/3
  26/16 39/9 47/14
hearing [1]   53/20
help [6]   3/9 3/21 14/12 14/13
  25/11 36/11
helped [1]   24/1
helpful [5]   13/14 16/18 17/1
  22/17 34/4
helping [1]   23/7
her [10]   5/10 5/12 22/16 33/17
  33/17 34/8 38/6 47/24 49/22 51/14
here [46]   2/6 3/18 4/11 5/13 5/15
  5/19 6/13 7/2 7/9 7/21 8/7 11/7
  12/20 13/3 14/18 15/14 15/24 17/3
  18/3 18/6 18/21 18/25 19/2 19/18
  21/18 23/2 23/13 23/15 23/18
  26/16 27/7 27/14 28/22 30/12 31/1
  31/8 32/7 32/11 34/10 37/17 38/8
  38/10 39/4 40/13 49/6 50/22

**H**

herein [1]   49/23
hesitant [1]   5/7
hesitation [1]   33/16
heuristics [1]   55/6
highly [2]   11/4 34/11
him [49]   3/9 6/6 12/1 13/2 16/21 17/8 17/10 17/14 17/17 17/19 17/20 18/2 18/6 18/7 18/23 18/23 19/2 19/4 21/18 22/1 22/6 24/2 24/7 24/11 25/8 25/9 25/11 27/18 30/13 30/16 31/12 33/7 34/1 34/10 35/2 35/2 35/7 35/21 36/2 37/7 39/9 39/13 39/15 39/17 39/22 41/13 47/10 47/11 54/8
himself [1]   46/22
his [34]   2/16 16/20 18/8 21/22 21/25 21/25 22/3 22/4 22/15 23/3 23/6 24/2 24/12 25/12 26/4 26/5 29/19 29/22 30/3 30/18 32/16 34/12 35/3 35/6 36/4 36/11 36/19 37/15 38/11 38/13 39/8 39/18 45/14 45/24
hold [2]   19/10 21/3
holding [2]   6/11 33/18
home [5]   15/11 15/14 22/19 23/14 23/17
homework [1]   20/1
honest [5]   3/2 8/19 8/24 9/2 47/8
honestly [5]   10/16 13/20 15/19 17/11 19/10
Honor [30]   2/23 9/19 12/6 16/14 21/4 21/9 21/12 22/8 25/22 30/15 32/13 33/22 36/25 37/20 37/22 38/16 40/4 46/23 47/20 47/21 49/3 50/3 50/21 51/11 54/16 54/24 55/2 55/14 55/23 55/25
HONORABLE [1]   1/9
hope [4]   24/17 31/9 44/5 47/3
hoped [1]   20/23
hopeful [2]   4/24 18/1
hopefully [3]   43/24 46/2 47/24
hoping [2]   3/13 23/17
hotel [1]   8/4
hour [3]   25/9 31/4 31/5
hours [3]   39/14 40/18 47/7
how [18]   2/7 7/22 10/8 11/15 12/9 15/1 15/17 16/6 20/10 26/21 31/6 34/23 39/6 39/9 43/11 47/5 53/8 55/21
humbled [1]   13/20
hurdles [1]   28/23

**I**

I'd [8]   11/18 18/22 23/14 24/17 31/9 35/14 39/21 50/21
I'm [9]   5/3 7/12 9/1 13/2 19/6 24/5 25/17 53/19 53/21
ideal [1]   18/4
ideas [1]   35/24
identified [1]   45/6
imagine [3]   14/10 23/11 41/24
impact [1]   27/3
important [1]   7/22
impossible [2]   8/25 9/3
impression [1]   5/14
improper [1]   52/2
inadvertently [1]   50/11
incarcerated [1]   17/24
include [1]   53/6
includes [1]   34/8
including [3]   27/11 27/24 28/6
inconsistent [1]   23/2
incredulity [1]   36/17
indicated [1]   47/21
indicating [1]   31/3
individual [4]   48/13 48/15 48/17 51/4
ineffective [2]   24/20 35/22
information [21]   12/13 28/8 48/14 48/18 48/18 48/21 48/24 49/4 49/4

49/7 49/11 49/12 51/5 51/6 51/7 51/9 51/17 53/12 53/17 53/22 54/3
informed [1]   54/22
input [2]   2/21 38/7
inquire [1]   30/13
inquiry [1]   12/10
insert [3]   49/20 53/11 53/13
instead [1]   15/14
instructing [1]   20/2
instrumental [1]   40/11
insulted [1]   23/23
intended [1]   49/12
intention [1]   48/4
interest [9]   18/10 45/17 45/19 45/20 46/5 46/7 46/9 46/10 46/10
interests [3]   45/19 46/7 53/3
interfere [2]   21/23 30/5
interferes [1]   35/16
interpreter [1]   14/3
interrupting [1]   41/11
invaluable [1]   35/3
involve [1]   43/20
involved [4]   24/8 25/2 25/3 39/18
IOLTA [1]   12/18
is [314]
ish [1]   15/2
isn't [3]   13/20 21/22 23/16
issue [15]   4/13 6/17 6/25 7/9 20/14 22/9 28/19 32/24 37/18 38/7 41/4 46/25 47/15 49/6 53/25
issues [16]   9/9 16/17 29/10 29/24 34/14 35/11 37/17 37/18 40/13 40/19 40/21 41/8 43/11 44/5 48/8 54/6
issuing [1]   47/22
it [186]
it got [1]   16/7
its [2]   14/19 46/24
itself [3]   12/8 26/21 51/18

**J**

jail [13]   38/11 40/7 40/13 40/22 40/24 41/2 41/14 41/15 41/20 42/3 42/7 43/18 44/20
jails [2]   40/15 40/25
January [1]   17/25
John [1]   34/2
joke [1]   24/19
judge [17]   1/10 11/19 20/4 22/16 23/21 24/6 24/11 24/24 25/3 25/5 25/14 30/10 30/12 37/22 37/25 38/6 45/10
judge's [1]   38/2
jurisdiction [1]   42/2
juror [1]   28/12
jurors [1]   4/21
jury [10]   2/11 23/8 24/3 24/9 24/14 24/22 25/2 25/4 28/16 29/24
just [86]
justice [4]   1/13 45/17 45/19 46/6
justify [1]   25/9

**K**

Kansas [18]   3/1 3/2 3/5 3/6 11/3 11/11 13/15 14/8 14/18 25/2 27/14 29/16 30/14 30/20 31/11 32/19 37/22 45/10
kept [2]   40/15 43/10
kind [3]   13/3 33/20 55/3
knew [1]   34/24
know [83]
knowledge [3]   34/19 35/6 35/12
known [1]   9/3
knows [1]   31/23

**L**

language [1]   52/22
Largely [1]   13/18
last [13]   5/17 5/22 7/25 9/6 15/2 16/19 17/25 24/1 42/10 44/21 49/8 54/10 54/18

late [4]   2/17 2/18 10/17 47/9
later [3]   4/20 5/1 56/2
latest [1]   44/3
Laurent [1]   53/2
LAW [1]   1/19
lead [1]   47/1
learn [1]   46/19
learned [1]   35/1
least [13]   4/16 7/6 9/24 11/15 16/6 18/7 19/8 22/23 26/7 31/19 33/4 41/22 46/16
leave [5]   3/5 51/16 52/1 52/3 53/15
leaving [2]   32/19 38/23
led [1]   19/24
leeway [1]   48/7
left [1]   10/12
legally [2]   24/15 24/17
less [2]   2/5 11/1
let [10]   8/21 37/5 37/10 37/13 38/8 41/22 48/9 52/16 54/5 54/25
let's [2]   3/5 31/13
letting [1]   37/11
liability [1]   24/18
life [1]   42/4
light [4]   7/22 18/10 45/12 55/19
like [36]   3/22 10/4 10/23 11/16 15/6 15/7 15/10 16/9 17/18 18/22 21/21 26/18 29/22 30/11 30/25 31/25 32/20 32/22 34/11 34/23 39/3 39/5 39/15 39/15 39/18 39/22 39/22 40/6 40/10 40/17 42/11 42/11 42/20 42/23 43/8 54/20
likely [2]   15/19 33/14
limited [2]   36/23 52/20
LINDSAY [3]   1/22 57/3 57/12
line [1]   12/7
listen [1]   34/4
literally [1]   8/15
litigation [1]   15/1
little [10]   3/2 5/20 8/17 8/23 13/14 23/4 24/5 36/16 36/16 50/8
live [1]   33/6
loathe [1]   6/11
located [1]   42/4
location [8]   13/16 13/18 14/11 30/1 40/23 42/10 49/23 49/24
locations [1]   40/12
logically [1]   19/12
long [6]   8/18 11/5 15/23 19/16 23/24 40/16
longer [1]   5/17
look [13]   14/7 15/10 16/24 17/10 20/17 20/18 20/19 31/1 31/1 48/6 53/7 54/5 55/16
looked [1]   54/2
looking [5]   7/14 27/23 32/18 32/22 44/12
looks [3]   3/22 32/20 32/22
loop [2]   5/21 9/6
lose [1]   13/12
lot [13]   8/14 11/23 12/21 19/18 20/7 22/10 29/20 30/1 40/19 40/21 41/1 41/16 42/16
love [2]   28/21 35/14
luck [1]   13/1

**M**

made [8]   6/2 6/19 20/1 44/15 45/8 45/15 46/4 46/24
mainly [1]   22/7
make [37]   2/22 5/10 7/3 9/18 9/24 10/16 12/19 15/7 16/15 19/15 20/10 20/20 21/2 28/9 28/15 29/14 31/18 31/23 32/9 32/10 32/25 37/17 38/10 40/12 41/11 41/25 42/4 42/6 44/7 44/9 44/14 44/22 45/11 47/16 49/1 50/7 50/11
makes [2]   15/5 38/5
making [6]   2/19 7/5 12/15 30/4 40/13 50/21
managed [1]   25/22

**M**

manner [1]  36/4
many [3]  32/21 43/22 43/22
March [10]  8/20 9/10 9/17 9/20
 19/3 19/8 19/15 21/17 22/8 35/4
marshal [2]  44/24 45/4
marshals [6]  40/11 41/5 41/12
 41/22 42/1 44/20
Mason [1]  36/18
material [5]  46/1 49/20 50/22
 51/18 53/10
materially [1]  26/5
materials [4]  51/15 51/22 51/23
 55/12
matter [6]  4/9 21/24 22/20 24/13
 46/6 57/5
may [24]  11/22 14/16 19/13 21/4
 21/24 22/14 28/25 29/21 32/10
 33/10 37/25 38/2 41/22 45/10
 46/18 48/18 48/20 51/6 51/9 51/14
 52/5 53/1 53/2 53/17
maybe [12]  18/7 18/24 19/2 19/4
 19/20 20/11 21/21 27/13 42/4
 48/25 51/2 52/17
Mazarin [2]  33/13 33/25
Mazars [3]  33/13 33/25 34/8
me [75]
mean [8]  5/13 6/17 7/19 17/16
 26/15 31/9 34/11 43/14
mention [3]  42/10 45/3 45/7
mere [1]  34/25
message [2]  30/16 37/4
MICHAEL [2]  1/19 34/2
might [13]  5/18 5/24 8/5 14/23
 15/13 18/1 22/19 24/20 35/12 36/8
 36/10 43/20 52/11
mine [2]  13/25 17/13
minute [4]  38/9 47/22 48/6 48/11
minutes [1]  21/4
missed [3]  5/3 5/3 7/12
Missouri [1]  2/20
mistaken [2]  23/20 23/22
mistranslation [1]  37/16
mixers [1]  34/6
mobile [1]  35/8
modifications [1]  50/18
moment [3]  8/13 19/13 25/13
Monday [4]  27/20 27/25 28/17
 47/25
money [4]  10/16 17/11 25/13 26/17
monitoring [1]  15/18
month [11]  4/15 11/5 15/23 19/3
 19/8 25/24 26/1 26/4 27/5 27/6
 27/6
month-long [2]  11/5 15/23
months [6]  6/15 20/15 20/16 20/16
 26/12 43/22
more [8]  8/23 11/2 13/14 19/12
 27/11 30/24 36/20 54/9
morning [3]  33/18 54/4 54/8
mortgage [1]  10/17
MOSS [1]  1/9
most [2]  40/24 55/12
motion [1]  55/19
move [7]  12/9 16/22 42/16 44/22
 44/22 44/23 46/15
moved [4]  41/19 42/25 43/6 43/20
moving [3]  4/8 40/11 45/1
Mr [23]  20/9 20/22 21/5 21/11
 23/25 31/11 33/5 34/25 37/10
 37/11 39/24 41/22 42/3 43/16
 44/11 44/15 47/12 47/12 50/5 52/4
 53/6 53/14 53/24
Mr. [83]
Mr. Ekeland [1]  38/5
Mr. Fischbach [59]
Mr. Fischbach's [5]  25/25 26/2
 29/5 29/10 37/14
Mr. Hassard [3]  42/4 43/16 50/9
Mr. J [1]  54/4
Mr. Laurent [1]  53/2

**Mr. Sterlingov [9]**  6/2 6/5 6/18
 17/24 18/14 36/3 36/21 38/10
 45/23
Mr. Sterlingov's [4]  34/16 35/21
 45/12 46/14
Ms. [18]  24/23 25/21 33/13 33/25
 34/8 37/19 47/24 49/21 50/23
 51/14 51/17 51/23 52/2 52/14
 52/25 54/2 54/19 55/5
Ms. Mazars [3]  33/13 33/25 34/8
Ms. Pelker [3]  24/23 25/21 37/19
Ms. Still [11]  47/24 49/21 50/23
 51/14 51/17 51/23 52/2 52/14
 52/25 54/2 55/5
Ms. Still's [1]  54/19
much [15]  5/8 10/8 11/17 15/5
 15/17 16/7 24/10 26/18 28/2 30/11
 32/24 41/15 43/18 47/1 55/21
murder [1]  14/9
must [1]  48/15
mutually [1]  50/1
my [50]  4/15 5/8 5/8 5/14 5/23
 6/25 7/4 7/5 7/14 8/4 8/7 8/8
 8/22 9/8 10/12 11/16 13/19 15/5
 15/9 16/24 21/13 23/25 25/7 27/8
 28/22 31/2 31/16 31/20 31/22
 31/25 33/4 33/15 36/5 37/5 38/18
 38/22 39/6 39/16 40/23 41/2 41/3
 42/1 42/24 43/5 45/8 47/14 49/15
 49/15 50/6 56/1
myself [2]  8/16 15/7

**N**

N.W [1]  1/16
nature [3]  13/16 23/5 34/16
near [1]  3/11
necessary [1]  26/17
necessities [1]  42/24
Neck [2]  40/15 40/19
need [34]  3/17 9/15 12/16 14/12
 14/20 14/23 15/10 17/3 19/4 20/9
 20/20 21/1 21/1 21/18 25/14 26/11
 27/13 28/4 28/8 28/9 29/15 30/3
 31/12 31/17 38/25 40/22 43/25
 44/4 45/11 46/25 47/16 47/17
 47/18 54/12
needed [6]  22/1 22/13 23/5 27/22
 29/17 30/14
needs [10]  19/14 21/19 27/19 36/8
 41/21 45/16 46/2 46/21 52/14 53/7
neither [1]  12/8
network [1]  34/6
neutral [1]  49/23
never [1]  30/21
new [8]  20/14 42/3 44/11 44/13
 44/13 48/5 49/12 55/6
next [5]  15/11 25/24 33/15 34/18
 47/7
nice [1]  2/23
night [1]  54/18
no [16]  1/4 4/9 4/20 4/25 6/3
 6/19 8/4 16/14 26/11 37/7 38/23
 44/11 52/21 54/16 55/8 55/25
nobody [2]  40/13 54/2
non [2]  24/21 52/22
non-compete [1]  52/22
non-counsel [1]  24/21
nonavailability [1]  26/14
noon [1]  47/13
Northern [2]  40/15 40/19
not [132]
note [3]  29/4 46/25 55/4
notes [1]  26/17
nothing [1]  14/8
notice [1]  37/11
noticed [1]  34/1
noting [1]  51/13
notion [2]  36/6 36/17
November [16]  2/5 2/8 2/9 2/18
 3/15 4/11 5/1 7/2 8/19 11/9 17/12
 22/6 28/12 28/21 28/25 30/12
November 27th [1]  4/11

**November 3rd [2]**  2/5 2/8
November 6th [1]  2/9
now [29]  3/12 5/23 6/7 7/16 8/12
 10/3 10/11 15/4 16/6 16/17 18/20
 20/8 20/9 22/20 23/18 26/6 26/11
 26/25 29/12 31/1 31/11 31/12
 31/13 40/3 43/17 43/19 44/25
 45/17 46/12
number [1]  34/6
NW [2]  1/13 1/23
NY [1]  1/21

**O**

objection [1]  55/8
objections [1]  25/23
obligations [1]  30/4
observe [1]  33/2
obtain [1]  6/4
obviously [9]  2/11 2/16 4/24
 17/17 23/1 24/15 34/19 43/22 54/4
occur [2]  15/16 33/9
October [26]  2/4 2/15 2/17 2/18
 3/7 7/1 11/9 16/23 17/12 22/12
 22/14 23/16 25/23 25/24 26/4
 26/12 27/6 29/2 29/13 30/11 38/21
 39/3 45/24 46/15 46/24 57/10
October 10th [9]  2/4 2/15 25/23
 25/24 26/4 26/12 27/6 29/2 46/24
off [14]  4/20 4/22 9/13 10/21
 16/7 21/7 21/24 22/5 22/6 23/15
 29/22 30/16 35/17 35/24
offer [1]  44/13
offered [1]  35/10
offering [1]  36/7
Official [3]  1/22 57/3 57/13
often [3]  11/24 25/11 31/6
oh [1]  20/19
okay [12]  2/24 20/3 21/7 21/15
 22/2 38/25 39/23 47/11 50/5 50/14
 50/16 52/4
old [1]  40/17
once [3]  3/2 17/25 28/1
one [25]  2/5 2/6 3/3 5/7 5/10
 5/11 6/7 8/4 9/14 9/19 11/2 11/8
 22/23 25/12 31/17 32/21 33/12
 38/11 39/8 39/18 41/10 43/6 48/10
 52/21 54/17
online [1]  32/18
only [13]  2/14 4/13 4/24 5/15 7/1
 8/7 8/14 10/1 16/18 33/7 33/15
 51/11 54/21
open [4]  6/12 40/17 51/16 52/8
opening [1]  23/23
opportunity [1]  39/23
order [29]  14/19 37/18 38/7 38/9
 47/3 47/15 47/22 47/22 48/5 48/6
 48/11 48/11 48/12 48/19 48/25
 49/5 49/10 50/17 51/6 51/8 52/12
 52/18 52/19 53/13 53/13 54/13
 55/1 55/10 55/11
ordered [1]  53/9
ordering [1]  32/14
original [5]  38/17 43/5 43/10
 48/12 52/21
other [46]  2/11 2/12 3/4 6/9 7/2
 9/14 9/15 9/25 14/8 15/4 16/11
 17/13 19/20 20/4 23/13 26/21 27/7
 28/7 29/18 29/25 36/11 39/17
 40/25 41/23 41/23 43/11 44/7
 48/18 48/21 49/5 49/21 49/25
 50/17 50/24 51/7 51/10 51/11
 51/15 51/19 51/21 51/22 51/24
 52/14 52/17 52/18 54/10
others [5]  5/14 34/20 45/1 52/5
 53/2
otherwise [3]  19/9 33/7 51/16
ought [1]  12/24
our [4]  5/1 28/14 31/3 51/11
out [31]  4/8 4/16 4/16 5/20 7/21
 8/3 8/4 8/9 8/16 8/18 9/6 11/8
 12/10 16/16 19/16 19/21 22/16
 22/18 22/21 23/12 26/22 26/24

**O**

out... **[9]** 31/7 33/21 35/19 37/22 38/6 45/10 48/8 53/8 55/3
outside **[2]** 6/25 22/15
outweigh **[2]** 45/20 46/7
outweighs **[1]** 46/10
over **[11]** 11/21 11/23 14/1 15/2 16/23 20/15 27/5 33/18 35/24 44/21 49/8
overnight **[2]** 47/10 47/11

**P**

p.m **[5]** 1/6 21/10 31/8 32/19 56/4
page **[1]** 32/22
paid **[16]** 3/24 6/13 7/3 8/7 10/11 12/22 12/22 15/7 16/25 18/21 18/24 22/25 25/9 25/16 25/17 26/24
pain **[1]** 21/3
paralegal **[3]** 31/3 35/13 35/14
part **[14]** 5/20 5/21 6/10 7/9 9/24 13/19 13/22 15/18 25/20 26/16 31/14 36/20 44/21 55/22
parte **[1]** 12/24
participate **[1]** 9/17
participating **[1]** 43/12
particular **[10]** 9/23 11/25 13/25 19/11 25/6 32/6 33/12 34/22 45/21 46/19
particularly **[3]** 22/11 34/10 41/17
parties **[7]** 22/16 32/5 33/8 44/4 48/9 49/24 50/1
partly **[1]** 38/17
partway **[1]** 13/13
past **[1]** 20/15
Pause **[1]** 13/6
pay **[5]** 8/3 17/10 17/19 18/2 18/8
paying **[4]** 8/4 9/12 9/13 19/14
payment **[1]** 27/2
payments **[1]** 10/17
pays **[1]** 10/13
PELKER **[4]** 1/12 24/23 25/21 37/19
Pennsylvania **[1]** 1/13
people **[5]** 20/1 20/7 21/3 47/1 47/16
per **[1]** 10/19
percent **[1]** 15/8
percipient **[1]** 23/10
perfectly **[1]** 32/15
perhaps **[5]** 12/9 31/10 40/22 48/10 53/16
period **[10]** 11/9 15/9 17/23 28/3 28/7 28/25 29/16 30/13 42/16 43/24
periods **[1]** 23/12
Perry **[1]** 36/18
person **[3]** 30/23 48/19 51/7
personably **[1]** 31/23
personal **[1]** 4/14
personally **[3]** 31/19 32/11 48/15
persuaded **[1]** 46/17
pertinent **[1]** 33/14
phone **[8]** 11/5 13/25 20/19 34/21 35/8 35/8 37/5 42/19
phones **[1]** 42/20
physically **[1]** 19/13
picked **[1]** 24/22
pin **[1]** 18/9
place **[1]** 12/10
Plaintiff **[2]** 1/4 1/12
plan **[1]** 47/17
plane **[1]** 5/18
planning **[1]** 50/10
plans **[2]** 38/2 47/16
play **[1]** 25/4
please **[3]** 24/24 40/5 44/22
PLLC **[1]** 1/19
pocket **[4]** 7/6 8/3 19/16 19/21
point **[18]** 2/3 6/11 7/11 8/24 10/8 13/13 19/9 19/22 20/5 20/12

20/21 26/22 29/8 32/25 36/23 44/12 55/8 55/19
portion **[1]** 29/18
portions **[1]** 46/20
position **[7]** 3/25 16/10 22/3 22/11 45/22 45/23 46/24
possession **[1]** 34/16
possibility **[4]** 4/4 27/7 37/21 51/17
possible **[8]** 4/1 6/1 6/16 23/19 41/19 43/13 46/15 46/17
possibly **[6]** 5/12 11/2 15/15 18/2 47/2 53/21
postpone **[8]** 7/20 16/20 17/23 18/1 26/12 38/14 38/17 41/18
postponed **[1]** 17/24
postponing **[1]** 39/1
potential **[1]** 26/13
potentially **[3]** 51/12 53/2 55/6
practically **[1]** 39/15
practice **[2]** 13/19 45/5
precision **[1]** 37/13
precontracted **[1]** 3/23
prefer **[2]** 17/17 35/18
preference **[4]** 8/1 28/10 38/12 38/22
prep **[4]** 31/10 39/17 43/18 43/25
prepare **[4]** 3/9 3/10 40/14 45/16
prepared **[11]** 6/22 7/10 7/23 8/10 8/14 9/9 14/14 15/22 19/2 31/18 40/2
preparing **[4]** 11/21 27/20 41/3 42/12
presence **[7]** 5/15 5/22 12/11 21/22 21/25 30/14 34/12
present **[7]** 18/15 18/17 21/20 29/11 29/12 46/22 53/5
presented **[1]** 39/7
presumably **[3]** 23/7 23/9 31/9
presume **[2]** 8/12 29/7
presuming **[2]** 30/22 31/15
PRETRIAL **[1]** 1/9
pretty **[4]** 13/21 19/24 45/5 47/9
prevent **[1]** 41/3
previously **[6]** 6/9 8/20 37/21 45/2 47/21 51/3
prior **[3]** 7/7 9/8 53/15
privy **[2]** 6/20 20/14
pro **[20]** 9/22 9/24 9/25 10/9 10/10 10/12 10/18 12/21 15/5 15/22 16/11 16/24 17/7 17/15 18/21 19/3 19/11 19/15 29/11 35/5
probably **[12]** 2/17 2/18 10/13 11/22 12/23 18/6 18/24 33/13 36/16 45/4 47/10 54/11
problem **[7]** 2/12 10/20 15/15 17/21 19/17 54/11 54/14
problems **[4]** 28/23 28/25 41/16 42/12
proceed **[6]** 6/3 6/19 6/22 7/22 8/10 20/10
proceedings **[3]** 32/8 56/4 57/5
proceeds **[1]** 7/1
produced **[2]** 49/20 55/12
production **[1]** 44/3
prohibition **[2]** 32/8 52/2
promise **[1]** 19/19
promised **[1]** 4/14
promptly **[2]** 37/11 46/3
proposing **[1]** 48/10
propriety **[2]** 49/7 49/12
protections **[2]** 48/5 49/9
protective **[16]** 47/22 48/5 48/12 48/19 48/25 49/5 49/10 50/17 51/6 51/8 52/12 52/18 52/19 53/13 53/13 54/12
proud **[1]** 24/22
provide **[5]** 11/18 39/8 41/6 45/6 55/21
provided **[3]** 40/15 48/14 49/4
providing **[1]** 11/21
public **[5]** 18/10 45/20 46/8 46/10

46/11
pull **[1]** 11/17
purported **[1]** 14/21
purpose **[5]** 16/8 48/21 49/5 50/24 51/9
purposes **[1]** 53/5
pursuant **[1]** 51/6
push **[3]** 18/11 44/8 45/12
pushing **[1]** 36/15
put **[13]** 3/8 6/5 6/8 6/8 14/18 23/15 23/25 24/13 35/16 35/17 45/24 46/14 53/1
puts **[1]** 36/3
putting **[3]** 30/1 33/17 35/25

**Q**

question **[19]** 2/2 3/16 9/8 11/1 15/12 19/4 19/7 22/23 25/1 27/4 27/19 31/6 33/11 35/15 36/1 44/3 48/10 48/23 54/25
questions **[6]** 10/24 14/13 21/1 36/9 36/23 37/14
quick **[4]** 9/20 30/16 38/20 54/17
quite **[11]** 8/22 9/5 10/3 10/15 13/19 15/19 19/22 24/22 35/1 45/4 55/21
quoted **[1]** 55/3

**R**

raise **[5]** 17/11 17/16 18/2 18/5 28/25
raised **[1]** 37/21
raises **[1]** 20/5
raising **[1]** 43/16
RANDOLPH **[1]** 1/9
Rappahannock **[1]** 40/22
rather **[1]** 23/14
reach **[3]** 38/6 43/22 45/10
reaching **[1]** 37/22
reactions **[1]** 29/23
read **[4]** 31/19 48/9 50/15 51/1
ready **[3]** 9/3 29/8 29/9
real **[3]** 2/14 25/1 41/15
really **[16]** 5/24 9/13 17/3 18/4 18/5 18/8 19/22 22/6 22/11 22/13 25/13 27/4 38/23 39/15 40/14 49/11
reason **[5]** 2/9 11/10 35/2 35/4 52/14
reasons **[3]** 6/7 9/19 45/6
rebuttal **[2]** 31/17 36/11
receive **[1]** 53/10
received **[2]** 37/7 53/10
receives **[3]** 48/17 51/4 51/6
recently **[1]** 55/13
Recess **[1]** 21/10
record **[9]** 8/12 16/7 24/13 36/12 38/9 46/16 54/20 54/24 57/5
records **[1]** 14/22
redirect **[1]** 27/12
reference **[1]** 48/23
referring **[1]** 49/1
reflections **[1]** 24/1
regarding **[1]** 47/22
regardless **[1]** 18/20
regards **[1]** 44/19
relate **[1]** 54/9
related **[1]** 35/11
relates **[2]** 7/1 16/18
relating **[6]** 14/11 14/22 29/24 29/25 36/9 55/12
relation **[1]** 31/20
relationships **[1]** 6/20
relevant **[3]** 22/14 32/16 54/14
remain **[1]** 7/23
remember **[3]** 52/17 52/19 55/15
remind **[1]** 24/11
remove **[1]** 48/5
removed **[1]** 49/24
report **[3]** 54/19 55/4 55/16
Reporter **[4]** 1/22 1/22 57/3 57/13
reports **[1]** 55/11

**R**

representation [1]  44/15
representations [5]  12/11 12/12 19/25 45/15 46/3
represented [4]  36/21 44/10 44/11 45/13
represents [1]  31/25
request [4]  35/17 38/18 45/12 49/18
requested [2]  20/24 45/25
requesting [2]  38/14 55/20
require [1]  23/2
required [2]  2/17 5/15
reschedule [2]  20/4 20/6
resolve [2]  25/23 41/4
resolved [2]  41/5 41/8
respect [11]  6/21 20/3 27/9 29/2 29/4 29/10 36/3 36/13 36/14 45/15 46/4
responding [1]  33/2
response [4]  30/18 37/4 37/14 38/4
responsibilities [1]  23/3
responsive [1]  47/5
restricted [1]  49/4
restriction [1]  50/22
restrictive [1]  54/12
retained [3]  29/23 29/24 30/9
retainer [2]  25/20 26/19
return [1]  25/19
review [6]  32/16 33/2 46/2 46/3 47/24 51/23
reviewed [1]  27/8
right [43]  2/2 3/12 4/3 4/10 5/23 6/7 8/12 8/18 10/3 10/11 10/22 12/23 13/5 15/4 16/6 16/12 21/11 24/23 26/6 26/11 26/15 26/25 27/1 30/5 31/1 37/3 37/8 38/19 39/12 40/20 42/13 42/18 42/25 43/1 43/7 43/17 43/25 44/18 44/18 45/14 48/24 49/1 56/2
rights [6]  35/22 36/5 38/13 38/14 39/25 46/14
risks [1]  28/11
role [2]  23/20 25/4
ROMAN [1]  1/6
room [3]  1/24 8/4 28/19
rough [1]  32/14
RPR [1]  57/12
rulings [1]  27/8
run [2]  2/4 3/7
runs [1]  4/11

**S**

said [18]  5/4 6/19 7/7 7/13 9/2 9/11 16/19 30/21 37/14 41/5 42/11 43/8 44/20 46/18 51/1 51/3 52/9 54/19
salary [1]  8/5
same [6]  14/15 22/4 28/15 29/10 52/5 52/10
San [7]  6/15 10/6 10/10 11/19 16/8 24/2 27/23
sat [3]  11/18 17/13 28/17
Saturday [2]  27/21 27/25
saw [1]  51/24
say [23]  5/4 6/12 7/12 8/2 9/1 9/12 9/15 15/10 16/5 16/21 18/11 18/20 19/2 20/19 30/12 35/6 35/14 43/13 44/24 47/13 51/5 52/16 53/19
saying [13]  12/15 12/21 13/13 17/6 17/14 18/1 18/16 18/23 18/24 24/8 29/5 35/10 51/25
says [2]  16/24 49/17
schedule [12]  2/21 3/22 5/8 7/25 8/2 8/9 9/11 16/20 22/17 22/21 22/22 37/23
scheduled [1]  2/8
schedules [1]  47/17
scheduling [4]  9/18 17/9 20/3

28/23
screwed [1]  24/21
seal [1]  55/13
sealed [1]  55/1
second [6]  2/6 51/2 52/17 52/19 53/13 54/18
secrets [1]  6/12
see [10]  2/7 2/23 4/17 10/19 31/13 32/12 32/19 34/10 51/25 54/14
seeing [4]  6/14 8/18 9/4 10/8
seek [2]  48/3 48/4
seeking [1]  44/13
seem [2]  12/14 27/3
seems [5]  15/19 23/6 28/10 30/23 38/22
sees [2]  28/3 52/3
selection [2]  24/3 24/14
send [2]  30/8 42/2
sense [4]  16/16 37/23 37/25 38/5
sensitive [7]  48/14 48/17 48/24 49/4 49/11 51/5 55/7
sentence [8]  49/15 49/16 49/17 51/1 51/2 51/12 53/9 54/10
September [3]  1/5 29/7 29/9
serve [2]  45/19 46/9
servers [1]  49/25
Service [4]  41/12 41/23 42/1 44/25
SESSION [1]  1/7
set [4]  3/6 5/1 36/11 36/23
several [3]  6/15 10/18 47/7
shall [5]  49/24 49/24 53/11 53/16 55/13
share [2]  32/15 35/24
sharing [1]  51/18
she [3]  49/16 51/24 52/3
SHERRY [3]  1/22 57/3 57/12
should [8]  10/11 12/10 16/13 32/3 41/9 41/22 55/1 56/2
shouldn't [1]  32/24
shower [1]  42/23
shows [1]  32/22
side [2]  3/3 35/19
sign [3]  48/15 50/18 54/12
signatory [1]  53/12
signature [1]  24/12
signed [5]  48/20 51/8 51/22 52/12 52/19
significant [3]  17/23 22/23 33/5
signs [1]  49/22
silenced [1]  37/6
simple [1]  27/14
simply [2]  12/14 25/10
since [3]  4/25 24/14 30/21
single [3]  4/15 11/20 19/12
sit [13]  3/10 11/5 11/24 13/23 14/2 14/17 15/22 18/7 18/21 19/1 24/14 27/14 31/12
sitting [11]  11/11 11/13 14/12 23/16 26/9 26/10 27/13 27/17 28/6 34/18 38/11
situation [5]  3/17 3/20 8/8 16/23 40/7
six [1]  42/20
Sixth [3]  35/14 35/21 36/4
sizable [1]  12/17
smaller [1]  41/15
so [91]
solely [1]  35/7
solution [1]  52/12
some [40]  2/22 5/3 5/11 6/23 6/24 13/3 15/9 15/13 16/17 19/14 20/4 20/22 24/18 28/7 28/11 28/25 29/18 30/7 30/13 33/8 34/17 34/18 35/7 35/11 36/1 36/12 36/14 37/13 37/16 39/14 40/6 41/20 42/10 42/15 43/20 45/6 48/7 52/13 52/13 54/11
somebody [5]  15/4 17/12 19/14 29/20 29/21
somehow [1]  5/9

someone [3]  15/6 36/2 41/21
something [18]  5/19 7/8 7/13 14/4 15/20 16/9 16/17 23/19 27/16 35/16 37/10 40/7 44/24 45/3 47/6 47/13 53/6 53/8
sometime [2]  2/17 27/5
somewhat [2]  22/15 40/11
somewhere [4]  5/18 7/16 8/6 41/19
soon [3]  23/18 37/9 44/2
sooner [1]  48/7
sorry [8]  5/3 7/12 9/1 19/6 24/5 25/17 53/19 53/21
sort [2]  12/19 35/7
sound [1]  26/7
sounds [2]  39/14 40/10
Southwest [2]  32/21 32/23
space [2]  41/20 54/14
speak [3]  15/17 17/8 41/13
speaking [4]  8/13 13/24 14/1 30/16
specific [2]  51/13 52/25
specifically [4]  4/6 4/13 15/20 52/24
speculations [1]  26/13
speedy [9]  38/13 39/24 39/25 40/3 45/14 45/18 45/21 46/8 46/11
spend [1]  16/8
spoke [2]  21/12 28/14
spoken [1]  41/12
spontaneous [1]  3/21
spot [1]  23/25
St. [1]  34/2
St. Michael [1]  34/2
staff [1]  56/1
standard [1]  49/10
standards [1]  40/25
stands [1]  46/17
start [5]  2/8 3/12 29/6 31/11 45/24
starting [6]  2/15 25/24 29/1 29/2 29/7 29/9
starts [4]  3/12 3/13 3/14 10/19
State [1]  14/18
statements [1]  12/15
STATES [3]  1/1 1/3 1/10
stay [1]  42/7
stayed [1]  56/1
step [4]  16/16 21/6 21/7 21/24
STERLINGOV [10]  1/6 6/2 6/5 6/18 17/24 18/14 36/3 36/21 38/10 45/23
Sterlingov's [4]  34/16 35/21 45/12 46/14
still [24]  6/15 10/2 17/21 19/17 19/18 20/6 22/9 22/23 39/5 39/16 47/24 49/7 49/11 49/21 50/19 50/23 51/14 51/17 51/23 52/2 52/14 52/25 54/2 55/5
Still's [1]  54/19
stop [2]  2/7 2/10
straight [1]  11/19
strategic [1]  15/1
Street [2]  1/16 1/20
structure [1]  27/2
stuck [1]  5/9
stuff [1]  42/1
subject [4]  14/15 48/19 51/8 52/5
subpoenas [1]  47/1
substance [1]  51/18
substantial [1]  23/12
such [1]  33/1
suggest [2]  37/21 50/21
suggested [1]  11/7
suggesting [2]  14/19 35/9
suggestion [1]  51/12
suggestions [1]  41/25
Suite [1]  1/16
Sunday [2]  27/22 27/25
supplemental [3]  55/4 55/11 55/15
support [1]  32/3
suppose [3]  7/22 26/15 27/7
sure [20]  7/6 8/11 10/16 19/6

**S**

**sure... [16]**   20/11 30/4 31/18 31/23 32/9 32/10 37/17 38/10 41/11 44/7 44/9 44/14 44/22 49/1 50/7 50/11
**surprise [1]**   15/3
**surprised [2]**   34/23 34/24
**sympathetic [1]**   36/6

**T**

**table [9]**   3/11 3/11 11/5 11/20 11/24 13/23 14/2 24/14 26/10
**take [13]**   4/21 9/13 10/14 12/10 22/4 22/16 27/11 31/1 31/7 39/11 43/21 54/5 54/18
**taken [1]**   21/10
**taking [2]**   4/20 26/17
**talk [8]**   10/5 16/16 18/13 20/8 20/24 32/4 34/5 51/24
**talking [7]**   10/6 15/23 23/13 33/12 40/10 50/12 52/23
**team [1]**   36/20
**technical [4]**   34/11 34/14 34/17 36/1
**technology [3]**   13/24 34/21 34/22
**telephone [2]**   13/16 31/10
**tell [9]**   2/14 3/23 8/11 19/10 21/13 23/21 24/12 30/10 44/25
**tends [1]**   47/9
**terms [7]**   7/17 21/18 27/20 47/23 52/5 52/10 55/17
**testify [4]**   2/16 19/1 27/10 31/8
**testifying [4]**   21/17 21/17 23/17 37/2
**testimony [29]**   2/16 5/17 13/15 13/16 13/21 14/11 14/14 14/21 14/22 21/19 21/25 23/6 26/2 29/19 29/25 31/17 31/20 32/12 33/2 34/5 36/7 36/8 36/10 36/11 36/13 39/14 39/18 46/21 46/22
**text [3]**   30/9 30/16 37/4
**than [21]**   2/6 4/20 5/1 5/17 6/9 9/15 10/4 14/8 26/5 27/11 30/24 34/25 38/1 39/18 48/21 49/6 49/25 50/24 51/10 51/15 56/2
**thank [8]**   2/25 13/9 15/25 21/9 44/19 54/16 55/23 56/2
**thanks [1]**   56/1
**Thanksgiving [1]**   28/17
**that [441]**
**their [8]**   12/13 14/3 20/1 20/24 20/25 21/3 31/25 34/5
**them [15]**   3/21 8/21 12/21 14/1 14/12 14/13 20/19 32/15 40/11 40/25 43/18 43/21 44/5 54/11 54/12
**then [31]**   2/4 3/5 3/10 3/11 4/10 8/9 9/12 10/20 12/21 16/4 16/21 17/19 20/3 20/4 20/19 21/1 21/20 23/16 28/8 31/8 33/15 33/18 37/10 37/18 50/3 50/14 51/23 52/22 54/22 54/23 55/10
**there [96]**
**therefore [1]**   12/16
**these [7]**   9/6 16/17 34/14 39/9 39/20 51/23 55/6
**they [56]**   11/13 12/12 12/15 14/5 15/10 15/18 19/9 20/18 20/19 20/25 22/4 24/19 27/13 27/17 28/6 29/8 29/8 30/23 31/25 33/12 34/1 34/5 37/2 40/15 40/16 40/18 41/6 41/13 41/17 41/20 42/1 42/2 42/11 42/15 42/25 43/6 43/15 43/18 43/24 43/25 44/6 44/21 44/22 44/23 44/25 44/25 48/6 52/14 53/14 54/12 54/13 54/13 54/19 55/18 56/2
**thing [12]**   5/5 5/8 5/10 7/25 8/7 16/20 18/25 41/10 42/10 44/7 54/1 54/17
**things [14]**   4/1 8/14 11/21 12/20

29/22 29/23 31/17 33/18 34/6 36/11 39/9 39/21 43/17 46/18
**think [74]**
**thinks [2]**   16/13 28/7
**thinner [1]**   10/3
**third [1]**   14/9
**this [110]**
**those [12]**   2/12 5/25 10/2 14/4 20/25 37/17 38/13 41/8 45/19 46/7 49/25 53/9
**though [5]**   24/15 26/8 30/23 35/10 44/8
**thought [5]**   7/10 10/9 25/16 25/17 26/23
**three [5]**   11/23 14/10 15/4 32/21 34/3
**through [11]**   3/10 4/11 5/9 10/21 13/13 15/22 17/13 18/3 18/7 18/22 19/1
**throughout [3]**   14/20 23/1 23/5
**Thursday [1]**   31/7
**time [55]**   3/24 5/11 5/22 7/2 8/1 8/22 9/13 9/22 9/24 10/9 10/12 11/7 15/7 15/9 16/11 17/23 19/10 19/11 19/15 19/15 19/20 20/4 20/8 20/22 22/4 23/12 23/25 24/1 24/4 28/2 28/3 28/7 28/19 29/8 29/17 30/13 30/20 30/24 33/6 33/14 40/2 40/16 42/15 42/15 42/16 43/21 43/24 44/12 45/6 45/16 45/16 45/25 46/12 47/2 55/21
**timeframe [3]**   28/12 28/21 33/16
**timeline [1]**   31/24
**times [1]**   20/24
**timing [2]**   11/10 26/2
**tired [1]**   50/8
**today [4]**   14/18 39/9 45/21 55/17
**together [3]**   6/5 17/18 34/9
**told [8]**   4/8 20/18 22/4 25/16 25/17 29/8 38/25 41/5
**tomorrow [3]**   47/4 47/13 47/15
**too [2]**   32/24 35/20
**took [1]**   10/9
**topped [1]**   10/21
**TOR [5]**   1/18 1/19 34/6 34/23 35/11
**touch [1]**   42/5
**tough [1]**   35/20
**town [1]**   4/16
**tracking [1]**   34/22
**transcribing [1]**   25/12
**transcript [2]**   1/9 57/4
**transcripts [4]**   11/17 11/18 31/19 32/14
**travel [2]**   32/23 47/17
**trial [86]**
**trials [5]**   9/5 9/7 17/13 22/7 29/21
**true [5]**   39/19 42/8 48/17 51/4 57/4
**truly [1]**   11/8
**try [4]**   22/22 25/14 33/19 45/6
**trying [5]**   7/21 10/16 12/6 12/19 18/9
**Tuesday [2]**   2/4 47/25
**turn [1]**   55/22
**turns [3]**   8/9 22/18 35/19
**two [17]**   3/18 5/16 9/6 11/9 11/18 14/10 16/8 22/19 32/21 39/8 39/18 40/14 40/18 47/18 48/25 49/16 49/17
**two-day [1]**   11/9
**type [1]**   20/12
**typical [3]**   13/21 13/23 14/1
**typically [5]**   3/7 3/10 15/1 23/23 25/7

**U**

**U.S [2]**   1/13 1/23
**unable [1]**   17/16
**unavailability [1]**   26/16
**unavailable [2]**   11/8 26/3

**uncertain [1]**   17/22
**uncertainty [2]**   18/12 19/18
**unclear [1]**   17/22
**under [14]**   6/3 6/10 6/19 7/24 20/18 38/13 39/25 40/3 45/14 45/17 48/25 49/2 49/5 55/13
**undercut [1]**   48/4
**undermine [1]**   23/3
**understand [25]**   6/10 8/14 8/23 14/7 14/12 14/16 18/19 22/14 22/25 30/24 32/2 32/24 35/12 35/18 36/6 38/16 39/16 39/20 40/23 40/25 43/3 44/5 44/10 44/14 44/17
**understandable [1]**   42/9
**understanding [10]**   5/23 17/5 17/14 17/20 18/16 21/14 39/6 41/2 50/7 53/6
**understands [5]**   38/12 45/14 49/17 49/18 49/18
**understood [6]**   5/22 44/8 44/15 48/17 51/4 55/23
**undoubtedly [1]**   15/9
**unique [1]**   35/11
**UNITED [3]**   1/1 1/3 1/10
**unless [3]**   29/23 33/8 45/2
**unlikely [1]**   16/5
**unpaid [1]**   10/15
**unsure [3]**   22/10 22/10 22/11
**until [12]**   2/4 2/17 7/6 28/18 31/16 33/9 38/12 38/15 38/22 39/1 41/18 46/6
**unusual [5]**   11/4 11/22 11/25 12/1 28/1
**unwilling [1]**   20/17
**up [25]**   3/9 3/24 7/7 7/8 7/13 7/15 7/17 8/16 8/17 11/3 12/14 12/20 15/5 15/9 19/24 24/21 31/1 31/24 36/11 40/13 41/20 44/6 46/15 47/23 55/22
**upon [2]**   49/23 50/1
**us [7]**   2/3 2/5 23/15 39/22 54/5 54/22 54/23
**USAO [1]**   1/15
**use [6]**   15/2 26/18 40/16 48/20 50/22 51/9
**used [3]**   44/12 49/5 50/23
**useful [1]**   14/5
**using [1]**   34/22
**usually [1]**   39/10

**V**

**value [1]**   34/8
**various [1]**   12/11
**very [20]**   4/8 8/24 9/20 11/17 11/22 11/24 11/24 13/23 14/1 15/5 17/22 24/10 25/7 28/1 28/16 30/11 31/19 38/20 47/8 53/3
**victim [1]**   5/10
**view [5]**   9/14 28/10 32/6 33/6 48/14
**viewed [2]**   48/13 49/21
**violate [1]**   35/21
**violates [1]**   36/4
**violation [1]**   32/10
**vs [1]**   1/5

**W**

**wait [2]**   38/12 38/22
**waiting [3]**   6/15 24/12 30/18
**waive [2]**   38/13 40/2
**Wall [1]**   1/20
**want [43]**   3/8 4/21 6/3 7/4 7/25 8/8 8/19 9/2 9/11 10/25 12/8 15/18 16/20 16/23 17/1 20/22 21/6 21/24 29/6 30/23 31/22 36/10 36/12 36/24 37/17 38/10 38/24 39/17 40/12 41/11 41/13 41/16 42/6 44/9 44/14 45/9 46/25 48/6 48/7 50/7 50/11 51/23 55/19
**wanted [6]**   2/21 42/10 44/7 49/1 52/9 54/24

Appx2300

**W**

wants [1]   38/13
warrants [2]   49/8 49/9
was [44]   2/11 5/22 5/23 6/10 7/9
  7/15 7/19 8/20 8/21 8/22 9/20
  11/17 17/16 17/19 22/25 23/13
  24/4 24/12 24/15 24/19 25/6 26/9
  26/23 29/5 29/8 29/23 32/9 33/8
  34/14 40/16 42/9 48/4 48/23 48/23
  49/1 49/12 50/19 51/2 51/3 52/9
  52/18 52/20 52/21 52/22
Washington [4]   1/5 1/14 1/17 1/24
wasn't [6]   10/10 15/20 15/21 19/6
  25/6 33/9
watch [1]   25/10
water [1]   3/3
way [19]   2/22 4/17 9/14 10/1 13/3
  21/25 23/3 32/5 32/7 32/10 33/1
  34/14 36/12 36/19 38/2 39/20
  41/13 46/18 46/19
ways [3]   21/23 36/10 43/20
we [114]
we'll [2]   20/19 27/14
week [6]   3/9 4/22 11/11 11/14
  11/20 43/8
weekend [2]   11/21 11/22
weeks [6]   2/6 10/18 11/18 16/8
  22/19 39/11
weight [1]   30/1
welcome [3]   10/24 21/7 53/7
well [18]   4/22 8/2 10/9 11/20
  14/19 14/24 16/4 20/3 25/7 31/19
  36/21 37/8 38/3 38/6 39/9 43/17
  44/8 52/7
went [1]   27/8
were [27]   5/17 13/13 15/21 19/7
  23/17 24/1 24/8 24/18 24/20 25/16
  25/17 27/24 27/25 29/6 29/9 29/11
  30/15 32/7 34/16 34/21 34/21 44/8
  48/25 49/16 51/23 52/25 55/12
what [77]
whatever [7]   6/5 6/20 8/4 14/23
  22/19 30/9 43/25
when [19]   10/5 14/16 14/21 15/6
  15/16 19/11 20/23 21/2 21/25
  23/17 23/21 29/17 30/7 30/14
  39/10 41/17 43/19 44/15 44/25
whenever [1]   44/23
where [23]   3/17 3/20 5/6 8/6
  14/11 15/9 17/22 19/22 19/23
  20/16 20/21 21/18 21/21 23/12
  25/11 25/11 28/7 40/15 40/17 42/3
  42/16 45/2 55/20
Whereas [1]   49/12
wherever [1]   25/13
whether [39]   2/3 2/15 4/4 6/22
  6/24 7/1 7/3 7/23 9/9 9/15 15/21
  17/1 17/3 18/4 18/5 18/13 18/20
  19/1 19/21 22/11 22/12 25/9 26/23
  27/4 27/19 28/6 29/15 29/17 30/3
  30/6 30/13 31/6 32/5 32/7 36/1
  38/5 41/24 42/8 54/25
which [25]   2/5 2/5 3/13 7/10 8/7
  8/8 8/21 12/1 14/10 15/19 16/23
  22/12 32/5 34/11 40/25 41/4 45/22
  45/24 46/19 46/21 47/18 48/10
  49/11 50/10 54/23
while [8]   2/11 8/13 9/6 12/6
  24/19 30/15 38/8 38/10
who [39]   4/21 7/20 9/12 13/24
  15/4 15/4 17/13 20/7 20/17 28/17
  29/20 29/21 30/9 30/10 34/20
  35/13 37/13 38/11 38/11 41/16
  41/21 45/5 47/16 48/13 48/17
  48/19 48/20 49/22 51/4 51/7 51/8
  51/22 52/9 53/1 53/2 53/3 53/9
  53/12 56/1
whole [5]   18/3 18/7 18/25 19/1
  19/20
why [4]   12/2 36/14 38/4 53/5
widely [1]   55/2

wife [5]   4/15 5/9 5/18 10/13 22/4
will [67]
willing [10]   9/16 17/6 17/15
  18/17 18/20 18/21 21/16 32/4 35/4
  35/20
within [1]   11/10
without [4]   6/22 20/1 38/24 53/14
witness [7]   7/24 9/9 11/5 11/22
  21/19 33/12 36/19
witness' [1]   36/13
witnessed [1]   31/19
witnesses [15]   11/23 13/24 14/4
  23/10 28/14 29/25 31/20 32/6
  32/16 34/3 36/3 37/1 45/22 47/1
  47/16
won't [3]   21/23 28/3 30/21
wonderful [1]   35/13
wondering [3]   43/9 52/18 55/16
word [2]   21/3 45/2
words [3]   5/4 37/15 41/24
work [16]   2/22 6/15 9/13 9/22
  9/24 9/25 10/12 10/19 12/2 17/15
  21/24 28/15 33/19 35/5 39/17 47/9
workable [1]   5/19
worked [7]   4/15 17/12 17/18 27/24
  34/9 35/13 48/8
working [8]   23/13 23/24 33/21
  35/2 43/17 47/23 49/22 51/14
works [1]   34/23
world [2]   7/25 41/24
worry [1]   28/25
would [109]
wouldn't [6]   2/12 2/17 5/16 15/2
  16/23 43/12
writ [1]   47/1
wrong [1]   23/11

**Y**

yeah [10]   3/1 4/23 7/5 10/15
  15/25 19/8 20/19 23/21 37/24
  42/22
year [6]   9/21 9/23 10/19 16/24
  29/11 40/17
years [7]   4/7 5/9 15/2 17/13
  34/10 35/3 35/25
yes [17]   2/23 13/9 13/19 19/6
  19/15 19/18 21/12 29/6 30/15
  33/23 38/25 40/1 40/4 40/8 41/7
  47/20 50/6
yet [7]   9/25 16/11 37/4 37/7 41/4
  45/9 46/17
York [1]   42/3
you [220]
your [58]
yours [1]   32/3
yourself [3]   2/19 10/24 14/14

**Z**

Zoom [5]   13/3 15/25 30/22 31/10
  32/7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,　　　) Criminal Action
　　　　　　　　　　　　　　　　) No. 1:21-CR-0399
　　　　　　　　Plaintiff,　　) 
　　　　　　　　　　　　　　　　) **MOTION CONFERENCE**
vs.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　) Washington, D.C.
ROMAN STERLINGOV,　　　　　　　)
　　　　　　　　　　　　　　　　) **November 13, 2023**
　　　　　　　　Defendant.　　) **Time:　1:35 P.M.**

**TRANSCRIPT OF MOTION CONFERENCE**
BEFORE THE HONORABLE JUDGE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S**

For the Plaintiff:　　　CHRISTOPHER BROWN
　　　　　　　　　　　　USAO-DOJ
　　　　　　　　　　　　601 D Street, NW
　　　　　　　　　　　　Washington, DC 20001

　　　　　　　　　　　　ALDEN PELKER
　　　　　　　　　　　　U.S. DEPARTMENT OF JUSTICE
　　　　　　　　　　　　950 Pennsylvania Avenue, NW
　　　　　　　　　　　　Washington, DC 20530

　　　　　　　　　　　　JEFFREY PEARLMAN
　　　　　　　　　　　　DOJ-CRM
　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　1301 New York Ave. NW
　　　　　　　　　　　　Washington, DC 20005

For the Defendant:　　　TOR EKELAND
　　　　　　　　　　　　MICHAEL HASSARD
　　　　　　　　　　　　Tor Ekeland Law, PLLC
　　　　　　　　　　　　30 Wall Street, 8th Floor
　　　　　　　　　　　　New York, NY 10005


Court Reporter:　　　　Tamara M. Sefranek, RMR, CRR, CRC
　　　　　　　　　　　　Official Court Reporter
　　　　　　　　　　　　United States Courthouse, Room 6714
　　　　　　　　　　　　333 Constitution Avenue, NW
　　　　　　　　　　　　Washington, DC  20001
　　　　　　　　　　　　202-354-3246

PROCEEDINGS

THE COURTROOM DEPUTY: Criminal Case 21-399, the United States v. Roman Sterlingov.

Counsel, would you please identify yourself for the record, starting with the government.

MS. PELKER: Good afternoon, Your Honor. Alden Pelker for the United States, joined at counsel table by Christopher Brown and Jeffrey Pearlman.

THE COURT: Good afternoon to all of you.

MR. EKELAND: Good afternoon, Your Honor. Tor Ekeland, along with Michael Hassard, for defendant, Roman Sterlingov, who is present in court.

THE COURT: Good afternoon to all of you as well. Thank you for being here.

As I'm sure you gathered from reading my opinion, I just have some questions that you-all could help me with that will help me resolve the pending motion for access by the defendant to the material that was produced by Chainalysis relating to the detailed heuristics. So, Ms. Pelker.

MS. PELKER: Yes, Your Honor. So the Court's memorandum opinion and order raised a number of factual and legal questions. And to the extent -- unless the Court would find something else more helpful, the government thought we would address the factual questions one by one and then pivot to the legal questions unless --

THE COURT: No. That's fine. Thank you.

MS. PELKER: One of the questions that the Court raised was regarding the extent to which the information in the sensitive supplemental heuristics discovery would be admitted at trial. The government does not intend to admit that, that additional report or the attachments. It's not evidence. It's not evidence that's being used against the defendant in any way which we think is significant for an evaluation of, really, the discoverability of this material in the first place.

THE COURT: My question really was -- and I saw you made that point in your papers, I think.

Buy my question was, what is the likelihood that it is going to, nonetheless, come out at trial, either through direct or more likely perhaps through cross-examination? And maybe that's more of a question for the other side than for you.

But if it's going to come out at trial, then that, obviously, diminishes any prejudice that would be caused by showing it to Mr. Sterlingov now.

MS. PELKER: Your Honor, we think, to the extent that it would come out at trial, it would be the defense -- to the extent the defense would seek to use the materials to cross-examine Ms. Bisbee, the use of that material would be extremely limited.

Ms. Bisbee did not rely on the materials in putting

together her expert report because they didn't exist at the time, and we don't expect her to testify to anything that's inconsistent in the report, so the impeachment value, really, is very, very limited.

We are considering -- and it wouldn't be appropriate for the defense to try and, essentially, read this into the record as a way of making a point of some sort to publicize this. And the government may seek a protective order for trial that's been consistent with what is sometimes implemented in this District regarding the, sort of, sensitive materials that could allow for appropriate use for cross-examination to the extent that there is anything particular within the materials that the defense has a true good faith basis to confront Ms. Bisbee with. We're not sure what that would be.

But if they did, to still allow that cross-examination without it being outed publicly in a way that would jeopardize the law enforcement and Chainalysis's interests in keeping its materials --

THE COURT: I suppose one way that I could walk that line is -- there, obviously, is some sensitivity in the Court closing a trial at any time during the course of the trial, given the right to an open-in-public trial, but I suppose one way to navigate that issue would be to require a proffer or perhaps even an examination outside the presence of the jury with the courtroom closed to determine whether it actually is

even relevant or is being offered for a proper purpose. And then I can decide that and then only offer or permit it in the open courtroom if it turned out that it was an appropriate subject of examination.

MS. PELKER: We think that that could be appropriate, Your Honor. And that, sort of, proffer outside the presence of the jury may be what works best for this type of evidence or information.

As you know, the Department of Justice has a number of policies. We actually need to -- I would have to go back to our management and seek approval to not, actually, oppose a closing of the courtroom. That's something that we will go and circle back to.

What we were actually thinking, Your Honor, is that in other cases in this District, including in trade secrets cases, there are certain procedures that may be implemented with cross-examination where you don't read the text of the concerning material into the record. You can point to it with your finger, et cetera.

And we will work with defense counsel to put forward some proposed parameters to the Court if we take that back and think it's appropriate.

We also just are not at all clear how this would really come up in any, sort of, proper impeachment of Ms. Bisbee or of any of the other witnesses.

THE COURT: Okay.

MS. PELKER: Also, that it's -- it is very different from confronting a witness with specific excerpts of this more voluminous material at trial than giving the defendant or others access to it in a way that would allow for them to really meaningfully review it and study it, copy it down for really impermissible purposes that don't relate to the cross-examination of a witness.

THE COURT: Right. Your comments there do highlight the fact that I think there are a continuum of questions, and today I don't need to decide what happens at trial. We'll have to deal with all of that.

And one of the things that I do want to hear from the parties about is whether there are compromised positions that accommodate the interests of both sides with respect to the issue that's just in front of me with respect to Mr. Sterlingov's access.

And if one of the things that the government would request is that Mr. Sterlingov, if allowed to view the material, not be allowed to keep a copy of it, that's the sort of thing that the Court would be open to considering.

MS. PELKER: One of the other questions that the Court raised was the difference between the original disclosures and then the sensitive supplemental information.

So the government had produced to the defense an

original report from Ms. Bisbee back in December of 2022 which contained voluminous attachments, as well as a supplemental report which contained even more detailed attachments but that were still part of what we're going to refer to here as the Bisbee report and attachments as opposed to the sensitive heuristic supplement.

THE COURT: Okay.

MS. PELKER: The defendant has been able to review Ms. Bisbee's reports and those extensive detailed attachments. We're talking hundreds of thousands of different addresses listed row by row. The report itself describes the heuristics. It explains co-spend; it explains and describes how Chainalysis uses behavioral heuristics.

It walks through the composition of the various clusters that the government will be introducing at trial and that are relevant to Mr. Sterlingov's case. It describes each of the different heuristics; co-spending and behavioral. And it describes how Chainalysis investigates a service's particular transaction patterns to develop the clustering algorithms that are specific to the service. And that it uses those transactions and address features to, essentially, provide a fingerprint.

And Ms. Bisbee's report that the defendant has been able to review has the tables that list off the different features that Chainalysis is looking for when it's doing its

behavioral heuristic analysis.  And Ms. Still was able to review that in detail and provide critique and commentary in her expert report and then in testimony regarding the -- at the *Daubert* hearing.

So the Bisbee report is already quite detailed.  The government has provided that to the defendant.  He and his experts and counsel have been able to review that.

THE COURT:  Can I ask you about that, though.  That's getting to the point that I -- maybe you were getting ready to turn to this.

When you say that it describes the behavioral heuristics, does it say, generically, that we applied -- that Chainalysis applied behavioral heuristics, and this is the type of thing or this is what a behavioral heuristic is, or does it actually get down to a more granular analysis and say, in this particular analysis here's what the specific behavioral heuristics were, or is that something that only appears in the more sensitive disclosure?

MS. PELKER:  So it's a little bit between the two.  So it does list off in kind of the tables of looking at the different properties, it lists off the specific things that Chainalysis is looking at for the behavioral heuristics that were implemented for these clusters.

What is different in the more granular, the sensitive heuristics supplement, is really the formula of exactly how the

different features were put together and weighted to come up with the individual fingerprint.

So it's almost like the difference between having the list of ingredients and instructions versus -- in the Bisbee report versus the really precise formulas of exactly how they were used to build the cluster for each one of the clusters. And that's the difference between the two.

So that the information -- the granularity of the detail in that sensitive heuristics disclosure has negligible, if any, value. We don't think it really has -- it has no value to the defense.

Even for someone who was trying to really do an assessment of the clustering, it is extremely, extremely technical and not going to bear on anything that would come in at trial. But is highly, highly sensitive, and the disclosure of which would be concerning both to the government and to Chainalysis. And part of it --

THE COURT: Okay. This is what I wanted to drill down more on.

I take it the government's concern here is that either Mr. Sterlingov will tell somebody else what this highly technical information is or that he someday will make use of that himself in ways that it will allow him to evade tracing or allow others to avoid -- evade tracing, assuming the government's allegations that he's actually involved in money

laundering and the like.

And one of the questions I had is just how long these behavioral heuristics actually are of great investigative value. And I can imagine a world in which this is a constantly ongoing battle of whack-a-mole in which the investigators figure out how to trace transactions that people are doing their best to hide, and those who are doing their best to hide figure out how the government is tracing them, and they come up with a different approach, and the government figures out how to trace that and so forth.

So that over a period of months, or in this case years, it may be that things become antiquated fairly quickly. So what I'm interested in is whether the granular heuristics here even today are what Chainalysis would likely be using or whether they'd actually become dated because those who are trying to evade Chainalysis have evolved.

MS. PELKER: So, Your Honor, I think that's an astute point, and we definitely do see very close attention by criminals and nation-state actors in looking at exactly what the government is doing with its tracing and figuring out how to circumvent those particular measures, and Chainalysis's fingerprinting is service-specific. But how they do the fingerprinting is really what we're most concerned about protecting here.

So that if -- it's less exactly what the fingerprint

was for Bitcoin Fog but, rather, what parts of Bitcoin Fog's activity in the behavioral clustering did Chainalysis pull out -- and that's information that was disclosed to the defendant -- but exactly how they got implemented and weighed. And one of the real concerns here is that in the supplemental heuristics disclosure, it also includes information about the kickouts; basically, of what behavior would cause Chainalysis not to cluster something.

There's been a lot of discussion about how Chainalysis goes to great lengths to be underinclusive and avoid false positives.

THE COURT: Right, right.

MS. PELKER: But if an adversary were able to understand what causes Chainalysis to kick something out of its clustering algorithm, it would be able to, potentially, use that information to then defeat the clustering.

Now, certainly, because of service-specific, what would cause a kickout from Bitcoin Fog may be different than what would cause a kickout from something else. But understanding here -- it's not just Bitcoin Fog. We've got ten different services looking at exactly how Chainalysis developed the behavioral heuristic across those ten services; how they were customized; what features Chainalysis thought was important; how they would do the kickout would be significant for an adversary.

And the building blocks that were used for the behavioral heuristics for these clusters are still used for clusters that are being actively built and tested by Chainalysis now, and that are relied on by the government in very significant criminal cases and significant national security cases where there's a very important and compelling interest that we not allow adversaries to be able to contravene those measures.

THE COURT: Are any of the ten services at issue still in operation?

MS. PELKER: I believe -- I'd have to go back through the list. But I believe no, that these are all static clusters that are not operating, which was, in part -- to the extent we expect a list of addresses for those services to be admitted at trial that was an attachment to the original report, and so that was one of the factors weighing in that as well; that these are static lists.

THE COURT: All right. Given the fact that there are particular portions of the report that -- or supplemental, sensitive report that may be particularly concerning, ones where some of the information really may be dated by now; obviously, not dated with respect to the analysis that Chainalysis did for purposes of this case, but dated just because we live in a world in which technical evolution occurs very quickly.

Are there portions of this supplemental report where the government and Chainalysis may not be entirely comfortable, more comfortable sharing with Mr. Sterlingov and others where you'd say, this is something where, one, we really don't see how this is particularly relevant to any issues that are likely to be litigated in this case, and this really is something here that is extremely sensitive and we're still using and, therefore, we would request that you slice things a little finer here?

MS. PELKER: So, Your Honor, we did review in the Court's opinion and order the suggestion that we look at whether there's things that may be less sensitive. What we found was that, really, anything that was less sensitive was really in the prior report. And if we went through to try and redact out what would be considered active and sensitive, we would, essentially, from the attachments, be eliminating the additional columns that were added to this report. So it would put defense pretty much back at what the original attachments were.

And then with the report itself, we would -- it would look like a series of black boxes without anything really in the way of substantive information that would be of any, sort of, use to the defendant.

THE COURT: I'm trying to make sure I understand the distinction between what it is that Mr. Sterlingov currently

has access to and what's at issue here.

I'll just speak hypothetically, both because I don't recall or may not have ever entirely understood exactly what the behavioral heuristics were or the specifics of them, and -- in any event, rather than, potentially, disclosing something here on the public record.

But I mean, assume, for example, that a behavioral heuristic is that people who rob banks will very frequently open accounts in those banks which gives them the opportunity to be in the bank. And that they will very frequently open accounts using shell corporations where they can put their proceeds after they rob the bank.

Assuming -- I realize that those are not quite on point, but if that was the type of heuristic that you were applying, what would be in the disclosure that's made to date and then what would not be?

MS. PELKER: I think that what you just stated would be in the disclosure that's made to date and say that, as one of the -- something that Chainalysis does is to look for accounts that are opened and shell companies meeting some parameters and deposited within a certain time period. And then in the supplemental disclosure would be that they specifically look for shell companies that are open to the accounts within 48 hours prior to a robbery and then have no activity until 48 hours -- until 48 hours after the activity.

That's the extent of the activity.

And the concern there is that if you disclose that information, then a -- the robber is going to know, well, I'll just make a deposit earlier on.

THE COURT: 49 hours.

MS. PELKER: Right. And that even if it's -- maybe it's for this particular bank, it's 48 hours, but for the bank down the street it's 7 days, but the robbers would understand that someone is looking at -- this is how the pattern is being implemented.

So even though what was in the original disclosure would have allowed them to have some attempt at countermeasures, it's not nearly as sensitive or provides for the right countermeasure -- the amount of effective countermeasures as what the sensitive heuristics would be.

THE COURT: Okay. Anything else before I hear from Mr. Ekeland?

MS. PELKER: No, Your Honor.

THE COURT: Do you want to turn to the law now or do you want to come back and do that after I hear from Mr. Ekeland on the facts?

MS. PELKER: I think, just emphasizing that, as we've briefed up, there is -- the Supreme Court has been very clear. There's no constitutional right to the disclosure of discovery to the defendant here. We think that there would be a more

than laid out good cause and the Court has very broad discretion to craft an appropriate protective order regarding discovery.

Attorneys' eyes only protective orders are not an anomaly. And even though the particular nature of this material is somewhat unique in courts, courts are used to handling very sensitive information and crafting protective orders appropriately, and attorneys' eyes only protective orders are one way to do so.

THE COURT: Right. So I don't disagree with that statement of the law. I suppose that the question that I have here, though, is, is there, potentially, just a due process issue here if -- perhaps because of its own failings, but if the defense doesn't have or hasn't to this point come forward with a -- even a nontestifying expert who can help them look at the stuff and educate Mr. Ekeland so he knows how to conduct the best cross-examinations he can possibly conduct and if, hypothetically, it turned out the case that, in fact, Mr. Sterlingov is uniquely well-situated to evaluate that type of information and to assist the defense, is there a due process issue analogous to a situation in which -- I don't think there would be any problem in saying someone who is accused of having been in the Capitol on January 6th doesn't need to know where every camera is located and every security camera is located because there are security reasons to keep

that information secret.

But that may be different from a circumstance in which it's a case against a biochemist alleging that the biochemist had manufactured some chemical that was capable of causing people grave injury. And it turns out that that biochemist is one of the few people who can actually look at the government's expert report with respect to the contents and lethality of the compound that was found and actually understand that and explain that it is what the government says it is.

In that case it's different than knowing where the cameras are because this is one of the few people who can really explain to the defense and to his lawyers why the compound the government found isn't nearly as dangerous as the government thought it was; hypothetically, obviously

MS. PELKER: So I think -- a few things there. One, significantly, this is not evidence that the government is seeking to use against the defendant. And if this were evidence that the government were using against the defendant or something that were actually part of the government's expert reports, maybe we'd be in a different posture. But we're not.

Even there, absent this being *Brady* material, I think that the Courts have been fairly clear -- you can look to Mejia in the CIPA context that the defendant doesn't have an absolute right to himself view those materials.

And here, we're in a bit of an unusual posture in that, for the defendant to say that he's uniquely situated to view and advise on these materials would confirm the very real concerns that the government has of this particular individual viewing -- this particular defendant viewing the materials. But he's not uniquely situated.

They had a defense expert who insisted -- and we are not looking to reopen this issue -- but who insisted at great lengths that they needed access to these particular materials. We had lengthy litigation over the 17(c) subpoena issue about whether there was sufficient specificity, about whether -- how the defense intended to use the materials that they were seeking, and that was contingent on an expert that they stated had told them that they needed these materials to do a review.

THE COURT: All right. And I know that the parties have agreed and the Court has ordered that we're not going to have any new testifying experts at this point in the proceeding. And that that would simply derail the schedule that we're -- that this Court is very much committed to at this point.

But would the government have any objection if the defense were to come forward and identify a nontestifying expert who was sufficiently trustworthy and, as I've said in the past, the computer scientist from the University of Maryland, hypothetically, who can simply advise Mr. Ekeland and

look at the material subject to a protective order and if Ms. Still isn't prepared to do it and where she could actually testify, but at least this person, hypothetically, could help Mr. -- walk Mr. Ekeland and his colleagues through the material so they could better understand it and that they could be in a position to conduct better examinations and cross-examinations?

MS. PELKER: Your Honor, I think our concern there is just that -- while trial was continued, we are coming up on needing to do a real preparation for trial again. The defense had multiple opportunities to bring in such an individual, testifying or nontestifying.

THE COURT: Right.

MS. PELKER: And time and time again kept proposing just outlandishly inappropriate experts who were not experts and who had real axes to grind against Chainalysis and the government and were very outspoken as such.

And just with the time frame that we are on -- it is already mid-November -- we're not looking for a continuation past February.

THE COURT: I am completely with you on this. There is not going to be another continuance in this case.

But all I'm saying -- and I think it's the defense's responsibility, and they haven't come forward and identified a nontestifying expert to me and made this request at this point. I'm just looking for ways to try and ensure in every way I can

that Mr. Sterlingov has a fair defense in the case. But at the same time, sensitive to the law enforcement concerns that you've raised.

And I suppose I don't at least see a reason why, if the defense came forward and said, yeah, I know we don't have as much time as we would have liked, but we were doing other things or whatever, and we didn't bother bringing this to your attention, Judge, but here we have somebody who is a qualified computer scientist or somebody who comes from academia or somewhere else that doesn't have an ax to grind with them -- Chainalysis or, more significantly, somebody who is actually subject to the contempt power of the Court who actually can meaningfully look at this and actually has the skill set to look at this, and we just would like that person to have access to it even though we understand this person is not going to be a testifying expert. It's just simply to help Mr. Ekeland get ready for trial.

I suppose -- I mean, he has -- there are other experts that the Court has not excluded to this point, including -- I'm blanking on his name now -- but the gentleman who Mr. Ekeland was very insistent had to sit at his side during trial.

MS. PELKER: Fischbach.

THE COURT: Mr. Fischbach, who -- if Mr. Fischbach has any expertise on this and wanted to look at the material

and sign an appropriate nondisclosure agreement, that way he could look at the material and advise Mr. Ekeland with respect to his examinations.

MS. PELKER: The government would have particular concerns with Mr. Fischbach's both lack of expertise and concerns about adherence to Court-issued protective orders. But we certainly -- if the defense identified an expert -- we did have -- in the lead-up to the protective order that was ultimately tailored to Ms. Still, there was the other protective order that had the noncompete within it that may be an appropriate basis.

We're happy to have that discussion with defense counsel and the Court and Chainalysis to the extent that they have particular concerns about particular individuals that we would want to at least hear out.

THE COURT: Okay. Thank you. Let me hear from Mr. Ekeland, and I'll give you a chance to respond. Mr. Ekeland.

MR. EKELAND: Just a few points. I'm happy to answer whatever questions the Court has because I think we made our main points in our paper.

But this supplemental disclosure is a result of the *Daubert* hearings where we challenged the accuracy of the software and --

THE COURT: I don't think that's quite accurate. I

mean, I think that the supplemental disclosures were really -- I was the one who, I think, perhaps didn't order it because it was volunteered. But it was because I just wanted to make sure that the defense had access to important information in the case and that I thought that -- understanding the heuristics and assumptions that underlied Chainalysis's application of Reactor in this case was something that appropriately defense should have access to, and I sort of anticipated that Ms. Still would be the person to make use of it.

But I don't think it was -- it didn't grow out of -- just to be clear for the record, it didn't grow out of the Court's concerns with respect to the admissibility of the government's witnesses for *Daubert* purposes. It really just grew out of a desire and a need to make sure that the defense had access to all relevant information for purposes of being able to put on the best possible defense for Mr. Sterlingov.

MR. EKELAND: If I just remember correctly, after the testimony of Ms. Bisbee, when she testified that Chainalysis had no internal analysis of the error rates or couldn't provide any scientific peer-reviewed paper, I recall the Court outside of just saying the government and Ms. Bisbee that they need to come up with something more and --

THE COURT: No. That was a different point. I did ask the government to present to me any -- because you had raised that point, and you've done it many times now.

The Court just simply asks that the government present to the Court what it had and the Court then made a supplemental production, which just included a couple of additional academic pieces. But I think this is just a separate -- a separate point with respect to just making sure that you understand the way Reactor works so that you're able to engage in an appropriate cross-examination; or if Ms. Still would want to testify, she could have testified herself about the flaws, if any, that she believed existed in Chainalysis. That was what I was thinking about.

MR. EKELAND: Understood, Your Honor. It still goes -- this supplemental production still goes to the core accuracy of the software, which is in question.

I mean, I think we've made it clear to the Court that we do consider this material evidence and, of course, that the defendant is entitled, as a matter of due process, to review.

THE COURT: I'm sorry. Can you point me to a case that says that?

MR. EKELAND: No. I will point to the Fifth Amendment. I think it's just a background principle that in general defendants in a federal criminal case should be able to review the evidence against them, excepting compelling circumstances.

And I don't think here that the government has clearly identified a compelling law enforcement interest when

all the services that -- and I believe, as Ms. Pelker mentioned, the ten services that are involved in this supplemental production all were either seized or put out of business by the government; most of them before Chainalysis even existed. So --

THE COURT: But that doesn't mean, though, that Chainalysis isn't applying similar techniques to go after other darknet vendors or sites that are still operating.

MR. EKELAND: That's not clear to me. From what I've seen, maybe they are; maybe they aren't, but --

THE COURT: That was one of my questions for the government. I thought the answer was, it does still involve information that is still sensitive that Chainalysis and the government is using in other investigations is what I understood Ms. Pelker to tell me.

MR. EKELAND: I'm sorry, Your Honor.

THE COURT: No. Go ahead.

MR. EKELAND: I heard that statement. But beyond that sort of superficial statement that they are using it, it's not clear to me what they are using.

And in regards to -- the government says that this supplemental production is of little use or of no use to the defense in the case. Well, of course the government is going to say that, and of course the defense is going to take a contrary position. The mere fact that Ms. Bisbee doesn't have

knowledge of the information in the supplemental production, I think, is relevant. She's the noticed expert from the government about Chainalysis Reactor.

Something else --

THE COURT: I'm not sure that's quite accurate either. I'm not sure she's the -- I mean, this is a fine point. I don't think she was offered as an expert on Chainalysis Reactor itself, on the software or the program.

MR. EKELAND: I think it's certainly relevant to what she's testifying about, whether or not she knows how accurate it is, and she doesn't seem to have an in-depth knowledge of how the software operates.

She even testified -- and here's something else --

THE COURT: I apologize for interrupting. I'm not fighting you on that. The only thing I was disagreeing with is I think you said she was the noticed expert witness on Chainalysis Reactor.

You may want to cross-examine her and say she's not an expert on Chainalysis Reactor, and she probably is not going to resist you on that. That's fine; you're entitled to do that. I was just making, maybe, a fairly technical point.

MR. EKELAND: Understood, Your Honor. I think something just for clarity's sake on this, when we talk about the tracing, the Court may recall that Ms. Bisbee said that nothing in her report or any of her work identifies

Mr. Sterlingov or traces anything back to Mr. Sterlingov.

She said the only place that Mr. Sterlingov's name appears anywhere in her report is on the title page. I just want to make sure that we're clear on what we're talking about here. What we're talking about is how Chainalysis Reactor comes up with its clustering based on its different types of heuristics to say, okay, this is the Agora darknet market, and X amount of money goes from the Agora darknet market to Bitcoin Fog.

Nothing in what Chainalysis Reactor has done goes to tracing which, as the government has said repeatedly in this matter, can just simply be done by a blockchain explorer. In terms of this revealing some sort of secret sauce about -- that criminals are going to be able to use to prevent themselves from being traced, I don't quite see that point.

What's at issue here and the reason we requested this information and we've been pushing so hard on it in the *Daubert* is the accuracy of this software, and I do think that's relevant for the defense to bring up at trial.

I do think -- obviously, we disagree with the Court on what's happened with the experts. The problem we're having with finding experts is that Chainalysis has come out of the gate very clearly signaling that they're willing to engage in intellectual property litigation over any of this information. So when I'm going out and I'm looking for people who I say to,

hey, can you look at this, they don't want to touch this because of --

THE COURT: I think, in fairness, the only person who has threatened litigation so far has been you, who threatened to sue Chainalysis.

MR. EKELAND: That's not accurate. Because I don't think Chainalysis would have come out and asked for a five-year noncompete and a protective order without that concern.

THE COURT: I don't doubt that this is sensitive information. That's the reason we're here talking about this today. I don't doubt that it's proprietary and sensitive, and I don't doubt that it's law enforcement sensitive.

MR. EKELAND: And there's certainly the perception out there and the experts that I've talked to that nobody wants to touch this case because of the fear of litigation from Chainalysis. Whether that's the reality or that's a perception that they have, that perception is pervasive. And this is --

THE COURT: I apologize for interrupting again. My concern here is that maybe part of the problem here is you're asking the wrong people.

MR. EKELAND: Well --

THE COURT: I'm sorry. Let me just finish.

And that I've sort of seen this with some of the experts that you've identified thus far, in that there are people who are interested in this case and approach this as a

matter of their own advocacy and views with respect to whether there should be privacy or shouldn't be privacy on the internet. And rather than just going to people who might be able to approach this more objectively, where I think there's less likelihood you're going to run into those types of problems -- and there probably aren't that many competitors. There's CipherTrace. I don't know other than CipherTrace, there's probably one or two other real competitors for Chainalysis out there.

You maybe -- may find it hard to find one of the true competitors who are willing to look at this for the same reason that CipherTrace was unwilling to look at it; because they want to market their own version.

But if you put aside people who don't seem to have a lot of expertise but more political passion about this and, instead, just look for people who are objective. If you want me to, I'm happy to call the University of Maryland or any of the local universities and just see if they have experts who could testify as court-appointed experts or -- I don't want another testifying expert. Let me take that back. But consult.

If you want help finding a consultant, the Federal Public Defender here in D.C., I'm sure, could help you reach out and find people. I mean, there are people who just do have expertise in algorithms and things like that, people in

mathematics departments or whatever else it might be who could help you understand this and look at this, but aren't necessarily coming at it either as one of the few competitors for Chainalysis out there or as those who are strong advocates or are coming up in a, sort of, highly politically charged way where maybe CipherTrace -- or Chainalysis might have greater concerns.

MR. EKELAND: I think there's a couple of points there. One is the political views of the experts don't go to their expertise, and that's a matter for impeachment and potential bias.

THE COURT: No, no, no. Fair enough. I want to be clear about what I was saying. I wasn't suggesting that.

What I was really thinking about is the one expert who you identified from outside the United States at one point in time who did seem to be extremely adverse to Chainalysis and what Chainalysis is trying to do by tracing.

And I think that's part of what caused Chainalysis's concern; not that they were going to prove that Chainalysis was making a mistake, but that they just thought that the entire process of trying to trace what someone is doing on the internet is something that is evil in some respect and that people should be shut down from doing that in ways that, I think, is part of what was feeding some of the distrust in that particular individual, and particularly given the fact that he

wasn't somebody who was subject to the contempt power of the Court.

MR. EKELAND: Yes. And he also is one of the top experts in the world in this area. Even just assume that as a hypothetical, but the issue is in an adversarial proceeding, a competitor is now saying, no, we don't want that expert in. I think you're talking about Laurent, right?

THE COURT: I just wrote a very lengthy opinion, and I think every word in that opinion refutes what you just said. I don't think that's what happened here.

MR. EKELAND: Well, we respectfully disagree, Your Honor. And we also had Bryan Bishop, who is a core developer or in terms of the blockchain software. He, out of fear for litigation with Chainalysis, won't do this.

Again, we're being told, in a sense -- we don't need to belabor this again, but we just object to competitive concerns being brought in and limiting the defense in terms of what we can see as an expert.

But what we're here for today is the question of whether or not Mr. Sterlingov can review material evidence being used against him. If the government -- if the government all of a sudden is saying that this evidence is somehow irrelevant, then why was it produced in the first place? It's being brought forward --

THE COURT: At your request.

MR. EKELAND: At our request. Because we want information about the accuracy of the software. And then there's this, sort of, theater of secrecy that I feel like is being invoked here that's trying to legitimate [sic] the government's concerns when it's not even clear that what's being produced is that accurate at all.

At least what we're asking, if we're not going to be able to have the experts for whatever reason that the defense chooses, we're just asking that Mr. Sterlingov be able to review it. That's all. We're not attributing any secret skills to him.

Of course, we're up here arguing that he's innocent, and he's not the supervillain that he's being made out to be.

THE COURT: So two thoughts about what you just said here. One is that the purpose for this hearing is for me to weigh exactly these types of issues that you raised, and there are, in my mind, multiple factors that come into that. One is the sensitivity of the information.

The government has represented to me that it does remain highly sensitive information, both from a law enforcement perspective and, I assume, as well from a proprietary perspective.

You've had a chance to look at the information, and you haven't, sort of, come back to me and explained why that's not the case after having -- reviewing the information.

Two, though, the question is, I do think you need help preparing the case. And I take you at your word and you say that you may be knowledgeable about cryptocurrency and the blockchain, but you lack sufficient expertise to do this on your own and you need help.

That's what then leads me to the question of, are there any other sources of help that you can get, someone who can advise you as a nontestifying expert? I just continue to think that there are people out there, and you're just not talking to the right people about that. You've mentioned Mr. Bishop to me, and you've mentioned CipherTrace to me.

But I've got to believe that there are a lot of other people out there who have expertise and who could assist you without raising the concerns that the government has subject to a protective order.

And then there's also just the question of, what does Mr. Sterlingov, if anything, add to this that you don't already have or that some of your other testifying or nontestifying experts can't already bring to you to assist in this case?

MR. EKELAND: Well, in terms of Mr. Sterlingov, I don't know what he's going to think if he sees this stuff. I think he needs to be given the opportunity as a defendant to review it and add his input because this is not some ancillary thing. This is the whole crux when it comes to the amount of money they're claiming he somehow laundered.

THE COURT: Although, I have to say, it's kind of interesting to me that you say it's not some ancillary thing because I thought you started off by saying it is some ancillary thing and --

MR. EKELAND: If --

THE COURT: I'm sorry. Just let me finish, and then I'll let you respond to it.

I thought you started off by saying to me that this isn't about showing that Mr. Sterlingov himself was involved. What this is about is showing how much business Bitcoin Fog, whoever was administering it, how much business Bitcoin Fog was doing for darknet sites that were engaged in illicit activity.

And your own expert, I think, will concede, based on what I've heard from the *Daubert* hearing, that there was a substantial amount. And maybe this is a question which -- if there were ever a conviction here -- which would get down to a question of sentencing.

But to the extent that there are bases for challenging the application of Chainalysis Reactor here, I take it what you're talking about is showing that Chainalysis Reactor has, in your view, overstated the amount of business that Bitcoin Fog was doing for illicit darknet sites by some factor. They were 5 percent off, maybe 10 percent off, maybe 15 percent off.

It's not really as super fundamental or core to the

case. It's important. And I'm not suggesting that it's not important. But I think, by your own telling, it's not the most important evidence in the case.

MR. EKELAND: It's not relevant to whether or not Mr. Sterlingov operated Bitcoin Fog because that's what Ms. Bisbee testified to herself. There's nothing that -- in relation to that that identifies Mr. Sterlingov anywhere.

As a matter of fact, I don't see that anywhere in this case. Regardless, where it does come in --

THE COURT: Right.

MR. EKELAND: -- is the -- first of all, you get all these darknet markets and all these amounts of money that they're claiming, right? That goes -- when I say the core, that goes to the money laundering and how much money they're saying has been laundered.

And that number has changed from what the government initially said to what's in the Shaw report to the Bisbee report, and the government has got different --

THE COURT: But the jury is not going to even be asked to decide that question other than having to decide, I suppose, whether there was reason for whoever was the administrator of Bitcoin Fog to know that Bitcoin Fog was, in fact, involved in laundering illicit funds. But the quantity, whether it was 50, 60, 70, 80 percent of the business of Bitcoin Fog, I don't think, is a question that the jury needs

to decide except to the extent that it might inform the jury's judgment about whether the administrator must have known that Bitcoin Fog was involved in money laundering.

MR. EKELAND: Well, I mean, again, if Chainalysis -- we don't know what the accuracy of Chainalysis Reactor was, so I --

THE COURT: I think your own witness, Ms. Still, said just by -- through using just straight-out CoinJoin, that she was willing to -- I thought she agreed with at least a substantial portion of Chainalysis's analysis. But there was another big chunk where she wasn't willing to agree because CipherTrace doesn't use Heuristic 2 and, therefore, they were only using Heuristic 1.

And so based on CipherTrace's analysis, the number would have been lower, but not that it was anything close to zero.

MR. EKELAND: Even if -- first of all, the alleged darknet markets weren't just dealing in illegal stuff. But the -- point taken, Your Honor. But there is a question as to the accuracy and the amount, and nothing in Chainalysis Reactor, in my understanding, identifies anything as an illicit fund.

The assumption is, well, this is a darknet market, so it must be -- everything is illicit. Point taken. But what -- I think the defense has made its point.

THE COURT: That's what I want to drill down on, though.

So the point you've just made to me is, just as a matter of principle, Mr. Sterlingov should be allowed to examine anything that has a bearing on the accuracy or inaccuracy of the evidence in the case against him. I take that. I will definitely consider that point.

Is there anything more than just that, sort of, general notion that, as a matter of principle, a defendant in the case ought to have access to anything that might or might not reflect on the accuracy of evidence that's being offered?

MR. EKELAND: No, Your Honor. I think that's been our central point. As we said, we think it's about the Fifth Amendment and the Sixth Amendment issue.

THE COURT: That's helpful for me to understand. I've been raising these issues about whether there are other individuals that you could have to consult with you. And if that's not the argument you're making, that's helpful for me to understand.

MR. EKELAND: Your Honor, I do want to say that, sitting here today, I don't know what -- you know, if I'm going to use this for impeachment or how I'm going to use this on cross. A lot of that also depends on how the direct goes.

THE COURT: Right.

MR. EKELAND: But to the extent that the government

is maintaining that it's not important to the defense, we just disagree with that, and I think the reasons are obvious.

THE COURT: So having had a chance to look at the material yourself, do you have some sense of how much use you're going to need to make of it at trial and whether I'm going to need to have some sort of proffer beforehand or how we handle things?

Have you had a chance to get a sense whether there is actually something useful in that information?

MR. EKELAND: I don't have a good sense, and I don't want to make a representation to the Court that's incorrect. Because, for me, a lot -- the way I prepare for trial is I like to, obviously, review the evidence, and then I listen to the witnesses, and it's a very fluid process.

Do I have some grand plan today to bring in this supplemental disclosure that I think is going to win the case? No. I'd be lying to the Court if I said that.

But might I use it at trial? Absolutely. And if -- as I work on it or I work my way through this, if I see something that I think, oh, my gosh, this is a big issue, let's try and resolve this beforehand, I'll say something to the Court.

THE COURT: I appreciate that, just because I think it may be disruptive with a jury trial if you start to ask a question and the government says, Your Honor, can we have a

sidebar? And then I have to say, okay, let's send the jury back, and we have to have a proffer mid-trial. I'd much rather resolve those issues pretrial and figure out how we're going to handle them.

MR. EKELAND: Again, without limiting myself, I have no interest in that. I think that's not a good way to have a trial go. I think that hurts the defense as much as it --

THE COURT: It will break up your examination.

MR. EKELAND: It's not -- and it just annoys the jury, I think, too. But, again, I don't want to box myself in because, for me, a lot of this is very -- a very fluid process --

THE COURT: Okay.

MR. EKELAND: -- honestly.

THE COURT: Another question, different topic. In my order I directed that the defense, by the 10th of November, provide me with the signed declarations.

MR. EKELAND: Yes. They were filed on Friday around 3:00, ex parte. Mr. Hassard filed them. It's -- my understanding, it's docket number -- we just noticed, Your Honor, that it wasn't -- we didn't see it. We just checked. It was filed; I think it's Docket No. 211.

THE COURT: Okay. Thank you.

MR. EKELAND: We have them all. And if the Court doesn't have them, we're happy to send them to you.

THE COURT: Okay. Thank you. I will take a look at that.

All right. Anything else?

MR. EKELAND: No, Your Honor.

THE COURT: Ms. Pelker, anything you want to add?

MS. PELKER: No, nothing else from the government, Your Honor.

THE COURT: Ms. Pelker, before we adjourn, I want to make sure that I understand your representation to the Court, as an officer of the court, that you have reviewed the material in the sensitive supplemental production and that you can represent to the Court that this is information that remains to this day law enforcement sensitive; and that if it were disclosed, that it could be used for purposes of evading ongoing investigations?

MS. PELKER: Yes, Your Honor. I've reviewed it, and in consultation with other experts from the government, have made that determination and can make that representation to the Court.

THE COURT: Okay. Well, thank you all. I will give you a -- I will issue an order on this promptly. Thank you.

(The hearing adjourned at 2:35 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, TAMARA M. SEFRANEK, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 22nd day of November, 2023.

/s/ Tamara M. Sefranek
Tamara M. Sefranek, RMR, CRR, CRC
Official Court Reporter
Room 6714
333 Constitution Avenue, N.W.
Washington, D.C.  20001

**/**

/s [1] - 40:9

**1**

1 [1] - 35:13
10 [1] - 33:23
10005 [1] - 1:20
10th [1] - 38:16
13 [1] - 1:6
1301 [1] - 1:17
15 [1] - 33:24
17(c [1] - 18:10
1:21-CR-0399 [1] - 1:3
1:35 [1] - 1:6

**2**

2 [1] - 35:12
20001 [3] - 1:12, 1:24, 40:11
20005 [1] - 1:17
202-354-3246 [1] - 1:25
2022 [1] - 7:1
2023 [2] - 1:6, 40:7
20530 [1] - 1:14
21-399 [1] - 2:2
211 [1] - 38:22
22nd [1] - 40:7
2:35 [1] - 39:22

**3**

30 [1] - 1:20
333 [2] - 1:24, 40:11
3:00 [1] - 38:19

**4**

48 [4] - 14:24, 14:25, 15:7
49 [1] - 15:5

**5**

5 [1] - 33:23
50 [1] - 34:24

**6**

60 [1] - 34:24
601 [1] - 1:11
6714 [2] - 1:23, 40:10
6th [1] - 16:23

**7**

7 [1] - 15:8

**70** [1] - 34:24

**8**

80 [1] - 34:24
8th [1] - 1:20

**9**

950 [1] - 1:14

**A**

ability [1] - 40:6
able [14] - 7:8, 7:24, 8:1, 8:7, 11:13, 11:15, 12:7, 22:16, 23:6, 23:21, 26:14, 28:4, 31:8, 31:9
absent [1] - 17:22
absolute [1] - 17:24
absolutely [1] - 37:18
academia [1] - 20:9
academic [1] - 23:4
access [10] - 2:17, 6:5, 6:17, 14:1, 18:9, 20:14, 22:4, 22:8, 22:15, 36:10
accommodate [1] - 6:15
accounts [4] - 14:9, 14:11, 14:20, 14:24
accuracy [8] - 21:23, 23:13, 26:18, 31:2, 35:5, 35:20, 36:5, 36:11
accurate [6] - 21:25, 25:5, 25:10, 27:6, 31:6, 40:4
accused [1] - 16:23
Action [1] - 1:2
active [1] - 13:15
actively [1] - 12:3
activity [5] - 11:2, 14:25, 15:1, 33:12
actors [1] - 10:19
add [3] - 32:17, 32:23, 39:5
added [1] - 13:17
additional [3] - 3:6, 13:17, 23:4
address [2] - 2:24, 7:21
addresses [2] - 7:10, 12:14
adherence [1] - 21:6
adjourn [1] - 39:8
adjourned [1] - 39:22
administering [1] - 33:11

administrator [2] - 34:22, 35:2
admissibility [1] - 22:12
admit [1] - 3:5
admitted [2] - 3:4, 12:14
adversarial [1] - 30:5
adversaries [1] - 12:7
adversary [2] - 11:13, 11:25
adverse [1] - 29:16
advise [4] - 18:3, 18:25, 21:2, 32:8
advocacy [1] - 28:1
advocates [1] - 29:4
afternoon [4] - 2:6, 2:9, 2:10, 2:13
Agora [2] - 26:7, 26:8
agree [1] - 35:11
agreed [2] - 18:16, 35:9
agreement [1] - 21:1
ahead [1] - 24:17
ALDEN [1] - 1:13
Alden [1] - 2:6
algorithm [1] - 11:15
algorithms [2] - 7:20, 28:25
allegations [1] - 9:25
alleged [1] - 35:17
alleging [1] - 17:3
allow [6] - 4:11, 4:15, 6:5, 9:23, 9:24, 12:7
allowed [4] - 6:19, 6:20, 15:12, 36:4
almost [1] - 9:3
Amendment [3] - 23:20, 36:14
AMERICA [1] - 1:2
amount [6] - 15:14, 26:8, 32:24, 33:15, 33:21, 35:20
amounts [1] - 34:12
analogous [1] - 16:21
analysis [7] - 8:1, 8:15, 8:16, 12:22, 22:19, 35:10, 35:14
ancillary [3] - 32:23, 33:2, 33:4
annoys [1] - 38:9
anomaly [1] - 16:5
answer [2] - 21:19, 24:12
anticipated [1] - 22:8
antiquated [1] - 10:12
apologize [2] - 25:14, 27:18
application [2] - 22:6,

33:19
applied [2] - 8:12, 8:13
applying [2] - 14:15, 24:7
appointed [1] - 28:19
appreciate [1] - 37:23
approach [3] - 10:9, 27:25, 28:4
appropriate [9] - 4:5, 4:11, 5:3, 5:5, 5:22, 16:2, 21:1, 21:11, 23:7
appropriately [2] - 16:8, 22:7
approval [1] - 5:11
area [1] - 30:4
arguing [1] - 31:12
argument [1] - 36:18
aside [1] - 28:14
assessment [1] - 9:13
assist [3] - 16:20, 32:13, 32:19
assume [3] - 14:7, 30:4, 31:21
assuming [2] - 9:24, 14:13
assumption [1] - 35:23
assumptions [1] - 22:6
astute [1] - 10:17
attachment [1] - 12:15
attachments [7] - 3:6, 7:2, 7:3, 7:5, 7:9, 13:16, 13:18
attempt [1] - 15:12
attention [2] - 10:18, 20:8
attorneys' [2] - 16:4, 16:8
attributing [1] - 31:10
Ave [1] - 1:17
Avenue [3] - 1:14, 1:24, 40:11
avoid [2] - 9:24, 11:11
ax [1] - 20:10
axes [1] - 19:15

**B**

background [1] - 23:20
bank [4] - 14:10, 14:12, 15:7
banks [2] - 14:8, 14:9
based [3] - 26:6, 33:13, 35:14
bases [1] - 33:18
basis [2] - 4:13, 21:11

battle [1] - 10:5
bear [1] - 9:14
bearing [1] - 36:5
become [2] - 10:12, 10:15
BEFORE [1] - 1:8
beforehand [2] - 37:6, 37:21
behavior [1] - 11:7
behavioral [14] - 7:13, 7:17, 8:1, 8:11, 8:13, 8:14, 8:16, 8:22, 10:3, 11:2, 11:22, 12:2, 14:4, 14:7
belabor [1] - 30:16
best [6] - 5:7, 10:7, 16:17, 22:16, 40:6
better [2] - 19:5, 19:6
between [5] - 6:23, 8:19, 9:3, 9:7, 13:25
beyond [1] - 24:18
bias [1] - 29:11
big [2] - 35:11, 37:20
biochemist [3] - 17:3, 17:4, 17:6
Bisbee [14] - 3:23, 3:25, 4:14, 5:25, 7:1, 7:5, 8:5, 9:4, 22:18, 22:21, 24:25, 25:24, 34:6, 34:17
Bisbee's [2] - 7:9, 7:23
Bishop [2] - 30:12, 32:11
bit [2] - 8:19, 18:1
Bitcoin [13] - 11:1, 11:18, 11:20, 26:8, 33:10, 33:11, 33:22, 34:5, 34:22, 34:25, 35:3
black [1] - 13:21
blanking [1] - 20:20
blockchain [3] - 26:12, 30:13, 32:4
blocks [1] - 12:1
bother [1] - 20:7
box [1] - 38:10
boxes [1] - 13:21
Brady [1] - 17:22
break [1] - 38:8
briefed [1] - 15:23
bring [4] - 19:10, 26:19, 32:19, 37:15
bringing [1] - 20:7
broad [1] - 16:1
brought [2] - 30:17, 30:24
BROWN [1] - 1:10
Brown [1] - 2:8
Bryan [1] - 30:12

**build** [1] - 9:6
**building** [1] - 12:1
**built** [1] - 12:3
**business** [5] - 24:4, 33:10, 33:11, 33:21, 34:24
**buy** [1] - 3:12

## C

**camera** [2] - 16:24, 16:25
**cameras** [1] - 17:12
**capable** [1] - 17:4
**Capitol** [1] - 16:23
**case** [25] - 7:16, 10:11, 12:23, 13:6, 16:18, 17:3, 17:11, 19:21, 20:1, 22:5, 22:7, 23:17, 23:21, 24:23, 27:15, 27:25, 31:25, 32:2, 32:19, 34:1, 34:3, 34:9, 36:6, 36:10, 37:16
**Case** [1] - 2:2
**cases** [4] - 5:15, 5:16, 12:5, 12:6
**caused** [2] - 3:18, 29:18
**causes** [1] - 11:14
**causing** [1] - 17:5
**central** [1] - 36:13
**certain** [2] - 5:16, 14:21
**certainly** [4] - 11:17, 21:7, 25:9, 27:13
**CERTIFICATE** [1] - 40:1
**certify** [1] - 40:3
**cetera** [1] - 5:19
**Chainalysis** [49] - 2:18, 7:12, 7:18, 7:25, 8:13, 8:22, 9:17, 10:14, 10:16, 11:2, 11:7, 11:10, 11:14, 11:21, 11:23, 12:4, 12:23, 13:2, 14:19, 19:15, 20:11, 21:13, 22:18, 23:9, 24:4, 24:7, 24:13, 25:3, 25:8, 25:17, 25:19, 26:5, 26:10, 26:22, 27:5, 27:7, 27:16, 28:9, 29:4, 29:6, 29:16, 29:17, 29:19, 30:14, 33:19, 33:20, 35:4, 35:5, 35:20
**Chainalysis's** [5] - 4:17, 10:21, 22:6,

29:18, 35:10
**challenged** [1] - 21:23
**challenging** [1] - 33:19
**chance** [4] - 21:17, 31:23, 37:3, 37:8
**changed** [1] - 34:16
**charged** [1] - 29:5
**checked** [1] - 38:21
**chemical** [1] - 17:4
**chooses** [1] - 31:9
**Christopher** [1] - 2:8
**CHRISTOPHER** [1] - 1:10
**chunk** [1] - 35:11
**CIPA** [1] - 17:24
**CipherTrace** [6] - 28:7, 28:12, 29:6, 32:11, 35:12
**CipherTrace's** [1] - 35:14
**circle** [1] - 5:13
**circumstance** [1] - 17:2
**circumstances** [1] - 23:23
**circumvent** [1] - 10:21
**claiming** [2] - 32:25, 34:13
**clarity's** [1] - 25:23
**clear** [10] - 5:23, 15:23, 17:23, 22:11, 23:14, 24:9, 24:20, 26:4, 29:13, 31:5
**clearly** [2] - 23:25, 26:23
**close** [2] - 10:18, 35:15
**closed** [1] - 4:25
**closing** [2] - 4:21, 5:12
**cluster** [2] - 9:6, 11:8
**clustering** [6] - 7:19, 9:13, 11:2, 11:15, 11:16, 26:6
**clusters** [6] - 7:15, 8:23, 9:6, 12:2, 12:3, 12:12
**co** [2] - 7:12, 7:17
**co-spend** [1] - 7:12
**co-spending** [1] - 7:17
**CoinJoin** [1] - 35:8
**colleagues** [1] - 19:4
**COLUMBIA** [1] - 1:1
**columns** [1] - 13:17
**comfortable** [2] - 13:2, 13:3
**coming** [3] - 19:8, 29:3, 29:5
**commentary** [1] - 8:2

**comments** [1] - 6:9
**committed** [1] - 18:19
**companies** [2] - 14:20, 14:23
**compelling** [3] - 12:6, 23:22, 23:25
**competitive** [1] - 30:16
**competitor** [1] - 30:6
**competitors** [4] - 28:6, 28:8, 28:11, 29:3
**complete** [1] - 40:5
**completely** [1] - 19:20
**composition** [1] - 7:14
**compound** [2] - 17:8, 17:14
**compromised** [1] - 6:14
**computer** [2] - 18:24, 20:9
**concede** [1] - 33:13
**concern** [6] - 9:20, 15:2, 19:7, 27:8, 27:19, 29:19
**concerned** [1] - 10:23
**concerning** [3] - 5:18, 9:16, 12:20
**concerns** [11] - 11:5, 18:4, 20:2, 21:5, 21:6, 21:14, 22:12, 29:7, 30:17, 31:5, 32:14
**conduct** [3] - 16:16, 16:17, 19:6
**CONFERENCE** [2] - 1:4, 1:7
**confirm** [1] - 18:3
**confront** [1] - 4:13
**confronting** [1] - 6:3
**consider** [2] - 23:15, 36:7
**considered** [1] - 13:15
**considering** [2] - 4:5, 6:21
**consistent** [1] - 4:9
**constantly** [1] - 10:4
**constitutes** [1] - 40:4
**Constitution** [2] - 1:24, 40:11
**constitutional** [1] - 15:24
**consult** [2] - 28:21, 36:17
**consultant** [1] - 28:22
**consultation** [1] - 39:17
**contained** [2] - 7:2, 7:3
**contempt** [2] - 20:12,

30:1
**contents** [1] - 17:7
**context** [1] - 17:24
**contingent** [1] - 18:13
**continuance** [1] - 19:21
**continuation** [1] - 19:18
**continue** [1] - 32:8
**continued** [1] - 19:8
**continuum** [1] - 6:10
**contrary** [1] - 24:25
**contravene** [1] - 12:7
**conviction** [1] - 33:16
**copy** [2] - 6:6, 6:20
**core** [4] - 23:12, 30:12, 33:25, 34:13
**corporations** [1] - 14:11
**correctly** [1] - 22:17
**counsel** [5] - 2:4, 2:7, 5:20, 8:7, 21:13
**countermeasure** [1] - 15:14
**countermeasures** [2] - 15:13, 15:15
**couple** [2] - 23:3, 29:8
**course** [5] - 4:21, 23:15, 24:23, 24:24, 31:12
**COURT** [59] - 1:1, 2:9, 2:13, 3:1, 3:10, 4:19, 6:1, 6:9, 7:7, 8:8, 9:18, 11:12, 12:9, 12:18, 13:24, 15:5, 15:16, 15:19, 16:10, 18:15, 19:12, 19:20, 20:24, 21:16, 21:25, 22:23, 23:17, 24:6, 24:11, 24:17, 25:5, 25:14, 27:3, 27:9, 27:18, 27:22, 29:12, 30:8, 30:25, 31:14, 33:1, 33:6, 34:10, 34:19, 35:7, 36:1, 36:15, 36:24, 37:3, 37:23, 38:8, 38:13, 38:15, 38:23, 39:1, 39:5, 39:8, 39:20, 40:1
**Court** [33] - 1:22, 1:23, 2:22, 3:2, 4:20, 5:21, 6:21, 6:23, 15:23, 16:1, 18:16, 18:19, 20:12, 20:19, 21:6, 21:13, 21:20, 22:20, 23:1, 23:2, 23:14, 25:24, 26:20, 30:2, 37:11, 37:17, 37:22, 38:24, 39:9, 39:12,

39:19, 40:10
**court** [3] - 2:12, 28:19, 39:10
**Court's** [3] - 2:20, 13:11, 22:12
**court-appointed** [1] - 28:19
**Court-issued** [1] - 21:6
**Courthouse** [1] - 1:23
**courtroom** [3] - 4:25, 5:3, 5:12
**COURTROOM** [1] - 2:2
**courts** [2] - 16:6
**Courts** [1] - 17:23
**craft** [1] - 16:2
**crafting** [1] - 16:7
**CRC** [2] - 1:22, 40:9
**Criminal** [1] - 1:2
**criminal** [3] - 2:2, 12:5, 23:21
**criminals** [2] - 10:19, 26:14
**critique** [1] - 8:2
**CRM** [1] - 1:16
**cross** [11] - 3:14, 3:23, 4:11, 4:16, 5:17, 6:8, 16:17, 19:6, 23:7, 25:18, 36:23
**cross-examination** [6] - 3:14, 4:11, 4:16, 5:17, 6:8, 23:7
**cross-examinations** [2] - 16:17, 19:6
**cross-examine** [2] - 3:23, 25:18
**CRR** [2] - 1:22, 40:9
**crux** [1] - 32:24
**cryptocurrency** [1] - 32:3
**customized** [1] - 11:23

## D

**D.C** [3] - 1:5, 28:23, 40:11
**dangerous** [1] - 17:14
**darknet** [8] - 24:8, 26:7, 26:8, 33:12, 33:22, 34:12, 35:18, 35:23
**date** [2] - 14:15, 14:18
**Dated** [1] - 40:7
**dated** [4] - 10:15, 12:21, 12:22, 12:23
**Daubert** [5] - 8:4, 21:23, 22:13, 26:17, 33:14

days [1] - 15:8
DC [4] - 1:12, 1:14, 1:17, 1:24
deal [1] - 6:12
dealing [1] - 35:18
December [1] - 7:1
decide [5] - 5:2, 6:11, 34:20, 35:1
declarations [1] - 38:17
defeat [1] - 11:16
Defendant [2] - 1:6, 1:18
defendant [18] - 2:11, 2:18, 3:7, 6:4, 7:8, 7:23, 8:6, 11:4, 13:23, 15:25, 17:18, 17:19, 17:24, 18:2, 18:5, 23:16, 32:22, 36:9
defendants [1] - 23:21
Defender [1] - 28:23
defense [32] - 3:21, 3:22, 4:6, 4:13, 5:20, 6:25, 9:11, 13:18, 16:14, 16:20, 17:13, 18:7, 18:12, 18:22, 19:9, 20:1, 20:5, 21:7, 21:12, 22:4, 22:7, 22:14, 22:16, 24:23, 24:24, 26:19, 30:17, 31:8, 35:25, 37:1, 38:7, 38:16
defense's [1] - 19:22
definitely [2] - 10:18, 36:7
DEPARTMENT [1] - 1:13
Department [2] - 1:16, 5:9
departments [1] - 29:1
deposit [1] - 15:4
deposited [1] - 14:21
depth [1] - 25:11
DEPUTY [1] - 2:2
derail [1] - 18:18
describes [5] - 7:11, 7:12, 7:16, 7:18, 8:11
desire [1] - 22:14
detail [2] - 8:2, 9:9
detailed [4] - 2:19, 7:3, 7:9, 8:5
determination [1] - 39:18
determine [1] - 4:25
develop [1] - 7:19
developed [1] - 11:21
developer [1] - 30:12
difference [3] - 6:23,

9:3, 9:7
different [17] - 6:2, 7:10, 7:17, 7:24, 8:21, 8:24, 9:1, 10:9, 11:18, 11:21, 17:2, 17:11, 17:21, 22:23, 26:6, 34:18, 38:15
diminishes [1] - 3:18
direct [2] - 3:14, 36:23
directed [1] - 38:16
disagree [4] - 16:10, 26:20, 30:11, 37:2
disagreeing [1] - 25:15
disclose [1] - 15:2
disclosed [2] - 11:3, 39:14
disclosing [1] - 14:5
disclosure [11] - 8:18, 9:9, 9:15, 11:6, 14:15, 14:18, 14:22, 15:11, 15:24, 21:22, 37:16
disclosures [2] - 6:24, 22:1
discoverability [1] - 3:9
discovery [3] - 3:4, 15:24, 16:3
discretion [1] - 16:2
discussion [2] - 11:9, 21:12
disruptive [1] - 37:24
distinction [1] - 13:25
DISTRICT [3] - 1:1, 1:1, 1:8
District [2] - 4:10, 5:15
distrust [1] - 29:24
docket [1] - 38:20
Docket [1] - 38:22
DOJ [2] - 1:11, 1:16
DOJ-CRM [1] - 1:16
done [3] - 22:25, 26:10, 26:12
doubt [3] - 27:9, 27:11, 27:12
down [7] - 6:6, 8:15, 9:19, 15:8, 29:23, 33:16, 36:1
drill [2] - 9:18, 36:1
due [3] - 16:12, 16:20, 23:16
during [2] - 4:21, 20:22

**E**

educate [1] - 16:16
effective [1] - 15:14
either [5] - 3:13, 9:21,

24:3, 25:6, 29:3
EKELAND [34] - 1:18, 2:10, 21:19, 22:17, 23:11, 23:19, 24:9, 24:16, 24:18, 25:9, 25:22, 27:6, 27:13, 27:21, 29:8, 30:3, 30:11, 31:1, 32:20, 33:5, 34:4, 34:11, 35:4, 35:17, 36:12, 36:20, 36:25, 37:10, 38:5, 38:9, 38:14, 38:18, 38:24, 39:4
Ekeland [12] - 1:19, 2:11, 15:17, 15:20, 16:16, 18:25, 19:4, 20:16, 20:21, 21:2, 21:17, 21:18
eliminating [1] - 13:16
emphasizing [1] - 15:22
enforcement [6] - 4:17, 20:2, 23:25, 27:12, 31:21, 39:13
engage [2] - 23:7, 26:23
engaged [1] - 33:12
ensure [1] - 19:25
entire [1] - 29:20
entirely [2] - 13:2, 14:3
entitled [2] - 23:16, 25:20
error [1] - 22:19
essentially [3] - 4:6, 7:21, 13:16
et [1] - 5:19
evade [3] - 9:23, 9:24, 10:16
evading [1] - 39:14
evaluate [1] - 16:19
evaluation [1] - 3:8
event [1] - 14:5
evidence [13] - 3:6, 3:7, 5:7, 17:17, 17:19, 23:15, 23:22, 30:20, 30:22, 34:3, 36:6, 36:11, 37:13
evil [1] - 29:22
evolution [1] - 12:24
evolved [1] - 10:16
ex [1] - 38:19
exactly [8] - 8:25, 9:5, 10:19, 10:25, 11:4, 11:21, 14:3, 31:16
examination [9] - 3:14, 4:11, 4:16, 4:24, 5:4, 5:17, 6:8, 23:7, 38:8
examinations [4] -

16:17, 19:6, 21:3
examine [3] - 3:23, 25:18, 36:5
example [1] - 14:7
except [1] - 35:1
excepting [1] - 23:22
excerpts [1] - 6:3
excluded [1] - 20:19
exist [1] - 4:1
existed [2] - 23:9, 24:5
expect [2] - 4:2, 12:14
expert [21] - 4:1, 8:3, 16:15, 17:7, 17:20, 18:7, 18:13, 18:23, 19:24, 20:16, 21:7, 25:2, 25:7, 25:16, 25:19, 28:20, 29:14, 30:6, 30:18, 32:8, 33:13
expertise [7] - 20:25, 21:5, 28:15, 28:25, 29:10, 32:4, 32:13
experts [16] - 8:7, 18:17, 19:14, 20:19, 26:21, 26:22, 27:14, 27:24, 28:18, 28:19, 29:9, 30:4, 31:8, 32:19, 39:17
explain [2] - 17:9, 17:13
explained [1] - 31:24
explains [2] - 7:12
explorer [1] - 26:12
extensive [1] - 7:9
extent [11] - 2:22, 3:3, 3:20, 3:22, 4:12, 12:13, 15:1, 21:13, 33:18, 35:1, 36:25
extremely [5] - 3:24, 9:13, 13:7, 29:16
eyes [2] - 16:4, 16:8

**F**

fact [7] - 6:10, 12:18, 16:18, 24:25, 29:25, 34:8, 34:23
factor [1] - 33:23
factors [2] - 12:16, 31:17
facts [1] - 15:21
factual [2] - 2:21, 2:24
failings [1] - 16:13
fair [2] - 20:1, 29:12
fairly [3] - 10:12, 17:23, 25:21
fairness [1] - 27:3
faith [1] - 4:13
false [1] - 11:11
far [2] - 27:4, 27:24

fear [2] - 27:15, 30:13
features [4] - 7:21, 7:25, 9:1, 11:23
February [1] - 19:19
federal [1] - 23:21
Federal [1] - 28:22
feeding [1] - 29:24
few [5] - 17:6, 17:12, 17:16, 21:19, 29:3
Fifth [2] - 23:19, 36:13
fighting [1] - 25:15
figure [3] - 10:6, 10:8, 38:3
figures [1] - 10:9
figuring [1] - 10:20
filed [3] - 38:18, 38:19, 38:22
fine [3] - 3:1, 25:6, 25:20
finer [1] - 13:9
finger [1] - 5:19
fingerprint [3] - 7:22, 9:2, 10:25
fingerprinting [2] - 10:22, 10:23
finish [2] - 27:22, 33:6
first [4] - 3:9, 30:23, 34:11, 35:17
Fischbach [3] - 20:23, 20:24
Fischbach's [1] - 21:5
five [1] - 27:7
five-year [1] - 27:7
flaws [1] - 23:9
Floor [1] - 1:20
fluid [2] - 37:14, 38:11
Fog [12] - 11:1, 11:18, 11:20, 26:9, 33:10, 33:11, 33:22, 34:5, 34:22, 34:25, 35:3
Fog's [1] - 11:1
FOR [1] - 1:1
foregoing [1] - 40:4
formula [1] - 8:25
formulas [1] - 9:5
forth [1] - 10:10
forward [6] - 5:20, 16:14, 18:22, 19:23, 20:5, 30:24
frame [1] - 19:17
frequently [2] - 14:8, 14:10
Friday [1] - 38:18
front [1] - 6:16
full [1] - 40:5
fund [1] - 35:22
fundamental [1] - 33:25
funds [1] - 34:23

## G

gate [1] - 26:23
gathered [1] - 2:15
general [2] - 23:21, 36:9
generically [1] - 8:12
gentleman [1] - 20:20
given [4] - 4:22, 12:18, 29:25, 32:22
gosh [1] - 37:20
government [44] - 2:5, 2:23, 3:5, 4:8, 6:18, 6:25, 7:15, 8:6, 9:16, 10:8, 10:9, 10:20, 12:4, 13:2, 17:9, 17:14, 17:15, 17:17, 17:19, 18:4, 18:21, 19:16, 21:4, 22:21, 22:24, 23:1, 23:24, 24:4, 24:12, 24:14, 24:21, 24:23, 25:3, 26:11, 30:21, 31:19, 32:14, 34:16, 34:18, 36:25, 37:25, 39:6, 39:17
government's [6] - 9:20, 9:25, 17:7, 17:20, 22:13, 31:5
grand [1] - 37:15
granular [3] - 8:15, 8:24, 10:13
granularity [1] - 9:8
grave [1] - 17:5
great [3] - 10:3, 11:10, 18:8
greater [1] - 29:6
grew [1] - 22:14
grind [2] - 19:15, 20:10
grow [2] - 22:10, 22:11

## H

handle [2] - 37:7, 38:4
handling [1] - 16:7
happy [4] - 21:12, 21:19, 28:17, 38:25
hard [2] - 26:17, 28:10
HASSARD [1] - 1:19
Hassard [2] - 2:11, 38:19
hear [5] - 6:13, 15:16, 15:20, 21:15, 21:16
heard [2] - 24:18, 33:14
hearing [4] - 8:4, 31:15, 33:14, 39:22
hearings [1] - 21:23

help [11] - 2:16, 2:17, 16:15, 19:3, 20:16, 28:22, 28:23, 29:2, 32:2, 32:5, 32:7
helpful [3] - 2:23, 36:15, 36:18
hereby [1] - 40:3
herself [2] - 23:8, 34:6
Heuristic [2] - 35:12, 35:13
heuristic [6] - 7:6, 8:1, 8:14, 11:22, 14:8, 14:14
heuristics [19] - 2:19, 3:4, 7:11, 7:13, 7:17, 8:12, 8:13, 8:17, 8:22, 8:25, 9:9, 10:3, 10:13, 11:6, 12:2, 14:4, 15:15, 22:5, 26:7
hide [2] - 10:7
highlight [1] - 6:9
highly [5] - 9:15, 9:21, 29:5, 31:20
himself [3] - 9:23, 17:25, 33:9
honestly [1] - 38:14
Honor [22] - 2:6, 2:10, 2:20, 3:20, 5:6, 5:14, 10:17, 13:10, 15:18, 19:7, 23:11, 24:16, 25:22, 30:12, 35:19, 36:12, 36:20, 37:25, 38:21, 39:4, 39:7, 39:16
HONORABLE [1] - 1:8
hours [5] - 14:24, 14:25, 15:5, 15:7
hundreds [1] - 7:10
hurts [1] - 38:7
hypothetical [1] - 30:5
hypothetically [5] - 14:2, 16:18, 17:15, 18:25, 19:3

## I

identified [5] - 19:23, 21:7, 23:25, 27:24, 29:15
identifies [3] - 25:25, 34:7, 35:21
identify [2] - 2:4, 18:22
illegal [1] - 35:18
illicit [5] - 33:12, 33:22, 34:23, 35:21, 35:24
imagine [1] - 10:4
impeachment [4] -

4:3, 5:24, 29:10, 36:22
impermissible [1] - 6:7
implemented [5] - 4:9, 5:16, 8:23, 11:4, 15:10
important [7] - 11:24, 12:6, 22:4, 34:1, 34:2, 34:3, 37:1
IN [1] - 1:1
in-depth [1] - 25:11
inaccuracy [1] - 36:6
inappropriate [1] - 19:14
included [1] - 23:3
includes [1] - 11:6
including [2] - 5:15, 20:20
inconsistent [1] - 4:3
incorrect [1] - 37:11
individual [4] - 9:2, 18:4, 19:10, 29:25
individuals [2] - 21:14, 36:17
inform [1] - 35:1
information [28] - 3:3, 5:8, 6:24, 9:8, 9:22, 11:3, 11:6, 11:16, 12:21, 13:22, 15:3, 16:7, 16:20, 17:1, 22:4, 22:15, 24:13, 25:1, 26:17, 26:24, 27:10, 31:2, 31:18, 31:20, 31:23, 31:25, 37:9, 39:12
ingredients [1] - 9:4
injury [1] - 17:5
innocent [1] - 31:12
input [1] - 32:23
insisted [2] - 18:7, 18:8
insistent [1] - 20:21
instead [1] - 28:16
instructions [1] - 9:4
intellectual [1] - 26:24
intend [1] - 3:5
intended [1] - 18:12
interest [3] - 12:7, 23:25, 38:6
interested [2] - 10:13, 27:25
interesting [1] - 33:2
interests [2] - 4:18, 6:15
internal [1] - 22:19
internet [2] - 28:3, 29:22
interrupting [2] - 25:14, 27:18

introducing [1] - 7:15
investigates [1] - 7:18
investigations [2] - 24:14, 39:15
investigative [1] - 10:3
investigators [1] - 10:5
invoked [1] - 31:4
involve [1] - 24:12
involved [5] - 9:25, 24:2, 33:9, 34:23, 35:3
irrelevant [1] - 30:23
issue [13] - 4:23, 6:16, 12:9, 14:1, 16:13, 16:21, 18:8, 18:10, 26:16, 30:5, 36:14, 37:20, 39:21
issued [1] - 21:6
issues [4] - 13:5, 31:16, 36:16, 38:3
itself [3] - 7:11, 13:20, 25:8

## J

January [1] - 16:23
JEFFREY [1] - 1:15
Jeffrey [1] - 2:8
jeopardize [1] - 4:17
joined [1] - 2:7
Judge [1] - 20:8
JUDGE [2] - 1:8, 1:8
judgment [1] - 35:2
jury [7] - 4:24, 5:7, 34:19, 34:25, 37:24, 38:1, 38:10
jury's [1] - 35:1
JUSTICE [1] - 1:13
Justice [2] - 1:16, 5:9

## K

keep [2] - 6:20, 16:25
keeping [1] - 4:18
kept [1] - 19:13
kick [1] - 11:14
kickout [3] - 11:18, 11:19, 11:24
kickouts [1] - 11:7
kind [2] - 8:20, 33:1
knowing [1] - 17:11
knowledge [2] - 25:1, 25:11
knowledgeable [1] - 32:3
known [1] - 35:2
knows [2] - 16:16, 25:10

## L

lack [2] - 21:5, 32:4
laid [1] - 16:1
laundered [2] - 32:25, 34:15
laundering [4] - 10:1, 34:14, 34:23, 35:3
Laurent [1] - 30:7
Law [1] - 1:19
law [8] - 4:17, 15:19, 16:11, 20:2, 23:25, 27:12, 31:20, 39:13
lawyers [1] - 17:13
lead [1] - 21:8
lead-up [1] - 21:8
leads [1] - 32:6
least [5] - 19:3, 20:4, 21:15, 31:7, 35:9
legal [2] - 2:22, 2:25
legitimate [1] - 31:4
lengths [2] - 11:10, 18:9
lengthy [2] - 18:10, 30:8
less [4] - 10:25, 13:12, 13:13, 28:5
lethality [1] - 17:8
likelihood [2] - 3:12, 28:5
likely [3] - 3:14, 10:14, 13:5
limited [2] - 3:24, 4:4
limiting [2] - 30:17, 38:5
line [1] - 4:20
list [5] - 7:24, 8:20, 9:4, 12:12, 12:14
listed [1] - 7:11
listen [1] - 37:13
lists [2] - 8:21, 12:17
litigated [1] - 13:6
litigation [5] - 18:10, 26:24, 27:4, 27:15, 30:14
live [1] - 12:24
local [1] - 28:18
located [2] - 16:24, 16:25
look [20] - 13:11, 13:21, 14:19, 14:23, 16:15, 17:6, 17:23, 19:1, 20:13, 20:14, 20:25, 21:2, 27:1, 28:11, 28:12, 28:16, 29:2, 31:23, 37:3, 39:1
looking [10] - 7:25, 8:20, 8:22, 10:19, 11:21, 15:9, 18:8,

19:18, 19:25, 26:25
**lower** [1] - 35:15
**lying** [1] - 37:17

## M

**main** [1] - 21:21
**maintaining** [1] - 37:1
**management** [1] - 5:11
**manufactured** [1] - 17:4
**market** [4] - 26:7, 26:8, 28:13, 35:23
**markets** [2] - 34:12, 35:18
**Maryland** [2] - 18:25, 28:17
**material** [16] - 2:18, 3:9, 3:23, 5:18, 6:4, 6:20, 16:6, 17:22, 19:1, 19:4, 20:25, 21:2, 23:15, 30:20, 37:4, 39:10
**materials** [11] - 3:22, 3:25, 4:10, 4:12, 4:18, 17:25, 18:3, 18:5, 18:9, 18:12, 18:14
**mathematics** [1] - 29:1
**matter** [7] - 23:16, 26:12, 28:1, 29:10, 34:8, 36:4, 36:9
**mean** [8] - 14:7, 20:18, 22:1, 23:14, 24:6, 25:6, 28:24, 35:4
**meaningfully** [2] - 6:6, 20:13
**measures** [2] - 10:21, 12:8
**meeting** [1] - 14:20
**Mejia** [1] - 17:23
**memorandum** [1] - 2:21
**mentioned** [3] - 24:2, 32:10, 32:11
**mere** [1] - 24:25
**MICHAEL** [1] - 1:19
**Michael** [1] - 2:11
**mid** [2] - 19:18, 38:2
**mid-November** [1] - 19:18
**mid-trial** [1] - 38:2
**might** [7] - 28:3, 29:1, 29:6, 35:1, 36:10, 37:18
**mind** [1] - 31:17
**mistake** [1] - 29:20
**mole** [1] - 10:5

**money** [7] - 9:25, 26:8, 32:25, 34:12, 34:14, 35:3
**months** [1] - 10:11
**MOSS** [1] - 1:8
**most** [3] - 10:23, 24:4, 34:2
**motion** [1] - 2:17
**MOTION** [2] - 1:4, 1:7
**MR** [33] - 2:10, 21:19, 22:17, 23:11, 23:19, 24:9, 24:16, 24:18, 25:9, 25:22, 27:6, 27:13, 27:21, 29:8, 30:3, 30:11, 31:1, 32:20, 33:5, 34:4, 34:11, 35:4, 35:17, 36:12, 36:20, 36:25, 37:10, 38:5, 38:9, 38:14, 38:18, 38:24, 39:4
**MS** [24] - 2:6, 2:20, 3:2, 3:20, 5:5, 6:2, 6:22, 7:8, 8:19, 10:17, 11:13, 12:11, 13:10, 14:17, 15:6, 15:18, 15:22, 17:16, 19:7, 19:13, 20:23, 21:4, 39:6, 39:16
**multiple** [2] - 19:10, 31:17
**must** [2] - 35:2, 35:24

## N

**N.W** [1] - 40:11
**name** [2] - 20:20, 26:2
**nation** [1] - 10:19
**nation-state** [1] - 10:19
**national** [1] - 12:5
**nature** [1] - 16:5
**navigate** [1] - 4:23
**nearly** [2] - 15:13, 17:14
**necessarily** [1] - 29:3
**need** [10] - 5:10, 6:11, 16:24, 22:14, 22:21, 30:15, 32:1, 32:5, 37:5, 37:6
**needed** [2] - 18:9, 18:14
**needing** [1] - 19:9
**needs** [2] - 32:22, 34:25
**negligible** [1] - 9:9
**New** [2] - 1:17, 1:20
**new** [1] - 18:17
**nobody** [1] - 27:14
**noncompete** [2] -

21:10, 27:8
**nondisclosure** [1] - 21:1
**nonetheless** [1] - 3:13
**nontestifying** [6] - 16:15, 18:22, 19:11, 19:24, 32:8, 32:18
**notes** [1] - 40:5
**nothing** [5] - 25:25, 26:10, 34:6, 35:20, 39:6
**noticed** [3] - 25:2, 25:16, 38:20
**notion** [1] - 36:9
**November** [4] - 1:6, 19:18, 38:16, 40:7
**number** [5] - 2:21, 5:9, 34:16, 35:14, 38:20
**NW** [4] - 1:11, 1:14, 1:17, 1:24
**NY** [1] - 1:20

## O

**object** [1] - 30:16
**objection** [1] - 18:21
**objective** [1] - 28:16
**objectively** [1] - 28:4
**obvious** [1] - 37:2
**obviously** [6] - 3:18, 4:20, 12:22, 17:15, 26:20, 37:13
**occurs** [1] - 12:24
**OF** [5] - 1:1, 1:2, 1:7, 1:13, 40:1
**offer** [1] - 5:2
**offered** [3] - 5:1, 25:7, 36:11
**officer** [1] - 39:10
**Official** [2] - 1:23, 40:10
**OFFICIAL** [1] - 40:1
**one** [29] - 2:24, 3:2, 4:19, 4:22, 6:13, 6:18, 6:22, 9:6, 10:2, 11:5, 12:16, 13:4, 14:18, 16:9, 17:6, 17:12, 17:16, 22:2, 24:11, 28:8, 28:10, 29:3, 29:9, 29:14, 29:15, 30:3, 31:15, 31:17
**ones** [1] - 12:20
**ongoing** [2] - 10:5, 39:15
**open** [6] - 4:22, 5:3, 6:21, 14:9, 14:10, 14:23
**open-in-public** [1] - 4:22

**opened** [1] - 14:20
**operated** [1] - 34:5
**operates** [1] - 25:12
**operating** [2] - 12:13, 24:8
**operation** [1] - 12:10
**opinion** [5] - 2:15, 2:21, 13:11, 30:8, 30:9
**opportunities** [1] - 19:10
**opportunity** [2] - 14:9, 32:22
**oppose** [1] - 5:11
**opposed** [1] - 7:5
**order** [12] - 2:21, 4:8, 13:11, 16:2, 19:1, 21:8, 21:10, 22:2, 27:8, 32:15, 38:16, 39:21
**ordered** [1] - 18:16
**orders** [4] - 16:4, 16:8, 16:9, 21:6
**original** [5] - 6:23, 7:1, 12:15, 13:18, 15:11
**ought** [1] - 36:10
**outed** [1] - 4:16
**outlandishly** [1] - 19:14
**outside** [4] - 4:24, 5:6, 22:20, 29:15
**outspoken** [1] - 19:16
**overstated** [1] - 33:21
**own** [7] - 16:13, 28:1, 28:13, 32:5, 33:13, 34:2, 35:7

## P

**p.m** [1] - 39:22
**P.M** [1] - 1:6
**page** [1] - 26:3
**paper** [2] - 21:21, 22:20
**papers** [1] - 3:11
**parameters** [2] - 5:21, 14:21
**part** [7] - 7:4, 9:17, 12:13, 17:20, 27:19, 29:18, 29:24
**parte** [1] - 38:19
**particular** [14] - 4:12, 7:19, 8:16, 10:21, 12:19, 15:7, 16:5, 18:4, 18:5, 18:9, 21:4, 21:14, 29:25
**particularly** [3] - 12:20, 13:5, 29:25
**parties** [2] - 6:14, 18:15

**parts** [1] - 11:1
**passion** [1] - 28:15
**past** [2] - 18:24, 19:19
**pattern** [1] - 15:9
**patterns** [1] - 7:19
**Pearlman** [1] - 2:8
**PEARLMAN** [1] - 1:15
**peer** [1] - 22:20
**peer-reviewed** [1] - 22:20
**Pelker** [6] - 2:7, 2:19, 24:1, 24:15, 39:5, 39:8
**PELKER** [25] - 1:13, 2:6, 2:20, 3:2, 3:20, 5:5, 6:2, 6:22, 7:8, 8:19, 10:17, 11:13, 12:11, 13:10, 14:17, 15:6, 15:18, 15:22, 17:16, 19:7, 19:13, 20:23, 21:4, 39:6, 39:16
**pending** [1] - 2:17
**Pennsylvania** [1] - 1:14
**people** [18] - 10:6, 14:8, 17:5, 17:6, 17:12, 26:25, 27:20, 27:25, 28:3, 28:14, 28:16, 28:24, 28:25, 29:23, 32:9, 32:10, 32:13
**percent** [4] - 33:23, 33:24, 34:24
**perception** [3] - 27:13, 27:16, 27:17
**perhaps** [4] - 3:14, 4:24, 16:13, 22:2
**period** [2] - 10:11, 14:21
**permit** [1] - 5:2
**person** [5] - 19:3, 20:14, 20:15, 22:9, 27:3
**perspective** [2] - 31:21, 31:22
**pervasive** [1] - 27:17
**pieces** [1] - 23:4
**pivot** [1] - 2:24
**place** [3] - 3:9, 26:2, 30:23
**Plaintiff** [2] - 1:3, 1:10
**plan** [1] - 37:15
**PLLC** [1] - 1:19
**point** [26] - 3:11, 4:7, 5:18, 8:9, 10:18, 14:14, 16:14, 18:17, 18:20, 19:24, 20:19, 22:23, 22:25, 23:5, 23:17, 23:19, 25:7,

25:21, 26:15, 29:15, 35:19, 35:24, 35:25, 36:3, 36:7, 36:13
**points** [3] - 21:19, 21:21, 29:8
**policies** [1] - 5:10
**political** [2] - 28:15, 29:9
**politically** [1] - 29:5
**portion** [1] - 35:10
**portions** [2] - 12:19, 13:1
**position** [2] - 19:6, 24:25
**positions** [1] - 6:14
**positives** [1] - 11:11
**possible** [1] - 22:16
**possibly** [1] - 16:17
**posture** [2] - 17:21, 18:1
**potential** [1] - 29:11
**potentially** [3] - 11:15, 14:5, 16:12
**power** [2] - 20:12, 30:1
**precise** [1] - 9:5
**prejudice** [1] - 3:18
**preparation** [1] - 19:9
**prepare** [1] - 37:12
**prepared** [1] - 19:2
**preparing** [1] - 32:2
**presence** [2] - 4:24, 5:6
**present** [3] - 2:12, 22:24, 23:2
**pretrial** [1] - 38:3
**pretty** [1] - 13:18
**prevent** [1] - 26:14
**principle** [3] - 23:20, 36:4, 36:9
**privacy** [2] - 28:2
**problem** [3] - 16:22, 26:21, 27:19
**problems** [1] - 28:6
**procedures** [1] - 5:16
**proceeding** [2] - 18:18, 30:5
**proceedings** [1] - 40:6
**proceeds** [1] - 14:12
**process** [6] - 16:12, 16:21, 23:16, 29:21, 37:14, 38:12
**produced** [4] - 2:18, 6:25, 30:23, 31:6
**production** [6] - 23:3, 23:12, 24:3, 24:22, 25:1, 39:11
**proffer** [4] - 4:23, 5:6, 37:6, 38:2
**program** [1] - 25:8

**promptly** [1] - 39:21
**proper** [2] - 5:1, 5:24
**properties** [1] - 8:21
**property** [1] - 26:24
**proposed** [1] - 5:21
**proposing** [1] - 19:13
**proprietary** [2] - 27:11, 31:22
**protecting** [1] - 10:24
**protective** [11] - 4:8, 16:2, 16:4, 16:7, 16:8, 19:1, 21:6, 21:8, 21:10, 27:8, 32:15
**prove** [1] - 29:19
**provide** [4] - 7:22, 8:2, 22:19, 38:17
**provided** [1] - 8:6
**provides** [1] - 15:13
**public** [2] - 4:22, 14:6
**Public** [1] - 28:23
**publicize** [1] - 4:7
**publicly** [1] - 4:16
**pull** [1] - 11:2
**purpose** [2] - 5:1, 31:15
**purposes** [5] - 6:7, 12:23, 22:13, 22:15, 39:14
**pushing** [1] - 26:17
**put** [7] - 5:20, 9:1, 13:18, 14:11, 22:16, 24:3, 28:14
**putting** [1] - 3:25

**Q**

**qualified** [1] - 20:8
**quantity** [1] - 34:23
**questions** [10] - 2:16, 2:22, 2:24, 2:25, 3:2, 6:10, 6:22, 10:2, 21:20, 24:11
**quickly** [2] - 10:12, 12:25
**quite** [5] - 8:5, 14:13, 21:25, 25:5, 26:15

**R**

**raised** [6] - 2:21, 3:3, 6:23, 20:3, 22:25, 31:16
**raising** [2] - 32:14, 36:16
**RANDOLPH** [1] - 1:8
**rates** [1] - 22:19
**rather** [4] - 11:1, 14:5, 28:3, 38:2
**reach** [1] - 28:23

**Reactor** [12] - 22:7, 23:6, 25:3, 25:8, 25:17, 25:19, 26:5, 26:10, 33:19, 33:21, 35:5, 35:21
**read** [2] - 4:6, 5:17
**reading** [1] - 2:15
**ready** [2] - 8:9, 20:17
**real** [5] - 11:5, 18:3, 19:9, 19:15, 28:8
**reality** [1] - 27:16
**realize** [1] - 14:13
**really** [22] - 3:8, 3:10, 4:3, 5:24, 6:6, 6:7, 8:25, 9:5, 9:10, 9:12, 10:23, 12:21, 13:4, 13:6, 13:13, 13:14, 13:21, 17:13, 22:1, 22:13, 29:14, 33:25
**reason** [6] - 20:4, 26:16, 27:10, 28:11, 31:8, 34:21
**reasons** [2] - 16:25, 37:2
**record** [5] - 2:5, 4:7, 5:18, 14:6, 22:11
**redact** [1] - 13:15
**refer** [1] - 7:4
**reflect** [1] - 36:11
**refutes** [1] - 30:9
**regarding** [4] - 3:3, 4:10, 8:3, 16:2
**regardless** [1] - 34:9
**regards** [1] - 24:21
**relate** [1] - 6:7
**relating** [1] - 2:19
**relation** [1] - 34:7
**relevant** [8] - 5:1, 7:16, 13:5, 22:15, 25:2, 25:9, 26:19, 34:4
**relied** [1] - 12:4
**rely** [1] - 3:25
**remain** [1] - 31:20
**remains** [1] - 39:12
**remember** [1] - 22:17
**reopen** [1] - 18:8
**repeatedly** [1] - 26:11
**report** [23] - 3:6, 4:1, 4:3, 7:1, 7:3, 7:5, 7:11, 7:23, 8:3, 8:5, 9:5, 12:15, 12:19, 12:20, 13:1, 13:14, 13:17, 13:20, 17:7, 25:25, 26:3, 34:17, 34:18
**REPORTER** [1] - 40:1
**Reporter** [3] - 1:22, 1:23, 40:10
**reports** [2] - 7:9, 17:21

**represent** [1] - 39:12
**representation** [3] - 37:11, 39:9, 39:18
**represented** [1] - 31:19
**request** [5] - 6:19, 13:8, 19:24, 30:25, 31:1
**requested** [1] - 26:16
**require** [1] - 4:23
**resist** [1] - 25:20
**resolve** [3] - 2:17, 37:21, 38:3
**respect** [9] - 6:15, 6:16, 12:22, 17:7, 21:2, 22:12, 23:5, 28:1, 29:22
**respectfully** [1] - 30:11
**respond** [2] - 21:17, 33:7
**responsibility** [1] - 19:23
**result** [1] - 21:22
**revealing** [1] - 26:13
**review** [13] - 6:6, 7:8, 7:24, 8:2, 8:7, 13:10, 18:14, 23:16, 23:22, 30:20, 31:10, 32:23, 37:13
**reviewed** [3] - 22:20, 39:10, 39:16
**reviewing** [1] - 31:25
**RMR** [2] - 1:22, 40:9
**rob** [2] - 14:8, 14:12
**robber** [1] - 15:3
**robbers** [1] - 15:8
**robbery** [1] - 14:24
**ROMAN** [1] - 1:5
**Roman** [2] - 2:3, 2:11
**Room** [2] - 1:23, 40:10
**row** [2] - 7:11
**run** [1] - 28:5

**S**

**sake** [1] - 25:23
**sauce** [1] - 26:13
**saw** [1] - 3:10
**schedule** [1] - 18:18
**scientific** [1] - 22:20
**scientist** [2] - 18:24, 20:9
**secrecy** [1] - 31:3
**secret** [3] - 17:1, 26:13, 31:10
**secrets** [1] - 5:15
**security** [3] - 12:6, 16:24, 16:25
**see** [9] - 10:18, 13:4,

20:4, 26:15, 28:18, 30:18, 34:8, 37:19, 38:21
**seek** [3] - 3:22, 4:8, 5:11
**seeking** [2] - 17:18, 18:13
**seem** [3] - 25:11, 28:14, 29:16
**sees** [1] - 32:21
**SEFRANEK** [1] - 40:3
**Sefranek** [3] - 1:22, 40:9, 40:9
**seized** [1] - 24:3
**send** [2] - 38:1, 38:25
**sense** [4] - 30:15, 37:4, 37:8, 37:10
**sensitive** [24] - 3:4, 4:10, 6:24, 7:5, 8:18, 8:24, 9:9, 9:15, 12:20, 13:7, 13:12, 13:13, 13:15, 15:13, 15:15, 16:7, 20:2, 24:13, 27:9, 27:11, 27:12, 31:20, 39:11, 39:13
**sensitivity** [2] - 4:20, 31:18
**sentencing** [1] - 33:17
**separate** [2] - 23:5
**series** [1] - 13:21
**service** [3] - 7:20, 10:22, 11:17
**service's** [1] - 7:18
**service-specific** [2] - 10:22, 11:17
**services** [6] - 11:21, 11:22, 12:9, 12:14, 24:1, 24:2
**set** [1] - 20:13
**sharing** [1] - 13:3
**Shaw** [1] - 34:17
**shell** [3] - 14:11, 14:20, 14:23
**showing** [4] - 3:19, 33:9, 33:10, 33:20
**shut** [1] - 29:23
**sic** [1] - 31:4
**side** [2] - 3:15, 20:21
**sidebar** [1] - 38:1
**sides** [1] - 6:15
**sign** [1] - 21:1
**signaling** [1] - 26:23
**signed** [1] - 38:17
**significant** [4] - 3:8, 11:24, 12:5
**significantly** [2] - 17:17, 20:11
**similar** [1] - 24:7
**simply** [5] - 18:18,

18:25, 20:16, 23:1, 26:12
**sit** [1] - 20:21
**sites** [3] - 24:8, 33:12, 33:22
**sitting** [1] - 36:21
**situated** [3] - 16:19, 18:2, 18:6
**situation** [1] - 16:21
**Sixth** [1] - 36:14
**skill** [1] - 20:13
**skills** [1] - 31:11
**slice** [1] - 13:8
**software** [7] - 21:24, 23:13, 25:8, 25:12, 26:18, 30:13, 31:2
**someday** [1] - 9:22
**someone** [5] - 9:12, 15:9, 16:22, 29:21, 32:7
**sometimes** [1] - 4:9
**somewhat** [1] - 16:6
**somewhere** [1] - 20:10
**sorry** [4] - 23:17, 24:16, 27:22, 33:6
**sort** [15] - 4:7, 4:10, 5:6, 5:24, 6:20, 13:22, 22:8, 24:19, 26:13, 27:23, 29:5, 31:3, 31:24, 36:8, 37:6
**sources** [1] - 32:7
**specific** [6] - 6:3, 7:20, 8:16, 8:21, 10:22, 11:17
**specifically** [1] - 14:23
**specificity** [1] - 18:11
**specifics** [1] - 14:4
**spend** [1] - 7:12
**spending** [1] - 7:17
**start** [1] - 37:24
**started** [2] - 33:3, 33:8
**starting** [1] - 2:5
**state** [1] - 10:19
**statement** [3] - 16:11, 24:18, 24:19
**States** [4] - 1:23, 2:3, 2:7, 29:15
**STATES** [3] - 1:1, 1:2, 1:8
**static** [2] - 12:12, 12:17
**stenographic** [1] - 40:5
**Sterlingov** [19] - 2:3, 2:12, 3:19, 6:19, 9:21, 13:3, 16:19, 20:1, 22:16, 26:1, 30:20, 31:9, 32:17,

32:20, 33:9, 34:5, 34:7, 36:4
**sterlingov** [1] - 13:25
**STERLINGOV** [1] - 1:5
**Sterlingov's** [3] - 6:17, 7:16, 26:2
**still** [16] - 4:15, 7:4, 8:1, 12:2, 12:10, 13:7, 19:2, 21:9, 22:8, 23:7, 23:11, 23:12, 24:8, 24:12, 24:13, 35:7
**straight** [1] - 35:8
**straight-out** [1] - 35:8
**street** [1] - 15:8
**Street** [2] - 1:11, 1:20
**strong** [1] - 29:4
**study** [1] - 6:6
**stuff** [3] - 16:16, 32:21, 35:18
**subject** [5] - 5:4, 19:1, 20:12, 30:1, 32:14
**subpoena** [1] - 18:10
**substantial** [2] - 33:15, 35:10
**substantive** [1] - 13:22
**sudden** [1] - 30:22
**sue** [1] - 27:5
**sufficient** [2] - 18:11, 32:4
**sufficiently** [1] - 18:23
**suggesting** [2] - 29:13, 34:1
**suggestion** [1] - 13:11
**super** [1] - 33:25
**superficial** [1] - 24:19
**supervillain** [1] - 31:13
**supplement** [2] - 7:6, 8:25
**supplemental** [16] - 3:4, 6:24, 7:2, 11:5, 12:19, 13:1, 14:22, 21:22, 22:1, 23:3, 23:12, 24:3, 24:22, 25:1, 37:16, 39:11
**suppose** [6] - 4:19, 4:22, 16:11, 20:4, 20:18, 34:21
**Supreme** [1] - 15:23

## T

**table** [1] - 2:7
**tables** [2] - 7:24, 8:20
**tailored** [1] - 21:9
**TAMARA** [1] - 40:3
**Tamara** [3] - 1:22, 40:9, 40:9

**technical** [4] - 9:14, 9:22, 12:24, 25:21
**techniques** [1] - 24:7
**ten** [4] - 11:20, 11:22, 12:9, 24:2
**terms** [4] - 26:13, 30:13, 30:17, 32:20
**tested** [1] - 12:3
**testified** [4] - 22:18, 23:8, 25:13, 34:6
**testify** [4] - 4:2, 19:3, 23:8, 28:19
**testifying** [6] - 18:17, 19:11, 20:16, 25:10, 28:20, 32:18
**testimony** [2] - 8:3, 22:18
**text** [1] - 5:17
**THE** [61] - 1:1, 1:1, 1:8, 2:2, 2:9, 2:13, 3:1, 3:10, 4:19, 6:1, 6:9, 7:7, 8:8, 9:18, 11:12, 12:9, 12:18, 13:24, 15:5, 15:16, 15:19, 16:10, 18:15, 19:12, 19:20, 20:24, 21:16, 21:25, 22:23, 23:17, 24:6, 24:11, 24:17, 25:5, 25:14, 27:3, 27:9, 27:18, 27:22, 29:12, 30:8, 30:25, 31:14, 33:1, 33:6, 34:10, 34:19, 35:7, 36:1, 36:15, 36:24, 37:3, 37:23, 38:8, 38:13, 38:15, 38:23, 39:1, 39:5, 39:8, 39:20
**theater** [1] - 31:3
**themselves** [1] - 26:14
**therefore** [2] - 13:8, 35:12
**thinking** [3] - 5:14, 23:10, 29:14
**thoughts** [1] - 31:14
**thousands** [1] - 7:10
**threatened** [2] - 27:4
**title** [1] - 26:3
**today** [6] - 6:11, 10:14, 27:11, 30:19, 36:21, 37:15
**together** [2] - 4:1, 9:1
**top** [1] - 30:3
**topic** [1] - 38:15
**TOR** [1] - 1:18
**Tor** [1] - 1:19
**tor** [1] - 2:10
**touch** [2] - 27:1, 27:15
**trace** [3] - 10:6, 10:10, 29:21

**traced** [1] - 26:15
**traces** [1] - 26:1
**tracing** [7] - 9:23, 9:24, 10:8, 10:20, 25:24, 26:11, 29:17
**trade** [1] - 5:15
**transaction** [1] - 7:19
**transactions** [2] - 7:21, 10:6
**TRANSCRIPT** [1] - 1:7
**transcript** [2] - 40:4, 40:6
**trial** [24] - 3:5, 3:13, 3:17, 3:21, 4:8, 4:21, 4:22, 6:4, 6:11, 7:15, 9:15, 12:15, 19:8, 19:9, 20:17, 20:22, 26:19, 37:5, 37:12, 37:18, 37:24, 38:2, 38:7
**true** [4] - 4:13, 28:10, 40:4, 40:5
**trustworthy** [1] - 18:23
**try** [4] - 4:6, 13:14, 19:25, 37:21
**trying** [6] - 9:12, 10:16, 13:24, 29:17, 29:21, 31:4
**turn** [2] - 8:10, 15:19
**turned** [2] - 5:3, 16:18
**turns** [1] - 17:5
**two** [5] - 8:19, 9:7, 28:8, 31:14, 32:1
**type** [4] - 5:7, 8:13, 14:14, 16:19
**types** [3] - 26:6, 28:5, 31:16

## U

**U.S** [1] - 1:13
**u.S** [1] - 1:16
**ultimately** [1] - 21:9
**underinclusive** [1] - 11:10
**underlied** [1] - 22:6
**understood** [4] - 14:3, 23:11, 24:15, 25:22
**unique** [1] - 16:6
**uniquely** [3] - 16:19, 18:2, 18:6
**UNITED** [3] - 1:1, 1:2, 1:8
**United** [4] - 1:23, 2:3, 2:7, 29:15
**universities** [1] - 28:18
**University** [2] - 18:24, 28:17

**unless** [2] - 2:22, 2:25
**unusual** [1] - 18:1
**unwilling** [1] - 28:12
**up** [12] - 5:24, 9:1, 10:8, 15:23, 19:8, 21:8, 22:22, 26:6, 26:19, 29:5, 31:12, 38:8
**USAO** [1] - 1:11
**USAO-DOJ** [1] - 1:11
**useful** [1] - 37:9
**uses** [2] - 7:13, 7:20

## V

**value** [4] - 4:3, 9:10, 10:4
**various** [1] - 7:14
**vendors** [1] - 24:8
**version** [1] - 28:13
**versus** [2] - 9:4, 9:5
**view** [4] - 6:19, 17:25, 18:3, 33:21
**viewing** [2] - 18:5
**views** [2] - 28:1, 29:9
**voluminous** [2] - 6:4, 7:2
**volunteered** [1] - 22:3
**vs** [1] - 1:4

## W

**walk** [2] - 4:19, 19:4
**walks** [1] - 7:14
**Wall** [1] - 1:20
**wants** [1] - 27:14
**Washington** [6] - 1:5, 1:12, 1:14, 1:17, 1:24, 40:11
**ways** [3] - 9:23, 19:25, 29:23
**weigh** [1] - 31:16
**weighed** [1] - 11:4
**weighing** [1] - 12:16
**weighted** [1] - 9:1
**well-situated** [1] - 16:19
**whack** [1] - 10:5
**whack-a-mole** [1] - 10:5
**whole** [1] - 32:24
**willing** [4] - 26:23, 28:11, 35:9, 35:11
**win** [1] - 37:16
**witness** [4] - 6:3, 6:8, 25:16, 35:7
**witnesses** [3] - 5:25, 22:13, 37:14
**word** [2] - 30:9, 32:2
**works** [2] - 5:7, 23:6

**world** [3] - 10:4, 12:24, 30:4
**wrote** [1] - 30:8

### Y

**year** [1] - 27:7
**years** [1] - 10:12
**York** [2] - 1:17, 1:20
**you-all** [1] - 2:16
**yourself** [2] - 2:4, 37:4

### Z

**zero** [1] - 35:16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

ROMAN STERLINGOV,

        Defendant.

_____/

Criminal Action
No. 1: 21-399

Washington, DC
February 12, 2024

9:08 a.m.

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    CATHERINE PELKER
                    U.S. DEPARTMENT OF JUSTICE
                    950 Pennsylvania Ave NW
                    Washington, DC 20530

                    CHRISTOPHER BRODIE BROWN
                    DOJ-USAO
                    601 D Street, N.W.
                    Suite 5.1527
                    Washington, DC 20530

                    JEFFREY PEARLMAN
                    DOJ-CRM
                    Ccips
                    US Dept of Justice
                    1301 New York Ave NW
                    Washington, DC 20005

APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Defendant:       TOR EKELAND
                         MICHAEL HASSARD
                         TOR EKELAND LAW PLLC
                         30 Wall Street
                         8th Floor
                         Brooklyn, NY 10005


Court Reporter:          SHERRY LINDSAY
                         Official Court Reporter
                         U.S. District & Bankruptcy Courts
                         333 Constitution Avenue, NW
                         Room 6710
                         Washington, DC 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY: Criminal case 21-399, *United States of America versus Roman Sterlingov.*

Would counsel please state your name for the record, starting with government counsel?

MR. PEARLMAN: Jeffrey Pearlman for the government. With me is Chris Brown, and Alden Pelker for the government.

THE COURT: All right. Good morning to you.

MR. EKELAND: Tor Ekeland and Michael Hassard for the defendant, Roman Sterlingov, who is present in court.

THE COURT: All right. Good morning to you as well. I want to get to the jury selection process, because we have a lot of people waiting here. And I want to make sure we get it done today. There are a couple of things I wanted to mention to you preliminarily. And then we can come back for openings and discuss other issues that we need to discuss before we do openings.

THE REPORTER: Can you turn up the microphone?

THE COURT: Can you not hear me?

MR. EKELAND: It is a little garbled to me.

THE COURT: Well, I will do my best to speak up.

First off, it appears to me that Mr. Sterlingov was successful in getting the hair cut and the shave.

You can answer, Mr. Ekeland.

MR. EKELAND: I haven't had a chance to speak with

him this morning, but it looks like --

May he address the Court?

THE COURT: Yes, if he wants to.

THE DEFENDANT: Your Honor, I did get a haircut, although, there is a few issues with it, it should be fine. But there are issues with shaving. This facility, the CDF part of it, and they didn't give you any razors or any ability to shave. When they shave you, they do it with a cutter?

THE COURT: A straight razor, a blade?

THE DEFENDANT: No, a machine.

THE COURT: I see.

THE DEFENDANT: It doesn't clean shave.

THE COURT: It is not a close shave.

THE DEFENDANT: Yeah. No, it is not a razor, it is just a machine. And I am not sure that they will be able to provide that every day of the trial.

THE COURT: If it is an issue, let me know. From here at least, you look fine to me. If there is an issue, let me know and I will see what I can do to address it.

THE DEFENDANT: I would like you to ask them to transfer me to CTF. I have been looking into issues for a while and all of them are resolved there.

THE COURT: I will -- did we ask the marshal to come by? Was he able to come back?

I will follow up. I did contact the marshal and I

will follow up. All I can do is make a request and then I will see what they say.

I do want to mention to you all that I currently have a jury that is deliberating in another case. And so it is possible that I may get a jury note or a verdict while we are involved in jury selection here and I will have to excuse myself and go take care of that. Let's see here.

For efficiency, quite frankly, I think the only difficulty we are going to have in picking a jury in this case is how lengthy the trial is going to be. We are going to have a lot of people who will just say that they can't serve for that long. I probably will jump to that question first, when I follow up with the jurors. If everyone is in agreement, either because of that or for other reasons, a person doesn't speak English well or has health issues, if we are in agreement early on in the selection, I am going to look up at you. And if you both say me to, no objection, Your Honor, I will just look at you and say no objection, I will go ahead and excuse that person, before we spend another 10 minutes going through and asking about their views about the internet, you know, versus not going -- if a person is not going to sit anyway. So be prepared to signal me on that, just for the sake of efficiency, by and large.

Go ahead.

MR. PEARLMAN: Your Honor, if I may, but you will

inquire as to their availability, there will back and forth about that?

THE COURT: Oh, yeah. Yes, I am saying someone where the person is going to simply say, this case would be an extreme hardship. And they are going to say, I am a doctor, I have got 75 surgeries scheduled for the next month, people will die if I serve as a juror in this case. I will go, okay, and you will say no objection, no objection and then we'll know that person -- we won't waste any further time on that person.

MR. EKELAND: Thank you, Your Honor.

THE COURT: I am going to tell the jurors absent any disagreement on this that the trial -- that we expect the presentation of evidence to be done by March 7th. Quite frankly, I am a little surprised. Obviously, you know the case in a way I don't. I am surprised this case is going to take that long. But unless you think that is ill advised, that is what I am going to tell the jury or the prospective jury.

Oh, a lot of time when I get people with excuses that are not overwhelming, like my example of the surgeon, I probably will go ahead and confer with you on the phone. And even if we decide to excuse the person, I probably will send the person back to their seat. Because I don't want to create a template for people who would rather not spend a month in jury service where they know that if they say, I have non-refundable plane tickets, that is the end of the inquiry.

And they will then -- -- I have seen it before where the next 10 people will say, I have non-refundable plane tickets. So rather than on the public record excuse that person, I will send them back to their seat. And the deputy clerk will at some point later during a break, keep track of that and let people know if we decide they were excused, but rather than creating that type of template.

The government filed a motion with respect to the voir dire and asked that I preclude the defense from using this as an opportunity to make improper argument to the jury, including jury nullification and so forth. I should be clear to both parties, that I do not regard this as an opportunity for any argument to the jury. We are not beginning argument in this case. And you should not use the jury selection process as an opportunity for argument of any type. Nor is it an opportunity to ingratiate yourself with prospective jurors or to pick a fight with the juror that you want to exclude. It is an opportunity for brief follow-up to questions that I have asked and we have already agreed are appropriate questions to ask. It is not an open-ended inquiry.

Under Rule 24, if I conclude that the parties are not abiding by my instruction in this respect, I will not allow counsel to ask any follow-up questions and you will submit to me in writing any follow-up questions you want to ask. So I encourage you to be thoughtful about the follow-up questions

you ask.  And by way of example, what I have in mind is a juror says that they may be biased in favor of or against law enforcement for X reason.  And I ask the person some questions about that and ask the person whether they can nonetheless be fair and impartial and they say, yes, I can be.  And someone wants to get up and say -- ask a follow-up question and say, well, when you said before that you were concerned about whether you could be impartial, do you feel as though you could put those concerns aside?  That is the type of follow up that I have in mind.  I don't have in mind getting up and just going onto entirely new lines of questioning that were not raised in the prospective juror's answers to the questionnaire or to my questions, both the ones that I delivered to everybody together and the follow-up questions.  It is not an opportunity for open-ended follow up.

And I will tell you this by way of my experience.  I mean, I am just finishing this other trial.  And I would say two-thirds of the time there was no follow up, but one-third of the time there was one or two questions follow up.  I am not saying that is a strict rule.  That has sort of been my experience of what I have seen.  And certainly it is not an opportunity to engage in any lengthy conversation.  Let's see here.

The defense filed something last night asking that I rule on the pending venue motion and *Daubert* motions.  I have

already told you a substantial amount about my thinking on those issues. I will -- I don't want to take the time to do it now while we have prospective jurors waiting. But I will give you an oral ruling form the bench explaining my ruling in greater detail. But just for your preparation purposes, I have already indicated to you that I am inclined to deny the venue motion. Although I thought that hidden within that venue motion was just a substantive issue that didn't go to venue, that went to applicability of the DC statute. And we all agreed that I would give you an opportunity subsequently, if you wanted to, to brief and address those issues perhaps in a post-trial briefing. But I will give you a further analysis.

And then with respect to the *Daubert* issues, the defense has withdrawn Ms. Still and Dr. Dror. And I think I ruled in general with respect to the remaining defense witnesses, although something was filed I think it was -- I am losing track -- last night or shortly before last night, a filing from the government which I might -- I mean from the defense which I might infer is a partial motion for reconsideration with respect to Cabanas and Verret by providing certificates with respect to their additional certifications or training.

And if you want to raise something with respect to that, we can come back to that. And I am going to have to give you my rulings with respect to Scholl, Bisbee, Mazars de

Mazarin, and Vlahakis, for purposes of your trial preparation, I think you can assume that I am going to allow in the bulk of that testimony. Although, there may be some areas where I limit what is allowed. But I will give you more complete description, very brief description of my reasoning as to all of that before you open.

Trying to read my own handwriting here.

Well, the government filed a motion requesting that my preliminary jury instructions -- I tell the jury that I am going to allow jury questions, which I have not done in the past. It does me seem to this is a case in which that might be appropriate. I want to hear from the defense. We don't need to take the time to do it right now before I make a decision about doing that, but it does strike me when dealing with some highly technical issues that permitting jurors to ask questions in the very limited manner that it is allowed under the red book, provision might be appropriate. But that would only be after the lawyers have asked all of the questions before the witness is dismissed. And it would be in writing to me and I would then discuss it with you and decide whether to ask the question or not.

And then one final thing that I wanted to raise, before we get going now was the motion -- again, I think it was filed last night -- the defense filed on a discovery issue. And said they just received an additional bulk of -- a great

bulk of additional discovery. So maybe if the government could respond to that.

MS. PELKER: Yes, Your Honor. So the government pushed out discovery on Saturday night. The vast majority of that discovery is Jencks and cooperator discovery, as well as discovery pertaining to updated trial visuals of demonstratives and summary charts, much of which we have previously provided to defense in prior versions. We wanted to make sure they had the most updated versions. The size of the file is largely driven by two database files that pertain to a cooperator, which we produced out of, frankly, an overabundance of caution. Those two files together total 953 megabytes, so almost the entirety of it. Spreadsheets pertaining to that work have been produced to defense prior to the previous trial date. And in doing our final due diligence, I don't believe there is anything that is significantly new in these database files. We wanted to give them all of this because it is sensitive cooperator discovery. And that is the reason for the production.

There are two actual new pieces of information that were provided. There is a scrape of the -- or a print off of the defendant's public Reddit post. And there is also a finalized set of translations for some post on another forum that was made by the defendant. We had produced those posts and messages to the defense on February 3rd and flagged in our

discovery letter that the official translations were in process and would be provided as soon as we had them.

THE COURT: Have you been able to identify for defense, just to save them time, what is new in the discovery that they have provided? So they don't have to go through all of it to figure out what is new.

MS. PELKER: I believe that it should be fairly self evident based on the folders. But the two new items are the Reddit post, which is titled, Captain something Reddit post. And then the exploit meth folders, which is an update of a prior production.

THE COURT: Okay.

MS. PELKER: And in the trial visuals, there are updates based on updates to the charts that have been previously provided.

THE COURT: All right. Mr. Ekeland.

MR. EKELAND: Yes, Your Honor.

THE COURT: Make sure you are at a microphone.

MR. EKELAND: Your Honor, it is -- again, it is over a gigabyte worth of data. So we have been unable to look at everything. So I can't say one way or the other right now whether the government's representations are accurate. As for the database files that Ms. Pelker is referencing, one of them is an 800 megabyte SQL file that we need specialized software to open up. Apparently there is a spreadsheet that I don't

know that has been produced or not before that shows that government accessed all of Mr. Sterlingov's passwords to all of his accounts from his laptop. Nothing in there shows that he is operating Bitcoin Fog. But the issue is that we got this all on Saturday around 9:30 right, obviously, on the eve of trial. We just haven't had the time to look at it. So I am a little uncomfortable making representations to the Court as to what is or what isn't in it. I am not sure it is all Jencks. It might be, it might not. There might be new discovery in there that we haven't seen or maybe there is stuff they produced and we haven't missed.

And there are some concerns. And, again, I don't know whether or not, because I haven't looked at it that there is -- you know may be potentially Brady concerns in here with the spreadsheet. I do not know. What we are asking for is a couple days, just to be able to go look through this volume of discovery, rather than having it all, you know, sort of given to us on Saturday night. We also got another production last night. And this was translations. And stuff that is more in line with what I am used to on the eve of trial. But a gigabyte of data on the eve of trial I think is burdensome to the defense. So we ask for a short continuance so we can evaluate.

THE COURT: The problem is I have got a trial the day after we finish this trial. So any continuance in this means

you all have to be shorter in putting your case on.  And I don't know how I control that.

I have to say, I am not convinced there is a need for a continuance based on Ms. Pelker's description of what was provided.  You may need to look at it.  I am a little surprised you haven't had a chance to glance at it yet.  But if you look at it and there is a problem, let me know.  But at this point, Ms. Pelker is telling me what she says is there and you are telling me you don't know what is there.  I have to go at least for now with what she has described.

MR. EKELAND:  Your Honor, I do know, for instance, there is an 800 megabyte SQL file.

THE COURT:  I know.  Ms. Pelker has just described to us what it is.  It is something that has been previously produced that they are giving you the most absolutely updated version of.  So they are being careful to make sure you have the absolutely most updated version.

MR. EKELAND:  Your Honor, we will go back and look again, because we have not had time to closely look at it.  But we just object to getting a gigabyte of discovery on Saturday on the eve of trial.

THE COURT:  Okay.  All right.  So anything else that we need to address before we bring the prospective jurors in?

MS. PELKER:  Nothing from the government, Your Honor.

THE COURT:  So I am going to step off the bench while

the deputy clerk arranges everybody.  And we will get going with the jury selection.

(Recess taken at 9:28 a.m.)

(Jury in at 10:02 a.m.)

THE COURTROOM DEPUTY:  Calling criminal case 21-399, *United States of America versus Roman Sterlingov*.

Would counsel please state their name for the record, starting with government counsel.

MR. PEARLMAN:  Good afternoon, Your Honor.  Jeff Pearlman for the government.  With me are attorneys Christopher Brown and Christine Pelker.

THE COURT:  All right.  Good morning.

MR. EKELAND:  Good morning, Your Honor.  Tor Ekeland and Michael Hassard for Defendant Roman Sterlingov, who is present in court.

THE COURT:  All right.  Thank you.

Good morning.  And welcome to the United States District Court.  I am Judge Moss.  And I am going to be the presiding judge in this case.  You have all been called to this courtroom for possible selection in a criminal case entitled *United States versus Roman Sterlingov*.  Let me ask that you all first stand so the deputy clerk can administer the oath and then we can proceed.

(Jury panel sworn.)

THE JURY:  Yes.

THE COURTROOM DEPUTY: Thank you. Please be seated.

THE COURT: The purpose of a jury selection, which you will hear referred to sometimes as voir dire, is to select jurors who have no prior knowledge of the case. And no bias toward either side in the case. In short, it is our aim to select a jury of 12 with four alternates that will reach a verdict based solely on the evidence presented in the courtroom and the law as I instruct you.

During this process, you will be introduced to the participants in the trial. And I will ask you a series of questions that the lawyers and I think will be helpful to us in selecting a fair and impartial jury.

You, of course, are bound by the oath that you have just taken to truthfully answer those questions. This is a criminal case in which the defendant, Roman Sterlingov, is charged in an indictment with money laundering, conspiracy to commit money laundering, operating an unlicensed money transmitting business and money transmission without a license. The charged offenses are alleged to have occurred from on or about October 27th, 2011 to at least on or about April 27th, 2021, in the District of Columbia and elsewhere.

An indictment is just the formal way of informing a defendant of the nature of the charges against him. Mr. Sterlingov has pled not guilty to the indictment and has sought a trial by jury. He is presumed innocent of the charged

crimes and you are not to consider the indictment as any indication of guilt. You should all now have an index card and a pen or pencil. Does everyone have that?

A JUROR: Yes.

THE COURT: If you have not already done so, please write your juror number in the upper right-hand corner of the index card.

I am now going to ask you a series of questions. They are all yes-or-no questions. If you have a yes answer to a particular question, please write down the number of that question on your card. Don't write yes or why you have a yes answer, just write down that number. And if the answer is no, you don't have to write down anything at all. After I finish asking you all of the questions, I, along with the lawyers and my staff will leave and -- I'm sorry. We are going to stay here, I apologize. Change of plans. What we are going to do is the deputy clerk will escort you up one by one to the witness box there. And I will then ask you about your answers. And I will provide the lawyers with a brief opportunity to follow up on our discussion.

I should note that if a few of the questions I need to ask might touch on personal or private matters, which you would rather not discuss on the public record. And in order to choose a fair and impartial jury, I do need to ask those questions and you need to answer them truthfully and fully.

And if there is anything you would like to discuss in private, just let me know and I can close that portion of our discussion to everyone except for the lawyers and their client. And I will instruct them to keep your comments private.

So here are my questions: And if at any point, you either can't hear or if you want me to repeat a question, just raise your hand. Because I want to make sure everyone understands all of the questions and that you hear them clearly.

So question number 1, do you no longer live in the District of Columbia?

Question number 2, other than what I have just summarized, have you heard, seen or read anything from any source about this case?

Question number 3, do you read, subscribe to, listen to podcasts or follow on social media any specialized technology or cryptocurrency media such as "Wired Magazine," CoinDesk, Cointelegraph or podcasts relating to cryptocurrency?

Question number 4, have you heard, seen or read anything about a case involving the theft and laundering of cryptocurrency from the cryptocurrency exchange Bitfinex or the arrest of Ilya Dutch Lichtenstein and Heather Morgan also known as Razzlekhan or the Crocodile of Wall Street?

Question number 5, have you heard, seen or read anything about a case involving Larry Harmon, Helix or Bitcoin

mixing and tumbling?

Question number 6, are you familiar with any of the following companies: Chainalysis, CipherTrace, Excygent LLC, Elliptic or any companies that do blockchain analysis?

Question number 7. The government is represented by Assistant United States Attorneys Christopher Brown and Department of Justice Attorneys Catherine Alden Pelker and Jeffrey Pearlman. They will be assisted at trial by paralegals Angela de Falco and Divya Ramjee. Do you know or do you have any connection with Mr. Brown, Ms. Pelker, Mr. Pearlman, Ms. De Falco or Ms. Ramjee?

Question number 8, the defendant in this case is Roman Sterlingov. Do any of you know or have any connection with Mr. Sterlingov?

Question number 9, the attorneys representing the defendant are Tor Ekeland and Michael Hassard of Tor Ekeland PLLC. They will be assisted by legal assistants Courtney Galiwas and Stephanie Norman, do you know or have any connection with Mr. Ekeland, Mr. Hassard, Tor Ekeland PLLC, Ms. Galiwas or Ms. Norman?

Question number 10, if I can ask you to take a minute and look around the courtroom here at your other fellow potential jurors. Do you recognize or think you know any other potential juror in the panel?

Question number 11, during the presentation of

evidence, you may hear testimony from, or about the following persons: Aaron Bice, Albin Hoffmeier, Alexandra Comolli, Andy Greenberg, Angela Wilkins, Bryon Bishop, Devon Beckett, Diana Erwin, Duncan Townsend, Elizabeth Bisbee, Eric Svensson, Francisco Cabanas, Ilya Lichtenstein, JW Verret, James Rohls, Jeffrey Fischbach, John Henry Smith, Jonathan Levin, Jonelle Still, Justin Allen, Kathleen Kaderabek, Larry Harmon, Leo Rovensky, Luke Scholl, Mansur Alyadinov -- that is A-L-Y-A-D-I-N-O-V -- Martin Mattson, Matthew Price, Matthew St. Jean, Max Barno, Michael Gronager, Ryan Lamb, Sarah Glave, Sayyora Krulikowski, Sergei Miroff, Stephanie Norman, Steven Santell, Theodore Vlahakis, Tracy Daun, Valerie Mazars de Mazarin, Youli Lee, Yves Brechbill, or Zia Faruqui. Do you know any of the prospective witnesses or individuals?

Question number 12, the courtroom deputy is Glenda Walker and my law clerks are Megan Holloway, Jessica Levy and Taylor Nicolas. Do you know me or any member of my staff?

Question number 13, the government has the burden of proving that Mr. Sterlingov is guilty beyond a reasonable doubt. And he is presumed innocent unless and until the government meets that burden. Would you have any difficulty or hesitation with respecting that allocation of the burden of proof?

Question number 14, there has been an indictment in this case. An indictment is not evidence of a crime. It

merely initiates a case and is a formal way of presenting the charges. The indictment here informs the defendant, the Court and the members of the jury of the charges against the defendant. Would the fact the defendant -- would the fact an indictment charges Defendant Sterlingov lead you to believe that he is, in fact, guilty or make it difficult for you to apply the presumption of innocence?

Question number 15. The indictment contains several charges or counts against Mr. Sterlingov. If the evidence convinces you that Mr. Sterlingov is guilty beyond a reasonable doubt with respect to one count but not of another count, would you have any difficulty considering the evidence of each count separately in rendering an independent verdict on each count?

Question number 16, do you currently have an opinion regarding whether the defendant is guilty or not guilty?

Question number 17, some of you may watch legal or true crime shows on television or on the internet in which financial crimes are investigated. The shows are usually fictional. If you watch the shows, would you be able to set aside what you have seen and decide this case solely based on the evidence presented at trial?

Question number 18, in this case you may hear from one or more witnesses who have already pled guilty to a criminal offense and who have entered into a cooperation agreement with the government. Would the use of these

cooperating witnesses prevent you from rendering a fair and impartial verdict in this case?

Question number 19, the defendant is a citizen of Russia and of Sweden. Do you have any strong feelings or opinions about Russia or Sweden that would make it difficult for you to render a fair and impartial verdict in this case?

Question number 20, do you have any strong feelings about foreign nationals being prosecuted in the United States that would make it difficult for you to render a fair and impartial verdict in this case?

Question number 21, are you a computer professional by education, training or experience?

Question number 22, have you ever used the Tor browser or used any similar technology for your online activities? It is just a coincidence, by the way, that the defense counsel Mr. Ekeland's first name is Tor.

Question number 23, have you ever accessed part of the internet called the darknet or the deep web?

Question number 24, do you have any strong feelings or opinions about the use of cryptocurrency or about the darknet or deep web?

Question number 25, have you ever purchased, sold or owned any cryptocurrency such as Bitcoin Ethereum or Dogecoin or any other kind of cryptocurrency?

Question number 26, have you ever participated in an

initial coin offering purchased a non-fungible token or NFT or purchased some other form of digital asset?

Question number 27, do you have any strong feelings or opinions about whether cryptocurrency should or should not be regulated by the government?

Question number 28, do you have any strong feelings or opinions about the laws governing illegal drugs, narcotics or controlled substances?

Question number 29, do you have any strong feelings or opinions about the laws relating to finance regulation or commercial protection?

Question number 30, do you have any strong feelings or opinions about the IRS or the FBI that would make it difficult for you to be a fair juror in this case?

Have you or any family member or close friend ever been audited by IRS?

Question number 32, do you have any strong feelings or opinions about law enforcement using undercover investigative methods or techniques to collect evidence in criminal cases?

Question number 33, have you previously served on a jury or a trial jury in a criminal or civil case in any court?

Question number 34, have you ever been a witness in a civil or criminal court case? Have you ever been a party to a court case?

Question number 35, have you, a family member or close friend been the victim of or witness to a crime?

Question number 36, have you, a family member or close friend ever had any legal training or ever worked in a law office?

Question number 37, have you, a family member or close friend ever been detained by the police, arrested or charged with a crime?

Question 38, do you have any strong opinions about criminal defendants, defense attorney or prosecutors that would make it difficult for you to render a fair and impartial verdict if you were chosen as a juror?

Question number 39, there may be testimony from law enforcement officers in this case. Would you tend to believe or disbelieve their testimony or find them more or less credible than other witnesses simply because they are law enforcement officers?

Question number 40, have you, a family member or close friend ever worked for any of the following organizations?

First, any type of federal, state or local law enforcement agency; second, a local, state or federal prosecutor's office, such as the Office of the Attorney General for the District of Columbia, the US Attorney's Office, the Department of Justice or a state's attorney or commonwealth

attorney; third, any public defender or private criminal defense office; and, fourth, any jail, prison or other type of penal institution?

Question number 41.  Have you or any family member or close friend or household member ever worked for or with a government entity, engaged in financial regulation whether at the local or federal level such as the DC Department of Insurance, Securities and Banking; the US Department of the Treasury; the Financial Crimes Enforcement Network; the US Securities and Exchange Commission; the Federal Reserve System; the Commodity Futures Trading Commission; the Federal Deposit Insurance Corporation; the Office of the Comptroller of the Currency or similar agency?

Question number 42, do you have any health problems that would interfere with your ability to serve as a juror?  Do you take medication that makes you drowsy or make it difficult for you to remain alert during the proceeding?  Do you have any problems with your hearing or eyesight?

Question number 43, are you or is anyone with whom you live with whom you need to have frequent contact at heightened risk of severe illness from COVID-19?

Question 44, do you have any difficulty reading, speaking or understanding English?  Question number 45, we expect the presentation of evidence in this trial to conclude by March 7th, 2024.  After the close of the evidence, the jury

will deliberate until it has reached a decision. Would serving as a juror in this case be an extreme hardship to you?

Question number 46, which I have referred to as my catch-all question, and this asks whether there is any other reason that I haven't asked about that might make it difficult for you to sit fairly, impartially and attentively as a juror? Perhaps you have a religious, moral or philosophic reason that you believe would make it hard for you to be fair. In sum, is there any other reason that would make it difficult for you to sit as a fair and impartial juror in this case?

Now, as I explained, the deputy clerk will bring you one by one up to the witness box. And we'll collect your cards as she does so. We will go over the information that you have listed and have a discussion with you about that. We are going to start on the right side in the front row there and make our way through as many of you as we need to talk to. If you need to use the facilities, you can go outside and courthouse personnel can direct you to them. Please, please come out promptly. Don't wait around out in the hall. Certainly don't leave this floor of the courthouse. Sometimes people stand outside the courtroom and start talking among themselves, that simply means the deputy clerk has to go out and find you and that takes time. So please come back to the courtroom promptly.

I ask that you not speculate about the case. If you

have any information that you are going to be providing me, please don't discuss it with your fellow jurors so you don't create a problem for them that telling them something that may require that I excuse you and then may wind up requiring that I excuse them all. If there is anything that we should discuss privately or confidentially, let me know. You may not conduct any independent investigation of the law or facts in the case. That means you cannot conduct any kind of research about the case, for example, researching any issue on the internet, using your phone or another device, asking any questions of anyone via email or text or otherwise communicating about or investigating the facts or law connected to the case.

Similarly, you may not do any investigation about any of the attorneys, witnesses, expert witnesses or law enforcement personnel in the case. If a family member or a colleague asks you about the case, you can say that you are being considered for service in a criminal case, but you may not say anything more and you may not discuss the case with anyone. You can talk amongst yourselves. There is no problem with that. I just ask that you not discuss the case.

If you do get up, please look at whoever is sitting on either side of you. We put you in order according to our list. And we ask that you come back to the same seat that you are currently in and that way we won't inadvertently take you out of order. If you run into anyone associated with the case,

please do not talk with them about the case.  If you are seen talking to them, I will need to ask you additional questions about that.  Again, you are not allowed to talk about the case. And, again, if you are seen talking to counsels or anyone else associated with the case, I will need to ask about that and that just takes extra time.  We want you to come here without getting any additional information from somebody else.  If you are chosen as a juror, you will be required to make your decision based solely on the evidence that is going to be presented in the courtroom.  And so we'll move through this as quickly as we can.  And I do greatly appreciate all of your service and your patience.  So why don't we go ahead and begin.

THE COURTROOM DEPUTY:  Juror number 1728, please.

THE COURT:  We have juror 1728.  And you answered yes to whether there are health -- you have a health problem that would interfere with your ability to be a juror?

A JUROR:  I recently had neck and spine surgery.  And I am in very active physical therapy three times a week.

THE COURT:  Okay.  When is your physical therapy?  Is there a particular time of day?

A JUROR:  I stopped right now in case I had to, but it is usually on Monday, Wednesday, Fridays.

THE COURT:  And would you be able to schedule it for early in the morning or in the evening?

A JUROR:  I am not sure.  I also have with me -- I

have to wear a bone stimulator machine four hours a day, so I would probably end up sitting here with this thing on.

THE COURT:  Does it make a noise?

A JUROR:  No.

THE COURT:  So we probably will not sit every Friday, just given the length of the trial, we may not be able to sit every Friday.  So you might have Fridays off at least at times.  So I guess my question for you is, given your health are you available to do this or not?

A JUROR:  I mean, I am.  I wear a full brace.  It is not comfortable to sit for long or stand for long.  But if you needed me, I guess I could.

THE COURT:  I greatly appreciate that.  Let me ask this or mention this.  I have no problem if a juror wants to stand up at some point and sit back down for health reasons.  I don't think anyone would have any concern with that, if you just needed to stand up and then sit down and take care of yourself.  And if you needed a break, you could let me know as well.  Is that okay?

A JUROR:  (Nodding.)

THE COURT:  And then you answered yes to question 35, which is whether you or a family member have been the victim of or witness to a crime.

A JUROR:  In the past years ago when I lived in Massachusetts, there were -- I wasn't living in the best of

neighborhoods and I did witness several shootings and --

THE COURT: Would that have any bearing on your ability to be a fair and impartial juror?

A JUROR: No.

THE COURT: And then you answered yes to question 33 about whether you have been a juror before.

A JUROR: Yes. In Massachusetts, I was on a medical malpractice for two and a half weeks.

THE COURT: Okay. And how long have you been in DC?

A JUROR: Four years.

THE COURT: Any follow up? And I will just do my best to remember back and forth.

Mr. Pearlman, any follow up?

MR. PEARLMAN: No, ma'am. Thank you.

THE COURT: Mr. Ekeland, any follow up?

MR. EKELAND: No, Your Honor.

THE COURT: Okay. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0831.

THE COURT: Thank you. We have juror 0831. And you answered yes both to the extreme hardship and catch-all questions, so why don't we start there.

A JUROR: Perfect. I work at a small marketing group that is part of an energy company. It is the busiest time of our year and there is only two of us. So I do some fairly

important duties like payroll that might be hard to do while I am here for that period of time.

THE COURT: As I mentioned, I think we will probably not sit every Friday. And when we do sit Fridays, it probably will just be for a part day on Fridays. Do you think you could handle what you need to for your business, getting the payroll out during that time of the evening and mornings?

A JUROR: It is possible. My other complication is I am dating a litigator. And she is actually in trial later this month in San Diego. So I will be doing some house duties as well, so it might be a bit of a lift depending on -- it is just three days a week, so it kind of depends on when those days hit.

THE COURT: Are there people at home who need your care?

A JUROR: No. There is dogs.

THE COURT: Dogs. All right. Those matter too.

Obviously and I will say this to everyone here, this a lengthier trial. I have had longer trials, but this is on the lengthier side. And I realize for everyone involved there is some imposition involved in doing it. But we obviously need people who can be here and be attentive and fair jurors. Do you think that you could handle your professional and personal obligations, mornings, evenings and part days on Fridays?

A JUROR: Hopefully, yes.

THE COURT: All right. And then you answered yes to question 43 about having frequent contact with somebody who is at a risk of extreme COVID.

A JUROR: My grandparents are going into a home. And I am assisting with them out of Washington state, so I am actually traveling a little bit during this time as well.

THE COURT: When will you be traveling out there?

A JUROR: It is depending when they decide to move, looking at the end of this month. It is tentative right now.

THE COURT: Again, would you be available through early March, if you are going to be working with your grandparents for the move?

A JUROR: It would be on the weekends, so Fridays might be hard, because I would leave on Thursday.

THE COURT: As I mentioned, we probably will not be sitting every Friday, so we probably could work around that as an issue.

And I see you are not wearing a mask now. Would you have concern about sitting on a jury? Do you take precautions because you are going to be around your grandparents where you wear masks and go places and things?

A JUROR: I don't go out much, but I'd be comfortable with it.

THE COURT: Okay. Thank you. And then you answered yes to question 40, which is about whether you or a family

member or friend have worked for one of those organizations I listed.

A JUROR: Yeah. I was in a long term relationship with a public defender, Charles county.

THE COURT: Do you know the sort of work he or she did?

A JUROR: Criminal.

THE COURT: What I meant was in what areas were they, what types of cases?

A JUROR: Everything, a little bit. The ones I sat in on including sexual assault, as well as some driving issues.

THE COURT: Would that prior relationship have any impact on your ability to be fair and impartial here?

A JUROR: I certainly heard a lot about the system. And so I do have some of my own personal thoughts as to how that works and how effective that is.

THE COURT: Would you be able to decide the case based only on the laws as I describe it to you and the evidence that is presented in the courtroom?

A JUROR: I would do my best.

THE COURT: So you are the only person who knows that. And that is an answer I often get from people on questions like this. And my answer -- my question back has always been, I can't get in your head, only you can. Both the government and the defendant deserve fair and impartial jurors.

And the question is whether you think your feelings are so strong -- and, frankly, I'm not sure what they are, but they are so strong that they would interfere with your ability to apply the law as I instruct you on the law and decide the case just based on the facts as presented.

A JUROR: I would be hesitant to say I would not be affected by it.

THE COURT: Let me ask you to pick up the phone. You push this button here.

(Conference held at the bench.)

THE COURT: All right. Do you want to describe to me what you are talking about?

A JUROR: Just having some interactions with police as well as the prosecutors and kind of hearing it from all sides including the witness' side and not really having a lot of faith in what some of the motives were.

THE COURT: Can you explain a little bit more? I am not sure I follow.

A JUROR: Just the -- some malpractice I guess would be the word on the side of the PD that was prosecuting.

THE COURT: The public defender --

A JUROR: The police. I'm sorry.

THE COURT: I guess I am still not following, malpractice by the police. What do you mean?

A JUROR: Not telling the whole truth, so I found

that hard to believe.

THE COURT: I see. So does that mean that you would be less inclined to believe law enforcement witnesses than any other witnesses?

A JUROR: Unfortunately, a little bit. I don't know how to qualify that other than, yes, maybe. But that is -- I would try to set that aside certainly.

THE COURT: So obviously every case is different and every person who testifies in a case is a different individual, and some people are honest and some people are dishonest. And the question for you is whether you could, in your mind, listen to the testimony and decide who you believe and don't believe based on the testimony and all of the other evidence in this case.

A JUROR: I would do my best. I'd do my best.

THE COURT: I can't get in your head. So tell me if you can't do it, that is fine. I need you to tell me whether you could do it.

A JUROR: It would go against where my head has been for the last few years to accept without a lot of questioning.

THE COURT: There will be questioning from both sides, so that is --

A JUROR: Do you want a yes or no?

THE COURT: Yes.

A JUROR: Yes. Yes. Let's go with yes.

THE COURT: Is that -- I mean, I don't want you to pick one, because you have to. I want to know what you think.

A JUROR: It would really put me on the ropes, to be honest. So I want to say, no, that I would not be able to set aside a lot of that. Because there is a seven-year long relationship and there was a lot of information that I got through that period. And there was a lot of friends that are public defenders and not a lot of friends who are police officers, so that has kind of unfortunately formed a lot of my views.

THE COURT: Okay. Any follow up from the government?

A JUROR: I'm sorry?

THE COURT: Any follow up from the government?

MR. PEARLMAN: Not based on this record, Your Honor.

THE COURT: Mr. Ekeland, any follow up?

MR. EKELAND: No, Your Honor.

No, Your Honor.

(End of bench conference.)

THE COURT: All right. Let me -- you can go back ahead and go to your seat. Thank you.

MR. PEARLMAN: Your Honor, motion. Your Honor, motion.

(Conference held at the bench.)

THE COURT: Yes.

MR. PEARLMAN: Move to strike for cause, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: Can you hear me?

Can you hear me, Your Honor?

We object to striking for cause. We don't think there is cause to strike him.

THE COURT: All right. I am going to go ahead and strike him for cause, but I am not going to announce it.

(End of bench conference.)

THE COURT: All right. Next.

THE COURTROOM DEPUTY: Juror 1913, please.

THE COURT: Just if, Counsel, you need to be careful when you pick up and move the phones. If you push the buttons you change the channel and therefore that is why they don't work. So if you are moving them around on the desk, you are --

All right. So we have juror 1913. And you answered yes to several of my questions. Why don't I start with the extreme hardship question.

A JUROR: Which one was that?

THE COURT: Extreme hardship, 45, whether serving on the jury would be an extreme hardship for you?

A JUROR: Yeah. So I am employed on Capitol Hill for a member of congress who sits on the House Appropriations Committee. Right now, this is appropriations season. We have a continuing resolution and FY25 hearings are going to be coming soon in the next two to four weeks. And so I am having

about 40 to 60 meetings a week that I have to staff him at. So it would be very difficult for me to be away from work.

THE COURT: What do you do for the congressman?

A JUROR: I am senior legislative assistant. I handle our policy portfolio of various issues.

THE COURT: I see. It does seems to me like it is always appropriation season.

Are there others who staff the congressman on appropriation issues as well? Is there appropriations staff?

A JUROR: We all staff him on the issues that we handle. It is all hands on deck during this particular time between February and April.

THE COURT: I see. Okay. And then you answered yes to whether you were in frequent contact with someone who is at risk of extreme illness from COVID.

A JUROR: My husband is a type one diabetic. And he is hard of hearing, so he is immunocompromised.

THE COURT: Do you -- well, would serving as a juror be a problem from your perspective in that regard?

A JUROR: No.

THE COURT: And then you answered yes to question 39, which is whether you would tend to believe or disbelieve testimony from law enforcement simply because they are law enforcement?

A JUROR: I would be apt to believe it.

THE COURT: Okay. If I were to instruct you that you have to give equal weight to all of the testimony and judge it not based on any preconceived views, but based on the believability or lack of believability of the witness testimony and based on all of the evidence in the case and the witness' demeanor and so forth. Could you apply that?

A JUROR: I would to the best of my ability.

THE COURT: Well, you would -- I mean, I need to know whether you -- you know yourself better than I do. Do you think you would be able to do that, do you think?

A JUROR: I think I would.

THE COURT: Okay. All right. And then you answered yes to question 36, which is whether you or a family member or close friend have legal training or worked in a law firm?

A JUROR: Yes. I previously many, many years ago, like over 10 year ago, I worked as a legal secretary in a defense law firm. And I have multiple relatives who are lawyers.

THE COURT: And any of them practice criminal law?

A JUROR: Yes.

THE COURT: Okay. Tell us about that.

A JUROR: I have an aunt and an uncle-in-law in addition to two cousins-in-law who are defense attorneys.

THE COURT: Okay. Would the fact that you worked at a defense firm in the past or the relatives who work on the

defense, would that have any bearing on your ability to be fair and impartial?

A JUROR: No.

THE COURT: And then you answered yes -- let's see -- to question 34 about whether you have been a juror before.

A JUROR: No.

THE COURT: All right. I'm sorry. Whether you have been a witness or a party to a case. I'm sorry.

A JUROR: In a civil case.

THE COURT: What sort of case was it?

A JUROR: My husband had a civil case in DC, which I was deposed for.

THE COURT: I see. And very generally, what was the nature of the case?

A JUROR: He was physically assaulted and he worked with the government to press criminal charges. And he also filed a civil lawsuit, which is what I was called -- deposed for.

THE COURT: I see. And would any of that have any bearing on your ability to be fair and impartial in the case?

A JUROR: No.

THE COURT: And then you answered yes to question 28 about whether you have -- maybe I will be able to handle these somewhat together.

You answered yes to questions 25 through 28, which

are about whether you have ever purchased or sold cryptocurrency, participated in an initial coin offering, have strong feelings about cryptocurrency and have strong feelings about laws governing illegal drug use and narcotics.

A JUROR: Yes. So I have purchased and sold cryptocurrencies in the past. And for the previous member of congress that I worked for, he sat on the house financial services committee, specifically a subcommittee that did oversight on cryptocurrencies.

THE COURT: I see. Would you be able to put aside what you know about cryptocurrency and decide this case based on the evidence presented in this case?

A JUROR: I believe so.

THE COURT: And tell me about your strong feelings about financial regulation and illegal drugs.

A JUROR: I don't have particularly strong opinions about financial regulation. I have slightly strong opinions about drug trafficking, based on the line of work that I do.

THE COURT: Which is? Is that part of your portfolio?

A JUROR: Yes. So my boss is involved in -- he has a fentanyl task force, so we deal a lot with opioid issues in rural communities.

THE COURT: Would you be able to put aside those feelings and decide this case based on the evidence presented?

A JUROR: I believe so.

THE COURT: I think you answered yes to one question, which was 17, which was the television shows, which is whether you would have difficulty putting aside what you may have seen on TV about investigations involving financial crimes.

A JUROR: Yeah. I seen TV shows about it before.

THE COURT: Would you have any difficulty putting that aside and deciding the case just based on the evidence?

A JUROR: No.

THE COURT: All right. Mr. Ekeland, any follow up?

MR. EKELAND: I just --

THE COURT: You need to be at a microphone.

MR. EKELAND: I just didn't completely hear your answer when Judge Moss asked you about your feelings about law enforcement and whether you would give them more credit than, say, someone on the defense side.

A JUROR: Do you want me to reanswer the question?

MR. EKELAND: I guess what I am asking is what your feelings are about law enforcement. Do you feel like that law enforcement is more trustworthy than, say, any other witness?

A JUROR: Yes, I do.

MR. EKELAND: Okay. And then -- May I ask another follow up?

THE COURT: Yes, of course.

MR. EKELAND: You mentioned that you had bought -- I

think you bought and sold cryptocurrency.

A JUROR:  Yes.

MR. EKELAND:  And what cryptocurrency did you buy and sell?

A JUROR:  There were a bunch.  I don't remember all of them.  But Bitcoin, Ethereum, Dogecoin.  They are all sold at this point.  Those are the ones I remember but there were many others.

MR. EKELAND:  Oh, Dogecoin.  Did you do that on an exchange or did you do that with your own private wallet?

A JUROR:  I used several exchanges.  Again, it has been a couple of years since I have done it actively, so I don't remember.  I used Coinbase, for example and a couple of other apps.

MR. EKELAND:  Have you ever set up your own wallet?

A JUROR:  I don't believe so.

MR. EKELAND:  No further questions, Your Honor.

THE COURT:  Okay.

MR. PEARLMAN:  Your Honor, follow up?

THE COURT:  Yes.

MR. PEARLMAN:  Ma'am --

THE COURT:  Let me say to the attorneys.  You all are welcome to sit when you have asked your follow-up questions.  I won't regard it as disrespectful to anybody, but the microphones are at chair level, that way you shouldn't have to

stand up and lean down to the microphone.

MR. PEARLMAN:  Ma'am, I understand that you may have strong feelings concerning law enforcement.  My question is, you are going to be hearing from various law enforcement witnesses in this case.  Are you going to be able to put aside those feelings and judge each of those witnesses and their credibility on their own, in other words putting your feelings about law enforcement aside?

A JUROR:  I believe so.

THE COURT:  Let me just follow up a little bit about that also.  There are, obviously, are all different types of roles that law enforcement play and different types of crimes that they investigate.  And there are cops on the beat and there are other, you know, FBI investigators.  And the types of evidence that they are offering differs.  And so I offer that by way of background to ask you to sort of follow up and just make sure that you are comfortable that in a case of this nature, that you could fairly judge the testimony of the law enforcement officers and decide whether you believe it or not based on only the evidence presented in the case?

A JUROR:  I believe so.

THE COURT:  Okay.  All right.  Any further follow up?

MR. PEARLMAN:  No, thank you, Your Honor.

MR. EKELAND:  No, Your Honor.

THE COURT:  Okay.  You can go back to your seat.

Thank you.

THE COURTROOM DEPUTY: Juror number 1860.

THE COURT: Thank you. All right. We have juror 1860. And you too answered yes to the question about whether this case would pose an extreme hardship to you.

A JUROR: It is going to get to another question too. But I am an attorney and I have a lot of clients that I deal with day to day so --

THE COURT: What sort of law do you practice?

A JUROR: Antitrust law.

THE COURT: Okay. And are you providing advice or doing enforcement actions or both?

A JUROR: Both.

THE COURT: Both. Okay. And are you at a private law firm?

A JUROR: Yes.

THE COURT: Well, let me -- jumping to the question about an attorney, since you have legal training. Would you be able to put aside anything you may have learned in law school about criminal law and follow the law just as I instruct you on it?

A JUROR: Yes.

THE COURT: All right. And how large a law firm are you at?

A JUROR: Very large. I don't know how many.

THE COURT: How many?

A JUROR: I don't know how many.

THE COURT: Are there others who practice in your area? I mean, I realize that you may have clients that you are principally responsible for. Are there others who practice in your area if there were an emergency who could pitch in?

A JUROR: I am not sure.

THE COURT: Okay. And if we were not to sit on Fridays and also, you know, there would be breaks in the trial, so if you had to take a call or if there was a client who needed urgent advice, you had to get someone else to research something, would that work for you?

A JUROR: How long is the day?

THE COURT: Well, we will probably sit from 9:00 until 4:30, maybe 5:00 on some occasions.

A JUROR: With a break in between?

THE COURT: We'll take a morning break, full lunch break and an afternoon break and then a break in the evening as well.

So I know from having worked at a private law firm myself that is about half the work day.

A JUROR: Yeah. So probably.

THE COURT: Okay. All right.

Mr. Pearlman, any follow up?

MR. PEARLMAN: No, thank you.

THE COURT: Mr. Ekeland.

MR. EKELAND: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0686.

THE COURT: All right. I have got number 0686. You didn't have a yes to any of the questions; correct?

A JUROR: No.

THE COURT: Did you hear all of my questions?

A JUROR: Yes.

THE COURT: How long have you lived in DC?

A JUROR: About 12 years.

THE COURT: What do you do right now?

A JUROR: Retired right now.

THE COURT: Have you ever been a juror before?

A JUROR: No.

THE COURT: Any follow up, Mr. Ekeland?

MR. EKELAND: I'm sorry. I didn't hear what she said when she answered your question about what she did.

THE COURT: She is retired.

MR. EKELAND: No, Your Honor.

THE COURT: Okay. All right. Mr. Pearlman.

MR. PEARLMAN: Your Honor, may I ask what she used to do?

THE COURT: Sure.

A JUROR: Excuse me?

MR. PEARLMAN: Ma'am, what did you used to do?

A JUROR: I used to work in like a plant, manufacturing plant.

MR. PEARLMAN: Thank you, ma'am.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0012, please.

THE COURT: Thank you. All right.

Juror 0012, how are you today?

A JUROR: Great.

THE COURT: And you answered yes to two of my questions. First, you have been a juror before.

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: I was a juror probably in February 2013, District Government. It was a civil case, insurance fraud.

THE COURT: Okay. Would that have any bearing on your role as a juror in this case?

A JUROR: No.

THE COURT: And you answered yes to question 25, which is whether you have ever purchased, sold or owned cryptocurrency?

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: It was a betting site, BetUSA and I don't know why the way they pay you out is through Bitcoin and Dogecoin, so I was able to purchase some of the Bitcoin and Ethereum, Dogecoin. I don't remember all of the others. There was a couple.

THE COURT: How long ago was that?

A JUROR: 2019.

THE COURT: Do you still have the Bitcoin or the cryptocurrency?

A JUROR: No. Because I lost the address. You need this long address. And I just -- $200 just gone now.

THE COURT: All right. Any follow up, Mr. Ekeland?

MR. EKELAND: I think -- are you an investigator?

A JUROR: Yes.

MR. EKELAND: What kind of investigations do you do?

A JUROR: Department of Disabilities. We do so far as borderline criminal, so we investigate doctors, anyone who is in support cares, doctors, nurses, petitions [sic], caregivers. Our clients are like the person who is disabled.

MR. EKELAND: When you bought I think you said Bitcoin and like Dogecoin and stuff like that, did you do that through an exchange like Coinbase or -- I think you mentioned a bank or something.

A JUROR: It was Coinbase and I had a wallet.

MR. EKELAND: Uh-huh.

A JUROR: My son set it up. I don't know how I lost -- somewhere. I had a wallet, but I don't know. I gave him my phone and he was putting whatever.

MR. EKELAND: And you lost the private key to the wallet.

A JUROR: Yeah. That is how I lost the money because I didn't know the long address.

MR. EKELAND: No further questions, Your Honor.

THE COURT: Mr. Pearlman, anything?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror 1601, please.

THE COURT: Thank you.

We have juror 1601. And you answered yes to three of my questions. And we -- let's start with question 46, which was my catch-all.

A JUROR: Uh-huh.

THE COURT: Tell me about that.

A JUROR: Yeah. So I am -- am I close enough?

THE COURT: Yes. That is perfect. Thank you.

A JUROR: Thank you. So I have not like a full understanding of cryptocurrency. But what I do understand is kind of conflicted in a way that I think kind of pans out to be impartial.

THE COURT: You know, why don't we pick up the phone and talk on that.

(Conference held at the bench.)

THE COURT: Push this button right here.

Why don't you tell us about that?

A JUROR: So on the one hand, I understand, you know, applications that can be, you know, really beneficial using cryptocurrency like countries where there is a lot of like governmental supervision and things like that that can be, like, oppressive, that is to say. And so, you know, I see like positive applications in that direction. But also I am vaguely aware of various criminal activities that can be done on, like you were mentioning, darknet and thinks like that. I have never like accessed that or anything. But I am like vaguely aware of that. But I feel like these sentiments measure out to something that is overall neutral, because I sort of understand like positive and negative applications, so I don't have a view of cryptocurrency on the whole.

THE COURT: That is very helpful. So let me say, this case is not about whether cryptocurrency is good or bad.

A JUROR: I'm sorry.

THE COURT: That is fine. It is fair. And it is not about whether sometimes cryptocurrency can be used for bad purposes and sometimes it can be used for good purposes. It is about whether the defendant in this case, very specifically,

did something relating to cryptocurrency that the government alleges was unlawful and that he denies doing.

A JUROR: Yeah.

THE COURT: So the question is even though you have some sort of I think maybe high level or general feelings about cryptocurrency, could you put those aside and decide this case based just on the evidence? And I will give you an example to make my point. If I asked you about guns, some people might say, well, guns can be used for some good purposes, protecting yourself, or, you know, if you are a hunter or a target shooter or something like that, you might think that they are good purposes. And then you might think they can also be used for bad purposes. It wouldn't be a basis to say I couldn't fairly decide in a gun case someone had unlawfully possessed a gun. That is obviously far afield of this case. I am just giving you an example about what is in your head about whether you could decide this case based on the evidence presented and not any other feelings you might have.

A JUROR: Yes, definitely.

THE COURT: Okay. Any follow up on this question while we are on the phone?

MR. EKELAND: Yes, Your Honor. Just your experience with cryptocurrency is it from reading about it or is it from using it?

A JUROR: No, not using it. Reading about it, video

essays, things of that nature.

MR. EKELAND: If you remember, do you remember what did you read about it, like Wired or things like that?

A JUROR: Not magazines sorts of things, more, you know, whatever sort of spontaneous discussions might come up in college among my fellow students, thinks like that. I am out now, but that sort of thing.

MR. EKELAND: No further questions, Your Honor.

THE COURT: Anything else on this point before we go back on the public record?

MR. PEARLMAN: No, Your Honor.

(End of bench conference.)

THE COURT: You also answered yes to my question 39 about whether you would believe or disbelieve testimony from law enforcement. And I guess my question for you is whatever feelings you have in general about law enforcement, could you put that aside and judge the credibility of any witnesses in this case just based on the evidence in the case?

A JUROR: Yes, particularly because of the nature of the case.

THE COURT: And then you indicated that you, a family member or close friend have been detained by the police, arrested or charged?

Did you get the wrong number there? You wrote a question mark next to it.

A JUROR: That was if I had previously committed a crime.

THE COURT: Oh. Okay.

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: So I put a question mark, because I wasn't sure if this was within the realm of what you were asking, but I hopped a turnstile and I, you know, paid my fine as I was expected to and I regret that.

THE COURT: Would that have any bearing on this case?

A JUROR: No.

THE COURT: Thank you. I apologize, I don't mean to be embarrassing you.

A JUROR: No. It is my first time here.

THE COURT: All right. Any further follow-up questions?

MR. EKELAND: No, Your Honor.

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 2160, please.

THE COURT: Thank you. All right. We have juror 2160. And you answered yes to the question about extreme hardship.

A JUROR: Yes. I am a high school teacher. And

being away from my students for three weeks would be incredibly hard for them. We are already down. I teach high school science. We are already down two science teachers, both for family leave who are gone. So I am currently taking one of each of their classes as well, so I am taking probably about twice as much of the load as I already have.

THE COURT: All right. Counsel?

MR. PEARLMAN: No questions.

THE COURT: Get on the phone for a second, please.

(Conference held at the bench.)

THE COURT: What I was asking is whether you all agree to actually excuse her? She is a high school teacher who can't be away from her class for the length of the trial and she is already covering for two other teachers.

MR. PEARLMAN: That is what I was trying to indicate, we don't have an objection.

MR. EKELAND: No objection, Your Honor.

THE COURT: Okay. Thanks.

(End of bench conference.)

THE COURT: I am going to go ahead and excuse you in light of that so.

A JUROR: Thank you very much.

THE COURT: Good luck with the students.

Juror number 1075, please.

All right. And I have juror 1075. And you also

indicated yes to the hardship question.

A JUROR: I have three small children at home. My wife has some work travel planned. I have no family in the area. It is for early March. And also with daycare pick up, which I have to get my kid by 5:00. And if the trial goes long in the day --

THE COURT: How far away are your kids?

A JUROR: Cleveland Park, so it is, you know, a 30 minute Metro ride from here.

THE COURT: Right. Right. Okay. If we broke by 4:30 you could be there in time to pick up your child? Close, I understand.

A JUROR: It is the Metro so maybe, yes.

Also with dropping off kids, being here that --

THE COURT: What time do you drop them off in the morning?

A JUROR: 8:30 start time for my son. And my daughters both get on the bus around 8:00.

THE COURT: And how old are your daughters?

A JUROR: Eight and 5.

THE COURT: And what time do they get home?

A JUROR: It depends on the day, sometimes 4:00, sometimes 5:00.

THE COURT: Is there anyone who can be at the home with them when they get home?

A JUROR: My wife works from home, but she has work travel planned. And she also works full time, so I am a co-caregiver.

THE COURT: When is your wife's travel planned?

A JUROR: She is going on March 10th, so it would be during jury deliberations. She also has another trip planned earlier at the end of February with non-refundable tickets.

THE COURT: That is a personal trip?

A JUROR: That is a personal trip.

THE COURT: And then you answered yes to question 25 with a question mark.

A JUROR: I couldn't remember which question was about the cryptocurrency.

THE COURT: Yeah. Go ahead.

A JUROR: I never bought any. I did do some pretty extensive research and ended up setting up a wallet and then not following through on buying anything. And then I also have a bunch of the GameStop stock and also follow Wall Street Bets on Reddit, which I am sure is -- I have read stuff about cryptocurrency there.

THE COURT: Would you be able to put aside whatever you have learned about cryptocurrency and there will be plenty of testimony in this case about cryptocurrency and decide the case based just on the evidence you hear here?

A JUROR: Likely, yes.

THE COURT: All right. Mr. Ekeland, follow up?

MR. EKELAND: You said set up your own wallet. Did you do that from a website or did you --

A JUROR: I can't really remember. I remember it started asking me a lot of personal information and I kind of gave up.

MR. EKELAND: Did you successfully set up a wallet or you gave up before --

A JUROR: I gave up.

MR. EKELAND: Okay. Thank you. No further questions, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: Sir, I guess I would just follow up on your hardship. Ultimately if your wife was able to move the late February trip, but still kept the March 10th trip, would you be able to figure out childcare so that you could sit on this jury?

A JUROR: I mean, yes. It would likely cause a financial burden to us. We don't have any family in the area. So anytime that my wife also has work, you know, we switch off responsibilities. And so hiring babysitters to cover when we are not available to is what would end up having to happen.

THE COURT: All right. Any further questions?

All right. You can go back to you seat. Thank you.

THE COURTROOM DEPUTY: Juror number 2188, please.

Thank you.

THE COURT: All right. We have Juror 2188 and you answered yes to three of my questions. And let's start with question 41 which is whether you or a close friend have worked for a government entity involving financial regulation.

A JUROR: Yes, I did.

THE COURT: Where did you work.

A JUROR: Both in state -- city government and for banking.

THE COURT: Okay. Where did you work?

A JUROR: In Pennsylvania.

THE COURT: Was that in a state or local regulator that you worked for?

A JUROR: No.

THE COURT: What did you do?

A JUROR: Director of Finance for a municipality.

THE COURT: You were the director of finance for a municipality. And in that role, were you involved in enforcement actions?

A JUROR: Yes.

THE COURT: And tell us about the sort of nature of those cases?

A JUROR: Well, I am not direct enforcement, but part of whatever investigations would have been going on that involve city funds.

THE COURT: Any of that have anything -- just city money?

A JUROR: City money.

THE COURT: Any of that have anything to do with cryptocurrency?

A JUROR: No.

THE COURT: Would any of that have any bearing on your ability to be fair and impartial?

A JUROR: No.

THE COURT: Okay. Thank you. And then you answered yes to question 37 about whether you, a family member or close friend have ever been detained by the police or charged?

A JUROR: Yes.

THE COURT: I am happy to pick up if you want to do it or --

A JUROR: Pick up.

(Conference held at the bench.)

A JUROR: Can you hear me?

THE COURT: Yeah.

A JUROR: Just normal commuting, getting stopped by police officers.

THE COURT: You mean, like traffic ticket sort of thing.

A JUROR: Traffic and just walking.

THE COURT: Walking, getting stopped or charged with

a crime?

A JUROR: Just stopped.

THE COURT: I see. So getting --

A JUROR: So the week before the person drove through the entrance of the Capitol, I was stopped and detained for about 20 minutes, because I was taking pictures. I am a photographer.

THE COURT: I see. Has that experience left you with feelings that would make it difficult for you to be fair and impartial in the law enforcement testimony in this case, which is, obviously, a very different nature to it? But would you be able to put aside those feelings and decide this case just based on the evidence?

A JUROR: When you say put them aside, I will remember it. But I would do my best to try and be impartial.

THE COURT: All right. Any follow up on this issue?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: Just to follow up, when you say that you would remember it, are you indicating that you would be able to be impartial with respect to other law enforcement testimony?

A JUROR: Yes.

THE COURT: All right. Thank you.

(End of bench conference.)

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 2028, please.

THE COURT: Thank you. All right. We have juror 2028. And it looks like you didn't have a yes answer to any of my questions.

A JUROR: No, not really. I am not exactly a federal employee, but I am a contractor.

THE COURT: Well, tell us about that.

A JUROR: I work on networks, policy and procedure in the finance side for the FBI headquarters.

THE COURT: I see. Do you do computer network work there, is that what you are saying?

A JUROR: Correct.

THE COURT: Do you do any investigative work or is it just keeping the network up and running?

A JUROR: Policy, procedure and I have done operation and maintenance for four years.

THE COURT: Would the fact that you work for the FBI as a contractor make you more likely to favor one side or the other side in this case?

A JUROR: No.

THE COURT: Okay. All right. And how long have you been in DC?

A JUROR: I moved here in 2010.

THE COURT: 2010. Mr. Ekeland, any follow-up questions?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: Sir, the way that you answered the question was sort of a no. Is that to say certainly not or is there something --

A JUROR: No. I am impartial and don't judge people until you hear all of the facts.

THE COURT: That is a good way to do it. Thank you.

THE COURTROOM DEPUTY: All right. Juror number 1968, please.

THE COURT: Thank you.

We have juror 1968. How are you today?

A JUROR: I am good. How are you doing?

THE COURT: Fine. Thank you.

And you answered yes to one question is whether you, a family member or close friend have law training or work in a law office.

A JUROR: I work in a law firm that specializes in representing veterans with their disability claims before the Department of Veteran Affairs. I don't have a law degree or anything.

THE COURT: Okay. What do you do there?

A JUROR: I just help represent the clients, speak to

their issues, drafting the briefs we will submit, to any sort of grunt work, research.

THE COURT: All right. Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0634, please.

THE COURT: Thank you.

I have juror number 0634. No yes answers; correct?

A JUROR: Correct.

THE COURT: Did you hear all of my questions?

A JUROR: Yes.

THE COURT: How long have you been in DC?

A JUROR: About two years.

THE COURT: What do you do?

A JUROR: I work for the Senate sergeant at arms.

THE COURT: Okay. What do you do there?

A JUROR: I work the telephone exchange in the Capitol.

THE COURT: And have you ever been a juror before?

A JUROR: No.

THE COURT: All right. Mr. Pearlman, any follow up questions?

MR. PEARLMAN: So are you an operator for the telephone exchange?

A JUROR: Yes.

MR. PEARLMAN: Thank you.

THE COURT: Mr. Ekeland?

MR. EKELAND: No questions, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1822, please.

Thank you. All right. And I have got juror 1822. And you had a yes to one question. And I suspect it was the catch-all question, because you wrote 47 but I think 46 was the catch all.

A JUROR: I think so. I apologize if I wrote the numbers wrong.

THE COURT: No worries. Tell us about that.

A JUROR: It is more of a possibly than a yes. My father is in the final stages of kidney failure.

THE COURT: I'm sorry to hear that.

A JUROR: Thank you. Probably we are going to be taking him home for hospice in two to three weeks. It is really difficult to say how long he has. It could be two weeks. It could be three to four months. So that is the only thing that might preclude me from coming.

THE COURT: Is your father local?

A JUROR: He is.

THE COURT: And are you involved in his care or is it more that you want to be spending time with him?

A JUROR: I think it is both.

THE COURT: So are there others who would be involved in his care? When he is coming home from the hospital, who is going to be doing that?

A JUROR: I am not his primary caretaker, but I do visit three, four times a week.

THE COURT: I think I have to leave this to you, frankly. I am not going to deprive somebody of the opportunity to spend time with a loved one who has limited time. And you have heard me already discuss somewhat what our schedule will be here. We are not going to sit every Friday. We will sit maybe part time on some Fridays. We will start at 9:00 in the morning, probably go to about 4:30, take a lunch break, a break in the afternoon. You will have your weekends, obviously, as well, long weekends. And I -- quite frankly, I am going to leave this one up to you, because, as I said, I am not going to deprive somebody -- if you feel as though you would be spending more time with a loved one who has limited time, I am not going to keep you from that. On the other hand, if you are going to be going to work otherwise, then I'd just as soon you be here.

A JUROR: I think the answer is probably, yes, in that case, I would come. Yeah.

THE COURT: You can serve you think?

A JUROR: Yeah, I think so.

THE COURT: All right. Okay. Any follow up, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. Thank you. I appreciate your --

A JUROR: Thank you.

THE COURTROOM DEPUTY: Juror number 1757, please.

THE COURT: Thank you. I have juror 1757.

And you answered yes to several of my questions.

A JUROR: Indeed.

THE COURT: And let me start with -- there is a whole list of questions, 3 through 6, which just deal with familiarity with cryptocurrency in various ways.

A JUROR: Yes.

THE COURT: And I think probably a bunch of your other yes questions are similar.

A JUROR: Yes.

THE COURT: Tell us what do you do and how do you know about cryptocurrency?

A JUROR: I am -- so I have a couple of jobs too. I work for a tech company who is a contractor of the government.

And my second job, I work at a residential condominium.

THE COURT: I'm sorry. You work where?

A JUROR: At a residential condominium.

THE COURT: Okay.

A JUROR: And I just do front desk work.

THE COURT: What do you -- I'm sorry. The first job, what do you do?

A JUROR: So I do back office work for a tech company that contracts for the government.

THE COURT: What company is that?

A JUROR: N2IA Technologies.

THE COURT: What does that company do?

A JUROR: So kind of just build military systems for like the Navy or any -- so they can like categorize their inventory and stuff like that.

THE COURT: I take it from that then your knowledge with respect to cryptocurrency comes maybe just from your reading, is that it?

A JUROR: No. So I actually -- I read. I consume a podcast. I trade. Basically I do all that stuff.

THE COURT: So you trade in cryptocurrency as well?

A JUROR: Indeed.

THE COURT: And would you be able to put aside what you know about cryptocurrency and decide this case just based on the facts presented in the courtroom?

A JUROR: Yeah, I believe so.

THE COURT: Do you have strong feelings one way or the other about different cryptocurrencies, marketplaces, the use of cryptocurrency, blockchain tracing or anything like that that would affect your ability to be fair and impartial here and decide the case based on the evidence?

A JUROR: I think I could be fair. I don't know about impartial, given the knowledge, because I do have kind of have beliefs on it.

THE COURT: Let me ask you to pick up the phone for a second.

A JUROR: Yeah. Sure.

(Conference held at the bench.)

THE COURT: Why don't you tell us what your thoughts are and your views.

A JUROR: So as far as like cryptocurrency goes, I don't really have any like overarching thoughts that outside people should be able to use it and it should be used for commerce, whatever they decide to kind of buy and sell with that. So nothing like I guess outlandish like it should take over like the national currency or something.

THE COURT: Do you also have views about whether it is appropriate for the government to be regulating it in any way?

A JUROR: Yeah, I think so. I think it is just about

how -- my views of based off about how they kind of come in after the fact to kind of regulate things when some of these people are trying to come to them for regulation ahead of time. And it really kind of doesn't seem like they make a decision until they ask for it.

THE COURT: And you I take it are aware of I think some criminal cases that have been brought or enforcement actions?

A JUROR: So the cases that you mentioned, yes. And via podcast, like you said, CoinDesk, I kind of listen to it every day for like the past like year or two. And CNBC as well, so I am familiar with the entire case that you spoke about.

THE COURT: Have you ever read or listened to a book called "Tracers in the Dark"?

A JUROR: No.

THE COURT: Are you familiar with the company called Chainalysis?

A JUROR: Yes.

THE COURT: Tell us what you know about Chainalysis.

A JUROR: Just as far as their involvement in the crypto space, I couldn't tell you like the people who was head of the company or anything like that. But like I said, I listen to CoinDesk podcast. Actually Chainalysis is a sponsor of the podcast so it is kind of like osmosis at this point.

THE COURT: Do you know what Chainalysis does?

A JUROR: No. I probably couldn't tell you, no.

THE COURT: And, you know, you obviously know more than the average person about cryptocurrency and related issues. Would you be able to decide the case based on the evidence presented in the courtroom? There will be testimony about cryptocurrency. But do you think you could put aside what you know and follow an instruction from me, for example, to not talk to other jurors and say, oh, no, no, this is how it works based on your only personal knowledge?

A JUROR: I could guarantee you that I wouldn't try to influence anybody with my own personal knowledge. But to be quite honest, I think it is hard for me to forget kind of what I know about cryptocurrency as far as be biased if there is actual people involved. Because I do have an understanding of like what it is that this currency is being used for.

THE COURT: What is it being used for?

A JUROR: So, for instance, you asked if anybody has bought non-fungible tokens. I have consumed a lot of non-fungible tokens. I also know like the dark web side of it where people are using it to buy and sell drugs and stuff like that. I haven't done that personally. I am just aware of the illicit use and beneficial use and how people use this to kind of pump their own pockets and stuff too.

THE COURT: And, you know, as I said to one of the

other prospective jurors earlier, the fact that you know something is not dispositive. So, you know, you may know that guns are sometimes used to commit crimes and they are sometimes used to protect people and sometimes they are used for hunting and sometimes they are used for target practice. That doesn't mean that you necessarily come to a case with a bias. And so the question is whether any of that is going to affect your ability to listen to the evidence here and decide this case just based on the evidence?

A JUROR: Like I said, it is not going to affect my ability to be biased toward an individual. But I think I would end up, even if I am not trying to, apply my knowledge of crypto over the past couple of years.

THE COURT: All right. Let me ask if there is any follow up.

Mr. Ekeland, do you want to follow up?

MR. EKELAND: You mentioned that -- I guess I wasn't clear on your views of government financial regulation of the crypto space. Could you just explain that a little bit more what your feelings are?

A JUROR: What I was saying is not that I have a problem with government regulating crypto, I think it is just when they decide to do so. It is just like the timing, like say, you knew somebody had a problem, but you knew about it for a while and then you don't act upon it until they do something

like, kind of like dangerous with the problem. And then you come in, but they have been asking you for help. Does that make sense?

MR. EKELAND: Yeah, that answers my question.

No further questions, Your Honor.

THE COURT: All right. Mr. Pearlman.

MR. PEARLMAN: Sir, have you ever heard in the podcast or outside of the podcast of Bitcoin Fog or the use of mixers generally?

A JUROR: Yes. I think it is a common practice when people are trying to elude being traced with their transactions. You use a mixer to kind of like basically try to go undetected. But you can track mixers, so it is not really as effective as people like to think, I would believe.

MR. PEARLMAN: So do you -- do you understand whether mixers can be used for legitimate purposes?

A JUROR: To be honest with you, I only really hear when people are trying to hide their transactions, so if they are trying to move money around. So I would say no to that question.

MR. PEARLMAN: Okay. Thank you.

THE COURT: Did you have more?

MR. PEARLMAN: I'm sorry. I don't have anything else.

THE COURT: Mr. Ekeland, did you have anything on

that?

MR. EKELAND: No, Your Honor.

THE COURT: Let me follow up on this last point about mixers. Even though you may have only heard about uses of mixers for.

A JUROR: Nefarious purposes.

THE COURT: Yeah. Would you be able to sit as a juror with an open mind as to whether they may or may not be able to used in other contexts for non-nefarious purposes?

A JUROR: I feel if it was explained to me adequately, yes.

THE COURT: And then is it fair to say that what we have discussed here has been the answers to all of your questions and we have covered everything?

A JUROR: Yeah.

THE COURT: I think you also mention that you have strong feelings about laws relating to illegal drugs.

A JUROR: Primarily just psychedelics and marijuana.

THE COURT: Okay.

A JUROR: I believe they are plants, so to be scheduled the way they are doesn't really make sense to me.

THE COURT: Would you be able to put aside all of those feelings and decide this case in which there is an allegation relating to use of cryptocurrency to purchase drugs?

A JUROR: Oh, yeah, sure. I think that is what I

mentioned and alluded to earlier, that is kind of what cryptocurrency is used for, in some respects.

THE COURT: Any further questions?

MR. EKELAND: No, Your Honor.

MR. PEARLMAN: So, sir, I want to clarify, if the evidence in the case is that there was a purchase of those drugs with cryptocurrency, would you still be able to be fair and assess all of the evidence in the case?

A JUROR: For sure.

THE COURT: All right.

(End of bench conference.)

THE COURT: All right. Thank you.

Any further follow-up from counsel?

All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0273, please.

THE COURT: Thank you. And we have juror 0273. And you answered yes to question 33, which is whether you have ever been a juror before.

A JUROR: Uh-huh. Yes.

THE COURT: Tell us about that.

A JUROR: It was last year at the one down the street.

THE COURT: The Superior Court?

A JUROR: Yes.

THE COURT: The DC Court?

A JUROR: Yes.

THE COURT: What sort of case was it?

A JUROR: It was many cases.

THE COURT: Oh, you were a grand juror?

A JUROR: Yeah.

THE COURT: Because you have been a grand juror, do you understand that an indictment is not a finding of guilt in any way and just how a case is initiated?

A JUROR: Uh-huh.

THE COURT: Would you be able to decide this case without putting any weight on the fact that there is an indictment?

A JUROR: Right. Yes.

THE COURT: And what do you do?

A JUROR: I am a happy retiree.

THE COURT: Oh, good. That sounds good to me.

All right. Any follow-up questions, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: Ma'am, what did you used to do?

A JUROR: I used to work at NIH, government researchers, procurement.

MR. PEARLMAN: Thank you, Your Honor.

THE COURT: You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1656, please.

THE COURT: Thank you. All right. We have got Juror 1656. And you answered yes to the question about whether you lived with or have frequent contact with somebody at risk of severe COVID.

A JUROR: No.

THE COURT: Did you maybe mean a different question?

A JUROR: It was for English.

THE COURT: For English. Do you have difficulty understanding English?

A JUROR: I know English. But in this case maybe for terminology, financial, I don't know.

THE COURT: I see. So you might know some of the financial terms?

A JUROR: No.

THE COURT: How long have you spoken English?

A JUROR: I live in USA for 20 years.

THE COURT: If people speak quickly, would that be a problem for you or is it more just the question of technical terms?

A JUROR: Both. I am difficulty follow the same time to understand very well. But after that, I think I am understood better.

THE COURT: Did you understand all of the questions I asked?

A JUROR: Honestly, no.

THE COURT: Okay. All right. Any objection?

MR. EKELAND: No, Your Honor.

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. In light of that, thank you for your service in coming. I am going to excuse you.

A JUROR: Oh thank you. I'm sorry.

THE COURT: No, I understand. We want to make sure that everyone can understand what goes on here. So thank you.

THE COURTROOM DEPUTY: Juror number 1009, please.

THE COURT: Thank you. All right. And I have got Juror 1009. And you raised a question about the length of time for the trial.

A JUROR: Yeah. I didn't catch the number of the question. My apologies. So it was the --

THE COURT: It was 45. So tell us about your response to that.

A JUROR: Yeah. So I am an architect. And I work in aviation, so I travel often. It can be adjusted, obviously. And then, similar, my -- I live -- my mother lives in El Salvador. I was born and raised there. So my mother is ill. And this week, she fell and I almost had to go down there. A year ago she fell, she broke her hip. So anyway that is a concern. But it is just by chance as well.

THE COURT: Yeah. I understand that. With respect to your mother what I will say is that we are going to have

alternate jurors and sometimes people -- the reason we have the alternate jurors because sometimes people get sick and if something completely unexpected happened and you had to rush off to care for your mother, that is something that could be addressed. And with respect to the trial date, what I indicated was -- is that we expected the presentation of the evidence to be done by March 7th. I don't control how long the jury deliberates.

A JUROR: Okay. So it is beyond March 7th?

THE COURT: I don't -- it is very hard for me at the beginning of the case to predict how long it will last. I am going to do my very best to move the case along as quickly as we can, consistent with everyone's interest and rights. But I can't predict precisely when it is going to end. And I can't predict at all how long the jury is going to take in its deliberations, because that is up to the jury.

A JUROR: Okay.

THE COURT: And then you answered yes to question 25.

A JUROR: Yes. I own Coinbase through brokers. And I don't know very much about it. And I mean, the whole El Salvador thing and cryptocurrency just was of interest and when my broker suggested it, I agreed and bought. So I hold it.

THE COURT: How long ago did you buy it?

A JUROR: How long ago?

THE COURT: You bought it. You just use it as an

investment?

A JUROR: Right before it went down.

THE COURT: And you said -- I am not sure I am familiar. You said the whole El Salvador thing and cryptocurrency.

A JUROR: Because, you know, the president went into this thing of cryptocurrency and Bitcoin and, you know, people own the wallet and I don't --

THE COURT: Was the president of El Salvador encouraging people to buy cryptocurrency? Is that what you are saying?

A JUROR: Yes. He has got Bitcoin as a currency.

THE COURT: Would you be able to put aside any feelings related to that?

A JUROR: Sure.

THE COURT: All right. Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0727.

THE COURT: Thank you. All right. We have got juror 0727. And you answered yes to my question about extreme hardship.

A JUROR: Yes. So I just started a new full time

role last week.

THE COURT: A new full time what?

A JUROR: Role. So I am still kind of in the beginning periods, so this is really poor timing --

THE COURT: All right.

A JUROR: -- in that sense.

THE COURT: What do you do?

A JUROR: I am the director of operations.

THE COURT: For?

A JUROR: It is City Swing. It is a like golf simulation site.

THE COURT: I see. And I understand it may not be ideal timing. Are there others who could fill in if you did serve as a juror?

A JUROR: So my role is actually like new. It was created as like a need for the company since it is new.

THE COURT: I see.

A JUROR: So there are people that can pitch in, but it was kind of more of an urgent need because we are opening a new site and they needed someone to come in.

THE COURT: Is it something where you could either in the morning or in the evenings afterwards get done sort of the essentials of what you need to do?

A JUROR: It is possible. There are also some important planning meetings that are in the middle of the day,

so this might be -- those might be a little trickier.

THE COURT: And then you answered yes to question 40, which is about whether you or a family member worked for law enforcement or a defense side or a penal institution.

A JUROR: Yeah. I had an uncle that worked in a jail.

THE COURT: I see.

A JUROR: It is in Virginia not in DC, but --

THE COURT: Would that have any bearing at all on your views in this case?

A JUROR: No.

THE COURT: And then you answered yes to question 33 about whether you have been a juror before.

A JUROR: Yes. I served on a grand jury in 2021.

THE COURT: All right. And do you understand that an indictment is not evidence of wrongdoing and it is just the way a case is initiated?

A JUROR: Yes.

THE COURT: All right. Mr. Ekeland, any follow up?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: Ma'am, was the grand jury that you sat on, was it in this building or was it in another building?

A JUROR: It was in another building.

MR. PEARLMAN: Thank you.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1141, please.

THE COURT: All right. And I have juror 1141. And you answered yes to two questions. One is whether you have purchased or sold Bitcoin.

A JUROR: Yes. Just a longterm investment of Ethereum just through an exchange, so never set up a wallet.

THE COURT: All right. And you also indicated that you have strong feelings or opinions about use of cryptocurrency or about the darknet or the deep web.

A JUROR: Yeah. Maybe not strong opinions, just there is more, you know, criminal activity through an unregulated source as the dark web. So I don't think it would hinder my ability to pass judgment on the trial.

THE COURT: You could decide this case just based on the evidence?

A JUROR: Yes, sir.

THE COURT: Mr. Ekeland, follow up.

MR. EKELAND: Just on your views of the dark web, do you associate the dark web, everything on it, with criminal activity?

A JUROR: Maybe not everything on it, I am not sure of everything that is on it, but just more so a place where criminal activity can happen.

MR. EKELAND: Are you familiar with Bitcoin mixers at all?

A JUROR: Mixers?

MR. EKELAND: Yeah.

A JUROR: No, sir, I am not.

MR. EKELAND: And then I think you said -- did you say you set up your own wallet?

A JUROR: No, never have.

MR. EKELAND: So someone set it up for you or you used an exchange?

A JUROR: No, I don't have a wallet.

MR. EKELAND: No further questions.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0793, please.

THE COURT: Thank you. All right. We have juror 0793. And you answered yes to the question about whether you or someone who you have close contact with is at risk of severe illness from COVID.

A JUROR: Yes, that is correct.

THE COURT: Tell us about that.

A JUROR: I live with my mother. And she is immunocompromised. She has blood disorders and lymphoma, as

well as she has sustained permanent lung damage from a previous case of COVID.  So she is very vulnerable.

THE COURT:  So I see that you are wearing a mask. And I will say to you and any juror, anyone is always welcome in my courtroom if they want to to wear a mask.  Sitting on my jury, you are welcome to wear a mask.  That is completely fine.

A JUROR:  It is not something that -- not something that I do out of choice, but necessity unfortunately.

THE COURT:  Right, but I completely understand.  And the question I have for you is, assuming that you wear a mask, would you be comfortable serving on a jury or are you so concerned about your mother's health, for example, that you don't typically go out and avoid people because you really want to make sure you are avoiding all risk?

A JUROR:  No.  As long as I can wear the mask, it is fine.

THE COURT:  All right.  And then you answered yes to question 40, which is about whether you, a family member or close friend have worked for the organizations I listed.

A JUROR:  Is that the one that is about a government agency, Department of Justice?

THE COURT:  Yes.

A JUROR:  My mother is retired.  But prior to that, she worked as a paralegal for the environmental resources section of the Department of Justice.  And my brother is

currently working as a trial clerk for the United States Tax Court.

THE COURT: Would any of that have any bearing on your being fair and impartial here?

A JUROR: No.

THE COURT: And then you answered yes to 39, which is whether you tend to believe or disbelieve testimony from law enforcement more than any other witnesses?

A JUROR: I do. I do trust the police.

THE COURT: But do you understand that when it comes to a court of law that you have to evaluate the truthfulness or lack of truthfulness of any witness along the same standard just based on listening to the person's testimony, judging their demeanor and looking at all of the other evidence in the case and decide whether you think the person is being truthful or not?

A JUROR: Yes, I do.

THE COURT: Do you think you could do that with respect to law enforcement as well?

A JUROR: I believe so.

THE COURT: You answered yes to question 36 about whether you, a close friend or family member have legal training other than what you already have mentioned to us.

A JUROR: That would by my mother, the paralegal; and brother, the trial clerk.

THE COURT: Then you answered yes to question 35 about whether you, a family or close friend have been a victim or witness to a crime?

A JUROR: Yes. I was the victim of identity theft. The person was working with the -- the person worked with the bank teller as the accomplice. The bank teller gave them the names and personal information, account numbers of -- they were part of ring, but I was one of the victims. So using that information, my social security number, et cetera, they got checks -- they created -- you know, they got checks. They wrote bad checks in my name. And they stole money out of -- they stole money out of my checking account, which is how I found out I was a victim because all of a sudden my money was gone. So that is how I found out. So that happened to me.

THE COURT: Would any of that have any bearing on your ability to be fair and impartial in this case?

A JUROR: No.

THE COURT: You answered yes to whether you have been a witness or a party in a case?

A JUROR: Yes. I am a little bit unsure if this is covered under that question, but I did -- my father when I was -- when I was 14, my father died in a helicopter crash. And my mother brought a suit against the helicopter company on my and my brother's behalf.

THE COURT: Would that have any bearing in this case

in any way?

A JUROR: No.

THE COURT: And then you answered yes to question number 28, which is whether you have strong feelings or opinions about laws governing illegal drugs.

A JUROR: Yeah. I think that we need strong laws governing illegal drug use.

THE COURT: Would that have any bearing on your ability to be fair and impartial here?

A JUROR: I don't think so.

THE COURT: And then you answered yes to question 18, which was that you may hear testimony from one or more witnesses who have pled guilty to a criminal offense and who entered into a cooperation plea agreement with the government. Would the use of these cooperating witnesses prevent you from rendering a fair and impartial verdict in this case?

A JUROR: I am not sure on that.

THE COURT: Tell us.

A JUROR: I wasn't sure what you meant.

THE COURT: Fair enough. So what I mean by that is that in some cases sometimes what will happen is the government will enter -- will charge someone else with a crime. They will enter into a plea agreement with that person. And part of the plea agreement will say that as a condition of the guilty plea, the person agrees to testify truthfully in another case. And

the question is whether you have such strong feelings about the use of witnesses of that type that it would interfere with your ability to be fair and impartial, just to judge that either -- to believe or disbelieve that witness' testimony based solely on the evidence that you hear in the courtroom.

A JUROR: That wouldn't be a problem for me to judge them as whatever -- as they come here.

THE COURT: Okay. All right. Mr. Ekeland, any follow up?

MR. EKELAND: Yes. You said -- I think you said you trusted -- you tend to trust law enforcement.

A JUROR: Yes.

MR. EKELAND: Do you have any views as to whether law enforcement is ever mistaken?

A JUROR: I believe that they can -- people can make mistakes no matter what.

MR. EKELAND: So you are open to the possibility that law enforcement could be mistaken about anything?

A JUROR: Yes. I would have to hear what they had to say first, but, yeah.

MR. EKELAND: Thank you. No further questions.

THE COURT: All right. Mr. Pearlman.

MR. PEARLMAN: No, Your Honor. Thank you.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0624, please.

THE COURT: Thank you. All right. I have Juror 0624 who answered yes to two questions including the extreme hardship question. So let's start there.

A JUROR: We have a financial hardship. Unfortunately, I am federal contractor. And they don't provide coverage for jury duty salary. So if it goes beyond three days, I would have to go unsalaried and take a vacation or unpaid leave.

THE COURT: What do you do?

A JUROR: I work as a federal contractor for the US Agency for International Development. I am a public health specialist.

THE COURT: And then you answered yes to question 33 about whether you have been a juror before.

A JUROR: Yes. I served in the District side. They settled, but it was an assault case. I was picked and then let go.

THE COURT: Would anything about that experience have any bearing on your ability to be fair and impartial here?

A JUROR: No.

THE COURT: All right. Mr. Pearlman, any follow up?

MR. PEARLMAN: No questions.

THE COURT: Mr. Ekeland?

MR. EKELAND: Did I understand you correctly that

federal contractors don't get paid for being on federal juries?

A JUROR: I would only be supported for three days. So if it is a short trial, yes; but a longer trial, no.

MR. EKELAND: Thank you. No further questions, Your Honor.

THE COURT: All right. Thank you. You may go back to your seat.

THE COURTROOM DEPUTY: Juror number 1726, please.

THE COURT: Thank you. All right. And I have got Juror 1726. And you answered yes to four of my questions. Let's start with the question 28, which is about whether you have strong feelings or opinions about government laws relating to illegal drugs.

A JUROR: Yeah. I mean, I tend to think they are unfair.

THE COURT: And are all of them unfair or some of them unfair?

A JUROR: I would say some. I don't know all, but just the general construct, the framework.

THE COURT: Do you think that they are applied unfairly or you just disagree with the law to start with?

A JUROR: They are applied unevenly.

THE COURT: And in other words, they are enforced more against some people than other people?

A JUROR: Correct. Yes.

THE COURT: And in this case, the government's allegation and charges deal with money laundering or conspiracy to commit money laundering. Some of those allegations allege that money laundering was being done relating to unlawful drug purchases. Would you be able to put aside your feelings about the fairness of the drug laws and decide the case just based on the evidence presented in the courtroom?

A JUROR: I don't know. I would be hard pressed.

THE COURT: All right. Explain a little bit more. I mean, this is not a case in which anyone themselves is being charged, for example, with illegally using drugs. It is not a case in which anyone is being charged with illegally selling drug. It is a case in which someone is charged with allegedly illegally laundering funds that were then used for drug transactions. So in that context, do you think you could be fair and impartial?

A JUROR: Can we pick up the phone?

THE COURT: Sure.

(Conference held at the bench.)

A JUROR: Can you hear me now?

THE COURT: Yes, I can hear you. Thanks.

A JUROR: I mean, I just feel like, I am not the best juror for this particular situation.

THE COURT: Explain a little bit more.

A JUROR: I don't feel like I can convict a guy

regardless of the circumstances of the case. I don't think I am the best juror to convict anybody.

THE COURT: Mr. Pearlman, any follow up?

MR. PEARLMAN: No, not based on that response, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: No, Your Honor.

THE COURT: All right. Thanks.

(End of bench conference.)

THE COURT: All right. You can go back to your seat.

Can I ask counsel to pick up?

(Conference held at the bench.)

MR. PEARLMAN: Move to strike for cause, Your Honor.

MR. EKELAND: We object.

THE COURT: All right. I am going to strike him for cause.

(End of bench conference.)

THE COURT: Okay.

THE COURTROOM DEPUTY: Juror number 0752, please.

THE COURT: Thank you. We have juror 0752. And you answered yes to one question, which was 36, which is whether you, a family member or close friend have legal training or worked in a law office.

A JUROR: Yes. My dad practices corporate law in Atlanta. And my boyfriend is a lawyer in the Marines.

THE COURT: In the Marines?

A JUROR: Yes.

THE COURT: What sort of law does he do in the Marines, if you know?

A JUROR: Well, technically he hasn't started yet. He is finishing up base training in Quantico. And then he will be placed in April.

THE COURT: Would anything about either of those relationships have any bearing on your ability to be fair and impartial here?

A JUROR: No.

THE COURT: What do you do?

A JUROR: I work in an energy trade association. I work in communications.

THE COURT: Mr. Ekeland, any follow up?

MR. EKELAND: No.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 2065, please.

THE COURT: Thank you.

All right. I have got juror 2065. And you answered yes to five of my questions, including the catch-all and the extreme hardship question. So let's start there.

A JUROR: So I am starting a new managerial position.

I am currently in the training for it. And also two of my trainers are leaving, which leaves me literally in charge of the store that I work at. So I have to, you know, make sure everything is running and prove myself for the position.

THE COURT: What do you do?

A JUROR: I am an assistant manager right now at the Spencer's Gifts.

THE COURT: At Spencer's. Okay.

All right. And then you answered yes to the question 37, which was whether you, a family member or close friend had been arrested or charged with a crime?

A JUROR: Yes. Well, my father, a couple of my cousins, some friends.

THE COURT: Let me ask you, anything about that that would interfere with your ability to be fair and impartial here?

A JUROR: No.

THE COURT: And then you answered yes to whether you, a close friend or a family member have been the victim of or witness to a crime.

A JUROR: Yes. Well, I literally got held at gunpoint like a month ago. I have seen bodies. There is a few things.

THE COURT: Yeah. All right. And then you answered yes to whether you or a family member or close friend have been

audited by the IRS.

A JUROR: My father.

THE COURT: Anything about any of that would affect your ability to be fair and impartial here?

A JUROR: No.

THE COURT: I just want to go back to the questions about your starting this new position.

A JUROR: Uh-huh.

THE COURT: And I guess the question I want to ask is it going to put you in some sort of professional jeopardy if you have to serve as a juror here? Or tell us a little bit more about what the repercussions could be.

A JUROR: I feel like it would put my position in jeopardy, because I am kind of there right now to prove myself that, you know -- well, Fridays on top of that are like important days at the store, because those are like the busiest days of the week, got to make sure things are running the way they are supposed to run.

THE COURT: What hours do you work?

A JUROR: So the store itself is usually open between 9:00 and 9:00. But it is a -- in between there, I could be between the morning or afternoon.

THE COURT: I guess the question is, if we are only sitting occasionally on Fridays or part days on Fridays, you can still be there on Fridays and, quite frankly, although you

may not be thrilled by the prospect you could probably work in the evenings after trial. The question is whether that would allow you to transition into a new role or whether you would still have a problem?

A JUROR: I think that would be okay.

THE COURT: All right. Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: No, Your Honor.

THE COURT: Okay. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1431, please.

THE COURT: All right. We have juror 1431. You answered yes to two of my questions. You indicated that you have been a juror before?

A JUROR: Yes. Last June, Superior Court grand jury.

THE COURT: Grand jury. Do you understand that an indictment is not evidence of a crime it is just what initiates a case?

A JUROR: Yes.

THE COURT: And you answered yes to whether you purchased Bitcoin before or a cryptocurrency?

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: I purchased a few cryptocurrencies on the

Uphold app.

THE COURT: So just an investment or are you trading in it or using it to purchase things?

A JUROR: Just investing and holding it.

THE COURT: Okay. All right. Would anything about that have any bearing on your ability to be fair and impartial here?

A JUROR: No.

THE COURT: All right. Mr. Ekeland.

MR. EKELAND: I'm sorry. I didn't hear. Did you say you purchased the crypto with an app?

A JUROR: Uphold.

MR. EKELAND: On your phone?

A JUROR: Yes.

MR. EKELAND: What was the app?

A JUROR: Uphold.

MR. EKELAND: Oh, Uphold. I'm sorry. I didn't hear you. So you haven't set up a wallet or anything like that?

A JUROR: I don't have a wallet.

MR. EKELAND: Okay. You are just on --

A JUROR: Unless I -- still learning about it, but I mean, unless it is part of the app, I don't have a wallet where I transfer money in and out.

MR. EKELAND: And then are you still trading and buying cryptocurrencies?

A JUROR: Holding.

MR. EKELAND: Always?

THE COURT: Holding.

MR. EKELAND: Just holding. You are holding. Okay. Thank you. No further questions.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: Ma'am, you are a teacher?

A JUROR: Yes.

MR. PEARLMAN: Anything about that would affect your ability to serve here?

A JUROR: No. I have aides in my class, so they usually cover.

THE COURT: All right. Well, thank you. You can go back to your seat.

A JUROR: Okay. Thanks.

THE COURTROOM DEPUTY: Juror number 2200, please.

THE COURT: Thank you.

All right. Juror 2200 answered yes to one question, which was question 36, which is whether you, a family member or close friend have legal training or work in a law office.

A JUROR: My husband is a patent lawyer.

THE COURT: A patent lawyer. Okay. What do you do?

A JUROR: I am a realtor.

THE COURT: Would anything about that fact that your husband practices law have any bearing at all in this case?

A JUROR: No.

THE COURT: All right. Mr. Ekeland, any follow-up questions?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

A JUROR: Juror number 0625, please.

THE COURT: Thank you.

All right. I have Juror 625 and you answered yes to my catch-all question.

A JUROR: Yes. I think it is because I have a doctor's appointment for surgical follow up on Wednesday afternoon that I can't change.

THE COURT: I see.

A JUROR: And then I also have DC Court jury duty starting on March 7th.

THE COURT: That we could probably deal with.

A JUROR: I figured that you could deal with.

THE COURT: But the surgical follow up you said is on Wednesday?

A JUROR: Yes.

THE COURT: What time of day is it?

A JUROR: 1:00 p.m.

THE COURT: How far away is your doctor?

A JUROR: It is here in DC, like northwest.

THE COURT: If we were to take the lunch break that day, maybe a little bit longer, 12:30 to 2:00, would that address the problem?

A JUROR: Probably.

THE COURT: Would you remember to remind me if you end up on the jury?

A JUROR: I can.

THE COURT: And then you answered yes to question 40, which is whether you or a close friend work for one of those organizations I listed.

A JUROR: That was the one for law enforcement; correct?

THE COURT: Yes.

A JUROR: My uncle was a local city police officer. And I have been taking training towards becoming a NASA Special Agent. It is not my primary duty, not my full-time job, but I have taken those trainings. And I have federal arrest authority and the authority to carry a gun, but I am not a credentialed agent just yet.

THE COURT: And what would your role be at NASA? What would you do?

A JUROR: Mostly protective details and things like that.

THE COURT: What do you do at NASA now?

A JUROR: I am an emergency manager.

THE COURT: Would that have any bearing on your --

A JUROR: No.

THE COURT: Would it have any bearing on your ability to fairly consider the testimony of law enforcement one way or the other?

A JUROR: No.

THE COURT: Okay. And then you indicated yes to question 37 about whether you, a family member or friend had been arrested or charged?

A JUROR: Before I was born, my father was arrested, charged and convicted of killing somebody and served about 11, 12 years in prison.

THE COURT: Would that have any bearing on your ability to be fair and impartial?

A JUROR: No.

THE COURT: You indicated that you, a family member or close friend have been a victim or witness to a crime?

A JUROR: My dad was hit by a drunk driver back in 2007 and was in the hospital for quite a while. And then also, he did, you know, give victim statements as part of the trial.

THE COURT: Would that have any bearing on this case?

A JUROR: No.

THE COURT: And then you answered yes to question 31,

which is whether you, a family member or friend have been audited by the IRS.

A JUROR: I have been audited by the IRS.

THE COURT: Any bearing on this case?

A JUROR: No.

THE COURT: You answered yes to question 25, about whether you have purchased or owned Bitcoin or any cryptocurrency.

A JUROR: Yeah. Several years ago during the Dogecoin craze, I threw 50 bucks in Binance I think it was. And it didn't really go anywhere and finally cashed it out and -- at a loss, but it wasn't anything big. I was just trying it out.

THE COURT: I am going to preempt Mr. Ekeland. Did you ever have a wallet?

A JUROR: Not that I know of.

THE COURT: All right. Mr. Ekeland, any follow up?

MR. EKELAND: No further questions, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: The Court's indulgence. No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1580, please.

THE COURT: Thank you. I have got juror 1580. How

are you?

And you answered yes to two of my questions.  You answered to the question where I asked whether you, a family member or friend have worked for one of those organizations.

A JUROR:  Yeah, my father.  He was a police officer.

THE COURT:  Where was he a police officer?

A JUROR:  DC.

THE COURT:  In DC.  And would the fact that your father was a police officer have any bearing on the weight or lack of weight you would give the testimony of law enforcement?

A JUROR:  Huh-uh.

THE COURT:  No?

A JUROR:  No.

THE COURT:  Okay.  And then you answered yes to whether you, a close friend or family member have been arrested or charged with a crime.

A JUROR:  Yeah.

THE COURT:  Tell us about that.

A JUROR:  Not me but friends and family.

THE COURT:  Just sort of nature of the crimes?  What sort of crimes?

A JUROR:  Low crimes here and there, selling drugs, stuff like that.

THE COURT:  Some drug-related crimes?

A JUROR:  Uh-huh.

THE COURT: Would anything about that have any bearing on your ability to be fair and impartial here?

A JUROR: No.

THE COURT: Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor. Thank you.

THE COURT: Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: All right. Thanks.

THE COURTROOM DEPUTY: Juror number 1236, please.

THE COURT: Thank you. I have Juror 1236. And you answered yes to three of my questions, including the one that we just discussed a minute ago about the long list of organizations.

A JUROR: Yes. That was about the law enforcement.

THE COURT: Yes.

A JUROR: My wife works at the US Marshals.

THE COURT: Where does she work, which Marshals office?

A JUROR: The headquarters.

THE COURT: What does she do there?

A JUROR: She is a statistician.

THE COURT: Does she do any investigative work?

A JUROR: Yes. She is involved in some of them, some investigations.

THE COURT: Do you know if her investigations

involved any financial crimes?

A JUROR: No. No. I mean, she is not like involved in the investigation. She is kind of is in charge of like the -- or deals with the fund -- how they are funded, like the -- like whether they are properly resourced.

THE COURT: Whether the Marshals Service is properly resourced?

A JUROR: Yeah.

THE COURT: Would the fact your wife works for the Marshals Service have any bearing on the weight or lack of weight you would give to testimony?

A JUROR: No.

THE COURT: Would it make you want to favor one side or the other in this case?

A JUROR: No.

THE COURT: And then you answered yes to question 36 about whether you, a family member or close friend have legal training or have worked in a law office?

A JUROR: Yeah. So my parents are both lawyers and my wife attended law school.

THE COURT: What sort of law do your parents practice?

A JUROR: My father does international law and my mother doesn't practice anymore.

THE COURT: Okay. Did you say you went to law

school?

A JUROR: No, my wife did.

THE COURT: Your wife did. All right. And then you answered yes to question 31, which was about whether you or a family member have ever been audited by the IRS.

A JUROR: My father was audited years ago.

THE COURT: Any bearing in your mind on this case?

A JUROR: No.

THE COURT: Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: All right. You can go back to your seat.

THE COURTROOM DEPUTY: Juror number 1964, please.

MR. PEARLMAN: Your Honor --

THE COURT: Yes.

(Conference held at the bench.)

MR. PEARLMAN: Could we take a five-minute break, Your Honor?

THE COURT: Yeah. Can we do this one since she is already on her way up and then take the break?

MR. PEARLMAN: Of course.

THE COURT: Let me ask you one question beforehand, which is I have been sitting here stewing about Juror 727, which is the woman who said she just started a new role and she

is going through tough training. And I have been pretty conservative about letting people go, because of the work related demands. You can give it some thought, but I am thinking about whether we should strike her for cause because it did seem like it would be a real hardship for her. But think about that. I wanted to do it before the lunch break if we do it so she doesn't have to come back.

(End of bench conference.)

THE COURT: All right.

All right. Thank you. We have Juror 1964. And you answered yes to three of my questions.

First of all, you answered yes to the question about whether you, a family member or close friend have worked for a government entity involving financial regulation.

A JUROR: I wasn't exactly sure if this applies. But I work for the National Science Foundation Office of Inspector General. And I have done audits in the past of grant recipients and whether they were appropriately using their grant funds.

THE COURT: Would that have any bearing on your views of this case?

A JUROR: No.

THE COURT: You answered yes to question 37 about whether you, a family member or friend had been charged with a crime or arrested.

A JUROR: I was charged with Metro fare evasion.

THE COURT: With car evasion?

A JUROR: Metro fare evasion.

THE COURT: Any bearing on this case?

A JUROR: No.

THE COURT: And then you said that you or a family member have been the victim of a crime or witness to a crime.

A JUROR: So my information was, I guess, part of the OPM hack, the federal employee information that was -- I guess I assumed it was a crime, maybe it wasn't a crime. But when your personal information was --

THE COURT: I see. I thought -- fair enough.

Would that have any role in your views about this case in any way?

A JUROR: No.

THE COURT: All right. Any follow-up questions?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. It seems the Metro Police are enforcing those rules, so all beware. Thank you.

All right. So we are going to take a short just restroom break right now and about then, let me see. I want to see where we are here. So we are going to take a lunch break in any event at 12:30. So I think that it is probably safer --

we are going to take a 5 minute.  I think everyone on this side from the aisle over here can go to lunch now, if you want to. And I will ask that you all be back by 1:30.  And don't discuss the case.  And if you see anyone associated with the case, don't talk to them at all.  And if they steer away from you, they are not being rude, they are just following the same instruction that I have given you.  So I will see this half of the room after the lunch break.  The last few folks in the back there, I will see you back after a 5-minute restroom break.

(Jury out at 12:11 p.m.)

(Jury in at 12:18 p.m.)

THE COURTROOM DEPUTY:  Juror number 1029, please.

THE COURT:  Thank you.  All right.  We have juror 1029.  And you answered yes to three questions including the extreme hardship question.

A JUROR:  Yes.

THE COURT:  Tell us about that.

A JUROR:  Now that I have listened to everyone, I don't know that it is an extreme hardship.  I am in the senior executive service candidate development program.  And I have mandatory training at the end of the month.  I imagine with a note from the court, I can reschedule.

THE COURT:  I can accommodate you.

A JUROR:  I fully accept that.

THE COURT:  I think when you hear --

A JUROR: Yeah. I --

THE COURT: I understand that a lot of this imposes on people, but when you have a trial of this length, it just happens.

A JUROR: Constitutional duty.

THE COURT: Exactly. And then you answered yes to question 33 about whether you have been a juror before.

A JUROR: Yes. I served on a DC petit jury on a case involving -- I forgot what the charge was. But it was a violent crime situation, several years ago.

THE COURT: Okay. Anything about that case have any bearing here?

A JUROR: No.

THE COURT: You answered yes to question 6, which is whether you are familiar with one of the organizations, Chainalysis, CipherTrace, Excygent, Elliptic.

A JUROR: Yes. My former boss was very active in cybersecurity to include crypto and did some work with Chainalysis.

THE COURT: I see. Where were you working? You said your former boss.

A JUROR: I was still there at Department of Homeland Security.

THE COURT: Did you work at all with any of those organizations?

A JUROR:  No.

THE COURT:  Do you know anything about your boss' work with them other than that he did it?

A JUROR:  No.

THE COURT:  What did you do for that boss?

A JUROR:  I was his chief of staff.

THE COURT:  Would you come to this case with any prior conceived notions or views with respect to any of those organizations?

A JUROR:  No.

THE COURT:  Have you personally been involved in cybersecurity or anything like that?

A JUROR:  No.  Just in the scheduling of his work in that field.

THE COURT:  I see.  All right.

Mr. Ekeland, any follow up?

MR. EKELAND:  Who was your former boss?

A JUROR:  He is the Undersecretary for Policy at Homeland Security, Robert Silvers.

MR. EKELAND:  Thank you.  No further questions.

THE COURT:  Mr. Pearlman, anything else?

MR. PEARLMAN:  No, thank you.

THE COURT:  You can go back to your seat.  Thank you.

THE COURTROOM DEPUTY:  Juror number 0359, please.

THE COURT:  You know, I realized -- well, could I ask

the folks to pick up the phones for a second here?

(Conference held at the bench.)

THE COURT: I probably need to send everyone else to lunch now too that I have already spoken to so they can get started on their lunch. That just leaves the question of the one juror where I was feeling as though we are doing okay in picking jurors. And she did express what I thought was a fairly legitimate hardship relating to the fact she just started a new role.

MR. EKELAND: No objection, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: No objection, Your Honor. There may be one or two others that we want to discuss, but we can discuss them after lunch.

THE COURT: That is fine. So I am going to go ahead and strike juror 727. Okay. Thank you.

(End of bench conference.)

THE COURT: Thank you. All right. We have juror 359. And you answered yes to three of my questions starting with the extreme hardship question.

A JUROR: Yes. So I am the special assistant to the deputy administrator at US AID and the COO, which is a role sort of like a chief of staff where I am in many meetings per day and kind of manage her day-to-day engagements. So it would be quite challenging to miss a large stretch of time in that

role.

THE COURT: And remind me again, what is the role, the title?

A JUROR: I am the special assistant to the Deputy administrator of US AID.

THE COURT: I see. And does the deputy administrator have other assistants?

A JUROR: So there is an executive assistant and then the are advisers. But my role is kind of a catch-all in terms of all of her day-to-day work, so there is no one that could exactly fill what I do.

THE COURT: I see. And then you answered yes to question 40. And I think you are a former consultant to the FBI.

A JUROR: So I did not work for the FBI, I worked for Deloitte. But I spent one year at the J. Edgar Hoover building embedded within an FBI office.

THE COURT: What did you do there?

A JUROR: I consulted on private sector engagement for the Bureau, so it was business strategy-type work.

THE COURT: Would anything on that have any bearing on this case in your mind?

A JUROR: No.

THE COURT: Would it make you more likely to favor one side or the other in the case?

A JUROR: No.

THE COURT: You answered yes to question 25, which is whether you purchased cryptocurrency.

A JUROR: Yes. I made some purchases of Ethereum quite a few years ago. I sold them quite a few years ago, so nothing recent.

THE COURT: Would that have any bearing on this case in your mind?

A JUROR: No.

THE COURT: I just want to get back to the hardship question for a minute. Let me ask you to maybe tell us a little bit more about in sort of your day to day activity. I want to get a sense of how serious --

A JUROR: Sure. I'd equate my role to something like a chief-of-staff role. I attend usually around 10 meetings per day. My boss is the chief operating officer of the agency. She is a very senior member of the leadership of the agency. So my role involves kind of ideally being in all of the meetings, being on all of the emails. We just returned from a week-long trip abroad actually several days ago and are going back abroad in mid March. So it is quite an intense role. And each day I am not in the office, it is difficult in terms of management of kind of my principle's work universe.

THE COURT: So when you are sitting in these meetings, are you there to be a sounding board; are you there

to keep track of what we used to call at the Justice Department, the get-back list, the tasks that come out of the meeting to make sure it gets done?

A JUROR: Yes. So tracking do outs and follow is part of my role. There is also an advisory nature to my role where I am involved with the substance and I provide feedback, participate in meetings, so it is sometimes an active role.

THE COURT: Okay. Any follow up, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat.

THE COURTROOM DEPUTY: Juror number 0663, please.

THE COURT: Thank you. We have Juror 663. And you answered yes to two questions. Let's start with question 42, which is whether you have a health problem that would make it difficult for you to serve as a juror.

A JUROR: The only health problem I have is my glasses, the prescription is a couple years old. I can't really see that well.

THE COURT: So could you see and read exhibits if they were in front of you?

A JUROR: Yes.

THE COURT: And could you like see me, see my facial expressions and all of that?

A JUROR: Yes. From this distance.

THE COURT: I'm sorry?

A JUROR: From this distance.

THE COURT: Okay. All right. If you had difficulty seeing something as a juror, would you have any problem raising your hand and letting us know and we could make sure it was presented closer to you?

A JUROR: Yes.

THE COURT: And then you answered yes to question 39, about whether you would view testimony from law enforcement one way or the other, simply because it is from law enforcement.

A JUROR: I might be a little biased from where I grew up, because, you know, but I feel like I can. My interactions haven't been too terrible with the police. But I just have seen a lot of not credible things.

THE COURT: And do you understand that this isn't a case in which there are going to be, you know, on-the-beat police officers? That is not the type of law enforcement that is going to be in this case.

A JUROR: Yes.

THE COURT: Do you think that you could give that -- the testimony of those witnesses whatever weight you think it deserves or doesn't deserve and you could evaluate it just based on the evidence in the case?

A JUROR: Yes.

THE COURT:  All right.

A JUROR:  I don't think it would affect it.

THE COURT:  All right.  I appreciate that.

Mr. Pearlman, any follow up?

MR. PEARLMAN:  Sir, in this case you might as a juror have screens to look at of like Excel spreadsheets.  Would you -- if you are only a foot or two away from the screen, would you be able to see that?

A JUROR:  Oh, yes, I would be able to see that.

MR. PEARLMAN:  Thank you.

THE COURT:  Mr. Ekeland, any follow up?

MR. EKELAND:  No further questions.

THE COURT:  All right.  You can go back to your seat.  Thank you.

THE COURTROOM DEPUTY:  Juror number 1956.

THE COURT:  All right.  One more and I will send you to lunch.

Thank you.

We have juror 1956.  And you answered yes to three of my questions, including the catch all, so let's start there.

A JUROR:  Yes.  Good morning, Your Honor.

THE COURT:  Good morning.

A JUROR:  I assist my elderly parents who live out of the area as needed.  And unfortunately this didn't come up within the deferment window, it came up outside of that.  But

they have -- they both now have medical appointments. So I drove home last week and went with my 85-year-old dad to his doctor's appointment. He has AFib and a couple of stints and heart issues. I did that on Friday. And my 90-year-old mother's appointment is tomorrow. So when I called Thursday evening, I was relieved that I didn't have to report here on Friday. And then I called Saturday morning and found out I had to report. So I flew back here last night and hopefully will catch my afternoon flight back to them in Alabama.

THE COURT: So you have got to be back with them tomorrow?

A JUROR: Mother's appointment is tomorrow and then dad has another follow up either later this week or the following week.

THE COURT: Any objection?

MR. PEARLMAN: No objection.

MR. EKELAND: No objection.

THE COURT: All right. I am going to let you go. Thank you.

A JUROR: Thank you very much, sir.

THE COURT: All right. And juror 727. Is she there? Do we have Juror 727?

THE COURTROOM DEPUTY: Juror 0727?

THE COURT: All right. We'll figure that out. But you all are welcome to go to lunch. Please be back by 1:30.

Don't discuss the case with anybody. And make sure you don't overhear any conversations in the hall, just steer clear of anyone associated with the case.

Yes, ma'am.

A JUROR: We come straight to you?

THE COURT: Yes. Straight back here at 1:30, yes.

(Jury out at 12:30 p.m.)

MR. PEARLMAN: Your Honor, can we use the phones?

THE COURT: Yes.

(Conference held at the bench.)

MR. PEARLMAN: Your Honor, there are two other jurors, 0624.

THE COURT: And the line number?

MR. PEARLMAN: Line number 22.

(End of bench conference.)

THE COURT: That is you? I am going to let you go in light of your work obligations.

(Conference held at the bench.)

MR. PEARLMAN: 0624 and then 2065, who is number 25.

THE COURT: So 25, and then who was the first one? What line?

MR. PEARLMAN: Number 22, 0624.

THE COURT: Okay. Remind me of their circumstances.

MR. PEARLMAN: 2065 works at Spencer's. He did ultimately say that he could serve.

THE COURT: That is line 28; right?

MR. PEARLMAN: No -- so 2065 is line 25.

THE COURT: Yes. I got that one, yes.

MR. PEARLMAN: So he said that he could serve ultimately with evening hours. I guess everything up to then, seemed to indicate that he couldn't and that he would be in the same situation, so maybe just something to think about.

THE COURT: I was having the same thoughts about him and was discussing it with my clerk as well. I think it is a close question as well. I mean, he ultimately -- had he not said that evening hours worked, I would have struck him. And so I am happy to continue to think about that.

Mr. Ekeland, do you have a view?

MR. EKELAND: We object to striking 2065 for cause as well as 0624.

THE COURT: Okay. Tell me -- remind me about 0624.

MR. PEARLMAN: So my notes were that she had some significant work issues, but I don't have anything else here.

THE COURT: Just a second.

MR. PEARLMAN: Oh, right, I remember.

THE COURT: She is not going to get paid.

MR. PEARLMAN: I think she can do a three-day trial, which I'd love to participate in, but that is not this trial.

THE COURT: Well, you know, what I am happy to do with her and maybe I should have done this in the first place

with her is bring her back. Because I didn't really dive into what her financial circumstances are. And if she has a spouse who earns a reasonable income or I will say actually in her case I was moved somewhat by the fact that her position sounded like a fairly senior position where she was probably not having trouble paying rent. But I am happy to kind of bring her back and ask more about her financial means if people think I should.

MR. PEARLMAN: That is fine, Your Honor. I am okay with that.

THE COURT: 0624 that is.

Mr. Ekeland?

MR. EKELAND: Your Honor, I think we would be okay with 624 if you wanted to strike for cause. But we maintain our position on the other number, which I am blanking on right now.

THE COURT: On 2065, he did say that he could serve, so I am not going to strike him for cause.

MR. PEARLMAN: Very well, Your Honor.

THE COURT: But 0624 I think I should bring her back up and see what she says about her financial circumstances. All right.

Just while we are on the phone is the government had filed a motion asking for me to inquire with respect to whether there was a conflict and perhaps to appoint conflict-free

counsel. In light of the response that you got from Mr. Ekeland, I guess the question is whether that is something you still want to pursue and whether I need to do that before trial and whether I should inquire about that now. Because if I need to get someone to confer with Mr. Sterlingov before trial, I need to do that now. I thought that the defense response was a reasonable one, at least reasonable enough. Perhaps a colloquy with Mr. Sterlingov would be sufficient.

MR. BROWN: Your Honor, the government has no objection if we just handle this with a conflict inquiry hearing and forego the appointment of conflict-free counsel. We wanted to draw the Court's attention to this. The appointment of counsel is the gold standard, but I think a conflict inquiry would address our concerns.

THE COURT: So, Mr. Sterlingov, are you aware of the issue that we are talking about?

THE COURTROOM DEPUTY: His doesn't allow him to talk.

THE DEFENDANT: I believe so, Your Honor. Can you hear me?

(End of bench conference.)

THE COURT: Who is in the back of the courtroom? Do you know who -- do you know who is in the back in the courtroom back there? Who are you?

UNIDENTIFIED SPEAKER: From DOJ.

THE COURT: If you are not associated with the case,

can I ask you to step out, so I can have a private conversation with the parties?

UNIDENTIFIED SPEAKER:  I am happy to leave.  I don't know this gentleman.

(People step out of the courtroom)

THE COURT:  Who is the final gentleman there?

MR. EKELAND:  That is Dr. Cabanas, one of our experts.

THE COURT:  Any objection to him staying in the room for this?

MS. PELKER:  No, Your Honor.

THE COURT:  So I am going to seal the proceeding at this point.  And we can have an easier conversation.

(Proceedings were sealed by order of Judge Moss.)











Appx2478

(End of sealed proceedings.)

(Recess taken at 12:45 p.m.)

THE COURTROOM DEPUTY:  Juror number 1819, please.

THE COURT:  Thank you.

All right.  We have Juror 1819.  And you have answered yes to four of my questions.  And let's start with the extreme hardship question.

A JUROR:  Yeah.  For my job, I don't think I would be able to be away from like outside of like normal business hours.

THE COURT:  What do you do?

A JUROR:  Sales.

THE COURT:  What type of sales?

A JUROR:  Software sales.

THE COURT:  Describe a little.  Are you doing it in your office, from the road, from your home.  How does that work?

A JUROR:  Everything is remote right now, but still having to meet with people based off of their timeline, not really mine.

THE COURT:  Right.

A JUROR:  So having these hours wouldn't really work that well.

THE COURT:  What sort of software do you sell?

A JUROR:  Analytics type software.

THE COURT: I see. And are you salaried or are you doing it on a commission basis?

A JUROR: Both.

THE COURT: All right. And then you answered yes to question 25, which is whether you have purchased cryptocurrency?

A JUROR: Yeah. I have a few different ones.

THE COURT: Which ones?

A JUROR: Generic ones like Bitcoin, Ethereum, I did do some like Dogecoin as well and then Cardano.

THE COURT: You have held those for investment or have you used those for transactions?

A JUROR: More for investment now, yeah.

THE COURT: You say now, previously --

A JUROR: I tried out like back in the beginning like buying stuff with Bitcoin, but not anymore.

THE COURT: I see. And then you answered yes to question 23 about whether you ever accessed the darknet or deep web.

A JUROR: Yeah, through Tor. I am just curious.

THE COURT: And I will come back to that in a second. And I think you mentioned just that you have used the Tor browser. Let me ask you to pick up the phone for a second.

(Conference held at the bench.)

THE COURT: You can push that to speak. Can you --

A JUROR: It is working now?

THE COURT: Yeah. Perfect. So tell me when you used Tor, what type of sites did you go to? What did you see?

A JUROR: I just really downloaded it. I didn't really go into anything. I think my intent was to look at Silk Road, because that was what was like big at the time, but, you know, never did anything actually on it.

THE COURT: Okay. I see. Would that have any affect on your ability to judge this case based on the evidence in this courtroom, assuming there is evidence about the darknet and things like that?

A JUROR: No, not at all.

THE COURT: How much time did you spend using Tor and poking around?

A JUROR: Like minuscule amounts of time.

THE COURT: Thank you.

Any follow up while we are on the line?

(End of bench conference.)

THE COURT: So I just wanted to go back to this question about your work. And I understand it is an imposition. I have got to get a sense of how significant an imposition it would be on you to serve on the jury.

A JUROR: I know you asked the other potential jury people if someone else could fill in for them with sales. No one is going to sell for you.

THE COURT: Right. What happens if you are not there to sell? Do they go to other companies or your clients get upset or what happens?

A JUROR: Yeah. They probably don't buy and then people aren't happy.

THE COURT: All right. Any follow-up questions?

MR. PEARLMAN: No, Your Honor.

MR. EKELAND: Just one. Do you know how to code? Like write software code?

A JUROR: Not really.

MR. EKELAND: No further questions.

THE COURT: You can go back to your seat. Thanks.

(Conference held at the bench.)

THE COURT: Can we pick up the --

I don't know what you all think about -- it seems like he had a more substantial excuse than others. What are your thoughts?

MR. PEARLMAN: I don't object to pushing him towards the back and qualifying additional people in his place.

THE COURT: Mr. Ekeland, what do you think about that?

MR. EKELAND: We would still like to keep him in consideration at the moment.

THE COURT: We can put him on hold. I am inclined to think that he should be excused. It sounds like it would be

more a hardship for him than others.  I am happy to push him and we can consider him later along with the others.  Thank you.

(End of bench conference.)

THE COURTROOM DEPUTY:  Juror number 1223, please.

THE COURT:  All right.  We have juror 1223.  How are you today?

A JUROR:  I am good.  How are you?

THE COURT:  I am fine.  Thank you.

And you answered yes to one of my questions, which was whether you have been a juror before.

A JUROR:  Yes.  Twice with the Superior DC Court and once in Montgomery county.

THE COURT:  Okay.  And do you live in DC now?

A JUROR:  I do.

THE COURT:  What sort of cases?  Were they criminal, civil cases, both?

A JUROR:  Both.

THE COURT:  Did the jury reach a verdict in those cases, do you remember?

A JUROR:  I don't remember.

THE COURT:  Okay.

A JUROR:  It has been a long time.

THE COURT:  Okay.  All right.  And what do you do?

A JUROR:  I am retired.

THE COURT:  What did you do before you retired?

A JUROR:  TSA.

THE COURT:  What did you do with TSA?

A JUROR:  Security screening.

THE COURT:  At the airport?

A JUROR:  National, yes.

THE COURT:  All right.  Great.  Thank you.

Mr. Ekeland.

MR. EKELAND:  No questions, Your Honor.

THE COURT:  Mr. Pearlman?

MR. PEARLMAN:  No questions, Your Honor.

THE COURT:  All right.  Thank you.

A JUROR:  You're welcome.

THE COURTROOM DEPUTY:  Juror number 0357, please.

THE COURT:  Thank you.  All right.  How are you today?

A JUROR:  Good.  How are you?

THE COURT:  We have got Juror 357 and you have no yes answers.

A JUROR:  Nope.

THE COURT:  Did you hear all of my question all right?

A JUROR:  I did.

THE COURT:  You live in DC?

A JUROR:  I do.

THE COURT: Have you ever been a juror before?

A JUROR: No.

THE COURT: What do you do?

A JUROR: I am a market researcher, so I do qualitative and quantitative research.

THE COURT: Mr. Ekeland, any questions?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1568, please.

THE COURT: Thank you. All right. So Juror 1568 answered yes to question number 3 -- I mean, number 12. I'm sorry. Number 12. And I can tell you why he answered yes to number 12, which asks whether he knows me or any member of my staff. And that is because I know Juror 1568. We were partners at the same law firm for many years. I don't think that is, per se, an issue. But let me ask him about some of the other issues that he flags here. And he indicated that he has worked for a government entity engaged in financial regulation. And why don't you tell us about that?

A JUROR: I worked at the Securities and Exchange Commission.

THE COURT: Can you tell us what you did there?

A JUROR:  I was the chief counsel of the enforcement division at the SEC.

THE COURT:  Okay.  Mr. Pearlman?

MR. PEARLMAN:  No questions, Your Honor.

THE COURT:  Mr. Ekeland?

MR. EKELAND:  Are you still practicing law.

A JUROR:  Yes, I am.

MR. EKELAND:  What is your law practice?

A JUROR:  I am back at the same law firm I was at before I went to the SEC.

MR. EKELAND:  What do you have -- what area of law do you practice in?

A JUROR:  Securities law.

THE COURT:  Let me ask you, in your work at the SEC, were you involved at all in the regulation of cryptocurrency?

A JUROR:  Yes.

THE COURT:  And can you tell us about that?

A JUROR:  Sure.  I was involved in a number of enforcement actions that the SEC brought alleging that people who were using cryptocurrency in various ways had violated the securities laws.

THE COURT:  Go ahead.

MR. EKELAND:  And how -- when Judge Moss was a partner at your firm, how often did you interact with Judge Moss?

A JUROR: Not professionally a lot, just socially at the law firm, seeing him in the offices.

THE COURT: To my recollection, I don't recall if we ever worked a matter together. It is possible we did, but I don't recall having done so.

All right. And then you answered yes as well to question 40, which is similar to 41 about whether you or close friends or members of your family have worked for the long list of organizations. Other than your work at the SEC, is there anything we should know about it?

A JUROR: That is it.

THE COURT: All right. And then you answered yes to question 36 about whether a family member or close friend have legal training, which I think perhaps we have covered.

A JUROR: I do, yes.

THE COURT: And then you answered yes to 34 about whether you have been a witness in a civil or criminal case or party in a court case.

A JUROR: Yes. I have been a witness in a federal criminal case.

THE COURT: Tell us a little bit about that.

A JUROR: It was a securities fraud prosecution in the United States District Court for the District of Colorado. And I was called as a witness.

THE COURT: Would the fact that you have served as an

enforcement official on behalf of the government or a witness on behalf of the government in criminal proceedings make you inclined to favor one side or another in this case?

A JUROR: No.

MR. PEARLMAN: Your Honor, may I clarify?

THE COURT: Yes.

MR. PEARLMAN: Were you a witness on behalf of the government?

A JUROR: I was called by the government as a fact witness.

MR. PEARLMAN: As a fact witness, not as an expert?

A JUROR: Correct.

THE COURT: And then you indicated that you have been a juror before.

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: I have been a juror in both civil and criminal cases in this court and in DC Superior Court.

THE COURT: And then finally you indicated that you have read or subscribed to podcasts or follow social media on topics relating to cryptocurrency.

A JUROR: Yes. As part of my work both at the SEC and in private practice, I read articles from CoinDesk and other legal publications about cryptocurrency and usually its relationship to the government.

THE COURT: And would you be able to put aside whatever you have learned about cryptocurrency from your role as a practicing lawyer or in the government and decide this case based just on the evidence you hear in court?

A JUROR: Yes.

THE COURT: All right. Is there anything else we should know about your role or your activity at the Securities Exchange Commission have a bearing on your ability to be a fair and impartial juror in the case?

A JUROR: I don't think other than what we have discussed, no.

THE COURT: Mr. Ekeland, any follow up?

MR. EKELAND: No.

THE COURT: Okay. Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0728, please.

THE COURT: Just before we --

Can the attorneys please pick up the --

(Conference held at the bench.)

THE COURT: I just want to be clear on the record that I will not be offended in any way if anyone did want to move to strike the last juror. He is not a close friend of mine, but he is somebody I have known for many years and

practiced law with. I just wanted to be clear that you shouldn't be afraid of offending me because I would not be offended by whatever motions you may or may not make.

MR. EKELAND: Then the defense is going to move to strike him for cause, Your Honor.

MR. PEARLMAN: I don't there think is a basis to strike him for cause, Your Honor. I think he is able to be fair. And there is nothing he said that would indicate an inability to be fair.

THE COURT: Mr. Ekeland.

MR. EKELAND: He is both a friend of the Court and he is a -- works with the SEC. He regulates cryptocurrency. And I just don't want -- the defense just doesn't think that he could be impartial given his work with the SEC and his views on cryptocurrency.

THE COURT: All right. Well, if you would like, what I am happy to do is to bracket him. And if you want to call him back -- I don't think you really explored those issues with him. You are welcome to do so. I can call him back up at some point if you would like to do that. I agree with Mr. Pearlman based on what is on the record thus far, I don't think there is enough there to strike him for cause. It may be that you wanted to dig deeper and develop things further, you are welcome to do that.

With respect to his being a friend of mine, I mean, I

don't think I have actually seen him other than perhaps like waiting on the street passing him in many years now. And I don't think he has ever been to my house for dinner. I have never been to his house for dinner and he has never been to my house for dinner. We have never gone out. It is just -- with us or a small group -- my relationship with him is solely as, you know, a former law partner where there were firm events in the office where I would see him and we had a friendly relationship in that way. So I don't think that is a basis to strike him. And certainly having a relationship with the Court doesn't favor one side or the other in the case.

So but if I do think that his work at the SEC is a legitimate issue. I just don't think there is -- all we know at this point is he did do some cryptocurrency regulation, but we haven't explored whether that would have any impact on his ability to be fair and impartial.

MR. EKELAND: We agree with the Court, we bracket him and see if we need to get back to it.

THE COURT: Okay. That is fine.

(End of bench conference.)

THE COURT: All right. We have Juror 728. And you answered yes to four of my questions, including question 41, which asks whether you, a close friend or family member have ever worked for a government entity engaged in financial regulation.

A JUROR:  Yes.  I have a friend -- a close friend who works for the FDIC.

THE COURT:  Would anything about that relationship have any bearing in this case?

A JUROR:  Not to my knowledge.

THE COURT:  Do you know if your friend has anything to do with allegations of money laundering or cryptocurrency?

A JUROR:  Not to my knowledge.  She only just started there.

THE COURT:  Okay.  And then you answered yes to question 40, which is the list of organizations, law enforcement and defense organizations.  Can you tell us about why you answered yes to that question?

A JUROR:  Yes.  My brother works for the US Marshals.

THE COURT:  Where is he based?

A JUROR:  Atlanta, Georgia.

THE COURT:  Do you know what he does there for the Marshals?

A JUROR:  Broadly, yes.  I know he works in like arrests and drug related -- like guarding criminals and things like that and was working in sex crimes at one point.

THE COURT:  Would the fact that your brother works for the Marshals Service make you inclined to favor one side or the other in this case?

A JUROR:  No, not to my knowledge.

THE COURT: Would it make you more inclined to favor or disfavor testimony from law enforcement?

A JUROR: No.

THE COURT: And then you answered yes to question 36 about whether you or a family member or friend have legal training?

A JUROR: Yes. My boyfriend went to law school and currently works for the government, but not related to crimes of -- to this area of law to my knowledge.

THE COURT: What does he do?

A JUROR: Works for the EPA.

THE COURT: Do you know what he does at the EPA?

A JUROR: Grants management, I think.

THE COURT: And then you indicated that -- yes to question 5, which asks whether you have heard, seen or read anything about Larry Harmon, Helix or Bitcoin mixing and tumbling.

A JUROR: I meant to answer the question about podcasts and publications on cryptocurrency.

THE COURT: Tell us about that.

A JUROR: I just follow some podcasts and publications about cryptocurrency, but nothing very in-depth.

THE COURT: All right.

A JUROR: I did also answer yes to 45. It is up --

THE COURT: I see that there. I'm sorry. I missed

that because it was in a different portion. Why don't you tell us about that.

A JUROR: I am in the same boat as the person earlier. I work as a federal contractor. My company provides salary for up to 16 hours of jury service.

THE COURT: All right. And so you wouldn't be paid for a portion of your service?

A JUROR: That is right. After two days, I would not be paid.

THE COURT: Let me ask you how much of a financial hardship would that be on you? In some cases, missing pay for a few weeks is -- people can't pay their rent and they are really in trouble. In other cases, they have other means and it is less of an imposition. So in your case, how much of an imposition would that be?

A JUROR: I guess I would rather not cut into savings for four weeks to pay my mortgage and things like that. So, yeah, it would be a burden in that sense.

THE COURT: Okay. All right. Any follow up, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: Ma'am, can I ask you which specific podcasts on cryptocurrency you listen to?

A JUROR: Yeah. It is "The New York Times" podcast

called Hard Fork.  It is not specifically about cryptocurrency.
It is more related to tech.  It is more related to news in
tech.

MR. EKELAND:  Thank you.

THE COURT:  Could I ask you to pick up the phone for
a second here.

(Conference held at the bench.)

THE COURT:  I didn't want to get into your finances
in detail on the public record here.  But can you give us a
better sense?  As I said before, you know, for some people it
is really a real hardship and I completely get that.  Other
people, you know, it is a burden and it is part of your civic
duties.  It is one of the things where you wouldn't have to
want to dip into your savings account, but where it is not
going to have a material affect on your life.  And I guess that
is my question for you is -- if you can give us -- I am not
going to ask you how much money you have in your savings
account.  But sort of give us a gauging of is this, you know, a
substantial burden on you.  Is it the sort of thing where you
would rather not spend the money, but it is not going to affect
your life in any way?

Push the button on here.

A JUROR:  Oh.  Thanks.  I -- I mean, to take four
weeks of unpaid leave from my work, that would be losing a
month's salary.  I wouldn't have to default on my mortgage or,

you know, turn to friends and family. I do have savings. But it would be a financial hit. So I guess if there is someone like who is in a more precarious financial position, I would want them to -- you know, want them to be taken care of first. But it would be four weeks of unpaid leave.

THE COURT: Okay. Any follow up from counsel on this one?

MR. PEARLMAN: No, Your Honor.

MR. EKELAND: No, Your Honor.

THE COURT: All right. Can I have you put the phone down for a second.

So with the consent of counsel, my inclination is to push her to the bottom of the list. I will do that only if you agree.

MR. PEARLMAN: I agree, Your Honor.

MR. EKELAND: No objection from the defense, Your Honor.

THE COURT: I am going to push her down the list and we'll see. Thank you.

(End of bench conference.)

THE COURT: You can go back to your seat.

THE COURTROOM DEPUTY: Juror number 1635, please.

THE COURT: Thank you. All right. We have Juror 1635. How are you?

A JUROR: Good. How are you?

THE COURT: Good. And you also indicated that serving on the jury could be an extreme hardship for you.

A JUROR: Yes. I am actually having a surgical procedure on February 29th.

THE COURT: I see. What day of the week is that, do you know?

A JUROR: It is a Thursday.

THE COURT: Okay. It will require that you be out for a while or is that just a one-day thing?

A JUROR: Well, the recovery would probably be like 3 to 5 days.

THE COURT: Okay. Any objection?

MR. PEARLMAN: No objection.

MR. EKELAND: No objection.

THE COURT: All right. I am going to let you go. Thank you.

THE COURTROOM DEPUTY: Juror 0101, please.

THE COURT: Thank you. All right. We have Juror 101. And you answered yes to four of my questions. You indicated that you, a family member or close friend work for a government entity that is involved in financial regulation.

A JUROR: I did in the past. I used to work for the House of Representatives, two member of congress who were on House Financial Services Committee.

THE COURT: What did you do for them?

A JUROR:  A mix of policy and communications work.

THE COURT:  Did you do anything related to the regulation of cryptocurrency?

A JUROR:  Not directly, no.

THE COURT:  And then you answered yes to 36 about whether you, a family member or close friend have legal training or have worked in a law office.

A JUROR:  Quite a few friends, one who does big law related to antitrust, one who does housing discrimination work in Massachusetts and another does policy work.

THE COURT:  Any of that have any bearing in this case in your mind?

A JUROR:  No, sir.

THE COURT:  You answered yes to 29, which is whether you have strong feelings or opinions about laws relating to financial regulation or consumer protection.

A JUROR:  I am currently employed in the financial services industry.

THE COURT:  What do you do?

A JUROR:  I do communications for a large credit bureau.

THE COURT:  And would you be able to put aside whatever feelings you have about the regulation of consumer credit?

A JUROR:  Yes.

THE COURT: And you answered yes to question 27 about whether you have strong feelings about whether the government should regulate cryptocurrency?

A JUROR: Similarly, guardrails are good. Rather than that, nothing else.

THE COURT: Could you put that all aside and decide this case based on the evidence?

A JUROR: I could.

THE COURT: Mr. Ekeland.

MR. EKELAND: Do you think the government should regulate cryptocurrency?

A JUROR: Yes.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thanks.

THE COURTROOM DEPUTY: Juror number 2166, please.

THE COURT: Thank you.

All right. We have juror 2166. And you answered yes to one question, which is whether you, a family member or close friend have legal training or have worked in a law office.

A JUROR: Yes, Your Honor. I am an attorney in private practice here in DC. My wife is an attorney at the Legal Aid Society. And my father is a trial judge in Indiana.

THE COURT: What sort of law do you practice?

A JUROR: Patent litigation, primarily in the life sciences area.

THE COURT: And I think you said that your wife works -- did you say for legal services?

A JUROR: Yes. At Legal Aid.

THE COURT: What does she do?

A JUROR: She is a supervising attorney in the housing unit, so landlord-tenant law.

THE COURT: All right. Would anything about any of that have any bearing on your mind as a juror in this case?

A JUROR: No, Your Honor.

THE COURT: Would you be able to put aside your own legal training and follow the law as I instruct you on it?

A JUROR: Yes, Your Honor.

THE COURT: Any follow up, Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0435, please.

THE COURT: Thank you. All right. We have Juror 0435. How are you today?

A JUROR: I am doing great.

How are you, Your Honor?

THE COURT: Thank you. I am doing well.

And you had no yes answers; right?

A JUROR: Yes.

THE COURT: Did you hear all of my questions okay?

A JUROR: Yes.

THE COURT: How long have you lived in DC?

A JUROR: Since 1974.

THE COURT: And have you ever been a juror?

A JUROR: Once. The defendant had been --

THE COURT: In the Superior Court, was it --

A JUROR: Huh?

THE COURT: In the Superior Court?

A JUROR: Yes.

THE COURT: What sort of case was that.

A JUROR: The case was about robbing and stealing. You know, but later we started -- they gave me an excuse but then I got to go home, so I wasn't there when the case was handled.

THE COURT: So you didn't serve on the jury in the end?

A JUROR: No.

THE COURT: So you were there for jury selection like this?

A JUROR: No.

THE COURT: Were you on the jury?

A JUROR: Yeah.

THE COURT: But you did say you had to go home?

A JUROR: Yeah, by then, you know --

THE COURT: Can you explain? I am not sure. I am not following.

A JUROR: What I am saying is that, they select me, but by then I have an emergency to go home.

THE COURT: An emergency, I see.

A JUROR: Then I went home. So this time when they call me, I decided to come see how things going on. Although right now, actually I have a problem.

THE COURT: What is that?

A JUROR: They call me to schedule me since last year to fix my teeth. Every two weeks, I have to go. I already pay like $3,000. In fact, I have the receipt here. This coming Thursday, I have to go to March.

THE COURT: Where do you go?

A JUROR: Georgia Avenue. It is called Mary's Center. They are doing implant and partial. So every Thursday -- this coming Thursday the 15th I have to go. Then, two weeks, I have to go again until the end of March.

THE COURT: And do you know what time you have to go? What time of day?

A JUROR: Thursday is 12:00.

THE COURT: Could you change your appointments to

Fridays instead of Thursdays?

A JUROR: No. Because of the doctor there deal with, you know, my teeth. I think she only working on Thursday. And if I miss this coming -- the 15th, it has to be in another two weeks. I go back until March. I have to visit I think six times if I am not mistaken.

THE COURT: Okay. All right.

Mr. Pearlman, any follow up on this?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: No, Your Honor.

THE COURT: All right. Let me ask you to pick up the phone.

(Conference held at the bench.)

THE COURT: Is there any request that I strike him?

MR. PEARLMAN: It sounds like he has medical appointments, as I understand it, that is not going to make him available to sit as a juror.

THE COURT: Mr. Ekeland.

MR. EKELAND: We don't object to that.

THE COURT: All right. I am going to let him go then. Thank you.

(End of bench conference.)

THE COURT: I am going to let you go then, because I don't want you to miss your appointments to get your teeth

fixed.

A JUROR: Okay. So I am excused for --

THE COURT: You are excused for today. You still need to call in for tonight, but you are excused for today. You still need to dial the number.

A JUROR: I need to call tonight?

THE COURT: There is a number they gave you --

A JUROR: Yes.

THE COURT: You need to dial that tonight.

A JUROR: How about Thursday, the appointment?

THE COURT: I think you will be okay with that.

A JUROR: Because the lady downstairs on fourth floor, she told me to let you guys know she already get a call before this coming Thursday.

THE COURT: Why don't you do this. Why don't you go to the jury office now. And you can explain to them that I let you go because of your teeth and your appointments. And then you can ask them whether you can be excused on Thursday as well or whether you need to call in for that.

A JUROR: Okay.

THE COURT: I think you probably have to dial the number. You can tell them I excused you. Okay?

A JUROR: Okay. Your Honor, thank you.

THE COURT: Thank you.

THE COURTROOM DEPUTY: Juror number 0761, please.

THE COURT: So I have got Juror 761. And you answered yes to the catch all.

A JUROR: Yeah. Less of a hardship for me, more for my wife. We are without childcare for the next two weeks. We have a two-month old. My wife is at home on maternity leave. I also have a toddler, so sort of pulling double duty for the next 2 weeks. This being a long trial, I wanted to flag that.

THE COURT: I appreciate that. Does she have any assistance or care or can you get any additional assistance or care?

A JUROR: No family nearby. Our backup nanny is the mother of our nanny and they have both gone away for a death in the family.

THE COURT: All right. And you answered yes to question 37, about whether you or a family member or friend have been arrested or charged with a crime.

A JUROR: I had a DUI when I was in college.

THE COURT: And then you answered yes to whether you have strong feelings about cryptocurrency and whether the government should regulate it.

A JUROR: Yeah. I would say I am negatively predisposed to cryptocurrency, just as a personal view.

THE COURT: Would that have any affect on your ability -- obviously one can have views about whether congress should pass laws in the future or not. Would you feel as

though you could apply the law as congress has passed it and the law as I instruct you on it to the facts of this case, whatever they are?

A JUROR: Sure.

THE COURT: And you said you also have strong feelings about the use of cryptocurrency or the darknet. Is that the same answer?

A JUROR: Same answer, yeah.

THE COURT: And do you think that those views would have any affect on your ability to be fair and impartial in reviewing the evidence in this case?

A JUROR: I think I could be fair and impartial. I wanted to flag it as something that I have debated friends with, talked about a lot, you know, I have looked into and kind of view it in a certain negative way.

THE COURT: We want you to all be candid, so I appreciate that. That is all we are asking for.

Mr. Pearlman, any follow-up questions?

MR. PEARLMAN: No follow up, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: I think -- correct me if I am wrong. You said you were negatively disposed to cryptocurrency for personal reasons. Can you elaborate on that?

A JUROR: Not personal as though I have had any interaction with it. I pay relatively close attention to the

public policy through my work. And I have just formed an opinion having followed its development and growth.

MR. EKELAND: What is your opinion?

A JUROR: That it serves very little practical purpose and is most likely used for -- or the reason it makes the most sense to me is for criminal activity.

MR. EKELAND: So you associate cryptocurrency with criminal activity?

A JUROR: Not entirely, but I don't see what value it serves other than that.

THE COURT: Anything further, Mr. Ekeland?

MR. EKELAND: No.

THE COURT: All right. So let me just follow up a little bit more about this. You talked about the value of it. That, obviously, is a judgment that is different from anything that is at issue in this case. No one is going to be asked in this to decide whether it is a good thing or a bad thing.

A JUROR: That is why I said I understand what the role is here.

THE COURT: But would you assume that simply because somebody was in cryptocurrency that it was likely they were involved in criminal conduct?

A JUROR: No. To be clear, no offense to anybody who has invested -- I am not saying it is a scam for everybody. I just don't really see the point of it.

THE COURT: So is that a policy-level judgment rather than sort of data driven -- not data driven -- an analytic judgment about --

A JUROR: It is an analytic intellectual view of what it is and what purpose it is supposed to serve. In addition to that I think it needs to have guardrails and laws governing it for a lot of reasons why I don't think it is a good thing.

THE COURT: Let me -- related to that. When you talk about the purposes that it serves, do you distinguish that in your mind from how it is actually used? In other words, have you gone out -- and you are welcome to go out on the phone to answer this privately. But have you ever gone out and done any study and said that X percent of the time is for legitimate purpose and Y percent not?

A JUROR: No. I think a lot of the stated purposes for why it is supposed to exist are unnecessary. There are already ways to do that. And some of the decentralization reasons that people argue as a benefit I actually see as problematic for the criminal reasons I have mentioned.

THE COURT: I want to come back to the core question here, which is, you know what is in your own head in a way that I never will. Are you confident that if you were chosen as a juror, you could fairly and impartially decide this case based on just the evidence presented and the law as I instruct you on it without your personal views with respect to the purposes or

value of cryptocurrency affecting it in any way?

A JUROR: I believe so.

THE COURT: All right. Mr. Ekeland, anything further?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman, anything further?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 0926, please.

THE COURT: Thank you. Hello. How are you.

A JUROR: Hello. Fine.

THE COURT: I have got Juror 926. And you answered yes to several of my questions, including both the catchall and the extreme hardship question.

A JUROR: Yes. The hardship I just -- the judicial system stresses me out, so I feel like I have to take several extra days for mental health.

THE COURT: Just being here today stresses you out?

A JUROR: Yes, it does.

THE COURT: Would serving as a juror stress you out?

A JUROR: Yes. Full of anxiety.

THE COURT: So, it is obviously a heavy responsibility being a juror. But is it anything beyond that, beyond the heavy responsibility that anyone or all of us would

feel in being a juror?

A JUROR: I am not sure. I have -- since childhood it has been causing anxiety for me.

THE COURT: You are better able to judge this than we can. Do you feel as though you would be able to serve and function as a juror or do you feel the anxiety would be too much for you?

A JUROR: I feel like the anxiety would be too much for me.

MR. EKELAND: No objection.

MR. PEARLMAN: No objection.

THE COURT: All right. I am going to go ahead and let you go.

A JUROR: Thank you.

THE COURTROOM DEPUTY: Juror number 0595, please.

THE COURT: Thank you. We have Juror 595. And you also answered yes to several of my questions including the hardship and catchall, so tell us about that.

A JUROR: I am going to be out of the country March 6th and 17th.

THE COURT: And on pleasure, business?

A JUROR: For fun.

THE COURT: For fun. And is there any flexibility at all with respect to that trip?

A JUROR: No.

THE COURT:  Are tickets purchased?

A JUROR:  Yeah, non-refundable.

THE COURT:  Non-refundable.  Okay.

All right.  And then you indicated that you live with or have frequent contact with or are somebody who is at risk of severe illness from COVID.

A JUROR:  Myself.

THE COURT:  I am happy to talk about it on the phone if it is a medical issue or you are welcome to talk about it publically.  It is up to you.

A JUROR:  That is fine.

THE COURT:  What is the basis for the severe illness?

A JUROR:  Asthma, so I am immunocompromised.

THE COURT:  I see.  Would serving on a jury concern you in that regard?  So do you go out and about or are you around people; do you try and stay away from people?

A JUROR:  I always wear a mask.

THE COURT:  If I said you are more than welcome to wear a mask as a juror, would that address your concern?

A JUROR:  No.  Because no one else would.

THE COURT:  Do you go to restaurants for example and --

A JUROR:  Not in a long time.

THE COURT:  Huh?

A JUROR:  Not for a long time without a mask.

THE COURT: I'm sorry. Not for a long time --

A JUROR: With a mask.

THE COURT: With that mask.

A JUROR: Or outside.

THE COURT: What I am asking about is when you are around other people who don't have masks in other settings?

A JUROR: Most of my friends are asked to wear masks before they see me.

THE COURT: Parties.

MR. PEARLMAN: No objection.

MR. EKELAND: No objection, Your Honor.

THE COURT: I am going to let you go as well.

A JUROR: Okay. Thank you.

THE COURTROOM DEPUTY: Juror number 0907, please.

THE COURT: All right. 907 and you answered yes to six of my questions. And you indicated that you might be more or less likely to believe testimony from law enforcement witnesses simply because they are from law enforcement.

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: I would be less likely.

THE COURT: Less likely. And would you evaluate -- would you if I instructed you to listen to the testimony of every witness and decide whether you believe them or not and base that decision solely on all of the evidence in the case

and your perception of their credibility as they are testifying? Would you be able to follow that instruction?

A JUROR: I don't really know how to separate my opinion of law enforcement from what they say in a courtroom.

THE COURT: Let me ask you to pick up the phone for a second.

(Conference held at the bench.)

THE COURT: So tell us about your opinion about law enforcement.

A JUROR: I'm sorry. Can you hear me?

THE COURT: Now I can hear you.

A JUROR: I guess I don't trust law enforcement to tell the truth. I think people are pretty selfish and corrupt. And I think that comes out more than usual in the law enforcement professions.

THE COURT: And do you -- is that your view with respect to anyone who is involved in any type of law enforcement of any type, so it is true of the cop on the beat? It is true of the FBI analyst. It is true of the person who works at the Department of Homeland Security on cybercrime. It doesn't matter where they are, all law enforcement?

A JUROR: I think some more than others. But I think the system is corrupt and so I can't really separate one from the other.

THE COURT: What do you mean by the system being

corrupt?

A JUROR:  Hold on a second.  I think when you are taught to see crime everywhere, then you see crime everywhere. And I think when your whole job relies on using force to get people to do what you want to do or not do what you want them to do that changes the way that you look at everything.  And so I don't think that lends itself towards finding truth or justice.

THE COURT:  All right.  So you know what is in your head better than I do.  The question is, do you think in good conscience you could sit as a juror in this case in which there will be testimony from law enforcement?

A JUROR:  No.

THE COURT:  All right.  Mr. Ekeland, any follow up?

MR. EKELAND:  No, Your Honor.

THE COURT:  Mr. Pearlman.

MR. PEARLMAN:  No objection.

MR. EKELAND:  No follow up, Your Honor.

THE COURT:  All right.  Thank you.

(End of bench conference.)

THE COURT:  I am going to go ahead and excuse you.

THE COURTROOM DEPUTY:  Juror number 0312, please.

THE COURT:  Thank you.  All right.  Juror 0312.  And you answered yes to three of my questions.  You answered yes to the question about whether you, a family member or close friend

have worked for a government entity engaged in financial regulation.

A JUROR: Yeah. One of my good friends many years ago used to work for CFPB. She no longer does though.

THE COURT: Would that have any bearing on this case?

A JUROR: No.

THE COURT: You answered yes to question 35, about whether you, family member or close friend have been the victim of or witness to a crime.

A JUROR: I was. I had -- it was very small. I had my phone stolen from me while waiting for the Metro.

THE COURT: I take it no role in this case?

A JUROR: No.

THE COURT: And then you answered yes to question -- let's see -- 36 about whether you, a family member or close friend had legal training.

A JUROR: Yes. Several friends are lawyers. The one that worked for CFBP. And then another friend is no longer -- she is now working as a social worker.

THE COURT: What sort of law did she do?

A JUROR: Oh, gosh. I don't know.

THE COURT: Anything about that have any bearing on this case?

A JUROR: No.

THE COURT: Mr. Pearlman?

MR. PEARLMAN:  No questions, Your Honor.

THE COURT:  Mr. Ekeland?

MR. EKELAND:  No questions, Your Honor.

THE COURT:  All right.  You can go back to your seat.
Thank you.

THE COURTROOM DEPUTY:  Juror number 0131, please.

THE COURT:  All right.  How are you?

A JUROR:  Good.  How are you?

THE COURT:  Good.  We have Juror 0131.  And you
answered yes to question 46.  And I think probably 45 as well
and indicated an extreme hardship.

A JUROR:  Yeah.  I am also a contractor for the DOJ.
And I am the team lead of a group of librarians.  So I am kind
of responsible for administrative things like approving time
sheets.  I am not being paid for today or any kind of
subsequent jury service.  So I am worried about my own pay.
And also I review work for my team.  So there is no one to
really kind of do that role if I am out.

THE COURT:  Remind me.  You work with the library
services?

A JUROR:  I do, uh-huh.

THE COURT:  What do you do?

A JUROR:  So I do mostly expert witness work for
various USAO offices.  I have worked for DC before.  I think I
am working for Nevada right now.  But I do work for mostly for

USAO, also legal research.

THE COURT: So doing legal research for the Department of Justice?

A JUROR: Correct.

THE COURT: Have you ever done anything relating in any way to cryptocurrency?

A JUROR: I have.

THE COURT: And you said you were a contractor; is that right?

A JUROR: I am, uh-huh.

THE COURT: Have you ever worked at all with any of the lawyers involved in this case?

A JUROR: Not here, but I have worked for other DC USAOs.

THE COURT: Do you think that the fact that you have worked with the Department of Justice or you currently work with the Department of Justice would have any bearing on your ability to treat both sides fairly?

A JUROR: I think I would be more inclined to lean with whatever the government's case is. Just because of other kind of criminal proceedings I have seen in the crypto space. Yeah.

THE COURT: All right. Let me ask -- you don't need to pick up yet. Let me just ask counsel to pick up.

(Conference held at the bench.)

MR. EKELAND: I think defense's position is obvious. We think she should be struck for cause because she just stated that she can't impartially be a juror on this case because of her relationship with the Department of Justice.

THE COURT: So I don't disagree. My only comment is my antennae have gotten pretty good after doing this. And I suspect that she is trying to get out of jury duty and she knows that is what you say to get out. So my inclination is absent objection from the parties is to strike her for cause, but to send her back to her seat and not tell her right now that I am striking her for cause.

MR. EKELAND: We don't object to that, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: I guess, I would inquire of her whether she knows certain individuals associated with the DOJ library department before you do that.

THE COURT: That is fine. We can -- I can ask her to pick up. You can do that if you like.

MR. PEARLMAN: Okay.

THE COURT: Can you pick up the phone?

So you push this button and hold down to speak.

Go ahead.

MR. PEARLMAN: Ma'am, do you work in the same DOJ library group as Katie Zeigler?

A JUROR: Yes.

MR. PEARLMAN:  So you know Katie Zeigler?

A JUROR:  I do.

MR. PEARLMAN:  Do you review as a part of your work as a librarian for DOJ, do you review expert witness reports?

A JUROR:  Yes.

MR. PEARLMAN:  For the criminal division?

A JUROR:  My team of librarians will sometimes work for crim.  I have worked for crim.  Yes.  It is all expert witness work for different divisions.

MR. PEARLMAN:  Okay.  I don't have any other questions, Your Honor.

THE COURT:  You can put it down.

It sounds like this may be a more legitimate strike than I thought it was.

MR. PEARLMAN:  Your Honor, it is my understanding that Katie Zeigler has worked on this case, which is why we asked the question.

THE COURT:  I am going to strike her for cause.  I think I will go ahead and let her go now too as well.  Thank you.

(End of bench conference.)

THE COURT:  I am going to go ahead and excuse you.

A JUROR:  All right.  Thank you.

THE COURTROOM DEPUTY:  Juror number 0557, please.

THE COURT:  All right.  I have got Juror 557.  How

are you?

A JUROR: How are you doing?

THE COURT: Good. Thanks. And you answered yes to one of my questions, which was question 35 about whether you, a family member or friend had been the victim of or a witness to a crime?

A JUROR: Witness to, victim, either one.

THE COURT: Tell us about that.

A JUROR: So I work at T-Mobile. And unfortunately we got robbed. And came into the store at gunpoint. I was the person in the store and he directed me to the back. So I had to give them what they asked for and that is practically it.

THE COURT: I'm sorry you went through that. Would that have any bearing on this case in your mind?

A JUROR: No.

THE COURT: And I don't think you had a yes answer to any of my other questions; right?

A JUROR: No.

THE COURT: Anything else that we ought to know about you, whether you can be fair and impartial here?

A JUROR: No.

THE COURT: All right. Mr. Ekeland, any follow up questions?

MR. EKELAND: No questions, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: I want to be clear, ma'am, you can be fair and impartial.

A JUROR: Yes. I thought he said something else. I'm sorry. I can.

THE COURT: I understood you. All right. You can go back to your seat.

THE COURTROOM DEPUTY: Juror number 0855, please.

THE COURT: Thank you.

All right. We have Juror 855. And you answered yes to the question about my catchall question.

A JUROR: Yes, Your Honor. Apologies. I missed which number it was for the being out of town. My wife had just scheduled a trip to Arizona. I think I can cancel it, because I think it was booked on points. But I just wanted to make that --

THE COURT: That is generous of you. I appreciate it. I am glad you told us about it. And it is generous of you to offer to cancel it, so thank you.

And then you answered yes to question 36 about whether you, a family member or close friend have legal training or have worked in a law office.

A JUROR: Yes. My wife works in a legal office in town. She is not actually a lawyer. She works in the event planning space, but we run with a lot of -- a circle of friends that are lawyers.

THE COURT: And is it one of the large firms in town here?

A JUROR: Yes, Your Honor.

THE COURT: Do you know what types of practices that firm has?

A JUROR: It is a lot of corporate litigation, corporate defense. It is -- it has kind of tendrils in everything.

THE COURT: Would anything about her work or the people you have gotten to know through her work have any bearing in this case?

A JUROR: No, Your Honor.

THE COURT: You answered yes to question 21, which is whether you are a computer professional by education, training or experience.

A JUROR: I work at a software company. I am technically on the sales team, but my division works very, very closely with engineering. And so I offer tech support, essentially, for a lot of our clients.

THE COURT: Do you write any computer code?

A JUROR: Not directly. Sometimes I will troubleshoot and review code. Like if you asked me if I could build software from scratch, probably not.

THE COURT: And if there is testimony in this case about computer software, computer programs would you be able to

base your decision just based on testimony you hear in the courtroom and not on your independent knowledge of software?

A JUROR:  Yes, Your Honor.

THE COURT:  All right.  Mr. Pearlman?

MR. PEARLMAN:  No questions.

THE COURT:  Mr. Ekeland?

MR. EKELAND:  No questions, Your Honor.

THE COURT:  All right.  You can go back to your seat.  Thank you.

THE COURTROOM DEPUTY:  Juror number 0748, please.

THE COURT:  Thank you.

All right.  I have got juror 748.  How are you?

A JUROR:  I am good.

THE COURT:  You answered yes to my catch-all.

A JUROR:  Yes.

THE COURT:  Tell us.

A JUROR:  So it is a catchall question.  And I just want to express my strong desire to not be part of this in any capacity.

THE COURT:  All right.  Let me ask you to pick up the phone.

(Conference held at the bench.)

THE COURT:  You can explain to us.

A JUROR:  Press the button.  Can you hear me now?

THE COURT:  Yes, I can.

A JUROR: So I think I am kind of close to this. So about a month ago, I resigned as an appointed party of Mayor Bowser's administration. And it was a copious amount of time in public service. And I specifically have an affinity towards MPD, law enforcement, DISB, anything associated with that.

Additionally, I currently serve in the philanthropic space specifically with Jeff Bezos and Lauren Sanchez and I have a copious amount of travel coming up with work.

THE COURT: Okay. What did you do for the Mayor?

A JUROR: I was her digital director.

THE COURT: Digital director, so you worked with computer-related issues?

A JUROR: Computer-related issues, but more specifically her communications in the digital space.

THE COURT: I see. So like her media presence herself or digital presence herself?

A JUROR: Correct.

THE COURT: What do you do now?

A JUROR: I currently serve at the Bezos Earth Fund. So it is a philanthropic organization, just philanthropic organization and I do global digital strategy for him.

THE COURT: All right. So similar sort of work for Mr. Bezos?

A JUROR: Correct.

THE COURT: Is that -- the fund, is that administered

through some other organization or is it just directly through a Bezos foundation?

A JUROR: It is his personal money, so through the Bezos foundation.

THE COURT: And you indicated that you feel as though you have an affinity towards law enforcement; is that fair?

A JUROR: Correct.

THE COURT: What is that based on?

A JUROR: My experience with them. So working under the Mayor, I worked very closely with them, with DISB.

THE COURT: What is DISB?

A JUROR: It is our security and exchange commission. It is an acronym. So DC's Department of Insurance, Securities Business.

THE COURT: What did you do with them?

A JUROR: So pretty much I helped them with their digital strategy as well. So all of the 80 mayoral agencies, I was essentially the point of contact for how they disseminate information digitally and essentially do like any of the digital communications and marketing.

THE COURT: I see. And were you involved in any way with the regulatory work that it performed?

A JUROR: No, not in any capacity.

THE COURT: And here, I don't think there is going to be any DC law enforcement; correct?

MR. PEARLMAN: That is correct.

THE COURT: So this is all -- any law enforcement who will be testifying in the case will be federal law enforcement. Do you feel as though you could follow my instruction to judge the credibility or lack of credibility of that testimony based only on what you hear in the courtroom?

A JUROR: Yes.

THE COURT: And you said you have travel coming up, so tell us about that.

A JUROR: Yeah. So essentially the Earth Fund, it is a climate change organization, but has a footprint globally. I wouldn't say like my schedule varies. It is not that it is super sporadic and crazy. I know I have a trip to Vancouver at the end of February. I know I have a trip to South Africa in March. And honestly, if Jeff or Lauren need us for something, you kind of have to just hop on a plane.

THE COURT: When is the trip to South Africa?

A JUROR: It is not that I don't know. I want to say it starts the end of March.

THE COURT: All right. All right. Mr. Ekeland, any follow up?

MR. EKELAND: Would it be fair to say that you are pro law enforcement?

A JUROR: Yes.

MR. EKELAND: Would you trust a law enforcement

officer more than a criminal defendant?

A JUROR: I don't know if I will say per se. I think that is contingent on the nuances of the situation.

MR. EKELAND: But you might?

A JUROR: No, I wouldn't say I might. I would say it is contingent on the nuances of the situation.

MR. EKELAND: So you could sit in this trial and listen to the testimony impartially and not make a judgment based on whether or not someone is a law enforcement officer?

A JUROR: Correct. So a badge does not indicate that you are telling the truth.

MR. EKELAND: So you would be willing to apply your critical faculties to anything that a law enforcement officer testifies to in this trial?

A JUROR: I am not understanding that question.

MR. EKELAND: Fair enough. You wouldn't just trust a law enforcement officer because they are a law enforcement officer; correct?

A JUROR: Correct.

MR. EKELAND: I don't have any further questions, Your Honor.

THE COURT: Mr. Pearlman.

MR. PEARLMAN: I don't have any further questions, Your Honor. Can we stay on the line for one moment?

THE COURT: Yeah.

**Appx2527**

MR. PEARLMAN: Just so Your Honor is aware, I think you already know this, but there is a certificate from DISB that we are going to seek to admit indicating the defendant was not registered with that agency.

THE COURT: Yeah. That doesn't strike me -- I appreciate your bringing that to my -- that doesn't strike me as an issue here. So I think we are okay. All right. Thank you.

(End of bench conference.)

THE COURTROOM DEPUTY: Juror number 2075, please.

THE COURT: Thank you. All right. We have juror 075. And you indicated that serving as a juror in this case could be an extreme hardship.

A JUROR: Yes.

THE COURT: Tell us about that.

A JUROR: So I work in news as a radio producer. And there are a few special events coming up in the next month that I am typically required to travel for Super Tuesday, State of the Union, primary elections.

THE COURT: So when is Super Tuesday? It is the first Tuesday in March?

A JUROR: March 5th, I think, yeah.

THE COURT: You would ordinarily be covering Super Tuesday?

A JUROR: Yeah.

THE COURT:  That is one of the core responsibilities in your job?

A JUROR:  Yeah.

THE COURT:  All right.  Mr. Pearlman?

MR. PEARLMAN:  No objection.

MR. EKELAND:  No objection.

THE COURT:  All right.  I am going to let you go.  Thank you.

THE COURTROOM DEPUTY:  Juror number 0654.

THE COURT:  Thank you.  All right.  I have Juror 0654.  And you answered yes to question 40 about those various law enforcement organizations.  And you wrote IMF, so tell us about that.

A JUROR:  I have cousin that worked for IMF.  I don't know if that counts and a cousin that previously worked for DC police.

THE COURT:  Would any of that have any bearing in your mind on --

A JUROR:  No.

THE COURT:  Thank you.  And then you answer yes to question 37 about you, family member or friend had been arrested or detained?

A JUROR:  Yeah.  My sibling.

THE COURT:  How long ago was that?

A JUROR:  A few years ago.

THE COURT: Would it have any bearing on this case in any way?

A JUROR: No.

THE COURT: And then you answered yes to 35 about whether you have been a victim or a witness to a crime.

A JUROR: Yeah. I am from DC, so --

THE COURT: Tell us. Anything recent?

A JUROR: No.

THE COURT: Are you talking mostly about street crime?

A JUROR: Yeah. Like witness a friend getting stabbed, somebody getting shot, that is kind of normal for DC residents unfortunately.

THE COURT: That is very unfortunate. I'm very sorry to hear that. Would that have any bearing in your mind on this case?

A JUROR: No.

THE COURT: You answered yes to question 34 about whether you had been a witness in a court case or a party to a court case.

A JUROR: Yeah. When I was teenager.

THE COURT: Any bearing on this case at all?

A JUROR: No.

THE COURT: Mr. Pearlman, any follow up?

MR. PEARLMAN: What kind of work do you do, ma'am?

A JUROR: I work with autistic children.

MR. PEARLMAN: Anything about your work with them and scheduling that would interfere with your ability to be here?

A JUROR: Somewhat. Because I work around 5:00 and sometimes we get off at 5:00.

THE COURT: Yeah. 4:30 or 5:00. So you would need to be somewhere -- like you work with kids after school, is that what it is?

A JUROR: It is individual. It depends. Like it is therapy in the home. And they are in Maryland and I am in DC.

THE COURT: Some of the appointments are at 5:00 p.m.?

A JUROR: Yeah.

THE COURT: How far away is that?

A JUROR: Silver Spring, Maryland.

THE COURT: Is there any flexibility that you could arrange it so you did it a little bit later?

A JUROR: Yeah. Yeah.

THE COURT: All right. Any further questions, Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thanks.

THE COURTROOM DEPUTY:  Juror number 0311, please.

THE COURT:  Thank you.

I have Juror 3011.  And you answered yes to two questions including question 45, which was about the extreme hardship question.

A JUROR:  Yes.  I have underage children.  So school, lets out at 3:30.  So with the time frame that you all have, I wouldn't be there in time to pick up my little ones.

THE COURT:  How old are they?

A JUROR:  Ten, 4 and 5.

THE COURT:  Oh, wow.  Okay.  Is there anyone else who could help with that?

A JUROR:  No.  My grown children, their work schedules is schools because they teach in the schools.  And then the other one is in the fire department so his schedule is all of that.

THE COURT:  You don't have any other care or help?

A JUROR:  No.  It is just me.

THE COURT:  Mr. Ekeland?

MR. EKELAND:  No objection.

THE COURT:  Mr. Pearlman?

MR. PEARLMAN:  No objection.

THE COURT:  I am going to let you go.  Thank you.

A JUROR:  Thank you.

THE COURTROOM DEPUTY:  Juror number 0444, please.

THE COURT: Thank you. We have juror 444. How are you today?

A JUROR: Hi. How are you?

THE COURT: I am well. Thanks.

A JUROR: Good.

THE COURT: And no yes answers?

A JUROR: No yesses.

THE COURT: Did you hear all of my questions?

A JUROR: Yes, I did.

THE COURT: How long have you lived in DC?

A JUROR: Since the year after I was born '65, '64.

THE COURT: And what do you do?

A JUROR: I work for Verizon Communications.

THE COURT: Okay. And ever been a juror before?

A JUROR: No.

THE COURT: Ever been called for jury duty?

A JUROR: Yes.

THE COURT: All right. Mr. Ekeland, any follow up?

MR. EKELAND: No questions, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No questions, Your Honor.

THE COURT: All right. Thank you.

THE COURTROOM DEPUTY: Juror number 1292, please. 1292?

(Conference held at the bench.)

THE COURT: Can I ask you to pick up the phone?

A JUROR: Okay. Hello.

THE COURT: Yes. We have Juror 1292. And she indicated that she wanted to talk on the phone. And she indicated in response to question 16 and she wrote this out. "I would have a problem making anyone guilty because I don't believe in the justice system. My son is in prison for 75 years. I would not be a fair juror."

A JUROR: Yeah.

THE COURT: And then she also said that she doesn't believe in police officers and lawyers.

A JUROR: Yeah. Because -- I don't, because he was falsely accused and he is still in jail.

THE COURT: He was treated unfairly?

A JUROR: Yes.

THE COURT: Was it in DC that he was prosecuted?

A JUROR: It was in Maryland, but he lived in DC.

THE COURT: And you are the person who only knows how you feel. And both the government and the defense are entitled to an entirely fair and impartial jury. Do you think that you could put aside your feelings and be fair and impartial in this case?

A JUROR: No.

THE COURT: All right. Anything further from the parties?

MR. EKELAND:  No, Your Honor.

MR. PEARLMAN:  No, Your Honor.

THE COURT:  All right.  Thank you.

All right.  I am going to go ahead and dismiss you.
Thank you.

A JUROR:  Thank you.

THE COURTROOM DEPUTY:  Juror 0564, please.

THE COURT:  Thank you.  How are you today?

A JUROR:  Wonderful.  How are you?

THE COURT:  Fine.  Thanks.  I have Juror 564.  And
you answered yes to four of my questions.  Let's start with the
catch-all.

A JUROR:  Okay.  Next week, I will be responsible for
taking my granddaughter to school.  My daughter, who is
working, travels next week.  And depending on what time I am
due here, I may have a conflict.  She is due to school at 7:45.

THE COURT:  What part of the city is she in?

A JUROR:  She is in Georgetown.

THE COURT:  I don't think we will probably start
before 9:00 in the morning, so you should be okay.

A JUROR:  Then I should be able to make it.

THE COURT:  I appreciate your letting us know about
that.  That is, I'm sure, going to be a pleasant experience for
you.

And then you answered yes to question 37, about

whether you or a family member have been arrested or charged with a crime or just detained.

A JUROR: Relatives.

THE COURT: Anything that has any relation to this case?

A JUROR: No.

THE COURT: And then you answered yes to question 36 about whether you or a family member have legal training.

A JUROR: My sister is a lawyer in Oakland, California drug court.

THE COURT: In drug court. Is she a defense lawyer or prosecutor?

A JUROR: No.

THE COURT: What does she do?

A JUROR: Well, she is working probably more like in policy. She is not a practicing attorney.

THE COURT: Is she trying to help people deal with their drug problems?

A JUROR: Yes.

THE COURT: I see. Okay. And you indicated that you have been a juror before?

A JUROR: On a grand jury in the District.

THE COURT: And you understand that an indictment is not evidence of any wrongdoing, it is just how a case gets started?

A JUROR: I understand.

THE COURT: Anything else we ought to know about you?

A JUROR: No.

THE COURT: Mr. Ekeland, any follow up?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. Thank you.

Can I ask counsel to pick up for a moment.

(Conference held at the bench.)

THE COURT: So I think if -- you can correct my math. I think we have to qualify 36 prospective jurors, 12 regular jurors, 4 alternates, 10 regular strikes for the government -- I mean, for the defense, 6 regular strikes for the government and then 4 strikes for alternates, which I think adds up to 36. And check my math. I usually like to qualify a couple more, just in case somebody wanders off. But maybe the goal should be to try and qualify 38. And I am told by my clerk that even if we don't include the people where I have question marks that we are -- we have enough at this point.

But I am happy -- so let me tell you where my question marks are: Juror 624 and Juror 2065 both expressed hardships, Juror 0359 who works for AID expressed a hardship, Juror 1819 in computer sales and expressed concern. And then Juror 0728. And then I also indicated that I would bring back

Juror 1568 for Mr. Ekeland to ask further questions with respect to whether his work at the SEC poses any risk of bias.

Does everyone agree with all of that?

MR. PEARLMAN: Your Honor, I would qualify a couple more jurors, because I think if you get rid of all of the people that you just indicated, you are at 36. And then you are potentially at 35 defending on what the Wilmer Hale lawyer says.

THE COURT: I am happy to do that. That is different from our math on it. But we will have to compare notes when we are done here. So I am happy to do a few more. Okay. So we'll keep going.

(End of bench conference.)

THE COURTROOM DEPUTY: Juror 1186, please.

THE COURT: Thank you. All right. I have juror 1186. How are you today?

A JUROR: I am okay.

THE COURT: And you answered yes to two of my questions. 37, which was whether you, a family member or close friend have been detained by the police or arrested?

A JUROR: Yeah. I have been arrested before.

THE COURT: Anything that has anything to do with the allegation -- types of allegations at issue in this case?

A JUROR: No. But I think it would kind of relate to being as though, you know, I have fought for my freedom

numerous times.  So I feel anxiety just coming here today.  My mother had to pray me to come here so I am --

THE COURT:  Were you convicted of a crime or not convicted?

A JUROR:  No, I wasn't convicted.  But I pretty much had to sit and wait in jail until my court date.  So that was something to kind of like play a big part in my mental health.  It kind of deteriorated so --

THE COURT:  All right.  And then you answered yes to 34 as about whether you have been a witness or party in a case.

A JUROR:  I meant, to put just 37.  That is --

THE COURT:  Okay.  I want to ask you a couple of follow-up questions.  If you could pick up the phone.

(Conference held at the bench.)

THE COURT:  Yeah.  So what sort of case was it?

A JUROR:  Just criminal, drugs.

THE COURT:  You were charge with a drug crime?

A JUROR:  Yes.

THE COURT:  What were you charged with?

A JUROR:  Possession, distribution.

THE COURT:  It was in this court or Superior Court?

A JUROR:  It has been numerous courts.

THE COURT:  Tell us about that.  You were charged at the same time in numerous courts or this happened numerous times?

A JUROR: Numerous times, different counties.

THE COURT: Have you ever been convicted of a crime?

A JUROR: No. I have pled guilty to just possession.

THE COURT: And do you know if you pled guilty to a misdemeanor or a felony?

A JUROR: It was a misdemeanor.

THE COURT: Okay. So am I correct that you don't have either by pleading guilty or by a jury ever any conviction for any felony?

A JUROR: No.

THE COURT: You don't?

A JUROR: No.

THE COURT: All right. And so tell us a little bit more about your feeling and your anxiety and having fought for your own freedom.

A JUROR: Well, just recently I was an outpatient for the DC Department of Mental Health and Behavior. And, you know, they helped me get a residence and everything. So like I say, I was nervous just coming here. Just because, like I say, I had to go to numerous court dates. So just the coming to someone else court dates, and we holding court and I am hearing other people testimony that don't got nothing to do with me, it is -- you know, like I am sitting on the witness stand. You know, this is kind of a lot for me.

THE COURT: How long were you held pretrial in any of

your cases?

A JUROR: Sometimes it has just been like three, four months, but it was just like the whole point of me being locked up just waiting for a court date and I am being released because I was not found guilty or anything, so I just pretty much had to wait to go to court.

THE COURT: Do you think the anxiety would interfere with your ability to be a fair and impartial juror?

A JUROR: To be honest, yeah. Because I would most likely sympathize with the defense.

THE COURT: Would you sympathize with them if you thought the evidence proved beyond a reasonable doubt that he was guilty of what he was charged with?

A JUROR: I mean, kind of. Because like I said, I have been charged with, you know, like marijuana charges. And it is pretty much now marijuana is kind of legal, because it is being -- what would you say, regulated by the government, which they kind of -- I guess you could say with crypto, they trying to regulate it. I feel like this is a government thing. I don't want to necessarily have any part of being a judge of somebody else character.

THE COURT: All right. Mr. Pearlman, any follow up?

MR. PEARLMAN: Not based on this record, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: No, Your Honor.

THE COURT: Okay. Thank you.

MR. PEARLMAN: Move to strike, Your Honor.

THE COURT: Mr. Ekeland.

MR. EKELAND: We object.

THE COURT: All right. I am going to strike him for cause.

Mr. Pearlman, I am going to let him go back to his seat, because I don't want to make too much out of this. I am going to let him go back, but I am going to strike him for cause

(End of bench conference.)

THE COURTROOM DEPUTY: Juror number 1973, please.

THE COURT: Thank you. All right. You can go back to your seat. Thank you.

I have juror 1793. And you answered yes as well to the extreme hardship question. So tell us about that.

A JUROR: Yeah. I work a fair amount of jobs throughout DC. And all of them are part time, so I wouldn't get any paid time off or anything else for being here.

THE COURT: What do you do?

A JUROR: I work at an after-school program for Capitol Language Services and then I also work at theaters.

THE COURT: What time of day is that? I mean is that something you can do in the evening or is it during the day?

A JUROR: No. It is after school, so it happens from

about 3:00 in the afternoon until about 6:00.

THE COURT:  I see.  And how much of a financial hardship would that be to you?

A JUROR:  I did the math earlier.  I would lose about $1,000 this month.

THE COURT:  I guess, how would that affect your ability to live and your financial circumstances?  For some people, that is a huge amount of money and for other people it is not.  So in some sense --

A JUROR:  I am someone who is building a life in theater.  None of us have a savings account.

THE COURT:  Fair enough.  I think you have answered that question.  All right.

MR. PEARLMAN:  No objection.

MR. EKELAND:  No objection.

THE COURT:  I am going to go ahead and let you go.

A JUROR:  Thank you.

THE COURTROOM DEPUTY:  Juror number 1707, please.

THE COURT:  Thank you.  All right.  I got juror 1707.  And you answered yes to the catch-all.

A JUROR:  Yeah.  For my work, I have a project deadline that is due at the end of this month.  And my team has been dwindling slowly.  I am kind of the last man standing to get it across the finish line.  So I could work the evenings, if necessary, but it would be easier to do it during the

working hours.

THE COURT: Don't I know it? Believe me, I have got a stack of work myself.

What do you do?

A JUROR: I am a software engineer.

THE COURT: And although it may be somewhat of a strain on you, assuming we don't sit all day, every day on Friday and -- at least all days on Fridays and, you know, you will have the weekends and evening, do you think you could manage?

A JUROR: Yes, most likely. I have a two-year-old at home as well, so that is usually when we spend time with her, so it is going to be -- and my wife is also pregnant, so it will be time constricting, but doable I think.

THE COURT: I appreciate that. And I realize for everyone this is asking a lot.

A JUROR: Yeah.

THE COURT: And then you indicated that you or a family member or friend worked for one of those organizations that I mentioned?

A JUROR: I have a friend that works for the FBI.

THE COURT: Okay. And do you know what your friend does there?

A JUROR: He is in a like rotational program. It is not -- I think he has been in different parts of the

organization for certain amounts of time, not nothing -- I don't know details about it though.

THE COURT: Do you know whether he has anything to do with cryptocurrency?

A JUROR: I don't think so. I don't know.

THE COURT: Would the fact you have a friend who works for the FBI make you favor one side or the other in this case?

A JUROR: No.

THE COURT: All right. And then you answered yes to question 36 about whether you or a family member or a close friend is a law attorney?

A JUROR: My wife is a lawyer.

THE COURT: What does she do?

A JUROR: She doesn't currently practice, but she used to work for a firm working on patent law.

THE COURT: And then you answered yes to question 26, which is whether you have ever participated in an initial coin offering, purchased a non-fungible token or purchased some other form of digital asset.

A JUROR: Yeah. I purchased -- there is NFTs for the NBA that are called Top Shots. It is an NFT, so, yeah.

THE COURT: So you answered yes to whether you ever purchased or owned any cryptocurrency.

A JUROR: I do own Bitcoin and Ethereum.

THE COURT: Do you use them in transactions or do you just really hold them as an investment?

A JUROR: Just holding as investments.

THE COURT: Do you have a wallet?

A JUROR: I do have a wallet.

THE COURT: Okay. And then you answered yes to question 21 about whether you are a computer professional by education, training or experience?

A JUROR: Software developer. My current job is software development.

THE COURT: And what type of software do you work with?

A JUROR: Specifically Sales Force. It is a customer relationship management tool that I implement for customers.

THE COURT: If there were testimony in this case regarding software and how it worked, would you be able to rely solely on the testimony in the case and not based on your own knowledge?

A JUROR: Yes.

THE COURT: Mr. Ekeland, any follow up?

MR. EKELAND: Have you ever heard of Satoshi Nakamoto?

A JUROR: Yes.

MR. EKELAND: No other questions.

THE COURT: Mr. Pearlman, any follow up?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 2095, please.

(Pause.)

THE COURT: All right. I have juror number 2059. And you answered yes to several of my questions. And why don't I start with questions -- with question 24 where you indicated you have strong feelings and/or opinions about the use of cryptocurrency and the dark web.

A JUROR: Yes. I feel similarly to the juror who spoke earlier about the negative impact of crypto. I also have some strong feelings about the environmental impact of crypto.

THE COURT: And then you also -- this is probably the same answer. You have strong feeling about cryptocurrency and whether it should be regulated.

A JUROR: Yes, I believe it should be regulated.

THE COURT: And then you answered yes to the question about whether you have strong feelings of the laws governing illegal drugs?

A JUROR: Yeah. I think that most drugs should be decriminalized.

THE COURT: Would that have any bearing on your ability to sit as a fair and impartial juror?

A JUROR: I don't think so.

THE COURT: Would your feelings about cryptocurrency and the dark web have any impact on your evaluation of the evidence in this case?

A JUROR: I don't think so.

THE COURT: Would it affect your ability to be fair and impartial?

A JUROR: No.

THE COURT: And you answered yes to question 35 about whether you have ever been a witness in a case or a party?

A JUROR: If I did then I did that mistakenly.

THE COURT: That was also about whether you have -- this is near the question about whether you have been a juror before or whether you, a close friend has been a victim of a crime?

A JUROR: Oh, I mean, I was the victim of a crime. That might have been the question.

THE COURT: Tell us about that.

A JUROR: I was just assaulted in Dupont once.

THE COURT: Would that have any bearing, in your mind?

A JUROR: No.

THE COURT: You indicated you or a family member or friend have law training?

A JUROR: Yes. I have several family members and friends that are attorneys.

THE COURT: What types of attorneys?

A JUROR: My mother is an employment lawyer. I have a friend who works in bankruptcy law with the federal government, but I don't know more specifics than that.

THE COURT: And then you answered yes to whether you have family member or friends, whether you worked for one of those agencies that I mentioned.

A JUROR: Yes. My uncle is in law enforcement.

THE COURT: Where is he?

A JUROR: Massachusetts.

THE COURT: And do you know what sort of law enforcement he does?

A JUROR: I think he is a parole officer.

THE COURT: Does that have any bearing in your mind in this case?

A JUROR: No.

THE COURT: Then you indicated that you, family member or friend have worked for a government entity that regulates financial transactions?

A JUROR: Yeah. I think that is my attorney friend who works in bankruptcy law with the federal government.

THE COURT: Okay. All right. Mr. Ekeland, any follow up?

MR. EKELAND: No, Your Honor.

THE COURT: All right. Mr. Pearlman?

MR. PEARLMAN:  No, Your Honor.

THE COURT:  All right.  You can go back to your seat.  Thank you.

(Pause.)

THE COURTROOM DEPUTY:  Juror number 1912, please.

THE COURT:  Thank you.  Hello.  We have juror 1912.  How are you today?

A JUROR:  Doing well.  How are you?

THE COURT:  Fine.  Thank you.  And you answered yes to one question, which was 36 about whether you have been the victim of a crime.

A JUROR:  Yes.

THE COURT:  Tell us about that.

A JUROR:  So I thought that I sent in my car insurance payment.  But apparently someone else decided that they wanted it and they doctored it and they deposited it to themselves.

THE COURT:  So they took the check out of the mail or something, is that what happened?

A JUROR:  Yeah.

THE COURT:  They took the check, so then your insurance wasn't paid and they took the money?

A JUROR:  Oh, yeah.

THE COURT:  Would anything about that have any influence one way or the other on this case in your mind?

A JUROR: No, I don't think so.

THE COURT: How long have you lived in DC?

A JUROR: Thirty-seven years.

THE COURT: Have you ever been a juror before?

A JUROR: No.

THE COURT: Have you ever been called back for jury duty?

A JUROR: Since I was 12, that is when I got my first notice.

THE COURT: When you were 12?

A JUROR: Oh, yeah.

THE COURT: So I got called down for jury duty in this court maybe about a year or so ago I think it was. And I was the only judge that had a trial then.

Any follow-up questions, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: All right. Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat. Thank you.

THE COURTROOM DEPUTY: Juror number 1792, please.

THE COURT: All right. I have juror 1792. And you answered yes to the catch-all question.

A JUROR: I have travel, non-refundable.

THE COURT: When is that?

A JUROR: For pleasure.

THE COURT: No, when is that?

A JUROR: It is February 28th through March 2nd, so Wednesday through Sunday.

THE COURT: I see. It is a non-refundable ticket?

A JUROR: Correct.

THE COURT: All right. Any objection?

MR. EKELAND: No objection.

MR. PEARLMAN: No objection, Your Honor.

THE COURT: You are excused. Thank you.

A JUROR: Thank you.

THE COURTROOM DEPUTY: Juror number 0446, please.

THE COURT: Thank you. Juror 446, how are you today?

A JUROR: Very well. Thank you.

THE COURT: You answered yes both to the catch-all as well as the extreme hardship question.

A JUROR: Yes. But I think that is because I forgot which was which. I don't think I have an extreme hardship, but catch-all.

THE COURT: Okay.

A JUROR: It would be -- there are several work-related dates, some of which it sounds like you don't meet on Fridays, would not be a problem. And I am sure we could go over those if you need me to. But the one thing that might be more of an issue. My mother's 80th birthday would be right

when deliberations would begin per the calendar you laid out. We are traveling to spend her birthday with her. And I am not going to tell my mom, I am not going to see her on her 80th birthday.

THE COURT: Where is she?

A JUROR: In Miami, Florida.

THE COURT: When would you leave to go down?

A JUROR: We would leave on the 9th of March, which is a weekend. Her birthday is the 12th and we are flying back the 13th. So that is Monday, Tuesday, Wednesday.

THE COURT: I, obviously, have no idea whether the jury will be deliberating then or not.

A JUROR: Of course, naturally.

MR. EKELAND: No objection.

MR. PEARLMAN: No objection.

THE COURT: Okay. I am going to go ahead and let you go then. Thank you.

A JUROR: Okay. Thank you.

THE COURTROOM DEPUTY: Juror number 1341, please.

THE COURT: Thank you. All right. Juror 1341, how are you today?

A JUROR: Hi. I am good. How are you?

THE COURT: Fine, thanks.

You answered yes to one of my questions, which was whether you, a family member or close friend had been the

victim of or witness to a crime.

A JUROR: Yes. I witnessed a crime, a stabbing incident that occurred in 2016.

THE COURT: Would that have any bearing on this case, in your mind?

A JUROR: No.

THE COURT: Any questions, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. You can go back to your seat.

Can I ask counsel to pick up?

(Conference held at the bench.)

THE COURT: So do we have enough yet? I would have thought we did it.

MR. PEARLMAN: It seems like we have a slight cushion now, Your Honor.

MR. EKELAND: The defense agrees, Your Honor.

THE COURT: Let me ask you this now. Let me go back over the list here. So Juror 1822, who was -- the gentleman whose father is dying. He thought further and let the deputy clerk know he would like to spend time with his father before he dies, so I am inclined to grant the motion to strike Juror 1822. Any objection?

MR. EKELAND: No objection.

MR. PEARLMAN: No, Your Honor. Which -- can you just read out the number to the right as well?

THE COURT: Fourteen.

MR. PEARLMAN: Thank you.

THE COURT: All right. And then I have the two that we had on hold on this page, which are at lines 22 and 25, which are Jurors 0624 and 2065. And then on the next page, I sort of had a question mark next to Juror 0359 who was the guy who works, in essence, as the chief of staff to the deputy administrator of AID. We agreed to push Juror 1819 to the end of the list. He was the computer salesperson who would lose his income during the trial and it would be difficult for his business. I have Juror 1568 who I think Mr. Ekeland wanted to ask some further questions of. And I think we had agreed to move Juror 0728 to the bottom of the list.

So I guess my first question is whether there are any of those folks where there is agreement that we should strike them? So why don't I run through them one by one, 0624?

MR. EKELAND: Your Honor, can you give me the line number on that?

THE COURT: Twenty-two.

MR. EKELAND: No objection.

MR. PEARLMAN: No objection, Your Honor.

THE COURT: Okay. I am going to strike 0624.

And then there was the gentleman who works at the

gift store, Spencer Gifts, 2065. And I am happy to bring him back up. He did ultimately say he could do it, but I do think there was some question about whether it would be a professional burden for him. And that he said he was up for a promotion and that his trainers were there. And they weren't going to be around. So if there is not agreement to strike 2065, then I want to bring him back up and ask him some more questions.

MR. PEARLMAN: I do not object to striking him, Your Honor, from the government.

THE COURT: Mr. Ekeland.

MR. EKELAND: One moment, Your Honor. I want to talk to the rest of the team for a second.

THE COURT: That is fine.

MR. EKELAND: We object to striking him, Your Honor.

THE COURT: So I am going to bring him back up again then. So continue to the next page.

What about 0359, which is the guy who staffs the deputy administrator of AID who has indicated it would be very difficult to fill his shoes when he does his jury service because he does everything for the deputy administrator.

MR. PEARLMAN: No objection to striking 0359.

THE COURT: Mr. Ekeland?

MR. EKELAND: No objection.

THE COURT: All right. I will strike him.

And then, there was the computer salesperson, 1819, who we agreed to push to the bottom of the list. If we push him to the bottom of the list it is probably the equivalent of striking him because we are probably not going to get to the bottom of the list.

MR. PEARLMAN: I don't oppose -- the government does not oppose moving him or striking him.

THE COURT: Mr. Ekeland?

MR. EKELAND: What was his number again?

THE COURT: It is line 36, 1819. This is the guy who is in computer sales. He said he is not going to -- his clients are at work during the day and he is going to miss all of his sales if he is here because he has no one to back him up.

MR. EKELAND: We object to striking him.

THE COURT: So I will bring him back up and ask him some more questions too. And then there is ███████, who I take it, Mr. Ekeland, you would like to ask some more questions of him. That is 1568.

MR. EKELAND: Yes. That is the Wilmer Hale lawyer?

THE COURT: Yes. I will bring him back up.

And then finally the only one that I have with a question mark is the next on the list at 40, which is ███████ at 0728. We had agreed I think to move to the bottom of list. The question was whether I should go ahead and strike her.

MR. EKELAND: What line number is that, Your Honor?

THE COURT: 40.

MR. PEARLMAN: We do not object to striking 0728 from the government.

MR. EKELAND: 0728?

THE COURT: Correct.

MR. EKELAND: No objection.

THE COURT: So I am going to strike 0728. So then what I am going to do is I will bring them back up in order starting with, ███████, 2065. Okay. Is that fine?

MR. EKELAND: Yes, Your Honor.

MR. PEARLMAN: Yes.

(End of bench conference.)

THE COURT: Can I ask that 2065 come back up. You with the red hat there, I think that is you. 2065. Back up here. Thanks.

I just wanted to ask you a little bit more about the hardship for you of serving on the jury. And I think you had talked to us before about how you were starting a -- potentially starting a more management position. And there was an opportunity for your training. And then I ultimately asked you whether you could work in the evening. And you said, yes. But what I really want to understand is I don't want to do anything that is going to keep you from advancing at work. But, on the other hand, if you think you can manage things and

with the trial and it is not going to keep you from advancing at work, that is fine. And we can keep you on the list. But we just need you to tell us, you know, are you concerned that this really -- if you were a juror, it would affect your ability to become -- take on a management role or delay when you could take on a management role?

A JUROR: I am. Because my hours usually start from 9:00 to 6:00.

THE COURT: Yeah.

A JUROR: Or from 12:00 to 8:00. So in between those times, I have to be there. So, like, I don't know what I would be able to do if, you know, I couldn't be there, because, you know, those are like the hard sale times of the week.

THE COURT: Any follow-up questions from counsel?

MR. EKELAND: Do you work primarily during the week or --

A JUROR: Yes.

MR. EKELAND: So do you work over the weekend too?

A JUROR: Well, Friday and Saturday are the most important days of, like, the sales week, because that is, you know, the heaviest like traffic so.

MR. EKELAND: No further questions.

THE COURT: Mr. Pearlman, anything else?

MR. PEARLMAN: No, Your Honor.

THE COURT: All right. I am going to go ahead and

dismiss you. I don't want to interfere with your ability to advance at work.

A JUROR: Thank you.

THE COURT: All right. And then if I could ask Juror 1819 to come back.

And I also want to get a better sense for you on the hardship and if you could describe a little bit more detail for us, you know -- it is a burden for everybody to be on a jury of this length. But I just need to try and distinguish between cases in which it is really going to set somebody back in a significant way versus it is going to be somewhat of burden, but one you can deal with.

A JUROR: Yeah. With sales you are at like the -- whenever the customer wants to meet or prospect, that is when you meet. So having the business hour from 9:00 to 4:30 blocked off is pretty hard to work around. And then you carry a quota with sales. And being gone for a month is what it sort of sounds like will happen, really puts you behind the 8 ball in hitting that quota. And then like continuing to work that job.

THE COURT: So what is your best assessment of how serious a problem this would be for you?

A JUROR: I think it would be a major issue, having to explain that to, like, my bosses and stuff would be -- I know like you can't get like penalized for it. It would be not

great.

THE COURT: And is there any way that you could do what you need to do in the evenings or weekends to make up for it?

A JUROR: Most of my job is meeting with customers. So they don't really want to meet on the weekends. They don't want to meet after -- during dinner or anything like that. They want to meet during their business hours.

THE COURT: Any follow up from you, Mr. Pearlman?

MR. PEARLMAN: No, Your Honor.

THE COURT: From you, Mr. Ekeland?

MR. EKELAND: No, Your Honor.

THE COURT: I am going to go ahead and let you go as well.

A JUROR: All right. Thank you.

THE COURT: All right. And Juror 1568, can I ask you to come back up?

So I wanted to ask you a little bit more about your work at the SEC and at your law firm relating to cryptocurrency. When you were at the SEC, were you ever involved in any investigations relating to money laundering relating to cryptocurrency?

A JUROR: No, not directly because the SEC doesn't investigate or charge money laundering.

THE COURT: When you say not directly, were you

working in teams with other agencies perhaps in some cases where those issues were raised?

A JUROR: There may have been some cases where the SEC was investigating securities law, part of something related to cryptocurrency where the Department of Justice may have been investigating in a parallel case, other potential violations including money laundering, but I wouldn't have been working on that.

THE COURT: Did you ever have any experience or were you ever involved in blockchain tracing involving cryptocurrency?

A JUROR: Not personally.

THE COURT: Did you ever oversee people who were involved in that where you played any role in reviewing their work?

A JUROR: Not in a supervisory way. I was just aware it was going on, but it wasn't part of my job.

THE COURT: Were you involved in the adoption or consideration of any regulations or rules at the SEC relating to registering cryptocurrency exchanges, registering cryptocurrency securities, anything of that nature?

A JUROR: No, just on the enforcement side.

THE COURT: Okay. And what about the same series of questions with respect to your work in private practice. Have you been involved at all in any cryptocurrency money laundering

cases?

A JUROR: No. Just the flip side of the kinds of cryptocurrency cases I was involved in while I was at the SEC, the security laws aspects of those, representing clients who were being investigated by the SEC or the Department of Justice for securities-related things.

THE COURT: What role would the SEC have with respect to cryptocurrency?

A JUROR: Well, the SEC has brought -- that is a very philosophical question for some people. In the enforcement side, the SEC has broad enforcement actions basically in two ways. One is our cases alleging that people involved in cryptocurrency in some way should have been registered, but weren't or that the securities transactions should have been registered, but weren't. And the other side of those cases is that the SEC investigates and brings cases involving cryptocurrency fraud.

THE COURT: With respect to the registration, is it registering the cryptocurrency itself as a security? And that may be the philosophical question I was approaching.

A JUROR: There is two different kinds of registration. One is registration of the transaction of a cryptocurrency, whether it is being sold like an initial coin offering or sold on an exchange. And the other part of it is some people engaged in the business are alleged to have been

required to be registered as brokers or dealers, but were not.

THE COURT:  I see.  And have you had any involvement in the question of whether someone dealing in cryptocurrency is required to register as a money exchange business?

A JUROR:  No.

THE COURT:  Okay.  Any follow up to this, Mr. Ekeland?

MR. EKELAND:  Yes, I do.  So I just want to make sure I understand.  You worked in the enforcement division of the SEC?

A JUROR:  Yes.

MR. EKELAND:  And you primarily brought civil -- you were primarily involved in civil investigations and civil actions?

A JUROR:  Yes.  The SEC can only bring civil actions.

MR. EKELAND:  Were these like 10b-5 primarily?

A JUROR:  If they are fraud cases, 10b-5 primarily. If they are registration cases, other statutes.

MR. EKELAND:  And then the civil cases you were involved, were there also parallel criminal DOJ cases?

A JUROR:  In some of them.

MR. EKELAND:  More than 50 percent or --

A JUROR:  I couldn't estimate.

MR. EKELAND:  Did you interact and work with DOJ in your involvement with those parallel cases?

A JUROR: I think it may be one or two, but not a large number of them.

MR. EKELAND: And do you agree with the SEC's position that cryptocurrency is a security?

A JUROR: I don't know that is the SEC's position. I think it is rather more nuanced than that.

MR. EKELAND: Do you think cryptocurrency is a security?

A JUROR: I think in some situations cryptocurrency transactions can be securities transactions.

MR. EKELAND: Okay. Thank you. I don't have any further questions.

THE COURT: All right. Mr. Pearlman, any follow up?

MR. PEARLMAN: Do you do any defense work at your firm regarding alleged irregularities concerning cryptocurrency?

A JUROR: Yes.

THE COURT: All right. Anything further, Mr. Ekeland?

MR. EKELAND: I don't have any further questions.

THE COURT: All right. You can go back to your seat. Thank you.

I am going to ask counsel to pick up.

(Conference held at the bench.)

THE COURT: So I think we have qualified enough

jurors out now. We are ready to move into the strikes section of the proceeding. And what I will tell you is, I want to remind you that we agreed that the alternates would be in seats 3, 6, 11, and 14. When you exercise your first round strikes, you may not strike anyone who is in those seats. We will give you -- we are not going to move everyone into the box, but we will give you a list telling you what everyone's juror number is at this point once we rearrange the list based on the strikes. So you cannot strike anyone during the first round strikes -- during the non-alternate strikes. And you just have to leave the folks there.

The Government gets 6 strikes and defense gets 10 strikes for the regular round. I have done the math on this and it works if the government first with 1, then the defense with 2; government with 1, defense with 2, and back and forth. And the government gets the last of the first round of strikes.

Once we are done with that, we'll then move to the alternate rounds of strikes, in which you can only strike somebody who is in seat 6, 11, 3 and 14.

You can strike into the pool at any time you want if you are thinking strategically about who may move up into the person who would then take one of those seats should the alternate be stricken in the process. And each side gets 2 strikes because we have 4 alternates. And so I will allow the defense to go first for alternates, just to switch that up.

And the government will go second. And then back and forth like that.

We will give you a sheet. You will see there aren't quite enough lines, so you will have to put some stuff on the bottom of the sheet, because it is not made for 16 jurors, I think. You know what? Our deputy clerk is on the ball. We have adjusted the sheet. So that is perfect. You need to indicate, to the best of your ability, the race and gender of the person you are striking, purely for Batson purposes. And I can make sure we don't have a Batson problem here as we proceed. And the other thing that I ask that you do is that you think ahead. And while we are doing the work here of getting the sheet ready for you to tell you who is on the list, start thinking about who you are going to strike. Because it drives the prospective jurors nuts, quite frankly, when it is as though the wheel is being invented every time, and the sheet gets passed over to you and you are sitting there and you are huddling and talking and back and forth and it takes 10 minutes.

So think ahead with who you want to strike, so the sheet can pass back and forth with some expedition, because you don't want to be driving people nuts by taking too much time with this.

Any questions before we proceed to the strike stage?

MR. EKELAND: Can we just take a 5-minute break just

for a bathroom break?

THE COURT: That is fine. We can do that. And we'll also be getting the sheet ready in the meantime, but also be giving thought to who you want to strike, so that we are not taking too much time on this.

One other thing is I did arrange for the deputy public defender Shelli Peterson to come meet with Mr. Sterlingov tomorrow morning at 9:00 a.m. So she will be available to advise him with respect to any conflict. All right. Thank you.

(End of bench conference.)

THE COURT: All right. We are making good progress here. I am going -- we are going to take a 5-minute restroom break. I ask you all not to go far and make sure you are back here in five minutes, because we are going to proceed with the next stage of the jury selection process. And we want to make sure everyone is here for that. So take a quick bathroom break and we'll see you back shortly. And come back to your same seats.

(Recess taken at 3:29 p.m.)

THE COURT: All right. So, folks, the deputy clerk is going to call out your jury number. If your jury number is called, please come up and take the seat that she tells you to take.

THE COURTROOM DEPUTY: Juror number 1728, please.

Juror number 0012.

THE COURT: Over this way here.

THE COURTROOM DEPUTY: I'm sorry. Juror number 0312, please.

Juror number 2188.

Juror number 1968.

Juror number 1601.

Juror 0723. I'm sorry. 0273. Juror 0273.

Juror 1141.

Juror 1431. You can go around that way and take the first seat, if you want.

Juror 1580.

Juror 0364.

Juror 1964.

Juror number 1223.

Juror 1009.

Juror 0101, if you would take the last seat in the back.

And Juror number 2166, if you could take this seat right here.

THE COURT: All right. Folks, you have been chosen to serve as jurors in this case. Before I dismiss everyone else here, let me ask, is there any reason that any of you cannot serve?

All right, well, I thank you. I will come back to

you all in a second.

I am going to thank you all for your service today. It is -- you are going home now, but it is an incredible service you are performing by being here. And greatly appreciate you devoting your day to this. This is essential to our system of justice. So thank you and you are all welcome to go.

Glenda, do they need to call in tomorrow.

THE COURTROOM DEPUTY: They need to call in tonight.

THE COURT: Call in tonight, but thank you all.

(Pause.)

THE COURT: All right, folks, so in a minute I am going to ask the deputy clerk just to orientate you, give you your badges, show you where to go tomorrow, just explain a little bit more about the system. This is surprisingly not my usual courtroom here. She will show you where my usual courtroom is. I actually have a jury in another case that is deliberating in the jury room right now, so you are not going to be able to -- well, they may be gone for the day. You may be able to go into the jury room. We'll have to see.

Tomorrow, just because I need to spend some time with the lawyers dealing with some final legal issues in the case, we are not going to start until 11:00 a.m. tomorrow. Maybe that gives you all a chance to deal with some of your personal issues as well. Try and be here by 10:30 or 10:45. Just

sometimes it takes a while to get into the house with the security. That way we are in a position in which we can really get going at 11:00 a.m. tomorrow.

I am going to tell you this now. By the time we are done with this trial, you are going to be so sick of hearing me saying this, you are going to be repeating it. Do not discuss the case with anybody, even your fellow jurors. I will tell you when you can discuss the case with your fellow jurors. But that is not going to be until after all of the evidence has been presented and I have given you my final jury instructions at the end of the trial. So for now, do not discuss anything about the case with one another or certainly not with anybody else. If friends and family, colleagues ask you about it, you can simply say, you were chosen for services in a criminal case.

You can tell them a rough estimate of how long the case is going to take so that they can make arrangements and you can make arrangements for dealing with your life as the case goes forward. Do not conduct any type of research of any kind relating to the case, the parties, the witnesses, anything at all about this case. That means nothing on the internet or in any other way. Everything you know about the case, you need to hear here or in my usual courtroom in the evidence that is actually admitted into evidence. That is critically important. So no research of any kind with respect to the case.

And as I have told you before and I am going to tell you again, if you see the parties in any way in the hallway area or anywhere, just steer clear so you don't accidentally overhear some discussion in the hallway. And if they steer clear of you, they are not being rude, I tell them to do the same thing. If you end up in the elevator together, I just ask that everyone keep their mouths closed while in the elevator together, so there is not any incidental discussion of the case. If anything does come to attention about the case in any way, don't tell your fellow jurors about it, just let me know and we can talk about that. But hopefully that is nothing that will have occurred. I do thank you all for your service. I realize this is asking a lot of people. But it is what makes our system work.

So I am, on behalf of the courts, deeply appreciative of your willingness to serve and your commitment to this important undertaking. So thank you. Have a good night and I will see you all back in my usual courtroom at 11:00.

A JUROR: I'm sorry. How long did you say it would last?

THE COURT: The trial?

A JUROR: Uh-huh.

THE COURT: Our best estimate is that the evidence will all come in no later than March 7th. And then the jury will deliberate however long the jury takes to deliberate.

That is just an estimate because no one knows exactly how long it is going to take each witness to testify and to cross-examine each witness. And we are all going to do our best to keep things moving and on time and not to delay. Because I appreciate and we all appreciate the imposition on you. And we don't want to do anything that is wasting your time. So we are going to do our best to move things along as quickly as possible, but in a manner that is consistent with all of the parties in the case.

A JUROR: So we are to be here every day?

THE COURT: So what I have said here is we are going to sit definitely Monday, Tuesday, Wednesday and Thursday. This Friday, we are going to sit for half a day. Some Fridays, we may sit half a day. I will always give you a little bit of time off on the Fridays to attend to other affairs that you may have and so I can actually handle some of my other cases as well. And the question about whether we sit part days on Friday may turn in part on just how well we are doing in moving the case along or whether there is a witness that is only available on Friday. But I am going to do my best to give you some time to attend to personal matters in your life.

Any other questions?

Yes.

A JUROR: And it is this courtroom?

THE COURT: No. It is going to be in a different

room.  The deputy clerk, Ms. Walker, is going to show you just now where you go and where you will be.  We are only up here because I needed additional capacity and space given the number of prospective jurors we had.

A JUROR:  Your Honor, if in case of emergency, we contact --

THE COURT:  Ms. Walker.  She will give you her contact information.  So in the morning, you are running late, the Metro is not working, you get a flat with your car or something like that, call Ms. Walker and let her know.

A JUROR:  Okay.  Thank you.

THE COURT:  All right.  Thank you all.

(Jury out at 4:59 p.m.)

THE COURT:  All right.  Well, thank you, folks.  I appreciate you all handled that in a very professional and efficient manner.  So thank you for your work on the jury selection process.  The reason I scheduled things to start at 11:00 tomorrow is I have arranged for Ms. Peterson to meet with you at 9:00 a.m. tomorrow.  She is going to come to the cell block at 9:00 a.m. tomorrow morning.

I am scheduled to meet with the marshal that is in charge of the assignments tomorrow morning at 9:30 to ask him if some accommodation can be made, Mr. Sterlingov, with respect to where you are housed.  So I will get some additional information on that.

What I would like to do is have all of us convene at 10:00 a.m., both so that I can confirm that Mr. Sterlingov has received the advice that he needs, to the extent he needs advice with respect to any potential conflict. But also I will then explain in a little bit more detail my rulings with respect to the couple of threshold issues that defense counsel raised or asked about in the motion he filed last night. As I said before, I ruled on many of the *Daubert* motions already. But I will rule on the remaining *Daubert* issues to the extent I can at this time. And, obviously, those things develop over the course of the trial and things can change. But I will give you my best guidance I can with respect to the *Daubert* issues and also on the venue issue.

I think the bottom line on venue, I will give you more detail on this and I have talked about this in the past. And I think the indictment on its face is sufficient. But I will give you more detail and discussion about that tomorrow.

Let's see here. A couple of other issues that were raised and I just want to touch on to see if it is something that I need to address. I guess the -- we do need during our 10:00 session and hopefully we can move relatively quickly and we are not keeping the jury waiting to start with, are your objections, Mr. Ekeland, with respect to the government's slides that they want to use in their opening.

MR. EKELAND: Yes, Your Honor. We are still

objecting that -- the same objections that we submitted, we would like the Court to rule on.

THE COURT: Yes. So I will do that and I will hear any particular arguments with respect to particular slides. I have been through them, but I'd like to hear from the parties about that before I give you my final views with respect to each slide. So just be prepared to go to the extent there are objections, slide by slide, and explain the objections to me and we can move through that fairly quickly.

The government indicated that they are not asking the jury be retained if there is a conviction for purposes of forfeiture. That could affect, obviously, the length of the trial and what we need to tell the prospective jurors. Does the defense have a view on that question?

MR. EKELAND: No, not at the moment, Your Honor. Can we get back to you in the next day or two on that?

THE COURT: Yes. I think it may have something to do with how long we are asking the jurors to be here. Hopefully if there were a conviction, it could not take that much additional time. Let me know. I know it is not often resolved by the same jury and it doesn't have to be and it can be submitted to the Court as well.

MR. EKELAND: To be frank with the Court, I haven't had any discussion with my client about it, so I'd like to do that before I --

THE COURT: Of course. You are welcome to do that, but at least check in about that question tomorrow.

The government asked that I give an instruction with respect to the telephone and use of the telephone. I guess, I am not sure that is necessary at this point. I think if the jurors seem puzzled or maybe even during -- if we end up with lengthy or a couple of lengthy calls early on, I can pause and explain to the jury then. I think it is actually going to make more sense to the jury in the context of a conversation than in advance when they have no idea what I am talking about. But if we have lengthy conversation, you can remind me. I am happy to say to the jury at that time, by the way, we are discussing legal issues and you shouldn't speculate as to what we are discussing, which I am happy to do. But I think doing that in the course of the trial is probably more sensible.

As I said before, I am very open to and think it may be a good idea to give the red book instruction on jury questions in this case, just because we are dealing with a complicated, highly technical subject matter.

Does the defense have a position on that question, Mr. Ekeland?

MR. EKELAND: I think we are open to that. I don't see off the top of my head an issue with that.

THE COURT: You would have an opportunity, by the way, to object to my asking any particular question.

MR. EKELAND:  Yes, Your Honor.  Just so I understand is what we are proposing just allowing the jury to ask questions if they have got a question?

THE COURT:  What we do is I would tell the jurors that if they wanted to, that they could at the end of a witness' testimony, after all counsel have examined the witness, write a note.  They are all going to have pads.  And if there is a question, they could write a note to me indicating what question they would like me to ask.  I am not promising I will ask the question, because there would be legal reasons not to ask the question.  I will then look at it and I will discuss it with you on the phones, before I actually ask the question or reformulate the question.  You can look in the DC red book of instructions.  That is the instruction I would propose to give.

MR. EKELAND:  I don't expect for me to object to that.  If you are looking for an answer right now, I am not going to object to that.

THE COURT:  Well, I am going to put it in my draft preliminary instructions.  If you do overnight have a change on that, let me know.

MR. EKELAND:  Thank you.

THE COURT:  Then the government has proposed 24-hours notice from both sides for any witnesses.  Any objection to that?

MR. EKELAND: No objection. And they have already told us their witnesses for tomorrow.

THE COURT: Who do you have coming tomorrow?

MR. PEARLMAN: Tomorrow we have Mark Price.

MR. BROWN: Matt Price.

MR. PEARLMAN: Matt Price. Excuse me. Two of the interpreters --

THE COURT: You need to move to a microphone.

MR. PEARLMAN: Sarah Krulikowski and Sergei Miroff.

THE COURT: Those are the translators?

MR. PEARLMAN: Yes. And then Leo Rovensky, if we get to it, which is unlikely.

THE COURT: Yeah. I think given the fact that I have to -- we are not starting until 11. I have to give preliminary instructions and you each have to open. So hopefully we'll get to a witness or two.

Then let's see here. I'm sorry. How long do you anticipate your opening taking from the government?

MR. BROWN: Your Honor, I think when we timed it, it was around 45 minutes. But I think Court has, you know set a limit of 60 minutes, to be conservative I'd say 45 to 60.

THE COURT: That is fine. Mr. Ekeland.

MR. EKELAND: We are in the same range, 45 to 60.

THE COURT: That is all fine with me.

The government filed a motion requesting that I

preclude the defense in its opening from referring to the Mt. Gox hack or mounting the Mt. Gox CEO. And I take it the position is that as far as they know there is no defense witness who actually has any nonspeculative or non-hearsay information with respect to that. And, therefore, it would violate 403, because there is not -- or there is nothing that is inadmissible to start with. And if there were, there would be a 403 problem, because there is not anyone who would know anything about what happened; correct?

MR. BROWN: Your Honor, to be clear, I think our motion pertains to the entire trial, that we would move to exclude reference to a hack or alleged misconduct by the CEO. But certainly during opening statements and barring some sort of foundation that the defense can actually proffer that there is a -- whatever the hack was, that it affected the specific account records at issue in this case.

THE COURT: Mr. Ekeland.

MR. EKELAND: First of all, it is not just one hack, it is multiple hacks that have -- I think more than one witness in this case can testify to, that there is numerous.

THE COURT: They can testify that they heard they were hacks from public media or -- I guess, what would be the -- one, is what would be a non-hearsay basis for people saying there were hacks? But more importantly what would the basis be for them suggesting that the hacks had anything to do

with the integrity of the data at issue in this case?

MR. EKELAND: Well, I think when you get into the history of Mt. Gox, from the beginning, one of the things that Mark Karpeles says, you know, when he just got the company was that it was a mess. I think --

THE COURT: I'm sorry. But who is going to testify -- who is going to testify in a non-hearsay way to that? I mean, you can't say, I read a press report. A witness can't say, I read a press report in which the CEO said the company was a mess. That is multiple levels of hearsay.

MR. EKELAND: I am not sure of that, Your Honor. I know that the history of Mt. Gox is no secret. Dr. Cabanas knows Mr. Sterlingov is a creditor of Mt. Gox. It has been well documented. It is not some esoteric conspiracy theory. It is just part of Mt. Gox. And we are not just talking about one hack. I don't see us, you know, having this sort of -- making this the main line of defense. But it is something that I do see potentially coming up. And it is not anything that the government is not on notice on or I don't even think it is something that is in dispute. So to the --

THE COURT: It is certainly in dispute the question of what -- any hack compromised the data that is at issue in this case.

MR. EKELAND: That is a separate question from whether or not Mt. Gox was hacked multiple times and that was

reported to the media. So to the --

THE COURT: But I mean that gets back to the question of -- maybe I should let you think about this overnight. But the question that I want you to answer is actually what admissible evidence you can offer with respect to, one, that there was one or more hacks; and, two, that it is a reasonable inference or a reasonable jury could infer from that, that the data at issue in this case was compromised.

MR. EKELAND: I think that there is probably multiple witnesses in this case that might be able to testify to that. And if they haven't -- they don't have knowledge of that, then I think there is a potential credibility issue. I think that it is a -- if you -- I think it is something we would have to lay a foundation for. But I think that there might even -- and in a certain sense, I don't want to reveal the defense strategy on that point. I think if -- I think what the defense would like on this point is if we can lay a foundation for it and bring it in, I think it is permissible. I am not at this moment planning on making it part of my opening.

THE COURT: Well, that answers the question for now. If you are not planning on mentioning this in the opening, then when there is a witness here, the government is free to object to any testimony and you are free to lay a foundation. And we will just see whether it comes in. If you are not going to do it in your opening, then I think we can address this with a

real concrete issue in front of me.

MR. EKELAND: Yeah. I think for convenience sake, I will keep it out of my opening. And then if I can lay a foundation and if it presents itself, I think it is an entirely appropriate area of inquiry from a number of witnesses in this case, including government witnesses.

THE COURT: All right. Mr. Brown.

MR. BROWN: Your Honor, I think there are two related questions. One is just what is the admissible testimony about the Mt. Gox hack. But I think relatedly -- I think what the Court was reacting to during the *Daubert* proceedings was there is a real 403 issue of jury confusion if you are talking about hacks writ large and then you are talking about, well, we have these four or five specific account records. And there has been absolutely no showing -- and none of their witnesses, to the extent they have been questioned about this during the *Daubert* hearings, Mr. Verret, Mr. Cabanas, none of their witnesses can say they examined the specific account records at issue here and say those were affected by the hack.

THE COURT: Right.

MR. EKELAND: So there is a real risk of prejudice in that sense. It is a confusion of the issues. And it is such a -- once you ring that bell, it is going to be hard to unring it. And that is why we are concerned about the 403 issue. And relatedly it is true that to the extent that the defense

experts have been questioned during the Daubert proceedings, the Court has found that Mr. Verret and Mr. Cabanas, they are not experts in the Mt. Gox hack.

THE COURT: Right.

MR. EKELAND: So I am not sure how the defense is going to introduce this.

THE COURT: Well, I mean, as you know, at least in a *Daubert* context I expressed some questions about this and whether there was a basis for getting into these issues.

If it is not going to come up in the opening, I guess what I would simply ask is, Mr. Ekeland, if you can provide us with notice before you get into it with somebody, so we can have a discussion about whether there is actually a fair evidentiary basis for the inquiry. Okay?

MR. EKELAND: Does that include if someone opens the door to it, like the government's witnesses open the door, are you asking the defense to stop and have a conversation about it or --

THE COURT: Well, I guess, in the sense that I think I should be the one to make the decision about whether they actually opened the door or not. And my concern is if the government says, we have received Mt. Gox documents, and he is ah, they have opened the door. And I don't think that is opening the door to the questions we are talking about. So I think we can get on the phones. And I don't think we have to

break stride, we get on the phones, talk about it quickly. And if I am in agreement, they have opened the door and invited it in some way, that is fine.

I mean, opening the door may address the 403 issue. I am still also not sure whether there is anybody who can offer competent testimony on this, including I am not sure any of the government witnesses actually have competent knowledge of what happened with respect to the hacks. They may have, but I don't know. And we can also explore some of it outside of the presence of the jury if we need to.

MR. EKELAND: So I just want to understand to make sure I am clear on this. Are you -- is the Court precluding questioning on the integrity of the data and the knowledge of the government witnesses in relation to the integrity of the data and what they actually know about it?

THE COURT: I am asking that you flag the issue before we turn to the subject so we have a conversation.

MR. EKELAND: Understood, Your Honor.

THE COURT: All right. Is there anything else that we need to address tonight? I am happy to get into anything else that you need to address before your openings tomorrow, other than the issues I have told you I will address tomorrow.

MR. EKELAND: Your Honor, I know you have referenced that we are sitting on Friday for part of the day, do you know which part of the day?

THE COURT: I am going to surprise you.

Yes, I do. I think it is in the morning. I think Friday morning was the plan.

MR. EKELAND: Thank you, Your Honor.

THE COURT: 10:00 to 12:30, so before lunch, we'll say.

Okay. Mr. Ekeland, you look like you wanted to raise something else.

MR. EKELAND: Yes, Your Honor. We just would renew our request for a one-day continuance so we can review all of the data that we got on Saturday. I don't -- we haven't been able to open up the 800 megabytes of SQL database data. Mr. Fischbach was traveling. We got a bunch of translations last night. I just think it is -- we are in a little bit of a tough position of getting such a large amount of data. I am not clear on what parts of it are new, what parts of it are Jencks. I don't understand why after all of this time we have seen this spreadsheet with all of the passwords and all of the data. We would like at least to just get a day to digest it and understand what this is.

Because my concern is that if -- if we don't know what this is that we are just going to be objecting needlessly at trial, because we just don't -- we haven't had a chance to look at it. And we haven't -- it they weren't files -- some of the files aren't easily opened.

THE COURT: Ms. Pelker.

MS. PELKER: Your Honor, the database files pertain to a cooperator that is not testifying until the end of trial. Mr. Hassard talked to us on break regarding a spreadsheet that contains passwords, which I think is what Mr. Ekeland is referring to, which is separate from the database files. That spreadsheet was a file on the devices that were produced in discovery a long time ago. And we separately produced the export or extraction of that file to defense. So they have had it for a very long time. It sounds like they may have missed it in their review of the discovery. It has been in their possession for an extended period of time.

THE COURT: Let me leave it this way for the night. And Ms. Pelker, I ask that you confer with Mr. Ekeland. Help sort of guide him through what is there.

And, Mr. Ekeland, if you overnight can take a look at what is there. And if there is any additional issues you want to flag for me in the morning, that is fine.

MR. EKELAND: Yeah. I think the issue is more is that we just haven't been able to look at it. And what we are asking for is time -- like maybe his has been produced before, maybe this hasn't. But, you know, an SQL file, you need technical equipment and our expert equipment and our expert who just came in to open. It is really just a question -- maybe everything Ms. Pelker said, I have no reason to doubt --

THE COURT: It is 5:20 now. I know when I tried cases, I usually didn't go to bed until 2:00 or 3:00 in the morning. I certainly think you have time to look at it. Ms. Pelker can help you, your expert is here. Open it up and look at it before you tell me there is a problem.

MS. PELKER: To emphasize, the SQL files are cooperating discovery. That cooperator is not testifying until next week at the earliest.

THE COURT: Okay.

MS. PELKER: It is not evidence. We don't -- we don't even believe that it really pertains to the subject matter of that cooperator's testimony. It was produced out of an extreme abundance of caution. You also have the emails and the back and forth and the cooperator's Jencks to explain it.

THE COURT: All right. So look at it overnight and let me know in the morning if there is something that I am missing here. Okay?

MR. EKELAND: Understood, Your Honor.

THE COURT: Anything else before we adjourn for the evening?

All right. I will see you all at 10:00 a.m. back in my usual courtroom which is Courtroom 8.

(Proceedings concluded at 5:21 p.m.)

240

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 15th day of March, 2024.

Sherry Lindsay, RPR
Official Court Reporter

Appx2589

**A JUROR: [825]**
**MR. BROWN: [5]** 123/9 230/5 230/19 231/10 234/8
**MR. EKELAND: [203]** 3/9 3/20 3/25 6/10 12/17 12/19 14/11 14/18 15/13 30/16 36/16 37/2 42/11 42/13 42/18 42/22 42/25 43/3 43/9 43/15 43/17 44/24 47/2 47/18 47/21 49/13 49/15 49/20 49/25 50/4 50/8 52/22 53/2 53/8 54/17 55/17 58/2 58/7 58/10 61/17 63/3 64/6 65/6 67/5 72/17 73/4 74/2 75/4 76/18 78/2 80/19 82/20 83/20 84/1 84/4 84/6 84/9 84/12 89/10 89/13 89/17 89/21 90/25 91/4 93/7 93/14 94/16 97/9 98/10 98/13 98/15 98/17 98/20 98/24 99/2 99/4 100/4 103/18 105/7 107/12 109/17 112/17 112/20 113/10 116/9 118/12 119/17 121/14 122/13 124/7 133/8 133/11 133/22 135/9 136/7 137/6 137/8 137/11 137/23 140/13 141/4 141/11 142/17 145/21 146/4 147/9 147/16 148/14 150/10 151/18 154/11 154/20 157/21 158/3 158/7 158/12 160/5 161/10 163/11 165/15 165/18 167/3 169/1 169/12 171/24 174/7 177/22 177/25 178/4 178/7 178/12 178/16 178/20 180/6 182/23 183/20 184/19 186/1 188/5 192/25 193/4 194/15 197/21 197/24 200/24 202/16 203/8 204/14 205/8 205/18 205/25 206/19 206/22 207/12 207/15 207/24 208/9 208/15 208/20 209/1 209/5 209/7 209/11 210/15 210/18 210/22 212/12 215/8 215/12 215/16 215/19 215/22 215/24 216/3 216/7 216/11 216/20 218/25 226/25 227/15 227/23 228/22 229/1 229/16 229/22 230/1 230/23 231/18 232/2 232/11 232/24 233/9 234/2 234/21 235/5 235/15 236/11 236/18 236/23 237/4 237/9 238/19 239/18
**MR. PEARLMAN: [145]** 3/6 5/25 15/9 30/14 36/14 36/21 36/25 43/19 43/21 44/2 44/23 46/25 47/23 48/2 48/5 50/10 53/11 54/18 55/8 55/15 58/13 61/19 63/5 64/4 65/1 65/4 67/7 73/7 73/15 73/21 73/23 75/5 76/20 76/23 78/3 80/17 82/22 82/25 84/14 89/23 90/23 93/4 93/13 94/18 97/7 99/7 99/9 100/6 103/20 105/5 107/10 107/15 107/18 107/22 109/19 112/22 113/12 116/11 118/5 118/10 119/16 120/8 120/11 120/14 120/19 120/22 120/24 121/2 121/4 121/17 121/20 121/22 122/9 122/19 133/7 133/18 135/11 136/9 137/4 139/5 139/7 139/11 140/15 141/6 145/23 147/8 147/15 148/13 150/14 151/16 154/9 154/16 157/19 160/7 161/11 163/10 165/17 167/1 169/14 169/19 169/23 170/1 170/3 170/6 170/10 170/15 172/14 174/5 177/1 178/23 179/1 180/5 181/25 182/2 182/21 183/22 184/21 186/2 188/7 189/4 192/23 193/2 194/14 198/1 201/1 202/18 203/9 204/15 205/10 205/16 206/1 206/4 206/23 207/9 207/22 208/6 209/3 209/12 210/24 212/10 216/14 230/4 230/6 230/9 230/11
**MS. PELKER: [9]** 11/3 12/7 12/13 14/24 124/11 127/5 238/2 239/6 239/10
**THE COURT: [1116]**
**THE COURTROOM DEPUTY: [73]** 3/2 15/5 16/1 28/13 30/19 37/10 45/2 47/5 48/8 50/13 54/21 58/25 62/3 63/11 64/9 65/9 67/11 75/15 76/25

78/9 80/21 83/3 84/17 90/1 91/8 93/19 94/20 97/12 99/16 103/24 105/9 107/14 110/12 112/24 116/13 118/15 119/23 123/17 130/3 134/5 135/14 136/12 140/18 147/22 148/17 150/17 151/21 155/25 160/10 161/15 163/14 165/22 167/6 170/24 172/7 174/10 179/10 180/9 183/1 183/25 184/23 186/7 189/14 193/12 194/18 198/4 201/5 202/21 203/12 204/19 219/25 220/3 221/9
**THE DEFENDANT: [19]** 4/4 4/10 4/12 4/14 4/20 123/18 124/19 124/22 125/1 125/14 125/21 125/24 126/5 128/5 129/1 129/4 129/7 129/10 129/13
**THE JURY: [1]** 15/25
**THE REPORTER: [1]** 3/18
**UNIDENTIFIED SPEAKER: [2]** 123/24 124/3

## $

**$1,000 [1]** 194/5
**$200 [1]** 49/11
**$3,000 [1]** 153/15

## '

**'64 [1]** 184/11
**'65 [1]** 184/11

## 0

**0012 [3]** 48/8 48/10 220/1
**0101 [2]** 148/17 220/17
**0131 [2]** 167/6 167/9
**0273 [4]** 75/15 75/16 220/8 220/8
**0311 [1]** 183/1
**0312 [3]** 165/22 165/23 220/3
**0357 [1]** 135/14
**0359 [5]** 112/24 188/23 206/8 207/18 207/22
**0364 [1]** 220/13
**0435 [2]** 151/21 151/23
**0444 [1]** 183/25
**0446 [1]** 203/12
**0557 [1]** 170/24
**0564 [1]** 186/7
**0595 [1]** 161/15
**0624 [12]** 90/1 90/2 120/12 120/19 120/22 121/15 121/16 122/11 122/20 206/7 206/18 206/24
**0625 [1]** 100/9
**0634 [2]** 64/9 64/11
**0654 [2]** 180/9 180/11
**0663 [1]** 116/13
**0686 [2]** 47/5 47/6
**0723 [1]** 220/8
**0727 [3]** 80/21 80/23 119/23
**0728 [7]** 140/18 188/25 206/15 208/24 209/3 209/5 209/8
**0748 [1]** 174/10
**075 [1]** 179/12
**0752 [2]** 93/19 93/20
**0761 [1]** 155/25
**0793 [2]** 84/17 84/19
**0831 [2]** 30/19 30/20
**0855 [1]** 172/7
**0907 [1]** 163/14
**0926 [1]** 160/10

## 1

**10 [8]** 5/19 7/2 19/21 39/16 115/15 188/13 217/12 218/18
**10005 [1]** 2/4
**1009 [3]** 78/9 78/11 220/16
**101 [1]** 148/19
**1029 [2]** 110/12 110/14
**1075 [2]** 55/24 55/25
**10:00 [2]** 226/21 237/5
**10:00 a.m [2]** 226/2 239/21
**10:02 [1]** 15/4
**10:30 [1]** 221/25

**10:45 [1]** 221/25
**10b-5 [2]** 215/16 215/17
**10th [2]** 57/5 58/15
**11 [5]** 19/25 102/13 217/4 217/19 230/14
**1141 [3]** 83/3 83/4 220/9
**1186 [2]** 189/14 189/16
**11:00 [2]** 223/18 225/18
**11:00 a.m [2]** 221/23 222/3
**12 [11]** 1/5 16/6 20/15 47/12 102/14 136/14 136/15 136/16 188/12 202/8 202/10
**1223 [3]** 134/5 134/6 220/15
**1236 [2]** 105/9 105/10
**1292 [3]** 184/23 184/24 185/3
**12:00 [2]** 153/24 210/10
**12:11 [1]** 110/10
**12:18 [1]** 110/11
**12:30 [4]** 101/4 109/25 120/7 237/5
**12:45 [1]** 130/2
**12th [1]** 204/9
**13 [1]** 20/18
**1301 [1]** 1/20
**1341 [2]** 204/19 204/20
**13th [1]** 204/10
**14 [4]** 20/24 87/22 217/4 217/19
**1431 [3]** 97/12 97/13 220/10
**15 [1]** 21/8
**1568 [7]** 136/12 136/13 136/17 189/1 206/13 208/19 212/16
**1580 [3]** 103/24 103/25 220/12
**15th [3]** 153/20 154/4 240/10
**16 [4]** 21/14 145/5 185/5 218/5
**1601 [3]** 50/13 50/15 220/7
**1635 [2]** 147/22 147/24
**1656 [2]** 76/25 77/2
**17 [2]** 21/16 42/3
**1707 [2]** 194/18 194/19
**1726 [2]** 91/8 91/10
**1728 [3]** 28/13 28/14 219/25
**1757 [2]** 67/11 67/12
**1792 [2]** 202/21 202/22
**1793 [1]** 193/15
**17th [1]** 161/20
**18 [2]** 21/22 88/11
**1819 [7]** 130/3 130/5 188/24 206/10 208/1 208/10 211/5
**1822 [4]** 65/9 65/10 205/20 205/24
**1860 [2]** 45/2 45/4
**19 [2]** 22/3 25/21
**1912 [2]** 201/5 201/6
**1913 [2]** 37/10 37/15
**1956 [2]** 118/15 118/19
**1964 [3]** 107/14 108/10 220/14
**1968 [3]** 63/11 63/14 220/6
**1973 [1]** 193/12
**1974 [1]** 152/7
**1:00 p.m [1]** 100/25
**1:30 [3]** 110/3 119/25 120/6

## 2

**20 [3]** 22/7 61/6 77/16
**20001 [1]** 2/9
**20005 [1]** 1/21
**2007 [1]** 102/21
**2010 [2]** 62/25 63/1
**2011 [1]** 16/20
**2013 [1]** 48/16
**2016 [1]** 205/3
**2019 [1]** 49/7
**2021 [2]** 16/21 82/14
**2024 [3]** 1/5 25/25 240/10
**2028 [2]** 62/3 62/5
**20530 [2]** 1/14 1/17
**2059 [1]** 198/6
**2065 [14]** 94/20 94/22 120/19 120/24 121/2 121/14 122/17 188/22 206/7 207/1 207/7 209/10 209/14 209/15
**2075 [1]** 179/10
**2095 [1]** 198/4

**2**

**21 [3]**   22/11 173/13 197/7
**21-399 [3]**   1/4 3/2 15/5
**2160 [2]**   54/21 54/23
**2166 [3]**   150/17 150/19 220/19
**2188 [3]**   58/25 59/2 220/5
**22 [4]**   22/13 120/14 120/22 206/6
**2200 [2]**   99/16 99/18
**23 [2]**   22/17 131/18
**24 [3]**   7/21 22/19 198/8
**24-hours [1]**   229/23
**25 [12]**   22/22 40/25 48/21 57/10
  79/18 103/6 115/2 120/19 120/20
  121/2 131/5 206/6
**26 [2]**   22/25 196/17
**27 [2]**   23/3 150/1
**27th [2]**   16/20 16/20
**28 [6]**   23/6 40/22 40/25 88/4
  91/11 121/1
**28th [1]**   203/3
**29 [2]**   23/9 149/14
**29th [1]**   148/4
**2:00 [2]**   101/4 239/2
**2nd [1]**   203/3

**3**

**30 [3]**   2/3 23/12 56/8
**3011 [1]**   183/3
**31 [2]**   102/25 107/4
**32 [1]**   23/17
**33 [6]**   23/21 30/5 75/17 82/12
  90/14 111/7
**333 [1]**   2/8
**34 [5]**   23/23 40/5 138/16 181/18
  190/10
**35 [8]**   24/1 29/21 87/1 166/7
  171/4 181/4 189/7 199/8
**357 [1]**   135/18
**359 [1]**   113/19
**36 [18]**   24/3 39/13 86/21 93/21
  99/19 106/16 138/13 144/4 149/5
  166/15 172/19 187/7 188/12 188/15
  189/6 196/11 201/10 208/10
**37 [10]**   24/6 60/11 95/10 102/10
  108/23 156/15 180/21 186/25
  189/19 190/11
**38 [2]**   24/9 188/18
**39 [5]**   24/13 38/21 53/13 86/6
  117/9
**399 [3]**   1/4 3/2 15/5
**3:00 [1]**   194/1
**3:00 in [1]**   239/2
**3:29 [1]**   219/20
**3:30 [1]**   183/7
**3rd [1]**   11/25

**4**

**40 [12]**   24/18 32/25 38/1 82/2
  85/18 101/10 114/13 138/7 143/11
  180/11 208/23 209/2
**403 [5]**   231/6 231/8 234/12 234/24
  236/4
**41 [4]**   25/4 59/4 138/7 142/22
**42 [2]**   25/14 116/15
**43 [2]**   25/19 32/2
**44 [1]**   25/22
**444 [1]**   184/1
**446 [1]**   203/13
**45 [9]**   25/23 37/19 78/15 144/24
  167/10 183/4 230/20 230/21 230/23
**46 [4]**   26/3 50/16 65/12 167/10
**47 [1]**   65/12
**4:00 [1]**   56/22
**4:30 [5]**   46/15 56/11 66/16 182/6
  211/15
**4:59 [1]**   225/13

**5**

**5-minute [3]**   110/9 218/25 219/13
**5.1527 [1]**   1/17
**50 [1]**   103/10

**50 percent [1]**   215/22
**557 [1]**   170/25
**564 [1]**   186/10
**595 [1]**   161/16
**5:00 [6]**   46/15 56/5 56/23 182/4
  182/5 182/6
**5:00 p.m [1]**   182/12
**5:20 now [1]**   239/1
**5:21 [1]**   239/23
**5th [1]**   179/22

**6**

**60 [4]**   38/1 230/21 230/21 230/23
**601 [1]**   1/16
**624 [2]**   122/14 188/22
**625 [1]**   100/11
**663 [1]**   116/14
**6710 [1]**   2/8
**6:00 [2]**   194/1 210/8
**6th [1]**   161/20

**7**

**727 [4]**   107/24 113/16 119/21
  119/22
**728 [1]**   142/21
**748 [1]**   174/12
**75 [2]**   6/6 185/7
**761 [1]**   156/1
**7:45 [1]**   186/16
**7th [6]**   6/13 25/25 79/7 79/9
  100/18 223/24

**8**

**80 [1]**   176/17
**800 [3]**   12/24 14/12 237/12
**80th [2]**   203/25 204/3
**85-year-old [1]**   119/2
**855 [1]**   172/9
**8:00 [2]**   56/18 210/10
**8:30 [1]**   56/17
**8th [1]**   2/4

**9**

**90-year-old [1]**   119/4
**907 [1]**   163/15
**926 [1]**   160/13
**950 [1]**   1/14
**953 [1]**   11/12
**9:00 [7]**   46/14 66/15 96/21 96/21
  186/20 210/8 211/15
**9:00 a.m [3]**   219/8 225/19 225/20
**9:08 [1]**   1/6
**9:28 [1]**   15/3
**9:30 [1]**   225/22
**9:30 right [1]**   13/5
**9th [1]**   204/8

**A**

**a.m [10]**   1/6 15/3 15/4 219/8
  221/23 222/3 225/19 225/20 226/2
  239/21
**Aaron [1]**   20/2
**abiding [1]**   7/22
**ability [40]**   4/7 25/15 28/16 30/3
  33/13 34/3 39/7 40/1 40/20 60/8
  69/5 72/8 72/11 83/15 87/16 88/9
  89/3 90/20 94/9 95/15 96/4 98/6
  99/10 102/5 102/16 105/2 132/9
  140/8 142/16 156/24 157/10 168/18
  182/3 192/8 194/7 198/24 199/5
  210/5 211/1 218/8
**able [50]**   4/15 4/24 12/3 13/16
  21/19 28/23 29/6 33/17 36/4 39/10
  40/23 41/10 41/24 44/5 45/19 49/3
  57/21 58/14 58/16 61/12 61/21
  68/23 69/18 71/5 74/7 74/9 74/22
  75/7 76/10 80/13 92/5 118/8 118/9
  130/9 140/1 141/7 149/22 151/12
  161/4 161/5 164/2 173/25 186/21
  197/16 210/12 221/19 221/20
  233/10 237/12 238/20

**about [321]**
**above [1]**   240/5
**above-entitled [1]**   240/5
**abroad [2]**   115/20 115/21
**absent [2]**   6/11 169/9
**absolutely [3]**   14/15 14/17 234/15
**abundance [1]**   239/13
**accept [2]**   35/20 110/24
**accessed [4]**   13/2 22/17 51/14
  131/18
**accidentally [1]**   223/3
**accommodate [1]**   110/23
**accommodation [1]**   225/23
**accomplice [1]**   87/6
**according [1]**   27/22
**account [8]**   87/7 87/12 146/14
  146/18 194/11 231/16 234/14
  234/18
**accounts [1]**   13/3
**accurate [1]**   12/22
**accused [1]**   185/13
**acronym [1]**   176/13
**across [1]**   194/24
**act [1]**   72/25
**Action [1]**   1/3
**actions [7]**   45/12 59/19 70/8
  137/19 214/11 215/14 215/15
**active [3]**   28/18 111/17 116/7
**actively [1]**   43/12
**activities [2]**   22/15 51/12
**activity [7]**   83/13 83/22 83/25
  115/12 140/7 158/6 158/8
**actual [2]**   11/20 71/15
**actually [27]**   31/9 32/6 55/12
  68/19 70/24 81/15 115/20 122/3
  132/7 142/1 148/3 153/11 159/10
  159/18 172/23 221/17 222/24
  224/16 228/8 229/12 231/4 231/14
  233/4 235/13 235/21 236/7 236/15
**addition [2]**   39/23 159/5
**additional [11]**   9/21 10/25 11/1
  28/2 28/7 133/19 156/9 225/3
  225/24 227/20 238/17
**Additionally [1]**   175/6
**address [16]**   4/2 4/19 9/11 14/23
  49/10 49/11 50/7 101/5 123/14
  162/19 226/20 233/25 236/4 236/20
  236/21 236/22
**addressed [1]**   79/5
**adds [1]**   188/15
**adequately [1]**   74/11
**adjourn [1]**   239/19
**adjusted [2]**   78/18 218/7
**administer [1]**   15/22
**administered [1]**   175/25
**administration [1]**   175/3
**administrative [1]**   167/14
**administrator [6]**   113/22 114/5
  114/6 206/10 207/19 207/21
**admissible [2]**   233/5 234/9
**admit [1]**   179/3
**admitted [1]**   222/24
**adoption [1]**   213/18
**advance [2]**   211/2 228/10
**advancing [2]**   209/24 210/1
**advice [4]**   45/11 46/11 226/3
  226/4
**advise [1]**   219/9
**advised [1]**   6/16
**advisers [1]**   114/9
**advisory [1]**   116/5
**affairs [2]**   63/22 224/15
**affect [15]**   69/5 72/7 72/10 96/3
  99/9 118/2 132/8 146/15 146/20
  156/23 157/10 194/6 199/5 210/4
  227/12
**affected [3]**   34/7 231/15 234/19
**affecting [1]**   160/1
**affinity [2]**   175/4 176/6
**AFib [1]**   119/3
**afield [1]**   52/15
**afraid [1]**   141/2

Appx2591

## A

**Africa [2]** 177/14 177/17
**after [20]** 10/18 13/25 17/13 25/25 70/2 77/21 97/2 110/8 110/9 113/14 145/8 169/6 182/7 184/11 193/21 193/25 212/7 222/9 229/6 237/17
**after-school [1]** 193/21
**afternoon [7]** 15/9 46/18 66/17 96/22 100/15 119/9 194/1
**afterwards [1]** 81/22
**again [13]** 10/23 12/19 13/12 14/19 28/3 28/4 32/10 43/11 114/2 153/21 207/16 208/9 223/2
**against [7]** 8/2 16/23 21/3 21/9 35/19 87/23 91/24
**agencies [3]** 176/17 200/7 213/1
**agency [7]** 24/22 25/13 85/21 90/12 115/16 115/17 179/4
**agent [2]** 101/18 101/21
**ago [21]** 29/24 39/15 39/16 49/6 78/22 79/23 79/24 95/22 103/9 105/12 107/6 111/10 115/5 115/5 115/20 166/4 175/2 180/24 180/25 202/13 238/8
**agree [7]** 55/12 141/20 142/17 147/14 147/15 189/3 216/3
**agreed [8]** 7/19 9/10 79/22 206/10 206/14 208/2 208/24 217/3
**agreement [9]** 5/13 5/15 21/25 88/14 88/23 88/24 206/17 207/6 236/2
**agrees [2]** 88/25 205/18
**ah [1]** 235/23
**ahead [24]** 5/18 5/24 6/20 28/12 36/20 37/6 55/20 57/14 70/3 113/15 137/22 161/12 165/21 169/22 170/19 170/22 186/4 194/16 204/16 208/25 210/25 212/13 218/12 218/20
**AID [7]** 113/22 114/5 150/24 151/5 188/23 206/10 207/19
**aides [1]** 99/11
**aim [1]** 16/5
**airport [1]** 135/5
**aisle [1]** 110/2
**Alabama [1]** 119/9
**Albin [1]** 20/2
**Alden [2]** 3/7 19/7
**alert [1]** 25/17
**Alexandra [1]** 20/2
**all [360]**
**allegation [3]** 74/24 92/2 189/23
**allegations [3]** 92/3 143/7 189/23
**allege [1]** 92/3
**alleged [4]** 16/19 214/25 216/15 231/12
**allegedly [1]** 92/13
**alleges [1]** 52/2
**alleging [2]** 137/19 214/12
**Allen [1]** 20/7
**allocation [1]** 20/22
**allow [6]** 7/22 10/2 10/10 97/3 123/17 217/24
**allowed [3]** 10/4 10/16 28/3
**allowing [1]** 229/2
**alluded [1]** 75/1
**almost [2]** 11/12 78/21
**along [6]** 17/14 79/12 86/12 134/2 224/7 224/19
**already [19]** 7/19 9/1 9/6 17/5 21/23 55/2 55/3 55/6 55/14 66/13 86/23 107/21 113/4 153/14 155/13 159/17 179/2 226/8 230/1
**also [51]** 11/22 13/18 18/22 28/25 40/16 44/11 46/9 51/11 52/12 53/13 55/25 56/4 56/14 57/2 57/6 57/17 57/18 58/20 69/22 71/20 74/16 81/24 83/9 95/1 100/17 102/21 116/5 144/24 148/1 156/6 157/5 161/17 167/12 167/17 168/1

185/10 188/25 193/22 195/13 198/12 198/14 199/11 211/6 215/20 219/3 219/3 226/4 226/13 236/5 236/9 239/13
**alternate [5]** 79/1 79/2 217/10 217/18 217/23
**alternates [6]** 16/6 188/13 188/15 217/3 217/24 217/25
**although [7]** 4/5 9/7 9/16 10/3 96/25 153/10 195/6
**always [6]** 33/24 38/7 85/4 99/2 162/17 224/14
**Alyadinov [1]** 20/8
**am [236]** 4/15 5/16 6/3 6/5 6/11 6/14 6/15 6/17 8/17 8/19 9/6 9/16 9/24 10/2 10/9 13/6 13/8 13/20 14/3 14/5 14/25 15/18 15/18 17/8 28/18 28/25 29/10 31/2 31/9 32/5 32/5 34/17 34/23 37/6 37/7 37/21 37/25 38/4 42/18 45/7 46/7 50/20 50/20 51/11 51/14 52/15 53/6 54/25 55/4 55/5 55/20 57/2 57/19 59/23 60/14 61/6 62/7 62/8 63/8 63/15 66/8 66/11 66/18 66/19 66/21 67/24 70/12 71/22 72/12 76/15 77/20 77/21 78/5 78/17 79/11 80/3 80/3 81/3 81/8 83/23 84/5 87/20 88/17 90/6 90/12 92/22 93/2 93/15 94/25 95/1 95/6 96/14 99/23 101/20 102/2 103/14 108/3 110/19 113/15 113/21 113/23 114/4 115/22 116/6 119/18 120/16 121/12 121/24 122/6 122/9 122/15 122/18 124/3 124/12 131/20 133/24 134/1 134/8 134/9 134/25 136/4 137/7 137/9 141/17 145/3 146/16 147/18 148/3 148/15 149/17 150/22 151/24 152/1 153/4 153/4 153/6 154/6 154/21 154/24 155/2 156/21 157/21 158/24 161/2 161/12 161/19 162/8 162/13 163/5 163/12 165/21 167/12 167/13 167/13 167/15 167/16 167/18 167/25 168/10 169/11 170/18 170/22 172/17 173/16 174/13 175/1 178/15 179/18 180/7 181/6 182/10 183/23 184/4 186/4 186/15 188/18 188/21 189/9 189/11 189/17 190/2 191/7 191/21 191/23 192/4 193/5 193/7 193/8 193/9 194/10 194/16 194/23 195/5 203/23 204/2 204/3 204/16 204/22 205/23 206/24 207/1 207/16 209/8 209/9 210/7 210/25 212/13 216/23 219/13 221/2 221/12 222/4 223/1 223/15 224/20 225/21 228/5 228/10 228/11 228/14 228/16 229/9 229/17 229/19 232/11 233/18 235/5 236/2 236/5 236/6 236/12 236/16 236/20 237/1 237/15 239/16
**AMERICA [3]** 1/3 3/3 15/6
**among [2]** 26/21 53/6
**amongst [1]** 27/19
**amount [6]** 9/1 175/3 175/8 193/17 194/8 237/15
**amounts [2]** 132/15 196/1
**analysis [2]** 9/12 19/4
**analyst [1]** 164/19
**analytic [2]** 159/2 159/4
**Analytics [1]** 130/25
**Andy [1]** 20/2
**Angela [2]** 19/9 20/3
**announce [1]** 37/7
**another [19]** 5/4 5/19 11/23 13/18 21/11 27/10 42/22 45/6 57/6 82/23 82/24 88/25 119/13 139/3 149/10 154/4 166/18 221/17 222/12
**answer [21]** 3/24 16/14 17/9 17/12 17/12 17/25 33/22 33/23 42/14 62/5 66/24 144/18 144/24 157/7 157/8 159/12 171/16 180/20 198/15 229/17 233/4
**answered [133]** 28/14 29/21 30/5

30/21 32/1 32/24 37/15 38/13 38/21 39/12 40/4 40/22 40/25 42/2 45/4 47/19 48/12 48/21 50/15 53/13 54/23 57/10 59/3 60/10 63/5 63/17 67/13 75/17 77/2 79/18 80/23 82/2 82/12 83/5 84/19 85/17 86/6 86/21 87/1 87/18 88/3 88/11 90/3 90/14 91/10 93/21 94/22 95/9 95/18 95/24 97/14 97/21 99/18 100/11 101/10 102/25 103/6 104/2 104/3 104/14 105/11 106/16 107/4 108/11 108/12 108/23 110/14 111/6 111/14 113/19 114/12 115/2 116/15 117/9 118/19 130/6 131/4 131/17 134/10 136/14 136/15 138/6 138/12 138/16 142/22 143/10 143/13 144/4 148/19 149/5 149/14 150/1 150/19 156/2 156/14 156/18 160/13 161/17 163/15 165/24 165/24 166/7 166/14 167/10 171/3 172/9 172/19 173/13 174/14 180/11 181/4 181/18 183/3 186/11 186/25 187/7 189/18 190/9 193/15 194/12 194/20 196/10 196/17 196/23 197/6 198/7 198/18 199/8 200/5 201/9 202/23 203/15 204/24
**answers [9]** 8/12 17/18 64/11 73/4 74/13 135/19 152/2 184/6 233/20
**antennae [1]** 169/6
**anticipate [1]** 230/18
**antitrust [2]** 45/10 149/9
**anxiety [7]** 160/22 161/3 161/6 161/8 190/1 191/14 192/7
**any [302]**
**anybody [9]** 43/24 71/12 71/18 93/2 120/1 158/23 222/7 222/12 236/5
**anymore [2]** 106/24 131/16
**anyone [21]** 25/19 27/10 27/19 27/25 28/4 29/16 49/17 56/24 85/4 92/10 92/10 110/4 120/3 140/23 160/25 164/17 183/11 185/6 217/5 217/9 231/8
**anything [84]** 11/16 14/22 17/13 18/1 18/13 18/20 18/25 27/5 27/18 45/19 50/9 51/14 53/9 57/17 60/1 60/4 63/23 69/4 70/23 73/23 73/25 89/18 90/19 94/8 95/14 96/3 98/5 98/18 99/9 99/24 103/12 105/1 111/11 112/2 112/12 112/21 114/21 121/18 132/5 132/7 138/10 140/6 143/3 143/6 144/16 149/2 151/9 158/11 158/15 160/3 160/6 160/24 166/22 168/5 171/19 173/9 175/5 178/13 181/7 182/2 185/24 187/4 188/2 189/22 189/22 192/5 193/19 196/3 201/24 209/24 210/23 212/7 213/21 216/18 222/11 222/20 223/9 224/6 231/9 231/25 232/18 236/19 236/20 239/19
**anytime [1]** 58/20
**anyway [2]** 5/21 78/22
**anywhere [2]** 103/11 223/3
**apologies [2]** 78/14 172/11
**apologize [3]** 17/16 54/12 65/14
**app [4]** 98/1 98/11 98/15 98/22
**apparently [2]** 12/25 201/15
**APPEARANCES [3]** 1/12 1/23 2/1
**appears [1]** 3/22
**applicability [1]** 9/9
**applications [3]** 51/7 51/11 51/17
**applied [2]** 91/20 91/22
**applies [1]** 108/15
**apply [6]** 21/7 34/4 39/6 72/12 157/1 178/12
**appoint [1]** 122/25
**appointed [1]** 175/2
**appointment [7]** 100/14 119/3 119/5 119/12 123/11 123/13 155/10
**appointments [6]** 119/1 153/25 154/17 154/25 155/17 182/11
**appreciate [14]** 28/11 29/13 67/8

## A

appreciate... **[11]** 118/3 156/8 157/17 172/16 179/6 186/22 195/15 221/5 224/5 224/5 225/15
appreciative **[1]** 223/15
approaching **[1]** 214/20
appropriate **[5]** 7/19 10/12 10/17 69/23 234/5
appropriately **[1]** 108/18
appropriation **[2]** 38/7 38/9
appropriations **[3]** 37/22 37/23 38/9
approving **[1]** 167/14
apps **[1]** 43/14
April **[3]** 16/20 38/12 94/7
April 27th **[1]** 16/20
apt **[1]** 38/25
architect **[1]** 78/17
are **[352]**
area **[10]** 46/4 46/6 56/4 58/19 118/24 137/11 144/9 151/2 223/3 234/5
areas **[2]** 10/3 33/8
aren't **[3]** 133/5 218/3 237/25
argue **[1]** 159/18
argument **[4]** 7/10 7/13 7/13 7/15
arguments **[1]** 227/4
Arizona **[1]** 172/13
arms **[1]** 64/18
around **[17]** 13/5 19/22 26/19 32/16 32/20 37/14 56/18 73/19 115/15 132/14 162/16 163/6 182/4 207/6 211/16 220/10 230/20
arrange **[2]** 182/17 219/6
arranged **[1]** 225/18
arrangements **[2]** 222/17 222/18
arranges **[1]** 15/1
arrest **[2]** 18/22 101/19
arrested **[12]** 24/7 53/23 95/11 102/11 102/12 104/15 108/25 156/16 180/22 187/1 189/20 189/21
arrests **[1]** 143/20
articles **[1]** 139/23
as **[190]** 3/11 6/1 6/7 7/10 7/12 7/15 8/8 10/5 11/5 11/5 12/2 12/2 12/22 13/7 16/3 16/8 17/1 18/17 18/23 22/23 24/12 24/23 25/7 25/15 26/2 26/3 26/6 26/10 26/11 26/13 26/16 26/16 28/8 28/10 28/11 29/18 31/3 31/10 32/6 32/15 32/16 33/11 33/11 33/15 33/18 34/4 34/5 34/14 34/14 38/9 38/18 39/16 43/24 45/20 46/18 48/19 49/17 54/8 55/5 55/6 55/6 62/20 66/17 66/19 66/20 66/23 68/21 69/16 69/16 70/11 70/21 70/21 71/14 71/14 71/25 73/14 73/14 74/7 74/8 78/23 79/12 79/12 79/25 80/12 81/14 81/16 83/14 84/25 85/1 85/15 85/15 85/24 86/1 86/19 87/6 88/24 89/7 89/7 89/13 90/11 96/11 102/22 113/6 116/17 117/5 118/5 118/24 121/9 121/10 121/14 121/15 131/10 138/6 138/24 138/25 139/9 139/11 139/11 139/22 140/3 142/6 145/3 145/4 146/10 151/10 151/13 154/17 154/18 155/18 156/22 156/25 157/1 157/2 157/13 157/24 159/18 159/18 159/22 159/24 160/21 161/5 161/6 162/19 163/12 164/1 165/11 166/19 167/10 169/24 170/3 170/4 170/19 175/2 176/5 176/17 177/4 179/7 179/12 179/16 189/25 190/10 193/15 195/12 197/2 197/3 198/24 203/15 203/16 206/2 206/9 212/13 214/19 215/1 215/4 218/10 218/16 220/22 221/25 222/18 223/1 224/7 224/8 224/16 226/7 227/22 228/13 228/16 231/3 231/3 235/7
aside **[26]** 8/9 21/20 35/7 36/5

41/10 41/24 42/4 42/8 44/5 44/8 45/19 52/6 53/17 57/21 61/12 61/14 68/23 71/7 74/22 80/13 92/5 140/1 149/22 150/6 151/12 185/21
ask **[85]** 4/20 4/23 7/20 7/23 7/24 8/1 8/3 8/4 8/6 10/15 10/20 13/22 15/21 16/10 17/8 17/18 17/22 17/24 19/21 26/25 27/20 27/23 28/2 28/5 29/13 34/8 42/22 44/16 47/23 69/10 70/5 72/14 93/11 95/14 96/9 107/23 110/3 112/25 115/11 122/7 124/1 131/23 136/19 137/14 145/10 145/23 146/5 146/17 154/12 155/18 164/5 168/23 168/24 169/17 174/20 185/1 188/9 189/1 190/12 205/12 205/19 206/14 207/7 208/16 208/18 209/14 209/17 211/4 212/16 212/18 216/23 218/11 219/14 220/23 221/13 222/13 223/6 225/22 229/2 229/9 229/10 229/11 229/12 235/11 238/14
asked **[19]** 7/9 7/19 10/18 26/5 42/14 43/23 52/8 71/18 77/24 104/3 132/23 158/16 163/7 170/17 171/12 173/22 209/21 226/7 228/3
asking **[21]** 5/20 8/24 13/15 17/14 27/10 42/18 54/7 55/11 58/5 73/2 122/24 157/17 163/5 195/16 223/13 227/10 227/18 228/25 235/17 236/16 238/21
asks **[5]** 26/4 27/16 136/16 142/23 144/15
aspects **[1]** 214/4
assault **[2]** 33/11 90/17
assaulted **[2]** 40/15 199/18
assess **[1]** 75/8
assessment **[1]** 211/21
asset **[2]** 23/2 196/20
assignments **[1]** 225/22
assist **[1]** 118/23
assistance **[2]** 156/9 156/9
assistant **[6]** 19/6 38/4 95/6 113/21 114/4 114/8
assistants **[2]** 19/17 114/7
assisted **[2]** 19/8 19/17
assisting **[1]** 32/5
associate **[2]** 83/21 158/7
associated **[7]** 27/25 28/5 110/4 120/3 123/25 169/15 175/5
association **[1]** 94/13
assume **[2]** 10/2 158/20
assumed **[1]** 109/10
assuming **[3]** 85/10 132/10 195/7
Asthma **[1]** 162/13
Atlanta **[2]** 93/25 143/16
attend **[3]** 115/15 224/15 224/21
attended **[1]** 106/20
attention **[3]** 123/12 157/25 223/9
attentive **[1]** 31/22
attentively **[1]** 26/6
attorney **[12]** 24/10 24/23 24/25 25/1 45/7 45/18 150/22 150/23 151/7 187/16 196/12 200/20
Attorney's **[1]** 24/24
attorneys **[10]** 15/10 19/6 19/7 19/15 27/14 39/22 43/22 140/20 199/25 200/1
audited **[6]** 23/16 96/1 103/2 103/3 107/5 107/6
audits **[1]** 108/17
aunt **[1]** 39/22
authority **[2]** 101/20 101/20
autistic **[1]** 182/1
availability **[1]** 6/1
available **[6]** 29/9 32/10 58/22 154/18 219/9 224/20
Ave **[2]** 1/14 1/20
Avenue **[2]** 2/8 153/18
average **[1]** 71/4
aviation **[1]** 78/18
avoid **[1]** 85/13
avoiding **[1]** 85/14

aware **[7]** 51/12 51/15 70/6 71/22 123/15 179/1 213/16
away **[11]** 38/2 55/1 55/13 56/7 101/1 110/5 118/7 130/9 156/12 162/16 182/14

## B

babysitters **[1]** 58/21
back **[123]** 3/15 4/24 6/1 6/22 7/4 9/24 14/18 26/23 27/23 29/15 30/12 30/17 33/23 36/19 44/25 47/3 48/6 50/11 53/10 54/19 58/24 62/1 64/7 65/7 68/8 75/14 76/24 80/20 83/1 84/15 89/24 91/6 93/10 94/19 96/6 97/10 99/14 100/7 102/20 103/22 107/13 108/7 110/3 110/8 110/9 112/23 115/10 115/21 116/2 116/12 118/13 119/8 119/9 119/10 119/25 120/6 122/1 122/6 122/20 123/21 123/22 123/23 131/15 131/21 132/19 133/12 133/19 136/10 137/9 140/16 141/18 141/19 142/18 147/21 150/15 151/19 154/5 159/20 160/8 167/4 169/10 171/11 172/6 174/8 182/24 188/25 193/7 193/9 193/13 198/2 201/2 202/6 202/19 204/9 205/11 205/19 207/2 207/7 207/16 208/13 208/16 208/21 209/9 209/14 209/15 211/5 211/10 212/17 216/21 217/15 218/1 218/18 218/21 219/14 219/18 219/18 220/18 220/25 223/18 227/16 233/2 239/14 239/21
background **[1]** 44/16
backup **[1]** 156/11
bad **[5]** 51/20 51/23 52/13 87/11 158/17
badge **[1]** 178/10
badges **[1]** 221/14
ball **[2]** 211/18 218/6
bank **[3]** 49/23 87/6 87/6
banking **[2]** 25/8 59/9
bankruptcy **[3]** 2/7 200/3 200/21
Barno **[1]** 20/10
barring **[1]** 231/13
base **[3]** 94/6 163/25 174/1
based **[49]** 12/8 12/14 14/4 16/7 21/20 28/9 33/18 34/5 35/13 36/14 39/3 39/3 39/5 41/11 41/18 41/25 42/8 44/20 52/7 52/17 53/18 57/24 61/13 68/24 69/6 70/1 71/5 71/10 72/9 83/16 86/13 89/4 92/6 93/4 117/24 130/19 132/9 140/4 141/21 143/15 150/7 159/23 174/1 176/8 177/5 178/9 192/23 197/17 217/8
basically **[3]** 68/20 73/12 214/11
basis **[9]** 52/13 131/2 141/6 142/9 162/12 231/23 231/25 235/9 235/14
bathroom **[2]** 219/1 219/17
Batson **[2]** 218/9 218/10
be **[327]**
bearing **[46]** 30/2 40/1 40/20 48/18 54/10 60/7 82/9 86/3 87/15 87/25 88/8 90/20 94/9 98/6 99/25 102/3 102/5 102/15 102/23 103/4 104/9 105/2 106/10 107/7 108/20 109/4 111/12 114/21 115/7 140/8 143/4 149/11 151/10 166/5 166/22 168/17 171/14 173/11 180/17 181/1 181/15 181/22 198/23 199/19 200/14 205/4
beat **[3]** 44/13 117/17 164/18
because **[90]** 3/12 5/14 6/22 11/17 13/13 14/19 18/7 24/16 32/14 32/20 36/2 36/5 38/23 49/10 50/6 51/16 53/19 54/6 61/6 65/12 66/19 69/8 71/15 76/6 79/2 79/16 80/6 81/19 85/13 87/13 96/14 96/16 100/13 108/2 108/4 117/11 117/13 122/1 123/4 132/6 136/17 141/2 145/1 154/2 154/24 155/12 155/17 158/20 162/20 163/18 168/20 169/2

**B**

because... [38]  169/3 172/14 178/17 182/4 183/14 185/6 185/12 185/12 189/5 191/19 192/5 192/9 192/14 192/16 193/8 203/17 207/21 208/4 208/13 210/7 210/12 210/20 212/23 217/24 218/5 218/14 218/21 219/15 221/21 224/1 224/5 225/3 228/18 229/10 231/6 231/8 237/21 237/23
Beckett [1]  20/3
become [1]  210/5
becoming [1]  101/17
bed [1]  239/2
been [116]  4/21 8/20 11/13 12/3 12/14 12/20 13/1 14/14 15/19 20/24 23/16 23/23 23/24 24/2 24/7 29/22 30/6 30/9 33/24 35/19 40/5 40/8 43/12 47/15 48/13 53/22 59/24 60/12 62/24 64/15 64/22 70/7 73/2 74/13 75/18 76/6 82/13 87/2 87/18 90/15 95/11 95/19 95/25 97/15 101/17 102/11 102/19 103/1 103/3 104/15 107/5 107/24 108/1 108/24 109/7 111/7 112/11 117/14 134/11 134/23 136/1 138/17 138/19 139/13 139/17 142/3 142/4 142/4 152/8 152/9 156/16 161/3 166/8 171/5 180/21 181/5 181/19 184/14 184/16 187/1 187/21 189/20 189/21 190/10 190/22 191/2 192/2 192/15 194/23 195/25 199/9 199/12 199/13 199/16 201/10 202/4 202/6 204/25 213/3 213/5 213/7 213/25 214/13 214/14 214/25 220/21 222/10 227/5 232/13 234/15 234/16 235/1 237/11 238/11 238/20 238/21
before [67]  1/9 3/16 5/19 7/1 8/7 9/17 10/6 10/13 10/18 10/23 13/1 14/23 30/6 40/5 42/6 47/15 48/13 53/9 58/8 61/4 63/21 64/22 75/18 80/2 82/13 90/15 97/15 97/22 102/12 108/6 111/7 123/3 123/5 134/11 135/1 136/1 137/10 139/14 140/19 146/10 155/14 163/8 167/24 169/16 184/14 186/20 187/21 189/21 199/13 202/4 205/22 209/19 218/24 220/22 223/1 226/8 227/6 227/25 228/16 229/12 235/12 236/17 236/21 237/5 238/21 239/5 239/19
beforehand [1]  107/23
begin [2]  28/12 204/1
beginning [5]  7/13 79/11 81/4 131/15 232/3
behalf [5]  87/24 139/1 139/2 139/7 223/15
Behavior [1]  191/17
behind [1]  211/18
being [37]  14/16 22/8 27/17 55/1 56/14 71/16 71/17 73/11 86/4 86/15 91/1 92/4 92/10 92/12 110/6 115/18 115/19 141/25 156/7 160/19 160/24 161/1 164/25 167/15 172/12 189/25 192/3 192/4 192/17 192/20 193/19 211/17 214/5 214/23 218/16 221/4 223/5
beliefs [1]  69/9
believability [2]  39/4 39/4
believe [34]  11/15 12/7 21/5 24/14 26/8 35/1 35/3 35/12 35/12 38/22 38/25 41/13 42/1 43/16 44/9 44/19 44/21 53/14 69/1 73/14 74/20 86/7 86/20 89/4 89/15 123/18 160/2 163/11 163/24 185/7 185/11 195/2 198/17 239/11
bell [1]  234/23
bench [51]  9/4 14/25 34/10 36/18 36/23 37/8 51/3 53/12 55/10 55/19 60/17 61/25 69/13 75/11 92/19 93/9 93/12 93/17 107/17 108/8

113/2 113/17 120/10 120/15 120/18 123/20 131/24 132/18 133/13 134/4 140/21 142/20 146/7 147/20 154/14 154/23 164/7 165/20 168/25 170/21 174/22 179/9 184/25 188/10 189/13 190/14 193/11 205/13 209/13 216/24 219/11
beneficial [2]  51/7 71/23
benefit [1]  159/18
best [18]  3/21 29/25 30/12 33/20 35/15 35/15 39/7 61/15 79/12 92/22 93/2 211/21 218/8 223/23 224/4 224/7 224/20 226/12
Bets [1]  57/18
better [6]  39/9 77/22 146/10 161/4 165/10 211/6
betting [1]  49/1
BetUSA [1]  49/1
between [7]  38/12 46/16 96/20 96/21 96/22 210/10 211/9
beware [1]  109/21
beyond [7]  20/19 21/10 79/9 90/7 160/24 160/25 192/12
Bezos [5]  175/7 175/19 175/23 176/2 176/4
bias [3]  16/4 72/6 189/2
biased [4]  8/2 71/14 72/11 117/12
Bice [1]  20/2
big [4]  103/12 132/6 149/8 190/7
Binance [1]  103/10
birthday [4]  203/25 204/2 204/4 204/9
Bisbee [2]  9/25 20/4
Bishop [1]  20/3
bit [24]  31/11 32/6 33/10 34/17 35/5 44/10 72/19 87/20 92/9 92/24 96/11 101/4 115/12 138/21 158/14 182/17 191/13 209/17 211/7 212/18 221/15 224/14 226/5 237/14
Bitcoin [19]  13/4 18/25 22/23 43/6 49/2 49/3 49/8 49/21 73/8 80/7 80/12 83/6 84/1 97/22 103/7 131/9 131/16 144/16 196/25
Bitfinex [1]  18/21
blade [1]  4/9
blanking [1]  122/15
block [1]  225/20
blockchain [3]  19/4 69/4 213/10
blocked [1]  211/16
blood [1]  84/25
board [1]  115/25
boat [1]  145/3
bodies [1]  95/22
bone [1]  29/1
book [4]  10/17 70/14 228/17 229/14
booked [1]  172/14
borderline [1]  49/17
born [3]  78/20 102/12 184/11
boss [6]  41/21 111/17 111/21 112/5 112/17 115/16
boss' [1]  112/2
bosses [1]  211/24
both [30]  5/17 7/12 8/13 30/21 33/24 35/21 45/12 45/13 45/14 55/3 56/18 59/8 66/4 77/20 106/19 119/1 131/3 134/17 134/18 139/17 139/22 141/11 156/12 160/14 168/18 185/19 188/22 203/15 226/2 229/24
bottom [8]  147/13 206/15 208/2 208/3 208/5 208/24 218/5 226/14
bought [7]  42/25 43/1 49/20 57/15 71/19 79/22 79/25
bound [1]  16/13
Bowser's [1]  175/3
box [3]  17/18 26/12 217/6
boyfriend [2]  93/25 144/7
brace [1]  29/10
bracket [2]  141/17 142/17
Brady [1]  13/14
break [23]  7/5 29/18 46/16 46/17

46/18 46/18 46/18 66/16 66/16 101/3 107/18 107/21 108/6 109/23 109/24 110/8 110/9 218/25 219/1 219/14 219/17 236/1 238/4
breaks [1]  46/9
Brechbill [1]  20/13
brief [4]  7/18 9/11 10/5 17/19
briefing [1]  9/12
briefs [1]  64/1
bring [14]  14/23 26/11 122/1 122/6 122/20 188/25 207/1 207/7 207/16 208/16 208/21 209/9 215/15 233/18
bringing [1]  179/6
brings [1]  214/16
broad [1]  214/11
Broadly [1]  143/19
BRODIE [1]  1/15
broke [2]  56/10 78/22
broker [1]  79/22
brokers [2]  79/19 215/1
Brooklyn [1]  2/4
brother [4]  85/25 86/25 143/14 143/22
brother's [1]  87/24
brought [5]  70/7 87/23 137/19 214/9 215/12
BROWN [6]  1/15 3/7 15/11 19/6 19/10 234/7
browser [2]  22/14 131/23
Bryon [1]  20/3
bucks [1]  103/10
build [2]  68/13 173/23
building [5]  82/23 82/23 82/24 114/16 194/10
bulk [3]  10/2 10/25 11/1
bunch [4]  43/5 57/18 67/19 237/13
burden [10]  20/18 20/21 20/22 58/19 145/18 146/12 146/19 207/4 211/8 211/11
burdensome [1]  13/21
bureau [2]  114/20 149/21
bus [1]  56/18
busiest [2]  30/24 96/16
business [11]  16/18 31/6 114/20 130/9 161/21 176/14 206/13 211/15 212/8 214/25 215/4
button [5]  34/9 51/4 146/22 169/21 174/24
buttons [1]  37/12
buy [6]  43/3 69/19 71/21 79/23 80/10 133/4
buying [3]  57/17 98/25 131/16

**C**

Cabanas [6]  9/20 20/5 124/7 232/12 234/17 235/2
calendar [1]  204/1
California [1]  187/10
call [15]  46/10 116/1 141/17 141/19 153/10 153/13 155/4 155/6 155/13 155/19 219/22 221/8 221/9 221/10 225/10
called [16]  15/19 22/18 40/17 70/15 70/17 119/5 119/7 138/24 139/9 146/1 153/18 184/16 196/22 202/6 202/12 219/23
Calling [1]  15/5
calls [1]  228/7
came [3]  118/25 171/10 238/24
can [207]  3/15 3/18 3/19 3/24 4/19 5/1 8/4 8/5 9/24 10/2 13/22 15/22 15/23 18/2 19/21 26/17 26/18 27/16 27/19 28/11 30/17 31/22 33/24 34/17 36/19 37/2 37/3 44/25 47/3 48/6 50/11 51/7 51/9 51/12 51/23 51/24 52/9 52/12 54/19 56/24 58/24 60/18 62/1 64/7 65/7 67/1 68/14 73/13 73/16 75/14 76/24 78/8 78/18 79/13 80/20 81/18 83/1 83/25 84/15 85/15 89/15 89/15 89/24 92/17 92/20

**C**

can... [142] 92/21 92/25 93/10 93/11 94/19 96/25 97/10 99/13 100/7 101/9 103/22 107/13 107/20 108/3 110/2 110/22 110/23 112/23 113/4 113/13 116/12 117/13 118/13 120/8 121/22 123/18 124/1 124/1 124/13 131/25 131/25 133/12 133/14 133/24 134/2 136/10 136/15 136/25 137/17 140/16 140/20 141/19 143/12 145/23 146/9 146/16 147/10 147/21 150/15 151/19 153/4 155/16 155/18 155/18 155/22 156/9 156/24 157/23 160/8 161/5 164/10 164/11 167/4 169/17 169/17 169/18 169/20 170/12 171/20 172/1 172/4 172/5 172/13 174/8 174/23 174/24 174/25 178/24 182/24 185/1 188/9 188/11 193/13 193/24 198/2 201/2 202/19 205/11 205/12 206/1 206/19 209/14 209/25 210/2 211/12 212/16 215/15 216/10 216/21 217/18 217/20 218/10 218/21 218/25 219/2 220/10 222/2 222/8 222/14 222/16 222/17 222/18 223/11 224/16 225/23 226/2 226/10 226/11 226/12 226/21 227/9 227/15 227/21 228/7 228/11 229/13 231/14 231/20 231/21 233/5 233/17 233/25 234/3 234/18 235/11 235/12 235/25 236/5 236/9 237/10 238/16 239/4

can't [18] 5/11 12/21 18/6 33/24 35/16 35/17 55/13 58/4 79/14 79/14 100/15 116/19 145/12 164/23 169/3 211/25 232/8 232/9

cancel [2] 172/13 172/18

candid [1] 157/16

candidate [1] 110/20

cannot [3] 27/8 217/9 220/24

capacity [3] 174/19 176/23 225/3

Capitol [4] 37/21 61/5 64/21 193/22

Captain [1] 12/9

car [3] 109/2 201/14 225/9

card [3] 17/2 17/7 17/11

Cardano [1] 131/10

cards [1] 26/12

care [10] 5/7 29/17 31/15 66/2 66/6 79/4 147/4 156/9 156/10 183/17

careful [2] 14/16 37/11

caregiver [1] 57/3

caregivers [1] 49/19

cares [1] 49/18

caretaker [1] 66/8

carry [2] 101/20 211/16

case [225] 3/2 5/4 5/9 6/4 6/7 6/14 6/15 7/14 10/11 14/1 15/5 15/19 15/20 16/4 16/5 16/15 18/14 18/20 18/25 19/12 20/25 21/1 21/20 21/22 22/2 22/6 22/10 23/14 23/22 23/24 23/25 24/14 26/2 26/10 26/25 27/7 27/9 27/12 27/15 27/16 27/17 27/18 27/20 27/25 28/1 28/3 28/5 28/21 33/17 34/4 35/8 35/9 35/14 39/5 40/8 40/9 40/10 40/11 40/14 40/20 41/11 41/12 41/25 42/8 44/5 44/17 44/20 45/5 48/17 48/19 51/20 51/25 52/6 52/14 52/15 52/17 53/18 53/18 53/20 54/10 57/23 57/24 61/10 61/12 62/21 66/25 68/24 69/6 70/12 71/5 72/6 72/8 74/23 75/6 75/8 76/2 76/8 76/10 77/10 79/11 79/12 82/10 82/17 83/16 85/2 86/15 87/16 87/19 87/25 88/16 88/25 90/17 92/1 92/6 92/10 92/12 92/13 93/1 97/19 99/25 102/23 103/4 106/14 107/7 108/21 109/4 109/14 110/4 110/4 111/8 111/11 112/7 114/22 114/25 115/7 117/17 117/19 117/24 118/5 120/1 120/3 122/4 123/25 132/9 138/17 138/18 138/20 139/3 140/4 140/9 142/11 143/4 143/24 145/14 149/11 150/7 151/10 152/14 152/15 152/17 157/2 157/11 158/16 159/23 163/25 165/11 166/5 166/12 166/23 168/12 168/20 169/3 170/16 171/14 173/11 173/24 177/3 179/12 181/1 181/16 181/19 181/20 181/22 185/22 187/5 187/24 188/17 189/23 190/10 190/15 196/8 197/15 197/17 199/3 199/9 200/15 201/25 205/4 213/6 220/22 221/17 221/22 222/7 222/8 222/12 222/15 222/17 222/19 222/20 222/21 222/22 222/25 223/9 223/9 224/9 224/19 225/5 228/18 231/16 231/20 232/1 232/23 233/8 233/10 234/6

cases [29] 23/20 33/9 59/22 70/7 70/9 76/3 88/21 134/16 134/17 134/20 139/18 145/11 145/13 192/1 211/10 213/1 213/3 214/1 214/3 214/12 214/15 214/16 215/17 215/18 215/19 215/20 215/25 224/16 239/2

cashed [1] 103/11

catch [18] 26/4 30/21 50/17 65/12 65/13 78/13 94/23 100/12 114/9 118/20 119/9 156/2 174/14 186/12 194/20 202/23 203/15 203/19

catch-all [13] 26/4 30/21 50/17 65/12 94/23 100/12 114/9 174/14 186/12 194/20 202/23 203/15 203/19

catchall [4] 160/14 161/18 172/10 174/17

categorize [1] 68/14

CATHERINE [2] 1/13 19/7

cause [20] 36/25 37/4 37/5 37/7 58/18 93/13 93/16 108/4 121/14 122/14 122/18 141/5 141/7 141/22 169/2 169/9 169/11 170/18 193/6 193/10

causing [1] 161/3

caution [2] 11/11 239/13

Ccips [1] 1/19

CDF [1] 4/6

cell [1] 225/19

Center [1] 153/19

CEO [3] 231/2 231/12 232/9

certain [4] 157/15 169/15 196/1 233/15

certainly [10] 8/21 26/19 33/14 35/7 63/6 142/10 222/12 231/13 232/21 239/3

certificate [1] 179/2

certificates [1] 9/21

certifications [1] 9/21

certify [1] 240/3

cetera [1] 87/9

CFBP [1] 166/18

CFPB [1] 166/4

Chainalysis [7] 19/3 70/18 70/20 70/24 71/1 111/16 111/19

chair [1] 43/25

challenging [1] 113/25

chance [5] 3/25 14/6 78/23 221/24 237/23

change [7] 17/16 37/13 100/15 153/25 177/11 226/11 229/20

changes [1] 165/6

channel [1] 37/13

character [1] 192/21

charge [7] 88/22 95/2 106/3 111/9 190/17 212/24 225/22

charged [22] 16/16 16/19 16/25 24/8 53/23 60/12 60/25 92/11 92/12 92/13 95/11 102/11 102/13 104/16 108/24 109/1 156/16 187/1 190/19 190/23 192/13 192/15

charges [8] 16/23 21/2 21/3 21/5 21/9 40/16 92/2 192/15

Charles [1] 33/4

charts [2] 11/7 12/14

check [4] 188/16 201/18 201/21 228/2

checking [1] 87/12

checks [3] 87/10 87/10 87/11

chief [6] 112/6 113/23 115/15 115/16 137/1 206/9

child [1] 56/11

childcare [2] 58/16 156/4

childhood [1] 161/2

children [4] 56/2 182/1 183/6 183/13

choice [1] 85/8

choose [1] 17/24

chosen [5] 24/12 28/8 159/22 220/21 222/14

Chris [1] 3/7

Christine [1] 15/11

CHRISTOPHER [3] 1/15 15/10 19/6

CipherTrace [2] 19/3 111/16

circle [1] 172/24

circumstances [5] 93/1 120/23 122/2 122/21 194/7

citizen [1] 22/3

city [7] 59/8 59/25 60/1 60/3 81/10 101/16 186/17

civic [1] 146/12

civil [14] 23/22 23/24 40/9 40/11 40/17 48/17 134/17 138/17 139/17 215/12 215/13 215/13 215/15 215/19

claims [1] 63/21

clarify [2] 75/5 139/5

class [2] 55/13 99/11

classes [1] 55/5

clean [1] 4/12

clear [12] 7/11 72/18 120/2 140/22 141/1 158/23 172/1 223/3 223/5 231/10 236/12 237/16

clearly [1] 18/9

clerk [15] 7/4 15/1 15/22 17/17 26/11 26/22 86/1 86/25 121/9 188/18 205/22 218/6 219/21 221/13 225/1

clerks [1] 20/16

Cleveland [1] 56/8

client [3] 18/3 46/10 227/24

clients [8] 45/7 46/4 49/19 63/25 133/2 173/19 208/12 214/4

climate [1] 177/11

close [49] 4/13 18/2 23/15 24/2 24/4 24/7 24/19 25/5 25/25 39/14 50/20 53/22 56/11 59/4 60/11 63/18 84/20 85/19 86/22 87/2 93/22 95/10 95/19 95/25 99/20 101/11 102/19 104/15 106/17 108/13 121/10 138/7 138/13 140/24 142/23 143/1 148/20 149/6 150/20 157/25 165/25 166/8 166/15 172/20 175/1 189/19 196/11 199/13 204/25

closed [1] 223/7

closely [3] 14/19 173/18 176/10

closer [1] 117/7

CNBC [1] 70/11

co [1] 57/3

co-caregiver [1] 57/3

code [4] 133/8 133/9 173/20 173/22

coin [4] 23/1 41/2 196/18 214/23

Coinbase [4] 43/13 49/22 49/24 79/19

coincidence [1] 22/15

CoinDesk [4] 18/18 70/10 70/24 139/23

Cointelegraph [1] 18/18

colleague [1] 27/16

colleagues [1] 222/13

collect [2] 23/19 26/12

college [2] 53/6 156/17

colloquy [1] 123/8

**C**

Colorado [1]  138/23
COLUMBIA [4]  1/1 16/21 18/11
24/24
come [36]  3/15 4/23 4/24 9/24
26/18 26/23 27/23 28/6 53/5 66/25
70/1 70/3 72/6 73/2 81/20 89/7
108/7 112/7 116/2 118/24 120/5
131/21 153/10 159/20 190/2 209/14
211/5 212/17 219/7 219/18 219/23
220/25 223/9 223/24 225/19 235/10
comes [4]  68/17 86/10 164/14
233/24
comfortable [4]  29/11 32/22 44/17
85/11
coming [16]  37/25 65/24 66/6 78/5
153/15 153/20 154/4 155/14 175/8
177/8 179/17 190/1 191/19 191/20
230/3 232/18
comment [1]  169/5
comments [1]  18/4
commerce [1]  69/19
commercial [1]  23/11
commission [6]  25/10 25/11 131/2
136/24 140/8 176/12
commit [3]  16/17 72/3 92/3
commitment [1]  223/16
committed [1]  54/1
committee [3]  37/23 41/8 148/24
Commodity [1]  25/11
common [1]  73/10
commonwealth [1]  24/25
communicating [1]  27/11
communications [6]  94/14 149/1
149/20 175/14 176/20 184/13
communities [1]  41/23
commuting [1]  60/20
Comolli [1]  20/2
companies [3]  19/3 19/4 133/2
company [13]  30/24 67/25 68/8
68/10 68/12 70/17 70/23 81/16
87/23 145/4 173/16 232/4 232/10
compare [1]  189/10
competent [2]  236/6 236/7
complete [1]  10/4
completely [5]  42/13 79/3 85/6
85/9 146/11
complicated [1]  228/19
complication [1]  31/8
compromised [2]  232/22 233/8
Comptroller [1]  25/12
computer [13]  22/11 62/12 173/14
173/20 173/25 173/25 175/12
175/13 188/24 197/7 206/11 208/1
208/11
computer-related [2]  175/12
175/13
conceived [1]  112/8
concern [8]  29/16 32/19 78/23
162/14 162/19 188/24 235/21
237/21
concerned [4]  8/7 85/12 210/3
234/24
concerning [2]  44/3 216/15
concerns [4]  8/9 13/12 13/14
123/14
conclude [2]  7/21 25/24
concluded [1]  239/23
concrete [1]  234/1
condition [1]  88/24
condominium [2]  68/1 68/3
conduct [4]  27/6 27/8 158/22
222/19
confer [3]  6/20 123/5 238/14
conference [49]  34/10 36/18 36/23
37/8 51/3 53/12 55/10 55/19 60/17
61/25 69/13 75/11 92/19 93/9
93/12 93/17 107/17 108/8 113/2
113/17 120/10 120/15 120/18
123/20 131/24 132/18 133/13 134/4
140/21 142/20 146/7 147/20 154/14

154/23 164/7 165/20 168/25 170/21
174/22 179/9 184/25 188/10 189/13
190/14 193/11 205/13 209/13
216/24 219/11
confident [1]  159/22
confidentially [1]  27/6
confirm [1]  226/2
conflict [8]  122/25 122/25 123/10
123/11 123/14 186/16 219/9 226/4
conflict-free [2]  122/25 123/11
conflicted [1]  50/24
confusion [2]  234/12 234/22
congress [5]  37/22 41/7 148/23
156/24 157/1
congressman [2]  38/3 38/8
connected [1]  27/12
connection [3]  19/10 19/13 19/19
conscience [1]  165/11
consent [1]  147/12
conservative [2]  108/2 230/21
consider [3]  17/1 102/6 134/2
consideration [2]  133/23 213/19
considered [1]  27/17
considering [1]  21/12
consistent [2]  79/13 224/8
conspiracy [3]  16/16 92/2 232/14
constitutes [1]  240/4
Constitution [1]  2/8
Constitutional [1]  111/5
constricting [1]  195/14
construct [1]  91/19
consultant [1]  114/13
consulted [1]  114/19
consume [1]  68/19
consumed [1]  71/19
consumer [2]  149/16 149/23
contact [10]  4/25 25/20 32/2
38/14 77/3 84/20 162/5 176/18
225/6 225/8
contains [2]  21/8 238/5
context [3]  92/15 228/9 235/8
contexts [1]  74/9
contingent [2]  178/3 178/6
continuance [4]  13/22 13/25 14/4
237/10
continue [2]  121/12 207/17
CONTINUED [2]  1/23 2/1
continuing [2]  37/24 211/19
contractor [8]  62/8 62/20 67/25
90/6 90/11 145/4 167/12 168/8
contractors [1]  91/1
contracts [1]  68/9
control [2]  14/2 79/7
controlled [1]  23/8
convene [1]  226/1
convenience [1]  234/2
conversation [7]  8/22 124/1
124/13 228/9 228/11 235/17 236/17
conversations [1]  120/2
convict [2]  92/25 93/2
convicted [5]  102/13 190/3 190/4
190/5 191/2
conviction [3]  191/8 227/11
227/19
convinced [1]  14/3
convinces [1]  21/10
COO [1]  113/22
cooperating [3]  22/1 88/15 239/7
cooperation [2]  21/24 88/14
cooperator [5]  11/5 11/10 11/18
238/3 239/7
cooperator's [2]  239/12 239/14
cop [1]  164/18
copious [2]  175/3 175/8
cops [1]  44/13
core [2]  159/20 180/1
corner [1]  17/6
corporate [3]  93/24 173/6 173/7
Corporation [1]  25/12
correct [24]  47/7 62/14 64/11
64/12 84/22 91/25 101/14 139/12
157/21 168/4 175/17 175/24 176/7

176/25 177/1 178/10 178/18 178/19
188/11 191/7 203/6 209/6 231/9
240/4
correctly [1]  90/25
corrupt [3]  164/13 164/23 165/1
could [82]  8/8 8/8 11/1 29/12
29/18 31/5 31/23 32/16 35/11
35/18 39/6 44/18 46/6 52/6 52/17
53/16 56/11 58/16 65/22 65/23
69/7 71/7 71/11 72/19 79/4 81/13
81/21 83/16 86/18 89/18 92/15
96/12 96/21 97/1 100/19 100/20
107/18 112/25 114/10 116/21
116/24 117/6 117/21 117/23 120/25
121/4 122/17 132/24 141/14 146/5
148/2 150/6 150/8 153/25 157/1
157/12 159/23 165/11 173/22 177/4
178/7 179/13 182/16 183/12 185/21
190/13 192/18 194/24 195/9 203/23
207/2 209/22 210/6 211/4 211/7
212/2 220/19 227/12 227/19 229/5
229/8 233/7
couldn't [7]  52/13 57/12 70/22
71/2 121/6 210/12 215/23
counsel [23]  3/4 3/5 7/23 15/7
15/8 22/16 37/1 55/7 75/13 93/11
123/1 123/11 123/13 137/1 147/6
147/12 168/24 188/9 205/12 210/14
216/23 226/6 229/6
counsels [1]  28/4
count [4]  21/11 21/11 21/12 21/13
counties [1]  191/1
countries [1]  51/8
country [1]  161/19
counts [2]  21/9 180/15
county [2]  33/4 134/13
couple [16]  3/14 13/16 43/12
43/13 49/5 67/24 72/13 95/12
116/19 119/3 188/16 189/4 190/12
226/6 226/18 228/7
course [7]  16/13 42/24 107/22
204/13 226/11 228/1 228/15
court [52]  1/1 2/6 2/7 3/10 4/2
13/7 15/15 15/18 21/2 23/22 23/24
23/25 75/23 75/25 86/2 86/11
97/16 100/17 110/22 134/12 138/18
138/23 139/18 139/18 140/4 141/11
142/10 142/17 152/10 152/12
181/19 181/20 187/10 187/11 190/6
190/21 190/21 191/20 191/21
191/21 192/4 192/6 202/13 227/2
227/22 227/23 230/20 234/11 235/2
236/12 240/3 240/13
Court's [2]  103/20 123/12
courthouse [2]  26/17 26/20
Courtney [1]  19/17
courtroom [27]  15/20 16/7 19/22
20/15 26/21 26/23 28/10 33/19
68/25 71/6 85/5 89/5 92/7 123/21
123/22 124/5 132/10 164/4 174/2
177/6 221/16 221/17 222/23 223/18
224/24 239/22 239/22
courts [4]  2/7 190/22 190/24
223/15
cousin [2]  180/14 180/15
cousins [2]  39/23 95/13
cover [2]  58/21 99/12
coverage [1]  90/7
covered [3]  74/14 87/21 138/14
covering [2]  55/14 179/23
COVID [7]  25/21 32/3 38/15 77/4
84/21 85/2 162/6
COVID-19 [1]  25/21
crash [1]  87/22
craze [1]  103/10
crazy [1]  177/13
create [2]  6/22 27/3
created [2]  81/16 87/10
creating [1]  7/7
credentialed [1]  101/21
credibility [6]  44/7 53/17 164/1
177/5 177/5 233/12

**C**

**credible [2]**  24/16 117/15
**credit [3]**  42/15 149/20 149/24
**creditor [1]**  232/13
**crim [2]**  170/8 170/8
**crime [36]**  20/25 21/17 24/2 24/8 29/23 54/2 61/1 87/3 88/22 95/11 95/20 97/18 102/19 104/16 108/25 109/7 109/7 109/10 109/10 111/10 156/16 165/3 165/3 166/9 171/6 181/5 181/10 187/2 190/3 190/17 191/2 199/14 199/15 201/11 205/1 205/2
**crimes [13]**  17/1 21/18 25/9 42/5 44/12 72/3 104/20 104/21 104/22 104/24 106/1 143/21 144/8
**criminal [38]**  1/3 3/2 15/5 15/20 16/15 21/24 23/20 23/22 23/24 24/10 25/1 27/17 33/7 39/19 40/16 45/20 49/17 51/12 70/7 83/13 83/21 83/25 88/13 134/16 138/17 138/20 139/2 139/18 158/6 158/8 158/22 159/19 168/21 170/6 178/1 190/16 215/20 222/14
**criminals [1]**  143/20
**critical [1]**  178/13
**critically [1]**  222/24
**CRM [1]**  1/19
**Crocodile [1]**  18/23
**cross [1]**  224/3
**cross-examine [1]**  224/3
**crypto [10]**  70/22 72/13 72/19 72/22 98/11 111/18 168/21 192/18 198/12 198/13
**cryptocurrencies [5]**  41/6 41/9 69/3 97/25 98/25
**cryptocurrency [97]**  18/17 18/18 18/21 18/21 22/20 22/23 22/24 23/4 41/2 41/3 41/11 43/1 43/3 48/23 49/9 50/23 51/8 51/18 51/20 51/23 52/1 52/6 52/23 57/13 57/20 57/22 57/23 60/5 67/17 67/23 68/17 68/21 68/24 69/4 69/16 71/4 71/7 71/14 74/24 75/2 75/7 79/21 80/5 80/7 80/10 83/11 97/22 103/8 115/3 131/6 137/15 137/20 139/21 139/24 140/2 141/12 141/15 142/14 143/7 144/19 144/22 145/24 146/1 149/3 150/3 150/11 156/19 156/22 157/6 157/22 158/7 158/21 160/1 168/6 196/4 196/24 198/10 198/15 199/1 212/20 212/22 213/5 213/11 213/20 213/21 213/25 214/3 214/8 214/13 214/17 214/19 214/23 215/3 216/4 216/7 216/9 216/16
**CTF [1]**  4/21
**curious [1]**  131/20
**currency [4]**  25/13 69/21 71/16 80/12
**current [1]**  197/9
**currently [12]**  5/3 21/14 27/24 55/4 86/1 95/1 144/8 149/17 168/16 175/6 175/19 196/15
**cushion [1]**  205/16
**customer [2]**  197/13 211/14
**customers [2]**  197/14 212/5
**cut [2]**  3/23 145/16
**cutter [1]**  4/8
**cybercrime [1]**  164/20
**cybersecurity [2]**  111/18 112/12

**D**

**dad [4]**  93/24 102/20 119/2 119/13
**damage [1]**  85/1
**dangerous [1]**  73/1
**dark [7]**  70/15 71/20 83/14 83/20 83/21 198/10 199/2
**darknet [7]**  22/18 22/21 51/13 83/11 131/18 132/10 157/6
**data [13]**  12/20 13/21 159/2 159/2 232/1 232/22 233/8 236/13 236/15

237/11 237/12 237/15 237/19
**database [6]**  11/10 11/16 12/23 237/12 238/2 238/6
**date [4]**  11/14 79/5 190/6 192/4
**Dated [1]**  240/10
**dates [3]**  191/20 191/21 203/22
**dating [1]**  31/9
**Daubert [9]**  8/25 9/13 226/8 226/9 226/12 234/11 234/17 235/1 235/8
**daughter [1]**  186/14
**daughters [2]**  56/18 56/19
**Daun [1]**  20/12
**day [44]**  4/16 13/24 28/20 29/1 31/5 45/8 45/8 46/13 46/21 56/6 56/22 70/11 81/25 100/24 101/4 113/24 113/24 113/24 114/10 114/10 115/12 115/12 115/16 115/22 121/22 148/5 148/9 153/23 193/23 193/24 195/7 195/7 208/12 221/5 221/19 224/10 224/13 224/14 227/16 236/24 236/25 237/10 237/19 240/10
**daycare [1]**  56/4
**days [16]**  13/16 31/12 31/12 31/24 90/8 91/2 96/16 96/17 96/24 115/20 145/8 148/11 160/18 195/8 210/20 224/17
**DC [39]**  1/5 1/14 1/17 1/21 2/9 9/9 25/7 30/9 40/11 47/11 62/24 64/15 75/25 82/8 100/17 101/2 104/7 104/8 111/8 134/12 134/14 135/24 139/18 150/23 152/6 167/24 168/13 176/25 180/15 181/6 181/12 182/10 184/10 185/16 185/17 191/17 193/18 202/2 229/14
**DC's [1]**  176/13
**de [4]**  9/25 19/9 19/10 20/12
**deadline [1]**  194/22
**deal [10]**  41/22 45/7 67/16 92/2 100/19 100/20 154/2 187/17 211/12 221/24
**dealers [1]**  215/1
**dealing [5]**  10/14 215/3 221/22 222/18 228/18
**deals [1]**  106/4
**death [1]**  156/12
**debated [1]**  157/13
**decentralization [1]**  159/17
**decide [32]**  6/21 7/6 10/20 21/20 32/8 33/17 34/4 35/12 41/11 41/25 44/19 52/6 52/14 52/17 57/23 61/12 68/24 69/6 69/19 71/5 72/8 72/23 74/23 76/10 83/16 86/15 92/6 140/3 150/6 158/17 159/23 163/24
**decided [2]**  153/10 201/15
**deciding [1]**  42/8
**decision [7]**  10/13 26/1 28/9 70/4 163/25 174/1 235/20
**deck [1]**  38/11
**decriminalized [1]**  198/22
**deep [4]**  22/18 22/21 83/11 131/18
**deeper [1]**  141/23
**deeply [1]**  223/15
**default [1]**  146/25
**defendant [20]**  1/7 2/2 3/10 11/24 15/14 16/15 16/23 19/12 19/16 21/2 21/4 21/4 21/5 21/15 22/3 33/25 51/25 152/9 178/1 179/3
**defendant's [1]**  11/22
**defendants [1]**  24/10
**defender [4]**  25/1 33/4 34/21 219/7
**defenders [1]**  36/8
**defending [1]**  189/7
**defense [50]**  7/9 8/24 9/14 9/15 9/19 10/12 10/24 11/8 11/14 11/25 12/4 13/22 22/16 24/10 25/2 39/17 39/23 39/25 40/1 42/16 82/4 123/6 141/4 141/13 143/12 147/16 173/7 185/19 187/11 188/14 192/10 205/18 216/14 217/12 217/14

217/15 217/25 226/6 227/14 228/20 231/1 231/3 231/14 232/17 233/15 233/16 234/25 235/5 235/17 238/9
**defense's [1]**  169/1
**deferment [1]**  118/25
**definitely [2]**  52/19 224/12
**degree [1]**  63/22
**delay [2]**  210/5 224/4
**deliberate [3]**  26/1 223/25 223/25
**deliberates [1]**  79/8
**deliberating [3]**  5/4 204/12 221/18
**deliberations [3]**  57/6 79/16 204/1
**delivered [1]**  8/13
**Deloitte [1]**  114/16
**demands [1]**  108/3
**demeanor [2]**  39/6 86/14
**demonstratives [1]**  11/6
**denies [1]**  52/2
**deny [1]**  9/6
**department [22]**  1/13 19/7 24/25 25/7 25/8 49/16 63/22 85/21 85/25 111/22 116/2 164/20 168/3 168/16 168/17 169/4 169/16 176/13 183/15 191/17 213/5 214/5
**depending [3]**  31/11 32/8 186/15
**depends [3]**  31/12 56/22 182/9
**deposed [2]**  40/12 40/17
**Deposit [1]**  25/11
**deposited [1]**  201/16
**deprive [2]**  66/11 66/20
**Dept [1]**  1/20
**depth [1]**  144/22
**deputy [19]**  7/4 15/1 15/22 17/17 20/15 26/11 26/22 113/22 114/4 114/6 205/21 206/9 207/19 207/21 218/6 219/6 219/21 221/13 225/1
**describe [4]**  33/18 34/11 130/15 211/7
**described [2]**  14/10 14/13
**description [3]**  10/5 10/5 14/4
**deserve [2]**  33/25 117/23
**deserves [1]**  117/23
**desire [1]**  174/18
**desk [2]**  37/14 68/5
**detail [6]**  9/5 146/9 211/7 226/5 226/15 226/17
**details [2]**  101/24 196/2
**detained [7]**  24/7 53/22 60/12 61/5 180/22 187/2 189/20
**deteriorated [1]**  190/8
**develop [2]**  141/23 226/10
**developer [1]**  197/9
**development [4]**  90/12 110/20 158/2 197/10
**device [1]**  27/10
**devices [1]**  238/7
**Devon [1]**  20/3
**devoting [1]**  221/5
**diabetic [1]**  38/16
**dial [3]**  155/5 155/9 155/21
**Diana [1]**  20/3
**did [90]**  4/4 4/23 4/25 30/1 33/6 41/8 43/3 43/9 43/10 47/9 47/19 48/2 49/21 52/1 53/3 53/24 57/15 58/2 58/3 58/7 59/6 59/7 59/10 59/15 64/13 73/22 73/25 76/20 77/6 77/23 79/23 81/13 84/6 87/21 90/25 98/10 102/22 103/14 106/25 107/2 107/3 108/5 111/18 111/24 112/3 112/5 113/7 114/15 114/18 119/4 120/24 122/17 131/9 132/3 132/3 132/7 132/13 134/19 135/1 135/3 135/21 135/23 136/25 137/24 138/4 140/23 142/14 144/24 148/22 148/25 149/2 151/4 152/4 153/2 166/20 175/9 176/15 182/17 184/8 184/9 194/4 199/10 199/10 205/15 207/2 213/9 213/13 215/24 219/6 223/19
**didn't [18]**  4/7 9/8 42/13 47/7

**D**

didn't... [14]  47/18 50/7 62/5 78/13 98/10 98/17 103/11 118/24 119/6 122/1 132/4 146/8 152/19 239/2
die [1]  6/7
died [1]  87/22
Diego [1]  31/10
dies [1]  205/23
different [16]  35/8 35/9 44/11 44/12 61/11 69/3 77/6 131/7 145/1 158/15 170/9 189/9 191/1 195/25 214/21 224/25
differs [1]  44/15
difficult [15]  21/6 22/5 22/9 23/14 24/11 25/16 26/5 26/9 38/2 61/9 65/22 115/22 116/17 206/12 207/20
difficulty [9]  5/9 20/21 21/12 25/22 42/4 42/7 77/8 77/20 117/4
dig [1]  141/23
digest [1]  237/19
digital [9]  23/2 175/10 175/11 175/14 175/16 175/21 176/17 176/20 196/20
digitally [1]  176/19
diligence [1]  11/15
dinner [4]  142/3 142/4 142/5 212/7
dip [1]  146/14
dire [2]  7/9 16/3
direct [2]  26/18 59/23
directed [1]  171/11
direction [1]  51/11
directly [5]  149/4 173/21 176/1 212/23 212/25
director [5]  59/16 59/17 81/8 175/10 175/11
Disabilities [1]  49/16
disability [1]  63/21
disabled [1]  49/19
disagree [2]  91/21 169/5
disagreement [1]  6/12
DISB [4]  175/5 176/10 176/11 179/2
disbelieve [5]  24/15 38/22 53/14 86/7 89/4
discovery [15]  10/24 11/1 11/4 11/5 11/5 11/6 11/18 12/1 12/4 13/9 13/17 14/20 238/8 238/11 239/7
discrimination [1]  149/9
discuss [18]  3/16 3/16 10/20 17/23 18/1 27/2 27/5 27/18 27/20 66/13 110/3 113/13 113/14 120/1 222/6 222/8 222/11 229/12
discussed [3]  74/13 105/12 140/11
discussing [3]  121/9 228/12 228/14
discussion [8]  17/20 18/2 26/14 223/4 223/8 226/17 227/24 235/13
discussions [1]  53/5
disfavor [1]  144/2
dishonest [1]  35/10
dismiss [3]  186/4 211/1 220/22
dismissed [1]  10/19
disorders [1]  84/25
disposed [1]  157/22
dispositive [1]  72/2
dispute [2]  232/20 232/21
disrespectful [1]  43/24
disseminate [1]  176/18
distance [2]  117/1 117/3
distinguish [2]  159/9 211/9
distribution [1]  190/20
DISTRICT [13]  1/1 1/1 1/10 2/7 15/18 16/21 18/11 24/24 48/17 90/16 138/23 138/23 187/22
dive [1]  122/1
division [4]  137/2 170/6 173/17 215/9

divisions [1]  170/9
Divya [1]  19/9
do [343]
doable [1]  195/14
doctor [3]  6/5 101/1 154/2
doctor's [2]  100/14 119/3
doctored [1]  201/16
doctors [2]  49/17 49/18
documented [1]  232/14
documents [1]  235/22
does [41]  10/11 10/14 17/3 26/13 29/3 35/2 38/6 68/12 71/1 73/2 94/3 105/17 105/20 105/22 106/23 114/6 130/16 143/17 144/10 144/12 149/8 149/9 149/10 151/6 156/8 160/20 166/4 178/10 187/14 189/3 195/23 196/14 200/12 200/14 207/20 207/21 208/6 223/9 227/13 228/20 235/15
doesn't [18]  4/12 5/14 70/4 72/5 74/21 106/24 108/7 117/23 123/17 141/13 142/11 164/21 179/5 179/6 185/10 196/15 212/23 227/21
Dogecoin [8]  22/23 43/6 43/9 49/3 49/4 49/21 103/10 131/10
dogs [2]  31/16 31/17
doing [21]  10/14 11/15 31/10 31/21 45/12 52/2 63/15 66/7 113/6 130/15 131/2 151/24 152/1 153/19 168/2 169/6 171/2 201/8 218/12 224/18 228/14
DOJ [9]  1/16 1/19 123/24 167/12 169/15 169/23 170/4 215/20 215/24
DOJ-CRM [1]  1/19
DOJ-USAO [1]  1/16
don't [169]  6/15 6/22 8/10 9/2 10/12 11/15 12/5 12/25 13/12 14/2 14/9 17/11 17/13 26/19 26/19 27/2 27/2 28/12 29/16 30/22 32/22 35/5 35/12 36/1 37/4 37/13 37/16 41/16 43/5 43/13 43/16 45/25 46/2 49/1 49/4 50/1 50/2 51/1 51/5 51/17 54/12 55/16 58/19 63/8 63/22 69/7 69/14 69/17 72/25 73/23 77/11 79/7 79/10 79/20 80/8 83/14 84/11 85/13 88/10 90/6 91/1 91/18 92/8 92/25 93/1 98/19 98/22 110/3 110/5 110/19 118/2 120/1 120/1 121/18 124/3 130/8 133/4 133/15 133/18 134/21 136/18 136/22 138/3 138/5 140/10 141/6 141/13 141/18 141/21 142/1 142/3 142/9 142/13 145/1 154/20 154/25 155/15 155/15 158/9 158/25 159/7 163/6 164/3 164/12 165/7 166/21 168/23 169/5 169/12 170/10 171/16 176/24 177/18 178/2 178/20 178/23 180/14 183/17 185/6 185/12 186/19 188/19 191/7 191/11 191/22 192/20 193/8 195/2 195/7 196/2 196/5 196/5 198/7 198/25 199/4 200/4 202/1 203/18 203/22 206/18 208/6 209/23 210/11 211/1 212/6 212/6 216/5 216/11 216/20 218/10 218/22 223/3 223/10 224/6 228/23 229/16 232/16 232/19 233/11 233/15 235/23 235/25 236/8 237/11 237/17 237/21 237/23 239/10 239/11
don't see [1]  228/23
done [21]  3/14 6/13 10/10 17/5 43/12 51/12 62/17 71/22 79/7 81/22 92/4 108/17 116/3 121/25 138/5 159/12 168/5 189/11 217/13 217/17 222/5
door [7]  235/16 235/16 235/21 235/23 235/24 236/2 236/4
double [1]  156/6
doubt [4]  20/20 21/11 192/12 238/25
down [17]  17/10 17/12 17/13 29/15 29/17 44/1 55/2 55/3 75/21 78/21 80/2 147/11 147/18 169/21 170/12

202/12 204/7
downloaded [1]  132/4
downstairs [1]  155/12
Dr [1]  9/14
Dr. [2]  124/7 232/12
Dr. Cabanas [2]  124/7 232/12
draft [1]  229/19
drafting [1]  64/1
draw [1]  123/12
driven [3]  11/10 159/2 159/2
driver [1]  102/20
drives [1]  218/15
driving [2]  33/11 218/22
drop [1]  56/15
dropping [1]  56/14
Dror [1]  9/14
drove [2]  61/4 119/2
drowsy [1]  25/16
drug [13]  41/4 41/18 88/7 92/4 92/6 92/13 92/14 104/24 143/20 187/10 187/11 187/18 190/17
drug-related [1]  104/24
drugs [13]  23/7 41/15 71/21 74/17 74/24 75/7 88/5 91/13 92/11 104/22 190/16 198/20 198/21
drunk [1]  102/20
due [4]  11/15 186/16 186/16 194/22
DUI [1]  156/17
Duncan [1]  20/4
Dupont [1]  199/18
during [24]  7/5 16/9 19/25 25/17 31/7 32/6 38/11 57/6 103/9 193/24 194/25 206/12 208/12 210/15 212/7 212/8 217/9 217/10 226/20 228/6 231/13 234/11 234/16 235/1
Dutch [1]  18/22
duties [3]  31/1 31/10 146/13
duty [9]  90/7 100/17 101/18 111/5 156/6 169/7 184/16 202/7 202/12
dwindling [1]  194/23
dying [1]  205/21

**E**

each [10]  21/12 21/13 44/6 55/5 115/22 217/23 224/2 224/3 227/7 230/15
earlier [6]  57/7 72/1 75/1 145/4 194/4 198/12
earliest [1]  239/8
early [5]  5/15 28/24 32/11 56/4 228/7
earns [1]  122/3
Earth [2]  175/19 177/10
easier [2]  124/13 194/25
easily [1]  237/25
Edgar [1]  114/16
education [3]  22/12 173/14 197/8
effective [2]  33/16 73/14
efficiency [2]  5/8 5/22
efficient [1]  225/16
Eight [1]  56/20
either [10]  5/13 16/5 18/6 27/22 81/21 89/3 94/8 119/13 171/7 191/8
EKELAND [92]  2/2 2/3 3/9 3/24 12/16 15/13 19/16 19/16 19/19 19/19 30/15 36/15 37/1 42/10 47/1 47/17 49/12 58/1 63/1 64/5 65/5 67/4 72/16 73/25 76/17 80/18 82/19 83/19 89/8 90/24 93/6 94/15 97/8 98/9 100/2 103/14 103/17 105/6 107/11 112/16 116/8 118/11 121/13 122/12 123/2 133/20 135/8 136/6 137/5 140/12 141/10 145/20 150/9 151/17 154/10 154/19 157/20 158/11 160/3 165/14 167/2 171/22 174/6 177/20 182/22 183/19 184/18 188/4 189/1 192/24 193/3 197/20 200/22 202/15 205/7 206/13 207/11 207/23 208/8 208/18 212/11 215/7 216/19 226/23 228/21 230/22

**E**

EKELAND... **[6]**   231/17 235/11
237/7 238/5 238/14 238/16
**Ekeland's [1]**   22/16
**El [4]**   78/19 79/20 80/4 80/9
**elaborate [1]**   157/23
**elderly [1]**   118/23
**elections [1]**   179/19
**elevator [2]**   223/6 223/7
**Elizabeth [1]**   20/4
**Elliptic [2]**   19/4 111/16
**else [29]**   14/22 28/4 28/7 46/11
53/9 73/24 88/22 112/21 113/3
121/18 132/24 140/6 150/5 162/20
171/19 172/3 183/11 188/2 191/21
192/21 193/19 201/15 210/23
220/23 222/13 236/19 236/21 237/8
239/19
**elsewhere [1]**   16/21
**elude [1]**   73/11
**email [1]**   27/11
**emails [2]**   115/19 239/13
**embarrassing [1]**   54/13
**embedded [1]**   114/17
**emergency [5]**   46/6 102/2 153/7
153/8 225/5
**emphasize [1]**   239/6
**employed [2]**   37/21 149/17
**employee [2]**   62/8 109/9
**employment [1]**   200/2
**encourage [1]**   7/25
**encouraging [1]**   80/10
**end [45]**   6/25 29/2 32/9 36/18
37/8 53/12 55/19 57/7 58/22 61/25
72/12 75/11 79/14 93/9 93/17
101/8 108/8 110/21 113/17 120/15
123/20 130/1 132/18 134/4 142/20
147/20 152/20 153/21 154/23
165/20 170/21 177/14 177/19 179/9
189/13 193/11 222/11 223/6 228/6
229/5 238/3
**ended [3]**   7/20 8/15 57/16
**energy [2]**   30/24 94/13
**enforced [1]**   91/23
**enforcement [71]**   8/3 23/18 24/14
24/17 24/22 25/9 27/15 35/3 38/23
38/24 42/15 42/19 42/20 44/3 44/4
44/8 44/12 44/19 45/12 53/15
53/16 59/19 59/23 61/10 61/21
70/7 82/4 86/8 86/19 89/11 89/14
89/18 101/13 102/6 104/10 105/14
117/10 117/11 117/18 137/1 137/17
139/1 143/12 144/2 163/17 163/18
164/4 164/9 164/12 164/15 164/18
164/21 165/12 175/5 176/6 176/25
177/2 177/3 177/23 177/25 178/9
178/13 178/17 178/17 180/12 200/8
200/12 213/22 214/10 214/11 215/9
**enforcing [1]**   109/21
**engage [1]**   8/22
**engaged [5]**   25/6 136/21 142/24
166/1 214/25
**engagement [1]**   114/19
**engagements [1]**   113/24
**engineer [1]**   195/5
**engineering [1]**   173/18
**English [7]**   5/15 25/23 77/7 77/8
77/9 77/10 77/15
**enough [11]**   50/20 88/20 109/12
123/7 141/22 178/16 188/20 194/12
205/14 216/25 218/4
**enter [2]**   88/22 88/23
**entered [2]**   21/24 88/14
**entire [2]**   70/12 231/11
**entirely [4]**   8/11 158/9 185/20
234/4
**entirety [1]**   11/13
**entitled [3]**   15/20 185/19 240/5
**entity [8]**   25/6 59/5 108/14
136/21 142/24 148/21 166/1 200/18

**entrance [1]**   61/5
**environmental [2]**   85/24 198/13
**EPA [2]**   144/11 144/12
**equal [1]**   39/2
**equate [1]**   115/14
**equipment [2]**   238/23 238/23
**equivalent [1]**   208/3
**Eric [1]**   20/4
**Erwin [1]**   20/4
**escort [1]**   17/17
**esoteric [1]**   232/14
**essays [1]**   53/1
**essence [1]**   206/9
**essential [1]**   221/5
**essentially [4]**   173/19 176/18
176/19 177/10
**essentials [1]**   81/23
**estimate [4]**   215/23 222/16 223/23
224/1
**et [1]**   87/9
**et cetera [1]**   87/9
**Ethereum [7]**   22/23 43/6 49/4 83/8
115/4 131/9 196/25
**evaluate [4]**   13/23 86/11 117/23
163/22
**evaluation [1]**   199/2
**evasion [3]**   109/1 109/2 109/3
**eve [4]**   13/5 13/20 13/21 14/21
**even [10]**   6/21 52/4 72/12 74/4
188/18 222/7 228/6 232/19 233/14
239/11
**evening [10]**   28/24 31/7 46/18
119/6 121/5 121/11 193/24 195/9
209/22 239/20
**evenings [5]**   31/24 81/22 97/2
194/24 212/3
**event [2]**   109/25 172/23
**events [2]**   142/7 179/17
**ever [47]**   22/13 22/17 22/22 22/25
23/15 23/23 23/24 24/4 24/4 24/7
24/19 25/5 41/1 43/15 47/15 48/22
60/12 64/22 70/14 73/7 75/17
89/14 103/15 107/5 131/18 136/1
138/4 142/3 142/24 152/8 159/12
168/5 168/11 184/14 184/16 191/2
191/8 196/18 196/23 197/21 199/9
202/4 202/6 212/20 213/9 213/10
213/13
**every [15]**   4/16 29/5 29/7 31/4
32/16 35/8 35/9 66/14 70/11
153/14 153/19 163/24 195/7 218/16
224/10
**everybody [4]**   8/13 15/1 158/24
211/8
**everyone [16]**   5/13 17/3 18/3 18/7
31/18 31/20 78/8 110/1 110/18
113/3 189/3 195/16 217/6 219/17
220/22 223/7
**everyone's [2]**   79/13 217/7
**everything [15]**   12/21 33/10 74/14
83/21 83/23 83/24 95/4 121/5
130/18 165/6 173/8 191/18 207/21
222/22 238/25
**everywhere [2]**   165/3 165/3
**evidence [54]**   6/13 16/7 20/1
20/25 21/9 21/12 21/21 23/19
25/24 25/25 28/9 33/18 35/13 39/5
41/12 41/25 42/8 44/15 44/20 52/7
52/17 53/18 57/24 61/13 69/6 71/6
72/8 72/9 75/6 75/8 79/7 82/16
83/17 86/14 89/5 92/7 97/18
117/24 132/9 132/10 140/4 150/7
157/11 159/24 163/25 187/24
192/12 199/3 222/9 222/23 222/24
223/23 233/5 239/10
**evident [1]**   12/8
**evidentiary [1]**   235/14
**exactly [5]**   62/7 108/15 111/6
114/11 224/1
**examine [1]**   224/3
**examined [2]**   229/6 234/18
**example [10]**   6/19 8/1 27/9 43/13

52/7 52/16 71/8 85/12 92/11
162/21
**Excel [1]**   118/6
**except [1]**   18/3
**exchange [13]**   18/21 25/10 43/10
49/22 64/20 65/2 83/8 84/10
136/23 140/8 176/12 214/24 215/4
**exchanges [2]**   43/11 213/20
**exclude [2]**   7/17 231/12
**excuse [15]**   5/6 5/18 6/21 7/3
27/4 27/5 48/1 55/12 55/20 78/5
133/16 152/16 165/21 170/22 230/6
**excused [8]**   7/6 133/25 155/2
155/3 155/4 155/18 155/22 203/10
**excuses [1]**   6/18
**Excygent [2]**   19/3 111/16
**executive [2]**   110/20 114/8
**exercise [1]**   217/4
**exhibits [1]**   116/21
**exist [1]**   159/16
**expect [3]**   6/12 25/24 229/16
**expected [2]**   54/9 79/6
**expedition [1]**   218/21
**experience [11]**   8/16 8/21 22/12
52/22 61/8 90/19 173/15 176/9
186/23 197/8 213/9
**expert [8]**   27/14 139/11 167/23
170/4 170/8 238/23 238/23 239/4
**experts [3]**   124/8 235/1 235/3
**explain [13]**   34/17 72/19 92/9
92/24 153/4 155/16 174/23 211/24
221/14 226/5 227/8 228/8 239/14
**explained [2]**   26/11 74/10
**explaining [1]**   9/4
**exploit [1]**   12/10
**explore [1]**   236/3
**explored [2]**   141/18 142/15
**export [1]**   238/9
**express [2]**   113/7 174/18
**expressed [4]**   188/22 188/23
188/24 235/8
**expressions [1]**   116/25
**extended [1]**   238/12
**extensive [1]**   57/16
**extent [5]**   226/3 226/9 227/7
234/16 234/25
**extra [2]**   28/6 160/18
**extraction [1]**   238/9
**extreme [26]**   6/5 26/2 30/21 32/3
37/17 37/19 37/20 38/15 45/5
54/23 80/23 90/3 94/24 110/15
110/19 113/20 130/7 148/2 160/15
167/11 179/13 183/4 193/16 203/16
203/18 239/13
**eyesight [1]**   25/18

**F**

**face [1]**   226/16
**facial [1]**   116/24
**facilities [1]**   26/17
**facility [1]**   4/6
**fact [21]**   21/4 21/4 21/6 39/24
62/19 70/2 72/1 76/11 99/24 104/8
106/9 113/8 122/4 138/25 139/9
139/11 143/22 153/15 168/15 196/6
230/13
**facts [6]**   27/7 27/12 34/5 63/9
68/25 157/2
**faculties [1]**   178/13
**failure [1]**   65/18
**fair [58]**   8/5 16/12 17/24 22/1
22/6 22/9 23/14 24/11 26/8 26/10
30/3 31/22 33/13 33/25 40/1 40/20
51/22 60/8 61/9 69/5 69/7 74/12
75/7 86/4 87/16 88/9 88/16 88/20
89/3 90/20 92/16 94/9 95/15 96/4
98/6 102/16 105/2 109/12 140/8
141/8 141/9 142/16 157/10 157/12
171/20 172/2 176/6 177/22 178/16
185/8 185/20 185/21 192/8 193/17
194/12 198/24 199/5 235/13
**fairly [11]**   12/7 26/6 30/25 44/18

**F**

fairly... **[7]** 52/13 102/6 113/8 122/5 159/23 168/18 227/9
fairness **[1]** 92/6
faith **[1]** 34/16
Falco **[2]** 19/9 19/11
falsely **[1]** 185/13
familiar **[6]** 19/2 70/12 70/17 80/4 84/1 111/15
familiarity **[1]** 67/17
family **[64]** 23/15 24/1 24/3 24/6 24/18 25/4 27/15 29/22 32/25 39/13 53/21 55/4 56/3 58/19 60/11 63/18 82/3 85/18 86/22 87/2 93/22 95/10 95/19 95/25 99/19 102/10 102/18 103/1 104/3 104/15 104/19 106/17 107/5 108/13 108/24 109/6 138/8 138/13 142/23 144/5 147/1 148/20 149/6 150/20 156/11 156/13 156/15 165/25 166/8 166/15 171/5 172/20 180/21 187/1 187/8 189/19 195/19 196/11 199/22 199/24 200/6 200/17 204/25 222/13
far **[11]** 49/16 52/15 56/7 69/16 70/21 71/14 101/1 141/21 182/14 219/14 231/3
fare **[2]** 109/1 109/3
Faruqui **[1]** 20/13
father **[14]** 65/18 65/25 87/21 87/22 95/12 96/2 102/12 104/5 104/9 106/23 107/6 150/24 205/21 205/22
favor **[9]** 8/2 62/20 106/13 114/24 139/3 142/11 143/23 144/1 196/7
FBI **[10]** 23/13 44/14 62/11 62/19 114/14 114/15 114/17 164/19 195/21 196/7
FDIC **[1]** 143/2
February **[9]** 1/5 11/25 38/12 48/16 57/7 58/15 148/4 177/14 203/3
February 2013 **[1]** 48/16
February 28th **[1]** 203/3
February 29th **[1]** 148/4
February 3rd **[1]** 11/25
February trip **[1]** 58/15
federal **[17]** 24/21 24/22 25/7 25/10 25/11 62/7 90/6 90/11 91/1 91/1 101/19 109/9 138/19 145/4 177/3 200/3 200/21
feedback **[1]** 116/6
feel **[21]** 8/8 42/19 51/15 66/20 74/10 92/22 92/25 96/13 117/13 156/25 160/17 161/1 161/5 161/6 161/8 176/5 177/4 185/19 190/1 192/19 198/11
feeling **[3]** 113/6 191/14 198/15
feelings **[43]** 22/4 22/7 22/19 23/3 23/6 23/9 23/12 23/17 34/1 41/3 41/3 41/14 41/25 42/14 42/19 44/3 44/6 44/7 52/5 52/18 53/16 61/9 61/12 69/2 72/20 74/17 74/23 80/14 83/10 88/4 89/1 91/12 92/5 149/15 149/23 150/2 156/19 157/6 185/21 198/9 198/13 198/19 199/1
fell **[2]** 78/21 78/22
fellow **[6]** 19/22 27/2 53/6 222/7 222/8 223/10
felony **[2]** 191/5 191/9
fentanyl **[1]** 41/22
few **[14]** 4/5 17/21 35/20 95/22 97/25 110/8 115/5 115/5 131/7 145/12 149/8 179/17 180/25 189/11
fictional **[1]** 21/19
field **[1]** 112/14
fight **[1]** 7/17
figure **[3]** 12/6 58/16 119/24
figured **[1]** 100/20
file **[6]** 11/9 12/24 14/12 238/7 238/9 238/22
filed **[10]** 7/8 8/24 9/16 10/8

10/24 10/24 40/17 122/24 226/7 230/25
files **[9]** 11/10 11/12 11/16 12/23 237/24 237/25 238/2 238/6 239/6
filing **[1]** 9/18
fill **[4]** 81/13 114/11 132/24 207/20
final **[7]** 10/22 11/15 65/18 124/6 221/22 222/10 227/6
finalized **[1]** 11/23
finally **[3]** 103/11 139/19 208/22
finance **[4]** 23/10 59/16 59/17 62/11
finances **[1]** 146/8
financial **[31]** 21/18 25/6 25/9 41/7 41/15 41/17 42/5 58/19 59/5 72/18 77/11 77/13 90/5 106/1 108/14 122/2 122/7 122/21 136/21 142/24 145/10 147/2 147/3 148/21 148/24 149/16 149/17 166/1 194/2 194/7 200/19
find **[2]** 24/15 26/22
finding **[2]** 76/7 165/7
fine **[26]** 4/5 4/18 35/17 51/22 54/8 63/16 85/6 85/16 113/15 122/9 134/9 142/19 160/12 162/11 169/17 186/10 201/9 204/23 207/14 209/10 210/2 219/2 230/22 230/24 236/3 238/18
finish **[3]** 13/25 17/13 194/24
finishing **[2]** 8/17 94/6
fire **[1]** 183/15
firm **[16]** 39/14 39/17 39/25 45/15 45/23 46/20 63/20 136/18 137/9 137/24 138/2 142/7 173/5 196/16 212/19 216/15
firms **[1]** 173/1
first **[23]** 3/22 5/12 15/22 22/16 24/21 48/13 54/14 68/6 89/20 108/12 120/20 121/25 147/4 179/21 202/8 206/16 217/4 217/9 217/14 217/16 217/25 220/11 231/18
Fischbach **[2]** 20/6 237/13
five **[4]** 94/23 107/18 219/15 234/14
five-minute **[1]** 107/18
fix **[1]** 153/14
fixed **[1]** 155/1
flag **[4]** 156/7 157/13 236/16 238/18
flagged **[1]** 11/25
flags **[1]** 136/20
flat **[1]** 225/9
flew **[1]** 119/8
flexibility **[2]** 161/23 182/16
flight **[1]** 119/9
flip **[1]** 214/2
floor **[3]** 2/4 26/20 155/13
Florida **[1]** 204/6
flying **[1]** 204/9
Fog **[2]** 13/4 73/8
folders **[2]** 12/8 12/10
folks **[8]** 110/8 113/1 206/17 217/11 219/21 220/21 221/12 225/14
follow **[105]** 4/25 5/1 5/13 7/18 7/23 7/24 7/25 8/6 8/9 8/14 8/15 8/18 8/19 17/20 18/16 30/11 30/13 30/15 34/18 36/11 36/13 36/15 42/10 42/23 43/19 43/23 44/10 44/16 44/22 45/20 46/24 47/17 49/12 52/20 54/15 57/18 58/1 58/13 61/16 61/19 63/1 64/3 64/24 67/3 71/8 72/15 72/16 74/3 75/13 76/17 77/20 80/16 82/19 83/19 89/9 90/22 93/3 94/15 97/6 100/2 100/14 100/21 103/17 105/4 107/9 109/16 112/16 116/4 116/8 118/4 118/11 119/13 132/17 133/6 139/20 140/12 140/14 144/21 145/19 147/6 151/13 151/15 154/8 157/18 157/19 158/13 164/2 165/14 165/18 171/22

177/4 177/21 181/24 184/18 188/4 190/13 192/22 197/20 197/25 200/23 202/15 210/14 212/9 215/6 216/13
follow-up **[18]** 7/18 7/23 7/24 7/25 8/6 8/14 43/23 54/15 63/1 75/13 76/17 100/2 109/16 133/6 157/18 190/13 202/15 210/14
followed **[1]** 158/2
following **[8]** 19/3 20/1 24/19 34/23 57/17 110/6 119/14 153/5
foot **[1]** 118/7
footprint **[1]** 177/11
force **[3]** 41/22 165/4 197/13
forego **[1]** 123/11
foregoing **[1]** 240/4
foreign **[1]** 22/8
forfeiture **[1]** 227/12
forget **[1]** 71/13
forgot **[2]** 111/9 203/17
Fork **[1]** 146/1
form **[3]** 9/4 23/2 196/20
formal **[2]** 16/22 21/1
formed **[2]** 36/9 158/1
former **[5]** 111/17 111/21 112/17 114/13 142/7
forth **[9]** 6/1 7/11 30/12 39/6 217/15 218/1 218/18 218/21 239/14
forum **[1]** 11/23
forward **[1]** 222/19
fought **[2]** 189/25 191/14
found **[6]** 34/25 87/13 87/14 119/7 192/5 235/2
foundation **[8]** 108/16 176/2 176/4 231/14 233/14 233/17 233/23 234/4
four **[17]** 16/6 29/1 30/10 37/25 62/18 65/23 66/9 91/10 130/6 142/22 145/17 146/23 147/5 148/19 186/11 192/2 234/14
Fourteen **[1]** 206/3
fourth **[2]** 25/2 155/12
frame **[1]** 183/7
framework **[1]** 91/19
Francisco **[1]** 20/5
frank **[1]** 227/23
frankly **[8]** 5/8 6/14 11/11 34/2 66/11 66/18 96/25 218/15
fraud **[4]** 48/17 138/22 214/17 215/17
free **[4]** 122/25 123/11 233/22 233/23
freedom **[2]** 189/25 191/15
frequent **[5]** 25/20 32/2 38/14 77/3 162/5
Friday **[14]** 29/5 29/7 31/4 32/16 66/14 119/4 119/7 195/8 210/19 224/13 224/18 224/20 236/24 237/3
Fridays **[17]** 28/22 29/7 31/4 31/5 31/24 32/13 46/9 66/15 96/15 96/24 96/24 96/25 154/1 195/8 203/23 224/13 224/15
friend **[62]** 23/15 24/2 24/4 24/7 24/19 25/5 33/1 39/14 53/22 59/4 60/12 63/18 85/19 86/22 87/2 93/22 95/10 95/19 95/25 99/20 101/11 102/10 102/19 103/1 104/4 104/15 106/17 108/13 108/24 138/13 140/24 141/11 141/25 142/23 143/1 143/1 143/6 144/5 148/20 149/6 150/21 156/15 165/25 166/8 166/16 166/18 171/5 172/20 180/21 181/11 189/20 195/19 195/21 195/22 196/6 196/12 199/13 199/23 200/3 200/18 200/20 204/25
friendly **[1]** 142/8
friends **[15]** 36/7 36/8 95/13 104/19 138/8 147/1 149/8 157/13 163/7 166/3 166/17 172/24 199/25 200/6 222/13
front **[4]** 26/15 68/5 116/22 234/1
full **[8]** 29/10 46/17 50/22 57/2 80/25 81/2 101/18 160/22

**F**

**full-time [1]** 101/18
**fully [2]** 17/25 110/24
**fun [2]** 161/22 161/23
**function [1]** 161/6
**fund [4]** 106/4 175/19 175/25 177/10
**funded [1]** 106/4
**funds [3]** 59/25 92/14 108/19
**fungible [4]** 23/1 71/19 71/20 196/19
**further [35]** 6/9 9/12 43/17 44/22 50/8 53/8 54/15 58/10 58/23 73/5 75/3 75/13 84/12 89/21 91/4 99/5 103/18 112/20 118/12 133/11 141/23 158/11 160/4 160/6 178/20 178/23 182/19 185/24 189/1 205/21 206/14 210/22 216/12 216/18 216/20
**future [1]** 156/25
**Futures [1]** 25/11
**FY25 [1]** 37/24

**G**

**Galiwas [2]** 19/18 19/20
**GameStop [1]** 57/18
**garbled [1]** 3/20
**gauging [1]** 146/18
**gave [7]** 50/2 58/6 58/8 58/9 87/6 152/16 155/7
**gender [1]** 218/8
**general [6]** 9/15 24/23 52/5 53/16 91/19 108/17
**generally [2]** 40/13 73/9
**Generic [1]** 131/9
**generous [2]** 172/16 172/17
**gentleman [4]** 124/4 124/6 205/20 206/25
**Georgetown [1]** 186/18
**Georgia [2]** 143/16 153/18
**get [61]** 3/12 3/13 4/4 5/5 6/18 8/6 10/23 15/1 27/21 33/22 33/24 35/16 45/6 46/11 53/24 55/9 56/5 56/18 56/21 56/25 79/2 81/22 91/1 113/4 115/10 115/13 116/2 121/21 123/5 132/21 133/2 142/18 146/8 146/11 154/25 155/13 156/9 165/4 169/7 169/8 182/5 189/5 191/18 193/19 194/24 208/4 211/6 211/25 222/1 222/3 225/9 225/24 227/16 230/11 230/15 232/2 235/12 235/25 236/1 236/20 237/19
**get-back [1]** 116/2
**gets [8]** 116/3 187/24 217/12 217/12 217/16 217/23 218/17 233/2
**getting [14]** 3/23 8/10 14/20 28/7 31/6 60/20 60/25 61/3 181/11 181/12 218/13 219/3 235/9 237/15
**gift [1]** 207/1
**Gifts [2]** 95/7 207/1
**gigabyte [3]** 12/20 13/21 14/20
**give [35]** 4/7 9/3 9/10 9/12 9/24 10/4 11/17 39/2 42/15 52/7 102/22 104/10 106/11 108/3 117/21 146/9 146/16 146/18 171/12 206/19 217/5 217/7 218/3 221/13 224/14 224/20 225/7 226/11 226/14 226/17 227/6 228/3 228/17 229/15 230/14
**given [9]** 13/17 29/6 29/8 69/8 110/7 141/14 222/10 225/3 230/13
**gives [1]** 221/24
**giving [3]** 14/15 52/15 219/4
**glad [1]** 172/17
**glance [1]** 14/6
**glasses [1]** 116/19
**Glave [1]** 20/10
**Glenda [2]** 20/15 221/8
**global [1]** 175/21
**globally [1]** 177/11
**go [141]** 5/7 5/18 5/24 6/7 6/20 9/8 12/5 13/16 14/9 14/18 26/13

26/17 26/22 28/12 30/17 32/21 32/22 35/19 35/25 36/19 36/20 37/6 44/25 47/3 48/6 50/11 53/9 54/19 55/20 57/14 58/24 62/1 64/7 65/7 66/16 73/13 75/14 76/24 78/21 80/20 83/1 84/15 85/13 89/24 90/8 90/18 91/6 93/10 94/19 96/6 97/10 99/13 100/7 103/11 103/22 107/13 108/2 110/2 112/23 113/15 116/12 118/13 119/18 119/25 120/16 132/3 132/5 132/19 133/2 133/12 136/10 137/22 140/16 147/21 148/15 150/15 151/19 152/17 153/2 153/7 153/14 153/16 153/17 153/20 153/21 153/22 154/5 154/21 154/24 155/15 155/17 159/11 160/8 161/12 161/13 162/15 162/21 163/12 165/21 167/4 169/22 170/19 170/19 170/22 172/5 174/8 180/7 182/24 183/23 186/4 191/20 192/6 193/7 193/9 193/13 194/16 194/16 198/2 201/2 202/19 203/23 204/7 204/16 204/17 205/11 205/19 208/25 210/25 212/13 212/13 216/21 217/25 218/1 219/14 220/10 221/7 221/14 221/20 225/2 227/7 239/2
**goal [1]** 188/17
**goes [5]** 56/5 69/16 78/8 90/7 222/19
**going [159]** 5/9 5/10 5/10 5/16 5/19 5/21 5/21 6/4 6/5 6/11 6/15 6/17 8/10 9/24 10/2 10/10 10/23 14/25 15/1 15/18 17/8 17/15 17/16 26/14 27/1 28/9 32/4 32/11 32/20 37/6 37/7 37/24 44/4 44/5 45/6 55/20 57/5 59/24 65/20 66/7 66/11 66/14 66/18 66/19 66/21 66/22 66/23 72/7 72/10 78/5 78/25 79/12 79/14 79/15 93/15 96/10 103/14 108/1 109/22 109/24 110/1 113/15 115/20 117/17 117/19 119/18 120/16 121/21 122/18 124/12 132/25 141/4 146/15 146/17 146/20 147/18 148/15 153/10 154/17 154/21 154/24 158/16 161/12 161/19 163/12 165/21 170/18 170/22 176/24 179/3 180/7 183/23 186/4 186/23 189/12 193/5 193/7 193/9 193/9 194/16 195/13 204/3 204/3 204/16 206/24 207/6 207/16 208/4 208/11 208/12 209/8 209/9 209/24 210/1 210/25 211/10 211/11 212/13 213/17 216/23 217/6 218/14 219/13 219/13 219/15 219/22 221/2 221/3 221/13 221/18 221/23 222/3 222/4 222/5 222/6 222/9 222/17 223/1 224/2 224/3 224/7 224/11 224/13 224/20 224/25 225/1 225/19 228/8 229/7 229/18 229/19 232/6 232/7 233/24 234/23 235/6 235/10 237/1 237/22
**gold [1]** 123/13
**golf [1]** 81/10
**gone [9]** 49/11 55/4 87/14 142/5 156/12 159/11 159/12 211/17 221/19
**good [36]** 3/8 3/11 15/9 15/12 15/13 15/17 51/20 51/24 52/9 52/11 55/23 63/10 63/15 76/16 76/16 118/21 118/22 134/8 135/17 147/25 148/1 150/4 158/17 159/7 165/10 166/3 167/8 167/9 169/6 171/3 174/13 184/5 204/22 219/12 223/17 228/17
**gosh [1]** 166/21
**got [38]** 6/6 13/4 13/18 13/24 36/6 47/6 65/10 77/1 78/10 80/12 80/22 87/9 87/10 91/9 94/22 95/21 96/17 103/25 119/10 121/3 123/1 132/21 135/18 152/17 156/1 160/13 170/25 171/10 174/12 191/22

194/19 195/2 202/8 202/12 229/3 232/4 237/11 237/13
**gotten [2]** 169/6 173/10
**governing [6]** 23/7 41/4 88/5 88/7 159/6 198/19
**government [80]** 3/5 3/6 3/7 7/8 9/18 10/8 11/1 11/3 13/2 14/24 15/8 15/10 19/5 20/18 20/21 21/25 23/5 25/6 33/25 36/11 36/13 40/16 48/17 52/1 59/5 59/8 67/25 68/9 69/23 72/18 72/22 76/21 85/20 88/14 88/21 91/12 108/14 122/23 123/9 136/21 139/1 139/2 139/8 139/9 139/25 140/3 142/24 144/8 148/21 150/2 150/10 156/20 166/1 185/19 188/13 188/14 192/17 192/19 200/4 200/18 200/21 207/10 208/6 209/4 217/12 217/14 217/15 217/16 218/1 227/10 228/3 229/23 230/18 230/25 232/19 233/22 234/6 235/22 236/7 236/14
**government's [5]** 12/22 92/1 168/20 226/23 235/16
**governmental [1]** 51/9
**Gox [10]** 231/2 231/2 232/3 232/12 232/13 232/15 232/25 234/10 235/3 235/22
**grand [7]** 76/4 76/6 82/14 82/22 97/16 97/17 187/22
**granddaughter [1]** 186/14
**grandparents [3]** 32/4 32/12 32/20
**grant [3]** 108/17 108/19 205/23
**Grants [1]** 144/13
**great [5]** 10/25 48/11 135/7 151/24 212/1
**greater [1]** 9/5
**greatly [3]** 28/11 29/13 221/4
**Greenberg [1]** 20/3
**grew [1]** 117/13
**Gronager [1]** 20/10
**group [4]** 30/23 142/6 167/13 169/24
**grown [1]** 183/13
**growth [1]** 158/2
**grunt [1]** 64/2
**guarantee [1]** 71/11
**guarding [1]** 143/20
**guardrails [2]** 150/4 159/6
**guess [28]** 29/8 29/12 34/19 34/23 42/18 53/15 58/13 69/20 72/17 96/9 96/23 109/8 109/9 121/5 123/2 145/16 146/15 147/2 164/12 169/14 192/18 194/6 206/16 226/20 228/4 231/22 235/10 235/19
**guidance [1]** 226/12
**guide [1]** 238/15
**guilt [2]** 17/2 76/7
**guilty [15]** 16/24 20/19 21/6 21/10 21/15 21/15 21/23 88/13 88/24 185/6 191/3 191/4 191/8 192/5 192/13
**gun [3]** 52/14 52/14 101/20
**gunpoint [2]** 95/22 171/10
**guns [3]** 52/8 52/9 72/3
**guy [4]** 92/25 206/8 207/18 208/10
**guys [1]** 155/13

**H**

**hack [10]** 109/9 231/2 231/12 231/15 231/18 232/16 232/22 234/10 234/19 235/3
**hacked [1]** 232/25
**hacks [7]** 231/19 231/22 231/24 231/25 233/6 234/13 236/8
**had [67]** 3/25 11/8 11/24 12/2 13/6 14/6 14/19 24/4 28/17 28/21 31/19 40/11 42/25 46/10 46/11 49/24 50/2 52/14 54/1 65/11 72/24 78/21 79/3 82/5 89/19 95/10 102/10 108/24 117/4 119/7 121/10 121/17 122/23 133/16 137/20 142/8 152/2 152/9 153/2 156/17 157/24

## H

**had... [26]** 166/10 166/10 166/16 171/5 171/11 171/16 172/12 180/21 181/19 190/2 190/6 191/20 192/6 202/14 204/25 206/6 206/8 206/14 208/24 209/18 215/2 225/4 227/24 231/25 237/23 238/9

**hair [1]** 3/23

**haircut [1]** 4/4

**Hale [2]** 189/7 208/20

**half [5]** 30/8 46/21 110/7 224/13 224/14

**hall [2]** 26/19 120/2

**hallway [2]** 223/2 223/4

**hand [6]** 17/6 18/7 51/6 66/22 117/6 209/25

**handle [7]** 31/6 31/23 38/5 38/11 40/23 123/10 224/16

**handled [2]** 152/18 225/15

**hands [1]** 38/11

**handwriting [1]** 10/7

**happen [4]** 58/22 83/25 88/21 211/18

**happened [6]** 79/3 87/14 190/24 201/19 231/9 236/8

**happens [4]** 111/4 133/1 133/3 193/25

**happy [17]** 60/14 76/15 121/12 121/24 122/6 124/3 133/5 134/1 141/17 162/8 188/21 189/9 189/11 207/1 228/11 228/14 236/20

**hard [13]** 26/8 31/1 32/14 35/1 38/17 55/2 71/13 79/10 92/8 146/1 210/13 211/16 234/23

**hardship [39]** 6/5 26/2 30/21 37/17 37/19 37/20 45/5 54/24 56/1 58/14 80/24 90/4 90/5 94/24 108/5 110/15 110/19 113/8 113/20 115/10 130/7 134/1 145/11 146/11 148/2 156/3 160/15 160/16 161/18 167/11 179/13 183/5 188/23 193/16 194/3 203/16 203/18 209/18 211/7

**hardships [1]** 188/23

**Harmon [3]** 18/25 20/7 144/16

**has [71]** 5/15 8/20 9/14 13/1 14/10 14/13 14/14 16/24 16/24 20/18 20/24 26/1 26/22 33/23 35/19 36/9 41/21 43/11 56/3 57/1 57/6 58/20 61/8 65/22 66/12 66/21 71/18 74/13 80/12 84/25 85/1 119/3 119/13 122/2 123/9 134/23 136/21 142/3 142/4 143/6 154/4 154/16 157/1 158/24 161/3 170/16 173/5 173/7 177/11 187/4 189/22 190/22 192/2 194/22 195/25 196/3 199/13 207/19 208/13 214/9 214/11 222/9 226/2 229/23 230/20 231/4 232/13 234/14 235/2 238/11 238/21

**hasn't [2]** 94/5 238/22

**HASSARD [6]** 2/2 3/9 15/14 19/16 19/19 238/4

**hat [1]** 209/15

**have [617]**

**haven't [17]** 3/25 13/6 13/10 13/11 13/13 14/6 26/5 71/22 98/18 117/14 142/15 227/23 233/11 237/11 237/23 237/24 238/20

**having [19]** 13/17 32/2 34/13 34/15 37/25 46/20 58/22 121/8 122/5 130/19 130/22 138/5 142/10 148/3 158/2 191/14 211/15 211/23 232/16

**he [100]** 4/2 4/3 4/24 13/3 16/25 20/20 21/6 33/5 38/16 38/17 40/15 40/15 40/16 41/7 41/21 50/3 52/2 65/22 66/1 66/6 80/12 94/3 94/5 94/6 94/6 102/22 104/5 104/6 112/3 112/18 119/3 120/24 120/25 121/4 121/4 121/6 121/6 121/10 121/10 122/17 122/17 133/16 133/25 136/15 136/16 136/20

136/20 136/20 140/24 140/25 141/7 141/8 141/11 141/11 141/12 141/13 142/3 142/4 142/14 143/15 143/17 143/19 144/10 144/12 154/16 171/11 172/3 185/12 185/13 185/14 185/16 185/17 192/12 192/13 195/24 195/25 196/3 200/9 200/12 200/13 205/21 205/22 205/23 206/11 207/2 207/2 207/4 207/4 207/20 207/21 208/11 208/11 208/12 208/13 208/13 226/3 226/3 226/7 232/4 235/22

**head [8]** 33/24 35/16 35/19 52/16 70/22 159/21 165/10 228/23

**headquarters [2]** 62/11 105/19

**health [13]** 5/15 25/14 28/15 28/15 29/8 29/15 85/12 90/12 116/16 116/18 160/18 190/7 191/17

**hear [40]** 3/19 10/12 16/3 18/6 18/8 20/1 21/22 37/2 37/3 42/13 47/9 47/18 57/24 60/18 63/9 64/13 65/19 73/17 88/12 89/5 89/19 92/20 92/21 98/10 98/17 110/25 123/19 135/21 140/4 152/4 164/10 164/11 174/1 174/24 177/6 181/15 184/8 222/23 227/3 227/5

**heard [10]** 18/13 18/19 18/24 33/14 66/13 73/7 74/4 144/15 197/21 231/21

**hearing [7]** 25/18 34/14 38/17 44/4 123/11 191/21 222/5

**hearings [2]** 37/24 234/17

**hearsay [4]** 231/4 231/23 232/7 232/10

**heart [1]** 119/4

**Heather [1]** 18/22

**heaviest [1]** 210/21

**heavy [2]** 160/23 160/25

**heightened [1]** 25/21

**held [28]** 34/10 36/23 51/3 55/10 60/17 69/13 92/19 93/12 95/21 107/17 113/2 120/10 120/18 131/11 131/24 133/13 140/21 146/7 154/14 164/7 168/25 174/22 184/25 188/10 190/14 191/25 205/13 216/24

**helicopter [2]** 87/22 87/23

**Helix [2]** 18/25 144/16

**Hello [4]** 160/11 160/12 185/2 201/6

**help [7]** 63/25 73/2 183/12 183/17 187/17 238/14 239/4

**helped [2]** 176/16 191/18

**helpful [2]** 16/11 51/19

**Henry [1]** 20/6

**her [45]** 55/12 55/13 78/22 105/25 107/21 108/4 108/5 113/24 114/10 121/25 122/1 122/1 122/2 122/3 122/4 122/6 122/7 122/20 122/21 147/13 147/18 169/4 169/9 169/10 169/10 169/10 169/11 169/14 169/17 170/18 170/19 173/9 173/10 175/10 175/14 175/15 195/12 204/2 204/2 204/3 204/3 204/9 208/25 225/7 225/10

**here [98]** 3/13 4/18 5/6 5/7 8/23 10/7 13/14 17/16 18/5 19/22 21/2 28/6 29/2 31/2 31/18 31/22 33/13 34/9 51/4 54/14 56/9 56/14 57/24 62/25 66/14 66/23 69/5 72/8 74/13 78/8 86/4 88/9 89/7 90/20 94/10 95/16 96/4 96/11 98/7 99/10 101/2 104/22 105/2 107/24 109/24 110/2 111/12 113/1 119/6 119/8 120/6 121/18 136/20 146/6 146/9 146/22 150/23 153/15 158/19 159/21 160/19 168/13 171/20 173/2 176/24 179/7 182/3 186/16 189/11 190/1 190/2 191/19 193/19 205/20 208/13 209/16 218/10 218/12 219/13 219/15 219/17 220/2 220/20 220/23 221/4 221/16 221/25 222/23 224/10 224/11 225/2 226/18 227/18 230/17

233/22 234/19 239/4 239/17

**herself [2]** 175/16 175/16

**hesitant [1]** 34/6

**hesitation [1]** 20/22

**Hi [2]** 184/3 204/22

**hidden [1]** 9/7

**hide [1]** 73/18

**high [4]** 52/5 54/25 55/2 55/12

**highly [2]** 10/15 228/19

**Hill [1]** 37/21

**him [65]** 4/1 16/23 37/5 37/7 38/1 38/10 50/3 65/21 66/3 93/15 121/8 121/11 122/12 123/17 124/9 133/18 133/22 133/24 134/1 134/1 134/2 136/19 138/2 141/5 141/7 141/17 141/18 141/19 141/19 141/22 142/1 142/2 142/6 142/8 142/10 142/17 154/14 154/17 154/21 175/21 193/5 193/7 193/9 193/9 207/1 207/4 207/7 207/7 207/9 207/15 207/16 207/25 208/3 208/4 208/7 208/7 208/13 208/15 208/16 208/16 208/19 208/21 219/9 225/22 238/15

**hinder [1]** 83/15

**hip [1]** 78/22

**hiring [1]** 58/21

**his [30]** 13/3 13/3 66/2 66/6 66/8 112/6 112/13 119/2 123/17 133/19 141/14 141/14 141/25 142/4 142/12 142/15 176/3 183/15 189/2 193/7 205/22 206/12 206/12 207/5 207/20 207/20 208/9 208/11 208/13 238/21

**history [2]** 232/3 232/12

**hit [3]** 31/13 102/20 147/2

**hitting [1]** 211/19

**Hoffmeier [1]** 20/2

**hold [6]** 79/22 133/24 165/2 169/21 197/2 206/6

**holding [7]** 98/4 99/1 99/3 99/4 99/4 191/21 197/3

**Holloway [1]** 20/16

**home [19]** 31/14 32/4 56/2 56/21 56/24 56/25 57/1 65/21 66/6 119/2 130/16 152/17 153/2 153/7 153/9 156/5 182/10 195/12 221/3

**Homeland [3]** 111/22 112/19 164/20

**honest [5]** 35/10 36/4 71/13 73/17 192/9

**honestly [2]** 77/25 177/15

**Honor [179]** 4/4 5/17 5/25 6/10 11/3 12/17 12/19 14/11 14/18 14/24 15/9 15/13 30/16 36/14 36/16 36/17 36/21 36/21 36/25 37/3 43/17 43/19 44/23 44/24 47/2 47/21 47/23 50/8 50/10 52/22 53/8 53/11 54/17 54/18 55/17 58/11 61/17 63/3 64/4 64/6 65/6 67/5 67/7 73/5 74/2 75/4 76/18 76/23 78/2 78/3 80/17 80/19 82/20 84/14 89/23 91/5 93/5 93/7 93/13 94/18 97/7 97/9 100/4 100/6 103/18 103/21 105/5 105/7 107/10 107/12 107/15 107/19 109/17 109/19 113/10 113/12 116/9 116/11 118/21 120/8 120/11 122/9 122/13 122/19 123/9 123/18 124/11 133/7 135/9 135/11 136/7 136/9 137/4 139/5 140/15 141/5 141/7 145/21 147/8 147/9 147/15 147/17 150/14 150/22 151/11 151/14 151/16 151/18 151/25 154/9 154/11 155/23 157/19 160/5 160/7 163/11 165/15 165/18 167/1 167/3 169/12 170/11 170/15 171/24 172/11 173/3 173/12 174/3 174/7 178/21 178/24 179/1 182/21 182/23 184/14 184/21 186/1 186/2 188/5 188/7 189/4 192/23 192/25 193/2 198/1 200/24 201/1 202/16 202/18 203/9 205/8 205/10 205/17 205/18 206/1 206/19 206/23 207/10 207/12 207/15 209/1 209/11 210/24 212/10 212/12 225/5 226/25 227/15

**H**

Honor... [11]   229/1 230/19 231/10 232/11 234/8 236/18 236/23 237/4 237/9 238/2 239/18
HONORABLE [1]   1/9
Hoover [1]   114/16
hop [1]   177/16
hopefully [6]   31/25 119/8 223/11 226/21 227/18 230/15
hopped [1]   54/8
hospice [1]   65/21
hospital [2]   66/6 102/21
hour [1]   211/15
hours [11]   29/1 96/19 121/5 121/11 130/10 130/22 145/5 195/1 210/7 212/8 229/23
house [9]   31/10 37/22 41/7 142/3 142/4 142/5 148/23 148/24 222/1
housed [1]   225/24
household [1]   25/5
housing [2]   149/9 151/8
how [100]   5/10 14/2 30/9 33/15 33/16 35/6 45/23 45/25 46/1 46/2 46/13 47/11 48/10 49/6 50/1 50/6 56/7 56/19 62/23 63/14 63/15 64/15 65/22 67/22 70/1 70/1 71/9 71/23 76/8 77/15 79/7 79/11 79/15 79/23 79/24 87/12 87/14 101/1 103/25 106/4 115/13 130/16 132/13 132/21 133/8 134/6 134/8 135/15 135/17 137/23 137/24 145/10 145/14 146/17 147/24 147/25 151/23 151/25 152/6 153/10 155/10 159/10 160/11 164/3 167/7 167/8 170/25 171/2 174/12 176/18 180/24 182/14 183/9 184/1 184/3 184/10 185/18 186/8 186/9 187/24 189/16 191/25 194/2 194/6 197/16 201/7 201/8 202/2 203/13 204/20 204/22 209/19 211/21 222/16 223/19 224/1 224/18 227/18 230/17 235/5
however [1]   223/25
huddling [1]   218/18
huge [1]   194/8
huh [12]   49/25 50/18 75/19 76/9 96/8 104/11 104/25 152/11 162/24 167/21 168/10 223/22
Huh-uh [1]   104/11
hunter [1]   52/10
hunting [1]   72/4
husband [4]   38/16 40/11 99/21 99/25

**I**

I'd [8]   32/22 35/15 66/23 115/14 121/23 227/5 227/24 230/21
I'm [29]   17/15 34/2 34/22 36/12 40/7 40/8 47/18 51/21 65/19 68/2 68/6 73/23 78/6 98/10 98/17 117/2 136/14 144/25 163/1 164/10 171/13 172/4 181/14 186/23 220/3 220/8 223/19 230/17 232/6
idea [3]   204/11 228/10 228/17
ideal [1]   81/13
ideally [1]   115/18
identify [1]   12/3
identity [1]   87/4
ill [2]   6/16 78/20
illegal [8]   23/7 41/4 41/15 74/17 88/5 88/7 91/13 198/20
illegally [3]   92/11 92/12 92/14
illicit [1]   71/23
illness [5]   25/21 38/15 84/21 162/6 162/12
Ilya [2]   18/22 20/5
imagine [1]   110/21
IMF [2]   180/12 180/14
immunocompromised [3]   38/17 84/25 162/13
impact [5]   33/13 142/15 198/12 198/13 199/2

impartial [47]   8/5 8/8 16/12 17/24 22/2 22/6 22/10 24/11 26/10 30/3 33/13 33/25 40/2 40/20 50/25 60/8 61/10 61/15 61/21 63/8 69/5 69/8 86/4 87/16 88/9 88/16 89/3 90/20 92/16 94/10 95/15 96/4 98/6 102/16 105/2 140/9 141/14 142/16 157/10 157/12 171/20 172/2 185/20 185/21 192/8 198/24 199/6
impartially [4]   26/6 159/23 169/3 178/8
implant [1]   153/19
implement [1]   197/14
important [6]   31/1 81/25 96/16 210/20 222/24 223/17
importantly [1]   231/24
imposes [1]   111/2
imposition [6]   31/21 132/21 132/22 145/14 145/15 224/5
improper [1]   7/10
inability [1]   141/9
inadmissible [1]   231/7
inadvertently [1]   27/24
incident [1]   205/3
incidental [1]   223/8
inclination [2]   147/12 169/8
inclined [8]   9/6 35/3 133/24 139/3 143/23 144/1 168/19 205/23
include [3]   111/18 188/19 235/15
including [15]   7/11 33/11 34/15 90/3 94/23 105/11 110/14 118/20 142/22 160/14 161/17 183/4 213/7 234/6 236/6
income [2]   122/3 206/12
incredible [1]   221/3
incredibly [1]   55/1
Indeed [2]   67/14 68/22
independent [3]   21/13 27/7 174/2
index [2]   17/2 17/7
Indiana [1]   150/24
indicate [5]   55/15 121/6 141/8 178/10 218/8
indicated [30]   9/6 53/21 56/1 79/6 83/9 97/14 102/9 102/18 136/20 139/13 139/19 144/14 148/1 148/20 162/4 163/16 167/11 176/5 179/12 185/4 185/5 187/20 188/25 189/6 195/18 198/8 199/22 200/17 207/19 227/10
indicating [3]   61/20 179/3 229/9
indication [1]   17/2
indictment [15]   16/16 16/22 16/24 17/1 20/24 20/25 21/2 21/5 21/8 76/7 76/12 82/16 97/18 187/23 226/16
individual [3]   35/9 72/11 182/9
individuals [2]   20/14 169/15
indulgence [1]   103/20
industry [1]   149/18
infer [2]   9/19 233/7
inference [1]   233/7
influence [2]   71/12 201/25
information [15]   11/20 26/13 27/1 28/7 36/6 58/5 87/7 87/9 109/8 109/9 109/11 176/19 225/8 225/25 231/5
informing [1]   16/22
informs [1]   21/2
ingratiate [1]   7/16
initial [4]   23/1 41/2 196/18 214/23
initiated [2]   76/8 82/17
initiates [2]   21/1 97/18
innocence [1]   21/7
innocent [2]   16/25 20/20
inquire [4]   6/1 122/24 123/4 169/14
inquiry [6]   6/25 7/20 123/10 123/14 234/5 235/14
Inspector [1]   108/16
instance [2]   14/11 71/18
instead [1]   154/1

institution [2]   25/3 82/4
instruct [8]   16/8 18/4 34/4 39/1 45/20 151/13 157/2 159/24
instructed [1]   163/23
instruction [8]   7/22 71/8 110/7 164/2 177/4 228/3 228/17 229/14
instructions [5]   10/9 222/10 229/14 229/20 230/15
insurance [6]   25/8 25/12 48/17 176/13 201/15 201/22
integrity [3]   232/1 236/13 236/14
intellectual [1]   159/4
intense [1]   115/21
intent [1]   132/5
interact [2]   137/24 215/24
interaction [1]   157/25
interactions [2]   34/13 117/14
interest [2]   79/13 79/21
interfere [8]   25/15 28/16 34/3 89/2 95/15 182/3 192/7 211/1
international [2]   90/12 106/23
internet [5]   5/20 21/17 22/18 27/9 222/21
interpreters [1]   230/7
introduce [1]   235/6
introduced [1]   16/9
invented [1]   218/16
inventory [1]   68/15
invested [1]   158/24
investigate [3]   44/13 49/17 212/24
investigated [2]   21/18 214/5
investigates [1]   214/16
investigating [3]   27/12 213/4 213/6
investigation [3]   27/7 27/13 106/3
investigations [7]   42/5 49/15 59/24 105/24 105/25 212/21 215/13
investigative [3]   23/19 62/15 105/22
investigator [1]   49/13
investigators [1]   44/14
investing [1]   98/4
investment [6]   80/1 83/7 98/2 131/11 131/13 197/2
investments [1]   197/3
invited [1]   236/2
involve [1]   59/25
involved [29]   5/6 31/20 31/21 41/21 59/18 66/2 66/5 71/15 105/23 106/1 106/2 112/11 116/6 137/15 137/18 148/21 158/22 164/17 168/12 176/21 212/21 213/10 213/14 213/18 213/25 214/3 214/12 215/13 215/20
involvement [3]   70/21 215/2 215/25
involves [1]   115/18
involving [8]   18/20 18/25 42/5 59/5 108/14 111/9 213/10 214/16
irregularities [1]   216/15
IRS [6]   23/13 23/16 96/1 103/2 103/3 107/5
is [815]
is a [1]   158/17
isn't [2]   13/8 117/16
issue [31]   4/17 4/18 9/8 10/24 13/4 27/9 32/17 61/16 123/16 136/19 142/13 158/16 162/9 179/7 189/23 203/25 211/23 226/13 228/23 231/16 232/1 232/22 233/8 233/12 234/1 234/12 234/19 234/24 236/4 236/16 238/19
issues [34]   3/16 4/5 4/6 4/21 5/15 9/2 9/11 9/13 10/15 33/11 38/5 38/9 38/10 41/22 64/1 71/5 119/4 121/18 136/20 141/18 175/12 175/13 213/2 221/22 221/25 226/6 226/9 226/12 226/18 228/13 234/22 235/9 236/22 238/17
it [553]

**I**

items **[1]**  12/8
its **[5]**  79/15 139/24 158/2 226/16 231/1
itself **[4]**  96/20 165/7 214/19 234/4

**J**

jail **[4]**  25/2 82/6 185/13 190/6
James **[1]**  20/5
Jean **[1]**  20/10
Jeff **[3]**  15/9 175/7 177/15
JEFFREY **[4]**  1/18 3/6 19/8 20/6
Jencks **[4]**  11/5 13/8 237/17 239/14
jeopardy **[2]**  96/10 96/14
Jessica **[1]**  20/16
job **[10]**  68/1 68/6 101/18 130/8 165/4 180/2 197/9 211/20 212/5 213/17
jobs **[2]**  67/24 193/17
John **[1]**  20/6
Jonathan **[1]**  20/6
Jonelle **[1]**  20/6
judge **[20]**  1/10 15/18 15/19 39/2 42/14 44/6 44/18 53/17 63/8 89/3 89/6 124/14 132/9 137/23 137/24 150/24 161/4 177/4 192/20 202/14
judging **[1]**  86/13
judgment **[5]**  83/15 158/15 159/1 159/3 178/8
judicial **[1]**  160/16
jump **[1]**  5/12
jumping **[1]**  45/17
June **[1]**  97/16
juries **[1]**  91/1
juror **[237]**  6/7 7/17 8/1 17/6 19/24 23/14 24/12 25/15 26/2 26/6 26/10 28/8 28/13 28/14 28/16 29/14 30/3 30/6 30/19 30/20 37/10 37/15 38/18 40/5 45/2 45/3 47/5 47/15 48/8 48/10 48/13 48/16 48/19 50/13 50/15 54/21 54/22 55/24 55/25 58/25 59/2 62/3 62/4 63/11 63/14 64/9 64/11 64/22 65/9 65/10 67/11 67/12 74/8 75/15 75/16 75/18 76/4 76/6 76/25 77/1 78/9 78/11 80/21 80/22 81/14 82/13 83/3 83/4 84/17 84/18 85/4 90/1 90/2 90/15 91/8 91/10 92/23 93/2 93/19 93/20 94/20 94/22 96/11 97/12 97/13 97/15 99/16 99/18 100/9 100/11 103/24 103/25 105/9 105/10 107/14 107/24 108/10 110/12 110/13 111/7 112/24 113/6 113/16 113/18 116/13 116/14 116/17 117/5 118/5 118/15 118/19 119/21 119/22 119/23 130/3 130/5 134/5 134/6 134/11 135/14 135/18 136/1 136/12 136/13 136/17 139/14 139/17 140/9 140/18 140/24 142/21 147/22 147/23 148/17 148/18 150/17 150/19 151/10 151/21 151/22 152/8 154/18 155/25 156/1 159/23 160/10 160/13 160/21 160/24 161/1 161/6 161/15 161/16 162/19 163/14 165/11 165/22 165/23 167/6 167/9 169/3 170/24 170/25 172/7 172/9 174/10 174/12 179/10 179/11 179/12 180/9 180/10 183/1 183/3 183/25 184/1 184/14 184/23 185/3 185/8 186/7 186/10 187/21 188/22 188/22 188/23 188/24 188/25 189/1 189/14 189/15 192/8 193/12 193/15 194/18 194/19 198/4 198/6 198/11 198/24 199/12 201/5 201/6 202/4 202/21 202/22 203/12 203/13 204/19 204/20 205/20 205/23 206/8 206/10 206/13 206/15 210/4 211/4 212/16 217/7 219/25 220/1 220/3 220/5 220/6 220/7 220/8 220/8 220/9 220/10 220/12 220/13 220/14 220/15 220/16 220/17 220/19
juror's **[1]**  8/12
jurors **[33]**  5/13 6/11 7/16 9/3 10/15 14/23 16/4 19/23 27/2 31/22 33/25 71/9 72/1 79/1 79/2 113/7 120/12 188/12 188/13 189/5 206/7 217/1 218/5 218/15 220/22 222/7 222/8 223/10 225/4 227/13 227/18 228/6 229/4
jury **[92]**  1/9 3/12 5/4 5/5 5/6 5/9 6/17 6/17 6/24 7/10 7/11 7/13 7/14 10/9 10/9 10/10 15/2 15/4 15/24 16/2 16/6 16/12 16/25 17/24 21/3 23/22 23/22 25/25 32/19 37/20 57/6 58/17 79/8 79/15 79/16 82/14 82/22 85/6 85/11 90/7 97/16 97/17 100/17 101/8 110/10 110/11 111/8 120/7 132/22 132/23 134/19 145/5 148/2 152/19 152/22 152/25 155/16 162/14 167/16 169/7 184/16 185/20 187/22 191/8 202/6 202/12 204/12 207/20 209/18 211/8 219/16 219/22 219/22 221/17 221/18 221/20 222/10 223/24 223/25 225/13 225/16 226/22 227/11 227/21 228/8 228/9 228/12 228/17 229/2 233/7 234/12 236/10
just **[211]**  4/15 5/11 5/17 5/22 8/10 8/17 9/5 9/8 10/25 12/4 13/6 13/16 14/13 14/20 16/14 16/22 17/12 18/2 18/6 18/12 22/15 27/20 28/6 29/6 29/17 30/11 31/5 31/11 34/5 34/13 34/19 37/11 42/8 42/11 42/13 44/10 44/16 45/20 49/11 49/11 52/7 52/15 52/22 53/18 57/24 58/13 60/1 60/20 60/24 61/2 61/12 61/19 62/16 63/25 66/23 67/16 68/5 68/13 68/17 68/24 69/25 70/21 71/22 72/9 72/19 72/22 72/23 74/18 76/8 77/18 78/23 79/21 79/25 80/25 82/16 83/7 83/8 83/12 83/16 83/20 83/24 86/13 89/3 91/19 91/21 92/6 92/22 96/6 97/18 98/2 98/4 98/20 99/4 101/21 103/12 104/20 105/12 107/25 109/22 110/6 111/3 112/13 113/5 113/8 115/10 115/19 117/15 117/23 120/2 121/7 121/19 122/23 123/10 131/20 131/22 132/4 132/19 133/8 138/1 140/4 140/19 140/22 141/1 141/13 141/13 142/5 142/13 143/8 144/21 148/9 156/22 158/1 158/13 158/25 159/24 160/16 160/19 168/20 168/24 169/2 172/13 172/14 174/1 174/17 175/20 176/1 177/16 178/16 179/1 183/18 187/2 187/24 188/17 189/6 190/1 190/11 190/16 191/3 191/16 191/19 191/19 191/20 192/2 192/3 192/4 192/5 197/2 197/3 199/18 206/1 209/17 210/3 211/9 213/16 213/22 214/2 215/8 217/10 217/25 218/25 218/25 221/13 221/14 221/21 221/25 223/3 223/6 223/10 224/1 224/18 225/1 226/19 227/7 228/18 229/1 229/2 231/18 232/4 232/15 232/15 233/24 234/9 236/11 237/9 237/14 237/19 237/22 237/23 238/20 238/24 238/24
just would **[1]**  237/9
justice **[16]**  1/13 1/20 19/7 24/25 85/21 85/25 116/1 165/8 168/3 168/16 168/17 169/4 185/7 213/5 214/5 221/6
Justin **[1]**  20/7
JW **[1]**  20/5

**K**

Kaderabek **[1]**  20/7
Karpeles **[1]**  232/4

Kathleen **[1]**  20/7
Katie **[3]**  169/24 170/1 170/16
keep **[12]**  7/5 18/4 66/22 116/1 133/22 189/12 209/24 210/1 210/2 223/7 224/4 234/3
keeping **[2]**  62/16 226/22
kept **[1]**  58/15
key **[1]**  50/4
kid **[1]**  56/5
kidney **[1]**  65/18
kids **[3]**  56/7 56/14 182/7
killing **[1]**  102/13
kind **[51]**  22/24 27/8 31/12 34/14 36/9 49/15 50/24 50/24 58/5 68/13 69/8 69/19 70/1 70/2 70/4 70/10 70/25 71/13 71/23 73/1 73/12 75/1 81/3 81/19 96/14 106/3 113/24 114/9 115/18 115/23 122/6 157/14 167/13 167/15 167/18 168/21 173/7 175/1 177/16 181/12 181/25 189/24 190/7 190/8 191/24 192/14 192/16 192/18 194/23 222/20 222/25
kinds **[2]**  214/2 214/21
knew **[2]**  72/24 72/24
know **[176]**  4/17 4/19 5/20 6/8 6/14 6/24 7/6 13/1 13/13 13/14 13/15 13/17 14/2 14/7 14/9 14/11 14/13 18/2 19/9 19/13 19/18 19/23 20/14 20/17 27/6 29/18 33/5 35/5 36/2 39/8 39/9 41/11 44/14 45/25 46/2 46/9 46/20 49/2 50/1 50/2 50/7 51/1 51/6 51/7 51/10 52/10 53/5 54/8 56/8 58/20 67/23 68/24 69/7 70/20 71/1 71/3 71/3 71/8 71/14 71/20 71/25 72/1 72/2 72/2 77/10 77/11 77/12 79/20 80/6 80/7 83/13 87/10 91/18 92/8 94/4 95/3 96/15 102/22 103/16 105/25 110/19 112/2 112/25 117/6 117/13 117/17 121/24 123/22 123/22 124/4 132/7 132/23 133/8 133/15 136/17 138/10 140/7 142/7 142/13 143/6 143/17 143/19 144/12 146/10 146/12 146/18 147/1 147/4 148/6 152/16 153/3 153/22 154/3 155/13 157/14 159/21 164/3 165/9 166/21 170/1 171/19 173/4 173/10 177/13 177/14 177/18 178/2 179/2 180/15 186/22 188/2 189/25 191/4 191/18 191/23 191/24 192/15 195/2 195/8 195/22 196/2 196/3 196/5 200/4 200/11 205/22 210/3 210/11 210/12 210/13 210/21 211/8 211/25 216/5 218/6 222/22 223/10 225/10 227/20 227/20 229/21 230/20 231/3 231/8 232/4 232/12 232/16 235/7 236/9 236/15 236/23 236/24 237/21 238/22 239/1 239/16
knowledge **[15]**  16/4 68/16 69/8 71/10 71/12 72/12 143/5 143/8 143/15 144/9 174/2 197/18 233/11 236/7 236/13
known **[2]**  18/22 140/25
knows **[7]**  33/21 136/16 169/8 169/15 185/18 224/1 232/13
Krulikowski **[2]**  20/11 230/9

**L**

lack **[5]**  39/4 86/12 104/10 106/10 177/5
lady **[1]**  155/12
laid **[1]**  204/1
Lamb **[1]**  20/10
landlord **[1]**  151/8
landlord-tenant **[1]**  151/8
Language **[1]**  193/22
laptop **[1]**  13/3
large **[9]**  5/23 45/23 45/25 113/25 149/20 173/1 216/2 234/13 237/15
largely **[1]**  11/9
Larry **[3]**  18/25 20/7 144/16
last **[22]**  8/24 9/17 9/17 10/24

**L**

last... [18] 13/18 35/20 74/3 75/21 79/11 81/1 97/16 110/8 119/2 119/8 140/24 153/13 194/23 217/16 220/17 223/20 226/7 237/14
late [2] 58/15 225/8
later [7] 7/5 31/9 119/13 134/2 152/16 182/17 223/24
laundering [12] 16/16 16/17 18/20 92/2 92/3 92/4 92/14 143/7 212/21 212/24 213/7 213/25
Lauren [2] 175/7 177/15
law [125] 2/3 8/2 16/8 20/16 23/18 24/5 24/13 24/16 24/21 27/7 27/12 27/14 34/4 34/4 35/3 38/23 38/23 39/14 39/17 39/19 39/22 39/23 42/14 42/19 42/19 44/3 44/4 44/8 44/12 44/18 45/9 45/10 45/15 45/19 45/20 45/20 45/23 46/20 53/15 53/16 61/10 61/21 63/18 63/19 63/20 63/22 82/3 86/7 86/11 86/19 89/11 89/13 89/18 91/21 93/23 93/24 94/3 99/20 99/25 101/13 102/6 104/10 105/14 106/18 106/20 106/21 106/23 106/25 117/10 117/11 117/18 136/18 137/6 137/8 137/9 137/11 137/13 138/2 141/1 142/7 143/11 144/2 144/7 144/9 149/7 149/8 150/21 150/25 151/8 151/13 157/1 157/2 159/24 163/17 163/18 164/4 164/8 164/12 164/14 164/17 164/21 165/12 166/20 172/21 175/5 176/6 176/25 177/2 177/3 177/23 177/25 178/9 178/13 178/17 178/17 180/12 196/12 196/16 199/23 200/3 200/8 200/11 200/21 212/19 213/4
laws [15] 23/7 23/10 33/18 41/4 74/17 88/5 88/6 91/12 92/6 137/21 149/15 156/25 159/6 198/19 214/4
lawsuit [1] 40/17
lawyer [11] 93/25 99/21 99/22 140/3 172/23 187/9 187/11 189/7 196/13 200/2 208/20
lawyers [12] 10/18 16/11 17/14 17/19 18/3 39/18 106/19 166/17 168/12 172/25 185/11 221/22
lay [4] 233/14 233/17 233/23 234/3
lead [2] 21/5 167/13
leadership [1] 115/17
lean [2] 44/1 168/19
learned [3] 45/19 57/22 140/2
learning [1] 98/21
least [9] 4/18 14/9 16/20 29/7 123/7 195/8 228/2 235/7 237/19
leave [15] 17/15 26/20 32/14 55/4 66/10 66/19 90/9 124/3 146/24 147/5 156/5 204/7 204/8 217/11 238/13
leaves [2] 95/2 113/5
leaving [1] 95/2
Lee [1] 20/13
left [1] 61/8
legal [29] 19/17 21/16 24/4 39/14 39/16 45/18 86/22 93/22 99/20 106/17 138/14 139/24 144/5 149/6 150/21 150/24 151/4 151/5 151/13 166/16 168/1 168/2 172/20 172/22 187/8 192/16 221/22 228/13 229/10
legislative [1] 38/4
legitimate [5] 73/16 113/8 142/13 159/13 170/13
lends [1] 165/7
length [6] 29/6 55/13 78/11 111/3 211/9 227/12
lengthier [2] 31/19 31/20
lengthy [5] 5/10 8/22 228/7 228/7 228/11
Leo [2] 20/7 230/11
less [7] 24/15 35/3 145/14 156/3

163/17 163/21 163/22
let [64] 4/17 4/18 7/5 14/7 15/21 18/2 27/6 29/13 29/18 34/8 36/19 43/22 44/10 45/17 51/19 67/15 69/10 72/14 74/3 90/17 95/14 107/23 109/23 115/11 119/18 120/16 131/23 136/19 137/14 145/10 148/15 154/12 154/21 154/24 155/13 155/16 158/13 159/8 161/13 163/12 164/5 168/23 168/24 170/19 174/20 180/7 183/23 188/21 193/7 193/9 194/16 204/16 205/19 205/19 205/21 212/13 220/23 223/10 225/10 227/20 229/21 233/3 238/13 239/16
let's [16] 5/7 8/22 35/25 40/4 50/16 59/3 90/4 91/11 94/24 116/15 118/20 130/6 166/15 186/11 226/18 230/17
lets [1] 183/7
letter [1] 12/1
letting [3] 108/2 117/6 186/22
level [4] 25/7 43/25 52/5 159/1
levels [1] 232/10
Levin [1] 20/6
Levy [1] 20/16
librarian [1] 170/4
librarians [2] 167/13 170/7
library [3] 167/19 169/16 169/24
license [1] 16/18
Lichtenstein [2] 18/22 20/5
life [6] 146/15 146/21 151/1 194/10 222/18 224/21
lift [1] 31/11
light [4] 55/21 78/4 120/17 123/1
like [163] 4/1 4/20 6/19 18/1 31/1 33/23 38/6 39/16 42/19 48/3 49/19 49/21 49/21 49/22 50/22 51/8 51/8 51/9 51/10 51/10 51/12 51/13 51/14 51/14 51/15 51/17 52/11 53/3 53/3 53/6 60/22 62/5 68/14 68/14 68/15 69/4 69/16 69/17 69/20 69/20 69/21 70/4 70/10 70/11 70/11 70/22 70/23 70/23 70/25 71/16 71/20 71/21 72/10 72/23 72/23 73/1 73/1 73/12 73/14 81/10 81/15 81/16 92/22 92/25 95/22 96/13 96/15 96/16 98/18 101/2 101/24 104/23 106/2 106/3 106/4 106/5 108/5 112/12 113/23 115/14 116/24 117/13 118/6 122/5 130/9 130/9 131/9 131/10 131/15 131/15 132/6 132/11 132/15 133/9 133/16 133/22 133/25 141/16 141/20 142/1 143/19 143/20 143/21 145/17 147/3 148/10 152/22 153/15 154/16 160/17 161/8 167/14 169/18 170/13 173/22 175/15 176/19 177/12 181/11 182/7 182/9 187/15 188/16 190/7 191/18 191/19 191/23 192/2 192/3 192/14 192/15 192/19 195/24 203/22 205/16 205/22 208/18 210/11 210/13 210/20 210/21 211/13 211/18 211/19 211/24 211/25 211/25 212/7 214/23 215/16 218/2 225/10 226/1 227/2 227/5 227/24 229/9 233/17 235/16 237/7 237/19 238/10 238/21
likely [11] 57/25 58/18 62/20 114/24 158/5 158/21 163/17 163/21 163/22 192/10 195/11
limit [2] 10/4 230/21
limited [3] 10/16 66/12 66/21
LINDSAY [3] 2/6 240/3 240/12
line [15] 13/20 41/18 120/13 120/14 120/21 121/1 121/2 132/17 178/24 194/24 206/19 208/10 209/1 226/14 232/17
lines [3] 8/11 206/6 218/4
list [20] 27/23 67/16 105/12 116/2 138/8 143/11 147/13 147/18 205/20 206/11 206/15 208/2 208/3

208/5 208/23 208/24 210/2 217/7 217/8 218/13
listed [4] 26/14 33/2 85/19 101/12
listen [8] 18/15 35/11 70/10 70/24 72/8 145/24 163/23 178/8
listened [2] 70/14 110/18
listening [1] 86/13
literally [2] 95/2 95/21
litigation [2] 151/1 173/6
litigator [1] 31/9
little [32] 3/20 6/14 13/7 14/5 32/6 33/10 34/17 35/5 44/10 72/19 82/1 87/20 92/9 92/24 96/11 101/4 115/12 117/12 130/15 138/21 158/4 158/14 182/17 183/8 191/13 209/17 211/7 212/18 221/15 224/14 226/5 237/14
live [10] 18/10 25/20 77/16 78/19 84/24 118/23 134/14 135/24 162/4 194/7
lived [7] 29/24 47/11 77/3 152/6 184/10 185/17 202/2
lives [1] 78/19
living [1] 29/25
LLC [1] 19/3
load [1] 55/6
local [6] 24/21 24/22 25/7 59/12 65/25 101/16
locked [1] 192/3
long [45] 5/12 6/16 29/11 29/11 30/9 33/3 36/5 46/13 47/11 49/6 49/11 50/7 56/6 62/23 64/15 65/22 66/18 77/15 79/7 79/11 79/15 79/23 79/24 85/15 105/12 115/20 134/23 138/8 152/6 156/7 162/23 162/25 163/1 180/24 184/10 191/25 202/2 222/16 223/19 223/25 224/1 227/18 230/17 238/8 238/10
long in [1] 56/6
longer [6] 18/10 31/19 91/3 101/4 166/4 166/18
longterm [1] 83/7
look [24] 4/18 5/16 5/17 12/20 13/6 13/16 14/5 14/6 14/18 14/19 19/22 27/21 118/6 132/5 165/6 229/11 229/13 237/7 237/24 238/16 238/20 239/3 239/5 239/15
looked [2] 13/13 157/14
looking [4] 4/21 32/9 86/14 229/17
looks [2] 4/1 62/5
lose [2] 194/4 206/11
losing [2] 9/17 146/24
loss [1] 103/12
lost [4] 49/10 50/2 50/4 50/6
lot [28] 3/13 5/11 6/18 33/14 34/15 35/20 36/5 36/6 36/7 36/8 36/9 41/22 45/7 51/8 58/5 71/19 111/2 117/15 138/1 157/14 159/7 159/15 172/24 173/6 173/19 191/24 195/16 223/13
love [1] 121/23
loved [2] 66/12 66/21
Low [1] 104/22
luck [1] 55/23
Luke [1] 20/8
lunch [13] 46/17 66/16 101/3 108/6 109/24 110/2 110/8 113/4 113/5 113/14 118/17 119/25 237/5
lung [1] 85/1
lymphoma [1] 84/25

**M**

ma'am [13] 30/14 43/21 44/2 48/2 48/5 76/20 82/22 99/7 120/4 145/23 169/23 172/1 181/25
machine [3] 4/10 4/15 29/1
made [4] 11/24 115/4 218/5 225/23
Magazine [1] 18/17
magazines [1] 53/4
mail [1] 201/18

**M**

main [1]  232/17
maintain [1]  122/14
maintenance [1]  62/18
major [1]  211/23
majority [1]  11/4
make [58]  3/13 5/1 7/10 10/13
  11/8 12/18 14/16 18/7 21/6 22/5
  22/9 23/13 24/11 25/16 26/5 26/8
  26/9 26/15 28/8 29/3 44/17 52/8
  61/9 62/20 70/4 73/3 74/21 78/7
  85/14 89/15 95/3 96/17 106/13
  114/24 116/3 116/16 117/6 120/1
  139/2 141/3 143/23 144/1 154/17
  172/15 178/8 186/21 193/8 196/7
  212/3 215/8 218/10 219/14 219/16
  222/17 222/18 228/8 235/20 236/11
makes [3]  25/16 158/5 223/13
making [5]  13/7 185/6 219/12
  232/17 233/19
malpractice [3]  30/8 34/19 34/24
man [1]  194/23
manage [3]  113/24 195/10 209/25
management [6]  115/23 144/13
  197/14 209/20 210/5 210/6
manager [2]  95/6 102/2
managerial [1]  94/25
mandatory [1]  110/21
manner [3]  10/16 224/8 225/16
Mansur [1]  20/8
manufacturing [1]  48/4
many [14]  26/16 39/15 39/15 43/8
  45/25 46/1 46/2 76/3 113/23
  136/18 140/25 142/2 166/3 226/8
March [22]  6/13 25/25 32/11 56/4
  57/5 58/15 79/7 79/9 100/18
  115/21 153/16 153/21 154/5 161/20
  177/15 177/19 179/21 179/22 203/3
  204/8 223/24 240/10
March 10th [1]  58/15
March 2nd [1]  203/3
March 5th [1]  179/22
March 6th [1]  161/20
March 7th [6]  6/13 25/25 79/7
  79/9 100/18 223/24
marijuana [3]  74/18 192/15 192/16
Marines [3]  93/25 94/1 94/4
mark [7]  53/25 54/6 57/11 206/8
  208/23 230/4 232/4
market [1]  136/4
marketing [2]  30/23 176/20
marketplaces [1]  69/3
marks [2]  188/19 188/22
marshal [3]  4/23 4/25 225/21
Marshals [7]  105/16 105/17 106/6
  106/10 143/14 143/18 143/23
Martin [1]  20/9
Mary's [1]  153/18
Maryland [3]  182/10 182/15 185/17
mask [11]  32/18 85/3 85/5 85/6
  85/10 85/15 162/17 162/19 162/25
  163/2 163/3
masks [3]  32/21 163/6 163/7
Massachusetts [4]  29/25 30/7
  149/10 200/10
material [1]  146/15
maternity [1]  156/5
math [5]  188/11 188/16 189/10
  194/4 217/13
Matt [2]  230/5 230/6
matter [7]  31/17 89/16 138/4
  164/21 228/19 239/12 240/5
matters [2]  17/22 224/21
Matthew [2]  20/9 20/9
Mattson [1]  20/9
Max [1]  20/10
may [56]  4/2 5/5 5/25 8/2 10/3
  13/14 14/5 20/1 21/16 21/22 24/13
  27/3 27/4 27/6 27/13 27/17 27/18
  29/6 42/4 42/22 44/2 45/19 46/4
  47/23 72/2 74/4 74/8 74/8 81/12

88/12 91/6 97/1 113/12 139/5
  141/3 141/3 141/22 170/13 186/16
  195/6 213/3 213/5 214/20 216/1
  217/5 217/21 221/19 221/19 224/14
  224/15 224/18 227/17 228/16 236/4
  236/8 238/10
maybe [26]  11/1 13/10 35/6 40/23
  46/15 52/5 56/13 66/15 68/17 77/6
  77/10 83/12 83/23 101/4 109/10
  115/11 121/7 121/25 188/17 202/13
  221/23 228/6 233/3 238/21 238/22
  238/24
Mayor [3]  175/2 175/9 176/10
mayoral [1]  176/17
Mazarin [2]  10/1 20/13
Mazars [2]  9/25 20/12
me [141]  3/7 3/19 3/20 3/22 4/17
  4/18 4/19 4/21 5/17 5/22 7/24
  10/11 10/14 10/19 14/7 14/8 14/9
  15/10 15/21 18/2 18/6 20/17 27/1
  27/6 28/25 29/12 29/13 29/18 34/8
  34/11 35/16 35/17 36/3 36/19 37/2
  37/3 38/2 38/6 41/14 42/17 43/22
  44/10 45/17 48/1 50/19 51/19 58/5
  60/18 65/24 66/13 67/15 69/10
  71/8 71/13 72/14 74/3 74/10 74/21
  76/16 79/10 87/14 89/6 92/20 95/2
  95/14 101/7 104/19 107/23 109/23
  114/2 115/11 116/24 120/23 121/16
  121/16 122/24 123/19 131/23 132/2
  136/16 136/19 137/14 141/2 145/10
  152/16 153/6 153/10 153/13 153/13
  154/12 155/13 156/3 157/21 158/6
  158/13 159/8 160/17 161/3 161/9
  163/8 164/5 164/10 166/11 167/19
  168/23 168/24 171/11 173/22
  174/20 174/24 179/5 179/6 183/18
  188/21 190/2 191/18 191/22 191/24
  192/3 195/2 203/24 205/19 205/19
  206/19 220/23 222/5 223/10 227/8
  227/20 228/11 229/8 229/9 229/16
  229/21 230/6 230/24 234/1 238/13
  238/18 239/5 239/16
mean [33]  8/17 9/18 29/10 34/24
  35/2 36/1 39/8 46/4 54/12 58/18
  60/22 72/6 77/6 79/20 88/20 91/14
  92/10 92/22 98/22 106/2 121/10
  136/14 141/25 146/23 164/25
  188/14 192/14 193/23 199/15 232/8
  233/2 235/7 236/4
means [6]  13/25 26/22 27/8 122/7
  145/13 222/21
meant [4]  33/8 88/19 144/18
  190/11
meantime [1]  219/3
measure [1]  51/15
media [6]  18/16 18/17 139/20
  175/15 231/22 233/1
medical [4]  30/7 119/1 154/16
  162/9
medication [1]  25/16
meet [10]  130/19 203/22 211/14
  211/15 212/6 212/7 212/8 219/7
  225/18 225/21
meeting [2]  116/3 212/5
meetings [7]  38/1 81/25 113/23
  115/15 115/19 115/25 116/7
meets [1]  20/21
megabyte [2]  12/24 14/12
megabytes [2]  11/12 237/12
Megan [1]  20/16
member [60]  20/17 23/15 24/1 24/3
  24/6 24/18 25/4 25/5 27/15 29/22
  33/1 37/22 39/13 41/6 53/22 60/11
  63/18 82/3 85/18 86/22 93/22
  95/10 95/19 95/25 99/19 102/10
  102/18 103/1 104/4 104/15 106/17
  107/5 108/13 108/24 109/7 115/17
  136/16 138/13 142/23 144/5 148/20
  148/23 149/6 150/20 156/15 165/25
  166/8 166/15 171/5 172/20 180/21
  187/1 187/8 189/19 195/19 196/11

199/22 200/6 200/18 204/25
members [3]  21/3 138/8 199/24
mental [3]  160/18 190/7 191/17
mention [4]  3/14 5/3 29/14 74/16
mentioned [12]  31/3 32/15 42/25
  49/22 70/9 72/17 75/1 86/23
  131/22 159/19 195/20 200/7
mentioning [2]  51/13 233/21
merely [1]  21/1
mess [2]  232/5 232/10
messages [1]  11/25
meth [1]  12/10
methods [1]  23/19
Metro [7]  56/9 56/13 109/1 109/3
  109/20 166/11 225/9
Miami [1]  204/6
MICHAEL [5]  2/2 3/9 15/14 19/16
  20/10
microphone [5]  3/18 12/18 42/12
  44/1 230/8
microphones [1]  43/25
mid [1]  115/21
middle [1]  81/25
might [31]  9/18 9/19 10/11 10/17
  13/9 13/9 13/9 17/22 26/5 29/7
  31/1 31/11 32/21 52/8 52/11 52/12
  52/18 53/5 65/24 77/12 82/1 82/1
  117/12 118/5 163/16 178/4 178/5
  199/16 203/24 233/10 233/14
military [1]  68/13
mind [18]  8/1 8/10 8/10 35/11
  74/8 107/7 114/22 115/8 149/12
  151/10 159/10 171/14 180/18
  181/15 199/20 200/14 201/25 205/5
mine [3]  130/20 140/25 141/25
minuscule [1]  132/15
minute [10]  19/21 56/9 105/12
  107/18 110/1 110/9 115/11 218/25
  219/13 221/12
minutes [6]  5/19 61/6 218/19
  219/15 230/20 230/21
Miroff [2]  20/11 230/9
misconduct [1]  231/12
misdemeanor [2]  191/5 191/6
miss [4]  113/25 154/4 154/25
  208/12
missed [4]  13/11 144/25 172/11
  238/10
missing [2]  145/11 239/17
mistaken [3]  89/14 89/18 154/6
mistakenly [1]  199/10
mistakes [1]  89/16
mix [1]  149/1
mixer [1]  73/12
mixers [7]  73/9 73/13 73/16 74/4
  74/5 84/1 84/3
mixing [2]  19/1 144/16
Mobile [1]  171/9
mom [1]  204/3
moment [6]  133/23 178/24 188/9
  207/12 227/15 233/19
Monday [3]  28/22 204/10 224/12
money [26]  16/16 16/17 16/17
  16/18 50/6 60/2 60/3 73/19 87/11
  87/12 87/13 92/2 92/3 92/4 98/23
  143/7 146/17 146/20 176/3 194/8
  201/22 212/21 212/24 213/7 213/25
  215/4
Montgomery [1]  134/13
month [12]  6/6 6/23 31/10 32/9
  95/22 110/21 156/5 175/2 179/17
  194/5 194/22 211/17
month's [1]  146/25
months [2]  65/23 192/3
moral [1]  26/7
more [73]  10/4 13/19 21/23 24/15
  27/18 34/17 42/15 42/20 53/4
  62/20 65/17 66/3 66/21 71/3 72/19
  73/22 77/18 81/19 83/13 83/24
  86/8 88/12 91/24 92/9 92/24 96/12
  114/24 115/12 118/16 122/7 131/13
  133/16 134/1 144/1 146/2 146/2

**M**

more... **[37]**  147/3 156/3 158/14 162/18 163/16 164/14 164/22 168/19 170/13 175/13 178/1 187/15 188/16 189/5 189/11 191/14 200/4 203/25 207/7 208/17 208/18 209/17 209/20 211/7 212/18 215/22 216/6 221/15 226/5 226/15 226/17 228/9 228/15 231/19 231/24 233/6 238/19

Morgan **[1]**  18/22

morning **[25]**  3/8 3/11 4/1 15/12 15/13 15/17 28/24 46/17 56/16 66/16 81/22 96/22 118/21 118/22 119/7 186/20 219/8 225/8 225/20 225/22 237/2 237/3 238/18 239/3 239/16

mornings **[2]**  31/7 31/24

mortgage **[2]**  145/17 146/25

MOSS **[6]**  1/9 15/18 42/14 124/14 137/23 137/25

most **[11]**  11/9 14/15 14/17 158/5 158/6 163/7 192/9 195/11 198/21 210/19 212/5

mostly **[4]**  101/24 167/23 167/25 181/9

mother **[12]**  78/19 78/20 78/25 79/4 84/24 85/23 86/24 87/23 106/24 156/12 190/2 200/2

mother's **[4]**  85/12 119/5 119/12 203/25

motion **[14]**  7/8 8/25 9/7 9/8 9/19 10/8 10/23 36/21 36/22 122/24 205/23 226/7 230/25 231/11

motions **[3]**  8/25 141/3 226/8

motives **[1]**  34/16

mounting **[1]**  231/2

mouths **[1]**  223/7

move **[23]**  28/10 32/8 32/12 36/25 37/12 58/14 73/19 79/12 93/13 140/24 141/4 193/2 206/15 208/24 217/1 217/6 217/17 217/21 224/7 226/21 227/9 230/8 231/11

moved **[2]**  62/25 122/4

moving **[4]**  37/14 208/7 224/4 224/18

MPD **[1]**  175/5

Mr **[4]**  99/6 183/21 212/11 234/17

Mr. **[169]**  3/22 3/24 12/16 13/2 16/24 19/10 19/10 19/14 19/19 19/19 20/19 21/9 21/10 22/16 30/13 30/15 36/15 37/1 42/10 46/24 47/1 47/17 47/22 49/12 50/9 58/1 58/12 61/18 63/1 63/4 64/3 64/5 64/24 65/5 67/4 67/6 72/16 73/6 73/25 76/17 76/19 80/16 80/18 82/19 82/21 83/19 84/13 89/8 89/22 90/22 90/24 93/3 93/6 94/15 94/17 97/6 97/8 98/9 100/2 100/5 103/14 103/17 103/19 105/4 105/6 107/9 107/11 109/18 112/16 112/21 113/11 116/8 116/10 118/4 118/11 121/13 122/12 123/2 123/5 123/8 123/15 123/8 135/8 135/10 136/6 136/8 137/3 137/5 140/12 140/14 141/10 141/20 145/20 145/22 150/9 150/13 151/15 151/17 154/8 154/10 154/19 157/18 157/20 158/11 160/3 160/6 165/14 165/16 166/25 167/2 169/13 171/22 171/25 174/4 174/6 175/23 177/20 178/22 180/4 181/24 182/20 182/22 183/19 184/18 184/20 188/4 188/6 189/1 192/22 192/24 193/3 193/7 197/20 197/25 200/22 200/25 202/15 202/17 205/7 205/9 206/13 207/11 207/23 208/8 208/18 210/23 212/9 215/7 216/13 216/19 219/8 225/23 226/2 226/23 228/21 230/22 231/17 232/13 234/7 234/17 235/2 235/2 235/11 237/7 237/13 238/4 238/5 238/14 238/16

**N**

N.W **[1]**  1/16

N2IA **[1]**  68/11

Nakamoto **[1]**  197/22

name **[4]**  3/4 15/7 22/16 87/11

names **[1]**  87/7

nanny **[2]**  156/11 156/12

narcotics **[2]**  23/7 41/4

NASA **[3]**  101/17 101/2 102/1

national **[3]**  69/21 108/16 135/6

Mr. Bezos **[1]**  175/23

Mr. Brown **[2]**  19/10 234/7

Mr. Cabanas **[2]**  234/17 235/2

Mr. Ekeland **[84]**  3/24 12/16 19/19 30/15 36/15 37/1 42/10 47/1 47/17 49/12 58/1 63/1 64/5 65/5 67/4 72/16 73/25 76/17 80/18 82/19 83/19 89/8 90/24 93/6 94/15 97/8 98/9 100/2 103/14 103/17 105/6 107/11 112/16 116/8 118/11 121/13 122/12 123/2 133/20 135/8 136/6 137/5 140/12 141/10 145/20 150/9 151/17 154/10 154/19 157/20 158/11 160/3 165/14 167/2 171/22 174/6 177/20 182/22 183/19 184/18 188/4 189/1 192/24 193/3 197/20 200/22 202/15 205/7 206/13 207/11 207/23 208/8 208/18 215/7 216/19 226/23 228/21 230/22 231/17 235/11 237/7 238/5 238/14 238/16

Mr. Ekeland's **[1]**  22/16

Mr. Fischbach **[1]**  237/13

Mr. Hassard **[2]**  19/19 238/4

Mr. Pearlman **[61]**  19/10 30/13 46/24 47/22 50/9 58/12 61/18 63/4 64/3 64/24 67/6 73/6 76/19 80/16 82/21 84/13 89/22 90/22 93/3 94/17 97/6 100/5 103/19 105/4 107/9 109/18 112/21 113/11 116/10 118/4 135/10 136/8 137/3 140/14 141/20 145/22 150/13 151/15 154/8 157/18 160/6 165/16 166/25 169/13 171/25 174/4 178/22 180/4 181/24 182/20 184/20 188/6 192/22 193/7 197/25 200/25 202/17 205/9 210/23 212/9 216/13

Mr. Sterlingov **[13]**  3/22 16/24 19/14 20/19 21/9 21/10 123/5 123/8 123/15 219/8 225/23 226/2 232/13

Mr. Sterlingov's **[1]**  13/2

Mr. Verret **[1]**  235/2

Ms **[1]**  14/4

Ms. **[17]**  9/14 12/23 14/8 14/13 19/10 19/10 19/11 19/20 19/20 225/1 225/7 225/10 225/18 238/1 238/14 238/25 239/4

Ms. De **[1]**  19/10

Ms. Galiwas **[1]**  19/20

Ms. Norman **[1]**  19/20

Ms. Pelker **[8]**  12/23 14/8 14/13 19/10 238/1 238/14 238/25 239/4

Ms. Peterson **[1]**  225/18

Ms. Ramjee **[1]**  19/11

Ms. Still **[1]**  9/14

Ms. Walker **[3]**  225/1 225/7 225/10

Mt **[9]**  231/2 232/3 232/12 232/13 232/15 232/25 234/10 235/3 235/22

Mt. **[1]**  231/2

Mt. Gox **[1]**  231/2

much **[21]**  11/7 32/22 55/6 55/22 79/20 119/20 132/13 145/10 145/14 146/17 161/7 161/8 176/16 190/5 192/6 192/16 193/8 194/2 218/22 219/5 227/19

multiple **[5]**  39/17 231/19 232/10 232/25 233/9

municipality **[2]**  59/16 59/18

my **[255]**

myself **[6]**  5/7 46/21 95/4 96/14 162/7 195/3

nationals **[1]**  22/8

naturally **[1]**  204/13

nature **[10]**  16/23 40/14 44/18 53/1 53/19 59/21 61/11 104/20 116/5 213/21

Navy **[1]**  68/14

NBA **[1]**  196/22

near **[1]**  199/12

nearby **[1]**  156/11

necessarily **[2]**  72/6 192/20

necessary **[2]**  194/25 228/5

necessity **[1]**  85/8

neck **[1]**  28/17

need **[56]**  3/16 10/12 12/24 14/3 14/5 14/23 17/21 17/24 17/25 25/20 26/16 26/16 28/2 28/5 31/6 31/14 31/21 35/17 37/11 39/8 42/12 49/10 81/16 81/19 81/23 88/6 113/3 123/3 123/5 123/6 142/18 155/4 155/5 155/6 155/9 155/19 168/23 177/15 182/6 203/24 210/3 211/9 212/3 218/7 221/8 221/9 221/21 222/22 226/20 226/20 227/13 230/8 236/10 236/20 236/21 238/22

needed **[7]**  29/12 29/17 29/18 46/11 81/20 118/24 225/3

needlessly **[1]**  237/22

needs **[3]**  159/6 226/3 226/3

nefarious **[2]**  74/6 74/9

negative **[3]**  51/17 157/15 198/12

negatively **[2]**  156/21 157/22

neighborhoods **[1]**  30/1

nervous **[1]**  191/19

network **[3]**  25/9 62/12 62/16

networks **[1]**  62/10

neutral **[1]**  51/16

Nevada **[1]**  167/25

never **[9]**  51/14 57/15 83/8 84/8 132/7 142/4 142/4 142/5 159/22

new **[20]**  1/20 8/11 11/16 11/20 12/4 12/6 12/8 13/9 80/25 81/2 81/15 81/16 81/20 94/25 96/7 97/3 107/25 113/9 145/25 237/16

news **[2]**  146/2 179/16

next **[18]**  1/23 6/6 7/1 37/9 37/25 53/25 156/4 156/7 179/17 186/13 186/15 206/7 206/8 207/17 208/23 219/16 227/16 239/8

NFT **[2]**  23/1 196/22

NFTs **[1]**  196/21

Nicolas **[1]**  20/17

night **[12]**  8/24 9/17 9/17 10/24 11/4 13/18 13/19 119/8 223/17 226/7 237/14 238/13

NIH **[1]**  76/21

no **[323]**

Nodding **[1]**  29/20

noise **[1]**  29/3

non **[16]**  6/25 7/2 23/1 57/7 71/19 71/20 74/9 162/2 162/3 196/19 202/24 203/5 217/10 231/4 231/23 232/7

non-alternate **[1]**  217/10

non-fungible **[4]**  23/1 71/19 71/20 196/19

non-hearsay **[3]**  231/4 231/23 232/7

non-nefarious **[1]**  74/9

non-refundable **[7]**  6/25 7/2 57/7 162/2 162/3 202/24 203/5

none **[3]**  194/11 234/15 234/17

nonetheless **[1]**  8/4

nonspeculative **[1]**  231/4

Nope **[1]**  135/20

normal **[3]**  60/20 130/9 181/12

Norman **[3]**  19/18 19/20 20/11

northwest **[1]**  101/2

not **[257]**

note **[5]**  5/5 17/21 110/22 229/7 229/8

notes **[2]**  121/17 189/10

**N**

**nothing [12]** 13/3 14/24 69/20 115/6 141/8 144/22 150/5 191/22 196/1 222/21 223/11 231/6
**notice [4]** 202/9 229/24 232/19 235/12
**notions [1]** 112/8
**now [55]** 9/3 10/13 10/23 12/21 14/10 17/2 17/8 26/11 28/21 32/9 32/18 37/23 47/13 47/14 49/11 53/7 92/20 95/6 96/14 102/1 109/23 110/2 110/18 113/4 119/1 122/16 123/4 123/6 130/18 131/13 131/14 132/1 134/14 142/2 153/11 155/16 164/11 166/19 167/25 169/10 170/19 174/24 175/18 192/16 205/17 205/19 217/1 221/3 221/18 222/4 222/11 225/2 229/17 233/20 239/1
**nuanced [1]** 216/6
**nuances [2]** 178/3 178/6
**nullification [1]** 7/11
**number [147]** 17/6 17/10 17/12 18/10 18/12 18/15 18/19 18/24 19/2 19/5 19/12 19/15 19/21 19/25 20/15 20/18 20/24 21/8 21/14 21/16 21/22 22/3 22/7 22/11 22/13 22/17 22/19 22/22 22/25 23/3 23/6 23/9 23/12 23/17 23/21 23/23 24/1 24/3 24/6 24/13 24/18 25/4 25/14 25/19 25/23 26/3 28/13 30/19 45/2 47/5 47/6 48/8 53/24 54/21 55/24 58/25 62/3 63/11 64/9 64/11 65/9 67/11 75/15 76/25 78/9 78/13 80/21 83/3 84/17 87/9 88/4 90/1 91/8 93/19 94/20 97/12 99/16 100/9 103/24 105/9 107/14 110/12 112/24 116/13 118/15 120/13 120/14 120/19 120/22 122/15 130/3 134/5 135/14 136/12 136/14 136/14 136/15 136/16 137/18 140/18 147/22 150/17 151/21 155/5 155/7 155/22 155/25 160/10 161/15 163/14 165/22 167/6 170/24 172/7 172/12 174/10 179/10 180/9 183/1 183/25 184/23 193/12 194/18 198/4 198/6 201/5 202/21 203/12 204/19 206/2 206/20 208/9 209/1 216/2 217/7 219/22 219/22 219/25 220/1 220/3 220/5 220/6 220/7 220/15 220/19 225/3 234/5
**numbers [2]** 65/15 87/7
**numerous [7]** 190/1 190/22 190/24 190/24 191/1 191/20 231/20
**nurses [1]** 49/18
**nuts [2]** 218/15 218/22
**NW [3]** 1/14 1/20 2/8
**NY [1]** 2/4

**O**

**Oakland [1]** 187/9
**oath [2]** 15/22 16/13
**object [16]** 14/20 37/4 93/14 121/14 133/18 154/20 169/12 193/4 207/9 207/15 208/15 209/3 228/25 229/16 229/18 233/22
**objecting [2]** 227/1 237/22
**objection [44]** 5/17 5/18 6/8 6/8 55/16 55/17 78/1 113/10 113/12 119/15 119/16 119/17 123/10 124/9 147/16 148/12 148/13 148/14 161/10 161/11 163/10 163/11 165/17 169/9 180/5 180/6 183/20 183/22 194/14 194/15 203/7 203/8 203/9 204/14 204/15 205/24 205/25 206/22 206/23 207/22 207/24 209/7 229/24 230/1
**objections [4]** 226/23 227/1 227/8 227/8
**obligations [2]** 31/24 120/17
**obvious [1]** 169/1

**obviously [17]** 6/14 13/5 31/18 31/21 35/8 44/11 52/15 61/11 66/17 71/3 78/18 156/24 158/15 160/23 204/11 226/10 227/12
**occasionally [1]** 96/24
**occasions [1]** 46/15
**occurred [3]** 16/19 205/3 223/12
**October [1]** 16/20
**October 27th [1]** 16/20
**off [16]** 3/22 11/21 14/25 29/7 56/14 56/15 58/20 70/1 79/4 130/19 182/5 188/17 193/19 211/16 224/15 228/23
**offended [2]** 140/23 141/3
**offending [1]** 141/2
**offense [3]** 21/24 88/13 158/23
**offenses [1]** 16/19
**offer [5]** 44/15 172/18 173/18 233/5 236/5
**offering [5]** 23/1 41/2 44/15 196/19 214/24
**office [22]** 24/5 24/23 24/23 24/24 25/2 25/12 63/19 68/8 93/23 99/20 105/18 106/18 108/16 114/17 115/22 130/16 142/8 149/7 150/21 155/16 172/21 172/22
**officer [11]** 101/16 104/5 104/6 104/9 115/16 178/1 178/9 178/13 178/17 178/18 200/13
**officers [7]** 24/14 24/17 36/9 44/19 60/21 117/18 185/11
**offices [2]** 138/2 167/24
**official [5]** 2/7 12/1 139/1 240/3 240/13
**often [4]** 33/22 78/18 137/24 227/20
**oh [18]** 6/3 6/18 43/9 54/3 71/9 74/25 76/4 76/16 78/6 98/17 118/9 121/20 146/23 166/21 183/11 199/15 201/23 202/11
**okay [115]** 6/7 12/12 14/22 28/19 29/19 30/9 30/17 32/24 36/11 38/13 39/1 39/12 39/21 39/24 42/22 43/18 44/22 44/25 45/11 45/14 46/8 46/23 47/22 48/18 52/20 54/3 55/18 56/10 58/10 59/10 60/10 62/23 63/24 64/19 67/3 68/4 73/21 74/19 78/1 79/9 79/17 89/8 93/18 95/8 97/5 97/10 98/5 98/20 99/4 99/15 99/22 102/9 104/14 106/25 111/11 113/6 113/16 116/8 117/4 120/23 121/16 122/9 122/13 132/8 134/14 134/22 134/24 137/3 140/14 142/19 143/10 145/19 147/6 148/8 148/12 152/4 154/7 155/2 155/11 155/20 155/22 155/23 162/3 163/13 169/19 170/10 175/9 179/7 183/11 184/14 185/2 186/13 186/20 187/20 189/11 189/17 190/12 191/7 193/1 195/22 197/6 200/22 203/20 204/16 204/18 206/24 209/10 213/23 215/6 216/11 225/11 235/14 237/7 239/9 239/17
**old [7]** 56/19 116/19 119/2 119/4 156/5 183/9 195/11
**once [6]** 134/13 152/9 199/18 217/8 217/17 234/23
**one [109]** 8/18 8/19 10/22 12/21 12/23 17/17 17/17 21/11 21/23 26/12 26/12 33/1 36/2 37/18 38/16 42/2 51/6 55/4 62/20 63/17 65/11 66/12 66/19 66/21 69/2 71/25 75/21 83/5 85/20 87/8 88/12 93/21 99/18 101/11 101/13 102/6 104/4 105/11 106/13 107/20 107/23 111/15 113/6 113/13 114/10 114/16 114/25 117/10 118/16 120/20 121/3 123/7 124/7 132/25 133/8 134/10 139/3 142/11 143/21 143/23 146/13 147/7 148/9 149/8 149/9 150/20 156/24 158/16 162/20 164/23 166/3 166/17 167/17 171/4 171/7 173/1

178/24 180/1 183/15 195/19 196/7 200/6 201/10 201/25 203/24 204/24 206/18 206/18 207/12 208/13 208/22 211/12 214/12 214/22 216/1 217/22 219/6 222/12 224/1 231/18 231/19 231/23 232/3 232/16 233/5 233/6 234/9 235/20 237/10
**one-day [2]** 148/9 237/10
**one-third [1]** 8/18
**ones [7]** 8/13 33/10 43/7 131/7 131/8 131/9 183/8
**online [1]** 22/14
**only [27]** 5/8 10/17 30/25 33/18 33/21 33/24 44/20 65/23 71/10 73/17 74/4 91/2 96/23 116/18 118/7 143/8 147/13 154/3 169/5 177/6 185/18 202/14 208/22 215/15 217/18 224/19 225/2
**open [14]** 7/20 8/15 10/6 12/25 74/8 89/17 96/20 228/16 228/22 230/15 235/16 237/12 238/24 239/4
**open-ended [2]** 7/20 8/15
**opened [4]** 235/21 235/23 236/2 237/25
**opening [12]** 81/19 226/24 230/18 231/1 231/13 233/19 233/21 233/25 234/3 235/10 235/24 236/4
**openings [3]** 3/15 3/17 236/21
**opens [1]** 235/15
**operating [3]** 13/4 16/17 115/16
**operation [1]** 62/17
**operations [1]** 81/8
**operator [1]** 65/1
**opinion [5]** 21/14 158/2 158/3 164/4 164/8
**opinions [16]** 22/5 22/20 23/4 23/7 23/10 23/13 23/18 24/9 41/16 41/17 83/10 83/12 88/5 91/12 149/15 198/9
**opioid [1]** 41/22
**OPM [1]** 109/9
**opportunity [12]** 7/10 7/12 7/15 7/16 7/18 8/14 8/22 9/10 17/19 66/11 209/21 228/24
**oppose [2]** 208/6 208/7
**oppressive [1]** 51/10
**oral [1]** 9/4
**order [5]** 17/23 27/22 27/25 124/14 209/9
**ordinarily [1]** 179/23
**organization [5]** 175/20 175/21 176/1 177/11 196/1
**organizations [14]** 24/20 33/1 85/19 101/12 104/4 105/13 111/15 111/25 112/9 138/9 143/11 143/12 180/12 195/19
**orientate [1]** 221/13
**osmosis [1]** 70/25
**other [88]** 3/16 5/14 8/17 12/21 18/12 19/22 19/23 22/24 23/2 24/16 25/2 26/4 26/9 31/8 35/4 35/6 35/13 42/20 43/14 44/7 44/14 52/18 55/14 61/21 62/21 66/22 67/20 69/3 71/9 72/1 74/9 86/8 86/14 86/23 91/23 91/24 102/7 106/14 112/3 114/7 114/25 117/11 120/11 122/15 132/23 133/2 136/20 138/9 139/24 140/10 142/1 142/11 143/24 145/13 145/13 146/11 158/10 159/10 163/6 163/6 164/24 168/13 168/20 170/10 171/17 176/1 183/15 183/17 191/22 194/8 196/7 196/20 197/24 201/25 209/25 213/1 213/6 214/15 214/24 215/18 218/11 219/6 222/22 224/15 224/16 224/22 226/18 236/22
**others [12]** 38/8 43/8 46/3 46/5 49/4 66/5 81/13 113/13 133/16 134/1 134/2 164/22
**otherwise [2]** 27/11 66/23
**ought [2]** 171/19 188/2
**our [31]** 11/15 11/25 16/5 17/20

**O**

our... [27]   18/2 26/15 27/22 30/25 38/5 49/19 66/13 122/15 123/14 124/7 156/11 156/12 173/19 176/12 189/10 214/12 218/6 221/6 223/14 223/23 224/3 224/7 226/20 231/10 237/10 238/23 238/23

out [60]   11/4 11/11 12/6 26/18 26/19 26/22 27/25 31/7 32/5 32/7 32/22 49/2 50/24 51/15 53/6 58/16 85/8 85/13 87/11 87/12 87/13 87/14 98/23 103/11 103/13 110/10 116/2 118/23 119/7 119/24 120/7 124/1 124/5 131/15 142/5 148/8 159/11 159/12 160/17 160/19 160/21 161/19 162/15 164/14 167/18 169/7 169/8 172/12 183/7 185/5 193/8 201/18 204/1 206/2 217/1 219/22 225/13 234/3 239/12

outlandish [1]   69/20
outpatient [1]   191/16
outs [1]   116/4
outside [8]   26/17 26/21 69/17 73/8 118/25 130/9 163/4 236/9
over [12]   12/19 26/13 39/16 69/21 72/13 110/2 203/24 205/20 210/18 218/17 220/2 226/10
overabundance [1]   11/11
overall [1]   51/16
overarching [1]   69/17
overhear [2]   120/2 223/4
overnight [4]   229/20 233/3 238/16 239/15
oversee [1]   213/13
oversight [1]   41/9
overwhelming [1]   6/19
own [17]   10/7 33/15 43/10 43/15 44/7 58/2 71/12 71/24 79/19 80/8 84/7 151/12 159/21 167/16 191/15 196/25 197/17
owned [4]   22/23 48/22 103/7 196/24

**P**

p.m [9]   100/25 110/10 110/11 120/7 130/2 182/12 219/20 225/13 239/23
pads [1]   229/7
page [4]   1/23 206/6 206/7 207/17
paid [8]   54/8 91/1 121/21 145/6 145/9 167/15 193/19 201/22
panel [2]   15/24 19/24
pans [1]   50/24
paralegal [2]   85/24 86/24
paralegals [1]   19/8
parallel [3]   213/6 215/20 215/25
parents [3]   106/19 106/21 118/23
Park [1]   56/8
parole [1]   200/13
part [32]   4/6 22/17 30/24 31/5 31/24 41/19 59/23 66/15 87/8 88/23 96/24 98/22 102/22 109/8 116/5 139/22 146/12 170/3 174/18 186/17 190/7 192/20 193/18 213/4 213/17 214/24 224/17 224/18 232/15 233/19 236/24 236/25
partial [2]   9/19 153/19
participants [1]   16/10
participate [2]   116/7 121/23
participated [3]   22/25 41/2 196/18
particular [7]   17/10 28/20 38/11 92/23 227/4 227/4 228/25
particularly [2]   41/16 53/19
parties [10]   7/12 7/21 124/2 163/9 169/9 185/25 222/20 223/2 224/9 227/5
partner [2]   137/24 142/7
partners [1]   136/18
parts [3]   195/25 237/16 237/16

party [8]   23/24 40/8 87/19 138/18 175/2 181/19 190/10 199/9
pass [3]   83/15 156/25 218/21
passed [2]   157/1 218/17
passing [1]   142/2
passwords [3]   13/2 237/18 238/5
past [9]   10/11 29/24 39/25 41/6 70/11 72/13 108/17 148/22 226/15
patent [4]   99/21 99/22 151/1 196/16
patience [1]   28/12
pause [4]   198/5 201/4 221/11 228/7
pay [7]   49/2 145/11 145/12 145/17 153/14 157/25 167/16
paying [1]   122/6
payment [1]   201/15
payroll [2]   31/1 31/6
PD [1]   34/20
PEARLMAN [67]   1/18 3/6 15/10 19/8 19/10 30/13 46/24 47/22 50/9 58/12 61/18 63/4 64/3 64/24 67/6 73/6 76/19 80/16 82/21 84/13 89/22 90/22 93/3 94/17 97/6 99/6 100/5 103/19 105/4 107/9 109/18 112/21 113/11 116/10 118/4 135/10 136/8 137/3 140/14 141/20 145/22 150/13 151/15 154/8 157/18 160/6 165/16 166/25 169/13 171/25 174/4 178/22 180/4 181/24 182/20 183/21 184/20 188/6 192/22 193/7 197/25 200/25 202/17 205/9 210/23 212/9 216/13
PELKER [12]   1/13 3/7 12/23 14/8 14/13 15/11 19/7 19/10 238/1 238/14 238/25 239/4
Pelker's [1]   14/4
pen [1]   17/3
penal [2]   25/3 82/4
penalized [1]   211/25
pencil [1]   17/3
pending [1]   8/25
Pennsylvania [2]   1/14 59/11
people [67]   3/13 5/11 6/6 6/18 6/23 7/2 7/6 26/20 31/14 31/22 33/22 35/10 35/10 52/8 63/8 69/18 70/3 70/22 71/15 71/21 71/23 72/4 73/11 73/14 73/18 77/17 79/1 79/2 80/7 80/10 81/18 85/13 89/15 91/24 91/24 108/2 111/3 122/7 124/5 130/19 132/24 133/5 133/19 137/19 145/12 146/10 146/12 159/18 162/16 162/16 163/6 164/13 165/5 173/10 187/17 188/19 189/6 191/22 194/8 194/8 213/13 214/10 214/12 214/25 218/22 223/13 231/23
per [5]   113/23 115/15 136/19 178/2 204/1
percent [3]   159/13 159/14 215/22
perception [1]   164/1
perfect [4]   30/23 50/21 132/2 218/7
performed [1]   176/22
performing [1]   221/4
perhaps [7]   9/11 26/7 122/25 123/8 138/14 142/1 213/1
period [3]   31/2 36/7 238/12
periods [1]   81/4
permanent [1]   85/1
permissible [1]   233/18
permitting [1]   10/15
person [27]   5/14 5/19 5/21 6/4 6/9 6/9 6/21 6/22 7/3 8/3 8/4 33/21 35/9 49/19 61/4 71/4 86/15 87/5 87/5 88/23 88/25 145/3 164/19 171/11 185/18 217/22 218/9
person's [1]   86/13
personal [17]   17/22 31/23 33/15 57/8 57/9 58/5 71/10 71/12 87/7 109/11 156/22 157/23 157/24 159/25 176/3 221/24 224/21

personally [3]   71/22 112/11 213/12
personnel [2]   26/18 27/15
persons [1]   20/2
perspective [1]   38/19
pertain [2]   11/10 238/2
pertaining [2]   11/6 11/13
pertains [2]   231/11 239/11
Peterson [2]   219/7 225/18
petit [1]   111/8
petitions [1]   49/18
philanthropic [3]   175/6 175/20 175/20
philosophic [1]   26/7
philosophical [2]   214/10 214/20
phone [24]   6/20 27/10 34/8 50/3 51/1 52/21 55/9 69/10 92/17 98/13 122/23 131/23 146/5 147/10 154/13 159/11 162/8 164/5 166/11 169/20 174/21 185/1 185/4 190/13
phones [6]   37/12 113/1 120/8 229/12 235/25 236/1
photographer [1]   61/7
physical [2]   28/18 28/19
physically [1]   40/15
pick [30]   7/17 34/8 36/2 37/12 51/1 56/4 56/11 60/14 60/16 69/10 92/17 93/11 113/1 131/23 133/14 140/20 146/5 154/12 164/5 168/24 168/24 169/18 169/20 174/20 183/8 185/1 188/9 190/13 205/12 216/23
picked [1]   90/17
picking [2]   5/9 113/7
pictures [1]   61/6
pieces [1]   11/20
pitch [2]   46/6 81/18
place [3]   83/24 121/25 133/19
placed [1]   94/7
places [1]   32/21
Plaintiff [2]   1/4 1/13
plan [1]   237/3
plane [3]   6/25 7/2 177/16
planned [4]   56/3 57/2 57/4 57/6
planning [4]   81/25 172/24 233/19 233/21
plans [1]   17/16
plant [2]   48/3 48/4
plants [1]   74/20
play [2]   44/12 190/7
played [1]   213/14
plea [4]   88/14 88/23 88/24 88/24
pleading [1]   191/8
pleasant [1]   186/23
please [78]   3/4 15/7 16/1 17/5 17/10 26/18 26/18 26/23 27/2 27/21 28/1 28/13 37/10 48/8 50/13 54/21 55/9 55/24 58/25 62/3 63/12 64/9 65/9 67/11 75/15 76/25 78/9 83/3 84/17 90/1 91/8 93/19 94/20 97/12 99/16 100/9 103/24 105/9 107/14 110/12 112/24 116/13 119/25 130/3 134/5 135/14 136/12 140/18 140/20 147/22 148/17 150/17 151/21 155/25 160/10 161/15 163/14 165/22 167/6 170/24 172/7 174/10 179/10 183/1 183/25 184/23 186/7 189/14 193/12 194/18 198/4 201/5 202/21 203/12 204/19 219/23 219/25 220/4
pleasure [2]   161/21 203/1
pled [5]   16/24 21/23 88/13 191/3 191/4
plenty [1]   57/22
PLLC [3]   2/3 19/17 19/19
pockets [1]   71/24
podcast [7]   68/20 70/10 70/2 70/25 73/8 73/8 145/25
podcasts [6]   18/16 18/18 139/20 144/19 144/21 145/24
point [21]   7/5 14/7 18/5 29/15 43/7 52/8 53/9 70/25 74/3 124/13 141/20 142/14 143/21 158/25

**P**

point... [7]  176/18 188/20 192/3
217/8 228/5 233/16 233/17
points [1]  172/14
poking [1]  132/14
police [19]  24/7 34/13 34/22
34/24 36/8 53/22 60/12 60/21 86/9
101/16 104/5 104/6 104/9 109/20
117/14 117/18 180/16 185/11
189/20
policy [9]  38/5 62/10 62/17
112/18 149/1 149/10 158/1 159/1
187/16
policy-level [1]  159/1
pool [1]  217/20
poor [1]  81/4
portfolio [2]  38/5 41/20
portion [3]  18/2 145/1 145/7
pose [1]  45/5
poses [1]  189/2
position [16]  94/25 95/4 96/7
96/13 122/4 122/5 122/15 147/3
169/1 209/20 216/4 216/5 222/2
228/20 231/3 237/15
positive [2]  51/11 51/17
possessed [1]  52/14
possession [3]  190/20 191/3
238/12
possibility [1]  89/17
possible [6]  5/5 15/20 31/8 81/24
138/4 224/8
possibly [1]  65/17
post [5]  9/12 11/22 11/23 12/9
12/9
post-trial [1]  9/12
posts [1]  11/24
potential [6]  19/23 19/24 132/23
213/6 226/4 233/12
potentially [4]  13/14 189/7
209/20 232/18
practical [1]  158/4
practically [1]  171/12
practice [15]  39/19 45/9 46/3
46/5 72/5 73/10 106/22 106/24
137/8 137/12 139/23 150/23 150/25
196/15 213/24
practiced [1]  141/1
practices [3]  93/24 99/25 173/4
practicing [3]  137/6 140/3 187/16
pray [1]  190/2
precarious [1]  147/3
precautions [1]  32/19
precisely [1]  79/14
preclude [3]  7/9 65/24 231/1
precluding [1]  236/12
preconceived [1]  39/3
predict [3]  79/11 79/14 79/15
predisposed [1]  156/22
preempt [1]  103/14
pregnant [1]  195/13
prejudice [1]  234/21
preliminarily [1]  3/15
preliminary [3]  10/9 229/20
230/14
preparation [2]  9/5 10/1
prepared [2]  5/22 227/7
prescription [1]  116/19
presence [3]  175/15 175/16 236/10
present [2]  3/10 15/15
presentation [4]  6/13 19/25 25/24
79/6
presented [15]  16/7 21/21 28/10
33/19 34/5 41/12 41/25 44/20
52/17 68/25 71/6 92/7 117/7
159/24 222/10
presenting [1]  21/1
presents [1]  234/4
president [2]  80/6 80/9
presiding [1]  15/19
press [4]  40/16 174/24 232/8
232/9

pressed [1]  92/8
presumed [2]  16/25 20/20
presumption [1]  21/7
pretrial [1]  191/25
pretty [9]  57/15 108/1 164/13
169/6 176/16 190/5 192/5 192/16
211/16
prevent [2]  22/1 88/15
previous [3]  11/14 41/6 85/1
previously [8]  11/7 12/15 14/14
23/21 39/15 54/1 131/14 180/15
Price [4]  20/9 230/4 230/5 230/6
primarily [7]  74/18 151/1 210/15
215/12 215/13 215/16 215/17
primary [3]  66/8 101/18 179/19
principally [1]  46/5
principle's [1]  115/23
print [1]  11/21
prior [7]  11/8 11/14 12/11 16/4
33/12 85/23 112/8
prison [3]  25/2 102/14 185/7
private [13]  17/22 18/1 18/4 25/1
43/10 45/14 46/20 50/4 114/19
124/1 139/23 150/23 213/24
privately [2]  27/6 159/12
pro [1]  177/23
probably [36]  5/12 6/20 6/21 29/2
29/5 31/3 31/4 32/15 32/16 46/14
46/22 48/16 55/5 65/20 66/16
66/24 67/19 71/2 97/1 100/19
101/6 109/25 113/3 122/5 133/4
148/10 155/21 167/10 173/23
186/19 187/15 198/14 208/3 208/4
228/15 233/9
problem [24]  13/24 14/7 27/3
27/19 28/15 29/14 38/19 72/22
72/24 73/1 77/18 89/6 97/4 101/5
116/16 116/18 117/5 153/11 185/6
203/23 211/22 218/10 231/8 239/5
problematic [1]  159/19
problems [3]  25/14 25/18 187/18
procedure [3]  62/10 62/17 148/4
proceed [4]  15/23 218/11 218/24
219/15
proceeding [3]  25/17 124/12 217/2
proceedings [8]  124/14 130/1
139/2 168/21 234/11 235/1 239/23
240/5
process [7]  3/12 7/14 12/1 16/9
217/23 219/16 225/17
procurement [1]  76/22
produced [10]  11/11 11/14 11/24
13/1 13/11 14/15 238/7 238/8
238/21 239/12
producer [1]  179/16
production [3]  11/19 12/11 13/18
professional [7]  22/11 31/23
96/10 173/14 197/7 207/4 225/15
professionally [1]  138/1
professions [1]  164/15
proffer [1]  231/14
program [3]  110/20 193/21 195/24
programs [1]  173/25
progress [1]  219/12
project [1]  194/21
promising [1]  229/10
promotion [1]  207/5
promptly [2]  26/19 26/24
proof [1]  20/23
properly [2]  106/5 106/6
propose [1]  229/15
proposed [1]  229/23
proposing [1]  229/2
prosecuted [2]  22/8 185/16
prosecuting [1]  34/20
prosecution [1]  138/22
prosecutor [1]  187/12
prosecutor's [1]  24/23
prosecutors [2]  24/10 34/14
prospect [2]  97/1 211/14
prospective [11]  6/17 7/16 8/12
9/3 14/23 20/14 72/1 188/12

218/15 225/4 227/13
protect [1]  72/4
protecting [1]  52/9
protection [2]  23/11 149/16
protective [1]  101/24
prove [2]  95/4 96/14
proved [1]  192/12
provide [5]  4/16 17/19 90/6 116/6
235/11
provided [6]  11/7 11/21 12/2 12/5
12/15 14/5
provides [1]  145/4
providing [3]  9/20 27/1 45/11
proving [1]  20/19
provision [1]  10/17
psychedelics [1]  74/18
public [14]  7/3 11/22 17/23 25/1
33/4 34/21 36/8 53/10 90/12 146/9
158/1 175/4 219/7 231/22
publically [1]  162/10
publications [3]  139/24 144/19
144/22
pulling [1]  156/6
pump [1]  71/24
purchase [4]  49/3 74/24 75/6 98/3
purchased [18]  22/22 23/1 23/2
41/1 41/5 48/22 83/6 97/22 97/25
98/11 103/7 115/3 131/5 162/1
196/19 196/19 196/21 196/24
purchases [2]  92/5 115/4
purely [1]  218/9
purpose [4]  16/2 158/5 159/5
159/14
purposes [15]  9/5 10/1 51/24
51/24 52/9 52/12 52/13 73/16 74/6
74/9 159/9 159/15 159/25 218/9
227/11
pursue [1]  123/3
push [12]  34/9 37/12 51/4 131/25
134/1 146/22 147/13 147/18 169/21
206/10 208/2 208/2
pushed [1]  11/4
pushing [1]  133/18
put [31]  8/9 27/22 36/3 41/10
41/24 44/5 45/19 52/6 53/17 54/6
57/21 61/12 61/14 68/23 71/7
74/22 80/13 92/5 96/10 96/13
133/24 140/1 147/10 149/22 150/6
151/12 170/12 185/21 190/11 218/4
229/19
puts [1]  211/18
putting [6]  14/1 42/4 42/7 44/7
50/3 76/11
puzzled [1]  228/6

**Q**

qualified [1]  216/25
qualify [5]  35/6 188/12 188/16
188/18 189/4
qualifying [1]  133/19
qualitative [1]  136/5
Quantico [1]  94/6
quantitative [1]  136/5
question [229]  5/12 8/6 10/21
17/10 17/11 18/6 18/10 18/12
18/15 18/19 18/24 19/2 19/5 19/12
19/15 19/21 19/25 20/15 20/18
20/24 21/8 21/14 21/16 21/22 22/3
22/7 22/11 22/13 22/17 22/19
22/22 22/25 23/3 23/6 23/9 23/12
23/17 23/21 23/23 24/1 24/3 24/6
24/9 24/13 24/18 25/4 25/14 25/19
25/22 25/23 26/3 26/4 29/8 29/21
30/5 32/2 32/25 33/23 34/1 35/11
37/17 38/21 39/13 40/5 40/22 42/2
42/17 44/3 45/4 45/6 45/17 47/19
48/21 50/16 52/4 52/20 53/13
53/15 53/25 54/6 54/23 56/1 57/10
57/11 57/12 59/4 60/11 63/6 63/17
65/11 65/12 72/7 73/4 73/20 75/17
77/2 77/6 77/18 78/11 78/14 79/18
80/23 82/2 82/12 84/19 85/10

## Q

**question... [123]** 85/18 86/21 87/1 87/21 88/3 88/11 89/1 90/4 90/14 91/11 93/21 94/24 95/9 96/9 96/23 97/2 99/18 99/19 100/12 101/10 102/10 102/25 103/6 104/3 106/16 107/4 107/23 108/12 108/23 110/15 111/7 111/14 113/5 113/20 114/13 115/2 115/11 116/15 117/9 121/10 123/2 130/7 131/5 131/18 132/20 135/21 136/14 138/7 138/13 142/22 143/11 143/13 144/4 144/15 144/18 146/16 150/1 150/20 156/15 159/20 160/15 165/10 165/25 166/7 166/14 167/10 170/17 171/4 172/10 172/10 172/19 173/13 174/17 178/15 180/11 180/21 181/18 183/4 183/5 185/5 186/25 187/7 188/19 188/22 193/16 194/13 196/11 196/17 197/7 198/8 198/18 199/8 199/12 199/16 201/10 202/23 203/16 206/8 206/16 207/3 208/23 208/25 214/10 214/20 215/3 224/17 227/14 228/2 228/20 228/25 229/3 229/8 229/9 229/10 229/11 229/13 229/13 232/21 232/24 233/2 233/4 233/20 238/24
**questioned [2]** 234/16 235/1
**questioning [4]** 8/11 35/20 35/21 236/13
**questionnaire [1]** 8/12
**questions [134]** 7/18 7/19 7/23 7/24 7/25 8/3 8/13 8/14 8/19 10/10 10/15 10/18 16/11 16/14 17/8 17/9 17/14 17/21 17/25 18/5 18/8 27/10 28/2 30/22 33/23 37/16 40/25 43/17 43/23 47/7 47/9 48/13 50/8 50/16 53/8 54/16 55/8 58/11 58/23 59/3 62/6 63/2 64/13 64/25 65/6 67/13 67/16 67/20 73/5 74/14 75/3 76/17 77/23 83/5 84/12 89/21 90/3 90/23 91/4 91/10 94/23 96/6 97/14 99/5 100/3 103/18 104/2 105/11 108/11 109/16 110/14 112/20 113/19 116/15 118/12 118/20 130/6 133/6 133/11 134/10 135/9 135/11 136/6 137/4 142/22 148/19 152/4 157/18 160/14 161/17 163/16 165/24 167/1 167/3 170/11 171/4 171/17 171/23 171/24 174/5 174/7 178/20 178/23 182/19 183/4 184/8 184/19 184/21 186/11 189/1 189/19 190/13 197/24 198/7 198/8 202/15 204/24 205/7 206/14 207/8 208/17 208/18 210/14 210/22 213/24 216/12 216/20 218/24 224/22 228/18 229/3 234/9 235/8 235/24
**quick [1]** 219/17
**quickly [7]** 28/11 77/17 79/12 224/8 226/21 227/9 236/1
**quite [13]** 5/8 6/13 66/18 71/13 96/25 102/21 113/25 115/5 115/5 115/21 149/8 218/4 218/15
**quota [2]** 211/17 211/19

## R

**race [1]** 218/8
**radio [1]** 179/16
**raise [4]** 9/23 10/22 18/7 237/7
**raised [6]** 8/11 78/11 78/20 213/2 226/7 226/19
**raising [1]** 117/5
**Ramjee [2]** 19/9 19/11
**RANDOLPH [1]** 1/9
**range [1]** 230/23
**rather [10]** 6/23 7/3 7/6 13/17 17/23 145/16 146/20 150/4 159/1 216/6
**razor [2]** 4/9 4/14
**razors [1]** 4/7

**Razzlekhan [1]** 18/23
**reach [2]** 16/6 134/19
**reached [1]** 26/1
**reacting [1]** 234/11
**read [16]** 10/7 18/13 18/15 18/19 18/24 53/3 57/19 68/19 70/14 116/21 139/20 139/23 144/15 206/2 232/8 232/9
**reading [4]** 25/22 52/23 52/25 68/18
**ready [3]** 217/1 218/13 219/3
**real [5]** 108/5 146/11 234/1 234/12 234/21
**realize [4]** 31/20 46/4 195/15 223/13
**realized [1]** 112/25
**really [37]** 34/15 36/3 51/7 58/4 62/7 65/22 69/17 70/4 73/13 73/17 74/21 81/4 85/13 103/11 116/20 122/1 130/20 130/22 132/4 132/5 133/10 141/18 145/13 146/11 158/25 164/3 164/23 167/18 197/2 209/23 210/4 211/10 211/18 212/6 222/2 238/24 239/11
**realm [1]** 54/7
**realtor [1]** 99/23
**reanswer [1]** 42/17
**rearrange [1]** 217/8
**reason [10]** 8/3 11/18 26/5 26/7 26/9 79/1 158/5 220/23 225/17 238/25
**reasonable [8]** 20/19 21/10 122/3 123/7 123/7 192/12 233/6 233/7
**reasoning [1]** 10/5
**reasons [7]** 5/14 29/15 157/23 159/7 159/18 159/19 229/11
**recall [2]** 138/3 138/5
**receipt [1]** 153/15
**received [3]** 10/25 226/3 235/22
**recent [2]** 115/6 181/7
**recently [2]** 28/17 191/16
**Recess [3]** 15/3 130/2 219/20
**recipients [1]** 108/18
**recognize [1]** 19/23
**recollection [1]** 138/3
**reconsideration [1]** 9/20
**record [11]** 3/4 7/3 15/7 17/23 36/14 53/10 140/22 141/21 146/9 192/23 240/5
**records [3]** 231/16 234/14 234/18
**recovery [1]** 148/10
**red [4]** 10/16 209/15 228/17 229/14
**Reddit [4]** 11/22 12/9 12/9 57/19
**reference [1]** 231/12
**referenced [1]** 236/23
**referencing [1]** 12/23
**referred [2]** 16/3 26/3
**referring [2]** 231/1 238/6
**reformulate [1]** 229/13
**refundable [7]** 6/25 7/2 57/7 162/2 162/3 202/24 203/5
**regard [4]** 7/12 38/19 43/24 162/15
**regarding [4]** 21/15 197/16 216/15 238/4
**regardless [1]** 93/1
**register [1]** 215/4
**registered [4]** 179/4 214/13 214/15 215/1
**registering [3]** 213/20 213/20 214/19
**registration [4]** 214/18 214/22 214/22 215/18
**regret [1]** 54/9
**regular [4]** 188/12 188/13 188/14 217/13
**regulate [5]** 70/2 150/3 150/11 156/20 192/19
**regulated [4]** 23/5 192/17 198/16 198/17
**regulates [2]** 141/12 200/19

**regulating [2]** 69/23 72/22
**regulation [17]** 23/10 25/6 41/15 41/17 59/5 70/3 72/18 108/14 136/22 137/15 142/14 142/25 148/21 149/3 149/16 149/23 166/2
**regulations [1]** 213/19
**regulator [1]** 59/12
**regulatory [1]** 176/22
**relate [1]** 189/24
**related [17]** 71/4 80/14 104/24 108/3 143/20 144/8 146/2 146/2 149/2 149/9 159/8 175/12 175/13 203/22 213/4 214/6 234/8
**relatedly [2]** 234/10 234/25
**relating [16]** 18/18 23/10 52/1 74/17 74/24 91/12 92/4 113/8 139/21 149/15 168/5 212/19 212/21 212/22 213/19 222/20
**relation [2]** 187/4 236/14
**relationship [10]** 33/3 33/12 36/6 139/25 142/6 142/9 142/10 143/3 169/4 197/14
**relationships [1]** 94/9
**relatively [2]** 157/25 226/21
**relatives [3]** 39/17 39/25 187/3
**released [1]** 192/4
**relies [1]** 165/4
**relieved [1]** 119/6
**religious [1]** 26/7
**rely [1]** 197/16
**remain [1]** 25/17
**remaining [2]** 9/15 226/9
**remember [16]** 30/12 43/5 43/7 43/13 49/4 53/2 53/2 57/12 58/4 58/4 61/15 61/20 101/7 121/20 134/20 134/21
**remind [7]** 101/7 114/2 120/23 121/16 167/19 217/3 228/11
**remote [1]** 130/18
**render [3]** 22/6 22/9 24/11
**rendering [3]** 21/13 22/1 88/16
**renew [1]** 237/9
**rent [2]** 122/6 145/12
**repeat [1]** 18/6
**repeating [1]** 222/6
**repercussions [1]** 96/12
**report [4]** 119/6 119/8 232/8 232/9
**reported [1]** 233/1
**Reporter [4]** 2/6 2/7 240/3 240/13
**reports [1]** 170/4
**represent [1]** 63/25
**representations [2]** 12/22 13/7
**Representatives [1]** 148/23
**represented [1]** 19/5
**representing [3]** 19/15 63/21 214/4
**request [3]** 5/1 154/15 237/10
**requesting [2]** 10/8 230/25
**require [2]** 27/4 148/8
**required [4]** 28/8 179/18 215/1 215/4
**requiring [1]** 27/4
**reschedule [1]** 110/22
**research [9]** 27/8 46/11 57/16 64/2 136/5 168/1 168/2 222/19 222/25
**researcher [1]** 136/4
**researchers [1]** 76/22
**researching [1]** 27/9
**Reserve [1]** 25/10
**residence [1]** 191/18
**residential [2]** 68/1 68/3
**residents [1]** 181/13
**resigned [1]** 175/2
**resolution [1]** 37/24
**resolved [2]** 4/22 227/20
**resourced [2]** 106/5 106/7
**resources [1]** 85/24
**respect [37]** 7/8 7/22 9/13 9/15 9/20 9/21 9/23 9/25 21/11 61/21 68/17 78/24 79/5 86/19 112/8

Appx2611

**R**

respect... [22]  122/24 141/25
159/25 161/24 164/17 189/2 213/24
214/7 214/18 219/9 222/25 225/23
226/4 226/6 226/12 226/23 227/4
227/6 228/4 231/5 233/5 236/8
respecting [1]  20/22
respects [1]  75/2
respond [1]  11/2
response [5]  78/16 93/4 123/1
123/7 185/5
responsibilities [2]  58/21 180/1
responsibility [2]  160/24 160/25
responsible [3]  46/5 167/14
186/13
rest [1]  207/13
restaurants [1]  162/21
restroom [3]  109/23 110/9 219/13
retained [1]  227/11
retired [5]  47/14 47/20 85/23
134/25 135/1
retiree [1]  76/15
returned [1]  115/19
reveal [1]  233/15
review [6]  167/17 170/3 170/4
173/22 237/10 238/11
reviewing [2]  157/11 213/14
rid [1]  189/5
ride [1]  56/9
right [267]
right-hand [1]  17/6
rights [1]  79/13
ring [2]  87/8 234/23
risk [9]  25/21 32/3 38/15 77/3
84/20 85/14 162/5 189/2 234/21
road [2]  130/16 132/6
robbed [1]  171/10
robbing [1]  152/15
Robert [1]  112/19
Rohls [1]  20/5
role [30]  48/19 59/18 81/1 81/3
81/15 97/3 101/22 107/25 109/13
113/9 113/22 114/1 114/2 114/9
115/14 115/15 115/18 115/21 116/5
116/5 116/7 140/2 140/7 158/19
166/12 167/18 210/5 210/6 213/14
214/7
roles [1]  44/12
ROMAN [8]  1/6 3/3 3/10 15/6 15/14
15/21 16/15 19/13
room [6]  2/8 110/8 124/9 221/18
221/20 225/1
ropes [1]  36/3
rotational [1]  195/24
rough [1]  222/16
round [4]  217/4 217/9 217/13
217/16
rounds [1]  217/18
Rovensky [2]  20/8 230/11
row [1]  26/15
RPR [1]  240/12
rude [2]  110/6 223/5
rule [5]  7/21 8/20 8/25 226/9
227/2
ruled [2]  9/15 226/8
rules [2]  109/21 213/19
ruling [2]  9/4 9/4
rulings [2]  9/25 226/5
run [4]  27/25 96/18 172/24 206/18
running [4]  62/16 95/4 96/17
225/8
rural [1]  41/23
rush [1]  79/3
Russia [2]  22/4 22/5
Ryan [1]  20/10

**S**

safer [1]  109/25
said [42]  8/7 10/25 47/18 49/20
58/2 66/19 70/10 70/23 71/25
72/10 80/3 80/4 84/6 89/10 89/10
100/21 107/25 109/6 111/20 121/4
121/11 141/8 146/10 151/3 157/5
157/22 158/18 159/13 162/18 168/8
172/3 177/8 185/10 192/14 207/4
208/11 209/22 224/11 226/8 228/16
232/9 238/25
sake [2]  5/22 234/2
salaried [1]  131/1
salary [3]  90/7 145/5 146/25
sale [1]  210/13
sales [12]  130/12 130/13 130/14
132/24 173/17 188/24 197/13
208/11 208/13 210/20 211/13
211/17
salesperson [2]  206/11 208/1
Salvador [4]  78/20 79/21 80/4
80/9
same [20]  27/23 77/20 86/12 110/6
121/7 121/8 136/18 137/9 145/3
157/7 157/8 169/23 190/24 198/15
213/23 219/18 223/6 227/1 227/21
230/23
San [1]  31/10
Sanchez [1]  175/7
Santell [1]  20/12
Sarah [2]  20/10 230/9
sat [3]  33/10 41/7 82/22
Satoshi [1]  197/21
Saturday [7]  11/4 13/5 13/18
14/20 119/7 210/19 237/11
save [1]  12/4
savings [5]  145/16 146/14 146/17
147/1 194/11
say [73]  5/2 5/11 5/17 5/18 6/4
6/5 6/8 6/24 7/2 8/5 8/6 8/6 8/17
12/21 14/3 27/16 27/18 31/18 34/6
36/4 42/16 42/20 43/22 51/10
51/19 52/9 52/13 61/14 61/19 63/6
65/22 71/9 72/24 73/19 74/12
78/25 84/7 85/4 88/24 89/20 91/18
98/10 106/25 120/25 122/3 122/17
131/14 151/4 153/2 156/21 164/4
169/8 177/12 177/18 177/22 178/2
178/5 178/5 191/19 191/19 192/17
192/18 207/2 212/25 222/14 223/19
228/12 230/21 232/8 232/9 234/18
234/19 237/6
saying [9]  6/3 8/20 62/13 72/21
80/11 153/6 158/24 222/6 231/24
says [6]  8/2 14/8 122/21 189/8
232/4 235/22
Sayyora [1]  20/11
scam [1]  158/24
schedule [5]  28/23 66/13 153/13
177/12 183/15
scheduled [5]  6/6 74/21 172/13
225/17 225/21
schedules [1]  183/14
scheduling [2]  112/13 182/3
Scholl [2]  9/25 20/8
school [13]  45/19 54/25 55/2
55/12 106/20 107/1 144/7 182/7
183/6 186/14 186/16 193/21 193/25
schools [2]  183/14 183/14
science [3]  55/3 55/3 108/16
sciences [1]  151/2
scrape [1]  11/21
scratch [1]  173/23
screen [1]  118/7
screening [1]  135/4
screens [1]  118/6
se [2]  136/19 178/2
seal [1]  124/12
sealed [2]  124/14 130/1
season [2]  37/23 38/7
seat [55]  6/22 7/4 27/23 30/17
36/20 44/25 47/3 48/6 50/11 54/19
58/24 62/1 64/7 65/7 75/14 76/24
80/20 83/1 84/15 89/24 91/7 93/10
94/19 97/10 99/14 100/7 103/22
107/13 112/23 116/12 118/13
133/12 136/10 140/16 147/21
150/15 151/19 160/8 167/4 169/10
172/6 174/8 182/24 193/8 193/14
198/2 201/2 202/19 205/11 216/21
217/19 219/23 220/11 220/17
220/19
seated [1]  16/1
seats [4]  217/3 217/5 217/22
219/19
SEC [23]  137/2 137/10 137/14
137/19 138/9 139/22 141/12 141/14
142/12 189/2 212/19 212/20 212/23
213/4 213/19 214/3 214/5 214/7
214/9 214/11 214/16 215/10 215/15
SEC's [2]  216/3 216/5
second [15]  24/22 55/9 68/1 69/11
113/1 121/19 131/21 131/23 146/6
147/11 164/6 165/2 207/13 218/1
221/1
secret [1]  232/12
secretary [1]  39/16
section [2]  85/25 217/1
sector [1]  114/19
securities [13]  25/8 25/10 136/23
137/13 137/21 138/22 140/7 176/13
213/4 213/21 214/6 214/14 216/10
securities-related [1]  214/6
security [11]  87/9 111/23 112/19
135/4 164/20 176/12 214/4 214/19
216/4 216/8 222/2
see [79]  4/11 4/19 5/2 5/7 8/22
32/18 35/2 38/6 38/13 40/4 40/13
40/19 41/10 51/10 61/3 61/8 62/12
77/12 81/12 81/17 82/7 85/3
100/16 109/12 109/23 109/24 110/4
110/7 110/9 111/20 112/15 114/6
114/12 116/20 116/21 116/24
116/24 118/8 118/9 122/21 131/1
131/17 132/3 132/8 142/8 142/18
144/25 147/19 148/5 153/8 153/10
158/9 158/25 159/18 162/14 163/8
165/3 165/3 166/15 175/15 176/21
187/20 194/2 203/5 204/3 215/2
218/3 219/18 221/20 223/2 223/18
226/18 226/19 228/23 230/17
232/16 232/18 233/24 239/21
seeing [2]  117/5 138/2
seek [1]  179/3
seem [4]  10/11 70/4 108/5 228/6
seemed [1]  121/6
seems [4]  38/6 109/20 133/15
205/14
seen [17]  7/1 8/21 13/10 18/13
18/19 18/24 21/20 28/1 28/4 42/4
42/6 95/22 117/15 142/1 144/15
168/21 237/18
select [3]  16/3 16/6 153/6
selecting [1]  16/12
selection [10]  3/12 5/6 5/16 7/14
15/2 15/20 16/2 152/22 219/16
225/17
self [1]  12/7
selfish [1]  164/13
sell [6]  43/4 69/19 71/21 130/24
132/25 133/2
selling [2]  92/12 104/22
Senate [1]  64/18
send [5]  6/21 7/4 113/3 118/16
169/10
senior [4]  38/4 110/19 115/17
122/5
sense [14]  73/3 74/21 81/6 115/13
132/21 145/18 146/10 158/6 194/9
211/6 228/9 233/15 234/22 235/19
sensible [1]  228/15
sensitive [1]  11/17
sent [1]  201/14
sentiments [1]  51/15
separate [4]  164/3 164/23 232/24
238/6
separately [2]  21/13 238/8
sergeant [1]  64/18
Sergei [2]  20/11 230/9

**S**

**series [3]** 16/10 17/8 213/23
**serious [2]** 115/13 211/22
**serve [20]** 5/11 6/7 25/15 67/1
81/14 96/11 99/10 116/17 120/25
121/4 122/17 132/22 152/19 159/5
161/5 175/6 175/19 220/22 220/24
223/16
**served [6]** 23/21 82/14 90/16
102/13 111/8 138/25
**serves [3]** 158/4 158/10 159/9
**service [16]** 6/24 27/17 28/12
78/5 106/6 106/10 110/20 143/23
145/5 145/7 167/16 175/4 207/20
221/2 221/4 223/12
**services [7]** 41/8 148/24 149/18
151/4 167/20 193/22 222/14
**serving [9]** 26/1 37/19 38/18
85/11 148/2 160/21 162/14 179/12
209/18
**session [1]** 226/21
**set [14]** 11/23 21/19 35/7 36/4
43/15 50/1 58/2 58/7 83/8 84/7
84/9 98/18 211/10 230/20
**setting [1]** 57/16
**settings [1]** 163/6
**settled [1]** 90/17
**seven [2]** 36/5 202/3
**seven-year [1]** 36/5
**several [15]** 21/8 30/1 37/16
43/11 67/13 103/9 111/10 115/20
160/14 160/17 161/17 166/17 198/7
199/24 203/21
**severe [5]** 25/21 77/4 84/20 162/6
162/12
**sex [1]** 143/21
**sexual [1]** 33/11
**shave [5]** 3/23 4/8 4/8 4/12 4/13
**shaving [1]** 4/6
**she [86]** 14/8 14/10 26/13 31/9
33/5 47/18 47/19 47/19 47/20
47/23 55/12 55/14 57/1 57/2 57/5
57/6 78/21 78/22 78/22 84/24
84/25 85/1 85/2 85/24 105/17
105/20 105/21 105/22 105/23 106/2
106/3 107/20 107/25 107/25 108/7
113/7 113/8 115/17 119/21 121/17
121/21 121/22 122/2 122/5 122/21
143/8 151/6 151/7 154/3 155/13
155/13 156/8 166/4 166/19 166/20
169/2 169/2 169/3 169/7 169/7
169/15 172/23 172/23 185/3 185/4
185/4 185/5 185/10 185/10 186/16
186/17 186/18 187/11 187/14
187/15 187/16 187/17 196/14
196/15 196/15 204/5 219/8 219/23
221/16 225/7 225/19
**sheet [7]** 218/3 218/5 218/7
218/13 218/16 218/21 219/3
**sheets [1]** 167/15
**Shelli [1]** 219/7
**SHERRY [3]** 2/6 240/3 240/12
**shoes [1]** 207/20
**shooter [1]** 52/10
**shootings [1]** 30/1
**short [4]** 13/22 16/5 91/3 109/22
**shorter [1]** 14/1
**shortly [2]** 9/17 219/18
**shot [1]** 181/12
**Shots [1]** 196/22
**should [38]** 4/5 7/11 7/14 12/7
17/2 17/21 23/4 23/4 27/5 69/18
69/18 69/20 108/4 121/25 122/8
122/20 123/4 133/25 138/10 140/7
150/3 150/10 156/20 156/25 169/2
186/20 186/21 188/17 198/16
198/17 198/21 206/17 208/25
214/13 214/14 217/22 233/3 235/20
**shouldn't [3]** 43/25 141/2 228/13
**show [3]** 221/14 221/16 225/1
**showing [1]** 234/15

**shows [7]** 13/1 13/3 21/17 21/18
21/19 42/3 42/6
**sibling [1]** 180/23
**sic [1]** 49/18
**sick [2]** 79/2 222/5
**side [25]** 16/5 26/15 27/22 31/20
34/15 34/20 42/16 62/11 62/20
62/21 71/20 82/4 90/16 106/13
110/1 114/25 139/3 142/11 143/23
196/7 213/22 214/2 214/11 214/15
217/23
**sides [4]** 34/15 35/22 168/18
229/24
**signal [1]** 5/22
**significant [3]** 121/18 132/21
211/11
**significantly [1]** 11/16
**Silk [1]** 132/5
**Silver [1]** 182/15
**Silvers [1]** 112/19
**similar [6]** 22/14 25/13 67/20
78/19 138/7 175/22
**similarly [3]** 27/13 150/4 198/11
**simply [9]** 6/4 24/16 26/22 38/23
117/11 158/20 163/18 222/14
235/11
**simulation [1]** 81/11
**since [9]** 43/12 45/18 81/16
107/20 152/7 153/13 161/2 184/11
202/8
**sir [9]** 58/13 63/5 73/7 75/5
83/18 84/5 118/5 119/20 149/13
**sister [1]** 187/9
**sit [27]** 5/21 26/6 26/10 29/5
29/6 29/11 29/15 29/17 31/4 31/4
43/23 46/8 46/14 58/16 66/14
66/14 74/7 154/18 165/11 178/7
190/6 195/7 198/24 224/12 224/13
224/14 224/17
**site [3]** 49/1 81/11 81/20
**sites [1]** 132/3
**sits [1]** 37/22
**sitting [11]** 27/21 29/2 32/16
32/19 85/5 96/24 107/24 115/24
191/23 218/17 236/24
**situation [5]** 92/23 111/10 121/7
178/3 178/6
**situations [1]** 216/9
**six [2]** 154/5 163/16
**size [1]** 11/9
**slide [3]** 227/7 227/8 227/8
**slides [2]** 226/24 227/4
**slight [1]** 205/16
**slightly [1]** 41/17
**slowly [1]** 194/23
**small [4]** 30/23 56/2 142/6 166/10
**Smith [1]** 20/6
**so [385]**
**So hopefully [1]** 230/15
**social [4]** 18/16 87/9 139/20
166/19
**socially [1]** 138/1
**Society [1]** 150/24
**software [14]** 12/24 130/14 130/24
130/25 133/9 173/16 173/23 173/25
174/2 195/5 197/9 197/10 197/11
197/16
**sold [10]** 22/22 41/1 41/5 43/1
43/6 48/22 83/6 115/5 214/23
214/24
**solely [7]** 16/7 21/20 28/9 89/4
142/6 163/25 197/17
**some [91]** 7/5 8/3 10/3 10/14
11/23 13/12 21/16 23/2 29/15
30/25 31/10 31/21 33/11 33/15
34/13 34/16 34/19 35/10 35/10
46/15 49/3 52/5 52/8 52/9 56/3
57/15 66/15 70/2 70/7 75/2 77/12
81/24 88/21 91/16 91/18 91/24
92/3 95/13 96/10 104/24 105/23
105/23 108/3 111/18 115/4 121/17
131/10 136/19 141/19 142/14

144/21 145/11 146/10 159/17
164/22 176/1 182/11 194/7 194/9
196/19 198/13 203/22 206/14 207/3
207/7 208/17 208/18 213/1 213/3
214/10 214/13 214/25 215/21 216/9
218/4 218/21 221/21 221/22 221/24
223/4 224/13 224/16 224/21 225/23
225/24 231/13 232/14 235/8 236/3
236/9 237/24
**somebody [16]** 28/7 32/2 66/11
66/20 72/24 77/3 102/13 140/25
158/21 162/5 181/12 188/17 192/21
211/10 217/19 235/12
**someone [20]** 6/3 8/5 38/14 42/16
46/11 52/14 81/20 84/9 84/20
88/22 92/13 123/5 132/24 147/2
178/9 191/21 194/10 201/15 215/3
235/15
**something [39]** 8/24 9/16 9/23
12/9 14/14 27/3 46/12 49/23 51/16
52/1 52/11 63/7 69/21 72/2 72/25
79/3 79/4 81/21 85/7 85/7 115/14
117/5 121/7 123/2 157/13 172/3
177/15 190/7 193/24 201/19 213/4
225/10 226/19 227/17 232/17
232/20 233/13 237/8 239/16
**sometimes [19]** 16/3 26/20 51/23
51/24 56/22 56/23 72/3 72/3 72/4
72/5 79/1 79/2 88/21 116/7 170/7
173/21 182/5 192/2 222/1
**somewhat [6]** 40/24 66/13 122/4
182/4 195/6 211/11
**somewhere [2]** 50/2 182/7
**son [3]** 50/1 56/17 185/7
**soon [3]** 12/2 37/25 66/23
**sorry [27]** 17/15 34/22 36/12 40/7
40/8 47/18 51/21 65/19 68/2 68/6
73/23 78/6 98/10 98/17 117/2
136/15 144/25 163/1 164/10 171/13
172/4 181/14 220/3 220/8 223/19
230/17 232/6
**sort [40]** 8/20 13/17 33/5 40/10
44/16 45/9 51/16 52/5 53/5 53/7
59/21 60/22 63/6 64/1 76/2 81/22
94/3 96/10 104/20 104/21 106/21
113/23 115/12 130/24 134/16
146/18 146/19 150/25 152/14 156/6
159/2 166/20 175/22 190/15 200/11
206/8 211/17 231/13 232/16 238/15
**sorts [1]** 53/4
**sought [1]** 16/25
**sounded [1]** 122/4
**sounding [1]** 115/25
**sounds [7]** 76/16 133/25 154/16
170/13 203/22 211/18 238/10
**source [2]** 18/14 83/14
**South [2]** 177/14 177/17
**space [7]** 70/22 72/19 168/21
172/24 175/7 175/14 225/3
**speak [7]** 3/21 3/25 5/14 63/25
77/17 131/25 169/21
**speaking [1]** 25/23
**special [4]** 101/17 113/21 114/4
179/17
**specialist [1]** 90/13
**specialized [2]** 12/24 18/16
**specializes [1]** 63/20
**specific [4]** 145/23 231/15 234/14
234/18
**specifically [7]** 41/8 51/25 146/1
175/4 175/7 175/14 197/13
**specifics [1]** 200/4
**speculate [2]** 26/25 228/13
**Spencer [1]** 207/1
**Spencer's [3]** 95/7 95/8 120/24
**spend [9]** 5/19 6/23 66/12 132/13
146/20 195/12 204/2 205/22 221/21
**spending [2]** 66/3 66/20
**spent [1]** 114/16
**spine [1]** 28/17
**spoke [2]** 70/12 198/12
**spoken [2]** 77/15 113/4

**S**

sponsor [1]  70/24
spontaneous [1]  53/5
sporadic [1]  177/13
spouse [1]  122/2
spreadsheet [5]  12/25 13/15 237/18 238/4 238/7
spreadsheets [2]  11/13 118/6
Spring [1]  182/15
SQL [5]  12/24 14/12 237/12 238/22 239/6
St [1]  20/9
stabbed [1]  181/12
stabbing [1]  205/2
stack [1]  195/3
staff [11]  17/15 20/17 38/1 38/8 38/9 38/10 112/6 113/23 115/15 136/17 206/9
staffs [1]  207/18
stage [2]  218/24 219/16
stages [1]  65/18
stand [7]  15/22 26/20 29/11 29/15 29/17 44/1 191/23
standard [2]  86/12 123/13
standing [1]  194/23
start [25]  26/15 26/21 30/22 37/16 50/16 56/17 59/3 66/15 67/15 90/4 91/11 91/21 94/24 116/15 118/20 130/6 186/11 186/19 198/8 210/7 218/14 221/23 225/17 226/22 231/7
started [9]  58/5 80/25 94/5 107/25 113/5 113/9 143/8 152/16 187/25
starting [10]  3/5 15/8 94/25 96/7 100/18 113/19 209/10 209/19 209/20 230/14
starts [1]  177/19
state [8]  3/4 15/7 24/21 24/22 32/5 59/8 59/12 179/18
state's [1]  24/25
stated [2]  159/15 169/2
statements [2]  102/22 231/13
STATES [11]  1/1 1/3 1/10 3/3 15/6 15/17 15/21 19/6 22/8 86/1 138/23
statistician [1]  105/21
statute [1]  9/9
statutes [1]  215/18
stay [3]  17/15 162/16 178/24
staying [1]  124/9
stealing [1]  152/15
steer [4]  110/5 120/2 223/3 223/4
step [3]  14/25 124/1 124/5
Stephanie [2]  19/18 20/11
STERLINGOV [22]  1/6 3/3 3/10 3/22 15/6 15/14 15/21 16/15 16/24 19/13 19/14 20/19 21/5 21/9 21/10 123/5 123/8 123/15 219/8 225/23 226/2 232/13
Sterlingov's [1]  13/2
Steven [1]  20/11
stewing [1]  107/24
still [21]  9/14 20/7 34/23 49/8 58/15 75/7 81/3 96/25 97/4 98/21 98/24 111/22 123/3 130/18 133/22 137/6 155/3 155/5 185/13 226/25 236/5
stimulator [1]  29/1
stints [1]  119/3
stock [1]  57/18
stole [2]  87/11 87/12
stolen [1]  166/11
stop [1]  235/17
stopped [5]  28/21 60/20 60/25 61/2 61/5
store [6]  95/3 96/16 96/20 171/10 171/11 207/1
straight [3]  4/9 120/5 120/6
strain [1]  195/7
strategically [1]  217/21
strategy [4]  114/20 175/21 176/17

233/15
strategy-type [1]  114/20
street [7]  1/16 2/3 18/23 57/18 75/22 142/2 181/9
stress [1]  160/21
stresses [2]  160/17 160/19
stretch [1]  113/25
stricken [1]  217/23
strict [1]  8/20
stride [1]  236/1
strike [39]  10/14 36/25 37/5 37/7 93/13 93/15 108/4 113/16 122/14 122/18 140/24 141/5 141/7 141/22 142/10 154/15 169/9 170/13 170/18 179/5 179/6 193/2 193/5 193/9 205/23 206/17 206/24 207/6 207/25 208/25 209/8 217/5 217/9 217/18 217/20 218/14 218/20 218/24 219/4
strikes [13]  188/13 188/14 188/15 217/1 217/4 217/9 217/10 217/10 217/12 217/13 217/16 217/18 217/24
striking [11]  37/4 121/14 169/11 207/9 207/15 207/22 208/4 208/7 208/15 209/3 218/9
strong [34]  22/4 22/7 22/19 23/3 23/6 23/9 23/12 23/17 24/9 34/2 34/3 41/3 41/3 41/14 41/16 41/17 44/3 69/2 74/17 83/10 83/12 88/4 88/6 89/1 91/12 149/15 150/2 156/19 157/5 174/18 198/9 198/13 198/15 198/19
struck [2]  121/11 169/2
students [3]  53/6 55/1 55/23
study [1]  159/13
stuff [12]  13/10 13/19 49/21 57/19 68/15 68/20 71/21 71/24 104/23 131/16 211/24 218/4
subcommittee [1]  41/8
subject [3]  228/19 236/17 239/11
submit [2]  7/23 64/1
submitted [2]  227/1 227/22
subscribe [1]  18/15
subscribed [1]  139/20
subsequent [1]  167/16
subsequently [1]  9/10
substance [1]  116/6
substances [1]  23/8
substantial [3]  9/1 133/16 146/19
substantive [1]  9/8
successful [1]  3/23
successfully [1]  58/7
such [7]  18/17 22/23 24/23 25/7 89/1 234/22 237/15
sudden [1]  87/13
sufficient [2]  123/8 226/16
suggested [1]  79/22
suggesting [1]  231/25
suit [1]  87/23
Suite [1]  1/17
sum [1]  26/8
summarized [1]  18/13
summary [1]  11/7
Sunday [1]  203/4
super [4]  177/13 179/18 179/20 179/23
Superior [7]  75/23 97/16 134/12 139/18 152/10 152/12 190/21
supervising [1]  151/7
supervision [1]  51/9
supervisory [1]  213/16
support [2]  49/18 173/18
supported [1]  91/2
supposed [3]  96/18 159/5 159/16
sure [49]  3/13 4/15 11/8 12/18 13/8 14/16 18/7 28/25 34/2 34/18 44/17 46/7 47/25 54/7 57/19 69/12 74/25 75/9 78/7 80/3 80/15 83/23 85/14 88/17 88/19 92/18 95/3 96/17 108/15 115/14 116/3 117/6 120/1 137/18 153/4 157/4 161/2 186/23 203/23 215/8 218/10 219/14

219/17 228/5 232/11 235/5 236/5 236/6 236/12
surgeon [1]  6/19
surgeries [1]  6/6
surgery [1]  28/17
surgical [3]  100/14 100/21 148/3
surprise [1]  237/1
surprised [3]  6/14 6/15 14/5
surprisingly [1]  221/15
suspect [2]  65/11 169/7
sustained [1]  85/1
Svensson [1]  20/4
Sweden [2]  22/4 22/5
Swing [1]  81/10
switch [2]  58/20 217/25
sworn [1]  15/24
sympathize [2]  192/10 192/11
system [9]  25/10 33/14 160/17 164/23 164/25 185/7 221/6 221/15 223/14
systems [1]  68/13

**T**

T-Mobile [1]  171/9
take [43]  5/7 6/15 9/2 10/13 19/21 25/16 27/24 29/17 32/19 46/10 46/17 66/16 68/16 69/20 70/6 79/15 90/8 101/3 107/18 107/21 109/22 109/24 110/1 146/23 160/17 166/12 208/18 210/5 210/6 217/22 218/25 219/13 219/17 219/23 219/24 220/10 220/17 220/19 222/17 224/2 227/19 231/2 238/16
taken [6]  15/3 16/14 101/19 130/2 147/4 219/20
takes [5]  26/23 28/6 218/18 222/1 223/25
taking [9]  55/4 55/5 61/6 65/21 101/17 186/14 218/22 219/5 230/18
talk [15]  26/16 27/19 28/1 28/3 51/2 71/9 110/5 123/17 159/8 162/8 162/9 185/4 207/12 223/11 236/1
talked [5]  157/14 158/14 209/19 226/15 238/4
talking [12]  26/21 28/2 28/4 34/12 123/16 181/9 218/18 228/10 232/15 234/12 234/13 235/24
target [2]  52/10 72/5
task [1]  41/22
tasks [1]  116/2
taught [1]  165/3
Tax [1]  86/1
Taylor [1]  20/17
teach [2]  55/2 183/14
teacher [3]  54/25 55/12 99/7
teachers [2]  55/3 55/14
team [6]  167/13 167/17 170/7 173/17 194/22 207/13
teams [1]  213/1
tech [5]  67/25 68/8 146/2 146/3 173/18
technical [4]  10/15 77/18 228/19 238/23
technically [2]  94/5 173/17
techniques [1]  23/19
Technologies [1]  68/11
technology [2]  18/17 22/14
teenager [1]  181/21
teeth [4]  153/14 154/3 154/25 155/17
telephone [4]  64/20 65/2 228/4 228/4
television [2]  21/17 42/3
tell [72]  6/11 6/17 8/16 10/9 35/16 35/17 39/21 41/14 48/15 48/25 50/19 51/5 54/5 59/21 62/9 65/16 67/22 69/14 70/20 70/22 71/2 75/20 78/15 84/23 88/18 96/11 97/24 104/18 110/17 115/11 121/16 132/2 136/15 136/22 136/25

**T**

tell... [37]   137/17 138/21 139/16
143/12 144/20 145/1 155/22 161/18
163/20 164/8 164/13 169/10 171/8
174/16 177/9 179/15 180/12 181/7
188/21 190/23 191/13 193/16
199/17 201/13 204/3 210/3 217/2
218/13 222/4 222/7 222/16 223/1
223/5 223/10 227/13 229/4 239/5
teller [2]   87/6 87/6
telling [6]   14/8 14/9 27/3 34/25
178/11 217/7
tells [1]   219/23
template [2]   6/23 7/7
Ten [1]   183/10
tenant [1]   151/8
tend [5]   24/14 38/22 86/7 89/11
91/14
tendrils [1]   173/7
tentative [1]   32/9
term [1]   33/3
terminology [1]   77/11
terms [4]   77/13 77/19 114/9
115/22
terrible [1]   117/14
testifies [2]   35/9 178/14
testify [7]   88/25 224/2 231/20
231/21 232/7 232/7 233/10
testifying [4]   164/2 177/3 238/3
239/7
testimony [40]   10/3 20/1 24/13
24/15 35/12 35/13 38/23 39/2 39/4
44/18 53/14 57/23 61/10 61/22
71/6 86/7 86/13 88/12 89/4 102/6
104/10 106/11 117/10 117/22 144/2
163/17 163/23 165/12 173/24 174/1
177/5 178/8 191/22 197/15 197/17
229/6 233/23 234/9 236/6 239/12
text [1]   27/11
than [38]   7/3 7/6 13/17 18/12
24/16 35/3 35/6 39/9 42/15 42/20
65/17 71/4 86/8 86/23 91/24 112/3
133/16 134/1 138/9 140/10 142/1
150/5 158/10 159/2 161/4 162/18
164/14 164/22 165/10 170/14 178/1
200/4 215/22 216/6 223/24 228/9
231/19 236/22
thank [181]   6/10 15/16 16/1 30/14
30/18 30/20 32/24 36/20 44/23
45/1 45/3 46/25 47/4 48/5 48/7
48/9 50/12 50/14 50/21 50/22
54/12 54/20 54/22 55/22 58/10
58/24 59/1 60/10 61/24 62/2 62/4
63/10 63/13 63/16 64/8 64/10 65/4
65/8 65/10 65/20 67/8 67/10 67/12
73/21 75/12 75/14 75/16 76/23
76/24 77/1 78/4 78/6 78/8 78/10
80/20 80/22 82/25 83/2 84/16
84/18 89/21 89/23 89/25 90/2 91/4
91/6 91/9 93/20 94/19 94/21 97/11
99/5 99/13 99/17 100/8 100/10
103/23 103/25 105/5 105/10 108/10
109/21 110/13 112/20 112/22
112/23 113/16 113/18 116/14
118/10 118/14 118/18 119/19
119/20 130/4 132/16 134/2 134/9
135/7 135/12 135/15 136/11 136/13
140/17 146/4 147/19 147/23 148/16
148/18 150/18 151/20 151/22 152/1
154/22 155/23 155/24 160/9 160/11
161/14 161/16 163/13 165/19
165/23 167/5 170/19 170/23 172/8
172/18 174/9 174/11 179/7 179/11
180/8 180/10 180/20 183/2 183/23
183/24 184/1 184/22 186/3 186/5
186/6 186/8 188/8 189/15 193/1
193/13 193/14 194/17 194/19 198/3
201/3 201/6 201/9 202/20 203/10
203/11 203/13 203/14 204/17
204/18 204/20 206/4 211/3 212/15
216/11 216/22 219/10 220/25 221/2

221/6 221/10 223/12 223/17 225/11
225/12 225/14 225/16 229/22 237/4
thanks [14]   55/18 92/21 93/8
99/15 105/8 133/12 146/23 150/16
171/3 182/25 184/4 186/10 204/23
209/16
that [922]
theater [1]   194/11
theaters [1]   193/22
theft [2]   18/20 87/4
their [37]   5/20 6/1 6/22 7/4 9/21
15/7 18/3 24/15 44/6 44/7 55/5
63/21 64/1 68/14 70/21 71/24
73/11 73/18 86/14 108/18 113/5
120/23 130/19 145/12 164/1 176/16
183/13 187/18 212/8 213/14 223/7
226/24 230/2 234/15 234/17 238/11
238/11
them [66]   4/20 4/22 7/4 11/17
12/2 12/4 12/23 17/25 18/4 18/8
24/15 26/18 27/3 27/3 27/5 28/1
28/2 32/5 37/14 39/19 42/15 43/6
55/2 56/15 56/25 61/14 70/3 87/6
89/7 91/16 91/17 105/23 110/5
112/3 113/14 115/5 119/9 119/10
132/24 147/4 147/4 148/25 155/16
155/18 155/22 163/24 165/5 171/12
176/9 176/10 176/15 176/16 182/2
192/11 193/18 197/1 197/2 206/18
206/18 209/9 215/21 216/2 222/16
223/5 227/5 231/25
themselves [3]   26/21 92/10 201/17
then [156]   3/15 5/1 6/8 7/1 9/13
10/20 10/22 12/10 15/23 17/18
27/4 29/17 29/21 30/5 32/1 32/24
38/13 38/21 39/12 40/4 40/22
42/22 46/18 52/12 53/21 57/10
57/16 57/17 60/10 66/23 68/16
72/25 73/1 74/12 78/19 79/18 82/2
82/12 84/6 85/17 86/6 87/1 88/3
88/11 90/14 90/17 92/14 94/6 95/9
95/18 95/24 98/24 100/17 101/10
102/9 102/21 102/25 104/14 106/16
107/3 107/21 109/6 109/23 111/6
114/8 114/12 117/9 119/7 119/12
120/19 120/20 121/5 131/4 131/10
131/17 133/4 138/6 138/12 138/16
139/13 139/19 141/4 143/10 144/4
144/14 149/5 152/17 153/3 153/7
153/9 153/20 154/22 154/24 155/17
156/18 162/4 165/3 166/14 166/18
172/19 180/20 181/4 183/15 185/10
186/21 186/25 187/7 188/15 188/24
188/25 189/6 190/9 193/22 195/18
196/10 196/17 197/6 198/14 198/18
199/10 200/5 200/17 201/21 202/14
204/12 204/17 206/5 206/7 206/25
207/7 207/17 208/1 208/17 208/22
209/8 209/21 211/4 211/16 211/19
215/19 217/14 217/17 217/22 218/1
223/24 226/5 228/8 229/11 229/23
230/11 230/17 233/11 233/21
233/25 234/3 234/13
Theodore [1]   20/12
theory [1]   232/14
therapy [3]   28/18 28/19 182/10
there [199]   3/14 4/5 4/6 4/18
4/22 6/1 8/18 8/19 10/3 11/15
11/20 11/21 11/22 12/13 12/25
13/3 13/9 13/10 13/10 13/12 13/13
14/3 14/7 14/8 14/9 14/12 17/18
18/1 20/24 24/13 26/4 26/9 26/15
27/5 27/19 28/15 28/20 29/25
30/22 30/25 31/14 31/16 31/20
32/7 35/21 36/5 36/6 36/7 37/5
38/8 38/9 43/5 43/7 44/11 44/13
44/14 46/3 46/5 46/6 46/9 46/10
49/4 51/8 53/24 56/11 56/24 57/20
57/22 62/13 63/7 63/24 64/19 66/5
67/15 71/6 71/14 72/14 74/23 75/6
76/11 78/20 78/21 81/13 81/18
81/24 83/13 90/4 94/24 95/22

96/14 96/21 96/25 104/22 105/20
110/9 111/22 113/12 114/8 114/10
114/18 115/25 115/25 116/5 117/17
118/20 119/21 120/11 122/25
123/23 124/6 132/10 133/1 136/25
138/9 140/6 141/6 141/8 141/21
141/22 142/7 142/13 143/9 143/17
144/25 147/2 152/17 152/22 154/2
154/15 155/7 159/16 161/23 165/11
167/17 173/24 176/24 179/12 179/17
182/16 183/8 183/11 195/23 196/21
197/15 203/21 206/16 206/17
206/25 207/3 207/5 207/6 208/1
208/17 209/15 209/20 210/11
210/12 212/2 213/3 214/21 215/20
217/11 218/3 218/17 220/23 223/8
224/19 227/7 227/11 227/19 229/8
229/10 231/3 231/6 231/6 231/7
231/7 231/8 231/14 231/20 231/24
233/6 233/9 233/12 233/14 233/22
234/8 234/11 234/14 234/21 235/9
235/13 236/5 236/19 238/15 238/17
238/17 239/5 239/16
therefore [2]   37/13 231/5
these [11]   11/16 21/25 40/23
51/15 70/2 88/15 115/24 130/22
215/16 234/14 235/9
they [159]   4/7 4/8 4/8 4/15 5/2
5/11 6/5 6/24 6/24 7/1 7/6 8/2
8/4 8/5 10/25 11/8 12/5 12/5
13/10 14/15 14/16 17/9 19/8 19/17
24/16 32/8 33/8 34/2 34/2 34/3
37/13 38/23 43/6 44/13 44/15 49/2
52/11 52/12 56/21 56/25 68/14
69/19 70/1 70/4 70/5 72/3 72/4
72/5 72/23 72/25 73/2 73/18 74/8
74/20 74/21 81/20 85/5 87/7 87/9
87/10 87/10 87/10 87/11 87/12
88/22 89/7 89/15 89/19 90/6 90/16
91/14 91/20 91/22 91/23 96/18
99/11 106/4 106/5 108/18 110/5
110/6 110/6 113/4 116/22 119/1
119/1 133/2 133/4 134/16 145/12
145/13 152/16 153/6 153/9 153/13
153/19 155/7 156/12 157/3 158/21
163/8 163/18 164/1 164/4 164/21
171/12 176/18 178/17 182/10 183/9
183/14 191/18 192/18 192/18
201/16 201/16 201/16 201/18
201/21 201/22 207/5 212/6 212/6
212/8 215/17 215/18 221/8 221/9
221/19 222/17 223/4 223/5 226/24
227/10 228/10 229/3 229/5 229/5
229/7 229/8 229/9 230/1 231/3
231/21 231/21 231/21 233/11
233/11 234/16 234/18 235/2 235/20
235/23 236/2 236/8 236/15 237/24
238/9 238/10
thing [18]   10/22 29/2 53/7 60/23
65/24 79/21 80/4 80/7 146/19
148/9 158/17 158/17 159/7 192/19
203/24 218/11 219/6 223/6
things [27]   3/14 32/21 51/9 53/1
53/3 53/4 70/2 95/23 96/17 98/3
101/24 117/15 132/11 141/23
143/20 145/17 146/13 153/10
167/14 209/25 214/6 224/4 224/7
225/17 226/10 226/11 232/3
think [214]   5/8 6/16 9/14 9/16
10/2 10/23 13/21 16/11 19/23
29/16 31/3 31/5 31/23 34/1 36/2
37/4 39/10 39/10 39/11 42/2 43/1
49/13 49/20 49/22 50/24 52/5
52/11 52/12 65/12 65/14 66/4
66/10 66/24 67/1 67/2 67/19 69/7
69/25 69/25 70/6 71/7 71/13 72/11
72/22 73/10 73/14 74/16 74/25
77/21 83/14 84/6 86/15 86/18 88/6
88/10 89/10 91/14 91/20 92/15
93/1 97/5 100/13 103/10 108/6
109/25 110/1 110/25 114/13 117/21
117/22 118/2 121/7 121/9 121/12

**T**

think... [140]  121/22 122/7 122/13 122/20 123/13 130/8 131/22 132/5 133/15 133/20 133/25 136/18 138/14 140/10 141/6 141/7 141/13 141/18 141/21 142/1 142/3 142/9 142/12 142/13 144/13 150/10 151/3 154/3 154/5 155/11 155/21 157/9 157/12 157/21 159/6 159/7 159/15 164/13 164/14 164/22 164/22 165/2 165/4 165/7 165/10 167/10 167/24 168/15 168/19 169/1 169/2 170/19 171/16 172/13 172/14 175/1 176/24 178/2 179/1 179/7 179/22 185/20 186/19 188/11 188/12 188/15 189/5 189/24 192/7 194/12 195/9 195/14 195/25 196/5 198/21 198/25 199/4 200/13 200/20 202/1 202/13 203/17 203/18 206/13 206/14 207/2 208/24 209/15 209/18 209/25 211/23 216/1 216/6 216/7 216/9 216/25 218/6 218/12 218/20 226/14 226/16 227/17 228/5 228/8 228/14 228/16 228/22 230/13 230/19 230/20 231/10 231/19 232/2 232/5 232/19 233/3 233/9 233/12 233/12 233/13 233/14 233/16 233/16 233/18 233/25 234/2 234/4 234/8 234/10 234/10 235/19 235/23 235/25 235/25 237/2 237/2 237/14 238/5 238/19 239/3
thinking [4]  9/1 108/4 217/21 218/14
thinks [2]  51/13 53/6
third [2]  8/18 25/1
thirds [1]  8/18
Thirty [1]  202/3
Thirty-seven [1]  202/3
this [275]
those [51]  8/9 9/2 9/11 11/12 11/24 16/14 17/24 31/12 31/17 33/1 41/24 43/7 44/6 44/6 52/6 59/22 61/12 74/23 75/6 82/1 92/3 94/8 96/16 101/11 101/19 104/4 109/21 111/24 112/8 117/22 131/11 131/12 134/19 141/18 157/9 180/11 195/19 200/7 203/24 206/17 210/10 210/13 213/2 214/4 214/15 215/25 217/5 217/22 226/10 230/10 234/19
though [14]  8/8 52/4 66/20 74/4 113/6 157/1 157/24 161/5 166/4 176/5 177/4 189/25 196/2 218/16
thought [12]  9/7 108/3 109/12 113/7 123/6 170/14 172/3 192/12 201/14 205/15 205/21 219/4
thoughtful [1]  7/25
thoughts [5]  33/15 69/14 69/17 121/8 133/17
three [19]  28/18 31/12 50/15 55/1 56/2 59/3 65/21 65/23 66/9 90/7 91/2 105/11 108/11 110/14 113/19 118/19 121/22 165/24 192/2
three-day [1]  121/22
threshold [1]  226/6
threw [1]  103/10
thrilled [1]  97/1
through [30]  5/19 12/5 13/16 26/16 28/10 32/10 36/7 40/25 49/2 49/22 57/17 61/4 67/16 79/19 83/8 83/13 108/1 131/20 158/1 171/13 173/10 176/1 176/1 176/3 203/3 203/4 206/18 227/5 227/9 238/15
throughout [1]  193/18
Thursday [12]  32/14 119/5 148/7 153/16 153/20 153/20 153/24 154/3 155/10 155/14 155/18 224/12
Thursdays [1]  154/1
thus [1]  141/21
ticket [2]  60/22 203/5
tickets [4]  6/25 7/2 57/7 162/1
time [80]  6/9 6/18 8/18 8/19 9/2 10/13 12/4 13/6 14/19 26/23 28/6 28/20 30/24 31/2 31/7 32/6 38/11 54/14 56/11 56/15 56/17 56/21 57/2 66/3 66/12 66/12 66/15 66/21 66/21 70/3 77/20 78/11 80/25 81/2 100/24 101/18 113/25 132/6 132/13 132/15 134/23 153/9 153/22 153/23 159/13 162/23 162/25 163/1 167/14 175/3 183/7 183/8 186/15 190/24 193/18 193/19 193/23 195/12 195/14 196/1 205/22 217/20 218/16 218/22 219/5 221/21 222/4 224/4 224/7 224/15 224/21 226/10 227/20 228/12 237/17 238/8 238/10 238/12 238/21 239/3
timed [1]  230/19
timeline [1]  130/19
times [11]  28/18 29/7 66/9 145/25 154/6 190/1 190/25 191/1 210/11 210/13 232/25
timing [3]  72/23 81/4 81/13
title [1]  114/3
titled [1]  12/9
today [18]  3/14 48/10 63/14 134/7 135/16 151/23 155/3 155/4 160/19 167/15 184/2 186/8 189/16 190/1 201/7 203/13 204/21 221/2
toddler [1]  156/6
together [6]  8/13 11/12 40/24 138/4 223/6 223/8
token [2]  23/1 196/19
tokens [2]  71/19 71/20
told [7]  9/1 155/13 172/17 188/18 223/1 230/2 236/22
tomorrow [20]  119/5 119/11 119/12 219/8 221/8 221/14 221/21 221/23 222/3 225/18 225/19 225/20 225/22 226/17 228/2 230/2 230/3 230/4 236/21 236/22
tonight [6]  155/4 155/6 155/9 221/9 221/10 236/20
too [15]  31/17 45/4 45/6 67/24 71/24 113/4 117/14 161/6 161/8 170/19 193/8 208/17 210/18 218/22 219/5
took [3]  201/18 201/21 201/22
tool [1]  197/14
top [3]  96/15 196/22 228/23
topics [1]  139/21
TOR [13]  2/2 2/3 3/9 15/13 19/16 19/16 19/19 22/13 22/16 131/20 131/22 132/3 132/13
total [1]  11/12
touch [2]  17/22 226/19
tough [2]  108/1 237/15
toward [2]  16/5 72/11
towards [5]  101/17 133/18 165/7 175/4 176/6
town [3]  172/12 172/23 173/1
Townsend [1]  20/4
traced [1]  73/11
Tracers [1]  70/15
tracing [2]  69/4 213/10
track [4]  7/5 9/17 73/13 116/1
tracking [1]  116/4
Tracy [1]  20/12
trade [3]  68/20 68/21 94/13
trading [3]  25/11 98/2 98/24
traffic [3]  60/22 60/24 210/21
trafficking [1]  41/18
trainers [2]  95/2 207/5
training [27]  9/22 22/12 24/4 39/14 45/18 63/18 86/23 93/22 94/6 95/1 99/20 101/17 106/18 108/1 110/21 138/14 144/6 149/7 150/21 151/13 166/16 172/21 173/14 187/8 197/8 199/23 209/21
trainings [1]  101/19
transaction [1]  214/22
transactions [9]  73/12 73/18 92/15 131/12 197/1 200/19 214/14 216/10 216/10

transcript [2]  1/9 240/4
transfer [2]  4/21 98/23
transition [1]  97/3
translations [4]  11/23 12/1 13/19 237/13
translators [1]  230/10
transmission [1]  16/18
transmitting [1]  16/18
travel [8]  56/3 57/2 57/4 78/18 175/8 177/8 179/18 202/24
traveling [4]  32/6 32/7 204/2 237/13
travels [1]  186/15
Treasury [1]  25/9
treat [1]  168/18
treated [1]  185/14
trial [58]  1/9 4/16 5/10 6/12 8/17 9/12 10/1 11/6 11/14 12/13 13/6 13/20 13/21 13/24 13/25 14/21 16/10 16/25 19/8 21/21 23/22 25/24 29/6 31/9 31/19 46/9 55/13 56/5 78/12 79/5 83/15 86/1 86/25 91/3 91/3 97/2 102/22 111/3 121/22 121/23 123/4 123/6 150/24 156/7 178/7 178/14 202/14 206/12 210/1 222/5 222/11 223/21 226/11 227/13 228/15 231/11 237/23 238/3
trials [1]  31/19
trickier [1]  82/1
tried [2]  131/15 239/1
trip [11]  57/6 57/8 57/9 58/15 58/15 115/20 161/24 172/13 177/13 177/14 177/17
trouble [2]  122/6 145/13
troubleshoot [1]  173/22
true [6]  21/17 164/18 164/19 164/19 234/25 240/4
trust [5]  86/9 89/11 164/12 177/25 178/16
trusted [1]  89/11
trustworthy [1]  42/20
truth [4]  34/25 164/13 165/7 178/11
truthful [1]  86/15
truthfully [3]  16/14 17/25 88/25
truthfulness [2]  86/11 86/12
try [8]  35/7 61/15 71/11 73/12 162/16 188/18 211/9 221/25
trying [11]  10/7 55/15 70/3 72/12 73/11 73/18 73/19 103/13 169/7 187/17 192/18
TSA [2]  135/2 135/3
Tuesday [6]  179/18 179/20 179/21 179/24 204/10 224/12
tumbling [2]  19/1 144/17
turn [4]  3/18 147/1 224/18 236/17
turnstile [1]  54/8
TV [2]  42/5 42/6
Twenty [1]  206/21
Twenty-two [1]  206/21
twice [2]  55/6 134/12
two [46]  8/18 8/19 11/10 11/12 11/20 12/8 30/8 30/25 37/25 39/23 48/12 55/3 55/14 64/16 65/21 65/22 70/11 83/5 90/3 95/1 97/14 104/2 113/13 116/15 118/7 120/11 145/8 148/23 153/14 153/21 154/4 156/4 156/5 183/3 189/18 195/11 206/5 206/21 214/11 214/21 216/1 227/16 230/6 230/16 233/6 234/8
two-month [1]  156/5
two-thirds [1]  8/18
two-year-old [1]  195/11
type [16]  7/7 7/15 8/9 24/21 25/2 38/16 89/2 114/20 117/18 130/13 130/25 132/3 164/17 164/18 197/11 222/19
types [7]  33/9 44/11 44/12 44/14 173/4 189/23 200/1
typically [2]  85/13 179/18

**U**

**uh [10]** 49/25 50/18 75/19 76/9
96/8 104/11 104/25 167/21 168/10
223/22
**uh-huh [9]** 49/25 50/18 75/19 76/9
96/8 104/25 167/21 168/10 223/22
**ultimately [6]** 58/14 120/25 121/5
121/10 207/2 209/21
**unable [1]** 12/20
**uncle [4]** 39/22 82/5 101/16 200/8
**uncomfortable [1]** 13/7
**under [4]** 7/21 10/16 87/21 176/9
**underage [1]** 183/6
**undercover [1]** 23/18
**Undersecretary [1]** 112/18
**understand [31]** 44/2 50/23 51/6
51/16 56/12 73/15 76/7 77/21
77/23 78/7 78/8 78/24 81/12 82/15
85/9 86/10 90/25 97/17 111/2
117/16 132/20 154/17 158/18
187/23 188/1 209/23 215/9 229/1
236/11 237/17 237/20
**understanding [6]** 25/23 50/23
71/15 77/9 170/15 178/15
**understands [1]** 18/8
**understood [4]** 77/22 172/5 236/18
239/18
**undertaking [1]** 223/17
**undetected [1]** 73/13
**unevenly [1]** 91/22
**unexpected [1]** 79/3
**unfair [3]** 91/15 91/16 91/17
**unfairly [2]** 91/21 185/14
**unfortunate [1]** 181/14
**unfortunately [7]** 35/5 36/9 85/8
90/6 118/24 171/9 181/13
**Union [1]** 179/19
**unit [1]** 151/8
**UNITED [11]** 1/1 1/3 1/10 3/2 15/6
15/17 15/21 19/6 22/8 86/1 138/23
**universe [1]** 115/23
**unlawful [2]** 52/2 92/4
**unlawfully [1]** 52/14
**unless [4]** 6/16 20/20 98/21 98/22
**unlicensed [1]** 16/17
**unlikely [1]** 230/12
**unnecessary [1]** 159/16
**unpaid [3]** 90/9 146/24 147/5
**unregulated [1]** 83/14
**unring [1]** 234/23
**unsalaried [1]** 90/8
**unsure [1]** 87/20
**until [16]** 20/20 26/1 46/15 63/9
70/5 72/25 153/21 154/5 190/6
194/1 221/23 222/9 230/14 238/3
239/2 239/7
**up [193]** 3/18 3/21 4/25 5/1 5/13
5/16 7/18 7/23 7/24 7/25 8/6 8/6
8/9 8/10 8/14 8/15 8/18 8/19
12/25 17/17 17/20 26/12 27/4
27/21 29/2 29/15 29/17 30/11
30/13 30/15 34/8 36/11 36/13
36/15 37/12 42/10 42/23 43/15
43/19 43/23 44/1 44/10 44/16
44/22 46/24 47/17 49/12 50/1 51/1
52/20 53/5 54/15 56/4 56/11 57/16
57/16 58/1 58/2 58/6 58/7 58/8
58/9 58/13 58/22 60/14 60/16
61/16 61/19 62/16 63/1 64/3 64/24
66/19 67/3 69/10 72/12 72/15
72/16 74/3 75/13 76/17 79/16
80/16 82/19 83/8 83/19 84/7 84/9
89/9 90/22 92/17 93/3 93/11 94/6
94/15 97/6 98/18 100/2 100/14
100/21 101/8 103/17 105/4 107/9
107/21 109/16 112/16 113/1 116/8
117/13 118/4 118/11 118/24 118/25
119/13 121/5 122/21 131/23 132/17
133/6 133/14 140/12 140/14 140/20
141/19 144/24 145/5 145/19 146/5
147/6 151/15 154/8 154/12 157/18

157/19 158/13 162/10 164/5 165/14
165/18 168/24 168/24 169/18
169/20 171/22 174/20 175/8 177/8
177/21 179/17 181/24 183/8 184/18
185/1 188/4 188/9 188/15 190/13
190/13 192/4 192/22 197/20 197/25
200/23 202/15 205/12 207/2 207/4
207/7 207/16 208/14 208/16 208/21
209/9 209/14 209/15 210/14 212/3
212/9 212/17 215/6 216/13 216/23
217/21 217/25 219/23 223/6 225/2
228/6 232/18 235/10 237/12 239/4
**update [1]** 12/10
**updated [4]** 11/6 11/9 14/15 14/17
**updates [2]** 12/14 12/14
**Uphold [4]** 98/1 98/12 98/16 98/17
**upon [1]** 72/25
**upper [1]** 17/6
**upset [1]** 133/3
**urgent [2]** 46/11 81/19
**us [76]** 1/20 13/18 14/14 16/11
24/24 25/8 25/9 30/25 39/21 48/15
48/25 51/5 54/5 58/19 59/21 62/9
65/16 67/22 69/14 70/20 75/20
78/15 84/23 86/23 88/18 90/11
96/11 97/24 104/18 105/16 110/17
113/22 114/5 115/11 117/6 136/22
136/25 137/17 138/21 139/16 142/6
143/12 143/14 144/20 145/2 146/9
146/16 146/18 160/25 161/18
163/20 164/8 171/8 172/17 174/16
174/23 177/9 177/15 179/15 180/12
181/7 186/22 190/23 191/13 193/16
194/11 199/17 201/13 209/19 210/3
211/8 226/1 230/2 232/16 235/11
238/4
**USA [1]** 77/16
**USAO [3]** 1/16 167/24 168/1
**USAOs [1]** 168/14
**use [24]** 7/14 21/25 22/20 26/17
41/4 69/4 69/18 71/23 71/23 71/23
73/8 73/12 74/24 79/25 83/10 88/7
88/15 89/2 120/8 157/6 197/1
198/9 226/24 228/4
**used [35]** 13/20 22/13 22/14 43/11
43/13 47/23 48/2 48/3 51/23 51/24
52/9 52/12 69/18 71/16 71/17 72/3
72/4 72/4 72/5 73/16 74/9 75/2
76/20 76/21 84/10 92/14 116/1
131/12 131/22 132/2 148/22 158/5
159/10 166/4 196/16
**uses [1]** 74/4
**using [14]** 7/9 23/18 27/9 51/7
52/24 52/25 71/21 87/8 92/11 98/3
108/18 132/13 137/20 165/4
**usual [6]** 164/14 221/16 221/16
222/23 223/18 239/22
**usually [10]** 21/18 28/22 96/20
99/12 115/15 139/24 188/16 195/12
210/7 239/2

**V**

**vacation [1]** 90/8
**vaguely [2]** 51/11 51/14
**Valerie [1]** 20/12
**value [3]** 158/9 158/14 160/1
**Vancouver [1]** 177/13
**varies [1]** 177/12
**various [7]** 38/5 44/4 51/12 67/17
137/20 167/24 180/11
**vast [1]** 11/4
**venue [6]** 8/25 9/6 9/7 9/8 226/13
226/14
**verdict [9]** 5/5 16/7 21/13 22/2
22/6 22/10 24/12 88/16 134/19
**Verizon [1]** 184/13
**Verret [4]** 9/20 20/5 234/17 235/2
**version [2]** 14/16 14/17
**versions [2]** 11/8 11/9
**versus [5]** 3/3 5/20 15/6 15/21
211/11
**very [33]** 10/5 10/16 28/18 38/2

40/13 45/25 51/19 51/25 55/22
61/11 77/21 79/10 79/12 79/20
85/2 111/17 115/17 119/20 122/19
144/22 158/4 166/10 173/17 173/17
176/10 181/14 181/14 203/14
207/19 214/9 225/25 228/16 238/10
**Veteran [1]** 63/22
**veterans [1]** 63/21
**via [2]** 27/11 70/10
**victim [17]** 24/2 29/22 87/2 87/4
87/13 95/19 102/19 102/22 109/7
166/8 171/5 171/7 181/5 199/13
199/15 201/11 205/1
**victims [1]** 87/8
**video [1]** 52/25
**view [8]** 51/17 117/10 121/13
156/22 157/15 159/4 164/16 227/14
**views [18]** 5/20 36/10 39/3 69/15
69/22 70/1 72/18 82/10 83/20
89/13 108/20 109/13 112/8 141/14
156/24 157/9 159/25 227/6
**violate [1]** 231/6
**violated [1]** 137/20
**violations [1]** 213/6
**violent [1]** 111/10
**Virginia [1]** 82/8
**visit [2]** 66/9 154/5
**visuals [2]** 11/6 12/13
**Vlahakis [2]** 10/1 20/12
**voir [2]** 7/9 16/3
**volume [1]** 13/16
**vs [1]** 1/5
**vulnerable [1]** 85/2

**W**

**wait [3]** 26/19 190/6 192/6
**waiting [6]** 3/13 9/3 142/2 166/11
192/4 226/22
**Walker [4]** 20/16 225/1 225/7
225/10
**walking [2]** 60/24 60/25
**Wall [3]** 2/3 18/23 57/18
**wallet [18]** 43/10 43/15 49/24
50/2 50/5 57/16 58/2 58/7 80/8
83/8 84/7 84/11 98/18 98/19 98/22
103/15 197/4 197/5
**wanders [1]** 188/17
**want [77]** 3/12 3/13 5/3 6/22 7/17
7/24 9/2 9/23 10/12 18/6 18/7
28/6 34/11 35/23 36/1 36/2 36/4
42/17 60/14 66/3 72/16 75/5 78/7
85/5 85/13 96/6 96/9 106/13
109/23 110/2 113/13 115/10 115/13
123/3 140/22 140/23 141/13 141/17
146/8 146/14 147/4 147/4 154/25
157/16 159/20 165/5 165/5 172/1
174/18 177/18 190/12 192/20 193/8
207/7 207/12 209/23 209/23 211/1
211/6 212/6 212/7 212/8 215/8
217/2 217/20 218/20 218/22 219/4
219/16 220/11 224/6 226/19 226/24
233/4 233/15 236/11 238/17
**wanted [21]** 3/14 9/11 10/22 11/8
11/17 108/6 122/14 123/12 132/19
141/1 141/23 156/7 157/13 172/14
185/4 201/16 206/13 209/17 212/18
229/5 237/7
**wants [4]** 4/3 8/6 29/14 211/14
**was [214]** 3/22 4/24 8/18 8/19 9/8
9/16 9/16 10/23 10/23 11/24 13/19
14/4 30/7 33/3 33/8 34/20 36/6
36/7 37/18 40/10 40/12 40/13
40/15 40/17 42/3 42/3 46/10 48/16
48/17 49/1 49/3 49/5 49/6 49/24
50/3 50/17 52/2 54/1 54/7 54/8
55/11 55/15 57/12 58/14 59/12
61/5 61/6 63/6 65/11 65/12 70/22
72/21 74/10 75/6 75/21 76/2 76/3
77/7 78/14 78/15 78/20 79/6 79/21
80/9 81/15 81/19 82/22 82/23
82/23 82/24 87/4 87/5 87/8 87/13
87/13 87/22 87/22 88/12 90/17

# W

**was... [135]** 90/17 92/4 93/21 95/10 98/15 99/19 101/13 101/16 102/12 102/12 102/20 102/21 103/10 103/12 104/5 104/6 104/9 105/14 107/4 107/6 109/1 109/8 109/9 109/10 109/11 111/9 111/9 111/17 111/22 112/6 112/17 113/6 113/7 114/20 117/6 119/6 120/20 121/8 121/9 122/4 122/5 122/25 123/7 132/5 132/6 132/6 134/11 137/1 137/9 137/18 137/23 138/22 138/24 139/9 143/21 145/1 152/10 152/14 152/15 152/17 156/17 158/21 158/21 166/10 166/10 170/14 171/4 171/10 172/12 172/14 175/3 175/10 176/18 179/3 180/24 181/21 183/4 184/11 185/12 185/14 185/16 185/16 185/17 189/19 190/6 190/15 190/21 191/6 191/16 191/19 192/3 192/5 192/13 192/13 199/11 199/15 199/18 201/10 202/8 202/13 202/14 203/18 204/24 205/20 206/8 206/11 206/25 207/3 207/4 208/1 208/9 208/25 209/20 213/4 213/16 213/17 214/3 214/20 230/20 231/15 232/4 232/5 232/10 232/25 232/25 233/6 233/8 234/11 234/11 235/9 237/3 237/13 238/7 239/12

**Washington [6]** 1/5 1/14 1/17 1/21 2/9 32/5

**wasn't [11]** 29/25 54/6 72/17 88/19 103/12 108/15 109/10 152/17 190/5 201/22 213/17

**waste [1]** 6/9

**wasting [1]** 224/6

**watch [2]** 21/16 21/19

**way [52]** 6/15 8/1 8/16 12/21 16/22 21/1 22/15 26/16 27/24 43/25 44/16 49/2 50/24 63/5 63/10 69/2 69/24 74/21 76/8 82/16 88/1 96/17 102/6 107/21 109/14 117/11 140/23 142/9 146/21 157/15 159/21 160/1 165/6 168/6 176/21 181/2 201/25 211/11 212/2 213/16 214/13 220/2 220/10 222/2 222/22 223/2 223/10 228/12 228/25 232/7 236/3 238/13

**ways [4]** 67/17 137/20 159/17 214/12

**we [341]**

**we'll [13]** 6/8 26/12 28/10 46/17 119/24 147/19 189/12 217/17 219/2 219/18 221/20 230/15 237/5

**wear [10]** 29/1 29/10 32/21 85/5 85/6 85/10 85/15 162/17 162/19 163/7

**wearing [2]** 32/18 85/3

**web [10]** 22/18 22/21 71/20 83/11 83/14 83/20 83/21 131/19 198/10 199/2

**website [1]** 58/3

**Wednesday [6]** 28/22 100/14 100/22 203/4 204/10 224/12

**week [19]** 28/18 31/12 38/1 61/4 66/9 78/21 81/1 96/17 115/20 119/2 119/13 119/14 148/5 186/13 186/15 210/13 210/15 210/20 239/8

**week-long [1]** 115/20

**weekend [2]** 204/9 210/18

**weekends [6]** 32/13 66/17 66/18 195/9 212/3 212/6

**weeks [14]** 30/8 37/25 55/1 65/21 65/23 145/12 145/17 146/24 147/5 153/14 153/21 154/5 156/4 156/7

**weight [7]** 39/2 76/11 104/9 104/10 106/10 106/11 117/22

**welcome [13]** 15/17 43/23 85/4 85/6 119/25 135/13 141/19 141/24 159/11 162/9 162/18 221/6 228/1

**well [77]** 3/11 3/21 5/15 8/7 10/8 11/5 29/19 31/11 32/6 33/11 34/14 38/9 38/18 39/8 45/17 46/14 46/19 52/9 55/5 59/23 62/9 66/18 68/21 70/12 77/21 78/23 85/1 86/19 94/5 95/12 95/21 96/15 99/13 112/25 116/20 121/9 121/10 121/15 121/24 122/19 130/23 131/10 138/6 141/16 148/10 152/1 155/18 163/12 167/10 170/19 176/17 184/4 187/15 191/16 193/15 195/12 201/8 203/14 203/16 206/2 210/19 212/14 214/9 220/25 221/19 221/25 224/17 224/18 225/14 227/22 229/19 232/2 232/14 233/20 234/13 235/7 235/19

**went [9]** 9/9 80/2 80/6 106/25 119/2 137/10 144/7 153/9 171/13

**were [73]** 7/6 8/7 8/11 11/21 12/1 24/12 29/25 33/8 34/16 38/14 39/1 43/5 43/7 46/6 46/8 51/13 54/7 59/17 59/18 76/4 87/7 92/14 101/3 108/18 111/20 116/22 121/17 124/14 134/16 136/17 137/15 137/20 139/7 142/7 148/23 152/22 152/25 157/22 158/21 159/22 168/8 176/21 190/3 190/17 190/19 190/23 191/25 197/15 202/10 207/5 209/19 210/4 212/20 212/20 212/25 213/2 213/9 213/13 213/18 214/5 215/1 215/13 215/16 215/19 215/20 222/14 226/18 227/19 231/7 231/22 231/24 234/19 238/7

**weren't [4]** 207/5 214/14 214/15 237/24

**what [244]**

**whatever [14]** 50/3 53/5 53/15 57/21 59/24 69/19 89/7 117/22 140/2 141/3 149/23 157/3 168/20 231/15

**wheel [1]** 218/16

**when [70]** 4/8 5/12 6/18 8/7 10/14 28/19 29/24 31/4 31/12 32/7 32/8 37/12 42/14 43/23 47/19 49/20 56/25 57/4 58/21 61/14 61/19 66/6 70/2 72/23 73/10 73/18 79/14 79/21 86/10 87/21 87/22 109/10 110/25 111/3 115/24 119/5 132/2 137/23 152/17 153/9 156/17 159/8 163/5 165/2 165/4 177/17 179/20 181/21 189/10 195/12 202/8 202/10 202/25 203/2 204/1 204/7 207/20 210/5 211/14 212/20 212/25 217/4 218/15 222/8 228/10 230/19 232/2 232/4 233/22 239/1

**whenever [1]** 211/14

**where [47]** 6/3 6/24 7/1 10/3 32/20 35/19 51/8 59/7 59/10 68/2 71/21 81/21 83/24 98/22 104/3 104/6 105/17 109/24 111/20 113/6 113/23 116/6 117/12 122/5 142/7 142/8 143/15 146/13 146/14 146/19 153/17 164/21 188/19 188/21 198/8 200/9 204/5 206/17 213/2 213/3 213/5 213/14 221/14 221/16 225/2 225/2 225/24

**whether [161]** 8/4 8/8 10/20 12/22 13/13 21/15 23/4 25/6 26/4 28/15 29/22 30/6 32/25 34/1 35/11 35/17 37/19 38/14 38/22 39/9 39/13 40/5 40/7 40/23 41/1 42/3 42/15 44/19 45/4 48/22 51/20 51/23 51/25 52/16 53/14 55/11 59/4 60/11 63/17 69/22 72/7 73/15 74/8 75/17 77/2 82/3 82/13 83/5 84/19 85/18 86/7 86/15 86/22 87/2 87/18 88/4 89/1 89/13 90/15 91/11 93/21 95/10 95/18 95/25 97/2 97/3 97/21 99/19 101/11 102/10 103/1 103/7 104/3 104/15 106/5 106/6 106/17 107/4 108/4 108/13 108/18 108/24 111/7 111/15 115/3 116/16 117/10 122/24 123/2 123/3 123/4 131/5 131/18 134/11 136/16 138/7 138/13 138/17 142/15 142/23 144/5 144/15 149/6 149/14 150/2 150/2 150/20 155/18 155/19 156/15 156/18 156/19 156/24 158/17 163/24 165/25 166/8 166/15 169/15 171/4 171/20 172/20 173/14 178/9 181/5 181/19 187/1 187/8 189/2 189/19 190/10 196/3 196/11 196/18 196/23 197/7 198/16 198/19 199/9 199/11 199/12 199/13 200/5 200/6 201/10 204/11 204/25 206/16 207/3 208/25 209/22 214/23 215/3 224/17 224/19 232/25 233/24 235/9 235/13 235/20 236/5

**which [108]** 9/18 9/19 10/10 10/11 11/7 11/11 12/9 12/10 16/2 16/15 17/22 21/17 26/3 29/22 32/25 37/18 38/22 39/13 40/11 40/17 40/25 41/19 42/3 42/3 42/3 48/22 50/16 56/5 57/12 57/19 59/4 61/10 67/16 74/23 75/17 82/3 85/18 86/6 87/12 88/4 88/12 91/11 92/10 92/12 92/13 93/21 93/21 95/2 95/10 99/19 99/19 101/11 103/1 105/17 107/4 107/24 107/25 111/14 113/22 115/2 116/16 117/17 121/23 122/15 131/5 131/8 134/10 136/16 138/7 138/14 142/23 143/11 144/15 145/23 149/14 150/20 159/21 165/11 170/16 171/4 172/12 173/13 183/4 188/15 189/19 192/17 196/18 201/10 203/18 203/22 204/8 204/24 206/1 206/6 206/7 207/18 208/23 211/10 217/18 222/2 228/14 230/12 232/9 236/25 238/5 238/6 239/22

**while [16]** 4/22 5/5 9/3 14/25 31/1 52/21 72/25 102/21 122/23 132/17 148/9 166/11 214/3 218/12 222/1 223/7

**who [100]** 3/10 5/11 6/23 15/14 16/4 21/23 21/24 31/14 31/22 32/2 33/21 35/9 35/12 36/8 37/22 38/8 38/14 39/17 39/23 39/25 46/3 46/5 46/6 46/10 49/17 49/19 55/4 55/12 56/24 66/5 66/6 66/12 66/21 67/25 70/22 81/13 84/20 88/13 88/13 90/3 107/25 112/17 118/23 120/19 120/20 122/3 123/21 123/22 123/22 123/23 124/6 137/20 143/1 147/3 148/23 149/8 149/9 158/23 162/5 163/6 164/17 164/19 177/2 183/11 185/18 186/14 188/23 194/10 196/6 198/11 200/3 200/21 205/20 206/8 206/9 206/11 206/13 206/25 207/18 207/19 208/2 208/10 208/17 213/13 214/4 217/5 217/19 217/21 217/22 218/13 218/14 218/20 219/4 230/3 231/4 231/8 232/6 232/7 236/5 238/23

**whoever [1]** 27/21

**whole [7]** 34/25 51/18 67/15 79/20 80/4 165/4 192/3

**whom [2]** 25/19 25/20

**whose [1]** 205/21

**why [23]** 17/11 28/12 30/22 37/13 37/16 49/2 51/1 51/5 69/14 136/15 136/22 143/13 145/1 155/15 155/15 158/18 159/7 159/16 170/16 198/7 206/10 234/24 237/17

**wife [17]** 56/3 57/1 58/14 58/20 105/16 106/9 106/20 107/2 107/3 150/23 151/3 156/4 156/5 172/12 172/22 195/13 196/13

**wife's [1]** 57/4

**Wilkins [1]** 20/3

**will [143]** 3/21 4/15 4/19 4/23 4/25 5/1 5/1 5/6 5/11 5/12 5/17 5/18 5/25 6/1 6/6 6/7 6/8 6/20 6/21 7/1 7/2 7/3 7/4 7/22 7/23 8/16 9/2 9/3 9/12 10/4 14/18 15/1 16/3 16/6 16/9 16/10 16/11 17/15

**W**

**will... [105]** 17/17 17/18 17/19 18/4 19/8 19/17 26/1 26/11 26/13 28/2 28/5 28/8 29/5 30/11 31/3 31/5 31/10 31/18 32/7 32/15 35/21 40/23 46/14 52/7 57/22 61/14 64/1 66/13 66/14 66/15 66/17 71/6 78/25 79/11 85/4 88/21 88/22 88/22 88/22 88/24 94/6 110/3 110/7 110/9 118/16 119/8 122/3 131/21 140/23 147/13 148/8 155/11 159/22 165/12 170/7 170/19 173/21 177/3 177/3 178/2 186/13 186/19 189/10 195/9 195/14 204/12 207/25 208/16 208/21 209/9 211/18 217/2 217/5 217/7 217/24 218/1 218/3 218/3 218/4 219/8 220/25 221/16 222/7 223/12 223/18 223/24 223/25 224/14 225/2 225/7 225/24 226/4 226/9 226/11 226/14 226/17 227/3 227/3 229/10 229/11 229/12 233/24 234/3 236/22 239/21

**willing [1]** 178/12
**willingness [1]** 223/16
**Wilmer [2]** 189/7 208/20
**wind [1]** 27/4
**window [1]** 118/25
**Wired [2]** 18/17 53/3
**withdrawn [1]** 9/14
**within [4]** 9/7 54/7 114/17 118/25
**without [7]** 16/18 28/6 35/20 76/11 156/4 159/25 162/25
**witness [46]** 10/19 17/18 23/23 24/2 26/12 29/23 30/1 39/4 40/8 42/20 86/12 87/3 87/19 95/20 102/19 109/7 138/17 138/19 138/24 139/1 139/7 139/10 139/11 163/24 166/9 167/23 170/4 170/9 171/5 171/7 181/5 181/11 181/19 190/10 191/23 199/9 205/1 224/2 224/3 224/19 229/7 230/16 231/4 231/19 232/8 233/22
**witness' [4]** 34/15 39/5 89/4 229/6
**witnessed [1]** 205/2
**witnesses [29]** 9/16 20/14 21/23 22/1 24/16 27/14 27/14 35/3 35/4 44/5 44/6 53/17 86/8 88/13 88/15 89/2 117/22 163/18 222/20 229/24 230/2 233/10 234/5 234/6 234/15 234/18 235/16 236/7 236/14
**woman [1]** 107/25
**won't [3]** 6/9 27/24 43/24
**Wonderful [1]** 186/9
**word [1]** 34/20
**words [3]** 44/7 91/23 159/10
**work [123]** 11/13 30/23 32/16 33/5 37/14 38/2 39/25 41/18 46/12 46/21 48/3 56/3 57/1 58/20 59/7 59/10 62/10 62/12 62/15 62/19 63/18 63/20 64/2 64/18 64/20 66/23 67/25 68/1 68/2 68/5 68/8 76/21 78/17 90/11 94/13 94/14 95/3 96/19 97/1 99/20 101/11 105/17 105/22 108/2 108/16 111/18 111/24 112/3 112/13 114/10 114/15 114/20 115/23 120/17 121/18 130/17 130/22 132/20 137/14 138/9 139/22 141/14 142/12 145/4 146/24 148/20 148/22 149/1 149/9 149/10 158/1 166/4 167/17 167/19 167/23 167/25 168/16 169/23 170/3 170/7 170/9 171/9 173/9 173/10 173/16 175/8 175/22 176/22 179/16 181/25 182/1 182/2 182/4 182/7 183/13 184/13 189/2 193/17 193/21 193/22 194/21 194/24 195/3 196/16 197/11 203/22 208/12 209/22 209/24 210/2 210/15 210/18 211/2 211/16 211/19 212/19 213/15 213/24 215/24 216/14 218/12 223/14 225/16

**work-related [1]** 203/22
**worked [48]** 24/4 24/19 25/5 33/1 39/14 39/16 39/24 40/15 41/7 46/20 59/4 59/13 82/3 82/5 85/19 85/24 87/5 93/23 104/4 106/18 108/13 114/15 121/11 136/21 136/23 138/4 138/8 142/24 149/7 150/21 166/1 166/18 167/24 168/11 168/13 168/16 170/8 170/16 172/21 175/11 176/10 180/14 180/15 195/19 197/16 200/6 200/18 215/9
**worker [1]** 166/19
**working [17]** 32/11 86/1 87/5 111/20 132/1 143/21 154/3 166/19 167/25 176/9 186/15 187/15 195/1 196/16 213/1 213/7 225/9
**works [27]** 33/16 57/1 57/2 71/10 105/16 106/9 120/24 141/12 143/2 143/14 143/19 143/22 144/8 144/11 151/4 164/20 172/22 172/23 173/17 188/23 195/21 196/7 200/3 200/21 206/9 206/25 217/14
**worried [1]** 167/16
**worries [1]** 65/16
**worth [1]** 12/20
**would [293]**
**wouldn't [13]** 52/13 71/11 89/6 130/22 145/6 146/13 146/25 177/12 178/5 178/16 183/8 193/18 213/7
**wow [1]** 183/11
**writ [1]** 234/13
**write [9]** 17/6 17/10 17/11 17/12 17/13 133/9 173/20 229/7 229/8
**writing [2]** 7/24 10/19
**wrong [3]** 53/24 65/15 157/21
**wrongdoing [2]** 82/16 187/24
**wrote [6]** 53/24 65/12 65/14 87/11 180/12 185/5

**Y**

**yeah [89]** 4/14 6/3 33/3 37/21 42/6 46/22 50/6 50/20 52/3 57/14 60/19 66/25 67/2 69/1 69/12 69/25 73/4 74/7 74/15 74/25 76/5 78/13 78/17 78/24 82/5 83/12 84/4 88/6 89/20 91/14 95/24 103/9 104/5 104/17 106/8 106/19 107/20 111/1 130/8 131/7 131/13 131/20 132/2 133/4 145/18 145/25 153/1 153/3 156/3 156/21 157/8 162/2 166/3 167/12 168/22 177/10 178/25 179/5 179/22 179/25 180/3 180/23 181/6 181/11 181/21 182/6 182/13 182/18 182/18 185/9 185/12 189/21 190/15 192/9 193/17 194/21 195/17 196/21 196/22 198/21 200/20 201/20 201/23 202/11 210/9 211/13 230/13 234/2 238/19
**year [13]** 30/25 36/5 39/16 70/11 75/21 78/22 114/16 119/2 119/4 153/13 184/11 195/11 202/13
**years [24]** 29/24 30/10 35/20 39/15 43/12 47/12 62/18 64/16 72/13 77/16 102/14 103/9 107/6 111/10 115/5 115/5 116/19 136/18 140/25 142/2 166/3 180/25 185/8 202/3
**yes [335]**
**yesses [1]** 184/7
**yet [5]** 14/6 94/5 101/21 168/24 205/14
**York [2]** 1/20 145/25
**you [1717]**
**you distinguish [1]** 159/9
**you elaborate [1]** 157/23
**You're [1]** 135/13
**Youli [1]** 20/13
**your [453]**
**yourself [4]** 7/16 29/18 39/9 52/10
**yourselves [1]** 27/19
**Yves [1]** 20/13

**Z**

**Zeigler [3]** 169/24 170/1 170/16
**Zia [1]** 20/13

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

ROMAN STERLINGOV,

        Defendant.

_____/

Criminal Action
No. 1: 21-399

Washington, DC
February 13, 2024

10:08 a.m.

MORNING PROCEEDINGS


TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:      CATHERINE PELKER
                      U.S. DEPARTMENT OF JUSTICE
                      950 Pennsylvania Ave NW
                      Washington, DC 20530

                      CHRISTOPHER BRODIE BROWN
                      DOJ-USAO
                      601 D Street, N.W.
                      Suite 5.1527
                      Washington, DC 20530

                      JEFFREY PEARLMAN
                      DOJ-CRM
                      Ccips
                      US Dept of Justice
                      1301 New York Ave NW
                      Washington, DC 20005


APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Defendant:     TOR EKELAND
                       MICHAEL HASSARD
                       TOR EKELAND LAW PLLC
                       30 Wall Street
                       8th Floor
                       Brooklyn, NY 10005


Court Reporter:        SHERRY LINDSAY
                       Official Court Reporter
                       U.S. District & Bankruptcy Courts
                       333 Constitution Avenue, NW
                       Room 6710
                       Washington, DC 20001

$$\underline{P\ R\ O\ C\ E\ E\ D\ I\ N\ G\ S}$$

THE COURTROOM DEPUTY:  Criminal case 21-399, *United States of America versus Roman Sterlingov.*

Would counsel please approach the podium, state their appearance for the record, starting with government counsel.

MR. BROWN:  Good morning, Your Honor.  AUSA Chris Brown for the government and with me at counsel table are C. Alden Pelker and Jeffrey Pearlman.

THE COURT:  All right.  Good morning.

MR. EKELAND:  Good morning, Your Honor.  Tor Ekeland for the defendant, Roman Sterlingov, who is present in court. And with me at counsel table is Mr. Michael Hassard; our legal assistant, Ms. Angela Wilkins; and the Federal Defender, Ms. Peterson.

THE COURT:  All right.  Thank you.  Welcome.

So we have got quite a few things to get through this morning.  Let's make as much progress as we can.  Let me start with Ms. Peterson, who is kind enough to be here and who at my request met with Mr. Sterlingov to discuss any potential conflicts and make sure he is aware of them and has made a decision about how he wants to proceed.

MS. PETERSON:  Yes, Your Honor.  I did speak at some length with Mr. Sterlingov this morning and we went through the potential conflicts that exist in this case.  We discussed the rules that apply, so that he understands what his lawyers'

obligations to him are. We discussed -- without going into the actual communications we had, obviously, we discussed how those roles impact on his defenses in this courtroom and in particular discussed the potential conflicts that could arise when someone's case is being funded by someone other than himself, as well as when attorneys have other clients who could potentially have different agendas than his agenda, if you will. And he understands those potential conflicts are there. And he is prepared to continue with his current counsel. He has not seen -- I think it is fair to say any evidence of actual conflicts. And I have provided him with my business card, my cell phone number and told him if he has any questions that arise during the course of the trial, all he has to do is either ask his attorneys to have me contact him or ask the Court directly to have me put back in touch with him. I have also let him know that I am going to be out of town for the next three days on work travel, but that I am sure this Court can get ahold of me and I can communicate with him by phone in the courtroom if that is necessary. And then I will be back in town on Tuesday when the trial resumes and can easily come over here at any time if he has concerns there are actual conflicts that have arisen.

THE COURT: I appreciate how quickly you got involved in this and how thoroughly you have made yourself available to Mr. Sterlingov. So thank you for that.

MS. PETERSON: Not a problem.

THE COURT: Let me ask, Mr. Sterlingov -- if you could pull the microphone to you.

After having a chance to confer with Ms. Peterson, first of all, do you feel you have had enough time to talk with her and understand what the potential conflict might be here?

THE DEFENDANT: Yes.

THE COURT: Thank you. And in light of that discussion, is it correct to understand that you do want to continue with your current representation?

THE DEFENDANT: Yes.

THE COURT: And if you do see a conflict emerge, will you let me know or reach out to Ms. Peterson to let her know so you can engage in further conversation with her?

THE DEFENDANT: I will.

THE COURT: All right. Anything else the government thinks I should ask about on this issue?

MR. BROWN: No, Your Honor.

THE COURT: All right. Mr. Ekeland, anything else?

MR. EKELAND: No, Your Honor.

THE COURT: All right. And, Mr. Sterlingov, are you satisfied with where we are at this point then?

THE DEFENDANT: Yes.

THE COURT: All right. Thank you, Ms. Peterson. You are welcome to go. I appreciate it.

The other thing I wanted to let Mr. Sterlingov know is I did meet with the marshal this morning. And he told me a couple of things. He is going to explore the issues that you have raised, the whole issue range of -- he said there have been problems with the barber. And it is something they are working with. He will check on the circumstances with respect to the shave. He also said that he will check on the computer to see if we can get you a computer to use during the trial or if the jail can make sure you have one. And he told me he would get back to me by the end of the day.

He said he does not believe that the rules with respect to access to the computer are any different at the CTF than they are at the CDF. And he thinks it is the same rules that apply. I raised with him the question with respect to the vitamin. He is going to check on that. He says he thinks they only provide them to you if they deem them medically necessary in some way. I don't know whether that may mean that you would be welcome to purchase your own vitamins. If you want us to check on that, we can do that as well. But I want to let you know that the marshal is looking into the issues that you have raised.

So I also wanted -- I know I need to give you my views on a range of issues, including the Daubert issues and the venue question and the statute of limitations question. With respect to the Daubert issues, I do -- I am not sure I am

going to have time this morning with the jury coming at 11:00 and everything else we have to cover to get through all of that. I can give you some general guidance, but what I'd like to do is before any of the experts testify or particular experts testify is give you a more complete analysis of my thinking. And there are some guardrails I think we are going to need in place, just by way of example, I think with respect to Mr. Vlahakis, although I am inclined to allow him to testify, I think it important that he not testify as to any legal conclusions. If he wants to testify about why know your customer information is important to regulators, that strikes me as appropriate and permissible. But we'll have to talk about exactly what the ground rules are with respect to Mr. Vlahakis.

And I know that the defense has raised -- or has filed with me the certificates for two of the witnesses with respect to training that they have received with respect to the blockchain. And if you want to come back to me with that and maybe we need to, outside the presence of the jury, briefly voir dire those witnesses about what additional expertise or skills they may have developed, we can do that.

So that is to say, we have spent many, many hours discussing the Daubert issues in this case. But I know I need to get you more before the witnesses testify. I think I have given you enough for purposes of your openings, but if there is

anything else you need to know for purposes of your openings, let me know. I do want to give you just an oral decision now on the venue question, as well as the statute of limitations.

I am happy to do that now. I don't think I need to get into the background here about the blockchain and how it works and the allegations in this case. We have already spent quite a bit of time discussing that. But turning to venue and defense's motion to dismiss, for lack of venue, the law is relatively straightforward. Article III and the Sixth Amendment to the constitution is both protect a right of a defendant to be tried in the district where the alleged crime was committed. And Rule 18 of the Federal Rules of Criminal Procedure implements that guarantee and dictates that "Unless a statute provides otherwise, the government must prosecute an offense in a district where the offense was committed."

So where there is a statutory venue provision, that provision governs and otherwise the court must look to the locus delicti. It must determine the nature of the crime alleged and the location of the act or acts constituting it. And under that analysis, venue may be proper in more than one district, as the D.C. Circuit held in *United States versus Lam Kwong-Wah*, at 924 F.2d 298 at 301, so long as the acts constituting the crime and the nature of the crime charged implicate more than one location. For continuing offenses, venue is proper where the offense was begun, continued or

implemented under 18 U.S.C. section 3237(a). And venue must be proper for each count charged in an indictment. There is no such thing as pendent venue in a criminal case.

The Supreme Court has recognized broad congressional power to define venue for federal crimes. That is *United States versus Johnson* at 323 U.S. 273, 274 to 275. But it is also observed that this power has an outer limit based on notions of fair administration of criminal justice and public confidence in it. And that limit is embodied in the tests already set forth. Venue is proper where the offense's essential conduct elements occurred. And that is from *Rodriguez-Moreno* at 526 U.S. at 280.

So some lower courts, although not the D.C. Circuit, have added some gloss to that test. And among the more common formulations is the substantial contacts test, which considers the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct and the suitability of the district for fact finding. That is from *United States versus Orona-Ibarra,* 831 F.3d 867 at 872. The government must prove venue by a preponderance of the evidence at trial if the issue is raised by the defense.

As we have discussed, it is less clear exactly how the Court should deal with the question where there is a challenge that is raised to the time itself. And as I previously indicated to you, I am persuaded by the majority

view that where the indictment adequately alleges venue that is sufficient and that ends the inquiry for purposes of Rule 12B or at least ends that inquiry the Court must engage in, although the Court's may, as Judge Fletcher observed in the *Jensen* case, have discretion to go beyond that where the facts are not in dispute, even if they are not set forth in the indictment itself.

So I think that provides sufficient basis to deny the venue motion at this point. But I am also happy to give you some further thoughts with respect to venue and why I ultimately think venue is proper here with a couple of question marks that we may have to wrestle with down the line. When I say proper here, what I really mean is that there is a basis to bring the question to the jury.

And there are times in which the government's pleadings seem to ask me just to conclude as a matter of law that there is venue and there is not even a question for the jury. I am not persuaded by that. And I do think the government does have the burden by a preponderance of the evidence to establish venue at trial.

With respect to the particular counts in the case, it is probably easiest for me to start with Count 2, which is the money laundering count. Mr. Sterlingov is charged with money laundering in violation of 18 U.S.C. sections 1956(a)(3)(A) and (B). And those provisions criminalize "Conducting or

attempting to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity or property used to conduct or to facilitate, specified unlawful conduct with the intent either to promote the carrying on of specified unlawful conduct activity or to conceal or disguise the nature, location, source, ownership or control of property believed to be the proceeds of the specified unlawful conduct." And that is quoting from the statute.

The statute also provides at section 1956(C)(3) that a transaction is a transfer, delivery or other disposition. And the statute defines a financial transaction as one that "In any way or degree affects interstate or foreign commerce involving the movement of funds by wire or other means." One conducts a transaction, by "Initiating, concluding or participating in initiating or concluding such a transaction." And that is section 1956(c)(2).

The money laundering statute actually does have a venue provision, which is expansive and permits a defendant to be tried "In any district in which the financial or monetary transaction constituting the offense is conducted."

And I have already defined conducted for you. The provision further states that a transfer of funds from one place to another by wire or other means shall constitute a single continuing transaction. And that any person who

conducts any portion of a money laundering transaction may be charged in any district in which the transaction takes place. That is section 1956(i)(3). The question is thus whether Mr. Sterlingov allegedly "conducted" a qualifying "transaction" that "took place" in the District of Columbia. And the answer to that is yes.

The sting transaction that the government has identified meets on all of those criteria. It is obviously a question for the jury as to whether that transaction occurred and whether Mr. Sterlingov was aware of the transaction. But assuming the government can carry its burden, the Court concludes that is sufficient to support venue in the District of Columbia. The sting transaction was a money laundering transaction under the statute. It was a transfer of funds from the IRS agent's Bitcoin Fog deposit account to the agent's receiving account and the property was transfer -- was represented to be the proceeds of specified unlawful activity; namely, the sale of a controlled substance, that is ecstasy. And I am quoting there from 18 U.S.C. section 1986(c)(7)(B)(I) and docket 1-1 at 6.

Next, the government has alleged that Mr. Sterlingov as the operator of Bitcoin Fog, "conducted" this transaction with the requisite mental state. That is 1956(a)(3) along with it IRS agent. Mr. Sterlingov "initiated" the transfer of the Bitcoin from the special agent's deposit account and concluded

that transfer by moving the Bitcoins into the receiving account after mixing them through the Bitcoin Fog cluster.

Assuming that Mr. Sterlingov read the message that was sent to him -- and that is a question for the jury not for me -- Mr. Sterlingov conducted this transaction "with the intent to promote the carrying on" of the asserted ecstasy dealing and/or "to conceal or disguise the nature, location, source, ownership or control of the proceeds of activity." And I am quoting there from section 1956(a)(3)(B). Bitcoin Fog's entire purpose, according to the government, was to assist users in concealing the nature, location, source, ownership or control of their Bitcoin. Such concealment in turn allowed users to "carry on their activity without detection."

Finally the transaction that Mr. Sterlingov took place at least in part in the District of Columbia. The agent was in the District of Columbia when he or she requested the transfer, at which point Mr. Sterlingov allegedly processed the transaction. And nothing more is required under the statute. The statute provides that any person who conducts any portion of a money laundering transaction may be charged in any district in which that transaction takes place.

And this reflects the general rule that "where a crime consists of distinct parts which have different localities, the whole may be tried where any part could have proved to have been done." That is *United States versus*

*Lombardo,* 241 U.S. 73 at 77. As such, it does not matter that Mr. Sterlingov was not physically present in the District of Columbia when he allegedly conducted the portion of the transaction at issue.

In the Court's view, there is nothing unfair, unforeseen or otherwise unconstitutional about applying the money laundering venue provision under these circumstances. Mr. Sterlingov allegedly conducted a large scale money laundering operation through a bodily-accessible website and could have easily foreseen that someone and perhaps many individuals in the District of Columbia would use Bitcoin Fog for the purposes in which it was allegedly made available and allegedly marketed. And the transaction created substantial context with and effects in the place in which it occurred.

And I will note as well that Mr. Sterlingov himself indicates that -- or through his counsel indicates that in their view there is no other place in the United States where the case could be brought. So as a matter of question of fairness here, his position is essentially that the United States could never prosecute a case under the money laundering statute where someone doesn't actually enter the United States and engages in online transactions in cyberspace, notwithstanding the fact that those involved in the transactions are present in the United States. And that is a proposition that is difficult to square with any notions of

fundamental fairness.

Then, with respect to Count 1, the money laundering conspiracy count, the indictment alleges that Mr. Sterlingov together with other co-conspirators known and unknown, including darknet vendors and darknet market administrators conspired in violation of 1956(a)(1)(A)(I) and (B)(I). Those provisions in turn make it a crime to conduct a financial transaction which involves the proceeds of specified unlawful conduct, where the person conducting the transaction knows that the property involved represents the proceeds of some form of unlawful conduct and either intends to promote the carrying on of the specified unlawful conduct or knows that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or control of the proceeds of specified unlawful activity. That is 18 U.S.C. section 1956(a)(1)(A)(i) and (b)(I).

As with the substantive money laundering charge, the alleged specified unlawful activity in the conspiracy charged is the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance. That is docket 43 at 2. The money laundering statute's venue provision provides that a prosecution for money laundering conspiracy may be brought "In the district where venue would lie for the completed offense or in any other district where an act in furtherance of the

conspiracy took place." That is 1956(I)(3).

Under this provision, venue lies where the planned unlawful activity would be accomplished or where on overt act in furtherance of a conspiracy was committed. *United States versus Booth,* 553 F. Supp. 3d 545 at 550 from the Southern District of New York, 2022 citing *Whitfield versus United States*, 543 U.S. 209 at 218.

Mr. Sterlingov himself need not have committed the overt act that provides the basis for the venue, because venue is proper in any jurisdiction where any co-conspirator committed an overt act.

The court agrees with the government that the sting transaction at least as alleged qualifies as an act in furtherance of the alleged conspiracy. And that act at least took part in the District of Columbia. The indictment alleges that Mr. Sterlingov conferred with, quote, Darknet vendors and darknet market administrators to launder the proceeds of trafficking of controlled substances and accepting the government's allegations and evidence after the IRS agent commenced the sting transaction. Mr. Sterlingov or a co-conspirator allegedly mixed the agent's Bitcoin and transferred it to a receiving account after being informed that the Bitcoin was the proceeds of the ecstasy sale on the darknet market Apollon. That was an act in furtherance of the charged conspiracy that took place in part in the District of Columbia.

Mr. Sterlingov's objection to the application of these principles to crimes committed entirely in cyberspace finds no support in precedent.  Courts have always adapted legal doctrines as technology has progressed.  Well over 100 years ago the Supreme Court held that a crime conducted through the mail could support venue in the place where the mail was received, even if the defendant had never set foot there.  That is *Palliser versus United States*, 136 U.S. 257, 265 to 268.

Courts have applied similar reasoning, dealing with wire transfers and phone calls on numerous occasions.  And as the Second Circuit explained in the *United States versus Rommy*, when a conspirator uses a telephone call to further a criminal scheme, a conspirator effectively propels not own his voice, but the scheme itself beyond his own physical location into that of a person with whom he is speaking, 506 F.3d at 122.  And the Court continued, the conspirator avails himself of modern technology to commit a long distance call -- I'm sorry -- to commit at long distance the identical overt act that he would commit by being in the same room with the person and whispering a conspiracy furthering message directly into the listener's ear.  And the same could be said of the internet and the blockchain and that Mr. Sterlingov has allegedly availed himself of modern technology to commit a crime at a distance.

It makes no difference for purposes of venue,

moreover that the Bitcoin used in the sting transaction did not actually derive from unlawful activity or that the IRS agent was not himself or herself an actual co-conspirator.

In *United States versus Sitzmann*, for example, Judge Friedman rejected a venue challenge where the basis for venue was a single wire transfer, a co-conspirator sent from Florida to a government informant in the District of Columbia, relating to a sham cocaine transaction. And Judge Friedman concluded that the wire transfer was an overt act in furtherance of the conspiracy, even though the recipient was a government informant and the cocaine transaction was a sting, the D.C. Circuit affirmed albeit on plain error review, but the Court wrote that the District Court did not error, let alone plainly error in concluding that the wire transfer was an overt act in furtherance of the conspiracy and the overt act established venue. That is from the D.C. Circuit 893 F.3d at 826. Other circuits have taken a similar view. And I won't go into detail about those here. But I think this is all sufficient to establish venue with respect to the alleged conspiracy.

With respect to the DC money count that alleges money transmission without a license, I don't think I have to say a whole lot about this count in this pont. Because if there is venue anywhere ever for a violation of that statute, it is in the District of Columbia. And the only question, which I have raised with you previously, is whether what Mr. Sterlingov

allegedly did, constituted conducting a money transmission business for purposes of the DC statute. And as I indicated previously, I think that is a tricky question. And I understand the arguments on both sides on that question. But we previously agreed that I need not reach the -- that question at this point. And both counsel for both the government and the defense agreed that it was appropriate to postpone resolving that issue and that the defense, in fact, never moved on this ground. And to this date still has not moved to dismiss the indictment on the grounds that the statute doesn't apply here. The defense did respond to my raising of the issue, but we agreed back on September 8, 2023, that the defense can simply raise this issue in post-trial motions, if there is a conviction on this count, at which point I can address it there.

So that then simply leaves Count 3 of operating an unlicensed money transmitting business.

That count alleges a violation of 18 U.S.C. section 960(a) as well as 18 U.S.C. section 2. Section 960(a) makes it a crime to knowingly conduct, control, manage, supervise, direct or own all or part of an unlicensed money transmitting business. And a money transmitting business is defined, in relevant part, to mean the transferring of funds on behalf of the public by any and all means. An unlicensed money transmitting business is a money transmitting business

affecting interstate or foreign commerce that either under, A, is operated without an appropriate money transmitting license in a state where such operation is punishable as a misdemeanor or felony under state law; B, fails to comply with the money transmitting business registration requirements under section 5303 of Title 31; or, C, otherwise involves the transportation of transmission of funds that are known to the defendant to have been derived from a criminal offense or intended to be used to promote or support unlawful activity.

This statute does not have its own venue provision in it. And the government argues correctly, in my view, that venue in cases involving a failure to make a required filing is typically in the district in which that failure occurred. And there is an argument here that the filing should have been made with FinCEN under the relevant regulations.

I don't think I need to resolve that question for present purposes about whether the failure to obtain or to apply for the license in the District of Columbia is the relevant conduct for present purposes. And I do think that there are some questions that at some point we may need to sort through with respect to whether that is the relevant conduct that is criminalized for purposes of 1960(a) and (b). And there is, I think, a question about whether it is the failure to obtain license that provision is intending to criminalize or punish or the operation of the business without the license.

And I realize that is a subtle semantic difference. And the government may well be right ultimately about this question. But to my mind, I think that is sufficient for present purposes to conclude that the relevant conduct for purposes of a violation of 1960 can at least include the -- can include knowingly conducting a money transmission business, that otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support criminal activity.

And although one might argue that the relevant conduct is the conducting of the unlicensed money laundering transmitting business, that simply, to my mind, circles back on what the word conducting that business means. And I think it is a stretch to read that statute to mean that it is focused solely on the place where the individual is sitting as they are administering an unlawful money laundering transmission business. And to my mind, that is particularly the case, because one I think can read the definitions -- read through the defined comment to the definitions in a way that makes pretty clear that the underlying unlawful activity is pivotal to the offense. And so read in that fashion 18 U.S.C. 1960(a) would read, whoever knowingly conducts a money transmitting business that -- or I'm sorry -- business in any manner or degree that otherwise involves the transporting or transmission