# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**United States of America**

*Plaintiff-Appellee,*

*v.*

**Roman Sterlingov**

*Defendant-Appellant.*

**No. 24-3161**

Appeal from United States District Court
District of Columbia
Hon. Randolph D. Moss
United States District Court Case No. 1-21-cr-00399-RDM-1

**APPELLANT ROMAN STERLINGOV'S OPPOSITION TO MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF BY CHAINALYSIS INC.**

TOR EKELAND, ESQ.
TOR EKELAND LAW PLLC
Attorneys for Defendant-Appellant
30 Wall Street, 8th Floor
New York, New York 10005
(718) 737-7264
tor@torekeland.com

MARC FERNICH, ESQ.
LAW OFFICE OF MARC FERNICH
Attorneys for Defendant-Appellant
800 Third Avenue, 20th Floor
New York, New York 10022
(212) 446-2346
maf@fernichlaw.com

MAKSIM NEMTSEV, ESQ.
MAKSIM NEMTSEV PC
Attorneys for Defendant-Appellant
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700
max@mnpc.law

AARON DANIEL, ESQ.
ASYMMETRIC LEGAL
Attorneys for Defendant-Appellant
11900 Biscayne Blvd, Suite 400
Miami, Florida 33181
(305) 979-9296
aaron@asymmetric.legal

AMY C. COLLINS, ESQ.
THE LAW OFFICE OF
AMY C. COLLINS
Attorneys for Defendant-Appellant
888 17th Street, NW, Suite 1200
Washington DC 20006
(228) 424-0609
amy@amyccollinslaw.com

*Attorneys for Appellant-Defendant Roman Sterlingov*

**INTRODUCTION**.......................................................................**4**

**I.      THE COURT HAS DISCRETION TO DENY AMICUS CURIAE PARTICIPATION** ...........................................................................**5**

**II.     THE PROPOSED AMICUS BRIEF IMPERMISSIBLY SEEKS TO INTRODUCE NEW EVIDENCE INTO THE RECORD** ...........................**7**

**III.    CHAINALYSIS INC. PARTICIPATED EXTENSIVELY IN THE DISTRICT COURT** ..........................................................................**12**

**IV.     THE PROPOSED AMICUS CURIAE BRIEF IS DUPLICATIVE.** ...............................................................................................**17**

**V.      CHAINALYSIS FILED ITS AMICUS CURIAE BRIEF AS A SEPARATE FILING WITHOUT THE COURT'S PERMISSION OR APPELLANT'S CONSENT** ...............................................................**18**

**CONCLUSION**........................................................................**19**

**CERTIFICATE OF COMPLIANCE**......................................**22**

## INTRODUCTION

Proposed amicus curiae Chainalysis Inc. seeks to participate in this appeal to defend the reliability of its proprietary blockchain forensic software, Chainalysis Reactor ("Reactor"), the very technology introduced at trial through the testimony of an employee of its wholly owned subsidiary. Defendant-Appellant Sterlingov denied consent to Chainalysis Inc.'s amicus request. The motion should be denied. This Court should not permit a trial participant and witness whose forensic software is at issue to reenter the litigation as an amicus curiae in order to amend its own testimony and evidence regarding its proprietary commercial product central to this appeal, particularly where the proposed submission attempts to introduce unverifiable factual assertions that were never part of the trial record.

Chainalysis's proposed amicus brief relies on new technical claims regarding Reactor's testing, error rates, and peer review that were not presented to the district court at the *Daubert* hearing or at trial. Appellate review is confined to the record developed below, and an amicus may not use appellate briefing to introduce new evidence or provide post hoc scientific validation for testimony that was already admitted. Allowing such supplementation would circumvent the adversarial process and deprive Defendant-Appellant of any opportunity to test those assertions through cross-examination or expert rebuttal.

Chainalysis is not a disinterested "friend of the court." Its wholly owned subsidiary participated directly in the trial through expert testimony concerning Reactor, and the admissibility of that testimony is a central issue on appeal. Chainalysis Inc. participated extensively in the proceedings through counsel and had ample opportunity to introduce the type of evidence it now attempts to put before this Court through its proposed amicus curiae brief. Amicus participation is intended to assist the Court, not to provide a vehicle for a commercial witness to defend its own methodology with duplicative arguments already made by the Government, after the evidentiary record has closed.

Because the proposed submission seeks to improperly supplement the record through new evidence and testimony from a financially interested trial participant, and duplicates the Government's arguments, the Court should deny the motion for leave and strike the lodged brief from the docket.

## I. The Court Has Discretion to Deny Amicus Curiae Participation

Federal Rule of Appellate Procedure 29(a)(2) provides that a proposed amicus curiae may file a brief only with leave of the court when the parties do not consent. Defendant-Appellant refused consent on the basis that the proposed amicus Chainalysis Inc. testified through its subsidiary both at the pretrial *Daubert* hearings and at trial, as well as participated extensively in the pretrial proceedings

appearing through counsel as Chainalysis Inc.[1] Federal Rule of Appellate Procedure does not create an entitlement to participate; it preserves judicial discretion.

An amicus brief is not a vehicle to introduce new testimony or evidence into the record. The record on appeal is strictly limited to the district court's docket, its filings, and the transcripts of the proceedings below.[2] Amicus participation is also inappropriate where the proposed amicus offers duplicative arguments already brought to the Court's attention by the parties.[3]

While being a financially interested party does not necessarily disqualify a proposed amicus from filing a brief on appeal, here not only are the financial interests of the proposed amicus curiae direct and substantial, but proposed amicus curiae was also a trial witness that is now seeking to amend the record on appeal precisely to protect its own future financial interests directly related to its proprietary forensic software at issue on this appeal. This is a circumstance in which the Court's discretionary authority should be exercised to deny participation

---

[1] *See e.g.* Appx. 6860-6876.

[2] *See* Fed. R. App. Pro. 10.

[3] *See e.g. Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (denying amicus curiae because proposed briefing was duplicative of the party's arguments); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062 (7th Cir. 1997) (Posner, J.) (same).

to protect the integrity of the record, the appellate process, and Defendant-Appellant's Sixth Amendment Confrontation Clause, and Fifth Amendment Due Process Clause, rights.

## II. The Proposed Amicus Brief Impermissibly Seeks to Introduce New Evidence into the Record

Appellate review of evidentiary rulings is confined to the record developed before the district court.[4] Defendant-Appellant's appeal is directed at the district court's decisions based on the evidence and testimony in front of the district court. To allow proposed amicus curiae to introduce new evidence as to the alleged accuracy of its proprietary forensic software central to the Government's prosecution of Defendant-Appellant denies Defendant-Appellant his fundamental constitutional rights to adversarial process and a jury trial. The admissibility under *Daubert* of Chainalysis Inc.'s proprietary Chainalysis Reactor software is a central issue in this appeal. The record below is devoid of any indicia of known error rates, scientific acceptance, or any thorough testing of the accuracy of the Reactor software.[5]

_____

[4] *See* Fed. R. App. Pro. 10.

[5] *See* Appellant's Opening Br. at 27-61.

Now, after trial and the closing of the record below, Chainalysis claims to have new evidence of the effectiveness of its software. But the time for this was at trial. Central to Chainalysis's proposed amicus brief are external studies and analyses concerning Reactor's reliability and industry acceptance that were not part of the evidentiary record at the *Daubert* hearing or at trial.

The trial record makes clear that the Government and Chainalysis presented no scientific or peer-reviewed evidence establishing the accuracy of Chainalysis Reactor.[6] It is indisputable that Chainalysis conducted no error-rate analysis and did not know Reactor's error rate, false-positive rate, or false-negative rate either at the pretrial *Daubert* hearings or at trial.[7] Nor was there or is there now, any evidence that Reactor had achieved acceptance within any recognized scientific community.[8] Chainalysis had years before trial to develop such evidence, but chose instead to focus on marketing its software rather than verifying its accuracy. It's proposed amicus brief is just another expression of its focus on marketing rather than rigorous scientific principles.

---

[6] *Id.*

[7] *See,* E. Bisbee, *Daubert Hr'g Tr.* at 119-20 (D.D.C. June 23, 2023), Appx. 619-20; E. Bisbee, *Trial Tr.* at 89-91 (D.D.C. Feb. 29, 2024), Appx. 5162-6164.

[8] *Id.*

Chainalysis has repeatedly sold Reactor as a blockchain forensic investigative tool to governments for use in criminal cases even though its accuracy, error rates, and false-positive and false-negative rates had never been meaningfully tested or disclosed. As the primary witness for the Chainalysis Reactor software (a Chainalysis Government Solutions employee) testified at trial on cross-examination:

> Q. But Chainalysis doesn't collect internally any data on your error rates, do you?
> A. Not that I'm aware of.
> Q. And you can't tell me the statistical error rate for Chainalysis Reactor, can you?
> A. I cannot.
> Q. And you cannot name me one scientific peer-reviewed paper attesting to the accuracy of Chainalysis Reactor?
> A. So not necessarily to Chainalysis Reactor. However, the methodologies that are used for the clustering that was described in my testimony are based off of scholarly academic journal articles that have been published and have been circulated within the community.
> …
> Q. And there's never been an independent audit of Chainalysis Reactor and its accuracy, has there?
> A. Not to my knowledge.
> Q. And in relation to the field of blockchain analysis, there's no governmental body that sets any kind of standards for blockchain analysis?
> A. No.
> Q. And there's no recognized scientific body that sets any kind of standards for the field of blockchain analysis?
> A. Not to my knowledge.
> Q. And that's because blockchain analysis is a relatively new field that's emerged in the last decade or so?
> A. Yeah.

Q. And in terms of the clustering that you testified to, Chainalysis can't break out clusters in relation to the transactions by geographical region, can it?
A. No.[9]

Now, Chainalysis attempts to introduce new purported evidence regarding Reactor's reliability created after the record has closed.[10] Allowing such post-hoc submissions would circumvent the adversarial process and raise serious concerns under the Fifth Amendment's Due Process Clause and the Sixth Amendment's Confrontation Clause.

The proposed amicus brief identifies no verified independent reviewers, discloses no clear methodology, and provides no information about whether the purported "peer review" was conducted by individuals with financial ties to the multi-billion dollar market capitalized Chainalysis, leaving the Court with no basis to assess the credibility or independence of these extra-record claims.

Moreover, there is no reliable way to assess the accuracy of Chainalysis's new claims in relation to this case. Chainalysis has not identified, nor is there any way to independently determine, whether the version of Reactor it now asserts to

---

[9] E. Bisbee, *Trial Tr.* at 89-91 (D.D.C. Feb. 29, 2024), Appx. 5162-6164; *see also* Appx. 619-20 (Pretrial *Daubert* testimony of E. Bisbee).

[10] *See,* Kelvin Lubbertsen et al., *Ghost Clusters: Evaluating Attribution of Illicit Services Through Cryptocurrency Tracing*, 34th USENIX Security Symposium 1357, 1363 (2025) (available at: https://www.usenix.org/system/files/usenixsecurity25-lubbertsen.pdf (cited in proposed amicus brief).

be accurate is the same version, or even one of the same versions, used during the investigation and prosecution of Defendant-Appellant. That uncertainty is compounded by the fact that Defendant-Appellant was denied access at trial to the Reactor software's source code and the full set of heuristics underlying its operation.[11] Simply put, there is no baseline metric with which to evaluate these after the fact assertions of reliability.

Without access to the source code, complete heuristics, methodologies, and disclosures of any financial interest by the researchers cited, it is impossible to determine whether the representations now offered by Chainalysis correspond to the tool that was actually used in this prosecution, nor can the accuracy of its allegations be properly assessed. The time for this was in the district court and Chainalysis had ample opportunity, indeed years, to put forth the type of evidence it now attempts to introduce after the record has closed and in direct violation of Federal Rule of Appellate Procedure 10. Because Chainalysis's proposed amicus brief is a thinly veiled attempt to amend the district court record, this Court should deny their motion for leave to file an amicus curiae brief.

------------------------

[11] *See,* Appellant's Opening Br. at 27-61.

### III. Chainalysis Inc. Participated Extensively in the District Court

Chainalysis Government Solutions employee Elizabeth Bisbee testified as to

the validity of Chainalysis Inc.'s Chainalysis Reactor blockchain forensic software

both at the *Daubert* hearings and at trial.[12] As Chainalysis Government Solutions is

a wholly owned subsidiary of Chainalysis Inc., this effectively makes proposed

amicus curiae Chainalysis Inc. a trial witness.[13] Chainalysis Inc. participated

extensively in the pretrial proceedings, through its counsel, at one point actively

seeking to force the Defense to sign a Non-Compete Clause Protective Order.[14]

The fact that it did so attests to its substantial commercial financial interest in this

litigation and its motivations in attempting to do an end run around Federal Rule of

Appellate Procedure 10.

Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 require

corporate disclosure statements so the Court may identify financial interests that

could bear on a litigant's participation in a case.[15] Although Chainalysis asserts in

its disclosure that it has "no parent corporation and that no publicly held

---

[12] *See, e.g.* E. Bisbee, *Trial Tr.* at 89-91 (D.D.C. Feb. 29, 2024), Appx. 5162-6164; *see also* Appx. 619-20 (Pretrial *Daubert* testimony of E. Bisbee).

[13] *See,* Proposed Brief for Amicus Curiae Chainalysis Inc. in Support of Appellee and Affirmance at 8 n.2, *United States v. Sterlingov*, No. 24-3161 (D.C. Cir. Feb. 25, 2026) ("Chainalysis Government Solutions is a subsidiary of Chainalysis that specializes in providing blockchain analysis solutions to U.S. government agencies.").

[14] *See, e.g.,* Appellant's Opening Br. at 43-45.

[15] Fed. R. App. P. 26.1; D.C. Cir. R. 26.1.

corporation owns 10% or more of its stock," that statement omits critical context regarding the company's financial stake in the outcome of this appeal. Namely that were this Court to rule that evidence from and related to Chainalysis Reactor software was improperly admitted under *Daubert*, as this Court should, Chainalysis Inc. stands to lose millions of dollars in revenue through the loss of faith in its flagship proprietary product.

At trial, Elizabeth Bisbee, testified that Chainalysis Government Solutions is a subsidiary of Chainalysis Inc. that was in part created to enter into government contracts. She further testified that the Chainalysis Reactor forensics software at issue in this appeal was created by proposed amicus curiae Chainalysis Inc.:

> Q. And as you sit here today, can you even just tell me what the statistical error rate is for Chainalysis Reactor?
> A. I would not.
> Q. Okay. And you work -- I just want to get it straight. There's actually two Chainalysis companies, correct?
> A. Correct.
> Q. There's Chainalysis, Incorporated, which initially developed Chainalysis Reactor; is that correct?
> A. Correct.
> Q. And you actually work for Chainalysis Global Solutions, correct?
> A. Chainalysis Government Solutions.
> Q. Government Solutions. And that is the -- is it a subsidiary of Chainalysis, Incorporated?
> A. It is.
> Q. And that subsidiary was created solely so that Chainalysis could enter into government contracts in the United States; is that correct?

A. It wasn't solely to do that, no.
Q. But was that part of the reason?
A. It was to service government contracts better, but not solely.
Q. Okay. And that's who you work for, Chainalysis Government Solutions. Okay. Now, if I recall your testimony correctly, you've made no attributions regarding Mr. Sterlingov anywhere in your expert report, correct?
A. Correct.[16]

Thus, the very technology whose admissibility under *Daubert* is being challenged on appeal, Chainalysis Reactor, is marketed and deployed through a corporate structure designed to support government investigative work, as well as being extensively marketed by Chainalysis Inc. itself. Chainalysis Government Solutions is just the vehicle by which Chainalysis Inc. sells subscriptions for Chainalysis Reactor to government agencies. The economic significance of that relationship is substantial. Government agencies constitute a core customer base for Chainalysis Inc.'s subsidiary.[17]

Chainalysis had ample opportunity both pretrial and at trial to introduce the evidence it now seeks to improperly insert into the record under review by this

---

[16] E. Bisbee, *Daubert Hr'g Tr.* at 119-20 (D.D.C. June 23, 2023), Appx. 619-20.

[17] *See,* Weslan Hansen, *ICE Buying Blockchain Tools From TRM, Chainalysis*, MeriTalk (June 13, 2025), https://www.meritalk.com/articles/ice-buying-blockchain-tools-from-trm-chainalysis/ (reporting that Chainalysis Government Solutions holds contracts with federal agencies including an $11.8 million IRS Criminal Investigation contract).

Court. This Court should not permit a trial participant and witness to attempt to correct its errors and omissions in the proceedings below through unverifiable evidence that Defendant-Appellant cannot meaningfully challenge outside the context of a district court *Daubert* hearing and its attendant procedural tools such as subpoenas, and expert rebuttal testimony.

The fact remains that neither Chainalysis, nor the Government, ever introduced any scientific, peer-reviewed evidence as to Chainalysis Reactor' s reliability, any evidence related to error rates, false positive rates, false negative rates, and admitted on the stand to these facts.[18] It had years to do this before trial, and chose not to. It is particularly jarring that the Government launched a criminal investigation and prosecution without first checking the accuracy of its forensic software central to its case and that no one seems to have done so until after this case. It is this type of behavior that explains why so many wrongful convictions in the United States result from junk forensic science that should never have been admitted in a court of law.[19]

_____

[18] *See, e.g.* E. Bisbee, *Trial Tr.* at 89-91 (D.D.C. Feb. 29, 2024), Appx. 5162-6164; *see also* Appx. 619-20 (Pretrial *Daubert* testimony of E. Bisbee).

[19] *See, e.g.* M. Chris Fabricant, *Junk Science and the American Criminal Justice System* (Akashic Books 2022); Peter W. Huber, *Galileo's Revenge: Junk Science in the Courtroom* (Basic Books 1991).

Chainalysis publicly marketed the district court's *Daubert* ruling in this case as confirmation that its Reactor software is "reliable and therefore admissible as substantive evidence," and has promoted the decision as validation of its investigative technology despite the district court basing its decision primarily on anecdotal self-interested law enforcement evidence due to the lack of any scientific evidence. [20] The company's marketing materials likewise emphasize that "Chainalysis data is court admissible" and has enabled customers to take "ground-breaking actions in court."[21] This case however appears to be the first time that anyone has challenged the reliability of Reactor under *Daubert*. Chainalysis's uses of the federal judiciary to market Reactor demonstrates that judicial acceptance of Reactor is not merely a legal issue for Chainalysis, it is a core component of the company's commercial value proposition.

---

[20] Chainalysis Team, *Bitcoin Fog Case Confirms Chainalysis Analytics is Reliable and Admissible in Court*, Chainalysis Blog (Apr. 8, 2024). (available at: https://www.chainalysis.com/blog/bitcoin-fog-daubert-hearing-chainalysis/). *See, e.g.,* Appellant's Opening Br. at 27-61.

[21] Chainalysis, *The Blockchain Data Platform*, Chainalysis.com. (https://www.chainalysis.com/).

## IV.    The Proposed Amicus Curiae Brief is Duplicative

Amicus participation is inappropriate where the proposed brief merely reinforces or repeats arguments already made by a party.[22]

The Government's merits brief defends the district court's *Daubert* analysis, argues that Reactor's methodology satisfies Federal Rule of Evidence 702, and contends that no additional access to proprietary materials was constitutionally required. Chainalysis's proposed brief argues the same core themes, emphasizing the reliability, acceptance, and testing of Reactor.

The Government is fully capable of defending the admissibility ruling. Allowing a commercially aligned entity to reinforce those arguments risks expanding the appellee's advocacy beyond the ordinary limits of appellate briefing.

The function of an amicus is not to provide duplicative advocacy for one side, but to offer insight the parties have not supplied. Where a proposed amicus does not materially broaden the legal analysis before the Court, denial of leave is consistent with Federal Rule of Appellate Procedure 29's purpose.

---

[22] *See e.g. Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (denying amicus curiae because proposed briefing was duplicative of the party's arguments); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062 (7th Cir. 1997) (Posner, J.) (same).

## V. Chainalysis Filed Its Amicus Curiae Brief as a Separate Filing without the Court's Permission or Appellant's Consent

Federal Rule of Appellate Procedure 29 strictly governs the filing of amicus curiae briefs. Unless all parties consent, which Defendant-Appellant did not, an amicus curiae may file a brief only "by leave of court."[23] The rule therefore establishes a clear procedural sequence: the proposed amicus must first obtain the Court's permission before filing its brief.

Chainalysis did not follow that procedure. Instead, it filed its proposed amicus curiae brief on the docket as a separate filing at the same time it filed its motion for leave. As a result, the brief now appears on the Court's docket in the form of a completed submission even though the Court has not granted permission for it to be filed. The Clerk of the Court modified the docket entry by changing the amicus curiae brief's status to "lodged" rather than "filed", but nonetheless the amicus curiae brief is on the docket and Defendant-Appellant has received press inquiries regarding it. This gives the appearance of Chainalysis using the Court's docket for marketing purposes.

---

[23] Fed. R. App. P. 29(a)(2).

The D.C. Circuit's own procedural guidance reinforces that amicus curiae participation is contingent upon the Court's permission.[24] Allowing a proposed amicus curiae to place its brief on the docket before leave has been granted undermines that framework and risks encouraging future litigants and interested entities to circumvent Federal Rule of Appellate Procedure 29 by presenting their arguments to the Court regardless of whether permission is ultimately granted.

By filing their proposed amicus curiae brief separately on the docket, before leave has been granted, Chainalysis attempts to market unverified evidence as to the reliability of its software that is entirely absent from the record as developed in the district court.

For these reasons, the Court should strike the lodged proposed amicus curiae brief from the docket and deny the motion for leave to file it.

## CONCLUSION

For the foregoing reasons, the Court should exercise its discretion under Federal Rule of Appellate Procedure 29 and deny Chainalysis Inc.'s motion for leave to file an amicus curiae brief. As explained above, the proposed submission attempts to introduce new factual assertions regarding the testing, error rates, and

---

[24] *See D.C. Circuit Handbook of Practice and Internal Procedures* § IX (explaining that an amicus brief may be filed only with consent of the parties or leave of court).

reliability of Chainalysis Reactor that were never presented to the district court and therefore fall outside the record governing appellate review under Federal Rule of Appellate Procedure 10. Allowing such post-hoc submissions would undermine the adversarial process and deprive Defendant-Appellant of any meaningful opportunity to challenge those claims through the procedural protections available in the district court.

The motion should also be denied because Chainalysis is not a disinterested participant but a commercial actor that participated extensively in the proceedings below through its subsidiary's expert testimony concerning the very technology at issue on appeal, along with extensive direct pretrial participation by Chainalysis Inc. through counsel. Its proposed brief duplicates arguments already advanced by the Government and seeks to defend the reliability of its proprietary software in which it has a substantial financial interest. Finally, by lodging its proposed brief on the docket before obtaining leave of Court, Chainalysis attempted to place its advocacy before the Court in circumvention of the gatekeeping function of Federal Rule of Appellate Procedure 29 and the prohibitions of Federal Rule of Appellate Procedure 10. For all of these reasons, the Court should deny the motion for leave and strike the lodged amicus curiae brief from the docket.

March 9, 2026
Brooklyn, NY


Respectfully submitted:

/s/ Tor Ekeland
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
Tel: (718) 737-7264
tor@torekeland.com

*Attorney for Appellant-Defendant Roman Sterlingov*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 27(d)(2) and 32(g)(1), I hereby certify that the foregoing Opposition complies with the applicable type-volume limitation because it contains 3574 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This Opposition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 9, 2026

Respectfully submitted:

/s/ Tor Ekeland
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
Tel: (718) 737-7264
tor@torekeland.com

*Attorney for Appellant-Defendant*
*Roman Sterlingov*

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the above with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system on March 9, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF System.

Dated: March 9, 2026

Respectfully submitted:

/s/ Tor Ekeland
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
Tel: (718) 737-7264
tor@torekeland.com

*Attorney for Appellant-Defendant*
*Roman Sterlingov*